UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 23-60507 (PGR) |
| The Roman Catholic Diocese of | ) |
| Ogdensburg, New York, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**OMNIBUS APPLICATION FOR ENTRY OF AN ORDER
REDUCING TIME FOR NOTICE OF FIRST DAY MOTIONS**

The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), by and through its undersigned counsel, hereby makes this omnibus application (this "Application"), and respectfully requests that the Court enter an Order, pursuant to Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 9013-5(b), reducing the notice period and scheduling a hearing for July 17, 2023 at 10:00 a.m. (prevailing Eastern Time) (the "First Day Hearing"), or as soon thereafter as counsel may appear and be heard, before the Honorable Patrick G. Radel, United States Bankruptcy Judge for the Northern District of New York, at the United States Bankruptcy Court, Northern District of New York, Alexander Pirnie U.S. Courthouse and Federal Building, 10 Broad Street, Utica, New York 13501, to consider granting the relief requested in the following motions (collectively, the "First Day Motions"):[1]

    (i)    Motion for Entry of an Order Authorizing the Diocese to File Portions of Schedule F, the Statement of Financial Affairs, the Master Creditor Mailing Matrix, Certain Certificates of Service and Other Pleadings and Documents Under Seal (the "Motion to Seal");

    (ii)    Motion for Entry of an Order Pursuant to Bankruptcy Rules 1007(c) and 9006(b)(1) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases and Statements of Financial Affairs (the "Motion to Extend Time to File Schedules");

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Motions.

16198891.3

(iii)  Motion for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, and (B) Granting Adequate Protection (the "Cash Collateral Motion");

(iv)  Motion for Entry of Interim and Final Orders Authorizing the Diocese to (A) Pay Prepetition Compensation and Reimbursable Employee Expenses, (B) Pay and Honor Medical and Other Benefits and (C) Continue Employee Benefit Programs (the "Wages Motion");

(v)  Motion for Entry of Interim and Final Orders Authorizing Payment of Prepetition Taxes and Regulatory Fees (the "Taxes Motion");

(vi)  Motion for Entry of Interim and Final Orders (A) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Service on Account of Prepetition Amounts Due, (B) Determining Adequate Assurance of Payment for Post-Petition Utility Services Under 11 U.S.C. § 366, and (C) Establishing Procedures for Determining Adequate Assurance of Payment (the "Utilities Motion");

(vii)  Motion for Interim and Final Orders (A) Authorizing, but Not Directing, the Diocese to (i) Continue Using Existing Bank Accounts, Banking Practices and Business Forms, (ii) Maintain Investment Accounts and Practices, and (iii) Continue Using Credit Cards, and (B) Granting Limited Relief From the Requirements of Bankruptcy Code Section 345(b) (the "Cash Management Motion");

(viii)  Motion for Interim and Final Orders Authorizing, but Not Directing, the Diocese to Continue to Administer the Deposit and Loan Fund and Diocesan Trust Fund in the Ordinary Course of Business and Consistent with Past Practices (the "Related Party Liquidity Motion");

(ix)  Motion for Entry of Interim and Final Orders (I) Authorizing the Continued Maintenance of the Diocese's Insurance Program; and (II) Authorizing the Payment of Obligations in Respect Thereof (the "Insurance Motion");

(x)  Motion for Entry of an Order Pursuant to 11 U.S.C. §§105(a) and 362(a) Confirming the Applicability of the Automatic Stay (the "Stay Confirmation Motion");

(xi)  Application for Entry of an Order Authorizing the Appointment of Stretto, Inc. as Claims and Noticing Agent Effective as the Petition Date (the "Application to Employ Claims and Noticing Agent");

(xii)  Application for Entry of an Order Authorizing the Appointment of Stretto, Inc. as Administrative Advisor Effective as of the Petition Date (the "Application to Employ Administrative Advisor").

