UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of<br>Ogdensburg, New York,<br><br>Debtor. | Case No. 23-60507 (PGR)<br><br>Chapter 11 |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE
DIOCESE TO FILE PORTIONS OF SCHEDULE F, THE
STATEMENT OF FINANCIAL AFFAIRS, THE MASTER
CREDITOR MAILING MATRIX, CERTAIN CERTIFICATES OF
SERVICE AND OTHER PLEADINGS AND DOCUMENTS UNDER SEAL**

The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), by and through its undersigned counsel, hereby moves the Court (this "Motion") for entry of an order, substantially in the form of the proposed order attached hereto as *Exhibit A*, authorizing the Diocese to file under seal portions of Schedule F, the Statement of Financial Affairs, the Master Creditor Mailing Matrix and certain certificates of service, and to seek approval to file under seal any additional pleadings in the Diocese's chapter 11 case that may contain Confidential Information (as defined below) on an expedited basis, and granting related relief. In support of this Motion, the Diocese respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

4. The statutory and rule-based predicates for the relief requested herein are sections 105 and 107 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code"),

11951767.5

and Rules 1007, 9018, and 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5. On July 17, 2023 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Diocese's chapter 11 case (this "Chapter 11 Case"). The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in this Chapter 11 Case, and as of the date of this filing, no official committees have been appointed or designated.

6. Information regarding the Diocese's history, business operations and structure, and the events leading up to this Chapter 11 Case is set forth in the *Declaration of Rev. Kevin O'Brien Regarding Structure and Pre-Filing History of The Diocese and in Support of the Chapter 11 Petition and First Day Pleadings* and the *Declaration of Mark Mashaw Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings*, filed contemporaneously herewith and incorporated herein by reference.

7. The Diocese does not, by filing its petition for relief and other documents in this Chapter 11 Case, waive any of its rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution for the State of New York, the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, New York trust law, and the rights to object to disclosure of information and to contend that certain assets which may be discussed in the Motion are not property of the estate.

## THE CONFIDENTIAL INFORMATION

8. Many of the unsecured creditors in this Chapter 11 Case are individuals whose claims against the Diocese are premised on allegations of sexual abuse ("Abuse Claimants"). Some Abuse Claimants have filed tort claims against the Diocese following the passage of New York's Child Victims Act and have elected to file their litigation claims against the Diocese pseudonymously, with their real identity to be revealed only to the defendants in the course of litigation and with the understanding that their identities would not be publicly disclosed. The Diocese has also previously entered into out-of-court settlements with some Abuse Claimants where the Diocese agreed to keep the Abuse Claimant's name confidential but did not require the Abuse Claimant to keep the settlement confidential.

9. In light of the sensitive nature of the claims of Abuse Claimants, to avoid causing unnecessary additional anguish or embarrassment, and to encourage such individuals to feel safe and secure in advancing their claims without fear of retribution or reprisal, the Diocese submits that it would be inappropriate and potentially harmful to require the public disclosure of identifying information relating to Abuse Claimants (the "Confidential Information").

10. As described below, the Diocese has been operating under confidentiality restrictions for some time, and believes that it is imperative that the decision to come forward and identify oneself as an Abuse Claimant be left to the individuals in question, and that such accommodations can be made without adversely affecting the rights of any other parties in interest.

## RELIEF REQUESTED

11. By this Motion, the Diocese respectfully requests permission to protect the identities of Abuse Claimants while providing them notice of this Chapter 11 Case and notice of such events and motions as is required by the Bankruptcy Code and applicable Bankruptcy Rules.

The Diocese further seeks to share names and contact information for Abuse Claimants with the Court and Bankruptcy Clerk under seal. The Diocese also seeks to file under seal a portion of the Statement of Financial Affairs, as well as certain certificates of service, that contain Confidential Information.

12. It is proposed that Abuse Claimants represented by counsel be given notices in the Diocese's Chapter 11 Case only through their respective counsel, and that service on their respective counsel be considered adequate service.

