UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23-60507 (PGR) |
| The Roman Catholic Diocese of | ) | |
| Ogdensburg, New York, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE USE OF CASH COLLATERAL, AND (B) GRANTING ADEQUATE PROTECTION

The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), by and through its undersigned counsel, hereby moves the Court (this "Motion") for entry of interim and final orders, in substantially the forms attached hereto as *Exhibits A* and *B* respectively, (a) authorizing the Diocese's use of cash collateral, and (b) granting adequate protection pursuant to 11 U.S.C. §§ 105, 361 and 363.  In support of this Motion, the Diocese respectfully represents as follows:

## JURISDICTION

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

4.     The statutory and rule-based predicates for the relief requested herein are sections 105, 361 and 363 of title 11 of the United States Code (11 U.S.C. § 101 *et seq*., the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5.     On July 17, 2023 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the

Northern District of New York (the "Court"), commencing the Diocese's chapter 11 case (this "Chapter 11 Case"). The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in this Chapter 11 Case, and as of the date of this filing, no official committees have been appointed or designated.

6.      Information regarding the Diocese's history, business operations and structure, and the events leading up to this Chapter 11 Case is set forth in the *Declaration of Rev. Kevin O'Brien Regarding Structure and Pre-Filing History of The Diocese and in Support of the Chapter 11 Petition and First Day Pleadings* and the *Declaration of Mark Mashaw Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings*, filed contemporaneously herewith and incorporated herein by reference.

7.      The Diocese does not, by filing its petition for relief and other documents in this bankruptcy case, waive any of its rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution for the State of New York, the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, New York trust law, and the rights to object to disclosure of information and to contend that certain assets discussed in the Motion are not property of the estate.

## **STATEMENT PURSUANT TO RULE 4001(b)(1)(B)**

8.      The Diocese provides the following summary of the material provisions of this Motion pursuant to Bankruptcy Rule 4001(b)(1)(B):

> (i)      The creditor who has an interest in the Cash Collateral is NBT Bank, National Association ("NBT"). *See* ¶ 9-10.

> (ii)     The Diocese is seeking authorization to use Cash Collateral to pay employee wages and other operating and/or administrative expenses incurred in this Chapter 11 Case, as well as and such other payments as may be authorized by the Court by separate order. *See* ¶¶ 11, 13.

2

(iii)    The Diocese is seeking interim authorization to use Cash Collateral through August 15, 2023 and continued use of Cash Collateral pursuant to the Final Order (as defined herein).  *See ¶¶* 18-22.

(iv)    In order to adequately protect NBT's interest in the Cash Collateral, the Diocese is proposing to grant NBT rollover liens as described herein.  *See ¶¶ 16-17.*

### **THE DIOCESE'S PREPETITION SECURED INDEBTEDNESS**

9.    As of the Petition Date, the Diocese is indebted to NBT pursuant to the following transactions and documents:

(i)    Letter of Credit Application and Agreement, together dated as of November 9, 2020 (the "NBT LOC Agreement"), pursuant to which NBT made available to the Diocese a $1,950,707 Letter of Credit (the "NBT Letter of Credit") issued by NBT to the New York State Worker's Compensation Board (the "WCB") to secure the Diocese's obligations under its self-insured worker's compensation program;[1] and

(ii)    Specific Security Agreement (Pledged Account) dated as of November 9, 2020 (the "NBT Pledge Agreement"), pursuant to which the Diocese pledged all of its property in the possession of, or subject to the control of NBT including, without limitation, its interest in approximately $2.3 million of securities held in a blocked investment account at NBT (the "Blocked NBT Account"), to secure its obligations to repay NBT for any amounts drawn on the NBT Letter of Credit.

10.    The NBT LOC Agreement, NBT Letter of Credit, and NBT Pledge Agreement are collectively referred to herein as the "Prepetition Debt Documents" and the securities held in the Blocked NBT Account, as well as any cash or other collateral subject to NBT's lien under the Prepetition Debt Documents, are collectively referred to in this Motion as the "Prepetition Collateral."

---

[1]  As of the date of this Motion, the WCB has made no attempt to draw upon the NBT Letter of Credit and, upon information and belief, there exists no cause for the WCB to do so.

