UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) ) ) |
| The Roman Catholic Diocese of Ogdensburg, New York, | ) Case No. 23-60507 (PGR) ) ) Chapter 11 ) |
| Debtor. | ) ) ) |

## SUPPLEMENTAL DECLARATION OF MARK MASHAW IN SUPPORT OF THE DIOCESE'S REQUEST FOR A LIMITED WAIVER OF THE INVESTMENT REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE

Pursuant to 28 U.S.C. § 1746, Mark Mashaw hereby declares and states as follows:

1. I am a certified public accountant and the Diocesan Fiscal Officer ("DFO") for The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"). I was appointed to serve as DFO in December 2022. Prior to accepting my appointment as DFO, I was in private practice with Pinto, Mucenski, Hooper, VanHouse, & Co., where, for approximately fifteen years, I was on the audit team for the Diocese's annual independent financial audit. Based on that experience, and in my capacity as DFO, I am familiar with the assets, liabilities and sources of income for the Diocese.

2. I make this Declaration based upon (a) my personal knowledge of certain facts stated herein, (b) information supplied to me by others associated with the Diocese, (c) my review of relevant documents, (d) upon my experience and knowledge of Diocesan operations, and in further support of the *Motion for Interim and Final Orders (A) Authorizing, But Not Directing, the Diocese to (I) Continue Using Existing Bank Accounts, Banking Practices and Business Forms, (II) Maintain Investment Accounts and Practices, and (III) Continue Using Credit Cards, and (B) Granting Limited Relief From the Requirements of Bankruptcy Code Section 345(b)* [Docket No.

16512335.3

15] [Docket No. 14] (the "Motion").[1] If I was called to testify, I would testify to the facts as set forth herein. I am authorized by the Diocese to submit this Declaration.

**SIGNIFICANT PORTIONS OF THE OBJECTION HAVE BEEN RESOLVED**

3. Since the U.S. Trustee filed its Objection, the Diocese has filed it Schedules and Statement of Financial Affairs, has participated in a section 341 meeting of creditors, and has also provided a significant amount of information related to its various investments to the U.S. Trustee. The Diocese respectfully submits that it has addressed the concerns raised by the U.S. Trustee regarding the Investment Accounts' underlying investments and their allocation, and that the assets held within the Investment Accounts are subject to appropriate safeguards.

4. As set forth in the Motion, the vast majority of assets in the Investment Accounts are held for the benefit of parishes and other catholic entities, and the Diocese respectfully submits, are therefore not property of the Diocese's estate.[2]

5. The Diocese's management of the Investment Accounts is overseen by a committee comprised primarily of individuals with a background in business, finance, or accounting (the "Investment Advisory Committee"). The roles and responsibilities of the Investment Advisory Committee are set forth in an Investment Policy Statement adopted by the Diocese that provides, among other things, the Diocese's investment philosophy, guidelines for asset allocations and investment objectives. A copy of the Investment Policy Statement is attached hereto as ***Exhibit A***. The following individuals serve on the Investment Advisory Committee:

    (i)    Father Kevin O'Brien – Moderator of the Curia;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
[2] Although the Diocese asserts that most of the monies in the Investment Accounts constitute property held for the benefit of others, the Diocese is not, through this Motion, seeking a determination by the Court as to whether the Investment Accounts are property of the Diocese's estate pursuant to section 541 of the Bankruptcy Code. Accordingly, the Court does not need to make such a determination in order to grant the relief sought in the Motion.

16512335.3

(ii) H. Bruce Russell – Licensed Financial Advisor;

(iii) John Pinkerton – Regional Development Director; past City Manager for the City of Ogdensburg; Finance Committee Member – Claxton-Hepburn Medical Center; Finance Committee Member – Ogdensburg Boys' and Girls' Club;

(iv) Joseph Cosmo – Licensed Financial Advisor;

(v) Mary Lou Peters – Treasurer, St. Peters Church; Community Bank NA (retired); and

(vi) Matthew Hurteau – Licensed Financial Advisor.

6. I also serve as an advisor to the Investment Advisory Committee in my capacity as Diocesan Fiscal Officer.

7. Additionally, the Investment Advisory Committee employs an investment consultant, DHK Financial Advisors to analyze the Diocese's investment practices and investment advisors and provide insight and information for the Investment Advisory Committee to consider in formulating investment decisions and fulfilling its fiduciary responsibility to manage the Investment Accounts. DHK Financial Advisors participates in Investment Advisory Committee meetings and provides quarterly reports to the Investment Advisory Committee concerning the performance of the Investment Accounts.

