# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 23-60507 (PGR) |
| | ) | |
| The Roman Catholic Diocese of Ogdensburg, New York, | ) ) | Chapter 11 |
| | ) | |
| Debtor. | ) ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**

**(A) RESPONSE TO INSURERS' LIMITED OBJECTION INTO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER ESTABLISHING BAR DATES FOR FILING PROOFS OF CLAIM AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND**

**(B) RESPONSE TO CENTURY'S OBJECTION TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER ESTABLISHING BAR DATES FOR FILING PROOFS OF CLAIM AND APPROVING THE FORM AND MANNER**

1. The Official Committee of Unsecured Creditors (the "**Committee**") appointed in this case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") hereby submits its (a) Response to the *Insurers' Limited Objection to the Debtor's Motion for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 132] (the "**LMI Objection**")[1]; and (b) *Response to Century's Objection to the Debtor's Motion for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner* [Docket No. 136] (the "**Century Objection**").[2] In further support thereof, the Committee respectfully states as follows.

---

[1] The Insurers Objection was filed on behalf of the London Market Insurers and Interstate Fire & Casualty Company. Granite State Insurance Company joined in the Insurers Objection [Docket No. 134]. The London Market joined in the Century Objection. [Docket No. 148]. The London Market Insurers, Interstate Fire & Casualty Company, Granite State Insurance and Century Indemnity Company are referred to herein as the "**Insurers**").

[2] On September 26, the Committee filed its *Limited Objection to the Debtor's Motion for Entry of an Order Establishing Bar Dates for Filings of Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 130] (the "**Committee Limited Objection**"). Capitalized terms used and otherwise not defined herein have the meaning ascribed thereto in the Committee Limited Objection.

**Preliminary Statement**

2.      As set forth in the Committee Limited Objection, the Committee supports setting a bar date, establishing procedures for noticing the bar date to sexual abuse survivors and other creditors, and approving robust confidentiality provisions for the benefit of sexual abuse survivors. Moreover, the Committee supports the use of the Confidential Abuse Claim Supplement that requests more information than a standard proof of claim form so long as the submission of the Confidential Abuse Claim Supplement is voluntary and the use of information in the Confidential Abuse Claim Supplement is subject to a mediation privilege.

3.      Under the Bankruptcy Code and Rules, creditors –including tort claimants – are required to file a simple form that provides little detail about the facts of their claims. The Committee recognizes that, in order to move the case forward efficiently, it is appropriate to ask abuse survivors to provide additional information about their claims. However, that should not serve as an invitation for a full series of interrogatories that the Insurers seek.

4.      The Insurers'[3] proposal further has the effect of dissuading survivors from filing claims. These same Insurers will no doubt seek the broadest releases possible for potential claims including future claims. For example, the Insurers seek to discourage the filing of claims by survivors who did not file claims under the CVA. Century Objection ¶¶ 5-7, 22. While the Diocese may have current defenses to such claims, they are nonetheless claims against the Debtor for which the Diocese and its non-debtor affiliates will be seeking releases, particularly to protect such parties from claims that could be asserted if the statute of limitations is again opened in the future as happened in California. The claim filing process should be designed to facilitate every individual who has suffered harm a meaningful opportunity to assert a claim.

---

[3] Though the Committee responds herein to the substantive arguments of the Insurers, the Committee reserves all rights to argue that the Insurers, collectively or individually, are not parties in interest such that they have standing to raise or be heard on issues that arise in this proceeding.

5. In another effort to chill the filing of claims and set traps for the unwary, the Insurers also argue that only survivors themselves should be permitted to sign claim forms. LMI Objection at 14-15; Century Objection ¶¶ 9, 24-25. However, the Bankruptcy Rules are clear that "a proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005." Bankruptcy Rule 3001(b). There is thus no basis to restrict survivors' counsel from signing a claim form on their behalf.

6. Survivors should also only be required to file the same form of proof of claim as every other creditor in a bankruptcy case. Survivors of childhood sexual abuse should not be singled out to necessarily submit more burdensome forms effectively responding to discovery requests well beyond the Official Form 401 that applies in all bankruptcy cases.[4] In the interests of moving this case forward, as has been done in recent cases in the Northern and Western Districts of New York and in California,[5] the Committee supports and encourages the voluntary use of the additional Confidential Abuse Claim Supplement in the form proposed by the Committee.

