So Ordered.

Signed this 20th day of October, 2023

Wendy A. Kinsella
United States Bankruptcy Judge



UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of<br>Ogdensburg, New York,<br><br>           Debtor. | Case No. 23-60507 (PGR)<br><br>Chapter 11 |

**FINAL ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DIOCESE TO (I) CONTINUE USING EXISTING BANK ACCOUNTS, BANKING PRACTICES AND BUSINESS FORMS, (II) MAINTAIN INVESTMENT ACCOUNTS AND PRACTICES, AND (III) CONTINUE USING CREDIT CARDS, AND (B) GRANTING LIMITED RELIEF FROM THE REQUIREMENTS OF BANKRUPTCY CODE SECTION 345(b)**

Upon the motion of The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese") for entry of interim and final orders (a) authorizing, but not directing, the Diocese to (i) continue using its existing bank accounts, banking practices and business forms, (ii) maintain its prepetition investment accounts and practices, and (iii) continue to use credit cards, and (b) granting limited relief from the requirements of section 345(b) of the Bankruptcy Code [Docket No. 15] (the "Motion");[1] and upon finding that the Court has jurisdiction to consider the Motion

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

16619908.3

pursuant to 28 U.S.C. §§ 157 and 1334; that venue of this Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); that proper and adequate notice of the Motion has been given under the circumstances and that no other or further notice is necessary; and orders granting the relief requested in the Motion on an interim basis having been entered on July 19, 2023 and August 29, 2023 [Docket Nos. 39 and 100]; and the Court having reviewed the Motion, the *Declaration of Mark Mashaw Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings* (the "First Day Mashaw Declaration") [Docket No. 6]; the objection to the Motion filed by the United States Trustee (the "UST Objection") [Docket No. 48], the *Response to the United States Trustee's Objection to the Diocese's Motion for Interim and Final Orders (A) Authorizing, but not Directing, the Diocese to (I) Continue Using Existing Bank Accounts, Banking Practices and Business Forms, (II) Maintain Investment Accounts and Practices, and (III) Continue Using Credit Cards, and (B) Granting Limited Relief from the Requirements of Bankruptcy Code Section 345(b)* (the "Response") [Docket No. 143], and the *Supplemental Declaration of Mark Mashaw in Support of the Diocese's Request for a Limited Waiver of the Investment Requirements of Section 345(b) of the Bankruptcy Code* (the "Supplemental Mashaw Declaration") [Docket No. 144] and the record in this Chapter 11 Case and determined that granting the relief requested in the Motion on a final basis is in the best interests of the Diocese, its estate, creditors and other parties in interest; and after due deliberation thereon, and good and sufficient cause appearing therefor;

16619908.3

**IT IS HEREBY FOUND AND DETERMINED**

A.      As set forth in the Motion, the Response, the First Day Mashaw Declaration, and the Supplemental Mashaw Declaration, the Diocese has established cause under the standard articulated in *In re Service Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) for this Court to waive the investment requirements of section 345(b) of the Bankruptcy Code as requested in the Motion.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      All objections to the Motion, including the UST Objection, are hereby overruled, except as provided in this Order.

3.      The Diocese is authorized to continue using its banking practices as described in the Motion.

4.      The Diocese is authorized, but not required, to: (a) use in the ordinary course, the Cash Management System described in the Motion, including the Bank Accounts and Investment Accounts; (b) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date as described in the Motion; (c) use, in their present form, all correspondence and business forms including, but not limited to, letterhead, purchase orders and invoices), as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Diocese's status as debtor-in-possession; provided, however, that as soon as practicable, the Diocese shall print "DIP" or "debtor in possession" on any electronically printed payment checks; and (d) treat the Bank Accounts for all purposes as debtor-in-possession accounts, including specifically taking such steps as may be necessary to delineate and separately account for prepetition and post-petition transactions.

16619908.3

5. Each of the financial institutions at which any of the Bank Accounts are maintained (each, a "Bank") are authorized to continue to service and administer the Bank Accounts as accounts of the Diocese as debtor-in-possession, without interruption and in the ordinary course, and to receive, process, honor and pay (i) any and all post-petition checks, drafts, wire transfers and other electronic payment requests issued and drawn on the Bank Accounts (to the extent of funds on deposit), together with (ii) any prepetition checks or payment requests, but solely to the extent they relate to payments or obligations approved by separate order of this Court.

