UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

The Roman Catholic Diocese
of Ogdensburg, New York,

Debtor.

Case No. 23-60507 (PGR)

Chapter 11

## MOTION TO EXTEND EXCLUSIVE PERIODS PURSUANT TO 11 U.S.C. § 1121(d)

The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), by and through its undersigned counsel, hereby moves this Court (this "Motion") for entry of an Order, pursuant to section 1121(d) of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, as amended, the "Bankruptcy Code") extending the Diocese's exclusive periods within which to file and solicit acceptances of its chapter 11 plan from November 14, 2023 and January 13, 2024, respectively, to February 12, 2024 and April 12, 2024, respectively. In support of this Motion, the Diocese respectfully represents to the Court as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested herein is section 1121 of the Bankruptcy Code.

16707861.2

## BACKGROUND

1.      On July 17, 2023 (the "Petition Date"), the Diocese filed a voluntary petition for relief under title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Diocese's chapter 11 case (this "Chapter 11 Case"). The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for a trustee or examiner has been made in this Chapter 11 Case.

2.      On August 11, 2023, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). As of the date of this filing, no request for a trustee or examiner has been made in this Chapter 11 Case, and no other official committees have been appointed or designated.

3.      Information regarding the Diocese's history, business operations and structure, and the events leading up to this Chapter 11 Case is set forth in the *Declaration of Rev. Kevin O'Brien Regarding Structure and Pre-Filing History of the Diocese and in Support of the Chapter 11 Petition and First Day Pleadings* [Docket No. 7], and the *Declaration of Mark Mashaw Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings* [Docket No. 6], and incorporated herein by reference.

## PRELIMINARY STATEMENT

4.      This Chapter 11 Case is still in its infancy. Nonetheless, and despite the press of business associated with administering this complex Chapter 11 Case in its early phase, the Diocese has undertaken substantial steps that it believes will lead to the filing of a confirmable chapter 11 plan of reorganization.

16707861.2

5. Since the Petition Date, the Diocese has been actively engaged in the administration of this Chapter 11 Case, including, for example: (a) finalizing and filing the Diocese's extensive Schedules and Statement of Financial Affairs [Docket Nos. 107 and 108], (b) arguing all of the Diocese's "first day" motions, and negotiating with the United States Trustee and the Committee concerning the terms of proposed interim and final orders concerning same, (c) extensive and ongoing communications with creditors, including a number of meetings and calls with counsel for the Committee, and preparing for and participating in a nearly three and a half hour section 341 meeting of creditors, and (d) obtaining an order establishing January 18, 2024 as the last day to file proofs of claim (the "Bar Date") [Docket No. 203].

6. In addition to the effort it has undertaken to administer the Chapter 11 Case, since the Petition Date the Diocese also has expended significant effort to lay the foundation for a successful chapter 11 plan of reorganization. Although mediation has not commenced in this Chapter 11 Case, the Diocese has already begun initial conversations with potential mediators. Additionally, the Diocese has been communicating regularly with the Committee, the United States Trustee, vendors and individual creditors in an effort to resolve issues on a consensual basis.

7. The Diocese respectfully submits that a chapter 11 plan cannot adequately provide for the reorganization of the Diocese without a prior resolution of several issues and matters, including among other things, insurance coverage issues and a review of proofs of claim, which cannot meaningfully occur until after the Bar Date passes. The Diocese anticipates that the availability of insurance proceeds will be a crucial threshold issue to be resolved as the parties work to ensure the greatest possible compensation for claimants asserting claims arising

out of alleged sexual abuse ("Abuse Claimants") through an efficient and effective claims administration process.

## RELIEF REQUESTED

8. Section 1121(b) of the Bankruptcy Code provides a debtor with the exclusive right to file a chapter 11 plan for an initial period of 120 days from the date of the order for relief. Section 1121(c) of the Bankruptcy Code further provides that, if the debtor files a chapter 11 plan within the 120-day exclusivity period (the "Exclusivity Period"), the debtor then has a period of 180 days from the date of the order for relief to solicit and obtain acceptances (the "Solicitation Period"), during which time competing plans may not be filed. In this case, the Diocese's Exclusivity Period is set to expire on November 14, 2023 and the Solicitation Period is set to expire on January 13, 2024.

