So Ordered.

Signed this 15 day of December, 2023.



_____

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) ) ) | |
| The Roman Catholic Diocese of Ogdensburg, New York, | ) ) ) | Case No. 23-60507 (PGR) |
| | ) | Chapter 11 |
| Debtor. | ) ) ) | |

**FINAL ORDER AUTHORIZING RETENTION
AND APPOINTMENT OF STRETTO, INC. AS CLAIMS
AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

Upon the *Application for Appointment of Stretto as Claims and Noticing Agent Effective

as of the Petition Date* [Docket No. 19] (the "Application")[1] filed by The Roman Catholic Diocese

of Ogdensburg, New York (the "Diocese"); and pursuant to the Betance Declaration and the

Engagement Agreement; and the Court having found that the relief requested is in the best interests

of the Diocese's estate, creditors and all other parties-in-interest; and the Court having found that

due and sufficient notice of the Application was provided, and that except as otherwise ordered

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

1

16912074.1

herein, no other or further notice is necessary; and orders granting the relief requested in the

Motion on an interim basis having been entered on July 19, 2023 [Docket No. 32] and August 30,

2023 [Docket No. 105]; and the Court having found that it has jurisdiction to consider the

Application and grant the relief requested therein; and the Court having reviewed the Application

and having determined that the legal and factual bases set forth therein establish just cause for the

relief requested on a final basis, and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as set forth herein.

2.      The Diocese is authorized to retain and employ Stretto as notice and claims

processing agent, effective as of the Petition Date, and to perform the services set forth in the

Application (the "Services") in accordance with the terms and conditions set forth in the

Application and the Engagement Agreement as of the Petition Date.  Specifically, Stretto, as

Claims and Noticing Agent will perform the following tasks, as requested by the Diocese and/or

the Clerk's Office:

> i.      Prepare and serve required notices and documents in this case ~~these cases~~ in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Diocese and/or the Court, including (i) notice of any claims bar date, (ii) notices of transfers of claims, (iii) notices of objections to claims and objections to transfers of claims, (iv) notices of any hearings on a disclosure statement and confirmation of the Diocese's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (v) notice of the effective date of any plan and (vi) all other notices, orders, pleadings, publications and other documents as the Diocese or Court may deem necessary or appropriate for an orderly administration of these cases;    PGR

> ii.     In accordance with any confidentiality protocols established by the Court, prepare and serve notices on any claimants or parties in interest whose names and addresses or other identifying information is filed under seal at the direction, and

2

16912074.1

sole expense, of any party in interest who wishes to effect service or notice on such parties.

iii. Maintain an official copy of the Diocese's schedules of assets and liabilities and statements of financial affairs (collectively, "<u>Schedules</u>"), listing the Diocese's known creditors and the amounts owed thereto;

iv. Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest (the "<u>Creditor Matrix</u>"); and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and, except as otherwise provided in any Order of the Court requiring such materials to be kept confidential or maintained under seal, make said lists available upon request by a party-in-interest or the Clerk;

v. Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

vi. Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

vii. For all notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses *provided*, *however*, with respect to any persons whose names and addresses are ordered to be kept confidential and maintained under seal, such list shall contain only a certification that such service was effected at the addresses listed for such parties on the Creditor Matrix, (iii) the manner of service, and (iv) the date served;

16912074.1

viii.     Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

ix.     Maintain the official claims register for the Diocese (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed, unless such information is required by an order of the Court to be kept confidential and maintained under seal: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), and (vi) any disposition of the claim;

x.     If and to the extent directed by an order of the Court, and subject to any confidentiality restrictions set forth therein, provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

xi.     Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

xii.     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

xiii.     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of the Claims and Noticing Agent, not less than weekly;

xiv.     Upon completion of the docketing process for all claims received to date for this ~~each~~ case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);     PGR

xv.     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

4

xvi.    Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

xvii.    Assist in the dissemination of information to the public and respond to requests for administrative information regarding this Chapter 11 Case as directed by the Diocese or the Court, including through the use of a case website and/or call center;

xviii.    If this case is converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to the Claims and Noticing Agent of entry of the order converting this case ~~these cases~~;

PGR

xix.    Thirty (30) days prior to the close of this case, to the extent practicable, request that the Diocese submit to the Court a proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this case ~~these cases~~;

PGR

xx.    Within seven (7) days of notice to the Claims and Noticing Agent of entry of an order closing this Chapter 11 Case, provide to the Court the final version of the claims register as of the date immediately before the close of this case ~~these cases~~, in digital or other format as requested by the Clerk; and

PGR

xxi.    At the close of this Chapter 11 Case, (i) box and transport all original documents, in proper format, as provided by the Clerk's Office, to any location requested by the Clerk's Office~~; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims~~.

