**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of<br>Ogdensburg, New York,<br><br>　　　　　　　　　　　Debtor. | Hearing Date:  March 5, 2024<br>at 1:00 pm ET<br>Hearing Location: Alexander Pirnie<br>U.S. Courthouse and Federal Building 10<br>Broad Street, Utica, New York<br><br>Objection Deadline:   February 27, 2024<br><br>Chapter 11<br><br>Case No. 23-60507 (PGR) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**TO THE MOTION OF CERTAIN INSURERS FOR CLARIFICATION**
**OF THE BAR DATE ORDER**

1.　　The Official Committee of Unsecured Creditors (the "**Committee**") appointed in this case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), by and through its undersigned counsel, hereby submits its objection (the "**Objection**") to *Certain Insurers Motion for Clarification of the Bar Date Order* (the "**Clarification Motion**") [Docket No. 335].[1]  In support of its Objection, the Committee respectfully states as follows:

**OBJECTION**

2.　　Through the Clarification Motion, Certain Insurers attempt yet another end-run around the Bar Date Order's provisions governing which Authorized Parties may receive the sensitive information from the proofs of claim based on childhood sexual abuse (the "**Abuse**

---

[1] The Clarification Motion was filed by Interstate Fire & Casualty Company and Certain Underwriters at Lloyd's, and London and Certain London Market Insurance Companies.  Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Clarification Motion.

**Proofs of Claim**"). As this Court observed in connection with the last attempt by an insurer for essentially the same relief requested in the Clarification Motion:[2]

> So it's not, in my view, really reconsideration. I mean, this was -- and good news/bad news, ***I did think about it and I looked at other orders and other diocese and weighed carefully how I wanted to go about it***. I was – my the tension I was trying to resolve in all aspects of it which included this part of it, was I am asking abuse claimant -- survivors or claimants -- to provide information that would not be required of a slip-and-fall claimant and information of an extremely sensitive personal nature. So I wanted to be respectful of that and mindful of the potential for chilling disclosure. At the same time, I understand the interest everyone has in having an orderly, efficient mediation process which requires, among other things, the insurance companies to be able to ascertain the nature and extent of potential liability on the part of the diocese and then your obligation, if any, to subrogate those liabilities. So I get that**. I was trying to balance it. In this instance, with regard to this aspect of the disclosure**, I -- that was the decision that I made. I don't think it really -- if it's just reconsideration, I'm going to deny it.

December 5 Hearing Tr. 13:13-14:9 (emphasis added).[3]

3. The Certain Insurers argue that the Bar Date Order and the Protective Order are inconsistent because the Bar Date Order requires every natural person (other than a counsel of record) to execute a separate Confidentiality Agreement before they can access the Abuse Proofs of Claim while the Protective Order only requires individual signatures for a limited subset of Authorized Parties. Additionally while the consents of the Debtor and the Committee are required to allow new Authorized Parties, the Protective Order does not require such consent or even notice to the Debtor or the Committee of new Authorized Parties. Clarification Motion ¶¶ 9-10.

---

[2] Century's Motion for Reconsideration of the Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (the "**Reconsideration Motion**") [Docket No. 237] brought by Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**").

[3] A copy of relevant portions of the December 5, 2023 Hearing Transcript ("**December 5 Hearing Tr.**") are attached hereto as **Exhibit B**.

4. Thus, the Certain Insurers now seek to upset the balance carefully achieved by the Court, by asking that the Protective Order so ordering a confidentiality agreement that was consensually negotiated between the Certain Insurers and the Debtor – that does not include the Committee[4] – should be permitted to override the terms of the Bar Date Order and permit the Certain Insurers to provide information from the Abuse Proofs of Claim to whomever they determine should receive them without notice to or consent of the Committee. This cannot be permitted.

5. There is no inconsistency between the two orders. The Bar Date Order governs dissemination of Abuse Proofs of Claim and information submitted by abuse survivors in connection therewith. In contrast, the Protective Order governs dissemination of information between the Diocese and its Insurers from their own books and records. To the extent "clarification" between the two orders is necessary, then the Bar Date Order should control over any conflict in the treatment and use of Abuse Proofs of Claim information.

6. This is the third attempt by insurers in this case to expand the terms of the Bar Date Order. All of these issues were raised and addressed by the Court previously. Moreover, to the extent Certain Insurers believed that the Protective Order they negotiated with the Diocese would create a conflict with the Bar Date Order, they should have raised the issue when they sought entry of the Protective Order; not through a collateral attack on the Bar Date Order.

