**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of<br>Ogdensburg, New York,<br><br>Debtor. | Case No. 23-60507 (PGR)<br><br>Chapter 11 |

**REPLY BRIEF IN FURTHER SUPPORT OF AN ORDER**
**ADDRESSING RULE 2004 MOTION [DKT. NO. 138]**

The insurers identified in the signature block below (the "Moving Insurers") respectfully ask that the Court take into consideration three points in reply to the Diocese's Objection [Dkt. No. 395] ("Diocese Objection").

***First***, the Diocese offers no objection on the merits to ***any*** of the document requests in the Syracuse Order or to the narrow modifications sought by the Moving Insurers. In recognition of the appropriateness of the requests, the Diocese asserts no less than twice in its brief that "*the Diocese has produced the materials requested in this Motion*." *See* Diocese Objection, ¶¶ 4, 16, 17, 25. If the Diocese producing the documents requested by the Moving Insurers poses no problem, as the Diocese suggests, then there is no reason not to enter the Moving Insurers' Proposed Order. As we pointed out in our brief accompanying the Proposed Order, the Diocese offered in one or the other of its markups before this hearing ordering clauses for documents in nearly all of the categories in the Moving Insurers' Proposed Order.

***Second***, the Diocese is reverting to its position that the parties should be satisfied that they will "get what they get" in what the Diocese chooses to produce to the Committee after representing to the Court in December that it would work with us on tailoring the Syracuse Order to this case. The insurers are not a party to the Committee's unofficial requests, have no way to enforce them and the responses to those requests only create uncertainty. This leaves the insurers

1

without a foundation to make an assessment concerning anything based on what the Diocese cherry picks to produce. On the most basic level, we do not know whether what will be produced is just what is deemed helpful to the Diocese or whether it includes everything identified by a reasonable search within the scope of a particular category of documents. The Federal Rules contemplate that this kind of assurance is given when documents are produced. What we have asked for is normal and routine. We need to know with clarity what the Diocese is obligated to search for and produce and what it is not producing in an enforceable manner. If, for instance, the Diocese is only producing some and not all of the documents provided to the Attorney General in response to her requests to the Diocese, or some but not all of the documents and transcripts provided to the plaintiffs in the underlying CVA cases, entry of the Moving Insurers' Proposed Order would give us clarity on this point.

*Third*, the Diocese's protest that we would somehow already have the documents sought by the Moving Insurers' Proposed Order if we only signed a two-party non-disclosure agreement is both untrue and a red herring.[1] As a threshold matter, the Moving Insurers' Proposed Order by its terms provides that any production obligation is conditioned on a confidentiality agreement or protective order being in place.[2] The question is what is the Diocese obligated to search for and produce. The Diocese's reversion to its position that "we will know what we get when we get it"

---

[1] The Diocese is the one demanding blanket confidentiality. The Committee asked only that the identities of claimants, their abuse and their proofs of claim be protected. It did not ask for the assignments and locations of perpetrators or prepetition financial transfers to be concealed. We brought a specific articulable concern to Diocese counsel that we are prepared to address *in camera* in a manner that does not reveal information that is subject to a pending motion to unseal if the Diocese insists on pressing this issue. However, the Moving Insurers' Proposed Order, if entered, addresses the matter.

[2] *See* Proposed Order, at 2 [Dkt. No. 393-1] ("[s]ubject to the Moving Insurers executing a confidentiality agreement requested by the Debtor, the form of which is attached as Schedule 1 to the Court's Protective Order [Dkt. No. 244],…").

and that it should have no enforceable obligation to produce any specific category of documents gets us nowhere.

Finally, the Diocese's proposal that the Diocese be excused from any discovery order whatsoever or that one be entered that only requires the Diocese to produce what it picked to give to the Committee is unworkable. This leaves INA and the other insurers without any foundation to assess what occurred here and invariably leaves as the only recourse pursing litigation.

Dated: March 4, 2024

Respectfully submitted,

By:  /s/ Tancred Schiavoni

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:    (212) 326-2000
Email: tschiavoni@omm.com
         ahaberkorn@omm.com

-and-

**CLYDE & CO US LLP**
MARIANNE MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07960
Telephone:    (973) 120-6700
Email: Marianne.May@clydeco.us

*Attorneys for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

4859-1516-6123.1

3