UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Ogdensburg, New York,<br><br>                Debtor. | Case No.: 23-60507<br><br>Chapter 11 |

### CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND LONDON MARKET INSURANCE COMPANIES' LIMITED OBJECTION TO THE MOTION FOR ENTRY OF AN ORDER APPROVING MEDIATION FEE AGREEMENT PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE

Certain Underwriters at Lloyd's, London and London Market Companies[1] (collectively "London Market Insurers" or "LMI"), by and through their undersigned counsel, file this limited objection ("Limited Objection") to the Roman Catholic Diocese of Ogdensburg, New York's ("Debtor") *Motion for Entry of an Order Approving Mediation Fee Agreement Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code* ("Motion"),[2] which requests approval of a mediation fee agreement ("Fee Agreement") with the Hon. Christopher S. Sontchi. In support of the Limited Objection, LMI state as follows:

---

[1] The London Market Companies are: Catalina Worthing Insurance Ltd f/k/a Hartford Financial Products International (as Part VII transferee of Excess Insurance Co. Ltd. and London & Edinburgh Insurance Co. Ltd., as successor to London & Edinburgh General Insurance Co. Ltd.), RiverStone Insurance UK Limited (as successor in interest to Terra Nova Insurance Co. Ltd. and Sphere Drake Insurance Co. PLC), Yasuda Fire & Marine Insurance Co. (UK) Ltd., River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, which was itself the legal successor to: (i) St Paul Reinsurance Company Limited (formerly known as Mercury Reinsurance Company (UK) Limited and St Paul Fire & Marine Insurance Company (UK) Limited) and (ii) certain business of St Paul Travelers Insurance Company Limited (formerly known as St Katherine Insurance Company Limited, St Katherine Insurance Company Plc and St Paul International Insurance Company Limited), Cavello Bay Reinsurance Limited (as successor by merger to the interests of Harper Insurance Limited, formerly known as Turegum Insurance Company), and Dominion Insurance Co. Ltd.

[2] Doc. No. 412.

**INTRODUCTION**

1. LMI subscribed excess indemnity insurance contracts on behalf of the Debtor and its related entities (including parishes), which provided the excess coverage as part of the Debtor's self-insurance program ("LMI Policies"). LMI support mediation and intend to participate in mediation to achieve a consensual settlement, as LMI have done in several other bankruptcy proceedings involving Catholic dioceses.

2. However, LMI object to the Debtor's request to allocate one-half of Judge Sontchi's fees and expenses ("Mediation Fees") to the Debtor and the other half to its insurance carriers, including LMI (collectively, "Insurers"). The Debtor mentions seven insurance carriers in the Motion, and includes the multiple, several underwriters and companies comprising LMI as a single carrier. The Debtor did not consult with LMI on this arrangement and LMI do not consent to it.

3. The Debtor also maintains coverage with the National Catholic Risk Retention Group, so any allocation must add that entity to the insurer group for a total of eight Insurers.[3] However, that omission is not the sole reason for LMI's objection.

4. The Court's order governing mediation ("Mediation Order") incorporates the Mediation Program for the United States Bankruptcy Court for the Northern District of New York ("NDNY Mediation Program").[4] LMI objected to the Court's appointment of Judge Sontchi as mediator, in part, due to his hourly fees being so much higher than the other mediator candidates' fees. The Motion seeks to impose an inequitable share of those Mediation Fees on the Insurers, which is contrary to the local rules.

---

[3] Doc. No. 107 at 10.

[4] *See The Roman Catholic Diocese of Ogdensburg, New York et. al v. Certain Underwriters at Lloyd's, London, Certain London Market Companies et. al*, Adv. No. 23-80013, Doc. No. 39, (Bankr. N.D.N.Y. July 17, 2023) ("Adversary Proceeding").

5.  The NDNY Mediation Program requires sharing compensation of a mediator's fees and expenses "equally" among "the parties to the mediation" unless the parties agree otherwise.[5] Here, LMI have not agreed otherwise.

6.  The parties to the Mediation Order are the Debtor, its parishes ("Parishes"), the Official Committee of Unsecured Creditors ("Committee"), and each of the Insurers, including LMI (collectively, "Mediation Parties").[6] Thus, much of the mediation will involve Mediation Parties other than the Insurers, in mediation sessions that will not involve LMI.

7.  LMI request that the Court allocate each of these four sets of Mediation Parties an equal one-quarter share of the Mediation Fees. This would be a far more equitable solution than imposing the half share on the Insurers as sought by the Motion.

8.  Further, the Fee Agreement requires the Insurers to reimburse the Debtor within thirty days of the Debtor requesting such payments. This procedure is impracticable. There are seven insurers, which should be increased to eight insurers, involved in mediation. The individual share of each of the underwriters and companies comprising LMI must be calculated based on LMI's requested quarter share. Then each LMI, which are all based in England, must separately collect its respective share of LMI's quarter share, and then transmit that amount.

9.  Hence, LMI request that the Court also order the Debtor to seek collection of all funds at the conclusion of mediation.

