UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>OGDENSBURG, NEW YORK,<br><br>Debtor. | Case No. 23-60507 (PGR)<br><br>Chapter 11 Case |

**OMNIBUS REPLY TO PLEADINGS FILED IN RESPONSE TO
THE DIOCESE'S MOTION FOR ENTRY OF AN ORDER
APPROVING MEDIATION FEE AGREEMENT PURSUANT TO
SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE**

The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), by and through its undersigned counsel, hereby submits this omnibus reply (this "Reply") to the pleadings filed in response to the Diocese's *Motion for Entry of an Order Approving Mediation Fee Agreement Pursuant to Section 105(a) and 363(b) of the Bankruptcy Code* (the "Motion")[1] by (i) Employers Insurance Company of Wausau f/k/a Employers Insurance of Wausau A Mutual Company f/k/a Employers Mutual Liability Insurance Company of Wisconsin ("Wausau") [Docket No. 441] (the "Wausau Limited Objection")[2]; (ii) certain Underwriters at Lloyd's, London and London Market Companies (collectively, "LMI") [Docket No. 437] (the "LMI Limited Objection"); (iii) Granite State Insurance Company ("Granite State") [Docket No. 438] (the "Granite State Limited Objection"); and (iv) Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century" and collectively with Wausau, LMI, and Granite State, the "Objecting Insurers") [Docket No. 439] (the "Century Objection" and collectively with the Wausau Limited Objection, the LMI Limited Objection, and the Granite State

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] Wausau's initial responsive pleading was filed at Docket No. 79 in the related Adversary Proceeding but was subsequently withdrawn at Docket No. 80 in the related Adversary Proceeding and refiled at Docket no. 441.

1

Limited Objection, the "Insurer Objections"). As and for its Reply, and in further support of the Motion, the Diocese respectfully states as follows:

## OMNIBUS REPLY

1. While the Objecting Insurers do not object to the apportionment of Judge Sontchi's fees, they do object to the way the Diocese seeks to apportion the fees associated with the Court-appointed mediator. For the reasons set forth below, the Diocese respectfully submits that this position runs contrary to the orders entered by the bankruptcy courts in both *In re The Roman Catholic Diocese of Syracuse, New York*, Case No. 20-30663 (WAK) [Docket Nos. 586, 1017] (Bankr. N.D.N.Y., July 20, 2021, September 6, 2022) (the "Syracuse Diocese Case") and *In re The Diocese of Buffalo, N.Y.*, Case No. 20-10322 (CLB) [Docket No. 2275] (Bankr. W.D.N.Y., March 31, 2023) (the "Buffalo Diocese Case") as well as accepted custom in mediation.

**I.    Certain Objecting Insurers Take the Position That They Should Not Be Required to Reimburse Judge Sontchi's Fees for Certain Sessions**

2. Wausau, Granite State, and Century advance the argument that they should not be required to reimburse Judge Sontchi's fees for sessions in which the Objecting Insurers do not participate or that include discussions which are contrary to the Objecting Insurers legal interests.

3. It is a normal and customary practice that the fees and expenses of a mediator are shared among the parties to an underlying dispute. That custom and practice is reflected in the NDNY Mediation Program rules. The Objecting Insurers seek to break from the customary practice and set up an untenable system likely requiring further and future judicial intervention. It will be very difficult, if not impossible, for Judge Sontchi and the mediation parties to "parse" all of his services as mediator in this fashion. Questions and disputes will likely arise, and it is likely that the Court will be called upon to determine how to apportion such fees. The position advanced by the Objecting Insurers seeks to inject uncertainty into the procedures for paying Judge Sontchi,

2

which ultimately will increase the legal fees of the Diocese when its counsel needs to determine how to apportion each invoice.

4. In addition, if a Defendant insurer refuses to participate in a session, but other Defendant insurers do participate, how does that session get apportioned? The Diocese respectfully submits that any system of reimbursement that disincentivizes the participation or attendance of the Objecting Insurers is antithetical to the purposes of global mediation.

5. There have already been mediation meetings where the Diocese was not asked to participate, but some or all of the Defendant insurers participated. Under the argument advanced by certain Objecting Insurers, the Diocese should seek relief from the payment of Judge Sontchi's fees where it is not an active participant in a mediation session. Advancing this reasoning to its logical conclusion, each party to the mediation would eventually end up in a situation where they only pay for Judge Sontchi's fees where the party actively participates in the session.

6. Any system where there is a chance of uncertainty as to which parties pay for certain work of Judge Sontchi or mediation sessions is not sustainable. Successful mediation benefits all of the Objecting Insurers directly through reduced litigation costs, as well as fostering discussions aimed at settling significant potential liability under historic insurance policies. In order to incentivize all parties to engage in cooperative mediation, the Court should overrule the Insurer Objections and require the Objecting Insurers to pay fifty percent (50%) of the mediation fees and expenses, not just the fees and expenses for sessions they attend or in which they participate.

