UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 23-60507 (PGR) |
| The Roman Catholic Diocese of | ) |
| Ogdensburg, New York, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**CENTURY'S MOTION PURSUANT TO BANKRUPTCY RULE 2004
AUTHORIZING CENTURY TO ISSUE SUBPOENAS TO THE ARCHDIOCESE OF
NEWARK AND THE ARCHDIOCESE OF NEW YORK
AND FOR CERTAIN OTHER LIMITED RELIEF**

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
MICHAEL M. KLOTZ
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:    (212) 326-2000
Email: tschiavoni@omm.com
          mklotz@omm.com

**CLYDE & CO US LLP**
MARIANNE MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07960
Telephone:    (973) 120-6700
Email: Marianne.May@clydeco.us

*Attorneys for Century Indemnity
Company, as successor to CCI
Insurance Company, as successor
to Insurance Company of North
America*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

REQUESTED RELIEF..............................................................................................................2

JURISDICTION AND VENUE ...............................................................................................3

FACTUAL BACKGROUND ....................................................................................................3

    A.    The "Other Non-debtor Catholic Entities" for which the Debtor Says
Relief is Sought through this Bankruptcy ..................................................................3

    B.    The Other Dioceses, Schools and Orders Named as Co-Defendants .....................3

    C.    The Allegations About the Diocese of Ogdensburg and Edward Franklin ............5

    D.    Complaints that Name the Archdiocese of New York and the Diocese of
Ogdensburg as Co-Defendants ...................................................................................7

    E.    Complaints that Name the Archdiocese of Newark and the Diocese of
Ogdensburg as Co-Defendants ...................................................................................8

    F.    Cross-Claims, Demands for Set-offs and Allocation Among the Diocese of
Ogdensburg and Co-Defendants Dioceses...............................................................10

    G.    Destruction of Documents ........................................................................................10

    H.    The Subpoenas Sought...............................................................................................11

    I.    Efforts to Meet and Confer .......................................................................................11

ARGUMENT ..........................................................................................................................12

    I.    THE DOCUMENTS SOUGHT ARE RELEVANT TO PLAN
CONFIRMATION, AND THE CLAIMS PROCESS................................................12

    II.    REQUIRING THESE OTHER DIOCESES TO PRODUCE DOCUMENTS
IMPOSES NO BURDEN ON THE DEBTOR...........................................................12

    III.    DELAY IN RECEIVING RESPONSIVE DOCUMENTS WILL
FRUSTRATE EFFORTS TO NEGOTIATE A CONSENSUAL PLAN..................13

    IV.    "GOOD CAUSE" EXISTS TO GRANT CENTURY'S MOTION ..........................14

COMPLIANCE WITH BANKRUPTCY LOCAL RULE 7026-2(A) ........................................15

CONCLUSION........................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank One, Columbus, N.A. v. Hammond (In re Hammond)*,
  140 B.R. 197 (S.D. Ohio 1992) ........................................................... 13

*Frontier Ins. Co. v. Westport Ins. Corp. (In re Black, Davis, & Shue Agency, Inc.)*,
  460 B.R. 407 (Bankr. M.D. Pa. 2011) .................................................. 15

*In re Almatis B.V.*,
  No. 10-12308 MG, 2010 WL 4877868 (Bankr. S.D.N.Y. Nov. 24, 2010) ............. 12

*In re Bennett Funding Grp., Inc.*,
  203 B.R. 24 (Bankr. N.D.N.Y. 1996) ............................................... 12, 15

*In re Drexel Burham Lambert Grp., Inc.*,
  123 B.R 702 (Bankr. S.D.N.Y. 1991) .................................................. 14

*In re Heating Oil Partners*,
  2009 WL 5110838 (D. Conn. 2009) ..................................................... 15

*In re Heating Oil Partners, LP*,
  422 F. App'x 15 (2d Cir. 2011) ........................................................ 15

*In re Metiom, Inc.*,
  318 B.R. 263 (S.D.N.Y. 2004) .......................................................... 13

*In re Roman Catholic Church of the Diocese of Gallup*,
  513 B.R. 761 (Bankr. D.N.M. 2014) .................................................... 13

*In re Standard Insulations, Inc.*,
  138 B.R. 947 (Bankr. W.D. Mo. 1992) .................................................. 15

*In re Texaco, Inc.*,
  79 B.R. 551 (Bankr. S.D.N.Y. 1987) .................................................... 13

*Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*,
  677 F.3d 869 (9th Cir. 2012) .......................................................... 15

**Rules**

Fed. R. Bankr. P. 1125 ...................................................................... 3

Fed. R. Bankr. P. 1126 ...................................................................... 3

Fed. R. Bankr. P. 2004 ................................................................... 3, 12

Fed. R. Bankr. P. 9016 ..................................................................... 12

Century Indemnity Company as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century") files this application (the "Motion") under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule" or "Rule") 2004, seeking entry of the order attached as Exhibit A (the "Proposed Order"), authorizing Century to serve subpoenas (the "Subpoenas") on the Archdioceses of Newark and New York.

## PRELIMINARY STATEMENT

1.      The Debtor's corporate representative states in his first day declaration that the Diocese plans to obtain protection through its bankruptcy for "other non-debtor Catholic entities" through a plan of reorganization.  Fourteen complaints name other dioceses as co-defendants with the Diocese of Ogdensburg.  By this motion, Century seeks authorization to issue subpoenas to two of these co-defendant dioceses—the Archdioceses of Newark and New York—against whom ten of these fourteen complaints are asserted.  The claims in nine complaints arise from allegations of abuse by the same cleric, Edward Franklin.

2.      Edward Franklin was ordained in the Diocese of Ogdensburg after a special order elsewhere did not ordain him.  He is alleged in publicly filed complaints to have abused a minor at his first parish assignment, was then transferred to another parish where he is alleged to have abused another minor and was then sent away on "study leave" in Hartford.  Plaintiffs contend he was really at a facility there for sexual abusers.  Then, he was transferred to the Archdiocese of New York, the Archdiocese of Newark, New Jersey, the Diocese of San Bernardino, California, the Diocese of Las Vegas, Nevada, the Diocese of San Diego, California and New Mexico before ultimately being sent back to Ogdensburg.  He transferred from parish to parish in each of these dioceses and then transferred of out of state.  Most of the claims against the Diocese of Ogdensburg in these nine cases arise from allegations of abuse by Franklin in these other dioceses.

