**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Ogdensburg, New York,<br><br>                    Debtor. | Hearing Date: April 19, 2024 at 10:00 am ET<br>Hearing Location: Alexander Pirnie U.S. Courthouse and Federal Building 10 Broad Street, Utica, New York<br><br>Objection Deadline: April 17, 2024 at 12:00 pm ET<br><br>Chapter 11<br><br>Case No. 23-60507 (PGR) |

**JOINDER, ADOPTION, AND LIMITED OBJECTION TO CENTURY'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING CENTURY TO ISSUE SUBPOENAS TO**
**GREAT AMERICAN, GALLAGHER AND NATIONAL CATHOLIC**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned counsel, hereby files this Joinder in, Adoption by the Committee and Objection (the "Joinder Adoption and Objection") to the application of Century Indemnity Company as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century") for an order under Federal Rule of Bankruptcy Procedure 2004 authorizing Century to serve subpoenas upon Great American Assurance Company, Arthur J. Gallagher and Co., Gallagher Bassett Services, Inc., and the National Catholic Risk Retention Group, Inc [Docket No. 444] (the "2004 Motion"). The Committee supports the discovery relief requested in the 2004 Motion but objects to Century's prosecution of the 2004 Motion because Century does not have standing to seek the discovery by the 2004 Motion. Century has neither shown nor argued that its rights will be enhance or impaired by the estate's discovery of other insurance assets, and should not be allowed a roving commission

as an officious intermeddler into the estate's affairs. The Committee joins in and adopts the basis for discovery and the issuance of the subpoenas as set forth in the 2004 Motion and seeks entry of an order in the form attached hereto as **Exhibit 1** authorizing the Committee as an Estate representative to serve subpoenas upon Great American Assurance Company, Arthur J. Gallagher and Co., Gallagher Bassett Services, Inc., and the National Catholic Risk Retention Group, Inc. As set forth in Exhibit 1, the Committee proposes that, subject to any confidentiality or defenses that may be raised by any subpoenaed parties, the Diocese and Century receive copies of any discovery produced in connection with the 2004 Motion as well as any responses or objections from any of the subpoenaed parties and any related correspondence with subpoenaed parties.

In further support of this Joinder Adoption and Objection, the Committee respectfully submits as follows:

## JURISDICTION AND VENUE

This Court has jurisdiction over this Joinder Adoption and Objection pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and Bankruptcy Local Rule 7026-2. Venue is proper in this District pursuant to 28 U.S.C. § 1408 and 28 U.S.C. § 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought in this Joinder Adoption and Objection are sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 2004 ("Rule 2004").

## JOINDER, ADOPTION AND OBJECTION[1]

### A. Joinder and Adoption in the 2004 Motion[2]

1. The Committee agrees with Century that the discovery sought in the 2004 Motion

---

[1] All capitalized terms used but not defined herein have the meanings ascribed thereto in the 2004 Motion.

[2] Committee does not join in or adopt any statements by Century in the 2004 Motion that Century is a party in interest with standing to bring the 2004 Motion, including, but not limited to paragraph 44 of the 2004 Motion.

is necessary and beneficial to the Estate in order to identify insurance policies that are alleged to be lost and determine the full scope of insurance available as an asset of the Estate. 2004 Motion ¶¶ 1-7. However, the Committee has grave reservations about empowering Century to lead efforts to discover estate assets. Century is inherently conflicted regarding any issue pertaining to non-Century insurance. Century's motivation is to decrease its liability; not to find additional sources of recovery for survivor. Moreover, it is not clear to the Committee that Century is a proper party in interest to seek insurance on behalf of the estate.

2. As such, it is appropriate for the Committee, as a party in interest representing survivor interests in this case, to seek such discovery in connection with the assessment of the Debtor's assets and to facilitate negotiation of a plan among the Debtor and its creditors. The Committee is willing to share documents with the Diocese and Century.

