UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

The Roman Catholic Diocese of
Ogdensburg, New York,

        Debtor.

Case No. 23-60507 (PGR)

Chapter 11

**OMNIBUS OBJECTION OF THE DIOCESE
TO CENTURY'S DISCOVERY MOTIONS**

      The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), by and through its undersigned counsel, hereby submits this omnibus objection (this "Objection"), to (i) *Century's Motion Pursuant to Bankruptcy Rule 2004 Authorizing Century to Issue Subpoenas to The Archdiocese of Newark and the Archdiocese of New York* ("2004 Motion") [Docket No. 467] (and joinders thereto); (ii) *Century's Motion to Compel Production of Documents Required by the March 11 Order Regarding Claims Against the Diocese Associated with Episcopal Vicar of the Diocese Msgr. Robert Aucoin and to Authorize a Subpoena* [Docket No. 470] (the "Motion to Compel"); and (iii) *Century's Motion Seeking Approval of Proposed Form of Third-Party Protective Order* [Docket No. 473] (the "Motion for Protective Order" and together with the 2004 Motion and the Motion to Compel, the "Century Discovery Motions") each filed by Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), in the above-captioned bankruptcy case (the "Chapter 11 Case"), and respectfully states as follows:

**OMNIBUS OBJECTION**

      1.     The Diocese files this Objection in omnibus form to the Century Discovery Motions in order to streamline its presentation to the Court, and also because each of the Century Discovery Motions is an example of the insurer's aggressive overreach as a non-creditor in this Chapter 11

17739918.6

Case. To date, Century has failed to sufficiently show it is entitled to any of the relief sought through the Century Discovery Motions. For the reasons set forth in more detail below, the 2004 Motion and the Motion to Compel should be denied in their entirety, and the Motion for Protective Order, if granted, should be made applicable only to non-parties.

**I.      The 2004 Motion**

2.      The 2004 Motion seeks entry of an order authorizing Century to serve subpoenas (the "Subpoenas") upon The Archdiocese of Newark (the "Newark Archdiocese") and The Archdiocese of New York (the "New York Archdiocese" and together with the Newark Archdiocese, the "Targeted Archdioceses").

3.      Despite this Court authorizing the Committee – rather than Century – to issue insurance-related subpoenas to non-parties, Century continues seeking information well beyond its status as a non-creditor in this Chapter 11 Case (the "Target Documents"). Century seeks to usurp the role of the Diocese or Committee in investigating claims against the bankruptcy estate, and seeks to insert itself into the administration of this Chapter 11 Case, with its sole justification being that the Diocese said it might pursue third party releases in an eventual plan of reorganization in one of the first day declarations. *See* 2004 Motion, ¶ 9 ("The Debtor's corporate representative states in his first day declaration that the Diocese plans to obtain protection through its bankruptcy for the non-debtor 'parishes, schools, and other non-debtor entities' through a plan of reorganization."). The Diocese reasserts its previous position that it is inappropriate to allow Century to take on this impermissibly broad role.

4.      As a threshold matter, Century has failed to cite any precedent or pleading to support its assertion that the Diocese would be seeking the benefit of a channeling injunction and release in this Chapter 11 Case concerning a different diocese or archdiocese. The reference to

"parishes, schools, and other non-debtor entities" in the *Declaration of Mark Mashaw Regarding the Diocese's Assets and Operations in Support of the Chapter 11 Petition and First Day Motions* [Docket No. 6] is meant to refer to affiliates of the Diocese. In any event, the Diocese respectfully submits that no such relief is before the Court now, and given that mediation has only recently commenced, Century's reliance on a first day declaration as justification for its overreach is inappropriate.

