UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                              :
                                                    :
THE ROMAN CATHOLIC DIOCESE OF                       :
OGDENSBURG, NEW YORK,                               :
                                                    :          Chapter 11
                                                    :          Case No. 23-60507 (PGR)
                          Debtor.                   :
                                                    :

APPEARANCES:


O'MELVENY & MYERS LLP                    TANCRED SCHIAVONI, ESQ.
*Counsel for Century Indemnity Company,*
*as successor to CCI Insurance Company, as*
*successor to Insurance Company of North America*
Times Square Tower
7 Times Square
New York, NY 10036

BOND, SCHOENECK & KING, PLLC             BRENDAN M. SHEEHAN, ESQ.
*Attorneys for The Roman Catholic Diocese*
of Ogdensburg, New York
One Lincoln Center
Syracuse, NY 13202-1355

PACHULSKI STANG ZIEHL & JONES LLP        ILAN D. SCHARF, ESQ.
*Counsel for the Official Committee of Unsecured*
*Creditors of The Roman Catholic Diocese of*
*Ogdensburg, New York*
780 Third Avenue, 34th Floor
New York, NY 10017-2024


U.S. TRUSTEE                             ERIN CHAMPION, ESQ.
Office of the U.S. Trustee
10 Broad Street
Room 105
Utica, NY 13501

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART CENTURY'S MOTION TO SEAL

1. On May 5, 2024, Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century") filed a motion to seal (Docket No. 522) ("Motion") the following documents:

   i. a letter from Century's counsel to Debtor's counsel that attaches excerpts from a yearbook ("Exhibit 1");

   ii. a single page of minutes of the Diocese Review Board ("Exhibit 2");

   iii. a "File Summary" for an accused priest ("Exhibit 3");

   iv. a document retention and destruction policy ("Exhibit 4")

   v. a report to Bishop of Ogdensburg ("Exhibit 5"); and

   vi. a letter to the Bishop of Ogdensburg, ("Exhibit 6").

2. Century sought to cite the above-referenced documents in support of two motions– a motion to compel production of documents (Docket No. 470) and a motion for 2004 examination/issuance of subpoenas (Docket No. 467).[1]

3. Century was required to file this Motion under the terms of the parties' Insurance Carrier Confidentiality Agreement ("Confidentiality Agreement"). (Docket No. 244, sched. 1, ¶ D).

4. Pursuant to the Confidentiality Agreement, the party seeking to use the documents at issue is required to bring a motion to seal, but the burden of

---

[1] In its Reply in further support of its Motion to Compel (Docket No. 520), Century cited to Exhibits 1 and 2. In its Reply in further support of its 2004 Motion (Docket No. 521), Century cited to Exhibits 3, 4, 5 and 6.

establishing that the documents should be sealed is on the party seeking to
have the documents protected. (*Id.* ¶ C.2). Thus, while Century filed the
Motion, it is Debtor's burden to establish that the exhibits should remain
under seal.

5. In its opposition (Docket No. 584) to the Motion, Debtor argues, among
other things, that the Exhibits are entitled to confidentiality protection
under the Confidentiality Agreement and meet the standard for sealing
under § 107(b) of the Bankruptcy Code.

6. In its Reply in further support of the Motion (ECF No. 594), Century argues
that Exhibit 4 should be filed on the public docket and that the remaining
documents should be publicly filed after redacting identifying information.

7. The Court heard oral argument on June 11, 2024. Thereafter, the Debtor
filed a Supplemental Objection (Docket No. 607), upon request of the Court,
to provide citations to two cases it referenced during oral argument.

8. On July 22, 2024, Century filed a Supplemental Response (Docket No. 636).

9. The Court heard additional oral argument on July 23, 2024.

10. Attorney Schiavoni appeared on behalf of Century. Attorney Sheehan
appeared for the Debtor.    Attorney Scharf appeared for the Official
Committee of Unsecured Creditors.    Attorney Champion appears for the
U.S. Trustee.

11. For the reasons outlined below, the Motion is granted in part and denied in
part.

## Standard for Sealing under § 107

12. Public policy favors public access to court documents. *See In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011) (citing *Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 597–98 (1978) and collecting cases).

