UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

The Roman Catholic Diocese of
Ogdensburg, New York,

                     Debtor.

Case No. 23-60507 (PGR)

Chapter 11

**REPLY IN SUPPORT OF CENTURY'S MOTION FOR ENTRY OF AN ORDER
PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING CENTURY TO
ENFORCE THE SUBPOENA THE COMMITTEE ISSUED TO GALLAGHER**

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
MICHAEL M. KLOTZ
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone:    (212) 326-2000
Email:  tschiavoni@omm.com
         ahaberkorn@omm.com
         mklotz@omm.com

*Attorneys for Century Indemnity
Company, as successor to CCI
Insurance Company, as successor
to Insurance Company of North
America*

ARGUMENT ........................................................................................................................3
    I.    THE COMMITTEE HAS NOT PURSUED THE GALLAGHER
SUBPOENA DESPITE ITS PRIOR ASSURANCES TO THE COURT ...............5
    II.    THE DIOCESE'S OBJECTIONS TO CENTURY ENFORCING THE
SUBPOENA CONTRADICT THE DIOCESE'S PRIOR
REPRESENTATIONS TO THE COURT .............................................................8
CONCLUSION ..................................................................................................................10

Century Indemnity Company as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century") submits this reply brief in support of its motion (the "Motion") for entry of an order under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule" or "Rule") 2004, authorizing Century to enforce the subpoena served by the Official Committee of Unsecured Creditors (the "Committee") upon Arthur J. Gallagher and Co. and Gallagher Bassett Services, Inc. (collectively "Gallagher").

## ARGUMENT

1.  The Committee's arguments in opposition to the Motion contradict the representations that its counsel, Ilan Scharf, made to the Court when the Committee sought sole authority to enforce the subpoena by promising to pursue compliance as part of its effort to block Century from issuing the subpoena. What is most remarkable about the Committee's opposition, however, is how casually it shrugs off the representations that it made to the Court. While the Committee represented to the Court that it would diligently pursue compliance, it readily admits it did nothing beyond arranging a token production of policies and intends to do nothing.

2.  The Committee's assertion that has not abandoned the subpoena because Century somehow allegedly failed to meet and confer with it is absurd. Century is not the recipient of the subpoena; Gallagher is. In order to enforce the subpoena, the Committee needed to write, call and confer with Gallagher. The time entries of the Committee's professionals are in the record and fully support Century's contention that the Committee abandoned the subpoena after a token production.

3.  The Committee's assertion that Century failed to meet and confer is also wrong. Century's counsel responded to the Committee's emails, called Committee counsel and asked that

they press for the production of the responsive document including the documents listed in the inventory provided by Gallagher and Gallagher's document retention and destruction documents.

4. The correspondence Century submitted to the Court (Dkt. No. 849-3 through 849-7) illustrates that Century told the Committee to obtain Gallagher's document retention policies and the inventory of documents provided by Gallagher and the Committee did not do so. Century even offered to expend its own time and money to get the discovery and was rebuffed. No further meet-and-confer was necessary for Century to repeat requests that were clearly communicated several times.

5. The Committee does not point to anything in its opposition that it is in the midst of doing or proposes to do to secure compliance. Rather, the Committee just repeats arguments that the Court previously rejected for why nothing should be done. The Court should reject the invitation to relitigate these issues.

6. ***First,*** the Court previously found that the discovery sought "***is important information that should be discovered.***" Dkt. No 504-1 at 23:8-14, 31:22-23 (emphasis added). This is not an issue that should be relitigated. Indeed, the Committee previously agreed that the discovery is necessary. As Century demonstrated in support of the original motion, Gallagher served not just as the Diocese's broker but staffed and ran the insurance department of the Diocese. Gallagher received, handled and processed the abuse claims and insurance that are the subject of the bankruptcy. Since the abuse claims were asserted after 1975, even if the abuse took place prior to 1975, it makes what Gallagher may have relevant across the board to all periods.

7. ***Second,*** the Court also previously found that the discovery sought by the subpoena comes within the scope of Rule 2004. Hence, there is no reason to relitigate this issue either. Rule 2004 provides for discovery of the assets and liabilities of the estate. If nothing else is clear, the

-4-

abuse claims and the insurance are liabilities and assets of the estate. The Committee offers no authority now or previously for the proposition that because some information might also be relevant to another proceeding it is not properly sought under Rule 2004. Likewise, the Committee's suggestion that only information that might advantage a committee is subject to Rule 2004 lacks any legal support. Rule 2004 provides for discovery into the facts of the assets and liabilities of estate. Nothing in the text of the Rule or case law limits the application based on a parties' subjective interpretation of who derives benefit from the facts.

