**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of<br>Ogdensburg, New York,<br><br><div align="center">Debtor.</div> | Hearing Date:  May 6, 2025<br>at 1:00 pm ET<br>Hearing Location: Alexander Pirnie<br>U.S. Courthouse and Federal Building 10<br>Broad Street, Utica, New York<br><br>Status Report Deadline for Committee:<br>April 22, 2025<br><br>Status Report Deadline for Other Parties:<br>April 24, 2025<br><br><br>Chapter 11<br><br>Case No. 23-60507 (PGR) |

<div align="center">

**FURTHER OBJECTION TO AND STATUS REPORT OF**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**WITH RESPECT TO CENTURY'S MOTION FOR ENTRY OF AN ORDER**
**PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING  CENTURY**
**TO ENFORCE THE SUBPOENA THE COMMITTEE ISSUED TO GALLAGHER**

</div>

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned

debtor and debtor in possession (the "Debtor" or the "Estate") in this Chapter 11 Case (the

"Bankruptcy Case"), by and through its undersigned counsel, submits this further objection to (the

"Objection") and Status Report (the "Report") as requested by the Court at the hearing in

connection with the application of Century Indemnity Company as successor to CCI Insurance

Company, as successor to Insurance Company of North America ("Century") for an order under

Federal Rule of Bankruptcy Procedure 2004 authorizing Century to enforce the subpoena (the

"Gallagher Subpoena") that the Committee issued to Arthur J. Gallagher and Co. and Gallagher Bassett Services, Inc. (collectively "Gallagher") [Docket No. 849] (the "2004 Motion").[1]

The Committee respectfully submits as follows:

## PRELIMINARY STATEMENT

1.      Since the hearing on April 8, 2025, the Committee has tried to reach agreement with Gallagher on the issues relating to the Gallagher Subpoena.  Unfortunately, Century has rendered it impossible for the Committee and Gallagher to reach agreement on any issue.  Century, which has participated in two meet and confers with Gallagher and has been copied on all correspondence with Gallagher's counsel, remains intransigent and indeed obstructive on several key issues.  Century's conduct demonstrates that it is not interested in actually receiving discovery from Gallagher and instead wants to wrest control of the Gallagher Subpoena from the Committee to pursue such discovery to its own ends.

2.      Century has sent numerous emails to all parties or to counsel for the Committee demanding that before any negotiation with respect to the production of documents that the Committee require Gallagher to unconditionally withdraw all of its stated objections to the Gallagher Subpoena and immediately produce Gallagher's document retention policies.  *See* Dine Dec. Exhs. B, C, D, F, G, I, M, N, O, T, AA, DD, FF and HH.

3.      The Committee has repeatedly responded that it does not think that litigation with Gallagher over the withdrawal of its objections or the immediate production of its document retention policies is a productive way to move forward. See Dine Dec. Exhs. E, P, Q, U, Y, Z, EE and GG.

4.      Rather, the Committee has attempted to negotiate with Gallagher regarding several

---

[1] Capitalized terms used and not otherwise defined herein have the meaning ascribed  thereto in the 2004 Motion.

points in order to start obtaining responsive documents.

5.      *First*, as a threshold matter, and to address any concern that documents responsive to the Gallagher Subpoena are being or may be destroyed while negotiations over the Gallagher Subpoena continue, the Committee has demanded written confirmation from Gallagher that no documents responsive to the Gallagher Subpoena are being destroyed or have been destroyed since service of the subpoena.  Dine Dec. Exhs. P and U.

6.      The Committee submits that such confirmation would alleviate the immediate concern that documents are not being preserved and that Century or other parties may be prejudiced as negotiations for production of documents continues.  While Century's mantra is that Gallagher has "admitted" to the destruction of documents, Century has not made any accusation of any inappropriate document destruction. While the issue of whether and what documents have been destroyed in the ordinary course of business consistent with Gallagher's retention policies prior to the issuance of the Gallagher Subpoena may become an issue, it is not an issue at this point.  Gallagher can only produce what documents it continues to maintain.  Notwithstanding Century's purported concern over document destruction, Century refuses to accept the Committee's proposal for written confirmation assuring the parties that there has been no ongoing, post-subpoena destruction of documents. Century's intransigence leaves Gallagher in an untenable position as, even if it is willing to agree to the Committee proposal, it still faces immediate motion practice regarding its document retention policies.

