UNITED STATES BANKRUPTY COURT
NORTHERN DISTRICT OF NEW YORK

IN RE:

THE ROMAN CATHOLIC DIOCESE OF
OGDENSBURG, NEW YORK,
            Case No. 23-60507 (PGR)
            Chapter 11
    Debtor.

---

**UNITED STATES TRUSTEE'S OMNIBUS LIMITED OBJECTION
REGARDING INTERIM APPLICATIONS FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES**

TO: THE HONORABLE PATRICK G. RADEL, UNITED STATES BANKRUPTCY JUDGE:

   William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), through counsel, respectfully files this omnibus limited objection (the "Objection") in response to applications for compensation and reimbursement of expenses (the "Applications") of the retained professionals (collectively, the "Retained Professionals") of the Diocese of Odensburg, N.Y. (the "Debtor"), seeking interim compensation and reimbursement of out-of-pocket expenses for the time periods set forth below and defined as to each of the Retained Professionals, as follows:

| ECF Docket No. | Applicant | Fees Requested | Expenses Requested | Total | Application Period | |
|---|---|---|---|---|---|---|
| 952 | Bond, Schoeneck & King, PLLC, *Counsel for the Diocese* | $118,207.10 | $2,567.83 | $120,774.93 | 10/01/24-02/28/25 | No Objection |
| 953 | Blank Rome, LLP, *Special Counsel for the Diocese* | $58,408.73 | $0.00 | $58,408.73 | 10/01/24-02/28/25 | No Objection |
| 958 | Pachulski Stang Ziehl & Jones LLP *Special Counsel for Diocese* | $92,950.00 | $6,700.46 | $99,650.00 | 10/01/24-02/28/25 | UST Objection |

| ECF Docket No. | Applicant | Fees Requested | Expenses Requested | Total | Application Period | |
|---|---|---|---|---|---|---|
| 954 | Costello, Cooney & Fearon, PLLC, *Special Counsel* | $7,562.50 | $2,054.70. | $9,617.20 | 10/01/24-02/28/25 | No Objection |
| 951 | Burns Bair LLP, *Counsel to Official Committee of Unsecured Creditors* | $54,709.00 | $5.96 | $54,714.96 | 10/01/24-02/28/25 | No Objection |
| 956 | Schwerzmann & Wise, P.C. *Special Counsel* | $1,908.00 | $0.00 | $1,908.00 | 10/01/24-02/28/25 | No Objection |
| 959 | Berkeley Research Group, LLC *Financial Advisor to the Official Committee of Unsecured Creditors* | $24,766.78 | $0.00 | $24,766.78 | 10/01/24-02/28/25 | UST Objection |
| 955 | Pinto, Mucenski, Hooper, Van House & Co. *Accountan*t | $27,500.00 | $0.00 | $27,500.00 | 10/01/24-02/28/25 | No Objection |

In support of his Objection, the United States Trustee respectfully states as follows:

## I.    JURISDICTION, VENUE, AND STATUTORY PREDICATE

1.    The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1408.

2.    The statutory predicates are Sections 330 and 331 of title 11, of the United States Code (the "Bankruptcy Code"). These matters were initiated pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "Guidelines"). 28 C.F.R. Part 58, Appendix A.

## II.    FACTUAL BACKGROUND

3.    A hearing on the Applications is scheduled for June 10, 2025, at 1:00 p.m.

4.    The Retained Professionals filed the Applications on May 19, 2025, as denoted above.

### III.    <u>LEGAL STANDARDS</u>

**Reasonableness**

Bankruptcy Code Section 330(a)(1) provides that:

> After notice to the parties in interest and the United States trustee
> and a hearing, and subject to sections 326, 328, and 329, the court
> may award to a trustee, … an examiner, … or a professional person
> employed under section 327 or 1103 –
>
>> (A) reasonable compensation for actual, necessary services
>> rendered by the trustee, examiner, . . . professional person,
>> or attorney and by any paraprofessional person employed by
>> any such person; and
>>
>> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

