So Ordered.

Signed this 27 day of October, 2025.



_____

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:                                                    :
                                                          :
THE ROMAN CATHOLIC DIOCESE             :
OF OGDENSBURG, NEW YORK,               :
                                                          :     Case No. 23-60507 (PGR)
                        Debtor.          :     Chapter 11
                                                          :
_____:

APPEARANCES:

BOND, SCHOENECK & KING, PLLC                    CHARLES J. SULLIVAN, ESQ.
*Counsel for Debtor*
One Lincoln Center, Syracuse, New York 13202

PACHULSKI STANG ZIEHL & JONES LLP              IIAN D. SCHARF, ESQ.
*Counsel for Official Committee of Unsecured Creditors*
1700 Broadway, Ste 36th Floor, New York, New York 10019

O'MELVENY & MYERS LLP                           TANCRED V. SCHIAVONI, ESQ.
*Counsel for Century Indemnity Company,*
*as successor to CCI Insurance Company, as*
*successor to Insurance Company of North America*
1301 Avenue of the Americas, Suite 1700, New York, New York 10019

**MEMORANDUM-DECISION AND ORDER**
**PERMITTING NON-TESTIMONIAL SURVIVOR STATEMENTS**

"The fundamental requisite of due process of law is the opportunity to be

heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S. Ct. 779, 783, 58 L. Ed. 1363

(1914).

1

"When I have been listened to and when I have been heard, I am able to re-perceive my world in a new way and to go on." CARL ROGERS, *Experiences in Communication, in* A WAY OF BEING 5, 12 (1980).

The Roman Catholic Diocese of Ogdensburg is a debtor in bankruptcy because over one hundred individuals filed lawsuits seeking compensation for alleged clerical sexual abuse. (Declaration of Rev. Kevin J. O'Brien, Docket No. 7, at ¶ 44). Presently pending is a motion by the Official Committee of Unsecured Creditors ("Committee") to allow those individuals the opportunity to be heard. (Docket No. 1050). The motion is granted.

## Jurisdiction

This Court has core jurisdiction over the parties and the subject matter of this contested matter under 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

The Diocese is a religious corporation canonically established in 1872 and incorporated pursuant to a special act of the New York Legislature in 1945. (O'Brien Declaration, Docket No. 7, at ¶ 2, 20). The Diocese, by and through its offices, parishes, and ministry entities, provides religious services and performs charitable work across eight counties in northern New York State. *Id.* at ¶ 22.

The Diocese is a named defendant in 124 lawsuits brought by individuals alleging clerical sexual abuse. *Id.* at ¶ 44. The Diocese filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 17, 2023. (Docket No. 1).

According to the Diocese, it sought bankruptcy relief to maximize its assets (including insurance) to provide the "greatest recovery for the greatest number" of abuse survivors; to create an orderly claims administration process and achieve an equitable distribution; and to allow the Diocese to survive and "continue to fulfill its charitable, humanitarian and religious mission in service of the Catholic faith." (O'Brien Declaration, Docket No. 7, at ¶45).

Approximately 130 individuals filed proofs of claims in this case alleging sexual abuse. (Docket No. 1050, at ¶ 2). The Diocese, Committee, and various insurance companies have been engaged in mediation with a court-appointed mediator since January of 2024. (Docket No. 69, Adversary Proceeding 23-80013-6).

On September 26, 2025, the Committee moved for an Order permitting non-testimonial "survivor statements." (Docket No. 1050). Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century") filed a response in opposition to the motion on October 14, 2025. (Docket No. 1083). The Committee filed a reply in further support of the requested relief on October 20, 2025. (Docket No. 1089).

This Court held a hearing on October 21, 2025, in Utica, New York, with appearances by, and arguments from, the above-named counsel. The Diocese's counsel advised that the Diocese supports the motion and that the Bishop of the Diocese would attend the conference(s) and listen to the survivor statements. The motion was granted over Century's objection. This Court's reasons for that ruling are set forth below.

