# EXHIBIT 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ST. LAWRENCE

-------------------------------------------------------------------X

[redacted],

*Plaintiff,*

-against-

ROMAN CATHOLIC DIOCESE OF OGDENSBURG,

*Defendants.*

-------------------------------------------------------------------X

Index No.: [redacted]

Date Purchased: 8/12/2021

**AMENDED SUMMONS**

Plaintiff designates St. Lawrence County as the place of trial.

The basis of venue is one defendant's residence

**Child Victims Act Proceeding 22 NYCRR 202.72**

***TO THE ABOVE NAMED DEFENDANTS:***

***YOU ARE HEREBY SUMMONED*** to answer the first amended complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorney(s) within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
November 9, 2021

Ellie A. Silverman, Esq.
**THE LAW OFFICE OF ELLIE SILVERMAN, PC**
*Attorneys for Plaintiff*
135 E. 57th Street, Unit 100
New York, New York 10022
(215) 620-6616

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ST. LAWRENCE

---

INDEX NO.: [redacted]

[redacted],

Plaintiff,

vs.

ROMAN CATHOLIC DIOCESE OF OGDENSBURG,

Defendant.

---

**FIRST AMENDED COMPLAINT**

Child Victims Act Proceeding
22 NYCRR 202.72

Plaintiff, [redacted], by and through his undersigned counsel, Horowitz Law and The Law Office of Ellie Silverman, PC, hereby complains of the above-named Defendant ROMAN CATHOLIC DIOCESE OF OGDENSBURG and avers as follows:

## THE PARTIES

1. [redacted]

2. Defendant ROMAN CATHOLIC DIOCESE OF OGDENSBURG ("DIOCESE") is a non-profit corporation organized and existing under the laws of the State of New York which maintains its principal office at 622 Washington Street, Ogdensburg, New York, in St. Lawrence County. At all times relevant, DIOCESE was an organized religious entity engaged in the business of, *inter alia*, owning, managing, and operating Parishes and Catholic schools in the State of New York, including in Clinton, Essex, Franklin, Hamilton, Herkimer, Jefferson, Lewis, and St. Lawrence Counties.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to C.P.L.R. § 301 as DIOCESE maintains a principal place of business in St. Lawrence County, New York and because some of the acts and omissions alleged herein occurred in St. Lawrence County, New York.

4. Venue is proper pursuant to C.P.L.R. § 503 in that St. Lawrence County is the principal place of business of the DIOCESE and a substantial part of the acts and omissions giving rise to this Complaint occurred in St. Lawrence County.

5. This action is filed pursuant to C.P.L.R. § 214-g, otherwise known as "The Child Victims Act."

6. In the event additional defendants are added to this action, the limitations of Article 16 of the CPLR do not apply because one or more of the exceptions set forth in. CPLR §1601 and/or §1602 apply.

7. This First Amended Complaint is being filed pursuant to the agreement of the parties reached before the Court on October 13, 2021, memorialized in a Consent Order entered by the Court.

## FACTS RELATING TO PLAINTIFF

8. [redacted]

9. [redacted]

10. [redacted]

11. [redacted]

12. [redacted]

13. [redacted]

14. [redacted]

15. [redacted]

**<u>FACTS RELATING TO DIOCESE'S NEGLIGENCE</u>**

16. [redacted]

17. [redacted]

18. [redacted]

19. At all times relevant hereto, each of the Bishops of the DIOCESE ("the Bishop"), by virtue of their respective office, acted as managing agents of the DIOCESE and were ultimately responsible for the supervision, oversight, management, retention, and control of the actions and conduct of all Diocesan priests, including [redacted], as well as all Diocesan properties and entities, including Parishes, Schools, Nursing Homes, and various other entities located within the DIOCESE's geographic boundaries.

20. During the relevant time period, the following men held the position of the Bishop and would have been responsible for the supervision, oversight, management, retention, and control of the actions and conduct of all DIOCESE's priests, including [redacted]: James Johnston Navagh (1957-1963), Leo Richard Smith (1967), Thomas Andrew Donnellan (1964-1968), Stanislaus Joseph Brzana (1968-1993), Paul Stephen Loverde (1993-1999), Gerald Michael Barbarito (1999-2003), Robert Joseph Cunningham (2004-2009), and Terry Ronald LaValley (2010-Present).

