# EXHIBIT 13

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------x

In Re: 1-20-10322(CLB)
Chapter 11

The Diocese of Buffalo, N.Y.,
Debtor.

---------------------------------------------------x

**HEARING** **June 4, 2025** **Buffalo, New York**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CARL L. BUCKI
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| DEBTOR:<br>(Via telephone) | BOND, SCHOENECK & KING, PLLC<br>BY: ANDREW RIVERA, ESQ.<br>One Lincoln Center<br>Syracuse, New York 13202 |
| CREDITORS<br>COMMITTEE:<br>(Via telephone) | PACHULSKI, STANG, ZIEHL & JONES LLP<br>BY: KAREN B. DINE, ESQ.<br>780 Third Avenue<br>34th Floor<br>New York, New York 10017-2024 |
| TRANSCRIBER: | Diane S. Martens<br>dmartensreporter@gmail.com |

(Proceedings recorded by electronic audio recording, transcript produced by computer.)

APPEARANCES

| | |
|---|---|
| U.S. FIRE and PACIFIC:<br>(Via telephone) | O'MELVENY & MYERS LLP<br>BY: ADAM HABERKORN, ESQ.<br>1301 Avenue of the Americas<br>New York, New York 10019 |
| SURVIVORS:<br>(Via telephone) | THE LAW OFFICES OF STEVE BOYD PC<br>BY: STEPHEN BOYD, ESQ.<br>510 Clinton Square<br>Rochester, New York 14604 |
| SURVIVORS:<br>(Via telephone) | JEFF ANDERSON & ASSOCIATES, PA<br>BY: STACEY BENSON, ESQ.<br>366 Jackson Street<br>Suite 100<br>St. Paul, Minnesota 55101 |

**P R O C E E D I N G S**

* * *

**THE COURT:** Good afternoon. This is Judge Bucki.

We are here for what was scheduled as a motion in the case of the Diocese of Buffalo New York.

For those who are online, I remind you that local bankruptcy rules prohibit the recording or rebroadcasting of any portion of today's proceeding and I ask everyone to please identify yourselves each time that you speak. We need that to facilitate the preparation of a transcript should one be necessary or requested.

What we have today is a number of motions objecting to claims.

But let me get appearances first. I understand that there may be a request to adjourn the consideration of these motions.

Who do I have on line on behalf of the Diocese?

**MR. RIVERA:** Good afternoon, your Honor.

Andrew Rivera, Bond Schoeneck & King on behalf of the Diocese of Buffalo.

**THE COURT:** All right. Thank you.

Do I have anybody on behalf of the Committee?

**MS. DINE:** Your Honor, this is Karen Dine from

Pachulski, Stang, Ziehl & Jones on behalf of the Committee.

**THE COURT:** All right. Thank you.

Are the Parishes represented today?

(No response.)

**THE COURT:** Apparently not.

Do we have the United States Trustee appearing?

(No response.)

**THE COURT:** Anyone else wishing to note their appearances?

**MR. BOYD:** Good afternoon, your Honor, Stephen Boyd representing two members of the Committee and several other Unsecured Creditors.

**THE COURT:** Thank you.

Anyone else?

**MS. BENSON:** Good morning, your Honor Stacey Benson with Jeff Anderson & Associates on behalf of numerous sexual abuse survivors and two Committee members.

**THE COURT:** All right. Thank you.

Well let me ask. I know you're representing a number of creditors. Are you representing any of the respondents to these motions.

**MS. BENSON:** Yes, we represent several. I'd have to get the number for you exactly.

**THE COURT:** No, that's all right. I just want to know for sure that you're not only interested generally in the

case but also in the specific motions.

**MS. BENSON:** Yes.

**THE COURT:** Anyone else appearing?

**MS. BENSON:** Both Mr. Boyd and I. Sorry.

**THE COURT:** Oh, both of you are. That's fine.

**MR. BOYD:** Yes.

**THE COURT:** Anyone else appearing?

**MR. HABERKORN:** Good morning, your Honor, that is Adam Haberkorn of O'Melveny & Myers on behalf of U.S. Fire and Pacific Employers Insurance Company.

