UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| | Case No. 23-60507 (PGR) |
| The Roman Catholic Diocese of Ogdensburg, New York, | Chapter 11 |
| Debtor. | |
| | **Hearing: Oct. 1, 2026, 2 p.m.** |

**CENTURY'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF PLAN DOCUMENTS, IN THE ALTERNATIVE, ADJOURN THE OBJECTION DEADLINE FOR DISCLOSURE STATEMENT HEARING UNTIL IT IS PRODUCED**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................................................................................... 1

I. The Plan Proponents offer no excuse for withholding the Allocation Protocol or continuing to withhold other Plan Documents Bankruptcy Rule 3017 ........................................................................................ 3

II. The Plan Proponents' Assertion that Century Lacks Standing is Frivolous .......... 5

A. The Committee Ignores the Significant Impact of *Kaiser* and its Holding ................................................................ 5

B. The Plan Proponents Ignore that Supreme Court Rebuffed the "Issue-by-Issue" Evaluation for Insurer Standing .................... 6

C. Allowance of Proofs of Claim Lacking Merit WouldAlter and Impose Obligations on Insurers ............................................... 7

D. Article III and Party-in-Interest Standing "are Effectively Coextensive" in Tort Driven Bankruptcies, Not Two Separate Requirements as the Committee Contends ...................... 9

E. The Committee's Prudential Standing Concerns are Superseded Where Congress has Expressly Conferred Standing by Statute .......................................................... 9

F. *Kaiser* Conferred Broad Standing to Insurers Including to Object to Claims ........................................................... 12

III. The Plan Proponents' Request for Substantive Relief Without Notice or Motion Is Procedurally Improper and Factually Misplaced. ................................ 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
321 B.R. 147 (D.N.J. 2005) ........ 12

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 10

*Gen. Instrument Corp. of Del. V. Nu-Tek Elecs. & Mfg.*,
197 F.3d 83 (3d Cir. 1999) ........ 10

*In re Amatex Corp.*,
755 F.2d 1034 (3d Cir. 1985) ........ 11

*In re Boy Scouts of Am.*,
35 F.4th 149 (3d Cir. 2022) ........ 11

*In re Boy Scouts of Am.*,
642 B.R. 504 (Bankr. D. Del. 2022) ........ 6

*In re Congoleum*,
2005 WL 712540 (D.N.J. Mar. 24, 2005) ........ 14

*In re Congoleum*,
414 B.R. 44 (D.N.J 2009) ........ 15

*In re Congoleum*,
426 F.3d 675 (3d Cir. 2005) ........ 13, 14

*In re Const. Supervision Servs., Inc.*,
No. 12-00569-8-RDD, 2012 Bankr. LEXIS 4564 (Bankr. E.D.N.C. Oct. 1, 2012) ........ 13

*In re Diocese of Camden*,
2022 Bankr. LEXIS 2244 (Bankr. D.N.J. Aug. 12, 2022) ........ 14

*In re Ferretti*,
128 B.R. 16 (Bankr. D.N.H. 1991) ........ 17

*In re Global Indus. Technologies, Inc.*,
645 F.3d 201 (3d Cir. 2011) ........ 2, 7, 9, 10

*In re Metrocraft Pub. Servs., Inc.*,
39 B.R. 567 (Bankr. N.D. Ga. 1984) ........ 13

*In re Roman Cath. Diocese of Albany*,
No. 23-10244 Bankr. LEXIS 2185 (Bankr. N.D.N.Y. 2025) ........ 8

*In re Roman Cath. Diocese of Syracuse*,
665 B.R. 866 (Bankr. N.D.N.Y. 2024) ........ 8

*In re: DBMP LLC,*
2026 WL 2905154 n. 135 (Bankr. W.D.N.C. Sept. 25, 2026) ........ 14

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*,

*Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1996) ........ 4, 13

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*,
602 U.S. 268 (2024) ........ passim

