UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Ogdensburg, New York,<br>Debtor. | Case No.: 23-60507 (PGR)<br><br>Chapter 11 |

**REPLY OF THE LONDON MARKET INSURERS TO THE UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING THE DISCLOSURE STATEMENT [ECF NO. 1448]**

Certain Underwriters at Lloyd's, London, and Certain London Market Companies (collectively, "LMI")[1] submit this reply to the *United States Trustee's Objection to Debtor's Motion for Entry of Order (A)(I) Approving Disclosure Statement, (II) Approving Solicitation Packages and Distribution Procedures, (III) Approving the Forms of Ballots and Establishing Procedures for Voting on Joint Plan, (IV) Approving the Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, (VI) Approving Procedures for Temporary Allowance and Estimation of Claims for Voting Purposes; (B) Establishing Procedures for the*

[1] The Certain London Market Companies are: Catalina Worthing Insurance Ltd f/k/a Hartford Financial Products International (as Part VII transferee of Excess Insurance Co. Ltd. and London & Edinburgh Insurance Co. Ltd., as successor to London & Edinburgh General Insurance Co. Ltd.), RiverStone Insurance UK Limited (as successor in interest to Terra Nova Insurance Co. Ltd. and Sphere Drake Insurance Co. PLC), Yasuda Fire & Marine Insurance Co. (UK) Ltd., River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, which was itself the legal successor to: (i) St Paul Reinsurance Company Limited (formerly known as Mercury Reinsurance Company (UK) Limited and St Paul Fire & Marine Insurance Company (UK) Limited) and (ii) certain business of St Paul Travelers Insurance Company Limited (formerly known as St Katherine Insurance Company Limited, St Katherine Insurance Company Plc and St Paul International Insurance Company Limited)), Cavello Bay Reinsurance Limited (as successor by merger to the interests of Harper Insurance Limited, formerly known as Turegum Insurance Company), and Dominion Insurance Co. Ltd.

*Filing and Administration of Rapid Prepackages Chapter 11 Cases for Additional Debtors; and (C) Granting Related Relief Statement* [ECF No. 1448] ("Objection").[2] LMI respectfully state as follows:

## I. PRELIMINARY STATEMENT

The United States Trustee ("UST") incorrectly asks the Court to withhold approval of the Disclosure Statement, in part, because the protections the Plan gives the Settling Insurers purportedly violate *Harrington v. Purdue Pharma L.P.*[3] This tired argument has not fared well because the Settling Insurer Injunction is predicated on the express statutory relief afforded by section 363(f); section 1123(b)(6), which the Supreme Court considered in *Purdue*, is irrelevant. In the *Diocese of Rochester* case, Judge Warren overruled such objections "on the merits with prejudice," approved the sale of the LMI' and other insurers' policies free and clear of any claims and interests, and issued an injunction protecting each settling insurer.[4] Judge Glenn overruled the same objection in the *Diocese of Rockville Centre*.[5] The Court need not reach the UST's *Purdue* arguments at this stage. They are confirmation objections predicated upon Insurance Settlement Agreements and Sale Orders not yet before the Court, removing any possibility of

---

[2] The Objection is directed to the Debtor's motion at ECF No. 1398. "Plan" means the *Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Ogdensburg, New York and Additional Debtors* [ECF No. 1396], and "Disclosure Statement" means ECF No. 1395. Capitalized terms not defined in this reply have the meanings given in the Plan. Citations to "Obj. ¶ __" refer to the paragraphs of the Objection.

[3] *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

[4] *See In re Diocese of Rochester*, No. 19-20905-PRW (Bankr. W.D.N.Y.) ("*Rochester*"), ECF Nos. 3169 (UST's sale objection), 3199 (LMI' response), 3265 ¶¶ 3, 13, 19 (Interstate sale order), 3266 ¶¶ 3, 13, 19 (LMI sale order).

[5] *See In re Roman Catholic Diocese of Rockville Ctr.*, No. 20-12345 (MG) (Bankr. S.D.N.Y.) ("*Rockville Ctr.*"), ECF No. 3411 (Nov. 18, 2024) (memorandum opinion approving insurance settlements and policy buybacks under sections 105(a) and 363 and Rule 9019 and overruling the UST's objections).

patently unconfirmable argument, and they can be taken up at the sale and confirmation hearings. If the Court is inclined to address such arguments now, however, they fail for the reasons below.

