**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK,<br><br>Debtor. | Case No. 23-60507 (PGR)<br><br>Chapter 11 Case |

**CENTURY'S SUPPLEMENTAL OBJECTION TO APPROVAL OF THE DISCLOSURE STATEMENT BASED ON ADMISSIONS IN DISCOVERY RESPONSES**

In the responses that the Debtor has provided to Interrogatories about the Plan, it admits what Century argues in its Disclosure Statement Objection—that the Plan separates the rights and obligations of the insurance contracts, assigns the rights to payment, and extinguishes the corresponding contract obligations. *See The Roman Catholic Diocese of Ogdensburg, New York's Objections and Responses to Century's First Set of Interrogatories* (the "Interrogatory Responses"), a copy of which is attached hereto as **Exhibit A**.

In bankruptcy, the *cum onere* ("with the burden") principle mandates that contracts that pass through a bankruptcy must pass through in their entirety—taking both their benefits and their burdens—and cannot keep the advantages while rejecting the obligations. The term comes from Latin and is often described as the "all-or-nothing" rule. This prevents a debtor from "taking the good without the bad"—for example, keeping rights while avoiding corresponding duties.

The Debtor concedes in Interrogatory Response Nos. 10 and 11 that: "the Plan does not contemplate, and would not result in, any Century Insurance Policy(ies) being assigned to the Trust; rather, the Plan assigns to the Trust the Diocese's and Additional Debtors' Insurance Claims against Non-Settling Insurers." "Insurance Claims" is defined as the right of the Diocese and Additional Debtors to payment from the Non-Settling Insurers; it does not include any of the corresponding continuing obligations under the insurance contracts. *See* Plan, § 1.1.98.

A debtor cannot split a contract's benefits from its obligations. This "separation" violates black letter law because under the Bankruptcy Code, any such transfer or assignment of a contract must be made *cum onere*. *See In re Am. Home Mortg. Holdings, Inc.*, 402 B.R. 87, 98 (Bankr. D. Del. 2009).

In numerous ways, the Debtor's Interrogatory Responses further confirm that the Plan eviscerates the obligations of the insureds and impairs Insurers' contract rights.

- The only post-Effective Date commitment the Diocese identifies is that the Diocese Settling Parties "shall use reasonable efforts to satisfy any Post-Effective Date Preconditions to Coverage." *See* Interrogatory Response Nos. 10 & 11.
- Except in the limited respect of Post-Effective Date Preconditions to Coverage, the Diocese and Additional Debtors "shall have no duty or obligations whatsoever, to the Trust with respect to the Insurance Claims against Non-Settling Insurers." *See* Interrogatory Response No. 11 (referring Century to Section 8.2.3 of the Plan).
- The Plan essentially extinguishes contribution rights through the Channeling Injunction. The Insurer Contribution Claims are channeled to the Trust and extinguished with no provision for the Trust to pay anything. *See* Interrogatory Response No. 15.
- There is no opportunity for a Non-Settling Insurer to seek reimbursement for uncovered claims. Instead, the Diocese cites Section 6.1 of the Plan, which states that nothing in the Plan "shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim. . . ." *See* Interrogatory Response No. 12.

Further, the Interrogatory Responses of the Debtor confirm that the Plan provides no mechanism for complying with the duties and obligations of the contracts. Each time Century asked, the Diocese failed to identify any mechanism in the Plan or Plan Documents for satisfying claims held by Insurers.

- When asked to identify any mechanism for calculating and paying Non-Settling Insurers, including Insurer Contribution Claims and Insurer Reimbursement Claims, the Diocese referred Century generally to the Plan and Plan Documents and cited to Sections 2.3 (Classes of Claims), 8.8 (Trust Pursuit of Insurance Claims Against Non-Settling Insurers), and 12.6 (Litigation/Settlement of Certain Claims) of the Plan. *See* Interrogatory Response No. 7.

- When asked how Insurer Contribution Claims, Insurer Reimbursement Claims, and indemnity claims will be calculated and paid, and whether funds will be reserved to pay such claims, the Diocese referred Century generally to the Plan and Plan Documents and cited to Sections 2.3 (Classes of Claims), 8.2.3 (Insurance Claims Assignment), 8.8 (Trust Pursuit of Insurance Claims Against Non-Settling Insurers), and 12.6 (Litigation/Settlement of Certain Claims) of the Plan. *See* Interrogatory Response No. 8.

