**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK,

Debtor.

Case No. 23-60507 (PGR)

Chapter 11 Case

**CENTURY'S OBJECTION TO PROPOSED CONFIRMATION SCHEDULE**

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
MICHAEL M. KLOTZ
SAMANTHA M. INDELICATO
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Email:tschiavoni@omm.com
mklotz@omm.com
sindelicato@omm.com

*Attorneys for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

When the Plan Proponents proposed its schedule prior to the October 13 hearing, they anticipated approval of the Disclosure Statement at or shortly after that hearing. The schedule contemplated a 4-month confirmation schedule with the confirmation hearing to commence February 9. But when the hearing to approve the Disclosure Statement was adjourned a month, the Plan Proponents did not circulate a revised schedule. In its proposed schedule, Century takes that delay into account and builds in an additional 30 days. Century's proposed revised schedule is attached hereto as **Appendix A** and a blackline showing the changes to the Plan Proponents schedule attached as **Appendix B** .

The Plan provisions give rise to anticipated objections concerning lack of good faith, impairment of contract rights and failure to satisfy the "best interests" of creditors test as to Class 5, which includes Insurers' contribution and reimbursement claims. The objecting insurers need discovery into why the challenged provisions were adopted and how they were negotiated, how they are intended to operate, and whether the Trust's projected assets and reserves will support the obligations and claims channeled to it. Those facts reside with Diocese and the Committee. Without discovery, the insurers cannot fairly develop these objections, and the Court will lack the evidentiary record necessary to evaluate them.

The Plan Proponents spent years hammering out these provisions. The Diocese and the Committee negotiated for over three (3) years before reaching agreement in principle . They then spent months drafting, revising, and supplementing the Plan and Plan Documents, some of which still have not been filed. Insurers, by contrast, would, if Plan Proponents' preferred schedule were adopted, be forced to evaluate a complex and evolving set of documents, identify and develop objections, and prepare for a confirmation hearing in a short period of time.

The Plan seeks to impose a complex set of procedures with respect to Litigation Claims that serve no bankruptcy purpose except to prejudice the Non-Settling Insurers—all in violation of the principle, as stated by the U.S. Supreme Court, that a "debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either."[1] The Plan splits the rights under the policies (by assigning the right to receive coverage to the Trust) from the obligations (such as the duty to cooperate, which remains with the Diocese and the Additional Debtors). The Plan vests the Trustee with discretion to select some Class 4 Claimants, but not others, to proceed as Litigation Claimants and to make final decisions relating to the management and timing of Litigation Claims. The Plan "discharges" Abuse Claims against the Diocese and the Additional Debtors over an indefinite time horizon, by creating an impermissible floating Abuse Claim Discharge Date designed to create potential liability for extra-contractual damages that does not presently exist. The Plan enjoins Insurer Contribution Claims by channeling them to the Trust, but does not require the Trust to maintain or allocate a reserve to pay such claims, essentially extinguishing them. These features, among others, impair the Non-Settling Insurers' contract rights.

Century seeks a schedule that permits the discovery described below: production of relevant documents; responses to interrogatories and RFAs; targeted depositions; the opportunity to present expert testimony explaining to the Court how the Plan affects insurance rights and exposure; and sufficient time, once discovery is completed, to file objections to confirmation of the Plan. Without such discovery, Century cannot fairly develop the record necessary for the Court's consideration of confirmation. Getting that discovery accomplished in time for a March confirmation hearing will be challenging but, if all interim deadlines are met, achievable.

---

[1] *Mission Prod. Holdings v. Tempnology LLC*, 587 U.S. 370, 381 (2019) (internal quotes, cites omitted).

The Plan's unnecessarily complicated structure is designed to prejudice Insurers. "[I]t is now settled that bankruptcy law intends for the bankruptcy filing of the insured to be as 'neutral' as possible to the rights and obligations of the insurer."[2] Giving lip service to this requirement, the Plan declares that "[n]othing in this Plan shall be deemed to modify or abridge any rights of the Non-Settling Insurers under their respective Non-Settling Insurer Policies," disclaims any "obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment," and contains purported neutrality language.[3] However, as the Ninth Circuit held in *Thorpe Insulation*, "[t]hough the plan recites that it is insurance neutral, this characterization in and of itself does not settle the issue."[4] Rather, a court "must look to the real-world impacts of the plan to see if it increases insurance exposure and likely liabilities."[5]