## BACKGROUND

1.  On July 17, 2023 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*) (the

"Bankruptcy Code") with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Diocese's chapter 11 case (this "Chapter 11 Case"). The Diocese continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in this Chapter 11 Case, and as of the date of this filing, no official committees have been appointed or designated.

2. Information regarding the Diocese's history, business operations and structure, and the events leading up to this Chapter 11 Case is set forth in the *Declaration of Rev. Kevin O'Brien Regarding Structure and Pre-Filing History of The Diocese and in Support of the Chapter 11 Petition and First Day Pleadings* and the *Declaration of Mark Mashaw Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings*, filed contemporaneously herewith and incorporated herein by reference.

**RELIEF REQUESTED**

3. Bankruptcy Rule 9006(c)(1) provides that the Court may reduce notice periods "for cause shown…in its discretion." FED. R. BANKR. P. 9006(c)(1). Here, the Diocese believes that it is imperative that the First Day Hearing be held on shortened notice because any delay may negatively affect the Diocese's ability to operate resulting in a permanent damage to its charitable mission and irreplaceable loss of estate assets, to the detriment of the Diocese, its estate, its creditors, and other parties in interest.

A. **The Motion to Seal**

4. The Diocese filed the Motion to Seal pursuant to sections 105 and 107 of the Bankruptcy Code, seeking entry of an order authorizing the Diocese to protect the identities of individuals whose claims are premised on allegations of sexual abuse ("Abuse Claimants"), while providing them notice of this Chapter 11 Case and notice of such events and motions as is required

3

16198891.3

by the Bankruptcy Code and applicable Bankruptcy Rules. The Diocese further seeks to share names and contact information for Abuse Claimants with the Court and Bankruptcy Clerk under seal. The Diocese also seeks to file under seal a portion of the Statement of Financial Affairs, as well as certain certificates of service, that contain identifying information relating to Abuse Claimants (the "Confidential Information").

5. The Diocese respectfully submits that the relief requested in the Motion to Seal is immediately necessary to enable the Diocese to comply with its obligations as a Chapter 11 debtor in possession while also protecting the confidential nature of sensitive information relating to Abuse Claimants.

B. **Motion to Extend Time to File Schedules**

6. The Diocese filed the Motion to Extend Time to File Schedules pursuant to sections 105(a) and 521 of the Bankruptcy Code, and Bankruptcy Rules 1007(c), 2003(a) and 9006(b)(1), seeking entry of an order extending the time to file schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases and statements of financial affairs (collectively, the "Schedules and Statements") through and including August 31, 2023 (an extension of 31 days, for a total of 45 days from the Petition Date), without prejudice to the Diocese's ability to request additional time should it become necessary.

7. The Diocese anticipates that there will be more than 300 creditors and interested parties involved in this Chapter 11 Case, including approximately 124 Abuse Claimants whose names and other identifying information the Diocese is seeking to file under seal to protect their privacy in accordance with the Motion to Seal filed contemporaneously herewith. Given the need for confidentiality, preparing the Schedules and Statements accurately and with sufficient detail and adherence to confidentiality requires significant attention from the Diocese's personnel and

advisors. Further, the Diocese's personnel will be heavily involved with public relations outreach in the days following the Petition Date, to facilitate the stabilization of the Diocese's operations and in support of its mission.

8. The relief sought through the Motion to Extend Time to File Schedules is urgently necessary to allow the key personnel of the Diocese to focus on critical operational and chapter 11 compliance issues during the early days of this Chapter 11 Case. Granting additional time to file the Schedules and Statements will allow the Diocese make a smoother transition into chapter 11 and, therefore, will ultimately maximize the value of the Diocese's estate for the benefit of creditors and all parties in interest.

C.    **The Cash Collateral Motion**

9. The Diocese filed the Cash Collateral Motion pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code, seeking entry of interim and final orders authorizing the Diocese to use cash and securities existing on or after the Petition Date that may be part of NBT Bank's prepetition collateral (the "Cash Collateral").