13. Item seven of Official Form 207 (Statement of Financial Affairs) requires the Diocese to disclose all pending legal actions in which the Diocese is a party, including the case title and case number. The Diocese is seeking authority to redact its responses to item seven on the publicly filed Statement of Financial Affairs and to file under seal such portion of its responses to item seven which contain the name, case number and any other identifying information relating to Abuse Claimants who have filed lawsuits against the Diocese in their own name.

14. Similarly, the Diocese will be required from time to time to serve notice of certain pleadings, orders and other events with respect to this Chapter 11 Case upon various parties in interest, including, on occasion, Abuse Claimants and individuals who may have been accused of perpetrating acts of abuse or of engaging in other improper and/or illegal conduct. The Diocese is seeking authority to redact from such certificates of service the names and addresses of all Abuse Claimants to protect their privacy. Additionally, while the Diocese has no intention of concealing the identity of confirmed perpetrators (in fact, the Diocese publishes on its website a list of those individuals against whom substantiated allegations of abuse of a minor have been made) the Diocese respectfully submits that for public safety reasons it should be allowed to redact the address of any confirmed perpetrators, and the name and address of any alleged perpetrators, from

any publicly filed certificates of service to reduce the risk of vigilantism or other breaches of the peace. The Diocese seeks authority to file unredacted copies of all such certificates of service under seal.

 15. The Diocese requests in this Motion that the Court enter an order:

  i. Authorizing the Diocese to file under seal portions of Schedule F, the Statement of Financial Affairs, the Master Creditor Mailing Matrix and certain certificates of service and to seek approval on an expedited basis to file under seal any other pleadings, reports or other documents that might be filed from time to time in this Chapter 11 Case, that, if made publicly available, would disclose any of the Confidential Information;

  ii. Authorizing the Diocese to publicly file redacted copies of the Master Creditor Mailing Matrix, Schedule F, the Statement of Financial Affairs and certain certificates of service so as to eliminate Confidential Information from those documents;

  iii. Authorizing the Diocese to identify, schedule and notify Abuse Claimants who are represented by counsel by and through their counsel on Schedule F and the Master Creditor Mailing Matrix;

  iv. Authorizing the Diocese to provide copies of the sealed portions of any such pleadings, reports or documents to the Office of the United States Trustee, as necessary, and authorizing the United States Trustee to use such documents in the discharge of its duties and obligations, including but not limited to solicitation and appointment of any committee under 11 U.S.C. § 1102 but as protected by 11 U.S.C. § 107(c)(3);

  v. Authorizing the Diocese to provide sealed reports, documents and pleadings to counsel for any committee appointed under 11 U.S.C. § 1102 who has been retained pursuant to Court approval, but only after confidentiality procedures are agreed upon between the Diocese and counsel for any such committee;

  vi. Authorizing the Diocese to file a full and complete unredacted copy of the mailing matrix above (the "Confidential Mailing List") with the Court to be held under seal pending further order of the Court;

  vii. Providing that notwithstanding any applicable rule to the contrary, the relief granted under the order shall be immediately effective and enforceable upon entry; and

5

11951767.5

  viii.  Providing that any order granting the relief requested in this Motion is without prejudice to any future determined confidentiality protocol regarding filing proofs of claim and objections to proofs of claim.

## BASIS FOR RELIEF

16. The relief sought herein is designed to protect the confidential nature of sensitive information relating to Abuse Claimants and confidential settlement terms and to allow the Diocese to file necessary pleadings with respect to commencement of this Chapter 11 Case and comply with applicable requirements of disclosure required by the Bankruptcy Code and the Bankruptcy Rules.