## RELIEF REQUESTED

11.     The Diocese seeks to use cash and securities (other than cash or securities held in the Blocked NBT Account) existing on or after the Petition Date that may be part of the Prepetition Collateral (the "Cash Collateral").  Additionally, the Diocese seeks the ability to continue to manage its investments in the Blocked NBT Account in accordance with its prepetition practices and the Prepetition Debt Documents, and to provide NBT with adequate protection of its respective interests in the Prepetition Collateral by providing rollover liens.  Accordingly, the Diocese hereby requests that the Court grant the following relief:

(i)      authorize the Diocese, pursuant to section 363(c) of the Bankruptcy Code, to use Cash Collateral to make payments and operate its business in the ordinary course, consistent with its prepetition practices, to pay administrative expenses incurred in this Chapter 11 Case, and to make such other payments as may be authorized by the Court by separate order;

(ii)     authorize the Diocese, pursuant to section 105(a) and 363(c) of the Bankruptcy Code, to continue to manage its investments held in the Blocked NBT Account, in accordance with its prepetition practices and the Prepetition Debt Documents; and

(iii)    authorize the Diocese, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to provide adequate protection to NBT in the form of replacement liens.

## BASIS FOR RELIEF

### A.     The Diocese Has an Immediate Need to Use Cash Collateral

12.     The Diocese has an urgent need to use Cash Collateral.  Many of the Diocese's bank accounts are held with NBT, including its general operating account (the "Operating Account").  Accordingly, in addition to the liens granted to NBT pursuant to the Prepetition Debt Documents, NBT also has a possessory lien on all funds held in NBT bank accounts.

13.     As described more fully in the Diocese's motion seeking entry of an order authorizing the continued maintenance of its bank accounts which was filed contemporaneously

4

herewith, the Diocese relies upon its Operating Account to collect accounts receivable and to fund

the majority of its disbursements, including for payroll, vendor and utility payments, and other

expenses. Because the majority of the Diocese's unrestricted funds are held at NBT, absent the

ability to use Cash Collateral, the Diocese would not be able to pay wages, utility charges, and

other business and operating expenses critical to carrying out the Diocese's mission.

### B.    The Interests of NBT Are Adequately Protected

14.    Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may

only use "cash collateral" with the consent of the secured party with an interest therein or court

approval. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code further provides

that, upon request of an entity that has an interest in property used, sold or leased by a debtor, the

court shall prohibit or condition the use of such property as is necessary to provide adequate

protection of such entity's interest. *See* 11 U.S.C. § 363(e).

15.    Appropriate adequate protection is decided on a case-by-case basis. *See e.g.*, *In re*

*Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Mosello*, 195 B.R. 277, 289 (Bankr.

S.D.N.Y. 1996); In re Beker Indus. Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); *see also In re JKJ*

*Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (adequate protection is a flexible

concept that is determined by considering the facts of each case) (*citing In re O'Connor*, 808 F.2d

1393, 1396-97 (10th Cir. 1987)). Although adequate protection is not defined in the Bankruptcy

Code, section 361 of the Bankruptcy Code provides the following three (3) nonexclusive examples

of what may constitute adequate protection:

> (1)    requiring the [debtor] to make a cash payment or
> periodic cash payments to such entity, to the extent that the
> ... use ... under section 363 ... results in a decrease in the
> value of such entity's interest in such property;

(2)      providing to such entity an additional or replacement lien to the extent that such ... use ... results in a decrease in the value of such entity's interest in such property; or

(3)      granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.  Essentially, with the provision of adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use.  *See In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *Beker Indus.*, 58 B.R. at 736; *see also In re Nice*, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral").

### *The Proposed Adequate Protection*

16.      In order to adequately protect any interest NBT may have in the Cash Collateral, the Diocese proposes to grant NBT, to the extent of any diminution in the value of its interest in the Prepetition Collateral, and effective as of the Petition Date, perfected replacement security interests in, and valid, binding, enforceable and perfected liens (the "NBT Rollover Liens"), on all of the Diocese's cash, deposit accounts, and investment property in the possession of, or subject to the control of, NBT, and all proceeds of the foregoing, whether in existence on the Petition Date or thereafter created, acquired or arising (collectively, the "Postpetition Collateral") *provided*, *however*, that the Postpetition Collateral shall not include, and the NBT Rollover Liens shall not attach to, any funds or property held by the Diocese (i) for the purpose of administering its insurance programs, (ii) in trust for the benefit of parishes or other Catholic entities within the Diocese, (iii) which represent trust fund taxes or employee payroll deductions, or (iv) which are endowed funds or subject to donor restrictions on use.