8. *Diocesan Trust Fund.* The terms pursuant to which the Diocese operates the Diocesan Trust Fund are presently set forth in an agreement dated September 30, 2020 (the "Trust Agreement"). The investments in the Diocesan Trust Fund are professionally managed and are primarily held in a custodial account at NBT Bank. Approximately 73.8% of the Diocesan Trust Fund investments are managed by Manning and Napier Advisors, approximately 23.8% of the

3

16512335.3

Diocesan Trust Fund investments are managed by Christian Brothers Investment Services, approximately 2.10% of the Diocesan Trust Fund investments are managed by Dimensional Fund Advisors, and the remaining approximately 0.3% of the Diocesan Trust Fund investments are managed by TIFF Realty Opportunity Fund.

9.   As a general matter, the Diocesan Trust Fund investments are made up entirely of long-term investments and are allocated across diverse asset classes such as (i) Bonds and Government and U.S. Agency Bond Fund, (ii) Equities and Equity Fund, (iii) Real Estate and Real Estate Trusts, and (iv) Money Markets. Copies of the most recent monthly statements for Diocesan Trust Fund investments which provide, among other things, a summary of the respective investment holdings, are attached hereto as *Exhibit B*.

10.   *Retirement Plan for Priests.* The Diocese has a canonical obligation to provide care and sustenance for priests after retirement.[3] Accordingly, the Diocese maintains a non-qualified retirement plan that covers all eligible Diocesan priests. The primary source of funding for the Priest Retirement Plan comes from parish assessments, and a special collection solicited from parishioners at Christmas; therefore, the Diocese believes that funds in the Retirement Plan for Priests would be deemed restricted assets. The funds held and invested within the Retirement Plan for Priests are managed by a variety of professional investment managers, including Manning and Napier Advisors, Christian Brothers Investment Services, Dimensional Fund Advisors and TIFF Realty Opportunity Fund. As of the Petition Date the Diocese estimates that the plan's assets have a market value of approximately $8.7 million. Copies of the most recent monthly statements for

---

[3] https://www.vatican.va/roman_curia/pontifical_councils/intrptxt/documents/rc_pc_intrptxt_doc_20000429_fondo-clero_en.html

4

16512335.3

Retirement Plan for Priests investments which provide, among other things, a summary of the respective investment holdings, are attached hereto as **Exhibit C**.

11.     *Charitable Gift Annuity.*     The Diocese currently maintains approximately 37 contracts with annuitants within its charitable gift annuity program. The Diocese runs the program in accordance with a permit issued by the New York State Department of Financial Services ("DFS"). The Diocese's gift annuity program was last examined by DFS in 2018,[4] and the Diocese is currently in compliance with the terms of its permit and the requirements of N.Y. Insurance Law § 1110(b), which requires that charitable gift annuity funds "be segregated as separate and distinct funds, independent of all other funds of [the sponsoring organization], and shall not be applied to pay its debts and obligations or for any purpose except the aforesaid annuity benefits." N.Y. Insurance Law § 1110(b). As of the Petition Date, the Diocese estimates that the Charitable Gift Annuity Program has approximately $1.6 million in assets, approximately 80% of which are fixed income investments, approximately 18% of which are stocks and real assets, and approximately 2% of which are cash equivalents. A copy of the most recent monthly statement of the Charitable Gift Annuity Program which provides, among other things, a summary of the investment holdings, is attached hereto as **Exhibit D**.

12.     *Collateral Investment Account.*     As set forth in the Diocese's Schedule D, Diocese owned securities having an approximate value of $2,300,000 are held in a brokerage account bearing the last four digits xx50 with NBT Bank, as collateral for a $1,950,707.00 letter of credit. The beneficiary of the NBT Bank letter of credit is the New York State Workers' Compensation Board. This letter of credit is held to secure the Diocese's obligations under its self-insured

---

[4] The New York State DFS audits the Diocese's charitable gift annuity program every five years. This Diocese is due to have its charitable gift annuity program audited for the five years spanning from the 2018 through 2022 this coming year.