7. The Insurers seek the mandatory, rather than voluntary, submission of the Confidential Abuse Claim Supplement (LMI Objection at 14) which would impermissibly modify the proof of claim form in derogation of Rules 3001 and 9009(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). The Insurers are attempting to use the Bar Date as a discovery mechanism well beyond the proof of claim requirements of the Bankruptcy

---

[4] *See* Bankruptcy Rule 3001(a) and 9009(a); *see also* 2015 Committee Note to Official Form 410, available at www.uscourts.gov/sites/default/files/form_b410_cn.pdf.

[5] *See Amended Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [The Roman Catholic Diocese of Albany, New York, Bankr. N.D.N.Y. Case No. 23-10244, Dkt.447 at ¶ 11 ]; *Bar Date Order Establishing April 15, 2021 as the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (the "**Syracuse Bar Date Order**") [The Roman Catholic Diocese of Syracuse New York, Bankr. N.D.N.Y. Case No. 20-30663 at Dkt. No. 214 *at ¶ 10*]; *Diocese of Buffalo, N.Y. v. Cont'l Ins. Co. (In re Diocese of Buffalo, N.Y.),* 620 B.R. 445, 454 (Bankr. W.D.N.Y. 2020); *Order: (1) Fixing Time for Filing Proofs of Claim; (2) Approving Proof of Claim Forms; (3) Providing Confidential Protocols; and (4) Approving Form and Manner of Notice* [The Roman Catholic Bishop of Santa Rosa, Bankr. N.D. Ca. Case No. 23-10113 CN at Dkt. No. 327, Ex. B or Dkt. No. 327-2];*Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [The Roman Catholic Bishop of Oakland, Bankr. N.D. Ca. Case No. 23-40523 WL at Dkt. No. 293 at ¶ 8].

Code to the prejudice of survivors of horrific childhood abuse. There is no basis to place more burdens on the holders of Abuse Claims than on any other creditors in this Bankruptcy Case or any other.

8. *Finally*, the Insurers seek to modify the Debtor's proposed confidentiality protocol so that the Insurers can use the information from Confidential Abuse Claim Supplement to question Abuse Claimants regarding their claims. As set forth in the Committee Limited Objection, the Confidential Abuse Claim Supplement should not be a vehicle for one-sided discovery from the Abuse Claimants. The use of the information should be limited to facilitating the mediation in this case and not for any other purpose and certainly not to the prejudice of the Abuse Claimants in objecting to their claims before there has been any discovery of the Debtor, the Insurers or any other party. *See* Committee Limited Objection ¶¶ 8-12.

9. The Committee's proposed form of Confidential Abuse Claim Supplement will provide important facts regarding the claimants' abuse, including the identity of abusers, the date(s) of the abuse, the nature of the abuse, the location(s) of the abuse, the frequency of the abuse, and the injuries caused by the abuse. However, the submission of the Confidential Abuse Claim Supplement form should not be used as an opportunity for parties to take intrusive one-way discovery from survivors of childhood sexual abuse. Moreover, survivors may be disclosing their childhood sexual abuse for the first time, and such painful revelations should be asked in a respectful manner. *See Diocese of Buffalo, N.Y. v. Cont'l Ins. Co. (In re Diocese of Buffalo, N.Y.)*, 620 B.R. 445, 454 (Bankr. W.D.N.Y. 2020) ("For at least some abuse victims, the recitation of facts and details may impose emotional challenges…. For some, a mandate to disclose more particular details may have a chilling effect on their willingness even to file a claim.")

10. The Committee also expects that pro se claimants may submit claim forms, and thus the form should be designed for use by an unrepresented individual. All of the questions proposed by the Insurers do not meet these guidelines.

11. The Committee is prepared continue to work with the Debtor to revise the form of Bar Date Order and the form of the Confidential Abuse Claim Supplement. Notwithstanding the agreement of the Debtor and the Committee on the basic guidelines for submission of a claim form (including an official form and a supplement with additional information), the Insurers seek to require the filing of the Confidential Abuse Claim Supplement and also seek to insert additional questions in the Confidential Abuse Claim Supplement that go beyond the information that the Abuse Claimants should be encouraged to provide, is intrusive and unduly burdensome on Abuse Claimants. A proof of claim form is not a one-way interrogatory for insurers to gather information from survivors.