6. The Diocese is authorized to direct the Banks, and the Banks are authorized to rely on the Diocese's direction, to pay obligations in accordance with this Final Order or any separate order of this Court. No Bank shall be liable to any party on account of following the Diocese's instructions or representations as to whether any order of this Court has authorized the honoring of any prepetition checks, drafts, wires or transfers.

7. Except as otherwise provided in this Final Order or any separate order of this Court, the Banks shall not honor or pay any bank payments arising out of the Bank Accounts drawn or otherwise issued prior to the Petition Date. As soon as practicable after the entry of this Final Order, the Diocese shall serve a copy of this Final Order on NBT Bank.

8. Each financial institution at which the Diocese maintains one or more Accounts is authorized to charge, and the Diocese is authorized to pay or honor, both prepetition and post-petition service charges, management or administrative charges, and other fees, costs, charges and expenses to which such financial institutions may be entitled under the terms of and in accordance with their contractual arrangements with the Diocese.

9. The Diocese is authorized to open any new bank accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its sole discretion; provided, however,

16619908.3

that the Diocese may only open a new bank account with one of its existing Banks or with a banking institution designated as an authorized depository under the U.S. Trustee Guidelines (an "Authorized Depository"), unless first obtaining the consent of the U.S. Trustee.

10. Notwithstanding section 345 of the Bankruptcy Code and without prejudice to the Diocese's seeking an order from this Court determining that some or all of the investments held in the Investment Accounts are not property of the estate, the Diocese is authorized, but not directed, to continue its prepetition investment practices and to maintain each of its Investment Accounts in the ordinary course of its business, and no bond shall be required.

11. Any payment from a Bank Account at the request of the Diocese made by a Bank on or prior to the Petition Date (including any ACH Transfer a Bank is or becomes obligated to settle), or any instruments issued by a Bank on behalf of the Diocese pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from such Bank Account prepetition.

12. All accounts opened by the Diocese following the Petition Date at any bank shall be subject to the rights and obligations of this Final Order and treated as Bank Accounts hereunder.

13. The Diocese is authorized, but not directed, to continue to use and pay any charges associated with the Credit Cards in the ordinary course of business and consistent with its prepetition practices, including by paying any prepetition obligations outstanding with respect thereto. Nothing in this Order modifies or amends any agreements related to the Credit Cards entered into between the Diocese and the issuers of the Credit Cards, and the issuers of the Credit Cards shall retain the right to terminate or renew the Credit Cards in accordance with the terms of any such agreements.

14. To the extent the implementation of this Final Order does not comply with the applicable requirements under section 345 of the Bankruptcy Code, the U.S. Trustee Guidelines, or otherwise, such requirements under section 345 of the Bankruptcy Code, the U.S. Trustee Guidelines, or otherwise, are waived. Either the Committee or the United States Trustee may, in their respective discretion, by motion on notice to the Diocese, request that the Court reconsider this waiver based upon a showing ~~that there has been a material and sustained diminution in the Diocese's Investment Accounts and~~ that cause no longer exists to support a waiver. The Diocese shall include as part of its monthly operating reports the most recently received statements reflecting its investment holdings in the Investment Accounts. *JWAK*

15. Nothing in this Final Order or any action taken by the Diocese in furtherance of the implementation hereof shall be deemed an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and the Diocese's rights with respect to such matters are expressly reserved.

16. Nothing in the Motion or this Final Order, nor the Diocese's payment of any amounts pursuant to this Final Order, if any, shall be construed as (i) an admission as to the validity of any claim against the Diocese, (ii) a waiver or impairment of the Diocese's rights to contest the validity or amount of any claim on any grounds, (iii) a promise to pay any claim, or (iv) an implication or admission by the Diocese that such claim is payable pursuant to this Final Order.

17. Nothing herein shall serve as a determination that any property is or is not property of the estate and all parties' rights are reserved to assert that any money, securities or assets in any Diocese Bank Account or Investment Account is property of the Diocese and not held in trust for or the property of any other person or entity or to assert that funds were paid from such Bank

16619908.3

Accounts or Investment Accounts for the benefit of non-debtor third parties and were not an appropriate expenditure of Estate funds.

18. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, this Final Order shall be effective and enforceable immediately upon its entry. Any subsequent modification or vacatur of this Final Order shall not invalidate or impair any actions taken pursuant to this Final Order prior to such modification or vacatur.

19. The Diocese is hereby authorized to take all actions it determines are necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

20. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Final Order.

###

16619908.3