9. This is the Diocese's first request for extension of the Exclusivity Period and Solicitation Period. The Diocese respectfully submits that it has been diligently paying its post-petition obligations, has effectively administered to date all aspects of its complicated transition into chapter 11, and is actively engaged with all key constituents in this Chapter 11 Case in an effort to seek a resolution of key issues that will serve as building blocks to a chapter 11 plan of reorganization. The Diocese respectfully submits that the size and complexity of the issues the Diocese is facing early in this Chapter 11 Case warrant an extension of the Exclusivity Period and Solicitation Period beyond November 14, 2023 and January 13, 2024, respectfully.

10. By this Motion, the Diocese seeks entry of an Order pursuant to section 1121(d) of the Bankruptcy Code extending the Exclusivity Period to February 12, 2024 and the Solicitation Period to April 12, 2024, without prejudice to the Diocese's right to seek further extensions of such dates. The Diocese seeks these extensions to avoid the necessity of having to

4

16707861.2

formulate a chapter 11 plan prematurely and to ensure that any such plan or plans best addresses the interests of the Diocese, its creditors, including the CVA Claimants, and the Diocese's estate as a whole.

## BASIS FOR RELIEF REQUESTED

11. Pursuant to section 1121(d) of the Bankruptcy Code, this Court may extend a debtor's exclusive periods upon a demonstration of cause:

> [o]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

12. The principal goal of chapter 11 is the successful reorganization of the debtor's business in order to maximize the benefit to creditors. *See NLRB v. Bildisco,* 465 U.S. 513, 527 (1984); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983). The Congressional intent woven throughout chapter 11 is that the principal means of a successful outcome should be a considered and consensual plan. *In re Perkins*, 71 B.R. 294, 297 (W.D. Tenn. 1987). To promote the formulation of a considered and consensual plan, Congress gave the debtor the exclusive right to propose a plan of reorganization for an initial 120-day period. *See In re Ames Dep't Stores, Inc.*, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor the flexibility to negotiate with its creditors."). Pursuant to section 1121(d) of the Bankruptcy Code, this initial period of exclusivity can be extended for "cause".

13. Whether "cause" exists to extend a debtor's exclusive periods to file and solicit acceptances of a chapter 11 plan is a decision committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. *See In re*

5

16707861.2

*Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). Congress intended to give the bankruptcy court maximum flexibility to make such determination. *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).

14. In determining whether cause exists to extend a debtor's exclusive periods, courts have considered numerous factors, including:

(1) the size and complexity of the case;
(2) the need for more time to allow the debtor to negotiate a consensual chapter 11 plan and prepare adequate information;
(3) whether the debtor has made good faith progress toward a chapter 11 plan;
(4) whether the debtor has been paying its debts when due;
(5) whether the debtor has demonstrated reasonable prospects for filing a viable chapter 11 plan;
(6) whether the debtor has made progress in negotiating with its creditors;
(7) the length of time the case has been pending;
(8) whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's demands; and
(9) whether unresolved contingencies that may affect the viability of a chapter 11 plan exist.

*See In re Tripodi*, No. 04-30793, 2005 LEXIS 1981, at *4 (Bankr. D. Conn. 2005).

15. While not all factors are relevant to every case, courts have used a subset of the above factors to determine whether cause exists, *In re Hoffinger Indus.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003), and further consider the totality of circumstances of each case. *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997).

16. An analysis of the various factors noted above demonstrates that sufficient cause exists for extending the Exclusivity Period and Solicitation Period to February 12, 2024 and April 12, 2024, respectively.