PGR

3.    Stretto shall serve as custodian of court records and, as such, is designated as the authorized repository for all proofs of claim filed in this Chapter 11 Case and is authorized and directed to maintain the official claims register for the Diocese and to take such other action as may be necessary to comply with all duties set forth in the Application.

4.    The Diocese is authorized to compensate Stretto in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the Services provided by Stretto and the rates charged for each, and to reimburse Stretto for all related reasonable and necessary expenses it may incur, upon the presentation of appropriate

documentation, and subject to the procedures set forth below, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its Services and reimbursement of its related expenses.

5.      Stretto shall maintain records of all Services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Diocese, counsel for the Diocese, and, upon request, counsel to any official committees appointed in this Chapter 11 Case.

6.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; provided that the parties may seek resolution of the matter from the Court if resolution is not achieved.

7.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto under this Order shall be an administrative expense of the Diocese's estate, *provided*, *however*, that any notice services provided to parties other than the Court, the Diocese, any official committees, or the United States Trustee shall be at the sole expense of the party seeking to provide such notice and *provided*, *further*, that none of the Services provided by Stretto shall be at the expense of the Clerk's Office or the United States.

8.      Stretto's application of its retainer to prepetition invoices is hereby approved and such retainer shall be replenished and held under the Engagement Agreement during this Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement from and after the Petition Date.

9.      The indemnification provisions and limitation of liability provisions in the Engagement Letter are hereby modified and restated to give effect to the following:

16912074.1

All requests of Stretto for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Stretto be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

In the event that Stretto seeks reimbursement from the Diocese for reasonable attorneys' fees in connection with a request by Stretto for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Stretto's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of Bankruptcy Code sections 330 and 331 without regard to whether such attorney has been retained under Bankruptcy Code section 327 and without regard to whether such attorneys' services satisfy Bankruptcy Code section 330(a)(3)(C).

Stretto shall not be entitled to reimbursement by the Diocese for any fees, disbursements and other charges of Stretto's counsel other than those incurred in connection with a request of Stretto for payment of indemnity, retention of Stretto and preparation of fee applications.

In no event shall Stretto be entitled to indemnification, contribution, exoneration, reimbursement of attorneys' fees or expenses, limitation on liability or allocation or apportionment of damages if the Diocese asserts a claim, to the extent the Court determines by final order that such claim for indemnity arose out of Stretto's own bad-faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct.

10.    The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

11.    Stretto may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Stretto may hold its advance under the Engagement Agreement during the Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement.

7

16912074.1

12.     Stretto shall not cease providing claims processing services during this Chapter 11 Case for any reason without prior order of this Court authorizing Stretto to do so; *provided however*, that Stretto may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Diocese, the Office of the United States Trustee and any official committee of creditors appointed in these cases by facsimile or overnight delivery.

13.     In the event Stretto is unable to provide the Services or if the Services are terminated for any reason, and notwithstanding anything to the contrary in the Engagement Agreement, Stretto will immediately notify the Clerk's Office and counsel for the Diocese and will cause all original proofs of claim and computer information to be turned over to the Clerk's Office or another claims agent with the advice and consent of the Clerk's Office and counsel for the Diocese and will return to the Diocese any other data, storage media, programs or other materials furnished to Stretto by the Diocese.

14.     Stretto shall comply with all requests of the Clerk's Office and follow the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

15.     The Diocese and Stretto are authorized to take such other action as is reasonably necessary to comply with all of the duties set forth in the Application and this Order.

16.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

17.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

### 

8

16912074.1