7. First, Century raised the issue in its objection to the Bar Date Motion. *See Century's Objection to the Debtor's Motion for Entry of an Order Establishing Bar dates for Filing Proofs of Claim and Approving the Form and Manner* [sic] the "**Century Bar Date**

---

[4] While the Certain Insurers point to the relief granted in the Diocese of Santa Rosa Bankruptcy Case (Clarification Motion ¶¶ 13-15) notably there the Committee agreed to the requested relief.

**Objection**") [Docket No. 136, ¶ 32] (requesting that insurers' experts sign confidentiality protocols to be held by insurers' counsel without disclosure to the Court or any other party).

8. Some of the Certain Insurers (Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies ("**LMI**")) expanded on this exact issue in a letter to the Court prior to the hearing on the Bar Date Motion.[5] In its letter, LMI proposed that the insurers be able to provide the Abuse Proofs of Claim to the insurers' "experts, consultants, and other retained professionals."(*Id.* at p. 3).

9. The Committee responded to this very issue raised by the LMI Letter and Century Bar Date Objection. *See Letter Filed by the Official Committee of Unsecured Creditors* on October 17, 2023 [Docket No. 197] (the "**Committee Response**"). As the Committee noted:

> **This Court should not permit such an expansion in Authorized Parties under the Bar Date Order**. A nebulous and opaque process may chill survivors' desire to file claims if they do not know where their confidential information is going. Further, there is no basis to allow disclosure of sensitive information to any party an insurer deems an appropriate, yet secret, recipient. **Finally, it is wholly inappropriate to permit disclosure of the sensitive information in the Abuse Claims to third parties without informing the Committee and the Diocese what specific party is to receive the information**. Instead, the Diocese and the Committee should be provided with notice of any specific party that an Insurer requests be an Authorized Party. To the extent that the Diocese or Committee do not agree to the addition of such Authorized Party, the relevant Insurer may seek relief from this Court.

Committee Response at pg. 2 (emphasis added).

10. This Court specifically addressed this same issue in denying Century's Reconsideration Motion:

> THE COURT: So my expectation, when I struck the balance that I struck in the order, was that the insurers would be able to share the abuse claim supplements

---

[5] Letter to the Bankruptcy Court on behalf of Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies filed on October 16, 2023 [Doc. No. 195] (the "**LMI Letter**").

>with their consultants and experts, comma, subject to the identity of those individuals being disclosed to the committee and to the diocese so if there was some issue with turning it over to that particular consultant or expert, they could raise that objection and also just sort of generally, then, particularly the abuse claimants would be aware of the sort of universe in which their very confidential information was being shared. And then again, we can have appropriate safeguards to make sure that we know everyone who has that information and we know that they've signed the appropriate confidentiality agreements and we're certain that we have control -- a handle on this extremely sensitive information. That was the balance I thought I was striking in my order.
>
>it was my intent -- I thought I was striking an appropriate balance between safeguarding this information that was being disclosed but still giving you the opportunity to use the experts and consultants you felt you needed to use.

December 5 Hearing Tr. 18:19-19:10; 22:4-8.

11. The Clarification Motion is essentially a mis-titled motion for reconsideration and should similarly be denied, or, to the extent granted, the clarification should be that the Bar Date Order controls over any inconsistency with the Protective Order.

12. Motions to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9023, are treated as motions to reconsider. *In re Prisco*, 2018 Bankr. LEXIS 345, *2 (Bankr. N.D.N.Y. Feb. 8, 2018). Reconsideration "is merited when there has been a clear error or manifest injustice in an order of the court or if newly discovered evidence is unearthed." *In re Bird*, 222 B.R. 229, 235 (Bankr. S.D.N.Y. 1998). As the court noted in *In re Bird*, "To prevail, the movant must show that the court overlooked factual matters or controlling precedent 'that might have materially influenced its earlier decision.'" *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 473 (S.D.N.Y. 1996). This criterion is strictly construed against the moving party." *Id*.