10. Lastly, the Fee Agreement, or any Court order approving the agreement, must also state that the Insurers will receive a copy of any invoice submitted by Judge Sontchi for reimbursement of the Mediation Fees.

---

[5]  Local Bankruptcy Rule for the United States Bankruptcy Court, Northern District of New York ("LBR") 9019-1, Appendix IV § 6.1(2).

[6]  Adversary Proceeding, Doc. No. 39, ¶ 2.

**BACKGROUND**

11. On July 17, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").[7] At the time of its bankruptcy filing, the Debtor was a defendant in 124 pending lawsuits alleging that the Debtor has liability for sexual abuse committed by its employees ("Abuse Claims"), pursuant to New York's Child Victims Act.[8]

12. On July 17, 2023, the Debtor and the Parishes commenced the Adversary Proceeding against the Insurers, for breach of contract and declaratory judgment.[9] The operative Complaint seeks a declaration of rights, duties, and liabilities pursuant to the terms of certain insurance policies, including the LMI Policies, relating to Abuse Claims.[10]

13. On July 28, 2023, the Debtor filed a motion to refer the Debtor, Parishes, and Insurers to mediation ("Mediation Motion") to seek a global resolution on issues related to the merits and valuation of Abuse Claims and availability of insurance coverage for Abuse Claims.[11]

14. On August 11, 2023, the United States Trustee appointed the Committee.[12]

15. On September 8, 2023, the Debtor, Parishes, and Insurers agreed to stay all deadlines in the Adversary Proceeding through October 15, 2023.[13] On September 13, 2023, the

---

[7] Doc. No. 1; unless otherwise defined, any reference to a section shall mean a statutory section of the Bankruptcy Code.

[8] Doc. No. 75, ¶¶ 8-10. The Debtor also stated that it is not a defendant to any pending lawsuit for Abuse Claims pursuant to New York's Adult Survivors Act. *Id.*

[9] Adversary Proceeding, Doc. No. 1.

[10] *Id.*

[11] *Id.*, Doc. No. 5.

[12] *Id.*, Doc. No. 65.

[13] *Id.*, Doc. No. 17.

Court entered an order staying the Adversary Proceeding though October 15, 2023.[14]

16. On September 26, 2023, LMI filed a limited objection to the Mediation Motion, requesting the exchange of additional information and objecting to any stay of the Adversary Proceeding.[15]

17. On October 18, 2023, the Court entered the Mediation Order, granting the Medication Motion, and referred the Adversary Proceeding to mediation pursuant to 11 U.S.C. § 105(a) and LBR 9019-1, which incorporates the NDNY Mediation Program.[16] The Mediation Order directed the parties to select a mediator, which included agreement on "the mediator's availability and compensation structure," with any proposed compensation structure subject to the Court's review.[17] The Mediation Order also stayed the Adversary Proceeding indefinitely until further order of the Court.[18]

18. On November 2, 2023, the Debtor wrote a letter to the Court stating that parties could not agree on a mediator.[19] The Debtor also proposed three candidates to act as mediator.[20] On November 6, 2023, the Insurers responded, submitting the same three candidates for mediation as the Debtor and proposing one additional candidate for consideration.[21] Neither the Debtor's nor the Insurers' proposed candidates included Judge Sontchi. On November 7, 2023, the

---

[14]    *Id.*, Doc. No. 18.

[15]    *Id.*, Doc. No. 27.

[16]    *Id.*, Doc. No. 39.

[17]    *Id.*, ¶¶ 3, 6a.

[18]    *Id.*, ¶ 8.

[19]    *Id.*, Doc. No. 45.

[20]    *Id.*

[21]    *Id.*, Doc. No. 51.

Committee also responded and proposed two additional candidates, Roger Kramer ("Kramer") and Judge Sontchi.[22]

19.  On November 7, 2023, the Court held a hearing on the proposed mediators submitted by the Debtor, Insurers, and Committee.[23] During oral argument, the Debtor stated that Judge Sontchi's hourly rate was "much higher than any other mediation candidate" and requested that Judge Sontchi's selection "not bubble to the top" when taking cost into the Court's consideration.[24] Further, the Committee offered Kramer as an alternative "[i]f the concern about Mr. Sontchi at this point [was] cost…"[25] At the hearing's conclusion, the Court took the matter under submission.

20.  On December 14, 2023, the Court entered an order appointing the Hon. Gregg W. Zive as mediator ("Original Mediator Order") "without cost to any party, with each party to bear its own costs and expenses."[26]

21.  However, on January 17, 2024, the Court vacated the Original Mediator Order, after Judge Zive advised that he was unable to serve, and entered an order appointing Judge Sontchi as mediator ("Mediator Order").[27] The Court approved compensation for Judge Sontchi at $1,000 per hour, with travel time reimbursed at $500 per hour, and related costs.[28] The Court further ordered the Debtor and Insurers to "allocate payment of Judge Sontchi's fees and expenses on such

---

[22]   *Id.*, Doc. No. 52.

[23]   *Id.*, Doc. No.