## II. The Diocese is Not Seeking Reimbursement of Mediation Costs from The National Catholic Risk Retention Group

7. The National Catholic Risk Retention Group ("TNCRRG") is an insurer of the Diocese, but is not presently a defendant in the Adversary Proceeding. LMI and Century have

3

17599565.4

asked the Court to impose mediation costs upon TNCRRG, such that the insurer portion of mediation fees would be divided in a 1/8th proportion rather than a 1/7th proportion. The Diocese believes that, at least at the outset, the assistance of a mediator will not be necessary to engage in settlement negotiations with TNCRRG. In addition, the Court lacks jurisdiction over TNCRRG at this time and therefore is unable to impose any fee sharing upon TNCRRG.

8. Until such time as TNCRRG is added as a defendant to the Adversary Proceeding, the Court lacks jurisdiction to order any such mediation fee sharing arrangement. Therefore, the Court should overrule the Objecting Insurers' assertion that TNCRRG should be made to share in any mediation costs.

### III. The Committee and the Parishes Should Not be Required to Pay a Portion of Judge Sontchi's Fees and Expenses[3]

9. The Objecting Insurers incorrectly suggest that the Diocese has requested relief through the Motion that is contrary to the NDNY Mediation Program. The NDNY Mediation Program includes a fee sharing provision indicating a preference in this Court to share mediation expenses amongst the parties. The NDNY Mediation Program also provides the Court with authority to order a different allocation of mediation fees, "in the interest of justice." NDNY Mediation Program, § 6.1(2). Here, justice requires a split of all mediation fees and costs equally among the Diocese and the Defendant insurers, with no fees or expenses paid by the Committee or the Parishes.

10. While the Committee is a participant in the mediation sessions, the Committee's expenses are paid by the chapter 11 estate, and therefore such a construct only serves to double the

---

[3] In the Syracuse Diocese Case, LMI lodged an objection [Syracuse Diocese Case, Docket No. 543] opposing any insurer payment of mediation fees. LMI took the position that if mediation costs were to be split with the insurers in the Syracuse Diocese Case, it should be divided into twenty-five percent (25%) shares for each of the Syracuse Diocese, the insurers, the Committee, and the parishes. Numerous insurer defendants joined that objection [Syracuse Diocese Case, Docket Nos. 547, 548, 553, 554, 555, 556, 557, 558, 559, 561, 564, 565, and 566]. These objections were overruled.

estate's share. The Committee's participation in the mediation will presumably assist all parties in moving closer to a confirmable chapter 11 plan of reorganization, thereby allowing the Diocese to exit from bankruptcy. The assertion by the Objecting Insurers that the Committee should pay a portion of the mediation fees and expenses is a transparent attempt to force the chapter 11 estate to bear a higher proportion of the mediation fees and expenses while directly decreasing the contribution of the Objecting Insurers.

11. Similarly, the suggestion in the Insurer Objections that the Parishes should pay a portion of Judge Sontchi's fees and expenses is an attempt by the Objecting Insurers to push the obligation back upon the Diocese. It is possible that many or all of the Parishes might seek indemnity from the Diocese related to the payment of Judge Sontchi's fees and expenses through the previously approved insurance program of the Diocese (the "<u>Insurance Program</u>").[4] Because of the way that the Insurance Program is funded, each of the Parishes has previously paid the Diocese a ratable portion of the overall costs associated with the Insurance Program. Pursuant to the Insurance Program, the Diocese is responsible for paying expenses of defense, etc., and claims for losses by the Parishes, including any deductible, up until the point where insurance coverage becomes available.

12. Moreover, the Diocese respectfully asserts that requiring the Insurers to contribute to the fees and expenses of Judge Sontchi will have the practical effect of permitting the carriers to be "invested" in the mediation process. To the extent that all parties to the mediation share in the financial burdens of the mediation, such parties will be appropriately motivated to conduct the mediation in the most efficient and expeditious manner possible.

---

[4] Approval of the Insurance Program was granted pursuant to the *Final Order (i) Authorizing the Continued Maintenance of the Diocese's Self-Insurance Programs; and (ii) Authorizing the Payment of Obligations in Respect Thereof* [Docket No. 179].