3.      The Diocese of Ogdensburg is not able to produce the documents held by other dioceses and has not produced the discovery and pleadings exchanged in the cases in which these other dioceses are named as co-defendants.  It is evident that the plaintiffs have some of this material. This leaves Century and the other insurers in a position where plaintiffs' counsel has documents that the insurers do not.  These other co-defendant dioceses also have their own files on Franklin and their communications with the Diocese of Ogdensburg about him.

4.      Counsel for the Archdiocese of Newark responded to our requests for documents about the Franklin claims with an email ***requesting a subpoena*** saying that it is its policy "not to produce documents absent a valid subpoena."  Neither the Archdiocese of Newark nor New York conveyed an objection to producing documents about these claims when we wrote them, but neither entity agreed to do so without a subpoena.

5.      Authorization to issue the subpoenas sought to the Archdiocese of Newark and New York will benefit all parties as it will allow everyone to obtain documents about the Franklin claims which are relevant to fashion a resolution of the allegations against the Diocese of Ogdensburg.

6.      The non-consensual non-debtor releases, injunctions and exculpations, and other extraordinary relief that the Diocese has indicated it will seek for other non-debtor Catholic entities further warrants transparency from these other co-dioceses that have records related to the claims associated with Franklin.

## **REQUESTED RELIEF**

7.      Century respectfully requests that the Court enter the Proposed Order authorizing it to serve the subpoenas on the Archdiocese of New York and the Archdiocese of Newark, attached as Exhibit B and C, respectively.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157, 28 U.S.C.

§ 1334, and Bankruptcy Local Rule 7026-2. Venue is proper in this District pursuant to 28 U.S.C.

§ 1408 and 28 U.S.C. § 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

The statutory predicates for the relief sought in this Motion are sections 1125 and 1126 of the

Bankruptcy Code and Bankruptcy Rule 2004.

## FACTUAL BACKGROUND

### A.      The "Other Non-debtor Catholic Entities" for which the Debtor Says Relief is Sought through this Bankruptcy

9.      The Debtor's corporate representative states in his first day declaration that the

Diocese plans to obtain protection through its bankruptcy for the non-debtor "parishes, schools,

and other non-debtor Catholic entities" through a plan of reorganization.[1] The relief that the

Diocese seeks for these non-debtor entities is extraordinary and includes non-consensual releases,

injunctions and exculpations.

### B.      The Other Dioceses, Schools and Orders Named as Co-Defendants

10.      Some of the claimants name as defendants in their complaints just the Diocese of

Ogdensburg, others name the Diocese and a parish. Other claimants name another diocese as a

co-defendant and yet others name one of a variety of Special Orders as co-defendants.

Fourteen complaints name other dioceses as a co-defendant: Archdiocese of New York,

Archdiocese of Newark, Diocese of Albany, Diocese of Buffalo and Diocese of Valleyfield. Each

of these non-debtor dioceses have their own records and documents about the claim, alleged

perpetrator and communications with the Diocese of Ogdensburg about the alleged perpetrator.

---

[1] *In re Diocese of Ogdensburg*, No. 23-60507 (Bankr. N.D.N.Y.) [ECF No. 6] (Declaration of Mark Mashaw ¶¶ 166-167 (the Diocese seeks to resolve "any liability that the Related Entities may have," and defining "Related Entities" as "parishes, schools, and other non-debtor Catholic entities.")).

**Cases In Which Another Diocese is Named as a
Co-defendant together with Ogdensburg**

| # of Cases | Diocese | Cases In Which Another Diocese is Named as a Co-defendant together with Ogdensburg |
|---|---|---|
| 5 | Archdiocese of New York | *Caloger v. Archdiocese of New York et al.*, No. 950230/2019 (Sup Ct. New York Cty.); *King v. St. Peter's Church et al.*, No. 950538/2020 (Sup Ct. New York Cty.); *Rastetter v. Archdiocese of New York et al.*, No. 950280/2020 (Sup Ct. New York Cty.); *Anonymous MAV v. Roman Catholic Diocese of Ogdensburg, et al.*, No. 950311/2020 (Sup Ct. New York Cty.); *T.L., v. Archdiocese of New York et al.*, No. 950680/2020 (Sup Ct. New York Cty.) |
| 5 | Archdiocese of Newark | *JA/GG DOE 144 v. The Roman Catholic Archdiocese of Newark a/k/a Archdiocese of Newark et al.*, No. ESX-L-007887-21 (Sup. Ct. N.J. Law Div. Essex Cty.); *JA/GG DOE 236 v. The Roman Catholic Archdiocese of Newark a/k/a Archdiocese of Newark et al.*, No. ESX-L-008332-21 (Sup. Ct. N.J. Law Div. Essex Cty.); *Gleeson v. Roman Catholic Archdiocese of Newark et al.*, No. ESX-L-008304-21(Sup. Ct. N.J. Law Div. Essex Cty.); *McCaig v. Roman Catholic Archdiocese of Newark et al.*, No. ESX-L-007717-21 (Sup. Ct. N.J. Law Div. Essex Cty.); *W.L., v. Our Lady of Victories Parish et al.*, No. Hud-L-000778-21 (Sup. Ct. N.J. Law Div. Hudson Cty.) |
| 2 | Diocese of Albany | *Alexander et al., v. Twin Rivers Council, Inc., et al.*, No. 905403-21 (Sup. Ct. Albany Cty.); *R.D., v. Diocese of Ogdensburg et al.*, No. 904939-20 (Sup. Ct. Albany Cty.) |
| 1 | Diocese of Buffalo | *Pooser v. Roman Catholic Diocese of Ogdensburg, New York et al.*, No. 800047/2020 (Sup. Ct. Erie Cty.) |
| 1 | Diocese of Valleyfield, Quebec | *Martin v. Diocese of Ogdensburg et al.*, No. 951095/2021 (Sup. Ct. New York Cty.). |

11.    There are five lawsuits against the Diocese of Ogdensburg that name the Archdiocese of Newark as a co-defendant and four that name the Archdiocese of New York as a co-defendant all of which arise from allegations associated with Edward Franklin.