### B. Century Lacks Standing to Bring the 2004 Motion

#### 1. Legal Requirements to be a Party In Interest

3. To be a party in interest for purposes of section 1121(c), the party must have "a sufficient interest in the outcome of the case that would require representation, or a pecuniary interest that will be directly affected by the case."[3] The same party in interest standard applies under section 1121(c).[4]

4. When interpreting the phrase "party in interest," courts are governed by the

---

[3] *In re Innkeepers USA Trust*, 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011); *see, e.g.*, *Church Mut. Ins. Co. v. Am. Home Assur. Co. (In re Heating Oil Partners LP)*, 422 Fed. Appx. 15, 17 (2d Cir. 2011) (noting that whether a party has a pecuniary interest directly affected by the bankruptcy proceeding can be a consideration in determining whether the party is a party in interest); *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009)

[4] *See, e.g.*, *In re El Comandante Mgmt. Co., LLC*, 359 B.R. 410, 417 (Bankr. D.P.R. 2006) ("The concept of 'party in interest' under sections 1109(b) and 1121(c) are the same.") (citing *Collier's*); *In re Cape Quarry, LLC*, 2020 Bankr. LEXIS 3232, *18 n.5 (Bankr. E.D. La. Nov. 16, 2020) (same; citing *El Comandante*).

Bankruptcy Code's purpose.[5] It is well-established in this Circuit that chapter 11's nature and purpose, while conferring section 1109(b) a broad scope, nonetheless mandate deference to jurisdictional and prudential limitations on standing:

> [I]t is important that a bankruptcy court is not too facile in granting applications for standing. Overly lenient standards may potentially overburden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization…. Granting peripheral parties status as parties in interest thwarts the traditional purpose of bankruptcy laws which is to provide reasonably expeditious rehabilitation of financially distressed debtors with a consequent distribution to creditors who have acted diligently.[6]

5. The Second Circuit has further held that, in addition to statutory standing requirements, constitutional requirements of standing under Article III impose limitations on bankruptcy courts.[7]

6. Article III standing exists only when the litigant has "made out a 'case or controversy' between himself and the defendant within the meaning of Art. III."[8] "[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the

---

[5] *Comcoach Corp.*, 698 F.2d 571, 573 (2d. Cir. 1983); *Southern Blvd., Inc. v. Martin Paint Stores (In re Martin Paint Stores)*, 207 B.R. 57, 61 (S.D.N.Y. 1997).

[6] *Krys v. Official Comm. of Unsecured Creditors (In re Refco Inc.)*, 505 F.3d 109, 118-19 (2d Cir. 2007) (quoting *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 850-51 (Bankr. S.D.N.Y. 1989) (internal citations and quotation marks omitted)); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988) ("The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself. Third-party standing is of special concern in the bankruptcy context where, as here, one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan.").

[7] *Kane*, 843 F.2d at 644; *see also In re Pointer*, 952 F.2d 82 (5th Cir. 1992) (plaintiff must always have suffered a distinct and palpable injury that is likely to be redressed if the requested relief is granted).

[8] *Warth v. Seldin,* 422 U.S. 490, 498 (1975) (emphasis added).

court's remedial powers on his behalf."[9] Prudential standing demands that the plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."[10]

7. Courts in the Second Circuit exclude from the scope of "party in interest" standing, parties, like insurers, who lack direct involvement in the debtor/creditor relationships that chapter 11 was designed to administer.[11]

8. Based on these principles, reported decisions on an insurer's standing to be heard on bankruptcy matters uniformly limit such standing solely to issues that have a direct impact on the insurer's own legal rights and obligations, not those of the insured or other third parties alone. In *In re Quigley Co.*,[12] for example, the court addressed insurer standing to object to a chapter 11 plan. The bankruptcy court had previously held that insurers could raise the issue of whether anti-assignment provisions in insurance policies would provide a defense to coverage under the policies if they were assigned to a trust without the affected insurers' consent. The court concluded that while the insurers could object to trust procedures on the grounds that they implicated rights and objections under the insurance policies, the insurers lacked standing to object to the plan based on how it would affect the rights of third parties, even if valid grounds to defeat confirmation would not otherwise be raised: "Issues relating to classification, treatment, solicitation and voting come immediately to mind. These are 'creditor' issues that may be raised by the affected creditors, but

---

[9] *Id.* at 498-99 (internal citations omitted); *accord Singleton v. Wulff*, 428 U.S. 106, 113 (1976) (the first question in the standing inquiry is "whether the plaintiff-respondents allege 'injury in fact,' that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction").