5. Century claims the issuance of the requested subpoenas "will benefit all parties as it will allow everyone to obtain documents about the Franklin claims which are relevant to fashion a resolution of the allegations against the Diocese of Ogdensburg." *See* 2004 Motion, ¶ 5. The Diocese has produced extensive documentation pertaining to Father Franklin and the claims against him, including correspondence by and between the Diocese and representatives of other dioceses, including the Targeted Archdioceses. Century has not alleged or established that the materials produced by the Diocese are in any way deficient or that it must resort to discovery of the non-party Targeted Archdioceses to assess or mediate in good faith the claims relating to Father Franklin.

6. Notwithstanding the pending mediation, Century has exhibited a clear intention to conduct extensive discovery in this Case. If Century (or other carriers) intend to conduct exhaustive and far-reaching discovery with respect to the several dozens of claims at issue in this Case, the parties will undoubtedly be bogged down in a discovery quagmire for years to come.

7. The Diocese has serious concerns that Century's intention to conduct aggressive and far-reaching discovery on a litany of issues in this Case is intend to, or at the very least will result in, delay of the pending mediation, and the depletion of the Diocese's very limited resources, to the ultimate detriment of the survivors. Moreover, the Diocese also has serious concerns that

3

17739918.6

Century is attempting, through the 2004 Motion, to utilize this Court to conduct discovery that is relevant to (and may be used in) Century's ongoing coverage litigation with other entities, including with The Archdiocese of New York.[1]

8. The Diocese thus submits that, even if Century could establish it has standing here – which it has not done – the relief Century requests far exceeds the limited nature of permissible discovery. *See In re Diocese of Buffalo, N.Y.*, 655 B.R. 72, 75 (Bankr. W.D.N.Y. 2023) (holding that "[f]or parties in interest, Rule 2004 permits an appropriately comprehensive probe" but that "this right of access is not unlimited."); *see also In re The Roman Catholic Diocese of Syracuse, New York*, Case No. 20-30663, *Transcript of February 6, 2024 Disclosure Statement Hearing at 60:3-11* [Docket No. 1674] (Bankr. N.D.N.Y. 2024) (WAK) (holding that "the Court will not consider arguments that do not directly impact [insurers'] legal interests"); *In re Quigley Co.*, 391 B.R. 695, 703 (Bankr. S.D.N.Y. 2008) ("A 'party in interest' 'must still satisfy the general requirements of the standing doctrine.'"); *In re Diocese of Camden, New Jersey*, 2022 WL 3369087 *6 (Bankr. D. NJ, August 12, 2022) (holding that the insurers were not permitted to take discovery on "any issues which relate only to the rights of third parties" . . . .); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 215 (3d Cir. 2004) ("Standing is not dispensed in gross, but rather is determined by the specific claims presented.").

9. The Diocese submits further that Century has not met its burden of establishing "good cause" under Rule 2004. To establish "good cause," the movant must show that the "requested documents are *necessary* to establishment of the moving party's claim or that denial of

---

[1] The Diocese respectfully submits that this Court should take judicial notice of the fact that Century has filed a lawsuit against New York Archdiocese, seeking a declaratory judgment that Century is not required to defend or otherwise indemnify that Archdiocese with respect to hundreds of Child Victims Act claims. *See Century Indemnity Company, as Successor to CCI Insurance Company, as Successor to Indemnity Insurance Company of North America et al. v. The Archdiocese of New York, et al.*, pending in the Supreme Court of the State of New York, County of New York, Index No. 652825/2023 (the "Century State Court Lawsuit"), which was reinstated on April 23, 2024. A copy of that decision is available at Docket No. 76.

production would cause undue hardship or injustice." *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 712 (citations omitted) (emphasis added); *see also In re Diocese of Buffalo, N.Y.*, 655 B.R. at 76 ("A showing of good cause requires both a demonstration of need for information and some reason to believe that the respondent might possess that information."). Century has failed to do so here. *See, e.g., In re Diocese of Buffalo, N.Y.*, 655 B.R. at 76 (holding that with respect to a Rule 2004 application seeking claim information, there is "no obvious purpose for such an investigation at this time.").

10. In light of the forgoing, the Diocese respectfully submits that Century should not be permitted to seek the broad, sweeping discovery it seeks in the 2004 Motion.