13. The common law presumption in favor of public access is codified in, and enhanced by, § 107 of the Bankruptcy Code. *See Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994).

14. Section 107(a) states: "Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."

15. Section 107(b) excepts narrow categories of documents from public access. On request of a party in interest, a bankruptcy court is required to "(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b).

16. Thus, while "the right of public access to court records is firmly entrenched and well supported by policy and practical considerations, the right is not absolute." *Orion Pictures*, 21 F.3d at 27. The countervailing public policy is that courts ensure that court documents are not used for an improper

4

purpose, such as "to gratify private spite or promote public scandal," or to "serve as reservoirs of libelous statements for press consumption." *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 559 (Bankr. S.D.N.Y. 2007); *see also Orion Pictures*, 21 F.3d at 27.

### Judicial Documents

17. At oral argument, the Debtor argued that because the Exhibits are not entitled to the presumption of public access because they are not "judicial documents."

18. Under common law, only judicial documents are afforded the presumption of public access and "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

19. "In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *Id.*

20. However, common law is not applicable to papers filed in a bankruptcy case.

21. Section 107(a) codifies and "supplants the common law for purposes of determining public access to papers filed in a bankruptcy case." *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Glob. Corp.)*, 422 F.3d 1, 8 (1st Cir. 2005); *see also In re Endo Int'l PLC*, No. 22-22549 (JLG), 2022 WL 16640880, at *8 (Bankr. S.D.N.Y. Nov. 2, 2022).

22. Under § 107(a), the right to public access is intentionally broad in order to "foster confidence among creditors regarding the fairness of the bankruptcy system," "insure its integrity," and "avoid[] any suggestion of impropriety." *Gitto*, 422 F.3d at 7; *see also Tese-Milner v. Capston Credit, LLC (In re Level 8 Apparel, LLC)*, No. 16-13164 (JLG), 2023 WL 7785961, at *4 (Bankr. S.D.N.Y. Nov. 11, 2023).

23. Through the codification of § 107, "[i]t is no longer left . . . to the bankruptcy court to balance the interests of the public and private parties in determining whether to seal records from public view . . . ." *In re Purdue Pharma L.P.*, 632 B.R. 34, 38 (Bankr. S.D.N.Y. 2021). "Rather, the plain meaning of 11 U.S.C. § 107(a) mandates that *all* papers filed in a bankruptcy case are public records open to examination unless the court decides to protect information in them under § 107(b)." *Id.* at 39 (emphasis in original). And "[d]ecisions applying the common law to sealing confidential information in only certain types of court records . . . are inapposite." *Id.*

24. The Exhibits are papers filed in a bankruptcy case and are, accordingly, public records unless one of the exceptions under § 107(b) applies.

### Exhibits and Exceptions to § 107(a)

25. The Debtor argues that the Exhibits are scandalous and/or defamatory and, therefore, subject to protection under § 107(b).

26. The term "scandalous" is not defined by the Bankruptcy Code. *Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.)*, 492 B.R. 162, 175 (Bankr. S.D.N.Y. 2013).

27. Some courts have consulted *Black's Law Dictionary*, which defines "scandalous" as "[a]n assertion that is both grossly disgraceful (or defamatory) and irrelevant to the action or defense." *Black's Law Dictionary* (11th ed. 2019); *see In re Starbrite Properties Corp.*, No. 11-40758 CEC, 2012 WL 2050745, at *6 (Bankr. E.D.N.Y. June 5, 2012).

28. Other courts look to how "scandalous" has been defined in the context of Federal Rule of Civil Procedure 12(f). *Anthracite*, 492 B.R. at 175. In that context, scandalous is defined as "any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Id.*

29. And still another court has looked to the word's "ordinary usage" and defined scandalous as "disgraceful, offensive, shameful and the like." *Father M. v. Various Tort Claimants (In re Roman Cath. Archbishop of Portland in Oregon)*, 661 F.3d 417, 432 (9th Cir. 2011).

30. In the *Portland Diocese* case, the Ninth Circuit was considering whether personnel files of priests accused of sexually abusing children should be sealed. *Id.* The Ninth Circuit determined that "allegations that a priest has sexually abused children are most assuredly 'scandalous.'" *Id.* at 433.