8.    ***Third,*** Century has a direct and material interest in the abuse claims asserted against the estate and the insurance available to the estate. What claims were asserted and when and what evidence exists of insurance directly implicate Century's interests and how its contracts are treated under a plan. There is no surer way to ensure reversal of the case then for the Diocese and Committee to ask this Court to find that insurers lack standing about the insurance and the claims about insurance that implicate the formulation of a plan.

9.    In response to the original motion, the Diocese represented that it was "completely fine" with the subpoena being issued and stated that "as long as the subpoena's issued, then we can get the information." Dkt. No. 504-1 at 19:2-3, 22:12-24. Its opposition flips on its prior position and should be given no weight.

## ARGUMENT

### I.  THE COMMITTEE HAS NOT PURSUED THE GALLAGHER SUBPOENA DESPITE ITS PRIOR ASSURANCES TO THE COURT

10.    The Committee joined in Century's request to subpoena Gallagher in the original motion because it "support[ed] the discovery relief requested" and "agree[d] with Century that the discovery sought . . .[was] necessary and beneficial to the Estate in order to identify insurance

-5-

policies that are alleged to be lost and determine the full scope of insurance available as an assert of the estate." Dkt. No. 479 at ¶¶ 1-3.

11. In its opposition, the Committee has not identified anything it has done or plans to do to pursue discovery from Gallagher beyond accepting its token production of policies. The Committee has not challenged Gallagher's boilerplate objections to the subpoena, and after ***more than nine months*** has not obtained Gallagher's document retention policies or the ***more than 1,000*** responsive documents that Gallagher holds. Motion at ¶¶ 17-22. The Committee does not deny that Century offered to send an attorney at its own expense to review the records possessed by Gallagher to identify and copy the documents relevant to this proceeding and the Committee declined this offer. *Id*. at ¶ 23.

12. The Committee has done nothing to pursue the discovery that it told the Court was "necessary and beneficial to the Estate" (Dkt. No. 479 at ¶ 3) and now questions whether the "information from discovery pursuant to the Gallagher Subpoena is relevant to the mediation and development of a consensual plan of reorganization." (Dkt. No. 866 at ¶ 8). This is a complete reversal of what the Committee told the Court when it requested sole authority to enforce the Gallagher subpoena.

13. The Committee also claims that the Court's stay of the Coverage Action[1] supposedly prevents Century from enforcing the subpoena on Gallagher. This argument lacks merit for two reasons. First, the Committee represented to the Court that the discovery from Gallagher was necessary "in connection with the assessment of the Debtor's asserts and ***to facilitate negotiation of a plan among the Debtor and its creditors***." Dkt. No. 479 at ¶ 2 (emphasis added). The Committee is well aware that this discovery may be directly relevant to

---

[1] *Roman Catholic Diocese of Ogdensburg, New York et al. v. Certain Underwriters at Lloyd's, London et al.*, Adv. No. 23-80013-6-pgr (Bankr. N.D.N.Y.) (the "Coverage Action").

any bankruptcy plan, and it cannot credibly claim that this discovery only has relevance to the Coverage Action. Second, the Court found that "***[t]his is important information that should be discovered***" in the Chapter 11 proceeding, and denied Century's motion to subpoena Gallagher ***without prejudice***. Dkt. No 504-1 at 23:8-14, 31:22-23 (emphasis added). The Committee's claim that the stay of the Coverage Action prevents Century from enforcing the subpoena to Gallagher is contradicted by its own representations to the Court and the Court's findings.

14. Next, the Committee claims that the discovery from Gallagher is not relevant because Gallagher's insurance program began in 1975 and Century's insurance coverage ended on January 1, 1970. Dkt. No. 866 ¶ 8. But the Committee offers no explanation as to why Gallagher would not have records pertaining to a time period before it began to provide coverage. Arthur J. Gallagher & Company has been the broker for the Diocesan Self-Insurance Program for ***fifty years***, and Gallagher-Bassett Service Company has administered the Diocesan Insurance Office. As a result, Gallagher must have information on insurance issued to the Diocese and any applicable secondary evidence (*e.g.*, policy charts, spreadsheets listing policies, descriptions of the Diocese's historical insurance program); documents concerning the Diocese's self-insurance program and risk retention coverage for sexual molestation claims and documents related to the claims for abuse against the Diocese.