7.      *Second*, in May of 2024, Gallagher, notwithstanding its objections to the Gallagher Subpoena, provided the parties with an inventory of documents (the "Inventory") that it had identified as potentially responsive.  Reviewing the Inventory, and after inviting input from the other parties, including Century, the Committee provided a highlighted version of the Inventory to Gallagher of the documents that the Committee requested be produced. Counsel for Century has

insisted that before such production it must be provided with specific information about the Inventory and its creation, or that all of the documents from the Inventory should be produced.

8.      The Committee believes that the Inventory as provided is sufficiently descriptive to identify documents that may be relevant and those that do not appear to have any relevance. For example, line 290 in the Inventory describes a document as "Binding Confirmation from Underwriter," "Excess Sexual Misconduct Confirmation of Binding with carrier - no errors 6/29" -- thus, on its face, it appears the document could be relevant to issues in this matter.  In contrast, line 335 refers to a proposal for "Property -Boiler and Machinery" which, on its face, appears highly unlikely to be relevant to the issues in this matter.  The Committee requested that Gallagher produce the highlighted documents since, on their face, they appear relevant.  The parties would retain rights to seek or oppose production of additional documents.  The Committee has not received a response from Gallagher and Century has stubbornly maintained its position.  Thus, once again Century's behavior prevents the parties from moving forward.

9.      *Third*, Gallagher's counsel has indicated a willingness to conduct further document searches for potentially responsive documents based on custodians and search terms to be provided by the Committee and the other parties.  However, the parties cannot engage in any productive discussion of such searches because Century continues to insist that there should not be agreement on any document searches if Gallagher does not withdraw its objections to the Gallagher Subpoena and does not produce the document retention policies.  Despite this position, Century shared search terms with the Committee and the Committee included them in its request to Gallagher.  However, it appears to the Committee that Gallagher remains unwilling to move forward given Century's position and potential additional motion practice.

10.     *Finally,* in order for Gallagher to agree to produce documents, Gallagher has requested a commitment for the payment of its reasonable fees and expenses as a non-party

witness.  The Committee suggested that the Debtor and Century split such costs given Century's involvement in the process to date, and as it will share in the benefit of any documents produced.

11.    In its prior objection to the 2004 Motion,[2] the Committee argued that the information  sought by Century from Gallagher, as it pertains to the Diocese, is clearly designed to bolster defenses that Century intends to assert as a defendant in the Coverage Action, not to benefit the estate.  As noted by the Committee, Century represents Century's interests.  It does not represent the estate or any of its creditors directly or indirectly.   Century's motivation is to minimize Century's liability; not to find more assets (*e.g.*, insurance) for the benefit of survivors.

12.    The Committee believes that Century is not seeking this information to inform mediation towards a consensual plan but for its benefit in the Coverage Litigation and the CVA cases underlying the sexual abuse claims in the Bankruptcy Case.  Century's conduct with respect to the enforcement of the Gallagher Subpoena and its unwillingness to accept any compromise demonstrates Century's motivation is not 2004 discovery for the benefit of the Estate.   As a compromise to Century's original 2004 efforts (and circumvention of the discovery stay in the Coverage Action), the Committee suggested and agreed to include Century in the process of enforcing the Gallagher Subpoena.

13.    However, Century's unyielding and absolute demands with respect to enforcement of the Gallagher Subpoena have made good faith negotiation of a compromise impossible. Century's position is that unless there is complete capitulation on Gallagher's part, then there should be litigation to enforce the Gallagher Subpoena.  To the extent that Century has its own agenda regarding discovery from Gallagher, it should seek to lift the stay of discovery in the

---

[2] *Objection of the Official Committee of Unsecured Creditors to Century's Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing  Century to Enforce the Subpoena the Committee Issued to Gallagher* [Docket No. 866].

Coverage Litigation and pursue any appropriate discovery through that process rather than by hijacking the Committee's enforcement of the Gallagher Subpoena. The Committee should remain in control of the enforcement of the Gallagher Subpoena, and Century should not be permitted to continue to hinder the Committee's efforts. The Committee remains willing to share documents that Gallagher produces with Century subject to any confidentiality obligations and with a reservation of rights regarding reimbursement of costs of obtaining the documents.