To determine reasonableness, Section 330(a)(3) instructs that the court shall consider the

nature, the extent, and the value of such services, taking into account all relevant factors,

including–

> a.  the time spent on such services;
>
> b.  the rates charged for such services;
>
> c.  whether the services were necessary to the
> administration of, or beneficial at the time at which the
> service was rendered toward the completion of, a case
> under this title;
>
> d.  whether the services were performed within a
> reasonable amount of time commensurate with the
> complexity, importance, and nature of the problem,
> issue, or task addressed;
>
> e.  with respect to a professional person, whether the
> person is board certified or otherwise has
> demonstrated skill and experience in the bankruptcy
> field; and
>
> f.  whether the compensation is reasonable based on the

3

> customary compensation charged by comparably
> skilled practitioners in cases other than cases under
> this title.

11 U.S.C. § 330(a)(3).

To determine "reasonable compensation," bankruptcy courts are guided by, among other things, the Guidelines. See In re Value City Holdings, Inc., 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) ("In addition to conforming to the requirements of the Bankruptcy Code, requests for professional compensation must also conform with the Bankruptcy Rules, UST Fee Guidelines.") (footnotes omitted); Brous, 370 B.R. at 569, n.8. (adopting the Guidelines).

Section 330 requires the applicant to establish both reasonableness and benefit to the estate from the professional's services. In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993). To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors. In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

Each applicant bears the burden of proving the reasonableness of its fees and expenses sought. Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (2d Cir. B.A.P. 1997); Value City, 436 B.R. at 305; In re CCT Commc'ns, Inc., No. 07–10210 (SMB), 2010 WL 3386947, *4 (Bankr. S.D.N.Y. Aug. 24, 2010); In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation. In re Baker, 374 B.R. 489, 494 (Bankr. E.D.N.Y.2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation. In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir. 1988).

4

Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and inadequately detailed expenses).

The Court has an independent burden to review fee applications "lest overreaching . . . professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)); CCT, 2010 WL 3386947, at *4; Value City, 436 B.R. at 305.

Accordingly, courts serve a vitally important gate-keeping role in enforcing the Code's requirements that only reasonable fees be approved and paid as well as maintaining public confidence in the bankruptcy system itself. In re Temple Retirement Community, Inc., 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989). "[T]he judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system." In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).

B.    **Vague Time Entries**

In addition, time entries may not be vague. Each Retained Professional has the burden of proving the reasonableness of its fee request; accordingly, each applicant must provide specific and detailed time records. To that end, the Guidelines require:

> Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference.

Case 23-60507-6-pgr    Doc 983    Filed 06/03/25    Entered 06/03/25 17:19:14    Desc
Main Document    Page 6 of 17

**See Guidelines, (b)(4)(v).**

To enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific, and the records must clearly identify each discrete task billed. Baker, 374 B.R. at 495 ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); See also Bennett Funding, 213 B.R. at 244 ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services."). Such vague entries, "make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible." In re Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).

The time entries submitted by professionals should allow the Court and any reviewer to determine, "the legal issues involved, the difficulties of the issues, and the resolution or results obtained," with ease. Id. For example, references to telephone calls that do not make clear who the call was with or the subject matter discussed, preparation of memoranda of law that do not indicate the legal issues involved, email communications without a description of the substance of the communications and the recipients of such communications, and the review of documents without providing a description of the document reviewed are examples of vague time entries that make a fair evaluation of the work done and its reasonableness impossible. See Id.; CCT, 2010 WL3386947, *7 (disallowing time entries referring to telephone calls and emails without identifying the subject matter of the call or email, referring to preparation of draft letters without identifying the subject matter, and referring to vague description such as, "work on fee application"

6

or "attention to Vlahos's request"); <u>In re Fibermark, Inc.</u>, 349 B.R. 385, 396–97 (Bankr. D. Vt. 2006); <u>In re Hirsch</u>, No. 1–02–17966–DEM, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009) ("Entries that contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed.").

### C.    Multiple Professionals Billing for the Same Task

A fee applicant should exercise "billing judgment" and "make a good-faith effort to exclude from a fee request, hours that are excessive, redundant, or otherwise unnecessary." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983). A determination that the time expended is reasonable and requires the attendance by multiple professionals, requires the applicant to justify its necessity. See, <u>Fibermark</u>, 349 B.R. at 396. Moreover, the Guidelines state that, "if more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."