## Analysis

The Committee requests an Order scheduling two days of survivor statements, with sexual abuse claimants being offered the opportunity to address this Court and the Bishop regarding their experience.  The survivor statements would be voluntary and non-testimonial, with the stipulation that the statements will not be transcribed and cannot be used in any other proceeding or for any other purpose.  The claimants would not be subject to cross-examination and other parties will not respond to the statements.

The Committee argues that the statements would provide valuable validation, empowerment, closure, and healing to survivors of sexual abuse.  In addition, the Committee believes the statements will promote the claimants' engagement with, and confidence in, the bankruptcy process, thereby facilitating their support for the consensual plan of reorganization the parties hope to develop through mediation.

Century does not directly deny the benefits cited by the Committee, but opposes the motion by arguing that (1) survivor statements are not authorized by the Bankruptcy Code and, in fact, conflict with important evidentiary rules and (2) hearing survivor statements will taint this Court as a trier of fact.

This Court finds Century's arguments unavailing.

First, the Bankruptcy Code gives the abuse claimants the right to be heard and grants this Court the authority and discretion to conduct conferences and hear from parties in a pending case.

Section 1109 (b) of the Code states that parties in interest, including creditors, "may appear and be heard on any issue in a case under [Chapter 11]." 11 U.S.C. § 1109 (b).  The Supreme Court described this provision as "capacious" and intended to ensure "[b]road participation," which "promotes a fair and equitable reorganization process." *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 277, 280-81 144 S. Ct. 1414, 1424-25, 219 L. Ed. 2d 41 (2024).

In addition, Section 105 (d) of the Code not only grants bankruptcy courts the power to conduct conferences, but states that they "*shall* hold such status conferences as are necessary to further the expeditious and economical resolution" of their cases. 11 U.S.C. § 105 (d)(emphasis added); *see also* 2 Collier on Bankruptcy P 105.08 (discussing Congress's intention to "mandate" status conferences); *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) ("Bankruptcy Code § 105(d) requires a bankruptcy court to hold a case management conference ….").

Although Rule 5001 (b) of the Federal Rules of Bankruptcy Procedure requires that trials and hearings be "held in open court," it permits other proceedings to be conducted "in chambers anywhere within or outside the district." Fed. R. Bankr. Pro. 5001 (b).  This Rule is derived from former Bankruptcy Rule 501(b). *See* 12 COLLIER ON BANKRUPTCY ¶ 501.6 (14th ed. 1978).  In discussing former Rule 501 (b), *Collier's* explains that the Rule "is in keeping with the judicial power to do all things and perform all acts necessary to speed the case to a conclusion…." *Id.*

5

Century notes that in 2024 two members of the House of Representatives introduced a bill that would, *inter alia*, expressly permit victim impact statements in Chapter 11 cases. (Docket No. 1083-4).

The desire of two House members to codify the survivors' right to offer statements does not mean that this Court does not already have the statutory and/or inherent authority to permit such statements. *See generally In re Nunn*, 49 B.R. 963, 964 (Bankr. E.D. Va. 1985)("Section 107(a) provides that papers filed in a case under Title 11 of the United States Code are of public record. This is merely a codification of the common law general right to inspect judicial records and documents."); *Riggs v. Dayco Prods., Inc.*, No. 1:05CV91, 2006 WL 8455907, at *1 (W.D.N.C. Feb. 22, 2006)("Rule 12(f) reflects the inherent power of the Court to prune down pleadings so as to expedite the administration of justice and to prevent abuse of its process."); *Gerzof v. Miller* (*In re Miller*), 14 B.R. 443, 447 (Bankr. E.D.N.Y. 1981)("It seems obvious from the very existence of a bankruptcy court's equitable powers, that Congress did not intend to provide expressly for all of the court's prerogatives.").

Indeed, Bankruptcy Rule 5001(b) is akin to Rule 77(b) of the Federal Rules of Civil Procedure, which has long been recognized as a codification of the court's inherent authority to conduct bench conferences. *See* 1 Bankruptcy Litigation § 5:318 (Steinberg 2025); *B.H.*, 49 F.3d at 298.