21. At all times relevant, the Bishop and his designees, including [redacted], were responsible for teaching, governing, and sanctifying members of the Catholic faithful while they were present in his DIOCESE or in the presence of his priests and employees, including [redacted]

22. At all times relevant hereto, [redacted] served at the Bishop's pleasure, under the direct supervision of the Bishops and his designees, and was otherwise subject to the authority of the individual holding the title of "Bishop," as well as the Bishop's designees.

23. At all times relevant, [redacted] was a Roman Catholic priest under the supervision of the Bishop of the DIOCESE.

24. In a purposeful effort to conceal the horrific misdeeds of Diocesan priests who sexually abused kids entrusted to their care, and to protect the DIOCESE and their priests from scrutiny, scandal, and potential financial losses, the DIOCESE explicitly and implicitly, through words, actions and teachings, misrepresented to Plaintiff, his family, parishioners, and the general public that it addressed all allegations of clergy sexual abuse swiftly and immediately upon learning of them.

25. The DIOCESE intended for parishioners and the public to believe, then, that any priest in active ministry had never been accused or suspected of sexual abuse of minors, and that the priest was chaste, safe to be around children, and otherwise fit for ministry. At all times relevant, this included [redacted], who was a priest in active ministry at the time of each of the incidents of sexual misconduct alleged herein.

26. As a result of those representations by the DIOCESE, the vulnerable Plaintiff, his family, the Catholic faithful, and the general public believed and trusted that the DIOCESE's priests, including [redacted], were benevolent and trustworthy stewards of God who were fit for ministry and acted only in the best interests of the communities they served, including vulnerable children like the Plaintiff. In reality, these misrepresentations only served to allow priests like [redacted] to sexually abuse more children, including Plaintiff.

27. [redacted] sexual abuse of Plaintiff was accomplished in whole or in part by virtue of [redacted] position as a priest of the DIOCESE, and the corresponding trust that Plaintiff and his family placed in [redacted] as a result of his position with DIOCESE.

28. [redacted] and his supervisors at DIOCESE, including the Bishop, preyed upon the devotion of the young Plaintiff and his family to keep matters of abuse secret, even from one

another. Plaintiff never told anyone about his abuse as a child because he feared no one would believe him over a Roman Catholic priest like [redacted].

29. At all times material, Plaintiff, and those responsible for his safety and well-being, entrusted his safety and well-being to the DIOCESE and its agents, including, but not limited to, [redacted] and the Bishops of the DIOCESE.

30. At all times relevant hereto, the DIOCESE owed Plaintiff a duty of good faith and fair dealing to act with the highest degree of trust and confidence. This included the duty to warn, disclose, and protect children, including Plaintiff, from sexual abuse and exploitation by clerics who, like [redacted] the DIOCESE falsely promoted as being chaste and moral when it knew or should have known otherwise.

31. Upon information and belief, [redacted] sexually abused other children before, during, and after the time he sexually abused Plaintiff. The DIOCESE, by and through their agents, managers, employees, and directors, knew, or through the exercise of reasonable care, should have known that the [redacted] was a serial sexual abuser of minor children, yet it took no action to protect Plaintiff and other children from him.

32. Upon information and belief, DIOCESE had additional actual or constructive notice that [redacted] had a sexual interest in children and that he regularly used his position as a priest to groom and sexually abuse minor children prior to [redacted].

33. Upon information and belief, despite what it knew or should have known by [redacted], the DIOCESE failed to warn Plaintiff, his family, law enforcement, parishioners, the general public, and/or others outside the DIOCESE's inner sanctum about [redacted] propensity to sexually abuse minor children.

34. At all times relevant, the Bishop knew of a general problem of priests under his supervision and control were grooming and sexually molesting children who came into contact with his priests as a result of their ministry and pastoral functions. At all relevant times, the Bishop knew that this was a widespread, ubiquitous, and systemic problem in the DIOCESE involving many priests and numerous victims.

35. Despite receiving credible allegations of sexual abuse of children by priests, DIOCESE acted to conceal these allegations in an effort to avoid scandal and accountability.