**THE COURT:** All right. We welcome you as well.

Anyone else?

(No response.)

**THE COURT:** All right.

Well, Mr. Rivera, these are your motions and I was told, though, that you might be looking for an adjournment.

What do you want to say?

**MR. RIVERA:** That's correct, your Honor.

As the Court is aware, the Catholic Family and the Committee have reached a $150 million settlement and the Diocese is committed to continuing its efforts to reach a global settlement with insurers in mediation and we think at this juncture it's appropriate to adjourn these matters so that we can focus our efforts on mediation.

I believe the Committee agrees -- Karen is on and I

would like for her to confirm -- but at this point we're seeking a 90-day adjournment of these motions.

**THE COURT:** Well, let me press you on this.

Your position, at least in the motions, is that these are people who are not even creditors in the bankruptcy case for the Diocese of Buffalo. Or at least should not be treated as creditors in the Diocese of Buffalo. If that is your continuing position, should we not clear this issue out of -- off the docket as opposed to continuing with their adjournment?

**MR. RIVERA:** So, your Honor, we have announced settlement and at this point we're starting to put together the terms of what a Plan would look like. And a lot of these Plans in other Diocese cases have a claims administrator that would have the ability to set the value of claims and we think at this point it doesn't make sense, while the parties are really focused at this critical time on mediation and resolving a Plan, to spend the money, you know, pursuing these claim objections if they will ultimately be dealt with under the terms of the Plan.

**THE COURT:** So, is it your expectation that notwithstanding *Purdue Pharma*, that you would -- you may be presenting a plan that addresses claims of creditors who have no claim by your position against the Diocese itself?

**MR. RIVERA:** So I don't want to get ahead of ourselves,

your Honor but, but, you know, there are -- I don't know if it's a *Purdue Pharma* issue, especially if we're pursuing a consensual plan where the creditors are going to be voluntarily or consensually releasing their claims. But at this point, you know, I, I don't want to, you know, say that we won't pursue these claims but I just think we are not in a position where we want to move forward right now. We think a 90-day adjournment so that the parties can focus on formulating a Plan and reaching that second level agreement with insurers are critical at this point.

**THE COURT:** All right. Who else wants to speak on this request?

**MR. HABERKORN:** Your Honor, I'd like to be heard on this, if that's okay with the Court.

**THE COURT:** Go ahead.

**MR. HABERKORN:** Yes. On that point, you raised a good point that we wanted to raise as well. The resolution of these claims which they are the prima facia case that has been presented by the Diocese, these claims are, you know, not allowable under the Bankruptcy Code. Resolution of these claims objections is in the interest of the ongoing mediation. While the Diocese has a settlement in principle with the Committee, the insurers remain in mediation, in ongoing mediation. And knowing exactly which claims we're actually negotiating over is going to be incredibly helpful

leading to a resolution of the mediation.

If the Diocese is, you know, content not moving forward with these objections, you know, perhaps the insurers would be willing to step in and litigate these objections and file appropriate motions to, to make that happen. We're happy to discuss that with the Diocese but these should be resolved in short order, especially given the deadline for a plan of, you know, at the end of September.

So, we would ask that if there's an adjournment granted, that these motions be adjourned no more than say 30 days and if the Diocese doesn't want to go forward, the insurers will step in and litigate them.

**THE COURT:** Although right now there's no order prohibiting you from proceeding with your own claim objections on these cases (extraneous noise).

**MR. HABERKORN:** Yes, that's correct.

**THE COURT:** All right.

**MR. HABERKORN:** And if that's the way you deem -- you view objections that's how we need to proceed, we'll proceed but at this time the Diocese is already made a prima facia case for the unallowability of these claims, and as far as I'm aware, no individual claimants have filed opposition or responded to them in any way. So, it's -- those should go forward.

**THE COURT:** All right. Anyone else want to speak to

this question?