*United Food & Com. Workers Union v. Brown Grp., Inc.*,
517 U.S. 544 (1996) ....................................................................................................10

**Statutes**

11 U.S.C. § 1109(b)....................................................................................................passim

11 U.S.C. § 1125(b)....................................................................................................13, 14

**Other Authorities**

Brief for Debtor-Side Respondents,
2024 WL 328749 (Jan. 24, 2024)....................................................................................8

Brief for Respondents Official Committee of Asbestos Personal Injury Claimants and
Future Claimants' Representative,
2024 WL 328747 (Jan. 24, 2024)....................................................................................8

Briefs in Opposition on Petition for a Writ of Certiorari,
2023 WL 5822576 (Sep. 5, 2023) ..................................................................................8

Briefs in Opposition on Petition for a Writ of Certiorari, 2023 WL 5822579,
(Sep. 5, 2023) ...............................................................................................................8

Casazza, Kiernan & Bennett, *The Future of Prudential Barriers in Bankruptcy Appeals Post-'Kaiser Gypsum'*, NAT'L L.J. (Aug. 14, 2024) ........................................................12

D. Dick, *The Chapter 11 Efficiency Fallacy*,
2013 B.Y.U. L. REV. 759 (2014) ....................................................................................7

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, as successor to Indemnity Insurance Company of North America ("Century"), submits this reply in further support of the motion to compel (Dkt. No. 1405) pursuant to Federal Rules of Bankruptcy 3017 and 9014(c).

## PRELIMINARY STATEMENT

1. Nothing in the text of Rule 3017 or the commentary suggests that the notice period can be gamed by the proponent of a plan by withholding essential portions of a plan of reorganization until after the date disclosure statement objections are due. When, as here, proponents of a plan withhold key portions of a plan of reorganization the purpose of the Rule is frustrated. Although the Committee belatedly produced the Allocation Protocol, it is continuing to withhold the Plan Documents essential to understanding the plan including the plan document that contains the terms that govern a claimant pursuing abuse claim in litigation, the handling of the claim and the determination of liability and the amount. These terms of the plan impact Century's contact rights or have the potential to do so.

2. The Committee offers no excuse for withholding the Allocation Protocol until the eve of the hearing on this motion or its continued withholding of the other Plan Documents. In the absence of a substantive response, they resort to the red herring argument that Century's motion is "litigating plan confirmation." But the failure to comply goes to a threshold disclosure issue of whether key aspects of the plan have been withheld.

3. The Committee's objection that they have belatedly produced the Allocation Protocol—on the eve of this motion being heard—should be disregarded because its production was untimely and the Committee is still withholding the Plan Documents.

4. The Plan Proponents' narrow interpretation of *Truck Insurance Exchange v.*

*Kaiser Gypsum Co.*, 602 U.S. 268 (2024) ("Kaiser")—that it only addressed party-in-interest portion of the bankruptcy standing analysis—is wrong. *Kaiser*'s holding is unambiguous: in *Kaiser*, the Supreme Court settled that "[a]n insurer with financial responsibility for a bankruptcy claim is . . . a 'party in interest'" under 11 U.S.C. § 1109(b), and Rule 3007 of the Federal ants parties-in-interest the right "to 'appear and be heard on any issue' in a Chapter 11 proceeding." 602 U.S. at 272, 277.

5. The Plan Proponents misstate the significant impact of *Kaiser* and are simply wrong about the holding. Century certainly satisfies Article III standing and prudential standing, in addition to Section 1109(b) party-in-interest standing that has been confirmed under *Kaiser.* In reaching its holding, the Supreme Court quoted the Third Circuit's rationale for conferring insurer standing—noting that where a proposed plan "allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed." *In re Global Indus. Technologies, Inc*. 645 F.3d 201, 204 (3rd Cir. 2011).