*Purdue* held that section 1123(b)(6) does not authorize a plan to discharge claims against a non-debtor without consent.[6] The Settling Insurer Injunction rests on a different and express grant of authority: section 363(f), which permits the sale of estate property free and clear of third-party interests, with or without the holder's consent. The UST concedes the point as to the core of the injunction, acknowledging that section 363(f) "will protect the Settling Insurers from Abuse Claims asserted under the policies they purchase."[7] However, the UST ignores the fact that the "Purchased Property"[8] includes not only insurance policies, but also all Related Insurance Claims, all of which are property of the Debtors' and the Additional Debtors' estates; hence, all such property may be sold pursued to section 363(f). Its remaining argument, that the injunction also reaches extra-contractual and other related claims, fails because such claims are part of the purchased property. Furthermore, no abuse claimant receives a distribution without signing the Abuse Claim Release Agreement, which separately releases the Settling Insurers in exchange for

[6] *Purdue*, 603 U.S. at 227.

[7] Obj. ¶ 25.

[8] The term "Purchased Property" means the Subject Insurance Policies and the Related Insurance Claims. The term "Related Insurance Claims" means all Claims of any Person relating to the Purchased Property, including: (a) all Claims and enforceable rights, held by any Person, against any LMI Entity, relating to any Abuse Claim, including equity and bad faith, including for (i) indemnity and payment of any Abuse Claim, including all Coverage Claims; (ii) any Extra-Contractual Claim, including any LMI Entity's (a) failure or refusal to provide insurance coverage for any Claim under any Subject Insurance Policy, (b) tortious or wrongful Claims handling, including the failure or refusal to timely compromise and settle any Claims against any Person pursuant to any Subject Insurance Policy; (c) failure or refusal to reasonably settle Claims; and (d) the interpretation or enforcement of the terms of any Subject Insurance Policy; (b) all Extra-Contractual Claims against any LMI Entity not included in the foregoing section (A); and (c) all other Claims against any LMI Entity that are under or relate to the Subject Insurance Policies or any Abuse Claim.

that payment.[9] Nothing about these provisions makes the Plan unconfirmable, let alone, "unconfirmable on its face."[10] Such objection should be summarily overruled.

## II. BACKGROUND

The Plan proposes to fund a Trust with $83,375,000, of which $38,375,000, about 46%, comes from four Settling Insurers.[11] Each Settling Insurer will buy back the Purchased Property from the Diocese and the Additional Debtors under section 363 "free and clear of all Claims, Interests, and other rights of any nature."[12] The buybacks will be approved by Sale Orders including Settling Insurer Injunctions wholly consistent with such free and clear sale; the Plan only ratifies such Settling Insurer Injunctions.[13] Moreover, no Class 4 Claimant will receive a distribution without signing the Abuse Claim Release Agreement, which releases the Settling Insurers from Abuse Claims and Barred Claims, "including Extra Contractual Claims and Direct Action Claims."[14]

LMI' Insurance Settlement Agreement ("LMI Settlement Agreement") will be presented for approval by separate motion for the Court to approve.[15] The Plan's structure tracks the one the *Diocese of Rochester* court approved. There, the diocese moved under sections 105(a) and 363 and Rule 9019 to approve policy buybacks with LMI and other insurers.[16] Based on *Purdue*, the

---

[9] Plan §§ 1.1.5, 4.4.

[10] Obj. ¶ 13.

[11] Obj. ¶ 8.

[12] Plan § 5.2.

[13] Plan §§ 1.1.160, 5.1, 11.1.2, 12.5.

[14] Plan §§ 1.1.5, 2.3.4.l, 4.4; Obj. ¶ 15.

[15] *See* Plan §§ 1.1.103, 1.1.160, 11.1.6.

[16] *Rochester*, ECF No. 3072.

UST objected.[17] Judge Warren overruled the objections and entered orders approving each agreement, authorizing the sale of policies free and clear under section 363(f) and issuing, as will be requested here, a supporting settling insurer injunction entirely consistent with the free and clear sale under section 363.[18] The Diocese of Rochester's plan, in turn, ratified those injunctions.[19]

## III. ARGUMENT

### 1. <u>THE UST HAS NOT SHOWN THAT THE PLAN IS PATENTLY UNCONFIRMABLE</u>

"Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage."[20] A court departs from that rule only when the plan is patently unconfirmable, meaning its defects "could not be overcome by creditor voting results" and "concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing."[21] The UST's own authorities set that high bar, and the UST does not clear it.