- When asked how the Reduction Amount is calculated and whether and how a Non-Settling Insurer may obtain affirmative recovery of defense costs, the Diocese again referred Century generally to the Plan and Plan Documents and cited to Sections 2.3 (Classes of Claims), 8.8 (Trust Pursuit of Insurance Claims Against Non-Settling Insurers), and 12.6 (Litigation/Settlement of Certain Claims) of the Plan. *See* Interrogatory Response No. 9.

None of the provisions cited by the Diocese provide for payment of Insurers' claims.

The Diocese asserts that the Plan is insurance neutral. But the Interrogatory Responses highlight that the insurance neutrality language is illusory. Century asked for all facts supporting the contention that the Plan does not impair the Non-Settling Insurers' rights. In response, the Debtor identified no facts. *See* Interrogatory Response No. 17. It responded that "the Plan states repeatedly that it shall not impair Non-Settling Insurers' rights or defenses under their respective Insurance Policy(ies)." *Id.* But the preservation language in Section 8.8.2(e) is expressly "subject to Section 8.8.4." And Section 8.8.4 provides that nothing in Section 8.8.2 (No Impact on Non-Settling Insurers) shall impair the effectiveness of any provisions of the Plan, including the discharge, release, and injunction provisions. Those provisions impair the Non-Settling Insurers' rights. Despite the Debtor's efforts to claim neutrality, the exceptions swallow the rule.

Finally, the channeling injunction that the Plan calls to be issued is sought under section 105 and not section 363(f). Under section 363(f), claims by non-debtors against the non-debtor Settled Insurers would attach to the proceeds and be payable from them. The Plan uses the channeling injunction and terms of the Plan and Trust Agreement to extinguish the satisfaction of claims by and between non-debtors. This is by definition a non-consensual third party injunction. Neither Judge Warren in *Rochester* nor Judge Glenn in *Rockville Centre* addressed this issue.

For these reasons, and as set forth in detail in Century's Disclosure Statement Objection, the Plan is patently unconfirmable on its face and the Disclosure Statement cannot be approved. Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, files this supplemental objection to approval of the Disclosure Statement.

Dated: October 9, 2026

Respectfully submitted,

By: */s/ Tancred Schiavoni*

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
MICHAEL M. KLOTZ
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Email: tschiavoni@omm.com
mklotz@omm.com

*Attorneys for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Ogdensburg, New York,<br><br>Debtor. | Case No. 23-60507 (PGR)<br><br>Chapter 11 |

**THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK'S OBJECTIONS AND RESPONSES TO CENTURY'S FIRST SET OF INTERROGATORIES**

The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), by its undersigned counsel, for its objections and responses to the First Set of Interrogatories propounded by Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century") to the Diocese (the "Interrogatories") in connection with the *Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Ogdensburg, New York and Additional Debtors* (the "Plan") [Docket No. 1396], states:

**RESERVATIONS OF RIGHTS**

The responses herein are provided subject to the following reservations of rights.

A. All responses contained herein, and all documents, if any, identified herein are based upon such information and documents which are presently available to and known to the Diocese, and the Diocese's present understanding of same. The following responses are given without prejudice to the Diocese's right to produce any evidence of subsequently discovered facts or documents which the Diocese may later discover, obtain, or recall. The Diocese reserves the right to change any and all responses as additional facts are ascertained, analyses are made, and documents are identified.

B. With respect to interrogatories that call for the production of information or material prepared in anticipation of litigation, work product, attorney-client communications or information, or matters otherwise protected from disclosure under applicable privileges, laws, or rules, including but not limited to, information and documents that are subject to and protected from disclosure by the mediation privilege, or by federal or state physician-patient, psychiatrist-patient, psychotherapist-patient and healthcare provider-patient confidentiality laws, the Diocese excludes privileged and protected information and documents from its responses. Any disclosure of such protected information or documents is inadvertent and is not intended to waive those privileges or protections and does not do so.

C. The Diocese's responses are not intended to waive or prejudice any objections that the Diocese may assert now or in the future, including without limitation objections as to standing, competence, relevance, materiality, propriety, privilege or the admissibility of any response or category of responses.