Here, the Plan appears specifically designed to increase the insurers' exposure and likely liabilities. It seeks to accomplish that prohibited goal by creating a complicated structure that is designed to prejudice insurers. The Plan does so through at least the following mechanisms, none of which are necessary under bankruptcy law to confirm a plan:

- Assigning the Diocese's and the Additional Debtors' policy rights (but not their policy obligations) to the Trust;
- Vesting the Trustee with discretion to allow some Class 4 Claimants (but not all) to become Litigation Claimants entitled to sue the Diocese or an Additional Debtor on a nominal basis to liquidate their claims;
- Authorizing the Trust to seek coverage for any judgments obtained by Litigation Claimants;

---

2 *In re AIO US, Inc.*, 677 B.R. 509, 534 (Bankr. D. Del. 2025).
3 Plan §§ 12.2.5, 6.1, 8.8.2.
4 *In re Thorpe Insulation Co.*, 677 F.3d 869, 885 (9th Cir. 2012).
5 *Id.*

- Creating a floating discharge for claims against the Diocese and the Additional Debtors for the ostensible purpose of preserving coverage for any judgments obtained against them, but which is instead designed to manufacture extra-contractual claims that would not otherwise exist;
- Creating "enhancement" multipliers for Litigation Claimants who push their lawsuits forward rather than settling, thereby discouraging otherwise reasonable settlements;
- Gathering in the insurance proceeds for distribution to Class 4 Abuse Claimants generally;
- Establishing a "Trust Advisory Committee" of former Committee members, likely acting through their lawyers, and funded by the Trust, to "advise" the Trustee;
- Permitting the Trustee to retain counsel to litigate coverage issues at the Trust's expense; and
- Funneling insurers' contribution claims to the Trust while relieving the Trust of any obligation to maintain a reserve to satisfy those claims.

None of this structure is needed to enable an Abuse Claimant to liquidate his or her claim and then seek coverage of the resulting judgment from Diocese's insurers, which begs this question: Why does the Plan build this structure?

The Plan structure likely is not something the Diocese insisted on; in most instances, when a debtor buys its peace for a fixed amount, how the claimants decide to seek compensation from a trust or the debtor's insurers is no longer the debtor's concern. Therefore, the structure most likely originated with the Committee or, more specifically, the plaintiffs' lawyers whose clients sit on the Committee, and was supported by Diocese in exchange for a lower contribution from the Diocese, the Additional Debtors, and the Contributing Non-Debtor Entities. What were they intending to accomplish? That is what discovery will help answer. Insurers believe that part of

the answer is future guaranteed employment for the trustee and his professionals, including coverage counsel to represent the Trust (which may include the Committee's current coverage counsel).

Another likely part of the answer is the desire to establish an opportunity for Abuse Claimants to seek extracontractual damages from insurers on claims that otherwise would terminate as a matter of New York law with Diocese's discharge (hence, the floating discharge that has no support in the provisions of § 1141).

- First, the Plan impermissibly splits and reassigns various rights and obligations under the policies.
- Second, the Plan Documents empower the Trustee to manipulate the pursuit of litigation.
- Third, the Litigation Protocol rewards protracted litigation.
- Fourth, the Plan's delayed discharge provision purports to preserve (non-existent) bad faith claims against the insurers.
- Fifth, insurers' contribution claims are channeled to the Trust which may lack funds to pay them.

**Anticipated Insurer objections are supported by facts that must be discovered from Plan Proponents.** In light of these features of the Plan, insurers, parties in interest with standing under Code § 1109(b),[6] anticipate several confirmation objections. However, the relevant facts concerning the purpose, negotiation, operation, and anticipated consequences of key Plan provisions currently reside entirely with Diocese and the Committee. Discovery is therefore necessary not only to permit Insurers to develop their objections, but to provide the Court with an adequate evidentiary record at the confirmation hearing.

---

[6] *See Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024).

**Good faith and compliance with the Code (§ 1129(a)(1)-(3))**. Insurers anticipate objecting that the Plan was not proposed in good faith because its key mechanisms, discussed above, serve no bankruptcy purpose and are not required to confirm a plan under § 1129(a), and instead are designed to generate extra-contractual claims, increase insurer liability, and create settlement pressure on Insurers.[7] Development of this objection depends, *inter alia*, on why these provisions were proposed, how they were negotiated, and what Plan Proponents designed and intend them to accomplish. That evidence lies in the negotiation history, drafts of the Plan and Plan Documents, and internal analyses of Diocese and the Committee. Testimony from the Plan's architects as to why such provisions were adopted and the intended outcomes is crucial.