10. Many of the Diocese's bank accounts are held with NBT Bank, including its general operating account (the "Operating Account"). Accordingly, in addition to the prepetition liens granted to NBT Bank, NBT Bank also has a possessory lien on all funds held at NBT Bank.

11. The Diocese has an urgent and imminent need to use Cash Collateral. As described more fully in the Cash Collateral Motion, the Diocese relies upon its Operating Account to collect accounts receivable and to fund the majority of its disbursements, including for payroll, vendor and utility payments, and other expenses. Because the majority of the Diocese's unrestricted funds are held at NBT Bank, absent the ability to use Cash Collateral, the Diocese would not be able to pay wages, utility charges, and other business and operating expenses critical to carrying out the

Diocese's mission. Accordingly, it is imperative that immediate relief be granted on an interim basis.

D.    **The Wages Motion**

12.    The Diocese filed the Wages Motion pursuant to sections 105(a), 363(b)(1), 507(a)(4), 507(a)(5), 1107(a) and 1108 of the Bankruptcy Code, seeking interim and final authority for the Diocese, in its discretion to (a) pay prepetition compensation, reimbursable business expenses, benefit plans, deductions and payroll taxes, all as described herein, (b) pay and honor medical and other benefit plans on a postpetition basis, and (c) continue its employee benefit programs.

13.    The Diocese's employees are essential to the administration of the Diocese's Chapter 11 Case, the preservation of its assets and the continuation of the Diocese's mission. In addition to providing religious guidance and facilitating religious services and activities in the Diocese, the Diocese's employees also provide other critical functions. Without its employees, the Diocese would be unable to provide these services to individuals of the Roman Catholic faith and the parishes and schools within the Diocese and would also be unable to provide necessary support for the formulation of a plan of reorganization to benefit all creditors.

14.    In order to retain its employees, who are vital to the continued operation of the Diocese, and maintain morale, the Diocese must have authority to pay or otherwise satisfy all prepetition wages and benefits as set forth in the Wages Motion. The amounts to be paid to employees pursuant to the Wages Motion are reasonable compared with the importance and necessity of the employees and the losses the Diocese will likely suffer if these amounts are not paid. Accordingly, the Diocese is seeking immediate interim authority to honor its obligations to its employees.

6

16198891.3

E.  **The Taxes Motion**

15. The Diocese filed the Taxes Motion pursuant to sections 105(a), 363(c), 345(b), 364(a), 503(b)(1), 1107(a) and 1108 of the Bankruptcy Code. The Diocese seeks interim and final authority to pay, in its sole discretion, in the ordinary course of its business and on its normal due dates, all undisputed prepetition sales, gross receipts, utility-users, federal excise and use, and certain other governmental taxes, including any amounts subsequently determined to be owing upon audit, regulatory fees, including, but not limited to, federal, state and local regulatory fees, and permit or other licensing fees to the respective federal, state and local taxing authorities and other governmental agencies subsequently determined upon audit to be owed for periods prior to the Petition Date.

16. The Diocese respectfully submits that immediate relief is needed on the Tax Motion. Any delay in paying the taxes and other obligations for which authorization is sought would be detrimental to the Diocese, its creditors and its estate. The Diocese's ability to manage its operations and continue its charitable mission requires, in part, that it remain in good standing with the relevant taxing authorities. For the foregoing reasons, the Diocese submits that the interim relief requested in the Tax Motion is necessary and appropriate.

F.  **The Utilities Motion**

17. Through the Utilities Motion, the Diocese is seeking entry of interim and final orders pursuant to sections 105(a) and 366 of the Bankruptcy Code to (a) prohibiting utility companies that provide service to the Diocese from altering, refusing or discontinuing service on account of prepetition amounts due, (b) determining that the Diocese's furnishing of deposits to utility companies, upon their timely request for adequate assurance, in an amount equal to one month of the Diocese's estimated average monthly usage, constitutes adequate assurance of

payment, and (c) establishing a procedure to address assertions by utility companies that they are entitled to additional adequate assurance.