17. The Diocese respectfully submits that it should be authorized to file documents that contain Confidential Information under seal. The Diocese acknowledges that the general policy regarding access to information in bankruptcy proceedings favors openness. *See In re Farmland Indus., Inc.*, 290 B.R. 364, 367 (Bankr. W.D. Mo. 2003). However, that policy is subject to certain express statutory limitations set forth in section 107 of the Bankruptcy Code which provides, in relevant part:

> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> . . .
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.
>
> (c) (1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of . . . unlawful injury to the individual or the individual's property:
>
> (A) any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.
>
> . . .

11 U.S.C. § 107.

11951767.5

18. Bankruptcy Rule 9018 defines the procedures by which a party may move for relief under section 107(b):

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires … to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code[.]

Fed. Bankr. P. 9018. Similarly, Bankruptcy Rule 9037 provides for filings to be redacted or filed under seal where they contain the name or other identifying information of individuals, other than the debtor, known to be and identified as a minor, and provides for protective orders directing redaction or limitations on access to other information for cause. *See* Fed R. Bankr. P. 9037(a), (c) and (d).

19. The Ninth Circuit has observed that the language of section 107(b)(2) is mandatory and requires the bankruptcy court, upon request by the affected person or party, to issue a protective order with respect to matters that are scandalous or defamatory. *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Oregon)*, 661 F.3d 417, 430-431 (9th Cir. 2011). The Ninth Circuit further held in *Father M.* that "scandalous" must be given its plain meaning for purposes of section 107(b)(2), and that a matter is "scandalous" if it is "disgraceful, offensive, shameful and the like." *Id*. at 432. The *Father M.* court went on to hold explain that "[u]nder the common usage of the word, allegations that a priest has sexually abused children are most assuredly 'scandalous'. . ." Although *Father M.* addressed the issue from the perspective of clergy members seeking to protect themselves from being mislabeled as perpetrators, the Diocese respectfully submits that, unless an Abuse Claimant wishes to come forward and tell their story to the world, the public suggestion that an individual is a victim of such abuse is sufficiently intrusive into that person's personal privacy as to make the matter "scandalous" within the meaning of section 107(b)(2).

7

11951767.5

20. The Diocese acknowledges that some courts have found mere reputational damage or the perceptions of third parties to be insufficient to merit a protective order under section 107(b)(2). *See*, *e.g.*, *Neal v. Kansas City Star (In re Neal)*, 461 F.3d 1048, 1054 (8th Cir. 2006) (holding that former judge's listing of attorneys as creditors should be made publicly available where "[p]otential scandal only surfaces when one looks 'outside the lines' of the bankruptcy proceeding . . . and speculates as to motives of the creditor and the debtor."). However, in contrast to cases such as *Neal* where the mere disclosure of an individual's identity, without more, did not imply anything other than a standard debtor-creditor relationship, in the present case there is simply no way to identify the Abuse Claimants without at the same time disclosing to the world that such individuals were allegedly the victims of abuse, information which is by its very nature incredibly personal and painful and which, regrettably, still carries a stigma for many victims. Accordingly, the Diocese submits that the Confidential Information should be protected from disclosure not only under section 107(b)(2) of the Bankruptcy Code, but also pursuant to section 107(c) in order to avoid the potential for any further injury to Abuse Claimants by way of harassment, retaliation, or otherwise. *C.f.*, *Traversa v. Educ. Credit Mgmt. Corp. (In re Traversa)*, 2008 Bankr. LEXIS 1280 (Bankr. D. Ct. April 16, 2008) (finding protective order appropriate to avoid potential unlawful employment discrimination if specifics of alleged disabilities at issue in adversary proceeding became available to potential employers). As noted above, and consistent with section 107(c)(3) of the Bankruptcy Code, the Diocese proposes to provide the office of the United States Trustee with access to all documents filed in this Chapter 11 Case, subject to the United States Trustee's obligation not to disclose any information specifically protected by court order.

11951767.5

21. Filing the Confidential Information under seal is additionally supported by Bankruptcy Rule 1007(j), which provides:

> (j) Impounding of Lists. On motion of a party in interest and for cause shown the court may direct the impounding of lists filed under this rule, and may refuse to permit inspection by any entity. The court may permit inspection or use of lists, however, by any party in interest on terms prescribed by the court.