6

17.     Because the value of the Blocked NBT Account is already in excess of NBT's potential exposure under the NBT Letter of Credit, and because the WCB has not drawn on the NBT Letter of Credit, nor is there any reason for the WCB to do so, the Diocese submits that the proposed NBT Rollover Liens more than adequately protect NBT's interest in the Cash Collateral.

**C.      Interim Approval Should be Granted**

18.     The Diocese seeks interim approval of the use of Cash Collateral through August 15, 2023 to pay only (i) reasonable and necessary expenses to be incurred in the ordinary course in connection with the operation of its business and fulfilment of its religious mission, (ii) administrative expenses incurred in connection with this Chapter 11 Case, and (iii) employee wages and such other payments as may be authorized by separate order of the Court.

19.     The Diocese respectfully requests that the Court conduct a preliminary hearing on this Motion and authorize the Diocese to use Cash Collateral on an interim basis pending a hearing to consider authorizing such use on a final basis.  Interim access to the Cash Collateral will ensure that the Diocese is able to avoid immediate and irreparable harm at the outset of this Chapter 11 Case.

20.     Bankruptcy Rule 4001(b)(2) governs the procedures for obtaining approval to use cash collateral and it provides:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion.  If the motion so requests, the court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(b)(2).

7

12044615.7

21.     After the final hearing, Bankruptcy Rule 4001(b) does not limit the use of cash collateral solely to those amounts necessary to prevent immediate and irreparable harm to the estate, and the debtor may use such amounts as it deems prudent in the operation of its business. *Cf. In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) (approving at the final hearing debtor in possession financing in excess of what had been held to be "necessary to avoid immediate and irreparable harm" at the interim hearing).

22.     The Diocese submits that, for the reasons set forth herein, immediate access to Cash Collateral is necessary to allow the Diocese to continue to operate and to preserve the value of the Diocese's estate for the benefit of all parties in interest.

### D.     Request for Final Hearing

23.     Pursuant to Bankruptcy Rule 4001(b)(2), the Diocese requests that the Court schedule a hearing to consider entry of an order authorizing the use of Cash Collateral on a final basis (the "Final Order"), and that the Final Order authorize the Diocese to use Cash Collateral in accordance with its business judgment, subject only to the Bankruptcy Code's limitations on paying prepetition claims as the same may be modified by any order of the Court authorizing such payments.  The Diocese further request that the hearing to consider entry of the Final Order be held no later than thirty (30) days after the Petition Date.

### WAIVER OF NOTICE AND STAY REQUIREMENTS

24.     To implement the foregoing successfully, the Diocese seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rules 6004(h), 7062, 9014 or otherwise.

8

## RESERVATION OF RIGHTS

25.     Nothing in this Motion, nor any payment made pursuant to the relief sought herein, if granted, is intended or should be construed as an admission as to the validity, priority or amount of any claim against the Diocese, a waiver of the Diocese's right to dispute any claim or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code and the Diocese expressly reserves its rights with respect thereto.

## NOTICE

26.     Notice of this Motion will be given to (i) the Office of the United States Trustee for the Northern District of New York, (ii) counsel for NBT (iii) the Diocese's twenty (20) largest unsecured creditors as set forth in the list filed with the Diocese's petition, and (iv) all required governmental agencies.  In light of the nature of the relief requested herein, the Diocese submits that no further notice is required.

## NO PRIOR REQUEST

27.     The Diocese has not previously sought the relief requested herein from this or any court.

12044615.7

**WHEREFORE**, the Diocese respectfully requests that the Court enter interim and final orders, substantially in the forms attached hereto as ***Exhibits A*** and ***B*** respectively, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated:  July 17, 2023

BOND, SCHOENECK & KING, PLLC

By:____*/s/ Charles J. Sullivan*_____
Stephen A. Donato (Bar Roll No. 101522)
Charles J. Sullivan (Bar Roll No. 507717)
Sara C. Temes (Bar Roll No. 514148)
Grayson T. Walter (Bar Roll No. 518237)
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Fax: (315) 218-8100
sdonato@bsk.com
csullivan@bsk.com
stemes@bsk.com
gwalter@bsk.com

*Proposed Attorneys for The Roman Catholic Diocese of Ogdensburg, New York*

12044615.7