5

16512335.3

Case 23-60507-6-pgr    Doc 144    Filed 09/26/23    Entered 09/26/23 21:28:27    Desc
Main Document      Page 6 of 8

workers compensation program and is required by N.Y. State law. A copy of the most recent monthly statement of the Collateral Investment Account which provides, among other things, a summary of the investment holdings, is attached hereto as **Exhibit E**.

13. *Deposit and Loan Fund*. Investments in the Deposit and Loan Fund are managed by Manning & Napier Advisors, Inc. Only the entities listed in the Official Catholic Directory for the Diocese may invest in the Deposit and Loan Fund, and currently the depositors are made up of the Diocese and non-debtor entities consisting of parishes and other Catholic institutions and entities that operate within the territory of the Diocese (collectively, the "Depositors", and each a "Depositor"). The funds invested in the Deposit and Loan Fund remain the assets of the respective Depositors but the Diocese is the residual beneficiary of the Deposit and Loan Fund, meaning that any net assets of the Fund in excess of accounts held by other Depositors, are the property of the Diocese. A copy of the most recent monthly statement of Diocesan funds held in the Deposit and Loan Fund which provides, among other things, a summary of the investment holdings, is attached hereto as **Exhibit F**.

14. *Endowment Fund*. The Endowment Fund is comprised of funds that are permanently restricted by the donor for a specified purpose, and which are therefore not available to satisfy creditor claims. Moreover, the beneficiaries of the endowed monies held in this fund are parishes and other non-debtor entities. The earnings from investments, if any, are distributed based upon donor instructions. Investments in the Endowment Fund are managed by Manning and Napier Advisors and are held in a custodial account at NBT Bank. As of the Petition Date, the Diocese estimates that the market value of the Endowment Fund is approximately $4.2 million. The investments held in the Endowment Fund are allocated approximately 51% in stocks and real assets, approximately 46% in fixed income assets, and approximately 3% in cash equivalents. A

6

16512335.3

copy of the most recent monthly statement of the Endowment Fund, which provides, among other things, a summary of the investment holdings, is attached hereto as **Exhibit G**.

15. *Certificate of Deposit (3991).* The Diocese respectfully submits that no section 345 waiver is required for the Certificate of Deposit account as such account is federally insured by the FDIC.[5] Accordingly, the Certificate of Deposit account is in compliance with section 345(b).

16. While there is an inherent risk in any investment, the Investment Accounts of the Diocese are primarily institutionally managed, and invested in balanced-risk portfolio of equities, bonds, and other diversifying securities. None of the Diocese's investments would be characterized as high-risk investments. The Diocese's investment approach is consistent with that adopted by most non-profit organizations with respect to endowment-type funds held to advance their charitable purposes, namely to seek modest growth over an elongated investment horizon. This is also the approach mandated by the NY Prudent Management of Institutional Funds Act.

17. Additionally, the Diocese's use of multiple investment advisors, with similar goals, but different investment philosophies is an additional safeguard against market volatility in any specific sector. The Diocese believes that the low risk of the underlying investments in the Investment Accounts in combination with the safeguards in place to mitigate against loss balance appropriately with the historical and projected rate of return on the underlying investments in the Investment Accounts warrants a waiver of section 345(b) of the Bankruptcy Code for cause shown.

18. In the event that a section 345(b) waiver is not obtained, the Diocese will be forced to liquidate its holdings in the Investment Accounts. There is no way for the Diocese to obtain a comparable rate of return while complying with section 345(b). The restrictions associated with doing so could result in the Diocese being forced to make cuts to its mission and will reduce the

---

[5] https://www.fdic.gov/resources/deposit-insurance/financial-products-insured/

16512335.3

assets of the Diocese that are potentially available to satisfy creditor claims. Further, the size of the Investment Accounts will make timely compliance with section 345(b) an administrative drain upon the Diocese's limited administrative resources. Given the important issues at the heart of the bankruptcy case, it is important that the Diocese's resources be focused on assembling a confirmable plan of reorganization.

## SIZE OF DIOCESE BUSINESS OPERATIONS

19. The Diocese operates its charitable mission in a territory that includes eight (8) counties and serves over 71,000 Catholics residing in those counties.

20. I respectfully submit that the Diocese is a large, sophisticated business with sophisticated financial practices.

Dated: September 26, 2023                    /s/ Mark Mashaw
                                             _____
                                             Mark Mashaw
                                             Diocesan Fiscal Officer

16512335.3