12. Granting the Insurers' requests for information far outside the lines proscribed by the official form would turn the Bankruptcy Code on its head because survivors – the aggrieved party – are prohibited from obtaining discovery on their cases by operation of the automatic stay. In contrast, the insurers would seek information that they would never have a right to request directly from a plaintiff in a state court action against one of their insureds. The Court should not allow the Insurers to abuse the bankruptcy process.

<b><u>Objection to Questions Proposed by Insurers</u></b>

**A. The Confidential Abuse Claim Supplement Should Not Be Burdensome and Require Interrogatory Responses**

13. The Confidential Abuse Claim Supplement as proposed by the Insurers[6] would be overly-complicated and impermissibly expands the scope of information required for the

---

[6] Each of the LMI Objection and the Century Objection attach proposed revisions to the Confidential Abuse of Claim Form. The Committee objects to the revisions proposed through each objection. Given the ongoing discussions between the parties (including the Committee, the

survivors to assert a *prima facie* tort-based proof of claim against the Debtor. The Court should approve the more streamlined Confidential Abuse Claim Supplement proposed by the Committee. A copy of the Committee's proposed Confidential Abuse Claim Supplement is attached as Exhibit A (Schedule 2) to the Committee Limited Objection and a redline comparing the Revised Form to the form initially proposed by the Debtor is attached as Exhibit B (Schedule 2) to the Committee Limited Objection.

14. The Confidential Abuse Claim Supplement as proposed by the Insurers[7] is far too complicated and impermissibly expands the scope of information required for the survivors to assert a *prima facie* tort-based proof of claim against the Debtor. The Court should approve a more streamlined Confidential Abuse Claim Supplement proposed by the Committee.

15. The information that the Insurers propose be required goes beyond the scope of information required to submit a claim, seeks intrusive details intended to elicit defenses against the claims, requires legal conclusions that may be complicated or unanswerable by a *pro se* claimant, and contains questions and terminology that may intimidate sexual abuse survivors to avoid filing claims. All of this extraneous information either has no nexus to the abuse claims committed under the auspices of the Debtor or goes far beyond the information appropriate under the Bankruptcy Rules for the submission of a proof of claim.

16. The excessive information that would be required under the Insurers' proposed Confidential Abuse Claim Supplement appears to be a mechanism designed to discourage survivors from filing valid claims, obtain preliminary discovery for use in future objections to abuse survivors' claims, or to enable parties (including the Debtor on instructions from its

---

Debtor and its insurers) concerning the proof of claim form, the Committee's arguments herein may pertain to the form proposed by any of the Debtor or its Insurers.

[7] Each of the LMI Objection and the Century Objection attach proposed revisions to the Confidential Abuse of Claim Form. The Committee objects to the revisions proposed through each objection. Given the ongoing discussions between the parties (including the Committee, the Debtor and its insurers) concerning the proof of claim form, the Committee's arguments herein may pertain to the form proposed by any of the Debtor or its Insurers.

insurers) to move to disallow a claim as "not properly filed" if the survivor does not complete any of the myriad, complex questions. If it is the former, it opens up the case to multiple requests for relief from stay to, at the very least, allow individual plaintiffs' discovery regarding their claims.

17. The Insurer proposed forms are overly complicated and require detailed information well beyond that which is necessary to understand the facts regarding Abuse Claims. The scope of many questions is akin to interrogatories served by a defendant in a tort case rather than the proof of claim form required by Bankruptcy Rule 3001. The intrusive interrogatories are especially inappropriate because such questions in an interrogatory served during litigation would be subject to objection by the witness. However, survivors do not have the option of objecting to the scope of questions on the form and risk having their claim disallowed at the outset by failure to provide the requested information.

18. The LMI Objection and the Century Objection propose the following additional questions to the Confidential Abuse Claim Supplement that are on their face are intrusive, burdensome and go well beyond the requirements of the proof of claim form pursuant to Bankruptcy Rule 3001 and are otherwise objectionable as set forth below:

> Do you personally know or have reason to believe that the Roman Catholic Diocese of Ogdensburg knew that your abuser was abusing you or others before or during the period when such abuse occurred? If "Yes," please provide all information that supports your conclusion, including the information requested in items (1) through (5) below.
> 1. Who at the Roman Catholic Diocese of Ogdensburg knew that your abuser was abusing you or others?
> 2. How did such person or persons at the Roman Catholic Diocese of Ogdensburg learn this information?
> 3. When did such person or persons at the Roman Catholic Diocese of Ogdensburg learn this information?
> 4. What exactly was the person or persons from the Roman Catholic Diocese of Ogdensburg told or what exactly did they observe?