17. First, the size and complexity of this case warrants an extension of the Exclusivity Period and Solicitation Period. As described above, extraordinary effort has been expended by

the Diocese in the administration of this Chapter 11 Case in its early phase to ensure a successful transition into chapter 11. As the Court knows from the proceedings to date in this Chapter 11 Case, the administration of this case alone presents unique and extraordinary issues that are not typical of other chapter 11 cases before this Court.

18. Second, the Diocese's significant progress to date in the Chapter 11 Case also justifies the requested extension of the Diocese's exclusive periods. As described above, the Diocese has worked with its key constituencies on numerous issues, and has made notable progress at this stage of the Chapter 11 Case toward resolving matters that are critical to the eventual formulation of a chapter 11 plan.

19. In addition, the Diocese has been paying its post-petition debts when due in the ordinary course of business. The fact that a debtor has sufficient liquidity to pay its post-petition debts as they come due supports the granting of an extension of the debtor's exclusive periods because it suggests that such an extension will not jeopardize the rights of post-petition creditors. The Diocese will continue to pay its undisputed post-petition debts as they come due, and it anticipates having adequate liquidity to do so.

20. Moreover, because the Chapter 11 Case is still in its infancy, the Diocese respectfully asserts that it must be given the opportunity to continue the work it has already commenced to formulate a confirmable chapter 11 plan. The Diocese seeks to continue to work with the Committee, its insurance carriers and other parties in interest to resolve issues described above that must precede the development of any chapter 11 plan. Of critical importance are those issues concerning insurance coverage, which the Diocese has begun to address with its key insurance carriers. Additionally, after the passage of the Bar Date, the Diocese will be better able to accurately evaluate the universe of claims against it. Until further progress is made with

16707861.2

respect to these matters, the Diocese will be unable to finalize a chapter 11 plan or prepare a disclosure statement containing adequate information.

21. The Diocese respectfully asserts that there can be no inference in this case that it is seeking extensions of its Exclusivity Period and Solicitation Period as a negotiating tactic or as a means of maintaining leverage over any group of creditors whose interests may be harmed by such an extension. The Diocese is in the best position to continue the efforts it has commenced already, leading negotiations, discussions and litigation (to the extent necessary) among parties in interest in this case aimed at formulating a confirmable chapter 11 plan. Allowing the Diocese's Exclusivity Period and Solicitation Period to terminate at this premature point would defeat one of the primary purposes of section 1121 of the Bankruptcy Code, which is the development of a consensual chapter 11 plan. *See Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005).

22. Based upon the foregoing and the fact that the Chapter 11 Case is less than four months old, the Diocese respectfully submits that ample cause exists under the Bankruptcy Code and the applicable case law for the requested extensions of the Exclusivity Period and Solicitation Period.

23. No previous request for the relief sought herein has been made by the Diocese to this or any other court. The Diocese further requests that the relief requested herein be granted without prejudice to the Diocese's right to seek further extensions of its Exclusivity Period and Solicitation Period.

**WHEREFORE**, the Diocese respectfully requests that the Court enter an Order (i) granting the Diocese's first request to extend the Exclusivity Period within which only the Diocese may file a chapter 11 plan or plans until February 12, 2024; (ii) granting the Diocese's

8

16707861.2

first request to extend the Solicitation Period within which the Diocese may solicit acceptances of its chapter 11 plan until April 12, 2024; and (iii) granting such other and further relief as to the Court may seem just and proper.

Dated: October 25, 2023

BOND, SCHOENECK & KING, PLLC

By: /s/ Charles J. Sullivan
Stephen A. Donato (Bar Roll No. 101522)
Charles J. Sullivan (Bar Roll No. 507717)
Sara C. Temes (Bar Roll No. 514148)
Andrew S. Rivera (Bar Roll No. 700712)
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Fax: (315) 218-8100
sdonato@bsk.com
csullivan@bsk.com
stemes@bsk.com
arivera@bsk.com

*Attorneys for The Roman Catholic Diocese of Ogdensburg, New York*