13. Furthermore, "A motion to reconsider should not give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised prior on the original motion." *In re Bird*, 222 B.R. at 235; *Shrader v. CSX Transp., Inc.*,

70 F.3d 255, 257 (2d Cir. 1995) ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."); *Fitzgerald v. City of Troy*, 2013 U.S. Dist. LEXIS 139056, at *7 (N.D.N.Y. Sep. 27, 2013) ("Motions to vacate or to reconsider should not be granted if a moving party seeks only to relitigate an issue that has already been fully considered by the court."). "Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964).

14. As was the case with Century, the Certain Insurers have not established any ground for the Clarification Motion.

15. Further, for the reasons set forth in the Committee Response, the definition of Authorized Parties should not be expanded to effectively provide the Certain Insurers and the other Insurers with carte blanche to provide the confidential information from Abuse Proofs of Claim to unknown and undisclosed third parties. As part of the notice of the Bar Date, survivors were encouraged to provide proofs of claim with the promise that the parties that will be able to see those claims will be limited and tightly controlled. That promise should not be breached, and any addition to the list of Authorized Parties should be done in accordance with the terms of the Bar Date Order.

16. To the extent clarification is necessary, the Committee proposes that the Court enter the Order in the form attached hereto as **Exhibit A**.

## CONCLUSION

17. The Bar Date Order was entered and was an integral part of the noticing of survivors and other creditors of the Bar Date. The Certain Insurers had the full opportunity to address the issue of Authorized Parties under the Bar Date Order prior to and at the Court

4875-5519-7351.2 18493.002                                       6

hearing. There is no basis for reconsideration or any change to the Authorized Parties under the Bar Date Order.

**WHEREFORE**, the Committee requests that the Clarification Motion be denied, or, to the extent it is granted, it should be clarified that the Bar Date Order controls over any inconsistency with the Protective Order, any other protective order or confidentiality agreement entered into by any of the parties in this case, and that the Court grant such relief as is just and proper.

Date: February 27, 2024                     **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/       Ilan Scharf*
James I. Stang (admitted *pro hac vice*)
Ilan D. Scharf
Karen B. Dine
780 Third Avenue, 34th Floor
New York, NY  10017
Telephone:  (212) 561-7700
Facsimile: (212) 561-7777
Email: jstang@pszjlaw.com
Email: ischarf@pszjlaw.com
Email: kdine@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors of The Roman Catholic Diocese of Ogdensburg, New York*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Ogdensburg, New York,<br><br>　　　　　　　　　　　Debtor. | Hearing Date: March 5, 2024 at 1:00 pm ET<br>Hearing Location: Alexander Pirnie U.S. Courthouse and Federal Building 10 Broad Street, Utica, New York<br><br>Objection Deadline: February 27, 2024<br><br>Chapter 11<br><br>Case No. 23-60507 (PGR) |

## ORDER DENYING CERTAIN INSURERS' MOTION FOR CLARIFICATION OF THE BAR DATE ORDER

Having considered Interstate Fire & Casualty Company ("**Interstate**") and Certain Underwriters at Lloyd's, and London and Certain London Market Insurance Companies' (collectively "**London Market Insurers**" or "**LMI**", together with Interstate, the "**Certain Insurers**") *Motion for Clarification of the Court's Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. ] (the the "**Clarification Motion**"),[1] the objections filed thereto and upon the hearing held on the Clarification Motion and for good cause appearing therefor:

**IT IS ORDERED that**:

　　　　1.　　　　The Clarification Motion is **DENIED**.

　　　　2.　　　　Where the Court's *Order Establishing Bar Dates for Filing Proofs of Claim Bar Date Order* [Docket No. 203] (the "**Bar Date Order**") and the Court's *Protective Order Approving the Form of Confidentiality Agreement Between the Roman Catholic Diocese of Ogdensburg, New York and Certain Insurance Carriers* [Docket No. 244] conflict as to the

---

[1] Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Clarification Motion.

applicable confidentiality protocols governing Abuse Proofs of Claims, the Bar Date Order [Docket No. 203] shall govern.