[24]   *Id.*, Doc. No. 57, November 7, 2023 Hr'g Tr'g at 22:9-12.

[25]   *Id.* at 19:17.

[26]   *Id.*, Doc. No. 63.

[27]   *Id.*, Doc. No. 69.

[28]   *Id.*

terms as they may agree upon or subject to further order of the Court…."[29]

22. Contrary to the Mediator Order, the Debtor did not communicate or consult with LMI as to the terms of the Fee Agreement nor any proposed reimbursement for one-half of Judge Sontchi's fees and expenses.

23. On March 8, 2024, the Debtor filed the Motion, requesting the Court to approve the Fee Agreement to pay Judge Sontchi for services as mediator.[30] The Fee Agreement is between the Debtor and Judge Sontchi, only.[31] Contrary to the terms of the NDNY Mediation Program, the Motion requests that the Insurers reimburse the Debtor for one-half of Judge Sontchi's fees and expenses within thirty days of the Debtor requesting such reimbursement.[32]

## ARGUMENT

24. LMI continue to support mediation because a fair and efficient resolution of Abuse Claims can only come through mediation with the Debtor, its related entities, and the Committee. However, LMI object to the Fee Agreement.

25. The Debtor did not consult with LMI when it negotiated the Fee Agreement with Judge Sontchi. Nor did the Debtor consult with LMI regarding the allocation of Mediation Fees between it and the Insurers. LMI first learned of the Fee Agreement when the Debtor filed the Motion, despite the Mediation and Mediator Orders, which direct the parties to meet and confer regarding Judge Sontchi's compensation, including the allocation of such compensation.[33]

---

[29] *Id.*

[30] *Id.*, Doc. No. 412.

[31] *Id.*

[32] *Id.*

[33] *Id.*, Doc. No. 69.

Further, to LMI's knowledge, the Debtor did not consult with any other Insurer regarding this allocation.

26. The Debtor also maintains coverage with the National Catholic Risk Retention Group.[34] Thus, any allocation should include that entity as one of the Insurers.

27. The Mediation Order incorporates the NDNY Mediation Program, which directs mediation parties to share compensation of a mediator's fees and expenses "equally" among "the parties to the mediation" unless the parties agree otherwise.[35] Yet, despite this language, the Fee Agreement only requires the Debtor and Insurers to pay the Mediation Fees. It excludes the Debtor's related parties, which include dozens of parishes, and the Committee from that responsibility. This is inequitable and unauthorized by the NDNY Mediation Program.

28. The Debtor, Parishes, Committee, and Insurers are mediating parties, as expressly stated in the Mediation Order.[36] Hence, LMI request that the Court allocate to each of these four parties a one-quarter share of the Mediation Fees.

29. Additionally, the Fee Agreement requires the Insurers to reimburse the Debtor within thirty days of the Debtor requesting such payments. This is unworkable with respect to LMI, which include several insurers resident in England. The individual share of each of the underwriters and companies comprising LMI must be calculated based on LMI's requested quarter share. Then each LMI, which are all based in England, must separately collect its respective share of LMI's quarter share, and then transmit that amount. A more practical method would be for the

---

[34]    Doc. No. 107 at 10.

[35]    LBR 9019-1, appendix IV § 6.1(2).

[36]    Doc. No. 39, ¶ 2.

Debtor to seek a reimbursement of the parties' shares of the Mediation Fees at the conclusion of mediation.

30. Lastly, the Fee Agreement is not clear as to whom Judge Sontchi will invoice his Mediation Fees.[37] If the Insurers are to reimburse a quarter of the Mediation Fees, then the Fee Agreement or any Court order approving the agreement must state that the Insurers will also receive a copy of the invoice for the Mediation Fees.

WHEREFORE, LMI oppose the Motion on these limited bases. LMI request that the Court:

a. Allocate a one-quarter share of Judge Sontchi's fees and expenses amongst each of the Debtor, Parishes, Committee, and Insurers;

b. Authorize the Debtor to seek reimbursement for the Mediation Fees from all parties only at the conclusion of mediation;

c. Require Judge Sontchi to submit a copy of any invoice for his Mediation Fees to the Insurers; and

d. Order any other relief deemed just and proper.

Dated: March 26, 2024

Respectfully submitted,

By: /s/ Catalina J. Sugayan
Catalina J. Sugayan (*pro hac vice*)
Jordan Russell (*pro hac vice*)
Yongli Yang (*pro hac vice*)
Clyde & Co US LLP
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 635-7000
Facsimile: (312) 635-6950
Email: catalina.sugayan@clydeco.us

-and-

By: /s/ Russell W. Roten

---

[37] Doc. No. 412-2 at 2-3 ("All invoices issued by Sontchi are due upon receipt.").

Russell W. Roten (*pro hac vice*)
Jeff D. Kahane (*pro hac vice*)
Nathan Reinhardt (*pro hac vice*)
Andrew Mina (*pro hac vice*)
Duane Morris LLP
865 S. Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: (213) 689-7400
Facsimile: (213) 689-7401
Email: RWRoten@duanemorris.com

*Attorneys for London Market Insurers*