5

17599565.4

13. Assuming *arguendo* that very minor portions of the NDNY Mediation Program are not fully aligned with the relief sought through the Motion, the Diocese requests that the Court approve such variances from the NDNY Mediation Program as it applies to this Chapter 11 Case. Only a small portion of the NDNY Mediation Program does not track with the mass-tort nature of this Chapter 11 Case. This provision was flagged in the original Motion filed by the Diocese and relates to the direct cap on mediator compensation of $150 per hour with the mediator serving on a *pro-bono* basis for the first six (6) hours, and the expectation that mediation will not exceed six (6) hours.[5]

14. The Court has the inherent power through sections 105(a) and 363(b) of the Bankruptcy Code to make minor modifications to the NDNY Mediation Program in order to fit the facts and circumstances of this Chapter 11 Case, by simply approving the Fee Agreement and ordering that in the event of a conflict between the Fee Agreement and the NDNY Mediation Program, the language in the Fee Agreement shall control. Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *In re Caesars Entertainment Operating Co., Inc.*, 808 F.3d 1186, 1188 (7th Cir. 2015). The Diocese respectfully submits that the Court has the power to approve the Fee Agreement and should do so through a limited exercise of the authority granted to the Court by section 105(a) of the Bankruptcy Code.

15. Therefore, the Court should reject the Objecting Insurers' request, and instead approve the Fee Agreement, without any modifications.

---

[5] The Diocese would note that section 6.1(2) of the NDNY Mediation Program does allow for a mediation to continue beyond six (6) hours with the consent of the parties. The Diocese expects that mediation of the Adversary Proceeding may encompass numerous mediation sessions across several months.

## IV. The Defendant Insurers Should be Ordered to Reimburse the Diocese for all Fees and Expenses of Judge Sontchi within Thirty (30) Days of Presentment[6]

16. Finally, LMI asserts that even if the Objecting Insurers are required to pay a portion of the Mediator's fees and expenses, such fees and expenses should not be due until after the conclusion of mediation. The Diocese notes that the proposed manner for seeking reimbursement under the Fee Agreement is similar to that directed by the Court in the mediation orders entered in the Syracuse Diocese Case and the Buffalo Diocese Case (cases cited in paragraph 1 above).

17. The Diocese is required to pay Judge Sontchi's fees and expenses as invoiced. If the Defendant insurers are permitted to withhold reimbursement to the Diocese until the conclusion of mediation, the Diocese will essentially be forced to provide interest free financing of the portion of Judge Sontchi's fees and expenses that are the responsibility of the Defendant insurers. LMI attempts to justify this interest free loan from the Diocese by arguing that it is administratively difficult for it to timely deliver its allocation of the fees and expenses to the Diocese. The Diocese respectfully submits that each of these underwriters and companies that comprise LMI is a sophisticated financial company. Upon information and belief, these underwriters and companies that comprise LMI calculate complex allocations of financial responsibility in the ordinary course of business and timely issue payments as a result of such calculations. Upon information and belief, each of these underwriters and companies that comprise LMI currently employ analysts and actuaries who are specifically tasked with determining the specific exposure with respect to any number of current or hypothetical claims. The Defendant insurers should be able to come to timely apportion and pay these fees within the window set forth by the Diocese in the Motion.

---

[6] In the Syracuse Diocese Case, LMI lodged an objection [Syracuse Diocese Case, Docket No. 543] opposing reimbursement within thirty (30) days of the invoice date, and proposing that such fees be collected at the end of the bankruptcy case. Numerous insurer defendants joined that objection [Syracuse Diocese Case, Docket Nos. 547, 548, 553, 554, 555, 556, 557, 558, 559, 561, 564, 565, and 566]. These objections were overruled.

7

17599565.4

18. Most importantly, however, the Objecting Insurers will not be fully "invested" in the mediation if they are permitted to defer their payment of fees and expenses until the end of mediation. Instead, the sharing of costs will not have the desired effect.

## V. The Objecting Insurers Assert that Judge Sontchi Should Submit Timely Fee Statements for the Diocese and Objecting Insurers Review

19. The Diocese anticipates that Judge Sontchi will provide detailed fee statements. However, for the avoidance of doubt, the Diocese submits that Judge Sontchi in his role as mediator is not, and should not be, subject to the fee approval process dictated by section 327 of the Bankruptcy Code or the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Members of Official Committees* [Docket No. 250].

**WHEREFORE**, the Diocese respectfully requests entry of an order, substantially in the form attached as *Exhibit A* to the Motion: (i) authorizing the Diocese to retain Judge Sontchi pursuant to sections 105(a) and 363(b) of the Bankruptcy Code; (ii) approving the Fee Agreement; and (iii) granting such other and further relief as is just and proper.

Dated: March 28, 2024
      Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By:   /s/ *Charles J. Sullivan*
Stephen A. Donato, Esq. (Bar Roll #101522)
Charles J. Sullivan, Esq. (Bar Roll #507717)
Jeffrey D. Eaton, Esq. (Bar Roll #519622)
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Fax: (315) 218-8100
Email: sdonato@bsk.com
       csullivan@bsk.com
       jeaton@bsk.com

*Attorneys for The Roman Catholic Diocese of Ogdensburg, New York*