**C.**    **The Allegations About the Diocese of Ogdensburg and Edward Franklin**

12.    Edward Franklin grew up in New Jersey where his family lived and then joined a special order of the church.[2]  When the special order did not ordain Franklin, he found his way to the North Country where he was ordained by the Diocese of Ogdensburg in 1962.  It is alleged that Franklin sexually abused minors during his first assignment at Holy Family Parish in Watertown, NY, and in 1964, he was transferred to another parish in the diocese, St. Patrick's Church, Chateauguay, NY, where it is alleged he engaged in abuse.[3]  Franklin was reportedly then sent away.[4]

13.    "From 1966 to 1968, Fr. Edward Franklin was [allegedly] on study leave" from the Diocese of Ogdensburg "at Trinity College, Hartford, Connecticut and residing at Our Lady of Mercy, Plainville, Connecticut in the Archdiocese of Hartford."[5]  Plaintiffs contend that Franklin's place of residency during this time period was "within walking distance of the Institute of Living, Hartford, Connecticut, a well-known facility for the treatment of sexually abusive clergy" previously known as the Hartford Retreat for the Insane.[6]

---

[2] Declaration of Michael Klotz dated April 16, 2024 ("Klotz Decl.") Exh. A ( "Clergy Appointments," *North Country Catholic*, January 13, 1963.)

[3] Klotz Decl. Exh. B ("*Clergy Appointments,*" *North Country Catholic*, June 14, 1964).

[4] Klotz Decl. Exh. C ("15 Priests Assigned to Summer Studies," *North Country Catholic*, June 27, 1965).

[5] *Anonymous MAV v. Roman Catholic Diocese of Ogdensburg et al.,* No. 950311/2020 (Sup. Ct. New York Cty.) [NYSCEF Doc. No. 5 at ¶ 21].

[6] *Id*. at ¶ 22; *see also* Klotz Decl. Exh. D (Eric Rich and Elizabeth Hamilton, "Doctors: Church Used Us," *Hartford Courant*, Mar. 24, 2002 ("psychiatric hospital that for years has treated clergy accused of sexual misconduct now says it was deceived by the Roman Catholic Church into providing reports that the church used to keep abusive priests in the ministry.").

14.    Franklin was then transferred to the Archdiocese of New York, allegedly first to a parish on Staten Island, Our Lady Star of the Sea,[7] and then to one in Yonkers, New York, St. Ann's.[8]  It is alleged in complaints that he engaged in abuse at each location[9] culminating in his transfer to the Archdiocese of Newark.  In the Archdiocese of Newark, Franklin was transferred from one parish to another (first to Our Lady of Victories then to Our Lady of Perpetual Help and finally to St. Patrick's) with plaintiffs filing complaints alleging abuse during periods coinciding with the transfers.[10]

15.    On the heels of the allegations in the Diocese of Ogdensburg, the Archdiocese of New York and the Archdiocese of Newark, Edward Franklin was transferred across to the country to California where he was assigned to one parish and then transferred to another in the Diocese of San Bernardino and Diocese of Las Vegas,[11] with time in the Diocese of San Diego and New Mexico, before ultimately being sent back to the Diocese of Ogdensburg in 1992.  The Diocese of San Bernardino is where the Archdiocese of Boston transferred a central figure in the sex abuse scandal that racked the Boston Archdiocese and led to the ouster of Cardinal Law that is featured

---

[7] *Rastetter v. Archdiocese of New York et al.*, No. 950280/2020 (Sup. Ct. New York Cty.) [NYSCEF Doc. No. 1 at ¶ 23]. (Franklin "was a priest of [Our Lady Star of the Sea, Staten Island, NY]…").

[8] *Anonymous MAV v. Diocese of Ogdensburg, et. al.*, No. 950311/2020 (Sup. Ct. New York Cty.) [NYSCEF Doc. No. 5 at ¶ 24]. (The complaint references the "Official Catholic Directory," noting that Franklin was "assigned to St. Ann's Catholic Church, Yonkers, NY in the Archdiocese of New York.").

[9] *Id.* at ¶ 78 ("Defendants had actual or constructive knowledge of material facts regarding Fr. Edward Franklin's sexual misconduct, impulses, and behavior. Specifically, Defendants had knowledge of clergy sexual abuse of minors in general…and knowledge of Fr. Edward Franklin's frequent transfers between assignments and transfers between Catholic dioceses.").

[10] *Id.* at ¶¶ 30–32 (The complaint references the "Official Catholic Directory," noting that Franklin was "assigned as a diocesan priest of the Archdiocese of Newark" between 1978 and 1981, and specifically at "Our Lady of Perpetual Help, Oakland, New Jersey" in 1982 and "St. Patrick's Church, Elizabeth, New Jersey" in 1983).

[11] *Id.* at ¶¶ 34–35 (The complaint further references the Official Catholic Directory, noting that Franklin "was assigned to St. Christopher's Church, Moreno Valley, California" and "in-residence at Our Lady of Lourdes, Montclair, California" in the Diocese of San Bernardino between 1986 and 1988).

in the *Spotlight* movie.[12]  Edward Franklin is alleged by the plaintiffs to have been transferred there at about the same time.

16.    Plaintiffs allege that the Diocese of Ogdensburg and its "agents, servants, and employees, concealed the sexual abuse of children by Father Franklin in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that Father Franklin would continue to molest children."[13]

17.    The plaintiff firms evidently have collected documents about his multiple transfers from various sources including from these co-defendant dioceses.[14]

### D.    Complaints that Name the Archdiocese of New York and the Diocese of Ogdensburg as Co-Defendants

18.    The Archdiocese of New York is named as a co-defendant with the Diocese of Ogdensburg in four complaints involving alleged abuse by Edward Franklin after he was transferred to New York:

---

[12] The Boston priests reportedly purchased and operated a gay bed and breakfast while assigned to San Bernardino where a minor alleged he was abused in a suit. *See* Klotz Decl. Exh. E (Alan Cooperman, "Diocese Sues Boston Archdiocese, Calif. Church District Says Priest's Abuse History Was Kept Secret," *The Washington Post*, Apr. 2, 2003 (alleging that Cardinal Bernard Law and his deputies gave a priest a favorable recommendation and helped him transfer to the West Coast even though he had a long history of child sexual abuse complaints)).