[10] *Warth*, 422 U.S. at 499.

[11] *See Innkeepers,* 448 B.R. at 144 (ruling that creditors must have a direct relationship and privity with the debtor (regardless of economic interest in the proceedings) to be a "party in interest").

[12] *In re Quigley Co.,* 391 B.R. 695 (Bankr. S.D.N.Y. 2008).

not by non-creditors, such as the Insurers."[13]

9. In a decision in the *Diocese of Camden*,[14] Judge Poslusny similarly limited the insurers' standing to challenge plan confirmation. Stating that standing would be limited to "the issues which threaten their legally protected interests,"[15] the court determined that the insurers had standing to object to the specific issues of assignment of the policies to the tort claimants' trust, good faith, and the structure of the trust. However, the court found that the insurers had not demonstrated that they had any legally protected interest related to the proposed injunction and releases under the plan or the solicitation and voting procedures of the plan. Relying on *Quigley*, the court reasoned:

> The injunction would not bar any claims the Insurers may have against the released parties, and therefore cannot impact the legally protected interests of the Insurers. As noted, a party cannot rest its claim on the legal rights or interests of third parties. … The Insurers are not voting creditors, and their claims are not impaired and therefore they have no legally protected interest in the classification, treatment, or solicitation of other creditors, nor do they have any interest in whether other creditors are barred from bringing claims against the Debtor in the future.[16]

10. Like *Quigley*, *In re C.P. Hall, Co.*[17] involved asbestos claims. As of the bankruptcy filing, the debtor alleged that it had $10 million remaining in insurance coverage from its primary insurer and $6 million in coverage under an excess policy. The debtor and its primary carrier sought court approval for a settlement for approximately $4 million. The excess insurer objected to the settlement on the grounds that the bankrupt insured should have litigated the coverage action against the primary carrier to judgment with the hope of securing the entire $10 million in

---

[13] *Id.* at 706 (citations omitted).

[14] *In re Diocese of Camden*, 2022 Bankr. LEXIS 2244 (Bankr. D.N.J. Aug. 12, 2022).

[15] *Id.* *18.

[16] *Id.* at *19.

[17] *In re C.P. Hall, Co.*, 750 F.3d 659 (7th Cir. 2014).

coverage. By failing to do so, the excess carrier argued, the settlement increased the likelihood that the excess carrier would be forced to honor its obligations under the excess policy.

11. The Bankruptcy Court refused to consider the excess insurer's objection on the grounds that it lacked standing to object to the settlement. The District Court affirmed the Bankruptcy Court's ruling and held that the excess carrier did not have a pecuniary interest that would be directly and adversely affected by the settlement. The excess carrier appealed the District Court's decision to the Seventh Circuit. The excess insurer complained that the settlement posed an imminent threat to its financial assets. The Seventh Circuit characterized those financial concerns as "probabilistic" insofar as the excess insurer could not establish, with certainty, that rejection of the settlement would benefit the excess insurer.[18]

12. The Seventh Circuit affirmed the District Court and held that, notwithstanding the breadth of section 1109(b), the excess insurer could not object to the settlement. The Seventh Circuit reasoned that to qualify as a party in interest with standing to appear in the bankruptcy case, the party must have a legally recognized interest in the debtor's assets.[19] Because the excess insurer was neither a creditor nor the debtor, the Seventh Circuit concluded that the excess insurer was not a "party in interest" under section 1109(b) of the Bankruptcy Code and hence lacked standing to object to the settlement.[20] Rather, the excess carrier was "just a firm that may suffer collateral damage from a ruling in a bankruptcy proceeding."