11. Alternatively, if this Court concludes the Targeted Documents are necessary, the Diocese respectfully requests that, as this Court held with respect to the insurance-related subpoenas requested by Century, this Court direct that such subpoenas be issued by the Committee and/or the Diocese, as fiduciaries of the Estate.

## II. The Motion to Compel

12. Century's Motion to Compel is materially misleading, was entirely unnecessary, and should be denied as moot.

13. Century seeks in the Motion to Compel "the documents provided to and generated by [the] Diocese Review Board about Msgr. Aucoin and CVA Case No. EFCV-21-160236." [Docket No. 470 ¶ 8; *see id*. ¶ 11].

14. On April 19, 2024, the Diocese produced Msgr. Aucoin's personnel file, the "Canon 489" file associated with the single allegation against him, and the September 13, 2021 letter from the Diocese notifying the District Attorney of the single allegation against him. On April 24, 2024, the Diocese produced to Century the minutes of the Diocesan Review Board

5

17739918.6

regarding the single allegation against Msgr. Aucoin. As such, Century's Motion to Compel is rendered moot and should be denied.

15. While the Motion to Compel should be denied as moot without further analysis, the Diocese is compelled to correct materially misleading representations made by Century in support of its Motion to Compel. Century plainly intended to leave this Court with the impression that the Diocese was non-responsive to Century's discovery correspondence and was not complying with this Court's Discovery Order; both suggestions are demonstrably false.

16. First, Century's motion is clearly styled to suggest the Diocese was non-responsive to Century's requests for materials relating to Msgr. Aucoin. Yet, as Century's own supporting exhibits establish, the Diocese told Century repeatedly that it was in the process of reviewing the materials relating to Msgr. Aucoin called for in the Discovery Order and that it would be producing all such non-privileged materials.

17. For example, as established in Exhibit C to the Declaration of Michael Klotz [Docket No. 471], Diocesan counsel wrote the following to Century's counsel, Tancred Schiavoni, Esq. and Michael Klotz, Esq., on April 11, 2024 in response to a letter from Century of that same date:

> Your contention that we have not responded to your inquiries regarding Msgr. Aucoin is patently false. On Friday, April 5 – less than one week ago, I wrote the following to you via email:
>
> **With respect to Msgr. Aucoin, we can confirm the Review Board considered his case on September 16, 2021, and the minutes of that meeting will be reflected in the aforementioned log. Our collection and review of materials relating to Msgr. Aucoin, including but not necessarily limited to the Sept. 13, 2021 letter notifying the Jefferson County DA of the allegation against Msgr. Aucoin, and Msgr. Aucoin's personnel file, <u>is ongoing, and we will be producing</u> any such non-privileged materials in this matter….**
>
> When you asked the same questions again on Monday, I again provided you this information, twice. Thus, you were informed that the Review Board had

> determined that Msgr. Aucoin should be permitted to remain in Ministry, that the Diocese notified the DA of the allegations against Msgr. Aucoin, and that we were reviewing and would be producing to you relevant non-privileged materials regarding this matter. Yoru letter ignores this information entirely.

[Docket 471-3].

18. Any suggestion that the Diocese was not responsive to Century's barrage of repetitive emails and letters regarding Msgr. Aucoin are thus plainly false.

19. Next, Century's claim that "no privilege [was] identified for any of [*sic*] documents about this claim against the Diocese concerning Msgr. Aucoin" is again proven false by Century's own supporting exhibits [Docket No. 470 ¶¶ 18, 27].

20. During the April 3, 2024 meet and confer referenced in Century's motion papers, Diocesan counsel explained the privileges the Diocese was asserting, including the First Amendment privilege with respect to Review Board materials, and, as detailed above, Diocesan counsel subsequently informed Century's counsel that the Review Board minutes relating to Msgr. Aucoin would be reflected in the Diocese's forthcoming privilege log [Docket No. 471-3].