7

31. On the other hand, "mere embarrassment or harm caused to the party is insufficient to grant protection under § 107(b)(2)." *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 561 (Bankr. S.D.N.Y. 2007).

32. The Court is keenly aware of the need for confidentiality when dealing with survivors of sexual abuse. *I.G. v. Bd. of Educ. of Aztec Mun. Sch. Dist.*, No. CV 18-124 KK/KBM, 2018 WL 4700233, at *9 (D.N.M. Sept. 30, 2018) ("One's status as a victim of sexual abuse is an exceedingly intimate matter of great sensitivity and, in the Court's view, is a matter that is comparable—in the degree to which an individual has a legitimate expectation of privacy—to confidential medical information, and information regarding personal sexual matters."); *Survivor v. Our Kids of Miami-Dade/Monroe, Inc.*, No. 11-CIV-24611, 2016 WL 950952, at *12 (S.D. Fla. Mar. 7, 2016) (issuing seal orders to prevent disclosure of information that could possibly be used to re-victimize survivors of abuse); *Curry v. McNeil*, No. 3:08CV539/LAC/EMT, 2009 WL 395247, at *2 (N.D. Fla. Feb. 17, 2009) (recognizing a "strong public policy favoring the special protection [of] victims of sex crimes and their privacy where sensitive and possibly embarrassing matters are concerned").

33. With the legal standards outlined above in mind, this Court turns to the Exhibits.

**Exhibit 1**

34. Exhibit 1 contains scandalous material and should be sealed. The letter contains allegations of sexual abuse, the names and photos of both the alleged perpetrator and the abuse claimant (who was a minor at the time of the photo and alleged abuse), and other identifying information.

35. This Court has already employed several means of protecting the identities of sexual abuse claimants, including Protective Orders and the Confidentiality Protocol contained in the Bar Date Order (Docket No. 203), which directs that proofs of claim not be filed with the Court but filed directly with the Claims Agent, redacts personally identifying information from claims prior to disclosure to certain parties, and makes the claims confidential, among other protections.

36. Unsealing this document would undermine the protections put in place by this Court.

37. Although Century suggests that these concerns can be addressed by redactions, given the quantity of scandalous and identifying information contained in Exhibit 1, this Court finds that redaction would be futile.

**Exhibit 2**

38. Exhibit 2 contains minutes from a Diocesan Review Board Meeting. The document contains scandalous information, including allegations of sexual abuse, the names of the accused and the abuse claimant (who was a minor at the time of the alleged abuse), and location information that may be used

to identify either or both of the accused and the abuse claimant. Due to the nature of the material contained in this Exhibit and the overall risk that the claimant or accused could be identified via this Exhibit, this Exhibit should be sealed.

**Exhibit 3**

39. Exhibit 3 is a file summary of abuse allegations against a priest. Redactions have already been made to some of this information, including the names of abuse claimants. However, the document contains years and locations of where the abuse occurred. This document may be unsealed if names, location information, and dates are redacted.

**Exhibit 4**

40. Exhibit 4 is the Debtor's Document Retention and Destruction Policy. The policy provides guidance for how the Debtor should review, retain, and destroy its records and documents. It does not contain any scandalous or defamatory information. In this way, Exhibit 4 differs from the other five documents this Court was asked to seal.

41. As the document contains no scandalous or defamatory[2] matter, for the document to be sealed under § 107(b), the Diocese would need to demonstrate that the document contains a "trade secret" or contains "confidential research, development, or commercial information."

---

[2] Century argues that § 107(b)(2) does not apply to protect the Debtor as the Debtor is not a "person," a term defined by § 101(41). Because the Court finds that Exhibit 4 does not contain any scandalous or defamatory matter, it need not decide whether the Diocese is a "person" for purposes of § 107(b)(2).

42. Under New York law, a "trade secret" is "any formula, pattern, device or compilation of information which is used in one's business, and which gives [it] an opportunity to obtain an advantage over competitors who do not know or use it." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (quoting *Restatement of Torts* § 757 cmt. b, at 5 (1939)).