15. Finally, the Committee claims that it offered to meet-and-confer with Century about obtaining discovery from Gallagher and Century did not follow up. *Id*. ¶¶ 9-10. The correspondence Century submitted to the Court (Dkt. No. 849-3 through 849-7) illustrates that Century told the Committee to obtain Gallagher's document retention policies and the more than 1,000 responsive documents and the Committee did not do so. Century offered to expend its own

time and money to get the discovery and was rebuffed. No further meet-and-confer was necessary for Century to repeat requests that were clearly communicated several times.

16. The Committee offers no explanation for why it has not pursued this discovery other than purportedly being focused on the mediation, but the Committee's time records do not support the claim that it has expended significant time in mediating. More than nine months have passed, and as predicted, the Committee has simply sat on its hands.

## II. THE DIOCESE'S OBJECTIONS TO CENTURY ENFORCING THE SUBPOENA TO GALLAGHER CONTRADICT THE DIOCESE'S PRIOR REPRESENTATIONS TO THE COURT

17. At the prior hearing where Century sought leave to subpoena Gallagher, counsel for the Diocese, Stephen Donato, represented to the Court that "[t]he Diocese is completely fine with the committee or the Diocese issuing a subpoena" and stated that "as long as the subpoena's issued, then we can get the information" and Century will "be able to critique what either I do by issuing a subpoena or if it's the committee. They could follow up . . . They're not going anywhere." Dkt. No. 504-1 at 19:2-3, 22:12-24. Mr. Donato stated that the Diocese wanted to subpoena Gallagher because "we sure as heck think we should be exploring every avenue." *Id*. at 24:9-10. Despite the Diocese's prior recognition of the importance of obtaining discovery from Gallagher, it now claims that Century cannot pursue the discovery and seeks to block it.

18. First, the Diocese argues that Century has not satisfied the Court's meet-and-confer requirement but the Diocese has not been a party to any of the meet-and-confer discussions, and the Committee has not claimed that the meet-and-confer discussions were insufficient. Dkt. No. 867 ¶¶ 6-8. Century documented ongoing meet-and-confer discussion with the Committee, and it had additional verbal discussions with the Committee including a telephone call in or around November-December 2024 between Tancred Schiavoni, counsel for Century, and Karen Dine,

counsel for the Committee. Mr. Schiavoni told Ms. Dine during this phone call that if the Committee did not pursue Gallagher's document destruction policies and the more than 1,000 responsive documents listed in the inventory then Century would be forced to file a motion to see this discovery. The Diocese's claim that the prior meet-and-confer discussions between Century and the Committee are insufficient lacks any merit and should be disregarded as speculation by a party with no first-hand knowledge.

19. Next, the Diocese distorts Judge Kinsella's discovery ruling in *In re Roman Catholic Diocese of Syracuse,* 2024 Bankr. LEXIS 2942 (Bankr. N.D.N.Y.), which it claims forecloses Century from enforcing the subpoena to Gallagher. In *Syracuse*, the Court held that "most of the Certain Insurers' discovery demands [were] relevant to confirmation issues that may directly impact them or are related to their coercion claims and objections based on lack of good faith". *Id*. at *21 (emphasis added). The Court only limited a narrow category of discovery "where ***only*** the third-party survivors' rights are implicated." *Id.* The Diocese does not claim that the discovery from Gallagher cannot possibly impact Century's rights.

20. Finally, the Diocese claims that Century lacks "good cause" to enforce the subpoena to Gallagher because "Century submits no evidence – and the Diocese is not aware of any evidence – establishing that the Committee is unwilling to take the steps it offered to take in the October 14 Letter." Dkt. No. 867 ¶ 18. This argument defies common sense because the correspondence makes clear that Century asked the Committee ***more than nine months ago*** to get copies of Gallagher's document retention policies and the more than 1,000 responsive documents listed in the inventory. The Committee has failed to do that.

## CONCLUSION

The objections from the Committee and the Diocese lack merit, and are inconsistent with their prior representations to the Court about the urgent need to obtain discovery from Gallagher. The Committee's request that Century be required to seek a status conference before filing any future discovery motion (Dkt. No. 866 ¶ 12) should be flatly rejected, and the Diocese's suggestion that Century might violate confidentiality requirements for this litigation is completely unwarranted and improper. Dkt. No. 867 ¶ 23. Century respectfully requests that this Court enter the Proposed Order (Dkt. No. 849-1 at Ex. A), granting the relief requested therein, and such other and further relief as may be equitable and just.

Dated: March 17, 2025

Respectfully submitted,

By: */s/ Tancred Schiavoni*

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
ADAM P. HABERKORN
MICHAEL M. KLOTZ
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone:    (212) 326-2000
Email: tschiavoni@omm.com
            ahaberkorn@omm.com
            mklotz@omm.com

*Attorneys for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

4915-2926-6728.2