14.      In order to enable the Committee to move forward with enforcement of the Gallagher Subpoena, the Committee respectfully request that this Court now enter an Order in the form attached hereto as Exhibit A excluding Century from participation in the enforcement of the Gallagher Subpoena, and denying Century's 2004 Motion on the basis stated herein and in the Committee's prior objection thereto, and the record of this case.

## FURTHER OBJECTION AND STATUS REPORT

### I.      EFFORTS OF THE COMMITTEE TO ENFORCE THE GALLAGHER SUBPOENA

#### A.      Impasse In Emails Leading Up To The Meet and Confer On April 15

15.      Following the hearing on April 8, 2025, the Committee took immediate steps to enforce the Gallagher Subpoena and to negotiate the parameters for the search for, and production of, relevant documents by Gallagher.

16.      On the morning of April 9, 2025, Mr. Scharf sent an email to Mr. Kaufman (counsel for Gallagher), copied on all the parties, suggesting times for a meet and confer to discuss "(a) confirmation of document preservation and (b) document production." Mr. Scharf further noted that:

> However, given the cross-talk and "for the record" comments [at the hearing], it seems we are not all on the same page. We would like to try to get there so that we all have a clear understanding as to what will be produced, when it will be produced and what areas we still have disputes. We ask that counsel for Century participate and clarify their position.

Dine Dec. Exh. A.

17.    Mr. Schiavoni (counsel for Century) responded to Mr. Scharf's email stating that "[t]he document retention and destruction documents should be turn [*sic*] over Monday." Dine Dec. Exh. B.

18.    Mr. Klotz (also counsel for Century) separately responded to Mr. Scharf's email (excluding counsel for Gallagher). In his email, Mr. Klotz reiterated Century's position that Gallagher's document retention policies are subject to discovery, providing case citations to support that view, and demanded that if Gallagher did not produce those documents immediately, the Committee seek to compel those their production. Dine Dec. Exh. C.

19.    Mr. Klotz went on to say that Century's counsel would participate in a meet and confer, but that the meet and confer must first address "a number of threshold issues," including Gallagher's withdrawal of its objections to the Gallagher Subpoena, Gallagher's identifying all relevant document repositories, its providing additional information regarding the Inventory, as well as a review of each specific document request in the Gallagher Subpoena and whether Gallagher's would agree to a undertaking a search for each request. *Id.*

20.    Mr. Klotz's email was followed by an email from Mr. Schiavoni approximately ten minutes later to the Committee (excluding counsel for Gallagher) suggesting that instead of any meet and confer that "[i]t would be more efficient at this point if Gallagher is given three days to get back to the Committee in writing on whether it will withdraw its written objections and if not all of them which ones and to give us a date by which its document retention and destruction documents will be produced and the company will produce a custodian of records witness for deposition. Dine Dec. Exh. D.

21.    On April 10, 2025, Mr. Scharf responded to Mr. Schiavoni noting that "email barrages are not an efficient way to move forward." Dine Dec. Exh. E. Mr. Scharf went on to

make clear that the Committee was "prepared to walk through all of the issues you, we and anyone else has in this matter." He went on to identify six key areas for discussion with the first being to "[r]eceive assurances that documents are being preserved." *Id.* The other areas included:

- determining whether Gallagher would withdraw objections;
- addressing questions regarding the Inventory;
- obtaining custodian and search terms for the search of electronic records;
- determining who would bear the costs, and
- discussing "an appropriate method to understand Gallagher's document retention process, policies and extent, including production of policies, litigations holds, and/or custodian interviews or depositions."

*Id.*

22.    Mr. Klotz responded to Mr. Scharf's email stating:

> I'm available to attend the meet-and-confer for Century on April 15th at 2pm if that works for Mr. Kaufman. In my email yesterday, I requested that the Committee ask Gallagher for a written representation that a litigation hold is in place and specify when it was made effective. As a result, for point 1 below Century believes that the assurances sought should be in writing so that the record is clear. For point 6 below, I sent the Committee legal authority yesterday establishing that Gallagher's document retention policies are discoverable. The Committee has started clearly that it will move to compel Gallagher's document retention policies if they are not produced. Please let us know if this is incorrect. Judge Radel made clear at the April 8 hearing that he is concerned about spoliation, and Century strongly believes that the document retention policies should be produced and that we need to have a written record of what has happened in terms of document preservation since Gallagher received the subpoena.