The Bankruptcy Code does not allow compensation for services that duplicate those of another professional. See 11 U.S.C. § 330(a)(4)(i). Indeed, it is an accepted principle that generally no more than one attorney may bill for time spent in an intra-office conference or meeting absent an adequate explanation. <u>See Bennett Funding</u>, 213 B.R. at 245.

There are certainly many instances when discrete matters require multiple professionals. However, the practice of multiple professionals routinely attending and billing for the same court hearings, meetings, office conferences, and teleconferences without justification can significantly increase costs and should be avoided.

### D.    Overhead and Other Administrative Activities

When determining whether requested fees are reasonable, courts consider, among other things, the professional's expertise or skill. See, Fibermark, 349 B.R. at 396–97 ("The Court specifically considers whether the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate. Whether it is reasonable for a certain professional to complete a task is to be determined by the level and skill reasonably required for the task.").

Many courts have taken the position that clerical tasks are appropriate for office staff, rather than attorneys. The costs associated with office staff, like other office overheads, are not separately compensable because they are a component of the attorney's hourly rate. Id. (concluding that non-compensable administrative activities include tasks such as "mailing or delivering papers; photocopying; word processing, including but not limited to creating templates, adding pages to various stipulations, formatting, creating spreadsheets, scanning and saving files into the firm's computer system, creating and revising charts, inserting case numbers into orders and printing documents; organizing files; maintaining an internal calendar; checking for docket updates; updating a master service list; creating, organizing, and indexing binders; pulling precedent pleadings requested by an attorney; and making travel arrangements"); Indeed, many courts have taken the position that tasks which are clerical in nature and that are appropriate for office staff – which is considered part of a professional's overhead – may not be billed to the estate. Id.; see also, In re Tan, Lie Hung & Mountain States Invs., LLC, 413 B.R. 851, 862 (Bankr. D. Or. 2009) (holding that reductions were warranted in compensation sought by Chapter 11 trustee's attorneys based upon their improper billing, at paralegal rates, for clerical tasks such as compiling and processing data for the electronic filing of various motions and other documents); Hudson, 364

8

B.R. at 881 (holding that photocopying, organizing documents, and assembling exhibits constituted clerical tasks included in the firm's overhead); In re Dimas, LLC, 357 B.R. 563, 577 (Bankr. N.D. Cal. 2006) (disallowing services performed by professionals which were clerical in nature, such as indexing, organizing and copying documents, conducting PACER searches to locate an order or other pleading, uploading pleadings to CM-ECF, and filing pleadings); In re Market Resources Dev., 320 B.R. 841, 846 (Bankr. E.D. Va. 2004) (concluding that tasks such as sending documents, delivering documents, printing, and copying were non-compensable overhead); In re Joseph Charles & Associates, Inc., 295 B.R. 399, 401 (Bankr. S.D. Fla. 2003) (holding that a paraprofessional's serving and filing of an objection fell within the purview of clerical duties which were non-compensable); In re Castorena, 270 B.R. 504, 516 (Bankr. D. Idaho 2001) ("Lawyers, or paralegals for that matter, may not charge professional rates for clerical functions").

### E.    Preparation of Fee Applications

The United States Trustee acknowledges the allowance of a reasonable amount of time for fee application preparation under the Bankruptcy Code, however, the fees related to such task should be limited to the actual time spent in preparation of the fee application. It is presumed that the professionals bill their time properly in the first instances. Therefore, fees for the professional's subsequent review of their own time entries, correction of bills, responses to inquiries or objections raised regarding the fee applications, etc. should not be charged to the estate. As the court in In re Computer Learning Centers, Inc., held:

> [T]his does not mean that every aspect of preparing a fee application is compensable. In re CF & I Fabricators of Utah, Inc., 131 B.R. 474, 483–88 (Bankr. D. Utah 1991) carefully reviews the billing process and analyzes each aspect for purposes of compensation

under 11 U.S.C. §330. It holds that those portions of the billing process common to billing both bankruptcy clients and non-bankruptcy clients are not compensable under §330 because they are part of the professional's overhead. They are not separately charged to non-bankruptcy clients and no additional effort is required to complete them for a bankruptcy client. For example, maintaining time records does not require additional effort. Lawyers and accountants maintain the same time records in a non-bankruptcy matter as in bankruptcy matters. Nor do lawyers or accountants charge for preparing their bills. Bills must be prepared in non-bankruptcy matters as well as bankruptcy matters. There may be some additional effort in putting the time records into the format required by the court. For example, the court requires time records to be maintained chronologically by task. While this may sometimes differ from the format of a nonbankruptcy bill, the additional effort is not generally significant if the records are initially properly set-up. Time records are almost universally maintained on computers with software that shows multiple formats, one of which will usually satisfy the bankruptcy requirements. "A computer billing package used by a professional that does not retrieve information in a format compatible with bankruptcy requirements and requires revisions to rectify the inadequacies, is not a deficiency the estate should pay for. This is especially true for professionals who regularly practice in this court and regularly prepare fee applications. Only those aspects of preparing a bankruptcy fee application that require additional-not merely different-efforts are compensable under §330(a)(6).

285 B.R. 191, 219–20 (Bankr. E.D. Va. 2002) (citations omitted); see also In re Mesa Air Group Inc., 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (quoting CCT, 2010 WL 3386947, at *9) ("'[T]he review and editing of time records – as opposed to fee applications – is not compensable.'").

Accordingly, billing a debtor's estate for time spent reviewing the firm's time entries to ensure compliance with the Guidelines imposed by case law, the Court, and the United States Trustee as well as handling administrative matters in connection with billing for the engagement should not be compensable.

F.    **"Lumped Time Entries" or Block Billing**

The Guidelines state that billing records must clearly identify each discrete task billed,

10

indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour), who performed the task, the level of experience, and that person's hourly rate. See Guidelines at (b)(4)(v). Moreover, the Guidelines provide that "[s]ervice should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." Id. The only limited exception is when the professional performs multiple discrete tasks but the total time billed is less than 30 minutes. Id.

Recording multiple tasks as one billing entry, typically referred to as "block billing" or "lumping," is routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed. See Baker, 374 B.R. at 494 (citations omitted) ("A professional is required to bill each task separately. That way, a Court can scrutinize the reasonableness of the time expended and counsel is not tempted to inflate the actual time spent and group multiple tasks together hoping to camouflage the true length of an individual task."). As a result of "lumping" time, the "timekeeper fails to sustain [his] burden of providing that [his] fees are reasonable." Brous, 370 B.R. at 576. Consequently, courts summarily will disallow time for discrete legal services merged together in a fee application. See, e.g., Baker, 374 B.R. at 496 (deducting 20% from the requested fees for improper block billing); see also, In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision Regarding Applications for Professional Fees and Reimbursement of Expenses) (Docket No. 926) (allowing only 30 minutes for each "lumped" entry, irrespective of the aggregate time billed for that entry); CCT, 2010 WL 3386947at *7 (allowing only 30 minutes of time for lumped entries).

The failure to specifically identify and describe the task prohibits the United States Trustee

11

and Court from determining whether those entries are reasonable in relation to the time spent.

### G.    Nonworking Travel

The court may allow professional travel time at one-half of the professional's normal hourly rate, unless otherwise justified. See Fibermark, 349 B.R. at 397 (citing In re S.T.N. Enters., Inc., 70 B.R. 823, 837 (Bankr. D. Vt. 1987)). This is because time spent traveling is generally unproductive and not compensable at the attorneys' regular hourly rate. In re Hottinger, 2023 WL 3240021, *2 (Bankr. N.D. West Virginia May 3, 2023). Courts have historically allowed one-half the reasonable travel time "unless legal work is actually performed during the trip." In re Computer Learning Ctrs., Inc., 272 B.R. 897, 910 (E.D. Va. 2001).

### H.    Actual and Necessary Expenses

Under Section 330(a)(1)(B), only documented expenses that are actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B). Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary." In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)). Expenses are "actual" if they are incurred and not based on a formula or pro rata calculation. Bennett Funding, 213 B.R. at 398. Expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the client." In re American Preferred Prescription, Inc., 218 B.R. 680, 686–87 (Bankr. E.D.N.Y. 1998).