Second, the proposed conference falls well within the "traditional authority of a judge to speak privately with the parties to a suit, whether in bench conferences or in chambers." 14 Moore's Federal Practice § 77.03 (3d ed. 2024)(quoting *B.H. v.*

*McDonald*, 49 F.3d 294, 297-98 (7th Cir. 1995)); *see also In re Roman Cath. Archbishop of Baltimore,* No. 23-16969-MMH, 2025 WL 2314793, at *7 (Bankr. D. Md. Aug. 11, 2025)("Case law and the federal rules have long recognized a court's ability to manage its own docket and to conduct certain activities and proceedings in chambers or otherwise outside the designated courtroom."); *see also generally United States v. Town of Moreau, N.Y.*, 979 F. Supp. 129, 134 n.2 (N.D.N.Y. 1997), *aff'd sub nom. United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853 (2d Cir. 1998).

Third, Century's argument that the proposed conference violates the rules and procedures applicable to witness testimony fails because the statements will expressly *not* be considered evidence and will not be admissible in any proceeding to prove (or disprove) any dispute issue(s).

Fourth, nearly all the bankruptcy courts to consider this issue have found survivor statements to be a permissible and appropriate exercise of discretion. *See In re Roman Cath. Bishop of Sacramento*, 667 B.R. 577 (Bankr. E.D. Cal. 2025); *In re Archbishop of Baltimore*, 2025 WL 2314793, at *6-*7; *Amended Order Granting Application to Schedule a Status Conference with Presentation of Survivor Statements*, Docket No. 829, *In re The Roman Catholic Archdiocese of San Francisco* (Bankr. N.D. Cal., Case No. 23-30564-DM, Aug. 28, 2024); *Order Granting Motion of the Official Committee of Unsecured Creditors for Entry of an Order Permitting Nontestimonial Survivor Statements*, Docket No. 3223, *In re Diocese of Rochester*, (Bankr. W.D.N.Y, Case No. 19-20905, June 26, 2025); *Order Granting Motion to Schedule a Status Conference of the Presentation of Survivor Statements*, Docket No.

281, In *re Roman Catholic Diocese of Burlington, Vermont*, Bankr. D. Vt., Case No. 24-10205-HZC, April 29, 2025).

Both Chief Judge Kinsella and Judge Littlefield in this Court's own district permitted survivor statements. *See Order Granting Official Committee of Unsecured Creditors' Motion to Authorize Status Conferences for the Presentation of Survivor Impact Statements*, Docket No. 2540, *In re The Roman Catholic Diocese of Syracuse, New York* (Bankr. N.D.N.Y. Case No. 20-20663, Feb. 24, 2025); *Order Authorizing a Status Conference for the Presentation of Survivor Impact Statements*, Docket No. 2067, *In re The Roman Catholic Diocese of Albany, New York* (Bankr. N.D.N.Y. Case No. 23-10244, July 24, 2025).

Fifth, while recognizing Century's concern regarding the risk that hearing the statements could taint this Court as a future trier of fact and noting that this concern has been shared by some judges, including Judge Grabill in the Archdiocese of New Orleans case, this Court finds the concern overstated and outweighed by the benefits of permitting the statements.

Judges are not robots — we come to court with personal feelings and beliefs informed by our life experience.

It is fundamental to the role that we strive to transcend those sentiments and apply the law as we interpret it according to the facts as we find them. *See Confirmation Hearing on the Nomination of Hon. Sonia Sotomayor to be an Associate Justice of the Supreme Court of the United States before the S. Comm. on the Judiciary,* 111th Cong. 121 (2009) (response of J. Sonia Sotomayor to Sen. Jon Kyl,

S. Comm. on the Judiciary)(explaining that judges "apply law to facts. We don't apply feelings to facts."); *see also Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1372 (7th Cir. 1994)( "Judges are human; like all humans, their outlooks are shaped by their lives' experiences. It would be unrealistic to suppose that judges do not bring to the bench those experiences and the attendant biases they may create. A person could find something in the background of most judges which in many cases would lead that person to conclude that the judge has a 'possible temptation' to be biased. But not all temptations are created equal. We expect—even demand—that judges rise above these potential biasing influences, and in most cases we presume judges do.").