36. This concealment was in accordance with a policy of the DIOCESE as agents and the Holy See as principal. In 1922, the Holy See released a confidential document to its bishops, including the Bishop of the DIOCESE, and other officials of Catholic organizations regarding the handling of cases of solicitation of sex in the confessional by priests. This document mandated a specific procedure for the Holy See's agents, including the Bishop of the DIOCESE, to use when a cleric sexually abused children using the confessional. This document required that the matter be handled with the strictest of secrecy by all involved. The 1922 document showed that the Holy See and its agents were fully aware that there was a systemic problem of clergy sexually molesting children and wanted to alert its agents, including the Bishop of the DIOCESE, of the problem.

37. In 1962, the Holy See released the confidential document, "*Instruction on the Manner of Proceeding in Cases of Solicitation*" (The Vatican Press, 1962) (hereinafter "*Crimen Sollicitationis*"*).* The heading of the document states, "from the Supreme and Holy Congregation of the Holy Office to all patriarchs, Bishops, bishops and other diocesan ordinaries 'even of the oriental right,'" and it contains specific instructions regarding the handling of child sexual abuse by clergy. According to the document itself, it is an instruction, ordering upon those to whom it pertains to follow a specific protocol while addressing allegations of child sexual abuse, and to

keep all matters relating to allegations of sexual abuse, including the existence of the document itself, secret. It also directed the document be stored in the secret archives of its agents, to become part of the agents' institutional knowledge and direction.

38. *Crimen Sollicitationis* reinforced that the Holy See and its agents, including the DIOCESE, had knowledge that there was a general and systemic problem of Catholic clergy sexually molesting children they encountered by virtue of their positions as priests even before 1962.

39. Based upon what it knew about its priests generally, and what it knew or should have known about [redacted] specifically, the DIOCESE knew or should have known that [redacted] posed a foreseeable risk of harm to minor children before [redacted], including but not limited to, Plaintiff.

40. Despite actual and/or constructive knowledge of [redacted] deviant sexual interests and behaviors with minor children, the DIOCESE undertook no meaningful investigation or responsive action against [redacted] whatsoever, and continued to give him unfettered access to minor children, including Plaintiff.

41. The DIOCESE placed [redacted] in a position to do harm to third parties he encountered by virtue of his position as a priest, including the Plaintiff. [redacted] used his position as a priest to identify potential victims and to gain their trust. It was reasonably foreseeable to the DIOCESE that [redacted] would use his position with the DIOCESE to sexually abuse and exploit those he encountered by virtue of his position as a priest, including Plaintiff.

42. Upon information and belief, DIOCESE committed additional acts and omissions regarding [redacted] sexual abuse of children that have not yet been made public but that made Plaintiff vulnerable to sexual abuse by [redacted]

43. Plaintiff and his parents had no opportunity to protect Plaintiff against a danger that was solely within the knowledge of the DIOCESE.

44. The DIOCESE created a foreseeable risk of sexual abuse by [redacted] for Plaintiff, specifically, and for minor children who encountered [redacted] through his priesthood generally. Despite this, the DIOCESE: (1) failed to take necessary precautions to warn any of the Plaintiff (or anyone else) about [redacted] propensity to sexually abuse minor children entrusted to his care and counsel, (2) failed to adequately supervise [redacted], (3) failed to take appropriate remedial action when it knew or should have known of the risk created, and (4) otherwise failed to act to lessen the risk that [redacted] would sexually abuse the Plaintiff.

**COUNT ONE**
***ROMAN CATHOLIC DIOCESE OF OGDENSBURG***
**NEGLIGENCE**

45. Plaintiff incorporates paragraphs 1 through 44 of this Complaint as if set forth fully herein.

46. At all times relevant, a servant-master relationship existed between [redacted] and the DIOCESE such that the DIOCESE controlled the means and manner of the performance of [redacted] job duties, including his conduct with minor children. Based upon what it knew or should have known about [redacted] sexual interest in minor children, the DIOCESE had a duty to control [redacted] conduct during all times that he was acting, or otherwise empowered to act, as a priest, including but not limited to, controlling his actions with children he encountered by virtue of his position as a priest, like Plaintiff.