**MS. DINE:** Yes, your Honor, if I may be heard.

**THE COURT:** Yes, please.

**MS. DINE:** So I'll start by saying that the Committee absolutely agrees with the Diocese's position and disagrees with the position of the insurer, that while the objections have been made, that does not resolve the objections and they are certainly going to be in dispute and the claimants are obviously going to view this differently. And part of what is being resolved through the mediation and the agreement that's been reached with the Diocese and the Committee will be the way that these claims are addressed ultimately, whether there will be a claims review process that will determine the viability of claims and also then what share of any settlement trust those claimants may be entitled to.

You know, this is not a resolution necessarily that those claims will ultimately be allowed against the trust but it's just saying that we are not going to litigate those now and spend the time and the effort and this will be part of what's mediated. To the extent that the insurers disagree with this approach and, you know, don't think that this is something that is part of the mediation or that this somehow has to be resolved, that would be something that you would take up as an issue at another day and reserve all rights as to whether the insurers can make those objections and whether

those would need to be heard now.

**THE COURT:** All right. Anyone else want to speak?

**MR. BOYD:** Yes, your Honor, may I be heard.

**THE COURT:** Yes, please.

**MR. BOYD:** So, your Honor, as mentioned earlier, we did have disagreement with the claims objections and the manner in which we disagreed was with an extensive amount of discovery demands upon the Debtor in coding documents, subpoenas for depositions. And after those were made by multiple attorneys involved in this case -- I think there was over 90 claims objections total, something in that nature -- we reached the settlement with the Catholic Family. And as the Court has noted, and we know, they will, they are struggling to figure out exactly how they're going to fund that settlement. And we trust that they will.

But to diminish estate assets by involving the estate in all of those depositions, in responding to 90 discovery demands where there might be 70 or 80 different perpetrator files involved, that is a massive amount of cost to the estate and, you know, U.S. Fire could have filed its own motion. We don't even know if they have any of the claims to which the Diocese has objected. So I don't know what standing they have to object to the adjournment and I don't think they're part of this motion.

But I represent a number of people who absolutely

believe that the claims objections would be overruled but at this point since we've reached a settlement with the Diocese, why spend those assets when all of our efforts should be focused, laser focused, on the continuing mediation with the more reasonable insurance carriers.

**THE COURT:** Well let me ask you this question. I mean, are you not somewhat in a dilemma here? You have a set -- it's been represented to the Court and publicly that as far as a settlement -- there's been an agreement, let's call it, you can call it a settlement, $150 million to be contributed by the Diocese. But if you add on an additional 28 claimants who have no -- and I'm not, first of all, I'm going to be clear. I'm not making any ruling or suggestion of a ruling as to these claim objections, I haven't heard any oral argument. I haven't heard the responses so I'm not making any ruling today one way or the other.

But if the Diocese is correct -- and that's a big "if" -- if the Diocese is correct that these, I think it was 28, whatever the exact number is, if these 28 or so claimants have absolutely no claim again the Diocese and yet you allow them to go and recover through the plan, are you not diluting the recovery for the other 800 and some claimants and reducing what they will ultimately get by way of this settlement because you're adding on additional claims.

**MR. BOYD:** Well, thank you for your question, your

Honor.

First of all, as I mentioned at the top, we vehemently disagree with the claims objections and I'll tell you why.

And the Court in a prior hearing cited the independence of religious orders under Canon Law but also under Canon Law, the Diocese or the local Bishop has authority over all priests that practice the Catholic faith in the geography of that Bishop. And so we were preparing with an expert to make our case to the court to show that in fact the Diocese did have some control. So, the premise of your question is one that I can't agree with to start with because I believe that the claims objections would ultimately be overruled in most of the cases.

But to your question, your Honor -- and I am very much learning bankruptcy law because as a personal injury lawyer, my focus on every case prior to this matter has been what is the damage and what is the value of the case. But I understand in bankruptcy we are not looking at that. We are looking at what is the assets of the estate because, frankly, your Honor, if I were to take ten of our cases to state court and the average settlement with the Diocese, I don't know the numbers. But if the average settlement is "A", I could go to state court and get "A" times 5. But I can't do that in bankruptcy because we're focused on the assets of the estate. So ultimately I don't know if it really matters how many

claimants there are.