6. Century has a concrete and personal financial stake in the plan. Century has offered to defend claims alleging abuse within its policy periods subject to a reservation of rights, and has incurred costs associated with cases for allowance is sought under the plan. The fact that Century has incurred, and is incurring, expenses associated with the claims and the Committee contends that they face potential liability if there is a verdict and determination of coverage gives them standing to object to these claims under *Kaiser*.

7. Finally, the Plan Proponents' request for an order effectively precluding discovery is both procedurally improper and factually misplaced. An objection must respond to the relief sought in the motion to which it relates, not raise new relief requested. The relief requested also

has nothing whatsoever to do with the relief sought by Century or how it did so. Century repeatedly tried to obtain these portions of the plan without burdening the Court.

8. For these reasons and those described below, the Court should enter an order adjourning he date of the objection deadline for the disclosure statement for three days to allow time in light of the belated production of the Allocation Protocol and permit the remaining Plan Documents to be produced and considered by the parties.

## ARGUMENT

### I. The Plan Proponents offer no excuse for withholding the Allocation Protocol or continuing to withhold other Plan Documents Bankruptcy Rule 3017

9. Bankruptcy Rule 3017 requires 28 days' notice ***after*** the filing of plan of reorganization for a hearing to approve a disclosure statement. The purpose of Rule 3017 is to ensure notice of the terms of a plan of reorganization to allow parties in interest a meaningful opportunity to consider, confer and respond. Nothing in the text of Rule 3017 or the commentary suggests that the notice period can be gamed by the proponent of a plan by withholding essential or controversial portions of a plan of reorganization until after the date disclosure statement objections are due. When, as here, proponents of a plan withhold key portions of a plan of reorganization the purpose of the Rule is frustrated.

10. The Plan Proponents' belated produced the Allocation Protocol and Trust Agreement and are continuing to withhold the other Plan Documents including:

(i) **Litigation Claimant Agreement.** This is the plan document that contains the terms that govern a claimant pursuing abuse claim in litigation, the handling of the claim and the determination of liability and the amount. These terms of the plan impact Century's contract rights or have the potential to do so.

(ii) **Abuse Claim Release Agreement.** This is the plan document that provides the terms and conditions of the release with respect to the abuse claims and insurance coverage. These terms impact Century's contact rights or have the potential to do so.

(iii) **List of Assumed Contracts**. This is the plan document that identifies the contracts that are reassigned under the plan and to whom. Century's contracts of insurance impose obligations on the Diocese with respect to the continued defense, investigation and settlement of claims. To the extent that the terms of the plan provide for continued litigation of the claims and selectively defer the discharge of litigated claims against Debtor, the Debtor's contractual obligations are continuing in nature making it essential to know what contracts of reinsurance are being reassigned to assess the impact of the plan on Century's contract rights.

(iv) **DOO Trust Note.** This is a promissory note from the Diocese which includes a schedule for the payment of interest in the event of delayed payment.

**(v) Non-Monetary Commitments.** These are the child protective measures which the Diocese and Committee have represented form an essential part of the plan.

11. In their opposition, the Plan Proponents offer no excuse for withholding the Allocation Protocol or continuing to withhold other Plan Documents. In the absence of a substantive response, they resort to the red herring argument that Century motion is litigating plan confirmation. The failure to comply goes to a threshold disclosure issue of whether the plan of reorganization has been produced or that key aspects of the plan have been withheld.

12. A disclosure statement is the primary vehicle for informing parties of their rights and treatment under Rule 3017(d). The notice period imposed by Bankruptcy Rule 3017 does not start upon the filing of a partial plan or a placeholder plan. Vague or missing treatment and valuation processes mean the statutory notice accompanying the solicitation is legally

inadequate. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co*., 81 F.3d 355, 362 (3d Cir. 1996) ("[D]isclosure requirements are crucial to the effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated.").