The UST's objection rests largely on documents it has not seen: the Insurance Settlement Agreements and Sale Orders, which it predicts will likely provide similarly broad relief. A prediction about an unfiled document cannot render a plan unconfirmable on its face. Whether the Court may issue the Settling Insurer Injunction is, moreover, a question for the Court to address at the hearing to approve the Insurance Settlement Agreements, not for the disclosure statement hearing. As LMI explained in *Diocese of Rochester*, the UST's "attempt to conflate an analysis of whether the Plan may be confirmed with whether the Debtor is exercising its reasonable

---

[17] *Id.*, ECF No. 3169.

[18] *Id.*, ECF Nos. 3265 ¶¶ 3–4, 13, 19, 3266 ¶¶ 3–4, 13, 19.

[19] *Id.,* ECF No. 3379 ¶ 24.

[20] *In re Am. Capital Equip., LLC*, 688 F.3d 145, 153–54 (3d Cir. 2012).

[21] *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987).

business judgment" in the sale should be rejected.[22] Judge Warren did exactly that. He overruled the UST's objections to the sales "on the merits with prejudice" while preserving every party's right "to object to confirmation of any chapter 11 plan."[23] The same sequence should apply here. The UST has reserved its right to object to the sale motion and Sale Orders once they are filed, and approving the Disclosure Statement takes none of that right away.

## 2. <u>*PURDUE* DOES NOT APPLY TO A SALE OF ESTATE PROPERTY UNDER SECTION 363(f)</u>

### A. <u>*Purdue* Decided Only Whether Section 1123(b)(6) Authorizes Nonconsensual Third-Party Releases in a Plan.</u>

The UST contends that section 363(f) "cannot be used as an end run around" *Purdue*.[24] But *Purdue* never addressed section 363(f). The Supreme Court expressly "[c]onfin[ed]" itself "to the question presented" and held "only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants."[25] The plan proponents there relied on section 1123(b)(6), which permits a plan to "include any other appropriate provision not inconsistent with the applicable provisions of this title." The Supreme Court held that this catchall did not "endow [the] bankruptcy court with the . . . power" to discharge claims against non-debtors.[26] It did not hold that injunctions protecting non-debtors are unlawful *per se*. On the contrary, the Supreme Court recognized that Congress may authorize them, as it did in section 524(g).[27] The Supreme Court likewise recognized that section 105(a) "alone cannot justify"

---

[22] *Rochester*, ECF No. 3199.

[23] *Id.*, ECF Nos. 3265 ¶¶ 3–4, 3266 ¶¶ 3–4.

[24] Obj. ¶ 29.

[25] *Purdue*, 603 U.S. at 227.

[26] *Id.* at 218; *see id.* at 214–24.

[27] *Id.* at 222.

nonconsensual third-party releases, because it serves only to "'carry out' authorities expressly conferred elsewhere in the code."[28] That is consistent with the settled rule that the bankruptcy court's equitable powers "must and can only be exercised within the confines of" the Bankruptcy Code.[29] The question under *Purdue* is therefore whether a specific provision of the Code authorizes the relief. Here, one does.

### B. <u>The Settling Insurer Injunction Will Rest on Sections 363 and 105(a), Not Section 1123(b)(6).</u>

The Plan cites section 1123 only for the purpose of ratifying the injunction;[30] ratification does not change the injunction's source of authority. The Plan recites that the Sale Orders will include Settling Insurer Injunctions based on sections 105(a) and 363.[31] Similarly, the *Diocese of Rochester* sale orders identified those sections, together with Bankruptcy Rules 2002, 6004, and 9019, as the statutory predicates for the same relief.[32] As the settling insurers explained in the *Diocese of Rochester* case, ratification "does not implicate *Purdue* any more than the Sale Order itself did; Section 363 provides the requisite statutory authority for the Settling Insurer Injunction in each instance."[33] The *Diocese of Rochester* order approving the sale of LMI' policies provided that no confirmed plan "shall conflict with or derogate from" it.[34] This Plan does the same.[35]

---

[28] *Id.* at 216 n.2.

[29] *Law v. Siegel*, 571 U.S. 415, 421 (2014).

[30] Plan § 12.5.