D. The Diocese reserves the right to object on any ground at any time and reserves the right to revise, amend, supplement, correct, clarify or add to these responses. Without limiting this right, the Diocese specifically reserves the right to revise, amend, supplement, correct, clarify or add to these responses after further investigation and discovery.

E. The Diocese's responses to the interrogatories shall not be construed as admissions to any legal conclusion, or to any explicit or implicit characterization of the facts, events, circumstances, or issues contained in the interrogatories.

F. Any representation by the Diocese that responsive documents will be produced shall not to be construed as a statement or admission that any such documents exist or can

reasonably be identified and located. The Diocese will produce responsive documents, if any, within a reasonable time as determined by the particular interrogatory and response.

G. The Diocese expressly reserves, and does not waive, its right to seek appropriate relief under the Federal Rules of Bankruptcy Procedure and/or Federal Rules of Civil Procedure, or any Local Rule, including a protective order, with respect to the interrogatories.

H. The Plan and Plan Documents speak for themselves. The Diocese's objections and responses herein are not intended to, and do not, alter, modify, constrain, limit, or otherwise amend or revise the terms of the Plan or any Plan Document. If and to the extent any interrogatory calls for an interpretation of the terms of the Plan or any Plan Document, the Diocese objects to same as calling for a legal conclusion, and respectfully refers Century to the Plan and the Plan Documents.

## OBJECTIONS TO DEFINITIONS

A. The Diocese objects to the Definitions utilized in the Interrogatories to the extent such definitions differ from the defined terms in the Plan.

## OBJECTIONS AND RESPONSES

**Interrogatories No. 1:** Identify each fact and expert witness the Debtor intends to call at any hearing on confirmation of the Debtor's Plan, and for each such witness, describe in detail the subject matter of the Person's anticipated testimony.

**RESPONSE:** The Diocese objects to this Interrogatory on the grounds that it constitutes multiple interrogatories, is premature, and to the extent the phrase "Debtor's Plan" mischaracterizes the proponents of the Plan. Subject to these objections and the Reservations of Rights, the Diocese states that it has not yet identified the fact and/or expert witness(es) it intends to call at any hearing on confirmation of the Plan or the subject matter of any such witnesses'

anticipated testimony, and that the Diocese will identify such witness(es), as appropriate, in a timely manner in accordance with any applicable rule(s) or court order(s).

**Interrogatories No. 2:** Identify the person employed by the Debtor who is most knowledgeable about the treatment under the Plan of Insurer Contribution Claims and claims by a Non-Settling Insurer for reimbursement of defense and/or indemnity costs paid by a Non-Settling Insurer under a reservation of rights in the event there is a determination that there is no insurance coverage available for such costs.

**RESPONSE:** The Diocese objects to this Interrogatory on the grounds that it is vague and speculative, and to the extent it erroneously presumes the existence or viability under applicable non-bankruptcy law of "Claims by a Non-Settling Insurer for reimbursement of defense and/or indemnity costs paid by a Non-Settling Insurer under a reservation of rights in the event there is a determination that there is no insurance coverage available for such costs." Subject to these objections and to the Reservation of Rights, the Diocese identifies Mr. Mark Mashaw as the person employed by the Debtor who is most knowledgeable about the treatment under the Plan of Insurer Contribution Claims.

**Interrogatories No. 3:** Explain whether the obligation for any claims that may be brought by a Non-Settling Insurer for reimbursement of defense and/or indemnity costs for which there has been a determination that there is no insurance coverage available are retained by the Debtor, Reorganized Debtor and/or Additional Debtors and, if not, the provisions of the Plan that extinguishes any obligation that the Debtor, Reorganized Debtor and Additional Debtors may have for such claims.

**RESPONSE:** The Diocese objects to this Interrogatory on standing and relevance grounds. The Diocese objects further to this Interrogatory as vague in its use of the term "obligation" and "any claims," as constituting multiple interrogatories, as speculative because it is based on hypothetical "claims that may be brought" and on a hypothetical "determination," as calling for a legal conclusion, as an improper use of an interrogatory to the extent it calls for the Diocese to "explain" the Plan or any Plan Documents, which are legal documents which speak for themselves, and to the extent it is predicated on the erroneous assumption that any such "claims" are or would be legally viable under applicable non-bankruptcy law, and that the Debtor, Reorganized Debtor, and/or Additional Debtors do or would bear any such "obligation."