**Lack of insurer neutrality**. Insurers also anticipate several objections that the Plan is not insurer-neutral because it unduly interferes with Insurers' rights under their policies and New York law. Anticipated objections include: (i) assignment of insurance rights and the required confirmation findings; (ii) Insurer Contribution Claims; and (iii) deferred discharge.

**The confirmation schedule must be long enough to permit reasonable fact discovery, experts, and appropriate briefing.** Insurers do not seek extensive or burdensome discovery but, instead, only targeted and limited discovery. Insurers' proposed schedule proceeds in a logical sequence and proposes fast milestones for each task (taking into account the Thanksgiving, Christmas, and New Year's holidays). The schedule begins with targeted written discovery from the parties who created the Plan. Insurers are prepared to serve such discovery upon Plan Proponents immediately, consisting of requests for production, interrogatories, and requests for admission tied to specific provisions of the Plan, the Litigation Protocol, the

[7] *See Garvin v. Cook Invs. NW, SPNWY, LLC*, 922 F.3d 1031, 1035 (9th Cir. 2019) ("§ 1129(a)(3) directs courts to look only to the proposal of a plan, not the terms of the plan" to determine whether it was "proposed in an unlawful manner").

Allocation Protocol, the Abuse Claim Discharge Date, the treatment of Insurer Contribution Claims, the DOO Entities' Post-Effective Date Costs Reserve, and the liquidation analysis. Insurers can also immediately serve Rule 30(b)(6) deposition notices on the Diocese and the Committee and will be prepared to take those depositions following receipt and review of responsive documents, answers to interrogatories, and responses to RFAs.

To accomplish this needed discovery, insurers have proposed a schedule that is expedited but permits them to review and analyze the documents, take a small number of fact depositions, disclose one or more expert witnesses to explain to the Court how the Plan's mechanisms, individually and together, affect insurance coverage, defense, and settlement dynamics, and the Non-Settling Insurers' exposure, including how those mechanisms combine to foster an attempt to set up bad faith claims. These are technical issues on which expert testimony will assist the Court in assessing good faith and the real-world impact of insurance-related provisions. Finally, the schedule allows for depositions of each side's experts and the submission of briefs that set forth each side's views on whether the Plan should be confirmed.

The Plan Proponents' proposed schedule is completely unrealistic. Certain of the proposed dates passed before the Plan Proponents even filed the revised Plan and Disclosure Statement. It requires substantial completion of document production the week before Thanksgiving and then complete fact deposition nearly two weeks after Thanksgiving. That is an unreasonably short amount of time to review documents and prepare for, and take, fact depositions. The schedule provides for expert reports to be due days before Christmas and 10 days after fact discovery ends. The schedule would require insurer counsel to work extensively over Christmas eve, Christmas day, and the days between then and December 30, even though many families and clients are on vacations and/or visiting relatives during that time.

The Plan Proponents have not demonstrated any exigency that requires a rushed schedule. When the committee in the *Oakland* case asked for a 6-month schedule, the fastest diocesan case schedule it identified to Judge Lafferty went from disclosure statement approval to confirmation in 108 days, with others clocking in at 126 days, 140 days, and 243 days.[8] Because the Plan Proponents' proposed schedule runs fewer than 100 days from filing of the Plan, let alone approval of the Disclosure Statement, it is shorter than even the shortest other diocesan schedule, would deprive plan objectors of due process, and is offered here without any justification.

After years of Plan Proponents negotiating among themselves, followed by months spent by them drafting still-evolving Plan documents, fundamental fairness and due process warrant providing insurers with a meaningful opportunity to test the factual grounds purportedly supporting confirmation. The Court should therefore adopt Century's proposed schedule that permits targeted written discovery, appropriate fact depositions, expert testimony regarding the Plan's insurance impact, and adequate time to prepare confirmation objections based on the resulting record, with objections to confirmation due March 9, 2027 and the confirmation hearing commencing March 30, 2027.

## CONCLUSION

For the foregoing reasons, Century respectfully requests that the Court adopt Century's proposed schedule, attached hereto as **Appendix A**, and grant such other and further relief as the Court deems just and proper.