18. Immediate interim relief is required on the Utility Motion in order to ensure uninterrupted utility service is provided to the Diocese post-petition by the utility companies.

G. <u>The Cash Management Motion</u>

19. The Diocese filed the Cash Management Motion pursuant to sections 105(a), 345(b), and 363(c)(1) of the Bankruptcy Code, seeking interim and final orders authorizing the Diocese to continue to use its existing Cash Management System in the ordinary course of its operations.

20. Without the relief requested within the Cash Management Motion, the Diocese would be required to open new debtor-in-possession accounts, which would significantly disrupt the Diocese's existing cash management practices, day-to-day operations, and charitable mission. Given the importance of the relief sought through the Cash Management Motion, the Diocese respectfully submits that the interim relief sought therein is urgently needed to avoid a significant disruption to the Diocese's operations and mission.

H. **<u>The Related Party Liquidity Motion</u>**

21. The Diocese filed the Related Party Liquidity Motion seeking interim and final orders pursuant to sections 105(a), 345(b), 363(c), 503(b)(1), 541(b)(1), 541(d), and 1108 of the Bankruptcy Code, allowing the Diocese to continue to (a) accept deposits, honor withdrawals, originate loans, and otherwise administer the Diocese of Ogdensburg Deposit & Loan Fund (the "<u>Fund</u>"), and (b) administer The Roman Catholic Diocese of Ogdensburg, New York, Trust Fund (the "<u>DTF</u>"), in each case in the ordinary course of business and consistent with prepetition procedures and practices.

22.     Immediate interim relief is necessary on the Liquidity Motion in order to permit the Diocese to accept deposits into the Fund and honor withdrawals by parishes and other related Catholic entities.  Continuing ordinary course prepetition practices with respect to the Fund and the DTF is critical to supporting the ongoing operations of parishes and other related Catholic entities upon whom the Diocese relies for its own revenue and for support in carrying out the mission of the Catholic Church.

I.    **The Insurance Motion**

23.     The Diocese filed the Insurance Motion pursuant to sections 105(a) and 363 of the Bankruptcy Code, seeking interim and final authority to continue to maintain and operate its insurance program in the ordinary course of business, consistent with its past practices and to pay prepetition or postpetition claims, premiums, defense costs, obligations and administrative costs related to the Insurance Program.  Interim relief is necessary to allow the Diocese, its parishes, and other participating Catholic entities, to maintain adequate insurance protection and to support ongoing operations of the Diocese and other insurance program participants.

J.    **The Stay Confirmation Motion**

24.     The Diocese filed the Stay Confirmation Motion pursuant to sections 105(a) and 362 of the Bankruptcy Code, seeking confirmation that section 362 of the Bankruptcy Code automatically stays all proceedings in any lawsuit or other action where the Diocese is named as a party defendant, in accordance with the Second Circuit's recent controlling decision in *Bayview Loan Servicing LLC v. Fogarty (In re Fogarty)*, 39 F.4th 62 (2d Cir. 2022).

25.     The breathing spell provided through the automatic stay is one of the hallmarks of bankruptcy proceedings, and is critical to achieving a successful reorganization.

16198891.3

26.     The Diocese is a named defendant in 124 pending state court lawsuits where plaintiffs are seeking to establish liability against the Diocese arising from or relating to allegations of child sexual abuse. Immediate relief is necessary to ensure that plaintiffs and state courts overseeing the actions are aware of the Automatic Stay.

K.      **Application to Employ Claims and Noticing Agent**

27.     Pursuant to the Application to Employ Claims and Noticing Agent, the Diocese seeks to retain Stretto, Inc. ("Stretto") as claims and noticing agent ("Claims and Noticing Agent") in the Chapter 11 Case, in accordance with 28 U.S.C. § 156(c), and section 105(a) of the Bankruptcy Code.