Fed. R. Bankr. P. 1007(j). The Diocese respectfully submits that sufficient cause exists here to justify the relief requested in this Motion pursuant to Rule 1007(j).

22. State courts have already considered this issue and decided in many cases to permit Abuse Claimants to proceed anonymously, with plaintiffs only disclosing their actual identities to the defendants. For example, certain Abuse Claimants obtained a court order allowing them to file claims using a pseudonym. *Anonymous MAV v. Roman Catholic Diocese of Ogdensburg, et al.*, New York County Index No. 950311/2020 [Doc. No. 16]. A true and correct copy of this order is attached hereto as ***Exhibit B***.

23. Because the Diocese has already been ordered by state courts to maintain the confidentiality of Abuse Claimant identifying information in several cases, it has a legal duty to protect the identities of these Abuse Claimants. Moreover, the Diocese strongly believes that it has a moral and ethical duty to protect the identities of all Abuse Claimants unless they choose to identify themselves. Subject to the limitations imposed by sections 107(b) and (c) of the Bankruptcy Code, the Diocese has no intention to oppose any steps by individual Abuse Claimants who wish to make their identities public or to disclose Confidential Information regarding their claims; however, the Diocese believes that such a decision should be of the Abuse Claimants' own accord.

24. In addition to the filing of the Master Creditor Mailing Matrix under seal, the Diocese will file a redacted version of the Master Creditor Mailing Matrix on the docket for use

9

by other parties seeking to provide notice in this Chapter 11 Case. The Diocese also intends to seek approval of the retention of a claims and noticing agent to help fulfill these confidential noticing procedures, to keep claimants informed of developments in the Chapter 11 Case, and to assist in the claims and solicitation processes with respect to all Abuse Claimants and other creditors in this Chapter 11 Case.

25. Although some Abuse Claimants may have filed suit against the Diocese in their own name, it is possible they did so without being aware that it was possible to seek authority to sue using a pseudonym. Additionally, even if an Abuse Claimant knowingly assented to having his or her name included as part of the public record in a private lawsuit, they likely did not contemplate at the time that their lawsuit would be included among the disclosures required of the Diocese in connection with this Chapter 11 Case. The Diocese further submits that the media scrutiny and exposure afforded to this Chapter 11 Case is likely to be well beyond the scope of what any individual Abuse Claimant could have reasonably expected. Therefore, to afford the greatest degree of privacy possible to Abuse Claimants, the Diocese respectfully submits that their names should be shielded from public disclosure unless an Abuse Claimant elects to make their identity public.

26. Regrettably, many claims asserted against the Diocese relate to alleged instances of abuse of minors. The Diocese has been able to substantiate some, but by no means all, such allegations. However, even in the case of allegations that have been substantiated by the Diocese following an independent investigation, the alleged abuse perpetrators may not have been criminally charged, tried, or convicted, found liable in a civil capacity, or otherwise accorded due process of law and the opportunity to defend themselves before any court of competent jurisdiction. Moreover, even where those individuals are responsible for the acts of abuse they

are alleged to have committed, the Diocese respectfully submits that identifying such individuals as alleged abusers, and publishing their names and addresses in certificates of service required to be filed in this Chapter 11 Case, will create an undue risk to the physical well-being of such individuals, as well as the general public safety. Persons understandably enraged over the accusations asserted by the Abuse Claimants may seek to obtain "justice" through acts of vigilantism or harassment, and may otherwise pursue retaliation by causing disturbances and breaches of the peace where such alleged perpetrators reside. Accordingly, the Diocese respectfully suggests that prudence dictates that the addresses of such alleged perpetrators and, in the case of individuals against whom allegations have not yet been substantiated, their names, be redacted and withheld from the public record with respect to any certificates of service that may otherwise be required to be filed in this Chapter 11 Case.