7

> 5. How did you come to have the information you provided in response to the questions above?

LMI Objection at 9-10. This question and its subparts ask claimant whether the claimant had reason to believe that the Diocese was aware of the abuser's conduct. These questions are preposterous. The information would clearly be in the records of the Diocese or other institutions, as well as in the knowledge of employees or agents of the Diocese or other institutions. Moreover, such a question could dissuade a survivor from asserting a claim because the question suggests that evidence of the Diocese's knowledge of the abuser's conduct is a necessary precondition to assert a claim. This Court should not permit the use of the Insurers' proposed interrogatory to engage in one-sided discovery as part of the filing of the proofs of claim.

> a. Did you attend religious services or education of any kind at a church within the geographical boundaries of the Diocese, or have interactions with any of the priests assigned to or individuals employed by the Diocese? If so, please identify the location(s) and the time periods. If you do not recall the exact date, provide as much information as possible, including the year and season (fall, winter, spring, and/or summer, and/or school year and grade) and the names of the priests, employees or representatives of Debtor with whom you interacted.

*Id.* at 12. This question delves into the religious activities of the survivor without any connection to the alleged abuse. Instead, this question asks about participation in and interactions at any church and may impermissibly infringe upon survivors' First Amendment right to free exercise of religion. Asking survivors about their religious practices and education under pains and penalty of perjury over decades is unnecessarily intrusive. Moreover, this question is a disguised interrogatory aimed at gathering defenses regarding a survivor's claim. It is not necessary for asserting a claim, is beyond the scope of an allegation that would be necessary in a complaint, and would likely have a chilling effect on a survivor's willingness to assert a claim. This

8

question is overly broad, burdensome, onerous, and irrelevant to the assertion of a claim against the Debtor.

> k. Regardless of whether you entered into any settlement, did you ever receive any payment from the Diocese or any other person or entity because of any Abuse or other wrongful conduct against you?
>
> ☐ Yes ☐ No (If "Yes," please describe who paid you, and how much they paid you. You are required to attach a copy of any correspondence relating to such payments)…

*Id.* at 13. To the extent this claim relates to the Diocese, then the information is within the possession of the Diocese. To the extent it relates to other parties, it has no relevance to the claim against the Diocese. It is intrusive and may have a chilling effect on survivors who are concerned about being required to disclose information about other Abuse or may be subject to confidentiality restrictions in connection with any settlements unrelated to the Diocese.

> Were there any witnesses to the abuse? **If so, please identify the witnesses and their present location and any contact information you have for each witness, if known.**
>
> k. Are there any other individuals whom you believe knew about the abuse and/or would be able to corroborate the abuse? **If so, what are their names?**
>
> l. Did you tell anyone about the abuse and, if so, whom did you tell (this would include parents, relatives, friends, a priest or other person affiliated with the Diocese, attorneys, counselors, and law enforcement authorities)? **If you did tell anyone, what did you tell that person and when?** Please also provide the name(s) and any contact information you have for anyone you told about the abuse, and if known, please describe what the person did in response. **You do not need to disclose any communications you had with an attorney.**

Century Objection Exhibit A at 10.[8] The Insurers are clearly hoping to accomplish two things with this series of questions. First, they are hoping that the survivors cannot show that the

---

[8] The LMI Objection proposes inclusion of a similar question. LMI Objection at 12 ("m. Are you aware of anyone else who knew about the abuse committed against you, or about abuse committed by the sexual abuser against anyone else? If so, please describe who they are and how and when they knew about the abuse….")

DOCS_NY:48566.3 18493/002

Debtor had notice of a perpetrators' prior abuse. Second, they are looking for evidence with respect to its coverage defense that the abuse was "expected and intended." The proof of claim form should not be used as a vehicle to fish for such evidence. Moreover, survivors might be discouraged from filing a claim if they are given the impression that the existence of witnesses or their having reported the abuse is a necessary precondition to assert a claim.