*\*\*\* END OF ORDER \*\*\**

# EXHIBIT B

Page 1

1  UNITED STATES BANKRUPTCY COURT
2  NORTHERN DISTRICT OF NEW YORK
3  Case No. 23-60507
4  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
5  In the Matter of:
6
7  THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK,
8
9          Debtor.
10 - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
11
12              United States Bankruptcy Court
13              Alexander Pirnie Federal Building
14              10 Broad Street
15              Utica, NY  13501
16
17              December 5, 2023
18              1:08 PM
19
20
21
22
23 B E F O R E :
24 HON PATRICK G. RADEL
25 U.S. BANKRUPTCY JUDGE

```
                                                              Page 2
 1   HEARING re - Doc. No. 16 - Motion for Interim and Final

 2   Orders Authorizing, But Not Directing, the Diocese to

 3   Continue to Administer the Deposit and Loan Fund and

 4   Diocesan Trust Fund in the Ordinary Course of Business and

 5   Consistent With Past Practice

 6

 7   HEARING re - Doc. No. 138 - Motion for 2004 Examination

 8

 9   HEARING re - Doc. No. 237 - Motion to Reconsider Order to

10   Set Last Day to File Proofs of Claim

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde
```

```
 1  A P P E A R A N C E S :

 2

 3  BOND, SCHOENECK & KING, PLLC

 4       Attorneys for the Debtor

 5       One Lincoln Center

 6       Syracuse, NY 13202

 7

 8  BY:  CHARLES SULLIVAN

 9       STEPHEN A. DONATO

10       SARA C. TEMES

11

12  BARCLAY DAMON LLP

13       Attorneys for Ad Hoc Committee of Parishes

14       Barclay Damon Tower

15       125 East Jefferson Street

16       Syracuse, New York 13202

17

18  BY:  JEFFREY A. DOVE

19

20  LAFAVE, WEIN & FRAMENT, PLLC

21       Certain Personal Injury Creditors

22       2400 Western Avenue

23       Guilderland, NY 12084

24

25  BY:  CYNTHIA S. LAFAVE
```

```
                                                               Page 4

 1   PACHULSKI STANG ZIEHL & JONES LLP

 2        Attorneys for Official Committee of Unsecured Creditors

 3        780 Third Avenue, 34th Floor

 4        New York, NY 10017

 5

 6   BY:  ILAN D. SCHARF

 7        KAREN DINE

 8

 9   OFFICE OF THE UNITED STATES TRUSTEE

10        Attorneys for William K. Harrington,

11        United States Trustee

12        05 U.S. Courthouse

13        10 Broad Street

14        Utica, NY 13501

15

16   BY:  ERIN CHAMPION

17

18   O'MELVENLY & MYERS, LLP

19        Attorneys for Insurance Company of North America

20        Times Square Tower

21        7 Times Square

22        New York, NY 10036

23

24   BY:  TANCRED SCHIAVONI

25        ADAM HABERKORN
```

1  that.
2           Okay.  So you called the reconsideration motion
3  first, Ms. Johnson?  Do I have that right?
4           THE CLERK:  Yes.
5           THE COURT:  Okay.  All right.  So I mean, Mr.
6  Schiavoni, are you going to --
7           MR. SCHIAVONI:  Shall I sit down, Your Honor, or
8  I'm sorry.
9           THE COURT:  Well, no.  It's your motion.  Right?
10          MR. SCHIAVONI:  Yes.
11          THE COURT:  So yeah.  Why don't you come on up to
12 the podium.
13          So it's not, in my view, really reconsideration.
14 I mean, this was -- and good news/bad news, I did think
15 about it and I looked at other orders and other diocese and
16 weighed carefully how I wanted to go about it.  I was -- my
17 -- the tension I was trying to resolve in all aspects of it,
18 which included this part of it, was I am asking abuse
19 claimant -- survivors or claimants -- to provide information
20 that would not be required of a slip-and-fall claimant and
21 information of an extremely sensitive personal nature.  So I
22 wanted to be respectful of that and mindful of the potential
23 for chilling disclosure.
24          At the same time, I understand the interest
25 everyone has in having an orderly, efficient mediation

1    process which requires, among other things, the insurance

2    companies to be able to ascertain the nature and extent of

3    potential liability on the part of the diocese and then your

4    obligation, if any, to subrogate those liabilities.

5              So I get that.  I was trying to balance it.  In

6    this instance, with regard to this aspect of the disclosure,

7    I -- that was the decision that I made.  I don't think it

8    really -- if it's just reconsideration, I'm going to deny

9    it.  But I wanted to address with you my question.  I

10   understand that you view it as a litigation disadvantage

11   because it requires you to disclose something that you would

12   not ordinarily necessarily need to disclose.