[13] *See, e.g., Caloger v. Archdiocese of New York et al.*, No. 950230/2019 (Sup Ct. New York Cty.) [NYSCEF Doc. No. 1 ¶ 75].

[14] *See, e.g.,* Klotz Decl. Exh. F (Cara Chapman, "Firms File 20 Child Victims Act Lawsuits against Diocese," *Press-Republican*, July 2, 2020 (reporting on Jeff Anderson firm filing "complaints also named the Rev. Edward Franklin, accused of sexually abusing a minor . . . at Holy Family Parish in Watertown")); Klotz Decl. Exh. G (Cara Chapman, "Law firm Starts Database of Catholic Child Abuse," *Adirondack Daily Enterprise*, Apr. 8, 2021 ("Anderson said those with the highest number of accusations made against them were ...Fr. Edward Franklin ...")); Klotz Decl. Exh. H (Adam Atkinson, "Lawsuits still underway against Diocese of Ogdensburg involving 39 alleged sexual abusers," *North Country Now,* Apr. 7, 2021 ("The top five alleged perpetrators named in the [Anderson] report are: . . .Edward Franklin, 4 lawsuits for alleged abuse")).

**Complaints that Name the Diocese of Ogdensburg  and the
Archdiocese of New York as Co-Defendants**

| Case No. | Case Name | Defendant No. 1 | Defendant No. 2 | Alleged Perpetrator |
|---|---|---|---|---|
| NY County Supreme Court 950230/2019 | Peter Caloger v. Archdiocese of New York et al. | Diocese of Ogdensburg | Archdiocese of New York | Franklin, Edward |
| NY County Supreme Court 950280/2020 | Robert Rastetter v. Archdiocese of NY et al. | Diocese of Ogdensburg | Archdiocese of New York | Franklin, Edward |
| NY County Supreme Court 950311/2020 | Anonymous MAV v. Diocese of Ogdensburg, et al. | Diocese of Ogdensburg | Archdiocese of New York | Franklin, Edward |
| NY County Supreme Court 950680/2020 | T.L. v. Archdiocese of NY, Diocese of Ogdensburg, St. Ann's  Parish | Diocese of Ogdensburg | Archdiocese of New York | Franklin, Edward |

19.    Plaintiffs allege that the Archdiocese engaged in a "cover-up" of the sexual abuse committed by its priests.[15]   As a result, "hundreds, if not thousands, of children were sexually abused by Catholic clergy and others who served the Archdiocese."[16]

**E.    Complaints that Name the Archdiocese of Newark and the Diocese of Ogdensburg as Co-Defendants**

18.    The Archdiocese of Newark is named as a co-defendant with the Diocese of Ogdensburg in five complaints involving alleged abuse by Edward Franklin after he was transferred from New York to the parishes within the Archdiocese of Newark:

---

[15] *See, e.g., Caloger v. Archdiocese of New York et al.*, No. 950230/2019 (Sup Ct. New York Cty.) [NYSCEF Doc. No. 1 ¶ 2].
[16] *Id*.

**Complaints that Name the Diocese of Ogdensburg and the
Archdiocese of Newark as Co-Defendants**

| Case No. | Case Name | Defendant No. 1 | Defendant No. 2 | Alleged Perpetrator |
|---|---|---|---|---|
| NJ Superior Court, Essex County, ESX-L-007887-21 | JA/GG DOE 144 v. Archdiocese of Newark, Diocese of Ogdensburg et al. | Diocese of Ogdensburg | Archdiocese of Newark | Edward Franklin |
| NJ Superior Court, Essex County, ESX-L-008332-21 | JA/GG DOE 236 v. Archdiocese of Newark, Diocese Ogdensburg et al. | Diocese of Ogdensburg | Archdiocese of Newark | Edward Franklin |
| NJ Superior Court, Essex County, ESX-L-008304-21 | John Gleeson v. Archdiocese of Newark et al. | Diocese of Ogdensburg | Archdiocese of Newark | Edward Franklin |
| NJ Superior Court, Essex County, ESX-L-007717-21 | James McCaig v. Archdiocese of Newark; Lady of Victories; and Our Lady of Victories School(Amended) | Diocese of Ogdensburg | Archdiocese of Newark | Edward Franklin |
| NJ Superior Court, Hudson County, Hud-L-000778-21 | W.L. v. Our Lady of Victories Parish et al. (Amended) | Diocese of Ogdensburg | Archdiocese of Newark | Edward Franklin |

20.    Plaintiffs allege that the Archdiocese of Newark "receiv[ed] credible allegations of child sexual abuse against [its] clergy," and rather than contacting law enforcement "the Archbishop acted to conceal these allegations in an effort to avoid scandal and accountability."[17] According to Plaintiffs, the Archdiocese of Newark provided "false designations to and/or contrived and imagined explanations for [priests'] conduct and/or the reasons for [their] transfers among parishes."[18]

---

[17] *McCaig v. Roman Catholic Archdiocese of Newark et al.*, No. ESX-L-007717-21 (Sup. Ct. N.J. Law Div. Essex Cty.) [Complaint ¶ 57].
[18] *Gleeson v. Roman Catholic Archdiocese of Newark et al.*, No. ESX-L-008304-21(Sup. Ct. N.J. Law Div. Essex Cty.) [Complaint ¶ 76].