13. Bankruptcy courts consistently limit insurers' standing as parties in interest in bankruptcy cases.[21] Century, whose sole role in this case is as the Diocese's insurer, therefore is

---

[18] *Id.* at 661.

[19] *Id.*

[20] *Id.*

[21] The Fourth Circuit also found that an insurer was not a party and lacked Article III standing to object to a plan of reorganization that did not 'impair its contractual rights or otherwise expand its liability under the subject insurance

not a "party in interest." The Committee recognizes that the Supreme Court is considering an appeal of the *Kaiser Gypsum* decision. If the Supreme Court expands insurers' standing in chapter 11, the Committee proposes that the Court may reconsider its decision in this matter. Moreover, the Committee proposes that it be the party authorized to seek discovery under Rule 2004 as proposed in the Motion.

### 2. Century Is Not a Party In Interest

14. Century, as an insurer of the Debtor, is not a party in interest within the meaning of section 1121 of the Bankruptcy Code that is allowed to bring a motion under Bankruptcy Rule 2004.[22] Century has no cognizable interest in the information being sought in the 2004 Motion as it relates to the bankruptcy. The existence of other insurance coverage as a potential asset of the Debtor is not relevant to any claim of Century in this bankruptcy and would not impair any of Century's contractual rights. Century has made absolutely no showing, nor has it even argued, that the existence of other available insurance assets, somehow increases or reduces its liability to the Diocese. Without such a showing, standing rules dictate that Century should not be allowed to bring a 2004 Application.

15. Therefore, Century lacks standing to file the 2004 Motion and to seek the discovery in the Bankruptcy Case under the guise of a party in interest. The Committee is unquestionably a party in interest with authority to seek discovery pursuant to Bankruptcy Rule 2004.

16. Standing cannot be based on a mere hypothetical impact on Century's rights and interests. Accordingly, to have standing to seek its own third party discovery pursuant to Rule

---

policies." *Hanson Permanente Cement, Inc. v. Kaiser Gypsum Co. (In re Kaiser Gypsum Co.)*, 60 F.4th 73, 88 (4th Cir. 2023), *cert granted*, 144 S. Ct. 325 (2023).

[22] Bankruptcy Rule 2004 permits "any party in interest" to seek disclosure from "any entity" regarding "the acts, conduct, or property or [ ] the liabilities and financial condition of the debtor, or [ ] any matter which may affect the administration of the debtor's estate."

4860-6836-4470.2 18493.002           8

2004 as a "foundational element to a plan negotiation,"[23] Century must demonstrate that any plan that could be proposed by the Debtor (or another party with standing to propose a Plan) would necessarily directly impact Century's rights and interests. Century cannot make such a showing.

17. Century makes the conclusory assertion that it is a party in interest,[24] but it provides no explanation or support for that statement. Rather, Century argues that if not permitted to take this discovery itself pursuant to Rule 2004, it will have to proceed with a more cumbersome process of seeking such discovery through the Adversary Proceeding.[25]

18. Century's convenience is not a justification for ignoring or circumventing the requirements of standing. This Court cannot simply ignore Century's lack of standing. Moreover, as the Committee is willing to allow Century to receive any materials produced by the third parties as well as be included in all correspondence regarding responses to the subpoenas, Century's interests, whatever they may be, in receiving these materials is preserved, and Century is not prejudiced. If Century believes that it must seek these materials independently, then, as Century itself notes, the appropriate procedure is for Century to seek such discovery is in connection with the Adversary Proceeding.

    C.    **The Committee Should be Authorized to Issue Subpoenas Under Rule 2004**

19. Century represents Century's interests. It does not represent the estate or any of its creditors directly or indirectly. Century's motivation is to minimize Century's liability; not to find more assets (e.g., insurance) for the benefit of survivors. If the 2004 Motion is granted, the Diocese and the Committee would have to seek their own 2004 orders and issue additional subpoenas to the proposed subpoenaed parties. This would inevitably lead to confusion and complaints by the

---

[23] 2004 Motion ¶39.