21. Indeed, as detailed in Exhibit I to the Klotz Declaration, Century's counsel acknowledged as much in an April 13, 2024 email. Specifically, Tancred Schiavoni, Esq. wrote on April 13, 2024: "At another point you suggested that the Diocese has a 'First Amendment' right to keep claims provided to the Diocese Review Board secret." [Docket No. 471-9]. Century even addresses the First Amendment privilege in its motion papers. [Docket No. 470 ¶ 30].

22. Thus, Century's representation to this Court that "[a]t no point has the Diocese identified any legal privilege for the documents relating to Msgr. Aucoin" is again demonstrably false. Moreover, if that was the case, Century plainly did not meet and confer with the Diocese on

7

this issue as required by Local Rule 7026-2(a).[2] Century also seeks authority to issue subpoenas to the Missionaries of Sacred Heart for documents about the claim, the claimant and Msgr. Aucoin. To clarify the record, Century has not, to date, met and conferred with the Diocese regarding a subpoena of the Missionaries. As the Diocese has set forth at length in Section I of this Objection, the issuance of such subpoenas by Century, a non-creditor in this Chapter 11 Case, is wholly inappropriate.

23. On April 24, 2024, following further review, the Diocese informed the insurance carriers, *inter alia*, that it would no longer be asserting privilege over Diocesan Review Board materials. That same day, the Diocese produced to Century's counsel the Review Board minutes relating to the single allegation against Msgr. Aucoin, thereby rendering Century's Motion to Compel moot.

24. Century also seeks authority to issue a subpoena to the Missionaries of Sacred Heart for documents about the claim, the claimant and Msgr. Aucoin. Century has not, to date, met and conferred with the Diocese regarding a subpoena of the Missionaries, and Century does not even attempt in its motion papers to establish that it has done so.

25. In fact, on April 15, 2024, at 1:58 p.m., Century's counsel, Tancred Schiavoni, Esq. emailed Diocesan counsel and wrote, as relevant: "Please let us know whether the Diocese has

---

[2] Century's claim that the Diocese was "withholding the Diocese Review Board documents despite not objecting to paragraph (f) of the March 11 Order requiring the production of the files of the Diocesan Review Board with respect to sexual abuse claims" [Docket No. 470 ¶ 7] is disingenuous. As Century well knows, The March 11 Order specifically provides that:
> Notwithstanding any provision of this Order to the contrary, nothing contained in this Order shall require any Alleged Insured to produce documents or information that are subject to attorney-client privilege, attorney work product or any other legally recognized privilege or confidentiality right or obligation; provided that a log of any documents redacted or withheld on the basis of any such privilege, right or obligation shall be produced in accordance with clause 1(p) above.

*See* March 11 Order, ¶ 2.

8

17739918.6

obtained documents from the Missionaries and if not whether it will consent to our client seeking authority to issue a subpoena to the Missionaries of the Sacred Heart for documents about Msgr. Aucoin and the claim against the Diocese and Missionaries concerning it." That same day, at 4:46 p.m., Diocesan counsel responded to Attorney Schiavoni, writing: "We confirmed today the Missionaries did not produce documents in the case to which you are referring in your email below. We will assess your request regarding issuing a subpoena to the Missionaries. In a separate note on that case, as an update, we anticipate being in a position to produce Msgr. Aucoin's personnel file and the letter to the DA by the end of this week."

26. Century filed this motion the very next day.

27. As such, Century's motion to issue a subpoena to the Missionaries is premature and procedurally improper. Further, as the Diocese has set forth at length in Section I of this Objection, the issuance of such subpoenas by Century, a non-creditor in this Chapter 11 Case, is wholly inappropriate.

28. Under these circumstances, such subpoenas may also be unnecessary. The Diocese is assessing whether it is feasible to obtain on a voluntary basis the materials sought in Century's proposed subpoena. In any event, to the extent a subpoena is deemed appropriate and/or necessary, any such subpoena should be issued by the Diocese or the Committee, not by Century.