43. "Commercial information need not rise to the level of a trade secret to qualify for protection under section 107(b)." *In re Anthracite Cap., Inc.*, 492 B.R. 162, 178 (Bankr. S.D.N.Y. 2013); *see also In re Orion Pictures Corp.*, 21 F.3d 24, 28 (2d Cir. 1994) ("[C]ourts interpreting § 107(b) need not require that commercial information be the equivalent of a trade secret before protecting such information."). Commercial information "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Orion Pictures*, 21 F.3d at 27. Examples of what is considered "customer information" are customer lists, customer information, and identities of independent contractors. *In re Celsius Network LLC*, 644 B.R. 276, 289 (Bankr. S.D.N.Y. 2022). The terms of an agreement are also considered commercial information entitled to protection from public viewing. *Orion Pictures*, 21 F.3d at 26.

44. However, [t]he 'commercial information' exception is not intended to offer a safe harbor for those who crave privacy or secrecy for its own sake. Instead,

it protects parties from the release of information that could cause them harm or give competitors an unfair advantage." *In re Anthracite Cap., Inc.,* 492 B.R. 162, 178 (Bankr. S.D.N.Y. 2013).

45. Exhibit 4 does not contain trade secrets. Nor does it contain confidential research or development. The Debtor has not asserted that Exhibit 4 falls into either of these categories.

46. The Debtor cited two cases in support of its request to have the Court seal Exhibit 4: *Zunum Aero, Inc. v. The Boeing Company*, No. 21-0896, 2024 WL 357787, at *3 (W.D. Wash. Jan. 31, 2024) and *3 Lions Publishing, Inc. v. Juniper Networks, Inc.*, No. 8:14-cv-1707, 2015 WL 12850602, at *1 (M.D. Fl. March 3, 2015).

47. While these cases did grant orders sealing document retention policies, they did so because the policies contained information that should not be made available to the public. The policy at issue in this case contains no such information.

48. Moreover, these decisions involved application of the common law, not § 107(b) of the Code.

49. In bankruptcy cases, Congress has overridden common law and codified the only exceptions that this Court is permitted to consider when ruling on a motion to seal.

50. As the Court in *Purdue* recognized, after the codification of § 107, "[i]t is no longer left to the bankruptcy court to balance the interests of the public and

private parties in determining whether to seal records from public view ...."

*In re Purdue Pharma L.P.*, 632 B.R. 34, 38 (Bankr. S.D.N.Y. 2021).

51. Similarly, Century provided the Court with cases where courts did not seal document retention policies. *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846 LHK PSG, 2013 WL 412864, at *2 (N.D. Cal. Feb. 1, 2013); *Kesters Merch. Display, Int'l, Inc. v. SurfaceQuest, Inc.*, No. 21-CV-2300-EFM, 2024 WL 757144, at *3 (D. Kan. Feb. 23, 2024); *AL 46 Doe v. Diocese of Albany et al.*, Index No. 903844-20 at *7 (Sup. Ct. Albany Cnty. Mar. 10, 2022). None of these cases is persuasive as none considered § 107(b) of the Bankruptcy Code.

52. Ultimately, it is the Debtor's burden to prove that Exhibit 4 is entitled to protection from public view, and it has not articulated any reasons why this information would cause it competitive harm if it were publicly disclosed. Nor does this exhibit contain scandalous or defamatory material.

53. As such, this Exhibit should not be sealed.

**Exhibit 5**

54. Exhibit 5 is a letter containing identifying information about an alleged perpetrator. This document may be unsealed if names, location information, and dates are redacted.

**Exhibit 6**

55. Exhibit 6 is a letter containing identifying information about an alleged perpetrator. This document may be unsealed if names, location information, and dates are redacted.

### <u>Conclusion</u>

56. For the reasons set forth herein, this Court grants Century's request to seal Exhibits 1 and 2, denies Century's request to seal Exhibit 4, and denies Century's request to seal Exhibits 3, 5, and 6 subject to redactions being made as provided herein.

57. The Court will give the parties 14-days to reach consensus regarding the redactions to Exhibits 3, 5, and 6. If no agreement is reached, the Court will issue a separate order containing the redacted documents.

Dated:      July 30, 2024
            Utica, New York

                                    Patrick G. Radel
                              United States Bankruptcy Judge