Dine Dec. Exh. F.

23.    The next day, Mr, Schiavoni sent an email to counsel for Gallagher, copied on the parties, demanding as follows:

> We are writing to ask you again to please produce Gallagher's document retention and destruction policy documents, the litigation hold communications that Gallagher received from the Diocese and the litigation hold that Gallagher put in place if any. If

you are refusing to do so, as you have indicated, that is by your acknowledgement the end of that portion of the meet and confer and a motion can go forward on this issue.  Will Gallagher change its position and comply, Yes – No?

How and where does Gallagher's research show that the documents generated while it served as Administrator of the Insurance Dept were stored?  Were paper copies set to off site storage?  Does Gallagher still store documents at Iron Mountain?  Has Gallagher checked its off site storage facilities for documents concerning its work for the Diocese?  Was Gallagher asked to send any responsive documents to the Diocese?

Dine Dec. Exh. G.

24.    Counsel for Gallagher then responded:

I am not going to litigate by email and have already gone over these issues with everyone multiple times.  Further, these entities are non-parties and there is an obligation here to avoid undue burden.

I am happy to participate in another call, but am trying to make certain that all parties are willing to do so meaningfully and in good faith.

Dine Dec. Exh. H.

25.    Mr. Schiavoni then responded:

This is very simple. Will Gallagher produce its document retention and destruction policy documents, the litigation hold communications that Gallagher received from the Diocese and the litigation hold that Gallagher put in place if any?  We need these documents to target searches.. If Gallagher is are refusing to do so, despite hearing the Judge's views, this portion of the meet and confer is over and a motion can go forward on this issue.  Please stop stonewalling.  Will Gallagher change its position and comply, Yes – No?

In the calls that have taken place, you have professed to take the position that you don't know anything whatsoever about what documents Gallagher has retained, where these documents stored, how they are catagolued or what objections you will withdraw.  Any objective observer could only think that you've been drawing out the time through one ruse or another.

Dine Dec. Exh. I.

26.     Counsel for Gallagher then responded:

> Suffice it to say I disagree with the mischaracterizations of our prior discussions and/or the discussion at the hearing.
>
> If all parties want to meet-and-confer in good faith, we are open to doing so, but it seems like that it may not be the case, unfortunately.

Dine Dec. Exh. J.

27.     Mr. Scharf  intervened and responded to all parties as follows:

> We have a meet and confer scheduled for next Tuesday.  These topics are appropriate to address at that time rather than by further emails.
>
> I hope everyone has a nice and meaningful Easter and/or Passover weekend.[3]

Dine Dec. Exh. K.

28.     Mr. Schiavoni further responded on Friday afternoon with two emails.  The first stated that "We object to the Committee abandoning any meaningful effort to enforce the subpoena."  Dine Dec. Exh. L.  The second was addressed to counsel for Gallagher stating "[w]e need Gallagher to produce its document retention and destruction documents. This can't wait past Monday."  Dine Dec. Exh. M.

**B.      No Agreements are Reached During the Meet And Confer**

29.     On April 15, 2025, counsel for Gallagher, counsel for the Committee, counsel for Century, counsel for certain other insurers and counsel for the Diocese participated in a meet and confer regarding the Gallagher Subpoena.  The meet and confer did not result in any agreements regarding the production of documents relating to the Gallagher Subpoena.

---

[3] Mr. Scharf acknowledges his wishes regarding Easter were a week premature and apologizes for the confusion.

C.      **Emails After the Meet and Confer Reinforce The Impasse**

30.      On the day after the meet and confer, Mr. Klotz sent an email to Mr. Scharf and

counsel for the Diocese and certain insurers, providing a brief summary of certain of the issues

discussed.  Mr. Klotz emphasized Century's continuing concern about the past destruction of

documents and need for the document retention policies, and the need for more information from

Gallagher concerning its document repositories and the documents identified in the Inventory.  Mr.

Klotz summarized Century's position stating:

> The Committee should require Gallagher to produce its document
> retention policies and make available a witness who is
> knowledgeable about its document retention practices and policies.
> Gallagher should be asked to identify where it stores documents
> that may be responsive to the subpoena (including those stored off-
> site) so that we can understand what documents exist.