### I.    Interim Compensation

Interim compensation to professionals, as reflected in Section 331, finds its origins in the equity powers of the bankruptcy court. In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987).

Therefore, the Bankruptcy Court has broad discretion in the course of examining and

12

awarding interim fee applications. Id.

In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court." Id. Because all but one of the pending Applications are interim in nature, the timing of any payments is also within the parameters of the Court's discretion. Id. Furthermore, courts have discretion to defer ruling on any or all of the Applications, until the time for final applications is proper. In re ACT Mfg., Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

Section 331 incorporates the requirements of 11 U.S.C. § 330, and the standards are the same for interim and final awards of compensation. See Bennett Funding, 213 B.R. at 244. At the interim fee stage, "there is [no] legal entitlement to payment prior to the final fee award." Child World, 185 B.R. at 17. Section 331 "is permissive, nothing in that provision requires a court to grant an application for interim compensation." Id. Thus, the statute "authorizes the award of interim compensation, but does not mandate it." In re First Hartford Corp., 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982); see also Barron, 73 B.R. at 814 (noting that Congressional intent underlying Section 331 "was only to give officers of the estate an opportunity to apply for reimbursement.") (emphasis in original).

## IV.    OBJECTIONS AND COMMENTS

The United States Trustee reviewed the fee applications filed by the following Retained Professionals and had no objections to their applications: Burns Bair LLP [ECF Doc. No. 951], Bond, Schoeneck & King, PLLC [ECF Doc. No. 952], Blank Rome LLP [ECF Doc. No. 953], Costello, Cooney & Fearon, PLLC, [ECF Doc. No. 954], Pinto, Mucenski, Hooper, Van House & Co. [ECF Doc. No. 955], and Schwerzmann & Wise, P.C. [ECF Doc. No. 956].

The United States Trustee has limited objections to the following fee applications:

**A.      Application of Pachulski Stang Ziehl & Jones LLP ("PSZJ")**

**1.  Administrative Tasks/Overhead**

In its Fourth Interim Application, PSZJ billed the estate for Litigation Support Vendors in the amount of $5,500 that is in the nature of overhead and should be assumed by PSZJ.

**2.  Preparation of Fee Applications**

In its Fourth Interim Application, PSZJ billed the estate 15.20 hours totaling $12,160, which is 13% of the total amount billed for time relative to its own compensation.  The United States Trustee acknowledges the allowance of a reasonable amount of time for fee application in conjunction with amount of work performed.  However, given the excessive amount of time billed for such tasks, the United States Trustee seeks a 50% reduction.

**B.      Application of Berkeley Research Group, LLCP ("BRG")**

**1.      Multiple Professionals Billing for Same Task**

BRG billed 9.80 hours or $6,962.50 for two or more professionals for attending to the same task, telephone conferences, meetings, or attending the same hearing.  In several instances, BRG billed for 3 professionals attending to the same task or hearing.

| | **301.00 Asset Analysis** | | | |
|---|---|---|---|---|
| 11/12/2024 | R. Strong | Attended call with UCC Counsel (IS [partial], KD) and BRG (MB, CT) regarding recent document production relating to alleged restricted assets. | 1.0 | $815.00 |
| 11/12/2024 | M. Babcock | Met with UCC Counsel (IS [partial], KD) and BRG (RS, CT) to evaluate recent production of documents relating to alleged restricted assets. | 1.0 | $755.00 |