This is particularly the case for bankruptcy judges. As Judge Harner observed in her decision permitting survivor statements:

> Bankruptcy cases involve difficult issues. People lose their homes, their businesses, their jobs, their retirement benefits, and much more, and often the circumstances surrounding these events are not pleasant and can be emotional for the parties. Regardless of statements made in the courtroom during any act or other proceeding outside a formal hearing or trial, as stated in a prior note, the Court is bound by, and will follow, the Code and the applicable federal rules (including the Federal Rules of Evidence) in any hearing or trial held in the case or any related adversary proceeding.

*Archbishop of Baltimore*, 2025 WL 2314793, at *6, n. 22.

Moreover, this Court recognizes that the survivor statements will not, and cannot, be considered evidence, as they will not be offered under oath or tested by cross-examination. *See Bishop of Sacramento*, 667 B.R. at 580 ("In the procedural posture of the case, any statements made are no more than allegations which

standard Rule 12 pretrial motion practice treats as true only for purposes of analysis. Hence, the alleged sex abuses are treated as presumed to have occurred for interim pretrial procedural purposes. Ultimately, of course, the plaintiffs must prove their respective cases by preponderance of evidence in trial by jury. At this stage, credibility is not an issue."); *Archbishop of Baltimore*, 2025 WL 2314793, at *6 ("This Court frequently hears statements from parties in interest in the courtroom that are not evidence or offered as part of an evidentiary hearing or trial. The Court can allow parties to speak without prejudicing the record.").

Further, any concern about potential prejudice in the event this Court is called upon to be a trier of fact is speculative and, should it arise, can be raised by a concerned party via a recusal request as to the matter in question.[1]

Lastly, and most importantly, the risk is substantially outweighed by the significant benefits to be achieved by permitting the statements.

As noted above, Century does not seriously dispute that affording claimants an opportunity to address this Court and the Bishop (and to hear from fellow survivors) will provide some measure of validation, healing, and empowerment. *See Bishop of Sacramento*, 667 B.R. at 578 ("Considerations of basic human dignity require that [survivors] know that they have been heard by the Church and by the Court....Anything that promotes reconciliation, catharsis, and solace for sex abuse

---

[1] Indeed, 28 U.S.C. § 455 "already ... imposes ... an obligation on me to personally evaluate any bias I may have in this case—actual or reasonably perceived—and disclose or recuse if I find that I must." *Brizuela v. City of Sparks*, No. 3:19-CV-00692-MMD-CSD, 2022 WL 22827625, at *4 (D. Nev. Oct. 3, 2022).

victims in a chapter 11 case serves the interests of justice and is a worthy task for a bankruptcy judge.").

Further, having this Court (as opposed to another judge with no connection to the case) conduct the conference promotes engagement with, and confidence in, the bankruptcy process, which will, in turn, hopefully increase the prospects for a consensual and expeditious resolution to this case. *See Archbishop of Baltimore*, 2025 WL 2314793, at \*8 ("A status conference allowing Survivors to address the Court, the Debtor, and other parties in interest is appropriate, an authorized tool available to the Court, and *needed* in this particular case to maintain confidence in the process and facilitate continued discussions and progress.")(emphasis in original).

The Committee's Motion for Entry of an Order Permitting Nontestimonial Survivor Statements (Docket No. 1050) is GRANTED.  A separate scheduling order setting the dates, location, and parameters of the conference will be issued forthwith.[2]

###

---

[2] In its opposition to this motion, Century requested a stay pending appeal.  That request is denied without prejudice to being renewed via separate motion on notice.

11