47. At all times relevant, a servant-master relationship existed between [redacted] and the DIOCESE that required the DIOCESE to act with reasonable care in the supervision of [redacted] performance of his job duties, including properly supervising [redacted] interactions with minor children, as well as [redacted] adherence to DIOCESE policies and procedures regarding minor children and misuse of his religious authority.

48. At all times relevant, a servant-master relationship existed between [redacted] and the DIOCESE that required the DIOCESE to act with reasonable care in its retention of [redacted] based upon what it knew or should have known about his unfitness for ministry, including a duty to take further action(s) such as investigation, discharge, or reassignment to a position that did not allow him access to minor children once it knew or should have known of [redacted] sexual interest in children.

49. At all times relevant hereto, the DIOCESE's own negligence as [redacted] employer created the risk of harm to Plaintiff, and, as a result, the DIOCESE had a common-law duty to make a reasonable effort to avoid further harm to others, including Plaintiff.

50. At all times relevant hereto, the DIOCESE had a duty to protect third parties, including but not limited to Plaintiff, who were within the foreseeable risk of harm created by [redacted] because that risk was not readily discoverable by Plaintiff prior to his sexual abuse, due in large part to the DIOCESE's grand scheme to ignore, misrepresent, and otherwise coverup sexual abuse allegations so they did not become known outside the DIOCESE's inner sanctum.

51. At all times relevant, DIOCESE had a duty to properly supervise and otherwise act a as a reasonable parent vis-à-vis Plaintiff, who was entrusted to the care and custody of DIOCESE *in loco parentis* at the time of the abuse.

52. At all relevant times, the DIOCESE knew, or in the exercise of reasonable care, should have known that [redacted] was unfit, dangerous, and a threat to the health, safety and welfare of those entrusted to his care, including minor children like Plaintiff.

53. Given actual and/or constructive knowledge of [redacted] propensity to sexually abuse minor children, the sexual abuse of Plaintiff was reasonably foreseeable to the DIOCESE.

54. With such actual or constructive knowledge, the DIOCESE provided [redacted] with unfettered access to children, including Plaintiff. Despite knowing that children who encountered [redacted] by virtue of his position as a priest were in the zone of foreseeable risk for sexual abuse by [redacted], the DIOCESE failed to take necessary precautions to lessen that risk.

55. At all relevant times, the DIOCESE created an environment which fostered sexual abuse of children that it had a duty to protect, including Plaintiff.

56. At all relevant times, the DIOCESE had inadequate policies and procedures to protect those entrusted to its care and protection, including Plaintiff.

57. As a result of the failure to act with reasonable care toward the Plaintiff, the DIOCESE breached one or more of the duties owed to Plaintiff and failed to protect him from the sexual abuse and lewd and lascivious acts committed by [redacted] while he was an agent and employee of the DIOCESE, at times when [redacted] was authorized by the DIOCESE to present himself as a priest and at locations in the possession and control of the DIOCESE.

58. As a direct and proximate result of the DIOCESE's failure to act with reasonable care in the discharge of one or more of its duties to Plaintiff, Plaintiff suffered severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability

to lead a normal life. He has incurred, and will continue to incur, costs for treatment. These injuries are permanent and ongoing in nature.

59. Therefore, Plaintiff [redacted] now seeks compensatory and punitive damages for Defendant DIOCESE's negligence.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests the following relief:

(1) Award Plaintiff [redacted] compensatory damages against Defendant DIOCESE in an amount to be determined at trial. The amount of damages sought by this Complaint exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

(2) Award Plaintiff punitive damages against Defendant DIOCESE in an amount to be determined at trial.

Dated: November 9, 2021
New York, New York

Ellie Silverman
ellie@elliesilvermanlaw.com
The Law Office of Ellie Silverman, PC
135 E. 57th Street
Suite 100
New York, NY 10022

-and-

Jessica D. Arbour
jessica@adamhorowitzlaw.com
Horowitz Law
110 E. Broward Blvd.
Suite 1850
Ft. Lauderdale, FL 33301
(954) 641-2100
(admitted *Pro Hac Vice*)

***ATTORNEYS FOR PLAINTIFF***