We believe that we have reached a deal with the estate -- with the Debtor that is fair and equitable considering the seriousness of the claims and the amount of assets available to the Estate to pay these claims.

**THE COURT:** Well, I mean, if -- I mean, here again, we're looking at positions that everyone has taken. If you look at the claims, which would be the position that you've -- you've taken or your firm has taken with respect to many of the claims -- not all -- and you add on the demands that you're making or allegations of damages, that's probably an amount that far exceeds the available funds. And by the same token, the Diocese is taking the position at to these 28 or so claims that there's no liability. Maybe they're right, maybe they're not right.

But doesn't it create somewhat of a conflict? I mean if you're, if you're representing some people who may be or perhaps should be looking elsewhere to one of the religious orders, are not you reducing the funds available for your other clients and does that pose a potential conflict of interest?

**MR. BOYD:** I think it doesn't, your Honor, because these, as I said, we believe these are good faith claims against the Debtor.

I'll give you an example. The Diocese has an

independent review board. We have cooperated with the investigators for that independent review board for the last six years. When they are investigating a priest and they want to talk to a survivor, we have asked our client would they be willing to talk and in about half of the cases, maybe a little more, they are willing to talk to the Diocesan investigators. The very last one that I was involved with had to do with a Jesuit priest, a priest who taught at Canisius high school, that was a Diocesan investigator investigating a matter for the local Bishop with regard to whether or not this person should remain a priest. So there are crossovers.

And when I say we vehemently oppose the claims objections, I'm not just saying it to say it, I believe that we would be successful in bringing forth evidence to this Court to show that the claim is valid because the Diocese was involved. And all of this started before we reached that agreement. So in reaching that agreement, your Honor, I was negotiating on behalf of all my clients. The Diocese was negotiating on behalf of themselves dealing with all of the claimants so we did not start any conflict of interest.

The only potential issue would be if claims objections were sustained, we do not intend to go back and say to the Diocese, okay, now it's less than 150 million because 150 million doesn't cover it that's because we're in

bankruptcy and not in state court. 150 million is not enough to bring justice to half of the claimants but we acknowledge that it is the most that we can get out of this Debtor so I don't believe there's any conflict of interest.

**THE COURT:** Mm-mm. Well, all right. I hear your argument.

Anyone else have a comment?

**MR. RIVERA:** Your Honor, I think on behalf of the Diocese I just have a couple other remarks in our, you know, the Diocese perspective on some of your questions.

I just want to re-clarify that what we're seeking here, we're not withdrawing the claim objections, the Diocese is not agreeing to at this point withdraw. We're -- we don't have a plan on file and we're simply asking for an adjournment.

And what I would say to the Court is that the 90-day adjournment that we're looking for is not by accident. This Court set a September 1st deadline to file a plan. If we take 90 days from today, that puts us right after that. I'm not saying we're going to be ready to move forward with claim objections or that at that point we'll be ready to resolve or withdraw or that that Plan, if it's filed timely, will be the ultimate plan that we're going to proceed with towards confirmation but I think the 90-day adjournment that we're requesting here is narrowly tailored for the parties to

address mediation and Plan formulation and try to push this case towards a resolution here. I hear -- it seems, your Honor, that perhaps you're looking ahead and we might get to where you're thinking but even if these claims are allowed for the settlement trust purposes, that allowance does not dictate what the distribution under a Plan would be. It could be $0.

So whether it's resolving these claims through a claims of reprocess in the plan or if we do have to proceed with claim objections, I just wanted to advise the Court that we're not abandoning these claim objections at this moment but simply seeking a 90-day adjournment.

And with respect to the insurers possibly raising their own claim objections, we echo both the Committee's and with Mr. Boyd's comments that we're not sure exactly their standing at this point. We reserve all rights to object to those claim objections or respond in any way if they are made in the future.

**THE COURT:** All right. Anyone else want to speak in?

(No response.)

**THE COURT:** All right. Well, first of all, it's obvious that we're not ready to go forward today on this particular set of objections. And I'm going to repeat myself for purposes of emphasis.