## II. The Plan Proponents' Assertion that Century Lacks Standing is Frivolous

13. Under 11 U.S.C. § 1109(b) and Fed. R. Bankr. P. 3017**,** creditors, equity security holders, the U.S. Trustee, and other "parties in interest" have **s**tatutory standing to object to a Chapter 11 disclosure statement. The statute does not limit "party in interest" to those with a direct financial claim against the debtor; it also includes parties with a legal or equitable interest in the case. As a contractual counterparty, Century has a legally cognizable stake in the outcome under § 1109(b) certainly with respect to whether the disclosure statement describes a plan that is patently not confirmable. *See In re Roman Catholic Archdiocese of Baltimore*, No. 23-16969-MMH, 2026 Bankr. L. Rep. (BNA) ___ (Bankr. D. Md. Aug. 4, 2026) (denying disclosure statement as describing plan that is patently unconfirmable after considering insurer objections)> .

### A. The Committee Ignores the Significant Impact of *Kaiser* and its Holding

14. The Plan Proponents suggests that the *Kaiser* opinion has no impact. But *Kaiser* made the basis for standing clear: insurers in bankruptcy cases "***stand alone in carrying the financial burden***," while "Debtors nor the Claimants have an incentive to limit the post[-]confirmation cost of defending or paying claims." 602 U.S. at 282 (emphasis added). The Supreme Court expressly held that "Insurers . . . with financial responsibility for bankruptcy claims are parties in interest," and as such, Section 1109(b) grants them "a voice in the proceedings" to "appear and be heard on any issue" in the bankruptcy. 602 U.S. at 281, 277.

15. The bankruptcy plan in *Kaiser* was recognized as "insurance neutral[]," meaning the parties acknowledged (at least on paper) that insurers' rights were fully preserved. 602 U.S. at 283–84. The insurance neutrality doctrine was rooted in case law relating to the "prudential" standing requirements.[1] Pre-*Kaiser*, the insurance neutrality doctrine aimed to answer the question of "whether and how the particular proposed Plan affects [an insurer's] prepetition and post-petition obligations and exposure." 602 U.S. at 284.

16. But *Kaiser* changed how these requirements apply. Despite the insurance neutrality finding, the Supreme Court unanimously held that the insurer still had standing to object because the plan adversely impacted "insurers with financial responsibility for bankruptcy claims." *Id.*

**B. The Plan Proponents Ignore that Supreme Court Rebuffed the "Issue-by-Issue" Evaluation for Insurer Standing**

17. In *Kaiser*, as here, the insurers defended under a reservation of rights and there was not a determination of coverage for claims for which liability had yet been found, nor could there be. *See id.* at 274-75.

18. The Court characterized the "insurance neutrality" approach as "conceptually wrong." *Id.* at 283. For the Supreme Court, "the insurance neutrality doctrine is too limited in its scope" because "[i]t zooms in on the insurer's prepetition obligations and policy rights." *Id.* That approach the Court found "wrongly ignores all the other ways in which bankruptcy proceedings and reorganization plans can alter and impose obligations on insurers." *Id.*

---

[1] *See In re Boy Scouts of Am.*, 642 B.R. 504, 667 (Bankr. D. Del. 2022) ("Debtors are correct that 'insurance neutrality' is a standing concept that appears to have arisen in the context of mass tort cases in order to prevent insurance companies from objecting to confirmation."); *In re Diocese of Camden*, 2022 Bankr. LEXIS 2244, at *12 (Bankr. D.N.J. Aug. 12, 2022) (finding, pre-*Kaiser*, that "because ***standing is 'evaluated on an issue-by-issue basis***,' the Insurers have standing to raise issues as to the Plan only to the extent it affects their rights and obligations, and lack standing to object to confirmation as to issues that affect only third parties") (internal citations omitted) (emphasis added).

19. The Supreme Court focused instead on the "capacious" text of Section 1109(b) itself. The Court noted that Section 1109(b) is unambiguous and was aimed to create an "expansive definition" that would bring "a broad range of individual and minority interests" into Chapter 11 proceeding cases to prevent "dominant interests to control the restructuring process." *Id.* at 280 (quoting D. Dick, *The Chapter 11 Efficiency Fallacy*, 2013 B.Y.U. L. REV. 759, 774-75 (2014)); *see also id.* 280-81 ("In short, § 1109(b) was 'designed to serve ... the policies of inclusion underlying the chapter 11 process.'" (quoting 7 Collier on Bankruptcy ¶1109.02)).