[31] Plan §§ 1.1.160, 5.2.

[32] *Rochester*, ECF Nos. 3265 ¶ B, 3266 ¶ B.

[33] *Rochester*, ECF Nos. 3288 & 3199.

[34] *Id.*, ECF No. 3266 ¶¶ 24–25.

[35] Plan § 5.1.

Courts addressing the question since *Purdue* have repeatedly agreed that it does not reach relief grounded in section 363. In *Hopeman*, the court rejected as "novel" the argument that *Purdue* limits sale injunctions, "considering that injunctions and releases have long accompanied 'free and clear' sales in bankruptcy," and held that "[n]othing in [the *Purdue*] opinion suggests that the protections afforded a buyer pursuant to § 363, including the ability of the purchaser to obtain the asset free of the claims of the debtor's creditors, were intended to be abrogated."[36] In *Bird Global*, the district court likewise explained that *Purdue* "is otherwise distinguishable in that the debtor there relied on § 1123(b)(6)," whereas the debtors before it relied on "§§ 105, 363, 1123(b)(3)(A), 1123(b)(4), and Federal Rule of Bankruptcy Procedures 9019."[37] The UST's attempt to distinguish *Hopeman* in a footnote fails.[38] *Hopeman* did not rely on section 524(g); it rested on section 363 and on the attachment of claimants' rights to the sale proceeds.[39] That reasoning applies fully here, where the Settling Insurer Injunction is given in exchange for the Settling Insurers' purchase of the Purchased Property free and clear under section 363(f).[40] The UST's other point, that the *Hopeman* injunction was limited to claims under the policies, only confirms the rule. In *Hopeman*, the debtor sold only its insurance policies back to the insurers under section 363, and the insurers were "released and discharged from all claims related to the policies."[41] The injunction there protected what the insurers bought. So does the Settling Insurer

---

[36] *In re Hopeman Bros., Inc.*, 667 B.R. 101, 108 (Bankr. E.D. Va. 2025) (denying stay pending appeal of order approving insurance policy buyback and injunction).

[37] *Wright v. Bird Global, Inc.* (*In re Bird Global, Inc.*), No. 24-cv-23086, ECF No. 35, at 4–5 (S.D. Fla. Aug. 21, 2024) (denying stay pending appeal of confirmation order containing channeling injunction and bar order).

[38] Obj. ¶ 30 n.3.

[39] *Hopeman*, 667 B.R. at 106–08.

[40] Plan § 12.5.

[41] *Hopeman*, 667 B.R. at 104; *see id.* at 108 ("It is undisputed the insurance policies at issue are owned by the Debtor.").

Injunction here. Here the Purchased Property includes not only the Settling Insurer Policies but also the Related Insurance Claims, which include the Extra-Contractual Claims.[42] An injunction protecting the Settling Insurers from those claims does no more than give effect to the sale of what they are purchasing.

## 3. SECTION 363(f) AUTHORIZES THE SETTLING INSURER INJUNCTION

### A. Section 363(f) Cuts Off Interests in the Policies, and the Injunction Enforces the Sale.

Section 363(f) permits a debtor to sell estate property "free and clear of any interest in such property of an entity other than the estate."[43] The Second Circuit applied that authority to an insurance buyback nearly four decades ago. In *MacArthur*, which is controlling here, it held that the bankruptcy court "had authority to issue the injunctive orders" protecting Manville's settling insurers "pursuant to its power to dispose of a debtor's property free and clear of third-party interests and to channel such interests to the proceeds of the disposition."[44] The Plan does the same thing here. The Purchased Property is sold free and clear, and abuse claimants' rights attach to the proceeds in the Trust. The Additional Debtors' rights in the Purchased Property, which will be property of their own estates, is similarly sold.[45] The *Diocese of Rochester* court approved the same structure, vesting LMI with "all right, title, and interest of the Diocese and the DOR Signatories" in the Purchased Property, free and clear of the interests of "other named or additional insureds, or those with direct action rights against the Purchased Property."[46]

---

[42] Plan §§ 1.1.151, 1.1.153.

[43] 11 U.S.C. § 363(f).

[44] *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 90 (2d Cir. 1988); *see id.* at 92–93.

[45] Plan §§ 1.1.61, 1.1.151, 5.2, 11.1.9; *see* 11 U.S.C. § 541(a)(1).