**Interrogatories No. 4:** Explain whether the obligation for any claims that may be brought by a Non-Settling Insurer for reimbursement of defense and/or indemnity costs for which there has been a determination that there is no insurance coverage available are assigned to the Trust and, if so, the mechanism for calculating and paying such claims.

**RESPONSE:** The Diocese objects to this Interrogatory on standing and relevance grounds. The Diocese objects further to this Interrogatory as vague in its use of the term "obligation" and "any claims," as constituting multiple interrogatories, as speculative because it is based on hypothetical "claims that may be brought" and on a hypothetical "determination," as calling for a legal conclusion, as an improper use of an interrogatory to the extent it calls for the Diocese to "explain" the Plan or any Plan Documents, which are legal documents which speak for themselves, and to the extent it is predicated on the erroneous assumption that any such "claims" are or would be legally viable under applicable non-bankruptcy law, and that the Debtor, Reorganized Debtor, and/or Additional Debtors do or would bear any such "obligation."

**Interrogatories No. 5:** Describe in detail what rights of the Non-Settling Insurers are cut off by the Channeling Injunction and specifically identify the party against whom such rights are cut off and whether the Channeled Claims include a Claim by a Non-Settling Insurer for reimbursement of defense and/or indemnity costs paid by a Non-Settling Insurer for which there has been a determination that there is no insurance coverage available.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds, including to the extent the Interrogatory relates to the potential impact of the Plan on the rights of Non-Settling Insurers other than Century, and on relevance grounds. The Diocese objects further to this Interrogatory as vague in its use of the phrase "cut off," as constituting multiple interrogatories, as speculative to the extent it is based on a hypothetical "Claim" and on a hypothetical "determination," and to the extent it is predicated on the erroneous assumption that any such "Claim" is or would be legally viable under applicable non-bankruptcy law, as calling for a legal conclusion, and as an improper use of an interrogatory to the extent it calls for the Diocese to "describe in detail" the Plan or any Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese refers Century to Sections 2.3, 8.8, and 12 of the Plan.

**Interrogatories No. 6:** Describe in detail how the Channeling Injunction, the Settling Insurer Injunction, and Section 4 of the Plan apply to the Insurer Contribution Claims and Insurer Reimbursement Claims.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds, including to the extent the Interrogatory relates to the potential impact of the Plan on the rights of Insurers other than Century, and on relevance grounds. The Diocese objects further to this Interrogatory as

constituting multiple interrogatories, as speculative to the extent it is based on hypothetical "Insurer Reimbursement Claims," and to the extent it is predicated on the erroneous assumption that "Insurer Reimbursement Claims" are or would be legally viable under applicable non-bankruptcy law, as calling for a legal conclusion, and as an improper use of an interrogatory to the extent it calls for the Diocese to "describe in detail" the Plan or any Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese refers Century to the Plan and Plan Documents, including to the following Sections of the Plan: Sections 4.1, 4.2, 8.8, 12.2, 12.3, 12.5, 12.6, 12.8, and 12.13.

**Interrogatories No. 7:** Identify any mechanism in the Plan and/or Trust Distribution Procedures for calculating and paying Non-Settling Insurers, including, but not limited to Insurer Contribution Claims and Insurer Reimbursement Claims.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds, including to the extent the Interrogatory relates to the potential impact of the Plan on the rights of Non-Settling Insurers other than Century, and on relevance grounds. The Diocese objects further to this Interrogatory as vague in its use of the term "paying," as overbroad in its use of the phrase "including, but not limited to," as constituting multiple interrogatories, as speculative to the extent it is based on hypothetical "Insurer Reimbursement Claims," and to the extent it is predicated on the erroneous assumption that "Insurer Reimbursement Claims" are or would be legally viable under applicable non-bankruptcy law, and as an improper use of an interrogatory to the extent it calls for the Diocese to "identify" particular portions of the Plan or any Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the

Reservations of Rights, the Diocese refers Century to the Plan and Plan Documents, including to Sections 2.3, 8.8, and 12.6 of the Plan.