---

[8] *See* Dkt. No. 1986 at 10-11 of 13, citing *In re Roman Catholic Bishop of Oakland*, Case No. 23-40523, Dkt. No. 1846 at 15 (Bankr. N.D. Cal. Mar. 24, 2025).

Dated: November 10, 2026

Respectfully submitted,

By: */s/ Tancred Schiavoni*

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI
MICHAEL M. KLOTZ
SAMANTHA M. INDELICATO (*pro hac vice* forthcoming)
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Email: tschiavoni@omm.com
mklotz@omm.com
sindelicato@omm.com

*Attorneys for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

# APPENDIX A

***The Roman Catholic Diocese of Ogdensburg, New York - Case No. 23-60507***

***PROPOSED CONFIRMATION SCHEDULE -***

| No. | Event | Proposed Date (Plan Proponents) | Proposed Date (Century) |
|---|---|---|---|
| **1.** | Solicitation Commencement Date | No later than seven (7) days after entry of Solicitation Procedures Order | No later than seven (7) days after entry of Solicitation Procedures Order |
| **2.** | Voting Deadline | 60 days following the Solicitation Commencement Date, at 5:00 p.m. | 60 days following the Solicitation Commencement Date, at 5:00 p.m. |
| **3.** | Deadline to Serve Written Discovery | 10/28/2026 | 12/7/2026 |
| **4.** | Deadline to Serve Responses and Objections to Written Discovery | 20 days after service of written discovery | 30 days after service of written discovery |
| **5.** | Deadline for Substantial Completion of Document Production and Service of Privilege Log(s) (as applicable) | 11/18/2026 | 1/11/2027 |
| **6.** | Deadline to File Motion(s), if any, re: Written Discovery Disputes ("Discovery Motions") | 11/20/2026 | 1/13/2027 |
| **7.** | Deadline to File Responses to Discovery Motions, if any | 12/1/2026 | 1/20/2027 |
| **8.** | Oral Argument on Discovery Motions, if any | *TBD by Court* | *TBD by Court* |
| **9.** | Deadline for Identification of Expert Report Topics (excluding Rebuttal Reports) | 12/4/2026 | 1/22/2027 |
| **10** | Completion of Fact Discovery | 12/11/2026 | 1/29/2027 |
| **11** | Expert Reports Due | 12/21/2026 | 2/12/2027 |
| **12** | Deadline for Identification of Rebuttal Experts | 12/30/2026 | 2/22/2027 |
| **13** | Rebuttal Expert Reports Due | 1/5/2027 | 2/27/2027 |
| **14** | Completion of Expert Depositions | 1/12/2027 | 3/5/2027 |
| **15** | Plan Proponents' Brief(s) in Support of Confirmation Due | 1/15/2027 | 3/8/2027 |

| | | | |
|---|---|---|---|
| **16** | Deadline to File Objections to Plan Confirmation | 1/19/2027 | 3/10/2027 |
| **17** | Deadline to Exchange Deposition Designations and File Motions in Limine | 1/27/2027 | 3/18/2027 |
| **18** | Final Pre-Trial Conference | *Date and Time TBD by Court* | *Date and Time TBD by Court* |
| **19** | Deadline to File Responses to Confirmation Objections/Replies in Further Support of Confirmation | 1/29/2027 | 3/20/2027 |
| **20** | Deadline to Exchange Deposition Counter-Designations | 1/29/2027 | 3/20/2027 |
| **21** | Responses to Motions in Limine Due | 2/2/2027 | 3/23/2027 |
| **22** | Objections to Deposition Counter-Designations Due | 2/3/2027 | 3/24/2027 |
| **23** | Draft Pretrial Order Prepared by Debtor to be circulated to all parties | 2/4/2027 | 3/25/2027 |
| **24** | Deadline to Submit Joint Pretrial Order and Witness and Exhibit Lists | 2/5/2027 by 3:00 p.m. | 3/26/2027 by 3:00 p.m. |
| **25** | Commencement of Confirmation Hearing to Consider and Rule Upon any Objections to Plan Confirmation ("First Phase") | Tuesday, February 9, 2027, at 10:00 a.m. | Tuesday, March 30, 2027, at 10:00 a.m. |
| **26** | Following the Conclusion of the First Phase, the Court Will Conduct the Last Day of the Confirmation Hearing ("Second Phase") prior to entry of the Confirmation Order | *Date and Time TBD by Court* | *Date and Time TBD by Court* |