28.     The Diocese anticipates that there will be more than 300 creditors or other interested entities to be noticed in these cases, including approximately 124 individuals whose claims relate to alleged instances of abuse and whose names and other identifying information the Diocese is seeking to maintain under seal out of respect for their privacy. Utilization of a Claims and Noticing Agent will relieve the Court and the Diocese of a significant administrative burden and will also provide a mechanism by which proofs of claim can be filed confidentially and by which any party in interest who wishes to effect notice on all creditors, including those whose names and addresses are filed under seal, may do so without the necessity to disclose any confidential identifying information.

29.     The Diocese believes that the employment of Stretto to render the types of services requested herein are necessary, appropriate, and in the best interests of the Diocese's estate. Immediate relief is necessary to ensure that all notices are timely delivered to parties in interest without burdening the Diocese, its counsel, or the Court Clerk's office.

L. **Application to Employ Administrative Advisor**

30. The Diocese seeks an order pursuant to sections 105(a), 327(a), 328(a), 363(b), and 507(a) of the Bankruptcy Code, authorizing the Diocese to employ Stretto as its chapter 11 administrative advisor ("Administrative Advisor"), providing the Diocese with experienced professionals and services that are essential to successful chapter 11 cases.

31. Employing Stretto as Administrative Advisor will ensure that important tasks associated with preparing the Diocese's schedules, proving legal noticing, maintaining confidentiality, including maintaining a confidential data room, and administering plan balloting and tabulation procedures, are properly and smoothly completed. The Diocese respectfully submits that this relief is needed to help manage administrative tasks with respect to the many creditors and other parties in interest that are expected to be involved in the Diocese's Chapter 11 Case.

## BASIS FOR RELIEF REQUESTED

32. Local Rule 9013-1(e) requires that motions be served 21 days prior to the hearing date, and Bankruptcy Rule 9006(c)(1) further provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced."

33. The Diocese requires the relief sought in the First Day Motions on an immediate basis in order to continue its operations and charitable mission and to comply with the requirements of the Bankruptcy Code and the Bankruptcy Rules.

34. In light of the forgoing, the Diocese respectfully submits that sufficient cause exists for scheduling the First Day Hearing on shortened notice and refers the Court to the Declaration of Charles J. Sullivan, Esq. dated July 17, 2023 pursuant to Local Bankruptcy Rule 9013-5(b) in

support of the Diocese's request for an order shortening notice for the First Day Hearing (the "Sullivan Declaration") attached hereto as *Exhibit A*.

## NOTICE

35. On July 17, 2023, the Diocese provided copies of each of the First Day Motions to the office of the United States Trustee for the Northern District of New York. Upon entry of an order reducing time for our First Day Hearing, the Diocese will immediately provide a copy of this Application, the Sullivan Declaration, and the order to the United States Trustee by electronic mail. In light of the nature of the relief requested herein, the Diocese respectfully submits that no further notice is necessary.

**WHEREFORE**, the Diocese respectfully requests that this Court enter an order in substantially the form attached hereto as *Exhibit B* (a) scheduling the First Day Hearings for 10:00 a.m. (prevailing Eastern Time) on July 17, 2023, (b) reducing the notice period required for the First Day Hearings, and (c) granting such other and further relief as the Court may deem just and proper.

Dated: July 17, 2023

BOND, SCHOENECK & KING, PLLC

By:   */s/ Charles J. Sullivan*
Stephen A. Donato (Bar Roll No. 101522)
Charles J. Sullivan (Bar Roll No. 507717)
Sara C. Temes (Bar Roll No. 514148)
Grayson T. Walter (Bar Roll No. 518237)
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Fax: (315) 218-8100
sdonato@bsk.com
csullivan@bsk.com
stemes@bsk.com
gwalter@bsk.com

*Proposed Attorneys for The Roman Catholic Diocese of Ogdensburg, New York*

16198891.3