27. Relief similar to that requested in this Motion has been requested and granted in a number of other diocesan cases on similar facts. *See In re The Roman Catholic Diocese of Albany, New York*, Case No. 23-10244 (Bankr. N.D.N.Y. May 11, 2023) [Docket No. 195]; *In re The Roman Catholic Diocese of Syracuse, New York*, Case No. 20-30663 (Bankr. N.D.N.Y., June 24, 2020) [Docket No. 24]; *In re The Diocese of Buffalo, N.Y.*, Case No. 20-10322 (Bankr. W.D.N.Y, Mar. 4, 2020) [Docket No. 53]; *In re The Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y., Sep.13, 2019) [Docket No. 29]; *In re Archbishop of Agaña*, Case No. 19-00010 (Bankr. D. Guam., Jan. 18, 2019) [Docket No. 45]; *In re Roman Catholic Church of the Archdiocese of Santa Fe*, Case No. 18-13027 (Bankr. D. N.M., Dec. 4, 2018) [Docket No. 31]; *In re The Diocese of New Ulm*, Case No. 17-30601 (Bankr. D. Minn. March 7, 2017) [Docket No. 29]; *In re Diocese of Duluth*, Case No. 15-50792 (Bankr. D. Minn., Dec. 17, 2015) [Docket No. 24]; *In re The Archdiocese of Saint Paul and Minneapolis*, Case No. 15-30125 (Bankr. D. Minn., Jan. 1, 2015)

11951767.5

[Docket No. 53]; *In re Roman Catholic Church of the Diocese of Gallup*, Case No. 13-13676 (Bankr. D. N.M., Nov. 25, 2013) [Docket No. 63]; *In re The Catholic Bishop of Spokane*, Case No. 04-08822 (Bankr. E.D. Wash., Dec. 6, 2004) [Docket No. 18]; *In re The Roman Catholic Church of the Diocese of Tucson*, Case No. 04-04721 (Bankr. D. Az., Sept. 27, 2004) [Docket No. 35].

## RESERVATION OF RIGHTS

28.     Nothing in this Motion is intended or should be construed as an admission as to the validity, priority or amount of any claim against the Diocese, a waiver of the Diocese's right to dispute any claim or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code, nor does the Diocese waive its rights under the Code of Canon law, or any applicable State or Federal law, and the Diocese expressly reserves its rights with respect thereto.

## NOTICE

29.     Notice of this Motion will be given to (i) the Office of the United States Trustee for the Northern District of New York, (ii) the Diocese's twenty (20) largest unsecured creditors as set forth in the list filed with the Diocese's petition, (iii) all required governmental agencies and (iv) the Diocese's banks.  In light of the nature of the relief requested herein, the Diocese submits that no further notice is required.

## NO PRIOR REQUEST

30.     The Diocese has not previously sought the relief requested herein from this or any other court.

**WHEREFORE**, for the reasons set forth above, the Diocese respectfully requests that this Court enter an order, in substantially the form attached hereto as *Exhibit A*, authorizing the

11951767.5

Diocese to file under seal portions of Schedule F, the Statement of Financial Affairs, the Master Creditor Mailing Matrix and certain certificates of service, and requesting consideration on shortened notice for the filing under seal of any additional pleadings in this chapter 11 case that may contain Confidential Information, and granting such other and further relief as the Court deems just and proper.

Dated: July 17, 2023                                                BOND, SCHOENECK & KING, PLLC

By: */s/ Charles J. Sullivan*
Stephen A. Donato (Bar Roll No. 101522)
Charles J. Sullivan (Bar Roll No. 507717)
Sara C. Temes (Bar Roll No. 514148)
Grayson T. Walter (Bar Roll No. 518237)
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Fax: (315) 218-8100
sdonato@bsk.com
csullivan@bsk.com
stemes@bsk.com
gwalter@bsk.com

*Proposed Attorneys for The Roman Catholic Diocese of Ogdensburg, New York*