B.  **The Confidential Abuse Claim Supplement Proposed by the Committee Elicits All Necessary Information to Assess a Sexual Abuse Claim Against the Debtor Without Subjecting Survivors to a Confusing, Complicated Examination.**

19. A properly filed and executed claim constitutes prima facie validity of the claim. Thus, Official Form 410 - the form mandated by Bankruptcy Rule 3001 - only asks for basic information about a claim. In contrast, with the added requirement of the Confidential Abuse Claim Supplement proposed by the Insurers is burdensome, complex and contains pitfalls for survivors to step into traps that could open the door for motions to disallow survivors' claim for failure to respond to a question even if the survivors otherwise allege a sufficient basis for allowance of the claim.

20. Moreover, under the Bankruptcy Rules, Official Form 410 suffices for proofs of claim and does not require attachments or detailed information (as proposed by the Insurers) for unliquidated tort claims.[9] Proofs of claim need attach "supporting information" only "when a claim, or an interest in property of the debtor securing the claim, is based on a writing," such as a contract claim. Fed. R. Bankr. P. 3001(c)(1).[10] Tort claims are not "based on a writing." Thus, there is no requirement to attach supporting documents to a proof of claim that is based on "state law tort principles." *See In re Lampe*, 665 F.3d 506, 515 (3d Cir. 2011); *In re Andrews*, 394 B.R.

---

[9] "A proof of claim is a written statement setting forth a creditor's claim" that "*shall conform substantially* to the appropriate Official Form [10]." Fed. R. Bankr. P. 3001(a) (emphasis added).

[10] *See also In re Andrews*, 394 B.R. 384, 389 (Bankr. E.D.N.C. 2008) (noting rule requiring attachment of supporting documents to proof of claim is limited to instances where claim is based on a writing).

384, 389 (Bankr. E.D.N.C. 2008) (noting rule requiring attachment of supporting documents to proof of claim is limited to instances where claim is based on a writing). "A proof of claim that contains sufficient information to support it satisfies the claimant's initial burden of proof, and the burden then shifts to the objector to rebut the claim." *In re Evans*, 2012 Bankr. LEXIS 3163 (Bankr. S.D. Ind. July 10, 2012).

21. Once a claim is properly filed in conformance with Bankruptcy Rule 3001, the burden shifts to the Debtor (or any party in interest) to object to the claim. *See Gently v. Siegel*, 668 F.3d 83, 92 (4th Cir. 2012) (stating that "a 'contested matter' does not arise from a proof of claim until an objection to the claim has been interposed"). The more complex form being proposed by the Insurers, in effect, alters the claims allowance procedure by requiring creditors to provide extensive discovery information as a precondition to have their claims deemed properly filed under Bankruptcy Rule 3001. This is an inappropriate abrogation of the Bankruptcy Rules. As has been the case in other sexual abuse bankruptcy cases, any court-approved proof of claim form should be tailored to substantially conform to Official Form 410 with any discovery to take place as part of a claims' objection and adjudication process.

22. For example, a person asserting a non-sexual abuse tort claim against the Debtor (such as a slip and fall claim) would merely have to complete the Official Form 410 to state a *prima facie* claim thereby shifting the burden to formally object to the claim. The Committee acknowledges the need for more information to negotiate a settlement among Sexual Abuse Claimants, the Debtor and its insurers. However, the form proposed by the Insurers goes too far. There is no reason to utilize a form that will discourage survivors from filing claims, set traps for survivors and prepare to litigate the allowance of their claims.

# CONCLUSION

23. The Committee supports establishing a deadline to file claims in this case. However, the claims process should be fair and equitable to survivors and designed to provide notice to as many potential claimants as possible. Thus, the Court should approve the voluntary submission of the Confidential Abuse Claim Supplement in the form proposed by the Committee and the objections of the Insurers should be overruled.

**WHEREFORE**, the Committee request that the Motion be granted to the extent set forth in the Committee Limited Objection, the Committee's proposed form of Confidential Abuse Claim Supplement should be approved, submission of the Confidential Abuse Claim Supplement should be voluntary, the objections of the Insurers to the Motion should be overruled, and that the Court grant such relief as is just and proper.

| | |
|---|---|
| Date: September 29, 2023 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>*/s/ Ilan D. Scharf*<br>James I. Stang (admitted *pro hac vice*)<br>Ilan D. Scharf<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Telephone: (212) 561-7700<br>Facsimile: (212) 561-7777<br>Email:   jstang@pszjlaw.com<br>        ischarf@pszjlaw.com<br><br>*Proposed Counsel to the Official Committee of Unsecured Creditors* |