13             But I'm wondering is there -- is there a practical

14   problem here.  Are you actually not being able to get

15   consents where you need to get consents?  Is something

16   broken in the process that allows you -- because I want you

17   to be able to -- subject to the disclosure requirements and

18   the requirements here today -- I want you to be able to use

19   experts and consultants in an appropriate way to make the

20   determinations you need to make to participate effectively

21   in mediation.

22             MR. SCHIAVONI:  I appreciate those remarks, Your

23   Honor.  And I'm not going to reargue -- I understand your

24   ruling and I'm not going to reargue it.  I do have a

25   practical resolution, which is not rearguing your motion.

1    an unverified complaint in the torts system and say, in

2    essence -- assume all the allegations are correct and please

3    pay full jury value for it  It's just sort not how the world

4    works.  We have our own responsibilities, and frankly, it

5    benefits the diocese and it actually benefits really the

6    claimants to sort out claims here that maybe shouldn't have

7    been filed or that there problems with.

8            So Your Honor, I'm getting to my practicals --

9            THE COURT:  Well, okay.

10           MR. SCHIAVONI:  -- solution.  The order does -- if

11   your order -- if Your Honor's not inclined to reconsider,

12   the order does provide that we can bring a motion and ask,

13   you know, for folks, you know -- to -- so we'll bring a

14   motion under that other provision of that order to seek

15   permission use consultants and if it's -- if we don't get

16   consent or it's denied, we'll deal with those claimants who

17   provide us with their proofs of claim, and the others, they

18   don't need to make a coverage claim, so to speak.  It --

19           THE COURT:  So my expectation, when I struck the

20   balance that I struck in the order, was that the insurers

21   would be able to share the abuse claim supplements with

22   their consultants and experts, comma, subject to the

23   identity of those individuals being disclosed to the

24   committee and to the diocese so if there was some issue with

25   turning it over to that particular consultant or expert,

1  they could raise that objection and also just sort of

2  generally, then, particularly the abuse claimants would be

3  aware of the sort of universe in which their very

4  confidential information was being shared.  And then again,

5  we can have appropriate safeguards to make sure that we know

6  everyone who has that information and we know that they've

7  signed the appropriate confidentiality agreements and we're

8  certain that we have control -- a handle on this extremely

9  sensitive information.  That was the balance I thought I was

10 striking in my order.

11          Are you saying that's not how it's playing out in

12 real life?

13          MR. SCHIAVONI:  Yes.  And this is actually very

14 helpful because maybe I misunderstood something.  But the

15 order -- the way the order is drafted, it says the diocese,

16 essentially, can use consultants and experts and so can

17 committee, but it's silent with respect to insure -- it says

18 insurers, successors, assigned, or reinsurers, and then the

19 words, comma, consultant and experts, I think, was deleted

20 from what's in other orders.  So it is silent.  It doesn't

21 say anything about that.

22          So there's sort of two issues here.  One is if it

23 was the Court's intent that we could share documents with

24 experts and consultants and it was only that we needed to

25 disclose it -- in other words, if we -- like, it was -- one

```
 1              MR. SCHIAVONI:  Yes, Your Honor.  I'm not
 2   rearguing --
 3              THE COURT:  -- unfair or not.  But in terms of the
 4   logistical, practical, application, again, it was my intent
 5   -- I thought I was striking an appropriate balance between
 6   safeguarding this information that was being disclosed but
 7   still giving you the opportunity to use the experts and
 8   consultants you felt you needed to use.  And yeah.  If there
 9   was a breakdown in that process with, you know, withholding
10   of consent that you felt was unreasonable, that's something
11   that you would bring to my attention and we would deal with
12   it.
13              MR. SCHIAVONI:  So I'm sorry to -- just I want to
14   be very careful about this, so I'm going to -- so what I
15   need to do is just -- I will have someone sign the -- have
16   the firm sign the agreement, share it with these two.  If
17   they don't have an objection in some -- I -- you know, I
18   guess I have to wait for their consent for five or ten days
19   or something and wait to see what they say.  But if they say
20   okay, if I get an email from both of them, I don't need to
21   come back here with a motion.
22              THE COURT:  Correct.  Yeah.  You're going to say
23   we've hired Dr. So-and-so or Expert Consulting Firm So-and-
24   So.  Here's a copy of the signed confidentiality agreement.
25   Absent objection -- I'd have to look at the order.  I'll
```