**F.    Cross-Claims, Demands for Set-offs and Allocation Among the Diocese of Ogdensburg and Co-Defendants Dioceses**

21.    In *Caloger* the Diocese of Ogdensburg states that "the culpable conduct of others" caused the plaintiff's sexual abuse and the Diocese of Ogdensburg "had no authority, control or dominion" over Franklin.[19]  But the Archdiocese of New York states, to the contrary, that if the alleged acts of sexual abuse in *Caloger* occurred it is because the Archdiocese of New York did not receive "any notice or awareness of any propensity on the part of [Edward Franklin] to commit such acts."[20]  In *Gleeson,* the Archdiocese of Newark has asserts a cross-claim against the Diocese of Ogdensburg "demand[ing] proportionate contribution under the Joint Tortfeasor's Contribution Law, *N.J.S.A.* 2A:53A-1, *et seq.*, in the amount of any judgment entered against them and in favor of Plaintiff."[21] These are examples.

**G.    Destruction of Documents**

22.    The third-parties to whom subpoenas are sought to be issued may also be the only source of documents.   An arcane section of the Canon law, Canon 489 § 2, authorizes a bishop to destroy documents from criminal cases concerning moral matters after the guilty parties have died.[22]  The Diocese of Ogdensburg has not confirmed that the application of Cannon 489 § 2 was suspended after the introduction of the Child Victim Act in the legislature.

---

[19] *See Caloger v. Archdiocese of New York et al*., No. 950230/2019 (Sup Ct. New York Cty.) [NYSCEF Doc. No. 39 ¶ 11].
[20] *See Caloger v. Archdiocese of New York et al*., No. 950230/2019 (Sup Ct. New York Cty.) [NYSCEF Doc. No. 23 at p. 24].
[21] *See Gleeson v. Roman Catholic Archdiocese of Newark et al*., No. ESX-L-008304-21 (Sup. Ct. N.J. Law Div. Essex Cty.) [Answer of Roman Catholic Archdiocese of Newark and Church of Our Lady of Victories, Jersey City, N.J. at p. 17].
[22] *See* Can. 489 § 2 ("Each year documents of criminal cases in matters of morals, in which the accused parties have died or ten years have elapsed from the condemnatory sentence, are to be destroyed. A brief summary of what occurred along with the text of the definitive sentence is to be retained.")

**H.    The Subpoenas Sought**

19.    In his deposition in 2021, Bishop Hubbard of the Diocese of Albany described how it was the practice of a bishop of a diocese to write the bishop of another diocese about a cleric before an out-of-diocese transfer occurred:

> "if any priest from our diocese were to go to another diocese, I would inform them, the other diocese, that there was a history of sexual abuse here so that they would have an opportunity to say that they did not want them to be transferred to their diocese...**unless they had some complaint**, there was no requirement that they report back to me.  They might send a letter commenting on how well the person did or not, but that was not a requirement."[23]

20.    The subpoenas directed to the Archdioceses of Newark and New York seek:  (i) the documents each has on Franklin and has produced to plaintiffs; (ii) the communications with the Diocese of Ogdensburg regarding Franklin; and (iii) the discovery responses provided in the actions where the Archdiocese of New York and the Archdiocese of Newark are named as co-defendants with the Diocese of Ogdensburg.

**I.    Efforts to Meet and Confer**

21.    Century wrote to counsel for the Archdiocese of Newark and New York to request the files that each maintain[24] on Edward Franklin and the communications with the Diocese of Ogdensburg about him.[25]  Counsel for Newark responded by asking for a subpoena and saying that he is authorized to accept service.[26]  Counsel for New York acknowledged receipt but otherwise did not respond.[27]

---

[23] Klotz Decl. Exh. I (Excerpt from the Deposition of Bishop Emeritus Howard J. Hubbard, Apr. 20, 2021 at 927:19 – 928:4 (emphasis added)).

[24] Klotz Decl. Exh. J (Correspondence from M. Klotz to C. Westrick, dated March 25, 2024); Klotz Decl. Exh. L (Correspondence from M. Klotz to J. Murray dated March 15, 2024).

[25] *Id.*

[26] Klotz Decl. Exh. K (E-mail from C. Westrick (Newark counsel) to M. Klotz., dated March 25, 2024 at 1:15pm) (counsel for the Archdiocese of Newark stating that "[o]utside the litigation, it is the policy of the Archdiocese of Newark not to produce documents absent a valid subpoena.").

[27] Klotz Decl. Exh. L (Correspondence from M. Klotz to J. Murray dated March 15, 2024).

## ARGUMENT

### I.    THE DOCUMENTS SOUGHT ARE RELEVANT TO PLAN CONFIRMATION, AND THE CLAIMS PROCESS

22.    This motion should not be controversial.  The subpoenas seek documents from two co-defendant third-parties—the Archdiocese of New York and the Archdiocese of Newark— about where Edward Franklin was transferred.   Plaintiffs appear to have obtained documents from other dioceses.  The production of the documents sought will level the informational playing field.

23.    Bankruptcy Rule 2004 permits "any party-in-interest" to seek disclosure from "any entity" regarding "the acts, conduct, or property or [ ] the liabilities and financial condition of the debtor, or [ ] any matter which may affect the administration of the debtor's estate."  In a chapter 11 reorganization, the source of any money or property acquired or to be acquired by the debtors for purposes of consummating a plan and the consideration given or offered therefor is relevant to the case or to the formulation of a plan.  *See* Bankruptcy Rules 2004 and 9016.

24.    Rule 2004 "is the basic discovery device in bankruptcy cases."  *In re Almatis B.V.*, No. 10-12308 MG, 2010 WL 4877868, at *4 (Bankr. S.D.N.Y. Nov. 24, 2010) ("It is well established that the scope of a Rule 2004 examination is very broad and provides fewer procedural safeguards than Federal Rule of Civil Procedure 26."); *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (Rule 2004 is a "broad discovery tool" and its purpose is "to assist the trustee in revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed").

### II.    REQUIRING THESE OTHER DIOCESES TO PRODUCE DOCUMENTS IMPOSES NO BURDEN ON THE DEBTOR.

25.    Requiring the Archdioceses of Newark and New York to turn over the documents sought imposes no burden on the estate.  If anything, Century's preparation of the motion aids the

Diocese and the estate in general.  The requested subpoenas will assist all parties with their factual

investigation.