[24] *Id.* ¶44.

[25] *Id.* ¶40.

subpoenaed parties that they are being bombarded with subpoenas from the same case. If Century controls the process, it may agree to limit discovery to issues that limit its exposure. On the other hand, the Committee is an estate party with fiduciary duties to its constituency. As such, the Committee is best suited to issue subpoenas as proposed in the 2004 Motion.

**WHEREFORE**, the Committee requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit 1**, (a) granting the Committee authority to issue subpoenas as proposed in the 2004 Motion, and (b) providing the Committee such other and further relief as the Court may deem just, proper and equitable.

Dated: April 17, 2024
      New York, NY

PACHULSKI STANG ZIEHL & JONES LLP

By:   /s/ Ilan Scharf
James I. Stang
Ilan D. Scharf
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

BURNS BAIR LLP

By:   /s/ Jesse J. Bair
Timothy W. Burns (admitted *pro hac vice*)
Jesse J. Bair (admitted *pro hac vice*)
10 E. Doty St., Suite 600
Madison, Wisconsin 53703
Telephone: 608-286-2808
Email: tburns@burnsbair.com
      jbair@burnsbair.com

*Special Insurance Counsel to the Official Committee of Unsecured Creditors*

# **EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Ogdensburg, New York,<br><br>                            Debtor. | Hearing Date: April 19, 2024 at 10:00 am ET<br>Hearing Location: Alexander Pirnie U.S. Courthouse and Federal Building 10 Broad Street, Utica, New York<br><br>Objection Deadline: April 17, 2024 at 12:00 pm ET<br><br>Chapter 11<br><br>Case No. 23-60507 (PGR) |

**ORDER GRANTING JOINDER, ADOPTION, AND LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CENTURY'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING CENTURY TO ISSUE SUBPOENAS TO GREAT AMERICAN, GALLAGHER AND NATIONAL CATHOLIC**

Having considered the (i) application of Century Indemnity Company as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century") for an order under Federal Rule of Bankruptcy Procedure 2004 authorizing Century to serve subpoenas upon Great American Assurance Company, Arthur J. Gallagher and Co., Gallagher Bassett Services, Inc., and the National Catholic Risk Retention Group, Inc [Docket No. 444] (the "2004 Motion"), and (ii) Official Committee of Unsecured Creditors' Joinder, Adoption and Objection [Docket No. __] (the "Joinder Adoption and Objection")[1] to the 2004 Motion, any objections or responses filed thereto, and upon the hearing held on the 2004 Motion and for good cause appearing therefor:

**IT IS ORDERED that**:

    1.    The Joinder Adoption and Objection is **GRANTED**.

---

[1] Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Joinder Adoption and Objection.

2. The 2004 Motion with respect to Century is **DENIED**.

3. The Committee is authorized to serve subpoenas in the form attached to the 2004 Motion as Exhibits B, C, and D (the "Subpoenas") on Great American Assurance Company ("Great American"), Arthur J. Gallagher and Co. and Gallagher Bassett Services, Inc. (collectively "Gallagher") and The National Catholic Risk Retention Group, Inc. ("National Catholic"), respectively compelling a response to the Subpoenas.

4. Except as otherwise agreed to by the Committee, subject to any confidentiality or defenses that may be raised by any subpoenaed parties, Great American, Gallagher and National Catholic shall furnish all documents the Committee requests in the Subpoena, and shall produce the same to the Committee's counsel, Century's counsel, and the Debtor's counsel within thirty (30) days of service of the Subpoena upon entry of this Order.

5. The Committee, Great American, Gallagher and National Catholic shall copy counsel to Century and to the Debtor on any correspondence among the Committee, Great American, Gallagher and National Catholic with respect to any Subpoena as well as any responses or other pleadings relating to any Subpoena.

6. 4. Nothing herein shall prejudice the Committee's rights under Bankruptcy Rule 2004 and other applicable laws to seek further document production and/or oral examinations in connection with the above-captioned case. .

*** END OF ORDER ***