**III.    Motion for Protective Order**

29. The Diocese does not conceptually oppose the relief purportedly sought by Century though the Motion for Protective Order – a protective order governing third-party productions in this Case.

30. The form Protective Order proposed by Century, however, goes beyond that professed purpose and is thus objectionable.

31. Most notably, the form Protective Order proposed by Century would disturb the previously implemented confidentiality procedures governing the Diocese and the insurance carriers, including Century, through the *Protective Order Approving the Form of Confidentiality Agreement Between The Roman Catholic Diocese of Ogdensburg, New York and Certain Insurance Carriers* [Docket No. 244] (the "Order Approving Confidentiality Agreement" and "Insurer Confidentiality Agreement").

32. While Century states in the Motion that its proposed Protective Order is intended only to govern the production of materials by "third parties in this bankruptcy proceeding," and the proposed Protective Order appended to Century's motion as Exhibit A is entitled "Third-Party Protective Order," the language of that proposed Protective Order is ambiguous and appears intended to modify the Order Approving Confidentiality Agreement and the Insurer Confidentiality Agreement, which Century refused for months to sign.

33. For example, the preamble to Century's proposed Third-Party Protective Order states that it governs the "production, review, disclosure, and handling of any Disclosure or Discovery Material…by *any person or entity* in connection with the above-captioned Chapter 11 case…." [Docket No. 473-1, Ex. A] (emphasis added). Indeed, the term "Designating Party" is defined in Century's proposed Third-Party Protective Order to include "a Party…that designates information or items that it produces in disclosures or in response to discovery as "CONFIDENTIAL." *Id.*; see also Section 5.1.

34. Century was afforded the opportunity to provide input on the Insurer Confidentiality Agreement and this Court approved same, and any effort by Century to undermine or alter that Agreement under the guise of a Third-Party Protective Order is inappropriate and should not be countenanced.

10

17739918.6

35. Moreover, Century has repeatedly attempted to frame Section 107 of the Bankruptcy Code as a definitive confidentiality standard; it is not. Section 107 of the Bankruptcy Code governs public filings, not the scope of confidentiality protections more generally.

36. Finally, the Diocese submits that any Third-Party Protective Order should make clear that, if or to the extent there is any conflict between the Protective Order and the Bar Date Order, the Bar Date Order shall control.

37. Accordingly, while the Diocese does not oppose the approval by this Court of a Third-Party Protective Order, it respectfully requests that this Court make clear that any such order does not in any way modify, alter, or disturb the Order Approving Confidentiality Agreement or the Insurer Confidentiality Agreement.

38. Counsel for Century and the Committee have exchanged proposed revisions to Century's proposed Third-Party Protective Order to address, *inter alia*, certain of the concerns raised herein. The Diocese remains willing to work with Century (and any other insurance carrier), as well as with the Committee, towards reaching a mutually agreed-upon Third-Party Protective Order.

**WHEREFORE**, the Diocese respectfully requests that the Court enter an Order (i) denying the Century Discovery Motion; and (ii) granting such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: April 30, 2024 | BOND, SCHOENECK & KING, PLLC |
| | By: _/s/ Brendan M. Sheehan_ |
| | Stephen A. Donato (Bar Roll No. 101522) |
| | Charles J. Sullivan (Bar Roll No. 507717) |
| | Sara C. Temes (Bar Roll No. 514148) |
| | Grayson T. Walter (Bar Roll No. 518237) |
| | Brendan M. Sheehan (Bar Roll No. 517403) |
| | One Lincoln Center |
| | Syracuse, NY 13202-1355 |
| | Telephone: (315) 218-8000 |
| | Fax: (315) 218-8100 |
| | sdonato@bsk.com |
| | csullivan@bsk.com |
| | stemes@bsk.com |
| | gwalter@bsk.com |
| | bsheehan@bsk.com |
| | |
| | *Attorneys for The Roman Catholic Diocese of Ogdensburg, New York* |

17739918.6