Dine Dec. Exh. N.

31.      Approximately ten minutes after Mr. Klotz's email, Mr. Schiavoni sent an email to

Mr. Scharf, copied only to Mr. Klotz stating:

> Either you don't understand what is going on or are deliberately
> taking a dive on this subpoena either way you are not living up to
> your duties to the Committee by abandoning moving to compel the
> document retention documents.

Dine Dec. Exh. O.

32.      Mr. Scharf then responded to Mr. Schiavoni's email saying that he was in

mediation and would respond to Mr. Klotz's email in due course.  *Id.*

33.      Mr. Scharf sent an email on April 16, 2025 at 7:40 pm (Eastern Time) to counsel

for Gallagher, copied on the other parties, including Century describing the issues discussed during

the meet and confer and providing proposed next steps with respect to each issue to move the

process forward (the "Proposal Email").  Dine Dec. Exh. P.

Case 23-60507-6-pgr   Doc 912   Filed 04/22/25   Entered 04/22/25 18:57:29   Desc
Main Document   Page 12 of 22


34.     Minutes later, Mr. Schiavoni responded to the Proposal Email (copying Mr. Klotz) that "[m]uch of what you have here is inaccurate and you know its inaccurate from other cases and public statements."  Dine Dec. Exh. Q.

35.     Mr. Scharf responded to Mr. Schiavoni stating that he disagreed with Mr. Schiavoni but "welcome[d] a detailed response."  Mr. Scharf further noted that "[t]he proposals are designed to assure documents are being preserved, that we receive documents tied to the spreadsheet so there is no confusion over what we receive, to make sure we get timely production and to avoid any delay fighting over who will pay for the production."  *Id.*

36.     Counsel for Gallagher constructively responded to the Proposal Email noting that "[w]hile I am not agreeing that your email accurately or fully summarizes the discussion (e.g., it does not referenced issues we discussed relating to relevance, privilege and confidentiality), we can address that at another time, if need be.  For now, I will discuss your email with my client and provide a response as soon as I am able to do so."  Dine Dec. Exh. R.

37.     Mr. Scharf responded to counsel for Gallagher stating "I appreciate that.  I note that this is not a transcript.  I'm trying to act in good faith to address the issues in a reasonable manner."  Dine Dec. Exh. S.

38.     At the same time as Mr. Scharf sent that response, Mr. Schiavoni sent an email to Mr. Scharf (copying the other parties except for counsel for Gallagher) complaining:

> Even Gallagher does not agree that you email accurately reflects what they said.  You never sent a deficiently letter, never nailed down what documents they maintain or how they are maintained, never got either Gallagher or the Diocese what they moved between each other and abandoned all efforts to get their document retention and destruction documents *after they told you that they had destroyed documents.* Zero progress has been made.

Dine Dec. Exh. T.

39.     Mr. Scharf responded to Mr. Schiavoni:

> I don't recall that Gallagher told us that they destroyed
> documents. We acknowledge that documents may have been
> destroyed in the ordinary course of business perhaps years and
> decades before the subpoena was contemplated or issued. Our
> primary concern is that documents that exist as of the time of the
> subpoena have been and will be preserved. You are deliberately
> conflating a question about historic treatment of documents prior
> to issuance of the subpoena and Gallagher's obligation to respond
> to this subpoena. Any issues or questions regarding historic
> treatment of documents may be appropriate for a different time.

Dine Dec. Exh. U.

40.     This was followed by successive emails from Mr. Schiavoni. The first complained

that Mr. Scharf had not returned his calls. Dine Dec. Exh. V. The second was copied on the parties

except for counsel for Gallagher and hyperbolically complained: "[e]nough is enough. Soon you

will not remember serving a subpoena and Gallagher will be telling us they never spoke to us."

Dine Dec. Exh. W.

41.     Mr. Klotz responded to the Proposal Email raising a number of issues, and, in

particular, asked why Mr. Scharf had limited the request to Gallagher regarding the preservation

documents to "electronic documents and the documents identified in the spreadsheet." Dine Dec.

Exh. X.

42.     Mr. Scharf responded to Mr. Klotz agreeing that the request to Gallagher should be

modified and the request for confirmation of the preservation of documents be broadened. Mr.