14

| Date | Name | Description | Hours | Amount |
|---|---|---|---|---|
| 11/12/2024 | C. Tergevorkian | Met with BRG (MB, RS) and UCC Counsel (KD, IS [partial]) to discuss recent document production relating to alleged restricted assets. | 1.0 | $480.00 |
| 11/25/2024 | R. Strong | Attended call with UCC Counsel (KD) and BRG (MB, CT) regarding alleged DLF & DILT restricted asset analysis | 0.6 | $489.00 |
| 11/25/2024 | C. Tergevorkian | Met with BRG (RS, MB) and UCC Counsel (KD) to discuss DLF & DILT alleged restricted assets | 0.6 | $288.00 |
| 11/25/2024 | M. Babcock | Met with UCC Counsel (KD) and BRG (RS, CT) to discuss alleged restricted assets relating to DLF & DILT. | 0.6 | $453.00 |
| 11/25/2024 | R. Strong | Attended call with BRG (MB) to discussed evaluation of alleged restricted assets for asset evaluation | 0.4 | $326.00 |
| 11/25/2024 | M. Babcock | Met with BRG (RS) to discuss restricted assets alleged by Debtor for asset evaluation. | 0.4 | $302.00 |
| 02/11/2025 | R. Strong | Attended call with BRG (MB, CT) regarding restricted asset analysis inquiries from UCC Counsel for asset investigation | 0.2 | $171.00 |
| 02/11/2025 | M. Babcock | Met with BRG (RS, CT) to discuss alleged restricted assets pursuant to inquiries from UCC Counsel for asset investigation | 0.2 | $159.00 |
| 02/11/2025 | C. Tergevorkian | Met with BRG (RS, MB) to discuss alleged restricted funds based on inquiries from UCC Counsel for asset investigation | 0.2 | $107.00 |
| 02/12/2025 | M. Babcock | Met with BRG (CT) to discuss updates to restricted asset analysis pursuant to UCC Counsel requests. | 0.5 | $397.00 |
| 02/12/2025 | C. Tergevorkian | Met with BRG (MB) to discuss updates to restricted funds analysis pursuant to UCC Counsel requests | 0.5 | $267.50 |
| 02/14/2025 | M. Babcock | Met with BRG (CT) and UCC Counsel (KD [partial]) to discuss updates to restricted asset analysis | 0.6 | $477.00 |
| 02/14/2025 | C. Tergevorkian | Met with BRG (MB) and UCC Counsel (KD [partial]) to discuss updates to | 0.6 | $321.00 |

| | | | | |
|---|---|---|---|---|
| | | restricted funds analysis | | |
| 02/25/2025 | R. Strong | Attended call with UCC Counsel (KD, IS) and BRG (MB) regarding updates to restricted asset analysis | 0.7 | $598.50 |
| 02/25/2025 | M. Babcock | Met with UCC Counsel (IS, KD) and BRG (RS) to discuss analysis of assets alleged by Debtor to be restricted | 0.7 | $556.50 |
| | | | | |
| TOTALS | | | 9.8 | **$6,962,50** |

It should be noted that the United States Trustee did not identify and does not object to each and every instance where multiple attorneys and professionals attended to the same task. Indeed, given the complicated nature of this case, the United States Trustee acknowledges many matters require multiple professionals. However, the United States Trustee believes a voluntary disallowance of a portion of BRGs fees will address his concerns regarding the billing of multiple professionals for work on the same task. The United States Trustee submits that a reduction of $3,000 reduction is reasonable.

**2. Preparation of Fee Applications**

The United States Trustee acknowledges the allowance of a reasonable amount of time for fee application in conjunction with amount of work performed.

The fees sought by BRG of $2,534.00 amounts to just over nine percent (9%) of the fees sought net of the cost of the preparation of the fee application and eight and one-half percent (8½%) of the total fees sought, including those fees related to preparation of the application. The United States Trustee requests a reduction to $1,300.00.

**V.      <u>CONCLUSION</u>**

The United States Trustee respectfully submits that the foregoing requests for adjustment to each of the Retained Professionals' applications for compensation, further discussed above, are

16

warranted under applicable law and reasonable under the circumstances.

WHEREFORE, the United States Trustee respectfully submits that the Court enter an order reducing the fees and expenses requested by the Retained Professionals as set forth herein; and granting such other and further relief as it may be deemed just and proper.

Dated: June 3, 2025
      Utica, New York                  Respectfully submitted,

**WILLIAM K. HARRINGTON**
**UNITED STATES TRUSTEE FOR REGION 2**

By: /s/ Erin P. Champion
Erin P. Champion
Assistant United States Trustee
Office of the U.S. Trustee
10 Broad Street, Room 105
Utica, New York 13501
(315) 793-8191
erin.champion@usdoj.gov

17