I'm not making any ruling on this. The commonality on

these objections that are before me today is the argument that the liability rests not with the Diocese but with an independent entity such as a religious order who may have operated a school or a parish and that they would be beyond the control of the Diocese and, therefore, the Diocese has no liability. I'm making no ruling whatsoever because I have not heard the arguments on it as to whether or not that is an appropriate defense or not an appropriate defense. The requests I have is to adjourn this for three months. I will adjourn it for three months but it is without prejudice to any interested party who has standing to file an objection in this court similar to the objections that I'm going to grant the adjournment.

So, for example, if any of the insurers that have, that want to get a determination on this so that they ascertain the scope of their potential coverage obligations, they can bring a motion. Whether they have standing, I'm not ruling on. All I'm saying is they can file a motion if they so wish. And at that point I'll address all the many issues that might relate to it.

But I'll grant your request for an adjournment without prejudice to anyone else raising a further issue if they feel it is appropriate. And I will address the issues related to that new motion when it is brought, whether it be on the merits, whether it be on the standing question, whether it be

on a timeliness question, any issue that might be raised, I'll address it then.

But I'll grant your adjournment. I'm granting the adjournment primarily because of my own pressure that I'm putting on everyone. This case has been with us for more than five years and I've already spoken to that question in my decision from January where I stated that I was concerned about the length and about the delay in providing remedies to parties who have legitimate claims. And at that same order I appointed an additional mediator -- now the sole mediator -- to go and try to put pressure on the parties to work out a settlement.

And so the deadline, of course, is September for that, for a plan to be filed and I understand that if these motions will face aggressive or let's say diligent response there may be a time expenditure in dealing with the issues on these particular claim objections that perhaps should be more focused on settlement negotiations and the finalization of a proposed plan. So, I understand that. And so I'll give you the adjournment. But, again, it is without prejudice.

If any party with standing wishes to raise their own objection, perhaps even on the identical grounds that are raised by the Diocese in these motions, we'll give you a hearing time and we'll give it consideration. And so we're open to that being raised by anyone.

But for now, I hear your argument and concern that you're working for a drafting of a plan by September and so I'll give you an adjournment.

Mr. Rivera, how are you for the first week of September?

(No response.)

**THE COURT:** Did we lose you, Mr. Rivera?

**MR. RIVERA:** No. I'm sorry, your Honor, I am here.

So the first week of September, let me just. I think September 4th works for me if it works for the Committee and the other parties.

**THE COURT:** All right. I know that people with children in school may be pressed but I don't know if that affects anybody. September 4th, the whole day is open and we can certainly do that. How does that work for other people?

**MR. BOYD:** That's fine for me, your Honor.

**THE COURT:** All right. Thank you.

Does it work for the Committee?

**MS. DINE:** Your Honor, that's fine for the Committee.

**THE COURT:** All right. How about 2:00 in the afternoon?

**MR. BOYD:** That's great.

**MR. RIVERA:** That works for me.

**MS. DINE:** That's fine, your Honor.

**THE COURT:** That's the 90 days that you want. In fact, it's three months from today. So I'll put it on, I'll schedule this for 2:00 in the afternoon on September 4th.

And, again, it's without prejudice to anyone doing, bringing their own motion, it's also without prejudice to seeking a further adjournment if you can establish grounds.

**MR. BOYD:** Thank you, your Honor.

**THE COURT:** Or if you present -- if your proposed plan addresses these issues in a way that's consistent with Section 1129 of the Bankruptcy Code. All right.

**MR. RIVERA:** Understood.

**THE COURT:** Okay. Anything else this afternoon.

(No response.)

**THE COURT:** All right. With that, I thank you all.

We stand in recess.

We'll hear this matter again on September 4th at 2:00.

Thank you, all.

(Counsel says thank you.)

(WHEREUPON, proceedings adjourned.)

* * *

**CERTIFICATE OF TRANSCRIBER**

In accordance with 28, U.S.C., 753(b), I certify that this is a true and correct record of proceedings from the official audio recording of the proceedings held in the United States Bankruptcy Court for the Western District of New York before the Honorable Carl L. Bucki on June 4, 2025.

S/ Diane S. Martens

Diane S. Martens
Transcriber