20. The Supreme Court resolved in *Kaiser* that Section 1109(b) is not dependent on "a plan-specific rule," which is in essence what "prudential standing" limitations were designed to address. The Court held that the proper inquiry into whether an insurer can "appear and be heard on any issue" is focused on whether an insurer's rights could ***potentially*** be impacted as a result of the bankruptcy case—not how a particular plan actually treated the insurer. 602 U.S. at 272 ("Section 1109(b) asks whether the reorganization proceedings ***might*** directly affect a prospective party, not how a particular reorganization plan actually affects that party.").

21. The Court made the analysis for determining standing clearer for entities including insurers who "stand alone in carrying the financial burden" while "Debtors nor the Claimants have an incentive to limit the post[-]confirmation cost of defending or paying claims." 602 U.S. at 282.

**C. Allowance of Proofs of Claim Lacking Merit WouldAlter and Impose Obligations on Insurers**

22. The Supreme Court recognized that a plan could impact insurers in multiple ways—it "can impair an insurer's contractual right to control settlement or defend claims," "abrogate an insurer's right to contribution from other insurance carriers," "violat[e] . . . the debtor's duty to cooperate and assist," or "impair the insurer's financial interests by inviting

fraudulent claims." *Id.* at 281. In particular, the Supreme Court noted that "[w]here a proposed plan 'allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed.'" *Id.* at 282 (quoting *In re Global Indus. Techs., Inc*., 645 F.3d 201, 204 (3d Cir. 2011)). Thus, it held that "Insurers such as Truck with financial responsibility for claims" are parties in interest under Section 1109(b) and are entitled to "a voice in bankruptcy proceedings." 602 U.S. at 284-85.

23. In the briefings before the Supreme Court in *Kaiser*, the Respondents argued that insurers must meet issue-by-issue Article III/injury-in-fact standing requirements, as well as prudential standing to object to a plan's confirmation.[2] The Supreme Court nonetheless dispelled any risk of insurer-litigants raising another person's legal rights, *i.e.*, the primary concern for prudential standing under case law. The Court noted the argument that there may be a "parade of horribles" in allowing "peripheral parties" with interest in the proceedings to derail a reorganization. *Kaiser,* 602 U.S. at 284. The Court found that such a concern of "peripheral parties" is not present for the insurers like Truck, who have a significant financial stak*e* in the proceedings and is essentially *the only party with any incentive to question any improper plan provisions* that may impact them directly. *Id*. at 284.

24. The only support the Committee cites to the contrary are two bankruptcy court decisions that have yet to be reviewed by the district court or the Second Circuit (or any Article III courts). *In re Roman Cath. Diocese of Syracuse*, 665 B.R. 866 (Bankr. N.D.N.Y. 2024); *In re Roman Cath. Diocese of Albany*, No. 23-10244, 2025 Bankr. LEXIS 2185 (Bankr. N.D.N.Y.

[2] *See, e.g.*, Brief for Debtor-Side Respondents, 2024 WL 328749, at *44 (Jan. 24, 2024); Brief for Respondents Official Committee of Asbestos Personal Injury Claimants and Future Claimants' Representative, 2024 WL 328747, at *35-39 (Jan. 24, 2024); *see also* Briefs in Opposition on Petition for a Writ of Certiorari, 2023 WL 5822579, at *17-20 (Sep. 5, 2023) and 2023 WL 5822576, at *18-20 (Sep. 5, 2023).

2025).