[46] *Rochester*, ECF No. 3266 ¶ P.

The injunction does not itself cut off anyone's rights. The sale does that, and the injunction "merely prevent[s] third parties whose claims have been cut off by a Section 363(f) sale from asserting such claims."[47] Courts "have often permitted a narrowly tailored release and injunction in a [§ 363(f)] sale order to ensure that the purchaser of the debtor's property (as well as the debtor's property being sold) is insulated from claims that creditors might have against the debtor and the property being sold."[48] Such injunctions "are relatively common with [§ 363(f)] sale orders."[49] The *Diocese of Rochester* court made the same finding in approving LMI' buyback: issuing the injunction under section 105(a) "is essential to give effect to the sale of the Purchased Property to the London Market Insurers and this Order's approval of such sale free and clear of Interests pursuant to Section 363(f)."[50] Section 105(a) and Rule 9019 thus do not "extend" section 363(f), as the UST contends. They implement it.

**B. <u>The Claims the UST Identifies Are Interests in the Purchased Property.</u>**

The UST acknowledges that section 363(f) reaches "Abuse Claims asserted under the policies," but contends that it does not reach "*in personam* claims that are not asserted under the purchased policies," such as Related Insurance Claims. The Second Circuit does not draw that line. It has held that *in personam* claims "can be 'interests' when they flow from a debtor's ownership of transferred assets," endorsing a "broader definition that encompasses other

---

[47] *Rochester*, ECF No. 3199.

[48] *In re Patriot Place, Ltd.*, 486 B.R. 773, 821–22 (Bankr. W.D. Tex. 2013).

[49] *In re Sunland, Inc.*, 2014 WL 7011747, at *5–6 (Bankr. D.N.M. Dec. 11, 2014) (approving insurance policy buyback with channeling injunction).

[50] *Rochester*, ECF No. 3266 ¶ S; ECF No. 3265 ¶ S; *In re Metex Mfg. Corp.*, 2014 WL 3544409, at *3 (Bankr. S.D.N.Y. June 23, 2014) (same finding in order approving sale of insurance policies).

obligations that may flow from ownership of the property."[51] Other courts agree that "interest" reaches *in personam* claims "connected to, or aris[ing] from, the property being sold."[52]

The claims the UST identifies meet that test. Extra-Contractual Claims are claims against a Settling Insurer Releasee for bad faith, unfair claims practices, and similar conduct "with respect to" an Insurance Policy or a claim covered by one.[53] The other Related Insurance Claims are claims that "arise out of, relate (directly or indirectly) to, or connect in any way with the Insurance Policies."[54] The Diocese Settling Parties' rights in Related Insurance Claims, which include Extra-Contractual Claims, are part of the Purchased Property.[55] The Insurance Policies at issue are the policies LMI is buying back.[56]

Under New York law, moreover, the claims an abuse claimant could bring against LMI over their handling of Abuse Claims derive from the Diocese's coverage. The insurer's duty of good faith in settling claims "is an implied obligation derived from the insurance contract" and runs to the insured; in *Pavia* itself, the injured plaintiff pursued the bad-faith claim as the insureds' assignee.[57] There is no private right of action for unfair claim settlement practices.[58] An injured party may sue an insurer directly only after obtaining a judgment against the insured, which remains unsatisfied, and then only by "step[ping] into the shoes of the tortfeasor" under the policy,

[51] *In re Motors Liquidation Co.*, 829 F.3d 135, 155 (2d Cir. 2016).

[52] *In re Christ Hosp.*, 502 B.R. 158, 171–72 (Bankr. D.N.J. 2013).

[53] Plan § 1.1.86.

[54] Plan § 1.1.153(c).

[55] Plan §§ 1.1.151, 1.1.153(b).

[56] Plan §§ 1.1.101, 1.1.167.

[57] *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 451–53 (1993).