**Interrogatories No. 8:** Describe in detail how the Insurer Contribution Claims, Insurer Reimbursement Claims, and indemnity claims of Non-Settling Insurers will be calculated and paid under the Plan and whether funds will be reserved to pay such claims.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds, including to the extent the Interrogatory relates to the potential impact of the Plan on the rights of Non-Settling Insurers other than Century, and on relevance grounds. The Diocese objects further to this Interrogatory as vague in its use of the term "paid" and "indemnity claims," as constituting multiple interrogatories, as speculative to the extent it is based on hypothetical "Insurer Reimbursement Claims" and undefined "indemnity claims," and to the extent it is predicated on the erroneous assumption that "Insurer Reimbursement Claims" and undefined "indemnity claims" are or would be legally viable under applicable non-bankruptcy law, and as an improper use of an interrogatory to the extent it calls for the Diocese to "describe in detail" the Plan or any Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese refers Century to the Plan and Plan Documents, including to Sections 2.3, 8.2.3, 8.8, and 12.6 of the Plan.

**Interrogatories No. 9:** Describe in detail the operation of the judgment reduction provisions in Section 12 of the Plan, including how the Reduction Amount is calculated, and whether and how a Non-Settling Insurer may obtain affirmative recovery of defense costs and amounts paid where there is a defense verdict or a withdrawn Claim.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds, including to the extent the Interrogatory relates to the potential impact of the Plan on the rights of Non-Settling Insurers other than Century, and on relevance grounds. The Diocese objects further to this Interrogatory as vague in its use of the phrase "affirmative recovery" and in its lack of specificity as to the individual(s) or entity(ies) from whom such "affirmative recovery" is contemplated, as constituting multiple interrogatories, as speculative to the extent it is based on a hypothetical "defense verdict" or "withdrawn Claim," and to the extent it is predicated on the erroneous assumption that a claim for "affirmative recovery of defense costs and amounts paid where there is a defense verdict or a withdrawn Claim" is or would be legally viable under applicable non-bankruptcy law, and as an improper use of an interrogatory to the extent it calls for the Diocese to "Describe in detail" the Plan or Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese refers Century to the Plan and Plan Documents, including to Sections 2.3, 8.8, and 12.6 of the Plan.

**Interrogatories No. 10:** Identify each duty, burden, responsibility, and/or obligation held by the Trust under any Insurance Policy upon the effectiveness of the Debtor's Plan and/or establishment of the Trust.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds to the extent the Interrogatory relates to any Insurance Policy other than a Century Insurance Policy(ies). The Diocese objects further to this Interrogatory as vague in its use of the undefined terms "duty, burden, responsibility, and/or obligation," as constituting multiple interrogatories, as speculative to the extent it is predicated on the assumption that the Trust will hold any "duty, burden, responsibility, and/or obligation" under any Century Insurance Policy(ies) "upon the

effectiveness" of the Plan, as overbroad, and as an improper use of an interrogatory to the extent it calls for an explanation of the Plan or Plan Documents, or of Century's own Insurance Policy(ies), which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese states that, to the extent any Century Insurance Policy(ies) contains what Century characterizes as a "duty, burden, responsibility, and/or obligation" on any insured thereunder, the Diocese disputes such characterization, and states further that any such policy provision(s) constitute, if at all, precondition(s) to coverage, the failure to comply with which may give rise, if at all, to a purported coverage defense, but not to affirmative relief. The Diocese states further that the Plan does not contemplate, and would not result in, any Century Insurance Policy(ies) being assigned to the Trust; rather, the Plan assigns to the Trust the Diocese's and Additional Debtors' Insurance Claims against Non-Settling Insurers. The Diocese states further that, pursuant to Section 6.3.1 of the Plan, "Notwithstanding the Insurance Claims Assignment, the Diocese Settling Parties shall use reasonable efforts to satisfy any Post-Effective Date Preconditions to Coverage, for purposes of preserving and maintaining as much insurance coverage as possible for the sole and exclusive benefit of the Trust, subject to the Trust's payment of any DOO Entities' Post-Effective Date Costs in accordance with Section 8.12," and the Diocese further refers Century to the Plan and Plan Documents, including to Sections 8.2.3 and 8.8 of the Plan.