26.    All of these dioceses maintain personnel files for their clerics which includes their

assignment history, disciplinary history, complaints and, in the case of Edward Franklin,

correspondence with the Diocese of Ogdensburg about him.  These documents had to be identified

and recalled in connection with the lawsuits that name these diocese as co-defendants with the

Diocese of Ogdensburg.  While additional files may need to be recalled from storage, a balancing

of the interests and burdens weights in favor of granting authorization to issue the subpoenas.  *See*

*In re Texaco*, Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (Rule 2004 requires a court to balance

the burden on the party requested to submit to discovery against the benefit to the party requesting

it); *Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197, 201 (S.D. Ohio 1992)

(stating that in evaluating a Rule 2004 examination, "the bankruptcy court must balance the

examiner's interests against the debtor's interest in avoiding the cost and burden of disclosure.").

27.    The proposed form of order preserves for the other dioceses the opportunity to show

that compliance with the requests would be unduly burdensome, and to the extent such a showing

could be made they bear the burden to come forward and do so.  *See In re Roman Catholic Church*

*of the Diocese of Gallup*, 513 B.R. 761, 767 (Bankr. D.N.M. 2014) ("If the target of Rule 2004

discovery believes the request is unduly burdensome, it has the burden of showing that the burden

is in fact undue."); *In re Metiom, Inc*., 318 B.R. 263, 270 (S.D.N.Y. 2004) (declining to stay Rule

2004 discovery and observing that it was a less burdensome option than the alternative).

## III.    DELAY IN RECEIVING RESPONSIVE DOCUMENTS WILL FRUSTRATE EFFORTS TO NEGOTIATE A CONSENSUAL PLAN.

28.    The Diocese has made clear that it intends to seek non-consensual non-debtor

releases, injunctions and exculpations, and other extraordinary relief for "[o]ther non-debtor

Catholic entities." The extraordinary nature of this relief further warrants transparency with respect to the claims asserted as to these co-defendant other Catholic entities.

29. An essential foundational element to a plan negotiation is that the parties have before them the key relevant information. Documents reflecting Edward Franklin's service in the Archdiocese of Newark and New York are relevant to the allegations against the Diocese of Ogdensburg since he is accused of committing sexual abuse during all three assignments.

30. Denial of Century's Motion would force Century to seek the same documents through formal discovery in the Adversary Proceeding, which would set back the clock months, maybe even years, in this chapter 11 case. To be sure, boxing Century out will only ensure an otherwise potentially avoidable result: a litigious and costly plan confirmation fight.

## IV.   "GOOD CAUSE" EXISTS TO GRANT CENTURY'S MOTION

31. There is good cause for Century's Motion. *See In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) ("Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice"); *accord In re Drexel Burham Lambert Grp., Inc*., 123 B.R 702, 712 (Bankr. S.D.N.Y. 1991).

32. The documents sought are relevant to allegations against the Diocese of Ogdensburg and claims among and between the dioceses. These other dioceses have their own files on Edward Franklin and their communications with the Diocese of Ogdensburg about him. In the absence of the relief requested, Century and the other insurers are left in a position where Plaintiffs' counsel has documents about Edward Franklin and the claims against the Diocese of Ogdensburg that the insurers do not. Denying Century access to these documents would result in great hardship and injustice: it will leave gaps in the Diocese's production regarding Edward Franklin and the claims associated with him.

33.     This third-party discovery is clearly relevant.  *See In re Bennett Funding Grp., Inc.*,
203 B.R. at 28 (Third-parties are subject to Rule 2004 discovery "if they possess knowledge of the
debtor's acts [or] conduct . . . which relate to the bankruptcy proceeding").   The requested
discovery regarding Edward Franklin is clearly relevant to acts or conduct at issue in the
bankruptcy because he is accused of serial acts of sexual abuse and the Diocese of Ogdensburg's
bankruptcy filing.

34.     Century is a party-in-interest with Article III standing in the bankruptcy case.  *See
In re Heating Oil Partners, LP*, 422 F. App'x 15, 17 (2d Cir. 2011) (an insurer with a pecuniary
interest in the outcome of a bankruptcy proceeding has Article III standing).   Other bankruptcy
courts agree.  *See, e.g.*, *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation
Co.)*, 677 F.3d 869, 888 (9th Cir. 2012) (reversing the district court and finding that insurers had
a right to be heard, present evidence, and participate in proceedings involving confirmation of a
chapter 11 plan); *In re Heating Oil Partners*, 2009 WL 5110838, *5 (D. Conn. 2009); *Frontier
Ins. Co. v. Westport Ins. Corp. (In re Black, Davis, & Shue Agency, Inc.)*, 460 B.R. 407, 414 n.5
(Bankr. M.D. Pa. 2011); *In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr. W.D. Mo.
1992).

## COMPLIANCE WITH BANKRUPTCY
## LOCAL RULE 7026-2(a)

35.     Pursuant to Bankruptcy Local Rule 7026-2(a), and as set forth in the accompanying
Declaration of Michael Klotz, the movants met and conferred with the Debtor on April 3, 2024 in
an attempt to resolve issues regarding the requested information and as described above the parties

corresponded and Century corresponded with the Archdiocese of Newark and New York before moving for the relief sought.[28]

## CONCLUSION

This Motion is properly made under Rule 2004, and Century respectfully requests that this Court take notice of this application and enter the Proposed Order attached hereto as **Exhibit A**, granting the relief requested herein, and such other and further relief as may be equitable and just.

Dated:  April 16, 2024                    Respectfully submitted,

By: */s/ Tancred Schiavoni*

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
MICHAEL M. KLOTZ
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:     (212) 326-2000
Email: tschiavoni@omm.com
           mklotz@omm.com

**CLYDE & CO US LLP**
MARIANNE MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07960
Telephone:     (973) 120-6700
Email: Marianne.May@clydeco.us

*Attorneys for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

---

[28] This filing does not constitute a waiver of the Century's right to have any and all final orders in any and all non-core matters entered only after *de novo* review by a Federal district court (or, as applicable, appellate court) and/or the Century's right to trial by jury in any proceeding as to any and all matters so triable, whether or not the same be designated legal or private rights, or in any case or controversy or proceeding related thereto, and whether such jury trial is pursuant to statute or the United States Constitution.