Scharf further explained the Committee's approach to the issue of assurance from Gallagher

regarding the preservation of documents.

> I am trying to make sure that we have assurance documents are
> preserved since the subpoena was issued. I took Mr. Kaufman's
> refusal to represent that no documents had been destroyed since the
> subpoena was issued as troubling, but also potentially a result of a
> cautious attorney who did not want to make a representation
> without personal knowledge. We need him to discuss the matter
> with his client and figure out how to give us assurance that
> documents were preserved.

Dine Dec. Exh. Y.

43.     Mr. Scharf then sent a follow-up email to counsel for Gallagher and all of the parties

modifying the earlier Proposal Email to include the following highlighted language:

> The Committee proposes that Gallagher provide written
> confirmation that (a) documents described on the attached
> spreadsheet provided by Gallagher (the "Spreadsheet") have not
> been destroyed since the subpoena was issued, ~~and~~ (b) electronic
> documents are currently being preserved and (c) all paper
> documents responsive to the subpoena have not been destroyed
> since the subpoena was issued.   If Gallagher provides such written
> confirmation, then the Committee does not intend to seek to
> compel production of the document retention policies at this time.

Dine Dec. Exh. Z.

44.     A minute after sending that email to counsel for Gallagher and the other parties,

Mr. Schiavoni sent an email to Mr. Scharf and reiterating its "no compromise" position regarding

the matters at issue, demonstrating Century's lack of interest in actually making progress on the

enforcement of the Gallagher Subpoena:

> Despite multiple written requests from us, the Committee did not
> ask Gallagher's lawyers to confirm what documents that they
> maintain associated with their work for the Dicoese [sic], how they
> have been maintained or call for the agreements regarding the
> maintained of the documents they generated and received as
> Administrator of the Insurance Department and in their other
> capacities  We asked you to do this immediately after they told you
> that they had destroyed documents back in October.  This is really
> basic stuff.

Dine Dec. Exh. AA.

45.     Additionally, in the hour following Mr. Scharf's sending the Proposal Email

(during which the above exchanges occurred), there was also an exchange of several emails among

Mr. Scharf, counsel for Gallagher, and Mr. Schiavoni concerning the issue of the documents being

requested to be produced from the Inventory.  Dine Dec. Exh. BB.  This particular email exchange

ended with Mr. Schiavoni saying "[w]e disagree" and Mr. Scharf responding "[u]nderstood."  *Id.*

46.     Additionally, within an hour and fifteen or so minutes from the Proposal Email during which the above exchanges occurred, there was also an exchange between Mr. Schiavoni and Mr. Scharf with Mr. Schiavoni complaining that Mr. Scharf was not taking his calls, and Mr. Scharf explaining that he was on a call on another matter and setting a time to talk the next morning.[4] Dine Dec. Exh. CC.

47.     The final email of the night was from Mr. Klotz again complaining that the Committee had not demanded the immediate production of the document retention policies. Mr. Klotz again provided case citations and suggested that to avoid motion practice, the Committee should provide this material to Gallagher and Gallagher should "change its view" and "voluntarily produce its document retention policies." Dine Dec. Exh. DD.

48.     In an effort to keep the enforcement of the Gallagher Subpoena moving forward, Ms. Dine sent an email to counsel for the parties, except counsel for Gallagher, with suggested custodians and search terms and requesting input from the parties before sending the proposed terms to counsel for Gallagher. Dine Dec. Exh. EE.

49.     Mr. Klotz responded to Ms. Dine's email again saying that there should not be a negotiation regarding the production of documents until Gallagher agreed to unconditionally withdraw its objections and other purported threshold issues were satisfied:

> Century filed its motion to enforce the subpoena to Gallagher almost two months ago and since then there have been three meet-and-confers with Gallagher on April 3, 2025, April 7, 2025 and April 15, 2025. At none of these meet-and-confers has the Committee asked Gallagher whether it withdraws any of the objections it asserted on May 17, 2024 or, if it continues to assert an objection, its basis for doing do. At none of these meet-and-confers has the Committee asked Gallagher about any of the subpoena requests themselves and what documents Gallagher has that are responsive to those requests.

---

[4] Though Mr. Scharf's email states that there was no record in his phone of the call, a call from Mr. Schiavoni did, in fact, go to Mr. Scharf's voicemail.