### D. Article III and Party-in-Interest Standing "are Effectively Coextensive" in Tort Driven Bankruptcies, Not Two Separate Requirements as the Committee Contends

25. As the Third Circuit Court held in *In re Global Indus.,* Article III and party-in-interest standing "are effectively coextensive," and thus satisfying party-in-interest status means that Article III "injury in fact" has been met. 645 F.3d at 210–11 (stating that "injury-in-fact requirement ... [is] very generous" and is met with an "identifiable trifle of injury" or when a party has "a personal stake in the outcome of [the] litigation").

26. An insurer has shown "injury in fact" if the plan or other action potentially may impair its contractual rights or monetary interests. Claims allowance and valuation procedures adversely impact insurers by subjecting them to inflated liability for claims, which imposes an "entirely new set of administrative costs, including the investigative burden of finding any meritorious suits in the haystack of potentially fraudulent ones." *In re Glob. Indus.,* 645 F.3d at 214. As the Third Circuit found in *In re Glob. Indus.,* the ancillary financial burden "will be enormous, even if [Insurers] never pay a single dollar of indemnity," and the injury is "hardly too speculative" to afford party in interest status. *Id.* The Insurers will face these high financial burdens if they are not permitted to address invalid claims in this Bankruptcy Court.

27. The Supreme Court in *Kaiser* recognized the various forms of impairments that insurers suffer in almost every tort driven bankruptcy to grant them party-in-interest status. *See* 602 U.S. at 281. The Court found that the financial impact a bankruptcy proceeding has upon insurers is more than enough to confer Article III standing.

### E. The Committee's Prudential Standing Concerns are Superseded Where Congress has Expressly Conferred Standing by Statute

28. By any measure, prudential standing concerns are met because, under *Kaiser*,

insurers have party-in-interest standing under Section 1109(b). By its terms, Section 1109(b) specifies that any "party in interest" in a Chapter 11 case "may raise and may appear and be heard on ***any issue***." And where, as here, "Congress has expressly conferred standing by statute, prudential standing concerns are superseded."[3]

29. In any event, prudential standing is met for the same reasons insurers have satisfied the Section 1109(b) standard. Like in *Kaiser*, insurers carry a significant financial burden for the claims and have a practical stake in whether meritless claims are allowed, whereas neither the "Debtor[] nor the Claimants have incentive to limit the post[-]confirmation cost of defending or paying claims." 602 U.S. at 282.

30. The lack of incentive (other than from insurers) to challenge inflated costs, awards, or meritless claims in general is telling why standing is appropriate. Because "no one [else] has an incentive to pursue" a challenge to claims lacking merit "other than the insurers slated to provide coverage," *Global Indus. Techs*., 645 F.3d at 214, the insurers have a practical stake and are directly impacted. *In re Congoleum*, 426 F.3d 675, 687 (3d Cir. 2005) (finding insurer standing appropriate where "as a practical matter ... it is highly unlikely that any of the parties other than the insurers or their attorneys" would bring challenge).

31. Any suggestion that "Insurers are not 'persons aggrieved' to whom appellate standing extends" also falls aside in the face of *Kaiser* and Third Circuit precedent. *Global Indus.*, 645 F.3d at 214. The Third Circuit has explained that "person aggrieved" appellate standing is "standing to appeal the *substance* of the bankruptcy court's decision"—which is

[3] *Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg*., 197 F.3d 83, 87 (3d Cir. 1999); *see also Bennett v. Spear*, 520 U.S. 154, 164–66 (1997) (statute that authorized "any person" to commence suit rendered irrelevant any inquiry into whether the plaintiff came within the "zone of interests" protected by the statute); *United Food & Com. Workers Union v. Brown Grp., Inc*., 517 U.S. 544, 557–58 (1996) (stating that prudential standing "is a judicially self-imposed limit ... not a constitutional mandate," and thus, Congress may "abrogate" it).