[58] *Rocanova v. Equitable Life Assurance Soc'y of U.S.*, 83 N.Y.2d 603, 614–15 (1994).

asserting a claim that is "no less but also . . . no greater" than the insured's own.[59] Each of those claims are part of the Purchased Property. The Second Circuit has held that such claims are "inseparable from [the debtor's] own insurance coverage" and may be enjoined as part of a buyback, whether they sound in tort or contract.[60]

Similarly, in the *Diocese of Rochester* case, the UST contended that the settling insurer injunction went "beyond claims against the Purchased Property" because it reached any action that "relates to" that property, and that such third-party claims "do not belong to the Debtor and thus cannot be sold pursuant to section 363."[61] Judge Warren overruled those objections and approved the sale of the Purchased Property free and clear of "all Interests of all Persons," including "Related Insurance Claims, Direct Action Claims, and any other Claims arising from or related in any way to an Abuse Claim or any portion of the Purchased Property," Extra-Contractual Claims, and the interests of "other named or additional insureds, or those with direct action rights against the Purchased Property."[62] That ruling follows *MacArthur*, which rejected the argument on which the UST's out-of-circuit authorities rest: that a co-insured's rights under the debtor's policies are "separate and distinct" from the debtor's. The Second Circuit held instead that an insured vendor's rights were "completely derivative of Manville's rights as the primary insured" and could be enjoined as part of the buyback.[63] Notably, the only co-insureds here will also seek the Court's approval of the sale of the Purchased Property. The UST's arguments are not only wrong, they rely on completely inapposite facts.

---

[59] *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 353–55 (2004).

[60] *MacArthur*, 837 F.2d at 92–93; *cf. In re Quigley Co.*, 676 F.3d 45, 56–57 (2d Cir. 2012).

[61] *Rochester*, ECF No. 3169 at 34–35.

[62] *Rochester*, ECF No. 3266 ¶¶ 3, P, Q, 13, 19.

[63] *MacArthur*, 837 F.2d at 92–93.

Nor does the asserted tension among the Plan's definitions make the Plan unconfirmable.[64] The scope of the Settling Insurer Injunction will be set by the Court at the sale hearing. Notably, the Settling Insurer Releasees are protected "solely in their respective capacities as such," and reinsurers only "with respect to a Settling Insurer Policy."[65]

## 4. THE PLAN AND THE INSURANCE SETTLEMENT AGREEMENTS IMPOSE NO NONCONSENSUAL THIRD-PARTY RELEASES

The Insurance Settlement Agreements contain no nonconsensual third-party releases. The releases in the Insurance Settlement Agreements are releases among the parties to those agreements, the approval of the Insurance Settlement Agreements would make them binding on the Diocese and the Additional Debtors.[66] The *Diocese of Rochester* court approved LMI' agreement on the same basis, approving the "settlement and mutual release of Claims" among the diocese, its signatories, and LMI under Rule 9019.[67]

The UST characterizes section 12.10 as a "deemed release" by every Class 4 Claimant.[68] But no Class 4 Claimant receives a distribution without signing the Abuse Claim Release Agreement, which expressly releases the Settling Insurers from Abuse Claims and Barred Claims, "including Extra Contractual Claims and Direct Action Claims."[69] A claimant who signs a release

---

[64] *See* Obj. ¶ 27.

[65] Plan § 1.1.168; *see also id.* § 1.1.164 (successors protected only to the extent their liability is "derivative of the liability of the Settling Insurer").

[66] Plan § 12.11.

[67] *Rochester*, ECF No. 3266 ¶¶ 4, 16.

[68] Obj. ¶¶ 22, 28, 31.

[69] Plan §§ 1.1.5, 4.4; Obj. ¶ 15.

in exchange for payment has affirmatively agreed to it. That is a consensual release, which *Purdue* expressly left untouched.[70]

Independent of any release, the Settling Insurer Injunction rests on section 363(f), which permits a sale free and clear if any one of its five conditions is met. The sale will be approved only after notice and a hearing, at which any abuse claimant may object.[71] As the *Diocese of Rochester* court held, those who received notice and did not object "are deemed to have consented to the relief granted herein, pursuant to Section 363(f)(2) of the Bankruptcy Code."[72] Those who object remain subject to section 363(f), which do not depend on consent at all.[73]

## 5. <u>THE COURT HAS JURISDICTION TO ISSUE THE SETTLING INSURER INJUNCTION, WHICH IS ESSENTIAL TO THE PLAN</u>

A bankruptcy court "has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate."[74] The Diocese's insurance policies are part of that *res*.[75] And the Settling Insurer Injunction is essential to the settlements that monetize them, which provide $38,375,000, about 46% of the Trust's funding.[76] Judge Warran found that LMI "would

---

[70] *See Purdue*, 603 U.S. at 226.

[71] 11 U.S.C. § 363(b)(1); Fed. R. Bankr. P. 2002(a)(2), 6004(a), (c).