**Interrogatories No. 11:** Identify each duty, burden, responsibility, and/or obligation held by the Debtor, Reorganized Debtor or the Released Parties under any Insurance Policy upon the effectiveness of the Debtor's Plan and/or establishment of the Trust.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds to the extent the Interrogatory relates to any Insurance Policy other than a Century Insurance Policy(ies). The Diocese objects further to this Interrogatory as vague in its use of the undefined terms "duty, burden, responsibility, and/or obligation," as constituting multiple interrogatories, as overbroad, and as an improper use of an interrogatory to the extent it calls for an explanation of the Plan or Plan Documents, or of Century's own Insurance Policy(ies), which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese states that, to the extent any Century Insurance Policy(ies) contains what Century characterizes as a "duty, burden, responsibility, and/or obligation" on any insured thereunder, the Diocese disputes such characterization, and states further that any such policy provision(s) constitute, if at all, precondition(s) to coverage, the failure to comply with which may give rise, if at all, to a purported coverage defense, but not to affirmative relief. The Diocese states further that the Plan does not contemplate, and would not result in, any Century Insurance Policy(ies) being assigned to the Trust; rather, the Plan assigns to the Trust the Diocese's and Additional Debtors' Insurance Claims against Non-Settling Insurers. The Diocese states further that, pursuant to Section 6.3.1 of the Plan, "Notwithstanding the Insurance Claims Assignment, the Diocese Settling Parties shall use reasonable efforts to satisfy any Post-Effective Date Preconditions to Coverage, for purposes of preserving and maintaining as much insurance coverage as possible for the sole and exclusive benefit of the Trust, subject to the Trust's payment of any DOO Entities' Post-Effective Date Costs in accordance with Section 8.12," and the Diocese further refers Century to the Plan and Plan Documents, including to Sections 6.3, 8.2.3 and 8.8 of the Plan.

**Interrogatories No. 12:** Identify whether the Trust could present, prosecute, or otherwise pursue an Abuse Claim against any Non-Settling Insurer for payment under the Plan, and under what process, if any, such Abuse Claim could be presented and the type of Abuse Claim that could be so prosecuted.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds to the extent the Interrogatory relates to the potential impact of the Plan on the rights of Non-Settling Insurers other than Century. The Diocese objects further to this Interrogatory as vague in its use of the undefined terms "present, prosecute, or otherwise pursue," as constituting multiple interrogatories, as overbroad, and as an improper use of an interrogatory to the extent it calls for an explanation of the Plan or Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese states that, as set forth in Section 6.1 of the Plan, "[n]othing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim." The Diocese further refers Century to the Plan and Plan Documents, including to Sections 4.6, 6, 8.6, 8.8, and 12.2.3 of the Plan.

**Interrogatories No. 13:** Identify whether the Trust could present, prosecute, or otherwise pursue an Insurer Contribution Claim arising out of, or for any reason related to, an Abuse Claim held by an Abuse Claimant, and under what process, if any, such Insurer Contribution Claim could be presented.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds. The Diocese objects further to this Interrogatory as vague in its use of the undefined terms "present, prosecute,

or otherwise pursue," as constituting multiple interrogatories, as overbroad, and as an improper use of an interrogatory to the extent it calls for an explanation of the Plan or Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese refers Century to the Plan and Plan Documents, including to Sections 8.8, 12.3, and 12.6 of the Plan.

**Interrogatories No. 14:** Identify whether the Debtor could present, prosecute, or otherwise pursue any Abuse Claim against any Non-Settling Insurer for payment under the Plan, and under what process, if any, such Abuse Claim could be presented.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds to the extent the Interrogatory relates to the potential impact of the Plan on the rights of Non-Settling Insurers other than Century. The Diocese objects further to this Interrogatory as vague in its use of the undefined terms "present, prosecute, or otherwise pursue," as constituting multiple interrogatories, as overbroad, and as an improper use of an interrogatory to the extent it calls for an explanation of the Plan or Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese states that, as set forth in Section 6.1 of the Plan, "[n]othing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim." The Diocese further refers Century to the Plan and Plan Documents, including to Sections 4.6, 6, 8.6, 8.8, 12.2.3, and 12.6 of the Plan.