**<u>EXHIBIT A</u>**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | )<br>)<br>) |
| The Roman Catholic Diocese of<br>Ogdensburg, New York, | )<br>)<br>) |
| Debtor. | )<br>)<br>) |

Case No. 23-60507 (PGR)

Chapter 11

### ORDER GRANTING CENTURY'S MOTION
### FOR ENTRY OF AN ORDER UNDER FEDERAL
### <u>RULE OF BANKRUPTCY PROCEDURE 2004</u>

**THIS MATTER** having been brought before the Court upon the motion (the "<u>Motion</u>")[1]

of Century, by and through its counsel, for entry of an order pursuant to Federal Rule of

Bankruptcy Procedure 2004 and due notice having been properly provided; and the Court having

considered the papers submitted and the arguments presented; and for good cause shown,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is hereby GRANTED in its entirety.

2.      Century is authorized to serve subpoenas in the form attached to the Motion as

Exhibits B and C on the Archdiocese of New York and the Archdiocese of Newark, respectively.

3.      Nothing herein shall prejudice Century's rights under Bankruptcy Rule 2004 and

other applicable laws to seek further document production and/or oral examinations in connection

with the above-captioned case.

4.      The Court shall retain jurisdiction to hear and determine all matters arising from or

related to the implementation of this Order.

**\*\*END OF ORDER\*\***

---

[1] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them
in the Motion.

**<u>EXHIBIT B</u>**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 23-60507 (PGR) |
| The Roman Catholic Diocese of | ) | |
| Ogdensburg, New York, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CENTURY'S SUBPOENA TO THE ARCHDIOCESE OF NEW YORK

**PLEASE TAKE NOTICE THAT** Century Indemnity Company ("Century"), by and

through its undersigned counsel, hereby requests that the Archdiocese of New York

("Archdiocese of New York") produce the following documents within forty-five (45) days, as

follows:

## DEFINITIONS

1.    "Archdiocese of Newark" means the Roman Catholic Archdiocese of Newark.

2.    "Chapter 11 Case" means the chapter 11 case filed by the Debtor in the Bankruptcy

Court for the Northern District of New York, assigned Case No. 23-60507 (PGR).

3.    "Committee" means the Official Committee of Unsecured Creditors in the Chapter

11 Case.

4.    "Communication(s)" means any writing or any oral conversation of any kind or

character, including, by way of example and without limitation, e-mails, instant messages, text

messages, voicemail or messages, personal conversations, telephone conversations, letters,

meetings, memoranda, telegraphic and telex Communications or transmittals of Documents, and

all Documents Concerning such writing or such oral conversation.

5.    "Diocese of Ogdensburg" or the "Diocese" means The Roman Catholic Diocese of

Ogdensburg, New York, and its employees, representatives, agents, advisors, accountants, and/or

attorneys.

6.      "Document(s)" means, without limitation, the original and all copies, prior drafts, and translations of information in any written, typed, printed, recorded, or graphic form, however produced or reproduced, of any type or description, regardless of origin or location, including without limitation all Electronically Stored Information. The term "Document(s)" is intended to be at least as broad in meaning and scope as the usage of this term in or pursuant to the Federal Rules of Civil Procedure.

7.      "Electronically Stored Information" shall include, without limitation, the following:  information that is generated, received, processed, recorded, or accessed by computers and other electronic devices, including but not limited to email.

8.      "The Institute of Living" means the mental health facility located at 200 Retreat Avenue, Hartford, Connecticut 06106.

9.      "You" or "Your" shall mean the Archdiocese of New York.

## **INSTRUCTIONS**

1.      The obligation to produce Documents responsive to these Document Requests shall be continuing in nature, and a producing party is required to promptly produce any Document requested herein that it locates or obtains after responding to these Document Requests, up to the date on which the Chapter 11 Case is closed by an order of the Court.

2.      Where an objection is made to any Document Request, the objection shall state with specificity all grounds for an objection.

3.      If Your response to a particular request is a statement that You lack the ability to comply with that request, You must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control.

4.      Each requested Document should be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other Documents at any time affixed thereto.  Documents attached to each other shall not be separated. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

5.      Where a claim of privilege is asserted in objecting to the production of any Document and a Document called for by these Document Requests is withheld on the basis of such assertion, the objecting party shall identify the extent and nature of the privilege (including work product) that is being claimed and, if the privilege is governed by state law, indicate the state privilege rule being invoked.   In addition, the objecting party shall provide the following information with respect to any Document so withheld:  (i) the type of Document, *e.g.*, letter or memorandum; (ii) the general subject matter of the Document; (iii) the date of the Document; and (iv) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the author of the Document, the addressees of the Document, and any other recipients shown in the Document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

6.      All words, terms, and phrases not defined herein are to be given their normal and customary meaning in the context in which they are used.

7.      If You believe that any request, definition, or instruction is ambiguous, in whole or in part, You nonetheless must respond and (a) set forth the matter deemed ambiguous and (b) describe the manner in which You construed the request in order to frame Your response.

8.      If there are no Documents responsive to a particular request, please provide a written response so stating.

## DOCUMENT REQUESTS

1.      The personal files and other documents that are maintained regarding Edward Franklin.

2.      All communications between any representative or individual affiliated with the Archdiocese of New York and any representative or individual affiliated with the Diocese of Ogdensburg regarding Edward Franklin and/or the claims alleged in the lawsuits pending in New York County Supreme Court bearing Case Nos. 950230/2019, 950280/2020, 950311/2020, and 950680/2020.

3.      All communications between any representative or individual affiliated with the Archdiocese of New York and any representative or individual affiliated with the Archdiocese of Newark regarding Father Edward Franklin.

4.      All documents regarding any alleged sexual misconduct by, or criminal charges against, Edward Franklin.

5.      All discovery, bills of particular, sworn testimony, and pleadings provided in the cases pending in New York County Supreme Court bearing Case Nos. 950230/2019, 950280/2020, 950311/2020, and 950680/2020.