> I have repeatedly said at the meet-and-confers and in separate
> correspondence that this is necessary information we must have in order to
> move forward, and I said the same thing at the April 8, 2025
> hearing. Century objects again that it is improper and inefficient to
> negotiate a response to the subpoena without obtaining this basic
> information.

Dine Dec. Exh. FF.

50.     Ms. Dine responded to Mr. Klotz's email reiterating the Committee's view that

working to resolve Gallagher's objections to the Gallagher Subpoena and actually moving forward

with document production are more important to the Committee than needless, time consuming

and expensive litigation with Gallagher.

> These repetitive posturing emails are not productive.   We have
> heard your position.  The Committee is trying to work with
> Gallagher for the timely production of relevant documents rather
> than engaging in costly and time-consuming litigation practice in
> the first instance.  Notwithstanding, Gallagher's objections to the
> subpoenas, Gallagher produced documents that it represented it
> had in storage and also produced to us, following a meet and
> confer last May, an inventory of documents potentially responsive
> to the subpoena.
>
> We believe that making demands for the withdrawal of the
> objections or the production of the document retention policies
> before engaging in a discussion about the consensual production of
> documents and searches for additional responsive documents is
> counter-productive.   Gallagher has indicated a willingness to work
> with the Committee and parties in good faith to respond to the
> subpoena.   However, Century's intransigence and threats to bring
> further legal action make it impossible for the Committee and
> Gallagher to reach agreement on any issue.
>
> The Court was clear that a threshold issue was whether documents
> are currently being preserved and the status quo maintained.  The
> Committee is attempting to negotiate written assurance on that
> point with Gallagher, but, again, Century is making it impossible
> to even answer that threshold question by continuing to insist that a
> motion to compel must be filed if it is not immediately provided
> the document retention policies.

While the Committee understands that documents may have been destroyed over the last 50 years, in the ordinary course, and Century has represented that its repeated references to document destruction are not meant to suggest that there has necessarily been inappropriate destruction, the Committee thinks that in the interests of actually receiving documents that the issues regarding past document retention are not the immediate concern.

Century has made clear that it is not interested in truly cooperating with the Committee for the actual production of documents but wants the Committee to accede to Century in all aspects of how to enforce the subpoena.  We note the multiple repetitive emails Century has sent on just these points trying to create a record that the Committee is not actually actively attempting to enforce the subpoena as Century tries at every opportunity to undermine the Committee's ability to enforce the subpoena.

If Century is not willing to compromise in any meaningful respect in connection with the enforcement of the subpoena, perhaps, Century would be better served by seeking the discovery it wants by lifting the stay in the Adversary Proceeding rather than hijacking the Committee's efforts to enforce the subpoena.

Dine Dec. Exh. GG.

51.    Not surprisingly, Mr. Schiavoni then sent an email reiterating Century's position.

As we have conveyed on several occasions, you are putting the cart before the horse discussing "search terms" before getting Gallagher providing information on where and how it has maintained the document generated in the course of their work fir the diocese.

We urged your office to sent a deficiency letter, ask for objections to be withdrawn and insist on disclosure of the document retention documents and agreements. We ever gave a very basic list if information to seek before the last call.  You excused Gallagher from responding and then didn't elicit that information in the call

Search terms in this context will only generate cherry picked documents from cherry picked sources.

Dine Dec. Exh. HH.

52.    On April 21, 2025, Ms. Dine sent an email to Mr. Kaufman copied on the other

parties providing suggested search terms and custodians.  Dine Dec. Exh. II.

53.     In light of Century's intransigence, the Committee determined that in addition to providing the Court with a Status Report in connection with the Century 2004 Motion, that it was necessary for the Committee to seek additional relief excluding Century from the process of enforcing the Gallagher Subpoena.   The Committee submits that without Century's interference that it may be able to negotiate a consensual resolution with respect to the Gallagher Subpoena that ensures that documents are being preserved and the status quo maintained and results in the actual search for and production of relevant documents.

## II.     FURTHER OBJECTION AND REQUEST FOR RELIEF

54.     As evidenced by the foregoing recitation of the correspondence among the parties, the Committee and Century fundamentally disagree on the enforcement of the Gallagher Subpoena making it impossible for the Committee to move forward with Gallagher to a consensual resolution.