"distinct from standing to appeal the bankruptcy court's decision regarding bankruptcy standing." *Id.* at 209. Even "in the bankruptcy context," the court "resolv[es] bankruptcy standing issues on appeal without reaching the question of bankruptcy appellate standing." *Id.* at 209-10, n.23; *see also In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985) (addressing *inter alia* a would-be intervenor's "party-in-interest" standing without reaching the question of whether he had bankruptcy appellate standing). Thus, when insurers are denied standing to "sue, or to intervene, or to object," they "may obviously appeal such a determination." *Id.*

32. Insurers who satisfy standing under *Kaiser* clearly meet the persons aggrieved standard. *See, e.g., In re Boy Scouts of Am.*, 35 F.4th 149, 157 (3d Cir. 2022) (Appellants are "persons aggrieved" if they can show that the bankruptcy court's order "diminishes their property, increases their burdens, or impairs their rights."). Not only are their contractual rights diminished by allowance of non-meritorious claims, but also, as the Supreme Court recognized in *Kaiser*, a plan can "impair the insurer's financial interests by inviting fraudulent claims," while the insurers "stand alone in carrying the financial burden" and "Debtors nor the Claimants have [any] incentive to limit the post[-]confirmation cost of defending or paying claims." 602 U.S. at 281–82.

33. With insurers' practical stake in the bankruptcy proceedings, courts have also conferred insurers broad party-in-interest standing (akin to the *Kaiser* decision) to uphold the integrity or fairness of the proceedings as a whole.

34. For example, in *In re Congoleum*, the court held that insurers have parties in interest standing to challenge the *general fairness* of the plan under Section 1129(a), as they "have practical stake in the fundamental fairness of the [p]lan as a whole," including "interrelated issues of good faith, classification, § 524(g), and feasibility." 2005 WL 712540, at

*4 (D.N.J. Mar. 24, 2005).

35. Similarly, the Third Circuit extended insurers' standing to even challenge a debtor's choice of insurance counsel to preserve the integrity of the proceedings that impacts the insurers. *See In re Congoleum*, 426 F.3d at 685-687 (3d Cir. 2005) (granting insurers standing to challenge retention of debtor's insurance counsel as "an issue based on procedural due process concerns that implicate the integrity of the bankruptcy court proceeding as a whole"); *see also Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 159 n.1 (D.N.J. 2005) (confirming that insurers who are parties in interest can raise "all issues pertinent to plan confirmation"). And in fact in *In re Congoleum Corp.*, having dealt with challenges to insurers' standing to object to a plan multiple times, the court upheld insurers' rights and stated that "[t]his is the seventh time a court . . . has found that the insurers have standing to challenge the Plan due to ***their fundamental stake*** in the outcome of the bankruptcy proceedings." 414 B.R. 44, 55–57 (D.N.J. 2009) (emphasis added). Thus, the *Kaiser* decision essentially follows a long line of courts conferring insurers' standing in mass tort bankruptcy proceedings.

### F. *Kaiser* Conferred Broad Standing to Insurers Including to Object to Claims

36. The Supreme Court addressed head-on the "prudential" standing in tort driven bankruptcy cases and emphatically rejected it as a barrier to insurer participation.[4] In *Kaiser*, the Court unanimously rejected the "insurance neutrality" doctrine, the prudential limitation that lower courts have used to prevent any consideration of insurers' objections on the. Instead, the Court relied on the "capacious" language of Bankruptcy Code and conferred insurers broad and

[4] *See* Casazza, Kiernan & Bennett, *The Future of Prudential Barriers in Bankruptcy Appeals Post-'Kaiser Gypsum'*, NAT'L L.J. (Aug. 14, 2024) (noting that in rejecting the insurance-neutrality doctrine, the Supreme Court's decision in *Kaiser* casts doubt on other prudential barriers to bankruptcy appeals, such as equitable mootness and restrictive appellate standing, a textual doctrines which may soon be curtailed or abolished).

greater participation in reorganization proceedings because such insurers bare the financial responsibility for bankruptcy claims. This holding ensures that insurers like Truck, who have long been silenced in chapter 11 proceedings, will now have a "voice" to be heard in these proceedings on the merits. This also ensures that the Insurers have standing to be heard on the allowance of claims.