[72] *Rochester*, ECF Nos. 3266 ¶3, 3265 ¶ 3; *In re Christ Hosp.*, 502 B.R. at 174 ("Given adequate notice, failure to object to a sale has been found to constitute consent . . . to a 'free and clear' sale of the nonobjector's interests in property being sold."); *In re CLST Enter., LLC*, No. 24-10596, 2025 WL 951298, at *6 (Bankr. S.D.N.Y. Mar. 27, 2025) ("A failure to object generally constitutes consent to sale for the purposes of [section 363(f)(2)]."); *In re Sugarloaf Holdings, LLC*, 640 B.R. 270, 280 (Bankr. D. Utah 2022) (failure to object "may constitute consent" where notice is constitutionally adequate; "the majority view is that consent is implied").

[73] *Rochester*, ECF No. 3266 ¶ Q; *see MacArthur*, 837 F.2d at 93 (relying on section 363(f)(4)).

[74] *Quigley*, 676 F.3d at 56 (quoting *Johns-Manville Corp. v. Chubb Indem. Ins. Co.* (*In re Johns-Manville Corp.*), 517 F.3d 52, 66 (2d Cir. 2008)).

[75] *MacArthur*, 837 F.2d at 91–92; *Rochester*, ECF No. 3266 ¶ P.

[76] Obj. ¶ 8.

not consummate the Sale Transaction or pay the Settlement Amount in the absence of such an injunction," and that the injunctive provisions "are an integral part of the Plan and are essential to its implementation."[77] Claims that would unravel those settlements directly affect the *res*. Thus, the Court has jurisdiction to enjoin them.

## 6. <u>COURTS IN THIS CIRCUIT HAVE REJECTED THE SAME ARGUMENT IN OTHER DIOCESAN CASES</u>

The Objection repeats arguments the UST has made, and lost, in other New York diocesan cases.[78] In *Rockville Centre*, Judge Glenn approved the diocese's insurer settlements and policy buybacks under sections 105(a) and 363 and Rule 9019 over the UST's objection that they violated *Purdue* and exceeded section 363(f), then confirmed a plan funded by the buyback proceeds.[79] In *Rochester*, Judge Warren overruled the UST's *Purdue* objection "on the merits with prejudice" and approved the LMI' and other insurers' buybacks free and clear, observing that the structure was not an attempt to avoid *Purdue*. If anything, it's very faithful to what the majority said.[80] The UST identifies nothing that distinguishes the buybacks here from those.

## CONCLUSION

WHEREFORE, LMI respectfully request that the Court (i) overrule the Objection; (ii) approve the Disclosure Statement; and (iii) grant such other and further relief as is just and proper.

---

[77] *Rochester*, ECF No. 3266 ¶¶ R–S, 19.

[78] *See Rochester*, ECF No. 3288 at 1–2 & Ex. A (chart comparing the UST's objections in Rochester and Rockville Centre).

[79] *Rockville Ctr.*, ECF No. 3411 (memorandum opinion approving settlements and buybacks); ECF No. 3465 (confirmation order).

[80] *Rochester*, ECF Nos. 3265 ¶¶ 3, 19, 3266 ¶¶ 3, 19.

Dated: October 9, 2026

Respectfully submitted,

*/s/ Russell W. Roten*
Russell W. Roten (*pro hac vice*)
Jeff D. Kahane (*pro hac vice*)
Nathan Reinhardt (*pro hac vice*)
Timothy W. Evanston (*pro hac vice*)
**Skarzynski Marick & Black LLP**
333 S. Grand Avenue, Suite 3550
Los Angeles, California 90071
Telephone: (213) 721-0650
rroten@skarzynski.com
jkahane@skarzynski.com
nreinhardt@skarzynski.com
tevanston@skarzynski.com

Ashley I. Storey (NY Bar No. 6025210)
**Skarzynski Marick & Black LLP**
One Battery Park Plaza, Fl. 32
New York, New York 10004
Telephone: (212) 820-7700
astorey@skarzynski.com

Catalina Sugayan (*pro hac vice*)
Yongli Yang (*pro hac vice*)
**CLYDE & CO US LLP**
30 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 635-7000
Facsimile: (312) 635-6950
catalina.sugayan@clydeco.us
yongli.yang@clydeco.us

*Counsel for London Market Insurers*