**Interrogatories No. 15:** Identify whether the Debtor and/or any entity that falls within those that compose Additional Debtors could present, prosecute, or otherwise pursue any Insurer Contribution Claim arising out of, or for any reason related to, an Abuse Claim held by an Abuse Claimant, and under what process, if any, such Insurer Contribution Claim could be presented.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds. The Diocese objects further to this Interrogatory as vague in its use of the undefined terms "present, prosecute, or otherwise pursue," as constituting multiple interrogatories, as overbroad, and as an improper use of an interrogatory to the extent it calls for an explanation of the Plan or Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese states that Section 8.8.2(e) of the Plan provides that, "[f]or the avoidance of doubt, and notwithstanding anything to the contrary in this Section 8.8.2, all Insurer Contribution Claims shall be channeled to the Trust in accordance with Section 12.3 of the Plan and no Insurer Contribution Claim shall be the basis for any affirmative recovery against any Protected Party," and that Section 12.6 of the Plan provides that, "[e]xcept as expressly set forth in Section 12.2.3 of the Plan, the Channeling Injunction shall channel all Inbound Contribution Claims and all Insurer Contribution Claims, to the Trust," and further refers Century to the Plan and Plan Documents, including Sections 8.8, 12.3, and 12.6 of the Plan.

**Interrogatories No. 16:** Identify any anti-fraud measures that apply to the allowance or valuation of Abuse Claims under the Plan and Trust Distribution Procedures, or state that no such measures are provided for or required.

**RESPONSE:** The Diocese objects to this Interrogatory on standing and relevance grounds. The Diocese objects further to this Interrogatory as vague in its use of the undefined phrase "anti-

fraud measures," and as an improper use of an interrogatory to the extent it calls for an explanation of the Plan or Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese refers Century to the Plan and Plan Documents, including Articles III, IV, and V of the Allocation Protocol.

**Interrogatories No. 17:** State all facts supporting the Debtor's contention, if any, that the Plan does not impair the contractual rights of the Non-Settling Insurers under the Non-Settling Insurer Policies, including but not limited to rights to control the defense of Abuse Claims, to associate in or consent to the settlement of Abuse Claims, and to policy proceeds.

**RESPONSE:** The Diocese objects to this Interrogatory on standing grounds to the extent the Interrogatory relates to any Insurance Policy other than a Century Insurance Policy(ies), and on relevance grounds. The Diocese objects further to this Interrogatory as vague, as overbroad in its use of the phrase "including, but not limited to," as constituting multiple interrogatories, as calling for a legal conclusion, and as an improper use of an interrogatory to the extent it calls for an explanation of the Plan or Plan Documents, which are legal documents which speak for themselves. Subject to these objections and to the Reservations of Rights, the Diocese states that the Plan states repeatedly that it shall not impair Non-Settling Insurers' rights or defenses under their respective Insurance Policy(ies). The Diocese further refers Century to the Plan and Plan Documents, including Sections 2.3.4(k), 4.1, 4.2, 6.1, 6.2, 6.3, 7.5, 8.2.3, 8.8, and 8.11 of the Plan.

Dated: October 5, 2026

BOND, SCHOENECK & KING, PLLC

By: Brendan Sheehan

Stephen A. Donato (Bar Roll No. 101522)
Charles J. Sullivan (Bar Roll No. 507717)
Sara C. Temes (Bar Roll No. 514148)
Grayson T. Walter (Bar Roll No. 518237)
Brendan M. Sheehan (Bar Roll No. 517403)
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Fax: (315) 218-8100
sdonato@bsk.com
csullivan@bsk.com
stemes@bsk.com
gwalter@bsk.com
brendan.m.sheehan@gmail.com

*Attorneys for The Roman Catholic Diocese of Ogdensburg, New York*

VERIFICATION

I, Mark T. Mashaw, am the Diocesan Fiscal Officer for the Roman Catholic Diocese of Ogdensburg, New York. I am the agent of the Roman Catholic Diocese of Ogdensburg, New York for the purpose of answering the First Set of Interrogatories propounded by Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America. I have read the foregoing interrogatories and the answers to those interrogatories. I verify under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Dated this 5th day of October, 2026

Mark T. Mashaw