By: _____

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
MICHAEL M. KLOTZ
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:    (212) 326-2000
Email: tschiavoni@omm.com
        mklotz@omm.com

**CLYDE & CO US LLP**
MARIANNE MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07960
Telephone:    (973) 120-6700
Email: Marianne.May@clydeco.us

*Attorneys for Century Indemnity Company,
as successor to CCI Insurance Company, as
successor to Insurance Company of North
America*

**<u>EXHIBIT C</u>**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 23-60507 (PGR) |
| The Roman Catholic Diocese of | ) | |
| Ogdensburg, New York, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

### CENTURY'S SUBPOENA TO THE ARCHDIOCESE OF NEWARK

**PLEASE TAKE NOTICE THAT** Century Indemnity Company ("Century"), by and

through its undersigned counsel, hereby request that the Archdiocese of Newark ("Archdiocese

of Newark") produce the following documents within forty-five (45) days, as follows:

### DEFINITIONS

1.      "Archdiocese of New York" means the Roman Catholic Archdiocese of New York.

2.      "Chapter 11 Case" means the chapter 11 case filed by the Debtor in the Bankruptcy

Court for the Northern District of New York, assigned Case No. 23-60507 (PGR).

3.      "Committee" means the Official Committee of Unsecured Creditors in the Chapter

11 Case.

4.      "Communication(s)" means any writing or any oral conversation of any kind or

character, including, by way of example and without limitation, e-mails, instant messages, text

messages, voicemail or messages, personal conversations, telephone conversations, letters,

meetings, memoranda, telegraphic and telex Communications or transmittals of Documents, and

all Documents Concerning such writing or such oral conversation.

5.      "Diocese of Ogdensburg" or the "Diocese" means The Roman Catholic Diocese of

Ogdensburg, New York, and its employees, representatives, agents, advisors, accountants, and/or

attorneys.

6.      "Document(s)" means, without limitation, the original and all copies, prior drafts, and translations of information in any written, typed, printed, recorded, or graphic form, however produced or reproduced, of any type or description, regardless of origin or location, including without limitation all Electronically Stored Information. The term "Document(s)" is intended to be at least as broad in meaning and scope as the usage of this term in or pursuant to the Federal Rules of Civil Procedure.

7.      "Electronically Stored Information" shall include, without limitation, the following:  information that is generated, received, processed, recorded, or accessed by computers and other electronic devices, including but not limited to:

  i.      E-mail;

  ii.     Internal or external websites;

  iii.    Output resulting from the use of any software program; and

  iv.     All information stored on cache memories, magnetic disks (such as computer hard drives or floppy drives), optical disks (such as DVDs or CDs), magnetic tapes, microfiche, or on any other media for digital data storage or transmittal (*e.g.*, a smartphone such as an iPhone®, a tablet such as an iPad®, or a personal digital assistant such as a Blackberry®).

8.      "You" or "Your" shall mean the Archdiocese of Newark.

**<u>INSTRUCTIONS</u>**

1.      The obligation to produce Documents responsive to these Document Requests shall be continuing in nature, and a producing party is required to promptly produce any Document requested herein that it locates or obtains after responding to these Document Requests, up to the date on which the Chapter 11 Case is closed by an order of the Court.

2.      Where an objection is made to any Document Request, the objection shall state with specificity all grounds for an objection.

3.      If Your response to a particular request is a statement that You lack the ability to comply with that request, You must specify whether the inability to comply is because the

particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control.

4.      Each requested Document should be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other Documents at any time affixed thereto.  Documents attached to each other shall not be separated. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

5.      Where a claim of privilege is asserted in objecting to the production of any Document and a Document called for by these Document Requests is withheld on the basis of such assertion, the objecting party shall identify the extent and nature of the privilege (including work product) that is being claimed and, if the privilege is governed by state law, indicate the state privilege rule being invoked.   In addition, the objecting party shall provide the following information with respect to any Document so withheld:  (i) the type of Document, *e.g.*, letter or memorandum; (ii) the general subject matter of the Document; (iii) the date of the Document; and (iv) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the author of the Document, the addressees of the Document, and any other recipients shown in the Document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

6.      All words, terms, and phrases not defined herein are to be given their normal and customary meaning in the context in which they are used.

7.      If You believe that any request, definition, or instruction is ambiguous, in whole or in part, You nonetheless must respond and (a) set forth the matter deemed ambiguous and (b) describe the manner in which You construed the request in order to frame Your response.

8.      If there are no Documents responsive to a particular request, please provide a written response so stating.

## <u>DOCUMENT REQUESTS</u>

1.      The personal files and other documents that are maintained regarding Edward Franklin.

2.      All communications between any representative or individual affiliated with the Archdiocese of Newark and any representative or individual affiliated with the Diocese of Ogdensburg regarding Edward Franklin and/or the claims alleged in the lawsuits bearing Case Nos. ESX-L-007887-21, ESX-L-008332-21, ESX-L-008304-21, ESX-L-007717-21, Hud-L-000778-21.

3.      All communications between any representative or individual affiliated with the Archdiocese of Newark and any representative or individual affiliated with the Archdiocese of New York regarding Edward Franklin.

4.      All documents regarding any alleged sexual misconduct by, or criminal charges against, Edward Franklin.

5.      All discovery, bills of particular, sworn testimony, and pleadings provided in the cases pending in bearing Case Nos. ESX-L-007887-21, ESX-L-008332-21, ESX-L-008304-21, ESX-L-007717-21, Hud-L-000778-21.

By: _____

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
MICHAEL M. KLOTZ
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:    (212) 326-2000
Email: tschiavoni@omm.com
      mklotz@omm.com

**CLYDE & CO US LLP**
MARIANNE MAY
340 Mt. Kemble Ave., Suite 300
Morristown, NJ 07960
Telephone:    (973) 120-6700
Email: Marianne.May@clydeco.us

*Attorneys for Century Indemnity Company, as successor*
*to CCI Insurance Company, as successor to*
*Insurance Company of North America*