55.     The Committee respectfully requests that this Court enter an Order in the form of Exhibit A hereto excluding Century from participation in the enforcement of the Gallagher Subpoena and denying Century's 2004 Motion.   The Committee remains prepared to provide Century with any discovery received from Gallagher.   The Committee also submits that as Century will still benefit from enforcement of the Gallagher Subpoena that it should be responsible for 50% of the reasonable fees and expenses of Gallagher in connection with its review and production of documents in response to the Gallagher Subpoena.

56.     To the extent there is additional discovery that Century continues to believe is necessary in connection with its coverage obligations, the appropriate avenue for such discovery is through the Coverage Litigation, if, and when, the discovery stay in the Coverage Litigation is lifted.

4912-8571-5000.3 18493.002

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Committee requests entry of an Order (i) excluding Century from participating in the enforcement of the Gallagher Subpoena, (ii) requiring Century to pay 50% of Gallagher's reasonable fees and expenses relating to the review and production of documents in response to the Gallagher Subpoena, (iii) denying Century's 2004 Motion, and (iv) granting such other relief as is deemed just and proper.

Dated: April 22, 2025
New York, NY

PACHULSKI STANG ZIEHL & JONES LLP

By:   *Ilan Scharf*
James I. Stang
Ilan D. Scharf
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Email: jstang@pszjlaw.com
        ischarf@pszjlaw.com

*Counsel to the Official Committee of
Unsecured Creditors*

BURNS BAIR LLP

By:   *Timothy Burns*
Timothy W. Burns (admitted *pro hac vice*)
Jesse J. Bair (admitted *pro hac vice*)
10 E. Doty St., Suite 600
Madison, Wisconsin 53703
Telephone: 608-286-2808
Email: tburns@burnsbair.com
        jbair@burnsbair.com

*Special Insurance Counsel to the Official
Committee of Unsecured Creditors*

**EXHIBIT A**

**PROPOSED ORDER**

4912-8571-5000.3 18493.002

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

In re:

The Roman Catholic Diocese of
Ogdensburg, New York,

                    Debtor.

Hearing Date:  May 6, 2025
at 1:00 pm ET
Hearing Location: Alexander Pirnie
U.S. Courthouse and Federal Building 10
Broad Street, Utica, New York

Status Report Deadline for Committee:
April 22, 2025

Status Report Deadline for Other Parties:
April 24, 2025

Chapter 11

Case No. 23-60507 (PGR)

---

**ORDER DENYING CENTURY'S 2004 MOTION AND EXCLUDING CENTURY FROM
PARTICIPATION IN ENFORCEMENT OF THE SUBPOENA THE COMMITTEE
ISSUED TO GALLAGHER**

       Having considered the (i) Further Objection and Status Report of the Official Committee

of Unsecured Creditors (the "Committee") with respect to the Motion of Century Indemnity

Company as successor to CCI Insurance Company, as successor to Insurance Company of North

America ("Century") for an Order under Federal Rule of Bankruptcy Procedure 2004

Authorizing Century to Enforce the Subpoena the Committee Issued to Arthur J. Gallagher and

Co. and Gallagher Bassett Services, Inc. (collectively "Gallagher") [Docket No. 849] (the

"Century 2004 Motion"), (ii) objections or responses filed thereto, and (iii) upon the hearings

held on the Century 2004 Motion and for good cause appearing therefor:

**IT IS ORDERED that**:

      1.      The Century 2004 Motion is **DENIED WITH PREJUDICE**.

2.      The Committee and Gallagher are not required to include Century in communications among the Committee or Gallagher concerning or relating to the Gallagher Subpoena or to copy counsel for Century with respect to any communications among the Committee and Gallagher with respect to the Gallagher Subpoena.

3.      The Committee is not required to provide Century notice should it agree to limit, modify or not pursue any of the requests so it may have an opportunity to be heard.

4.      Gallagher will be reimbursed its reasonable fees and expenses relating to its search for and production of documents in response to the Gallagher Subpoena.  Such fees and expenses shall be paid half by the Diocese and half by Century.

5.      Nothing herein shall prejudice the Committee's rights under Bankruptcy Rule 2004 and other applicable laws to seek further document production and/or oral examinations in connection with the above-captioned case. .

*** *END OF ORDER* ***