37. Separate and apart from the inadequacy of notice under Rule 3018, it is impossible to assess whether disclosure is adequate prior to the objection deadline without the Plan Documents addressing these issues having been filed. Absent the Plan Supplement, the Plan lacks material "information relevant to the risks posed to creditors" under the Committee's Plan. *See In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). As a matter of law, it is impossible for the Court to assess whether disclosure is adequate without the Plan Documents addressing these issues.

38. Section 1125(b) provides that a disclosure statement may not be approved unless it contains "adequate information," which in pertinent part is defined as "information of a kind, and in sufficient detail, . . . [to] enable a hypothetical investor" of the relevant class "to make an informed judgment about the plan."[5] The provision of adequate information in a disclosure statement is a key requirement of the Bankruptcy Code.[6] "In determining the adequacy of information under § 1125(a)(1), the bankruptcy court reviews the information on a case by case basis. A disclosure statement should "provide the creditors with an accurate basis for determining their position and their ability to make an informed decision with regard to the

[5] 11 U.S.C. § 1125(b).

[6] *See Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("the importance of full and honest disclosure cannot be overstated."); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) ("[W]e cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'").

acceptance or rejection of the [p]lan."[7]

39. Plan proponents bear the burden of establishing that the disclosure statement contains "adequate information" within the meaning of Section 1125 of the Bankruptcy Code.[8] To meet the standard of "adequate information," "a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."[9]

## III. The Plan Proponents' Request for Substantive Relief Without Notice or Motion Is Procedurally Improper and Factually Misplaced.

40. Finally, the Plan Proponents' request for an order effectively precluding discovery is both procedurally improper and factually misplaced.

41. "An objection must respond to the relief sought in the motion to which it relates, not raise new relief requested." *See, e.g., In re: DBMP LLC,* 2026 WL 2905154, at *24 n. 135 (Bankr. W.D.N.C. Sept. 25, 2026) ("An objection must respond to the relief sought in the motion to which it relates, not raise new relief requested") (collecting rules of bankruptcy and civil procedure and case law). The Plan Proponents neither filed a motion nor gave notice.

42. Barring the filing of a motion to seek relief for 14 days after allowing 30 days to respond to discovery will preclude any discovery response prior to confirmation hearing impairing a fundamental right without even a notice and motion.

43. The relief requested also has nothing whatsoever to do with the relief sought by Century on its motion under Rule 3017. Moreover, while Century's motion is not a discovery motion, Century contacted the Plan Proponents prior to moving for relief as is described in its

---

[7] *In re Const. Supervision Servs., Inc.*, 2012 Bankr. LEXIS 4564, at *5 (Bankr. E.D.N.C. Oct. 1, 2012) (citations omitted).
[8] *See, e.g.*, *In re Am. Capital Equip.*, 688 F.3d 145, 155 (3d Cir. 2012) ("The debtor has the burden of proving that a disclosure statement is adequate . . . .").
[9] *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991).

opening brief. Century repeatedly tried to obtain this document without burdening the Court. *See* Affidavit of Tancred Schiavoni, dated September 5, 2026. Dkt. No. 1405-1..

## CONCLUSION

WHEREFORE, Century respectfully requests that the Court enter an order adjourning the date of the objection deadline for the disclosure statement for three days to allow time in light of the belated production of the Allocation Protocol and to permit the remaining Plan Documents to be produced and considered by the parties.

Dated: September 29, 2026

By: */s/ Tancred Schiavoni*
**O'MELVENY & MYERS LLP**
Tancred V. Schiavoni, Esq.
Michael M. Klotz, Esq.
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Email: tschiavoni@omm.com
mklotz@omm.com

**CLYDE & CO US LLP**
Marianne May
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: (973) 210-6700
Facsimile: (973) 210-6701
E-mail: marianne.may@clydeco.us

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*