UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re:<br><br>The Roman Catholic Diocese of Ogdensburg, New York,<br><br>Debtor. | ) | Case No. 23-60507 (PGR)<br><br>Chapter 11 |

**NOTICE OF FILING OF REVISED JOINT CHAPTER 11 PLAN OF REORGANIZATION, REVISED DISCLOSURE STATEMENT, AND REVISED PLAN SUPPLEMENT EXHIBITS FOR THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK AND ADDITIONAL DEBTORS**

**PLEASE TAKE NOTICE** that on November 2, 2026, The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), the Additional Debtors (as defined in the Joint Plan), and the Official Committee of Unsecured Creditors (collectively, the "Plan Proponents") filed the *Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Ogdensburg, New York and Additional Debtors Dated October 30, 2026* [Docket No. 1479] (as it may be amended, modified or supplemented from time to time, the "Joint Plan") and the *Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Ogdensburg, New York and Additional Debtors Dated October 30, 2026* [Docket No. 1480] (as it may be amended, modified or supplemented from time to time, the "Disclosure Statement").[1]

**PLEASE TAKE FURTHER NOTICE** that on November 2, 2026, the Plan Proponents filed the *Notice of Filing of Plan Supplement* [Docket No. 1481] (the "Plan Supplement"), which included, among other things, the form of Abuse Claim Release Agreement as ***Exhibit 2*** and the form of Litigation Claimant Agreement as ***Exhibit 6***.

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Joint Plan.

**PLEASE TAKE FURTHER NOTICE** that, following the filing of the Joint Plan and the Disclosure Statement, the Plan Proponents received additional comments from the Settling Insurers. The Plan Proponents hereby file redlines of the Joint Plan, the Disclosure Statement, the Abuse Claim Release Agreement, and the Litigation Claimant Agreement reflecting revisions made to address such comments.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as ***Exhibit A*** is a redline of the revised Joint Plan (the "Revised Joint Plan") compared against the Joint Plan filed at Docket No. 1479.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as ***Exhibit B*** is a redline of the revised Disclosure Statement (the "Revised Disclosure Statement") compared against the Disclosure Statement filed at Docket No. 1480.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as ***Exhibit C*** is a redline of the revised form of Abuse Claim Release Agreement compared against the form filed as Exhibit 2 to the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as ***Exhibit D*** is a redline of the revised form of Litigation Claimant Agreement compared against the form filed as Exhibit 6 to the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE** that the Plan Proponents reserve the right to further revise, amend or modify the Revised Joint Plan, the Revised Disclosure Statement, and any Exhibits to the Plan Supplement in accordance with the terms of the Joint Plan.

Dated: November 13, 2026
Syracuse, New York

Respectfully submitted,

**BOND, SCHOENECK & KING, PLLC**

By: /s/ *Charles J. Sullivan*

Stephen A. Donato (Bar Roll No. 101522)
Charles J. Sullivan (Bar Roll No. 507717)
Grayson T. Walter (Bar Roll No. 518237)
Sara C. Temes (Bar Roll No. 514148)
Andrew S. Rivera (Bar Roll No. 700712)
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: sdonato@bsk.com
csulliv@bsk.com
cwalter@bsk.com
stemes@bsk.com
arivera@bsk.com

*Counsel to The Roman Catholic Diocese of Ogdensburg, New York*

**EXHIBIT A**

Redline of Revised Joint Plan

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK,<br><br>Debtor. | Case No. 23-60507 (PGR)<br><br>Chapter 11 Case |

# JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK AND ADDITIONAL DEBTORS

**DATED ~~OCTOBER 30~~NOVEMBER 13, 2026**

**BOND, SCHOENECK & KING, PLLC**
Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Sara C. Temes, Esq.
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com
temess@bsk.com

*Counsel to The Roman Catholic Diocese of Ogdensburg, New York*

**PACHULSKI STANG ZIEHL & JONES, LLP**
James I. Stang, Esq.
Ilan D. Scharf, Esq.
Iain A. W. Nasatir, Esq.
Karen B. Dine, Esq.
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
inasatir@pszjlaw.com
kdine@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

# TABLE OF CONTENTS

**Page**


**INTRODUCTION** .......... **1**

**SECTION 1. DEFINITIONS AND INTERPRETATION** .......... **3**

**1.1** Definitions. .......... 3
**1.2** Interpretation: Application of Definitions and Rules of Construction. .......... 28
**1.3** Exhibits. .......... 28
**1.4** Time Periods. .......... 29

**SECTION 2. TREATMENT OF CLAIMS** .......... **29**

**2.1** Unclassified Claims. .......... 29
**2.2** Classification and Specification of Treatment of Claims. .......... 31
**2.3** Classes of Claims. .......... 32

**SECTION 3. ACCEPTANCE OR REJECTION OF THE PLAN** .......... **37**

**3.1** Impaired Classes Vote. .......... 37
**3.2** Presumed Acceptance of the Plan. .......... 38
**3.3** Presumed Rejection of the Plan. .......... 38
**3.4** Voting Classes. .......... 38
**3.5** Modification of Treatment of Claims. .......... 38
**3.6** Elimination of Vacant Classes. .......... 38

**SECTION 4. ABUSE CLAIMS.** .......... **38**

**4.1** Assessment of Abuse Claims. .......... 38
**4.2** Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol. .......... 39
**4.3** Insurance Settlements. .......... 39
**4.4** Release and Discharge of Abuse Claims. .......... 40
**4.5** Distributions to Abuse Claimants. .......... 40
**4.6** Litigation of Class 4 Claims Against Non-Settling Insurers. .......... 41
**4.7** Dismissal of Pending Litigation. .......... 44
**4.8** Claim Withdrawal. .......... 44
**4.9** Medicare Procedures. .......... 44

**SECTION 5. SETTLING INSURERS** .......... **45**

**5.1** Insurance Settlement Agreements. .......... 45
**5.2** Sale of Settling Insurer Policies Free and Clear. .......... 46
**5.3** Resolution of Claims Involving Settling Insurers. .......... 46
**5.4** The Settling Insurers' Payments. .......... 46
**5.5** Further Assurances; Non-Material Modifications. .......... 46
**5.6** Waiver/Consent. .......... 47
**5.7** Timing. .......... 47

**SECTION 6. MATTERS RELATING TO NON-SETTLING INSURERS** .......... **47**

**6.1** Preservation of Rights and Obligations. .......... 47
**6.2** Estimations/Assessments of Abuse Claims Are Not Binding. .......... 48
**6.3** Post-Effective Date Preconditions to Coverage. .......... 48
**6.4** Trust Powers With Respect to Abuse Claims and Non-Settling Insurers. .......... 49
**6.5** Insurance Coverage Adversary Proceeding. .......... 49

**SECTION 7. MEANS FOR IMPLEMENTATION OF PLAN** .......... **50**

**7.1** Plan Implementation. .......... 50
**7.2** Corporate Action. .......... 50
**7.3** Payments Effective Upon Tender. .......... 50
**7.4** Agreements, Instruments, and Documents. .......... 50
**7.5** Continuation of Insurance Policies. .......... 51
**7.6** Bar Date for Professional Fee Claims. .......... 51
**7.7** Bar Date for Other Administrative Claims. .......... 51
**7.8** Exit Financing. .......... 52

**SECTION 8. THE TRUST** .......... **52**

**8.1** Establishment of Trust. .......... 52
**8.2** Funding of the Trust. .......... 52
**8.3** Vesting of Trust Assets. .......... 55
**8.4** Non-Monetary Commitments. .......... 55
**8.5** Appointment of the Trustee. .......... 55
**8.6** Rights and Responsibilities of Trustee. .......... 56
**8.7** Trust Advisory Committee. .......... 56
**8.8** Trust Pursuit of Insurance Claims Against Non-Settling Insurers. .......... 57
**8.9** Investment Powers; Permitted Cash Expenditures. .......... 60
**8.10** Tax Matters. .......... 61
**8.11** DOO Entities' Post-Effective Date Costs Procedures. .......... 61
**8.12** No Recourse Against Trustee. .......... 63
**8.13** Indemnification by Trust. .......... 63
**8.14** Trust Assumption of Liability. .......... 64
**8.15** Termination. .......... 64

**SECTION 9. GENERAL CLAIMS ADMINISTRATION** .......... **65**

**9.1** Objections to Non-Abuse Claims. .......... 65
**9.2** Determination of Claims. .......... 65
**9.3** No Distributions Pending Allowance. .......... 65
**9.4** Claim Estimation. .......... 66
**9.5** Treatment of Contingent Claims. .......... 66
**9.6** Controversy Concerning Impairment. .......... 66
**9.7** Treatment of Executory Contracts and Unexpired Leases. .......... 66

**SECTION 10. PROVISIONS GOVERNING DISTRIBUTIONS** .......... **67**

**10.1** Disbursing Agents. .......... 67
**10.2** Manner of Payment. .......... 67
**10.3** Distribution Only to Holders of Allowed Claims. .......... 67
**10.4** Disputed Claim Reserve. .......... 67
**10.5** Transmittal of Distributions. .......... 68
**10.6** Timing of Distributions. .......... 68
**10.7** Time Bar to Check Payments. .......... 69
**10.8** No Professional Fees or Expenses. .......... 69
**10.9** No Interest on Claims. .......... 69
**10.10** Saturday, Sunday, or Holiday. .......... 69
**10.11** Withholding Taxes. .......... 69
**10.12** Setoffs and Recoupment. .......... 70
**10.13** No *De Minimis* Distributions. .......... 70
**10.14** Prepayment. .......... 70

**SECTION 11. EFFECTIVE DATE** .......... **70**

**11.1** Conditions Precedent to Effective Date. .......... 70
**11.2** Waiver of Conditions. .......... 72
**11.3** Occurrence of Effective Date. .......... 72
**11.4** Notice of Effective Date. .......... 73
**11.5** Effect of Non-Occurrence of Condition. .......... 73

**SECTION 12. EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE** .......... **74**

**12.1** General Injunction and Discharge. .......... 74
**12.2** Injunction and Discharge of Abuse Claims and Inbound Contribution Claims. .......... 75
**12.3** Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties. .......... 79
**12.4** Additional Debtors Payment. .......... 81
**12.5** Settling Insurer Injunction. .......... 81
**12.6** Litigation/Settlement of Certain Claims. .......... 81
**12.7** Additional Debtors Abuse Claim Bar Date .......... 83
**12.8** Injunction Against Interference with Plan. .......... 86
**12.9** Release by Holders of Channeled Claims. .......... 86
**12.10** Mutual Releases. .......... 87
**12.11** Releases in Insurance Settlement Agreements. .......... 87
**12.12** Exculpation; Limitation of Liability. .......... 88
**12.13** Gatekeeper Injunction. .......... 88
**12.14** Injunctions in Full Force and Effect. .......... 89
**12.15** Release of Estate Causes of Action .......... 89
**12.16** Injunctions and Releases Integral. .......... 89
**12.17** Timing. .......... 90
**12.18** Excluded Parties and Non-Settling Insurers. .......... 90

**12.19** Title to and Vesting of Assets. 90
**12.20** Continued Corporate Existence. 91
**12.21** Identity of Trustees and Officers of the Diocese. 91
**12.22** Authority to Effectuate Plan. 91
**12.23** Binding Effect. 91
**12.24** Dissolution of Committee. 91

**SECTION 13. [RESERVED]** **92**

**SECTION 14. RETENTION OF JURISDICTION** **92**

**14.1** By the Bankruptcy Court. 92
**14.2** By the District Court. 94
**14.3** Actions to Enforce the Plan. 94
**14.4** Case Closure. 94

**SECTION 15. MISCELLANEOUS PROVISIONS** **94**

**15.1** Amendment or Modification of this Plan. 94
**15.2** Revocation or Withdrawal of this Plan. 95
**15.3** Reports. 95
**15.4** Notices. 95
**15.5** Severability. 96
**15.6** Validity and Enforceability. 96
**15.7** Controlling Documents. 97
**15.8** Filing of Additional Documents. 97
**15.9** Direction to a Party. 97
**15.10** Certain Actions. 97
**15.11** Waiver of Subordination. 97
**15.12** Reservation of Rights. 98
**15.13** Plan as Settlement Communication. 98
**15.14** Preservation of Tort Defendants' Rights. 98
**15.15** Governing Law. 99
**15.16** Headings. 99
**15.17** No Admissions. 99

**PLAN EXHIBITS**

Exhibit A List of Additional Debtors
Exhibit B Additional Debtors Bar Date Notice
Exhibit C Additional Debtors Bar Date Publication Notice
Exhibit D Additional Debtors Abuse Proof of Claim Form
Exhibit E List of Contributing Non-Debtor Entities

**PLAN SUPPLEMENT EXHIBITS**

Exhibit 1 Allocation Protocol
Exhibit 2 Abuse Claim Release Agreement
Exhibit 3 Trust Agreement

Exhibit 4 Non-Monetary Commitments
Exhibit 5 List of Assumed Contracts and Leases
Exhibit 6 Litigation Claimant Agreement
Exhibit 7 DOO Trust Note
Exhibit 8 Form Insurance Settlement Agreement

# INTRODUCTION

The Roman Catholic Diocese of Ogdensburg, New York, the above-captioned debtor and debtor in possession (the "Diocese"), the Additional Debtors (defined below), and the Official Committee of Unsecured Creditors (the "Committee"), jointly propose the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to chapter 11 of title 11 of the United States Code. The Diocese, Additional Debtors, and the Committee are the proponents of this Plan (the "Plan Proponents") and the accompanying Disclosure Statement (the "Disclosure Statement") within the meaning of section 1129 of the Bankruptcy Code.

This Plan provides for the financial restructuring of the Diocese and the Additional Debtors and the settlement of all, or substantially all, Claims against the Diocese and the Additional Debtors, including, without limitation, the settlement of all Abuse Claims[1] against the Diocese and the Additional Debtors.

As set forth in more detail below, the Plan provides for payment in full of all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Professional Fee Claims, and U.S. Trustee Fee Claims, leaves unimpaired any Allowed Secured Claims or Pass-Through Claims, provides for deferred payments equal to the full Allowed amount of any General Unsecured Claims, and establishes the Abuse Claims Settlement Fund to be held by the Trust to compensate holders of Abuse Claims. Inbound Contribution Claims against the Diocese and Additional Debtors are disallowed and extinguished pursuant to the Plan.

The Plan provides that funding for the Trust and the Abuse Claims Settlement Fund in the total amount of $83,875,000 will be provided from, among other potential sources of recovery, (a) a monetary payment by the Diocese, the Additional Debtors and the Contributing Non-Debtor Entities in the aggregate amount of $44,000,000, subject to adjustment as provided herein, which may include up to $7,000,000 to be evidenced by the DOO Trust Note; and (b) payments from Settling Insurers made pursuant to the Insurance Settlement Agreements. As of the date of this Plan, the Diocese and the Committee have agreed to accept a total of $39,875,000 in settlement payments from the Settling Insurers in exchange for entering into Insurance Settlement Agreements with respect to their respective Insurance Policies and Related Insurance Claims. The Financial Projections attached to the Disclosure Statement assume an Effective Date cash payment to the Trust of $44,000,000 by or through the Diocese. The DOO Entities' Cash Payment described in the Plan reflects the aggregate contribution by the Diocese, the Additional Debtors, and the Contributing Non-Debtor Entities. The Plan also provides for other potential sources of funding for the Abuse Claims Settlement Fund. As of the date of the Plan, the Diocese, the Additional Debtors and the Committee have agreed to accept the following Settling Insurer payments: (i) $17,000,000 from Wausau, (ii) $9,000,000 from LMI, (iii) $12,000,000 from Interstate, (iv) $1,500,000 from Evanston and International, collectively; and (v) $375,000 from Granite State. If the conditions set forth in the Plan are met and the Plan Proponents reach an Insurance Settlement Agreement or other terms of settlement with respect to Insurance Claims against Non-Settling Insurers prior to

[1] All capitalized terms used but not defined in this Introduction are defined in Section 1 of the Plan, below.

commencement of the confirmation hearing for the Plan, the Plan provides that such Non-Settling Insurers may become Settling Insurers and for settlement proceeds resulting therefrom to be used to further supplement the Abuse Claims Settlement Fund. To the extent no additional settlements with any individual insurers are achieved before confirmation, the Plan provides for the assignment of Insurance Claims against any Non-Settling Insurer held by the Diocese Settling Parties to the Trust, and establishes a framework for post-confirmation litigation of Insurance Claims and other Litigation Claims seeking recovery from Non-Settling Insurers. For the avoidance of doubt, the Plan Proponents intend to seek confirmation of this Plan even if some insurers are Non-Settling Insurers.

The Plan's treatment of Abuse Claims represents the culmination of over three (3) years of negotiation among the Diocese, the Additional Debtors, and the Committee in its capacity as an advocate on behalf of all Abuse Claimants and has been approved by the Committee in consultation with attorneys who collectively represent an overwhelming majority of Abuse Claimants in their individual Abuse Claims against the Diocese ("State Court Counsel").

All holders of Claims against the Diocese and Additional Debtors are encouraged to read this Plan and the Disclosure Statement and other Plan Documents in their entirety before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains discussions regarding the Diocese and Additional Debtors, events prior to and during the Chapter 11 Case of the Diocese and the filing of Chapter 11 Cases for the Additional Debtors, and a summary and analysis of the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Plan Documents, once Filed, can be obtained for free at https://case.stretto.com/dioceseofogdensburg, and shall also be available for review in the Office of the Clerk of the Bankruptcy Court during the Bankruptcy Court's normal hours of operation. Holders of Claims may also obtain copies of the Plan Documents by contacting counsel for the Diocese in writing at the address on the cover page of the Plan. Each Plan Document is an integral part of the Plan and is hereby incorporated by reference and made a part of the Plan.

## SECTION 1. DEFINITIONS AND INTERPRETATION

### 1.1 Definitions.

The following terms used herein shall have the respective meanings defined below:

*1.1.1* ***Abuse*** means any actual or alleged:

a. sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, hebephilia, ephebophilia, lascivious behavior, undue familiarity, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, any other sexual misconduct, or any conduct constituting a sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the New York Penal Law); or

b. non-sexual assault, battery, corporal punishment, and other nonsexual acts of physical, psychological, mental or emotional abuse, humiliation or intimidation (including physical abuse or bullying without regard to whether such physical abuse or bullying is of a sexual nature), and all other non-sexual tortious behavior of any type whatsoever.

For the avoidance of doubt, "***Abuse***" also includes (i) any conduct which would constitute a sexual offense as defined in article one hundred thirty of the New York Penal Law, incest as defined in section 255.27, 255.26 or 255.25 of the New York Penal Law, or the use of such Person in a sexual performance as defined in section 263.05 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act, or any offense included in 18 U.S.C. §§ 2251, 2251A, 2252, 2252A, and 2260; and (ii) sexually-related injuries, including those stemming from the use of photography, video, or digital media.

*1.1.2* ***Abuse Action*** means a lawsuit asserting an Abuse Claim against the Diocese or any Additional Debtor.

*1.1.3* ***Abuse Claim*** means any Claim that has been or could be asserted against any Covered Party, Settling Insurer, or Non-Settling Insurer that is attributable to, arises from, is based upon, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the DOO Petition Date or Additional Debtors Petition Date, as applicable, including any such Claim that seeks monetary damages or any other relief under any theory of liability, law, or equity whatsoever, including contribution, indemnity, vicarious liability, *respondeat superior*, conspiracy, fraud (including fraud in the inducement), any negligence-based or employment-based theory (including negligent hiring, supervision, retention, or misrepresentation), any other theory based upon misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory (including any theory based upon public policy) or any act or failure to act by any Covered Party, Settling Insurer, or Non-Settling Insurer or any other Entity for which any Covered Party, Settling Insurer or Non-Settling Insurer is alleged to be responsible. For the avoidance of doubt, "Abuse Claim" includes (a) all

Post-Confirmation Claims, (b) all Unknown Abuse Claims, (c) Child Abuse Claims (or any other Claim or cause of action described in the CVA), and Adult Abuse Claims (or any other Claim or cause of action described in the ASA), (d) Inbound Contribution Claims, and (e) any Claim against the Diocese or any Covered Party that is attributable to, arises from, is based upon, relates to, or results from Abuse that, as of the applicable Petition Date is barred by any applicable statute of limitations, and in each case, irrespective of whether (x) such Claims also involve the conduct of Joint Tortfeasors, (y) such Claims arise under, or were revived pursuant to, the CVA or ASA, or any future reviver law, statute, or binding precedential decision passed or issued on or after the Effective Date, or (z) a proof of claim has been Filed or an Abuse Action has been commenced with respect to such Claim. "Abuse Claim" includes any Claim asserted against the Diocese, any Additional Debtor, or any other Covered Party based upon Abuse that occurred prior to the Petition Date and which was not (i) filed with the Bankruptcy Court by the applicable Bar Date, (ii) a timely CVA Action commenced on or before the Effective Date, or (iii) otherwise deemed timely filed as of the Effective Date pursuant to the Plan or by order of the Bankruptcy Court. For the avoidance of doubt and notwithstanding anything to the contrary herein, "Abuse Claim" also includes Claims for Abuse that are revived pursuant to any law, statute, or binding precedential decision passed or issued on or after the Effective Date. Nothing in this definition shall constitute a waiver of any defense that would otherwise be available under applicable law to any Covered Party, any other Protected Party, the Trust or any other Entity. "Abuse Claim" does not include Extra-Contractual Claims or Coverage Claims (as defined in the Insurance Settlement Agreements) against Settling Insurers or Non-Settling Insurers. For the avoidance of doubt, a Claim based on Abuse solely occurring following the applicable Petition Date is not an Abuse Claim.

*1.1.4* ***Abuse Claim Discharge Date*** means the date on which the Diocese Discharge and Additional Debtors Discharge, as applicable, occurs with respect to each Abuse Claim, as determined in accordance with the provisions of Section 12.2.4 of the Plan.

*1.1.5* ***Abuse Claim Release Agreement*** means an agreement, in the form attached to the Plan Supplement as Exhibit 2, releasing the Diocese Settling Parties and the Settling Insurers from (a) any and all Abuse Claims and (b) with respect to the Settling Insurers, any and all Barred Claims (including Extra Contractual Claims and Direct Action Claims) held by a Class 4 Claimant, including any Unknown Abuse Claimant, in accordance with the terms of this Plan, to be executed by Class 4 Claimants, including Unknown Abuse Claimants, as a condition of receiving any Trust Distribution.

*1.1.6* ***Abuse Claimant*** means the holder of an Abuse Claim, the estate of a deceased individual who held an Abuse Claim, the personal executor or personal representative of the estate of a deceased individual who held an Abuse Claim, or the assignee of any of the foregoing, as the case may be. For the avoidance of doubt, the holder of an Unknown Abuse Claim and/or Post-Statute Filed Abuse Claim is an Abuse Claimant.

*1.1.7* ***Abuse Claims Reviewer*** means the Person, including the designee of such Person, who will assess Abuse Claims under the Allocation Protocol.

*1.1.8* ***Abuse Claims Settlement Fund*** means a fund established by the Trust from which Trust Distributions will be made to Abuse Claimants on account of their Abuse Claims.

*1.1.9* ***Action*** means any lawsuit, proceeding, or other action in a court, or any arbitration.

*1.1.10* ***Additional Debtors*** means those Entities listed on Exhibit A of this Plan that have filed for relief under chapter 11 of the Bankruptcy Code, along with such entities' predecessors in interest.

*1.1.11* ***Additional Debtors Abuse Claim Bar Date*** means the date that is the first day scheduled for the Confirmation Hearing.

*1.1.12* ***Additional Debtors Abuse Proof of Claim Form*** means Exhibit D of this Plan.

*1.1.13* ***Additional Debtors Bar Date Notice*** means Exhibit B of this Plan.

*1.1.14* ***Additional Debtors Bar Date Publication Notice*** means Exhibit C of this Plan.

*1.1.15* ***Additional Debtors' Cash Payment*** means that portion of the DOO Entities' Cash Payment funded by the Additional Debtors.

*1.1.16* ***Additional Debtors Petition Date*** means the date that the Additional Debtors file their respective petitions for relief under chapter 11 of the Bankruptcy Code.

*1.1.17* ***Administrative Claim*** means a Claim against the Diocese or any Additional Debtor for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses, incurred after the applicable Petition Date, of preserving the Estate and operating the business of the Diocese and Additional Debtors; (b) Professional Fee Claims; (c) any Claim specified in section 503(b)(9) of the Bankruptcy Code; (d) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code; and (e) any Claim arising from or related to any Abuse alleged to have first occurred after the applicable Petition Date but prior to the Effective Date, unless the Diocese or any Additional Debtor elects to treat such Claim as a Pass-Through Claim.

*1.1.18* ***Administrative Claims Bar Date*** means the deadline for filing requests for payment of Administrative Claims, as follows: (i) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (ii) with respect to Professional Fee Claims, shall be sixty (60) days after the Effective Date or such other date established by the Court.

*1.1.19* ***Adult Abuse Claim*** means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was 18 years of age or older.

*1.1.20* ***Affiliates*** means, with respect to any Insurer Entity, all past and present Persons or Entities that control, are controlled by, or are under the control of, another Person or Entity, including parents, subsidiaries, merged Persons and Entities, holding Persons and Entities, and acquired Persons and Entities, or any predecessor to such Person and Entities, and their successors and assigns, in their capacities as such.

*1.1.21* ***Agent*** means any past or present employee; officer; director; managing agent or other agent; shareholder; principal; teacher; staff; member; board member; administrator; priest; deacon; brother, sister, nun, or other member of a religious order; clergy; Person bound by a monastic vow; volunteer; attorney; claim handling administrator; or representatives of a Person or Entity, in each case in their capacities as such.

*1.1.22* ***Alleged Insured*** has the meaning ascribed to such term in Section 12.6.2.b. of the Plan.

*1.1.23* ***Allocation Protocol*** or ***Abuse Claim Allocation Protocol*** means the protocol for allocation of the Abuse Claims Settlement Fund developed by the Committee, attached to the Plan Supplement as Exhibit 1, and incorporated into the Trust Agreement.

*1.1.24* ***Allowed*** means, with respect to any Non-Abuse Claim or any portion thereof, a Claim or portion thereof: (a) that has been allowed by a Final Order; (b) which is included on the Diocese's Schedules as not disputed, not contingent and not unliquidated, for which no proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline; (c) as to which a proof of claim in a liquidated and non-contingent amount has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or any objection has been settled or withdrawn, or has been denied by a Final Order; or (d) that is expressly allowed by the terms of this Plan. For the avoidance of doubt, it is expressly understood that Abuse Claims shall not be deemed Allowed or Disallowed by operation of the Plan.

*1.1.25* ***ASA*** means the New York Adult Survivors Act, which was codified in the New York Civil Practice Law & Rules 214-j. The Adult Survivors Act created a one-year window from November 24, 2022 to November 23, 2023 for the revival of previously time-barred civil claims concerning Abuse that occurred after the Claimant reached eighteen years of age.

*1.1.26* ***Avoidance Action*** means any (i) state law fraudulent transfer Claim; (ii) Claim pursuant to sections 502(d), 541-545, 547, 548, 549, 550, 551, 552(b), or 553 of the Bankruptcy Code against any Person; and (iii) Claim pursuant to section 510 of the N.Y. Business Corporation Law or any law of similar effect.

*1.1.27* ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter applicable to the Chapter 11 Cases.

*1.1.28* ***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of New York (Utica Division) and any Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom, or any successor thereto that may be

established by any act of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Cases or the Plan.

*1.1.29* ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended.

*1.1.30* ***Bar Date*** means, as to a particular Claim, the deadline for filing a Proof of Claim as to such Claim, as established by the Bar Date Order or, with respect to the Additional Debtors, the Additional Debtors Abuse Claim Bar Date.

*1.1.31* ***Bar Date Order*** means (a) that certain *Order Establishing Bar Date for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 203] setting January 18, 2024 at 11:59 p.m. (Eastern Time), as the deadline for filing proofs of claim for all prepetition Claims, including Abuse Claims, against the Diocese, as well as the deadline for all governmental units (as defined in section 101(27) of the Bankruptcy Code) to File proofs of claim in the Chapter 11 Case, and (b) any other Final Orders of the Bankruptcy Court establishing deadlines for the filing of Proofs of Claim and other claims filing procedures and requirements.

*1.1.32* ***Barred Claim*** means all Channeled Claims (specifically including Abuse Claims, Medicare Claims, and Extra-Contractual Claims), Released Insurance Claims, Abuse Actions, Unknown Abuse Claims, Related Insurance Claims, Insurer Contribution Claims, Direct Action Claims, Coverage Claims, GMVA Claims, and every other Claim that (a) is under, arises out of, relates (directly or indirectly) to, or connects in any way with an Abuse Claim or any of the Settling Insurer Policies or (b) is released pursuant to any Insurance Settlement Agreement. For the avoidance of doubt, "***Barred Claim***" includes all Claims exempted from the injunctions set forth in Sections 12.2.1 and 12.3 of the Plan pursuant to Sections 12.2.3.a and 12.2.3.b of the Plan.

*1.1.33* ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday", as defined in Bankruptcy Rule 9006(a), any day on which commercial banks are authorized or required by law to close in Ogdensburg, New York, and any day on which the Diocese's business offices are closed in observance of a religious holiday.

*1.1.34* ***Cabrini Foundation*** means Mother Cabrini Health Foundation.

*1.1.35* ***Cabrini Exempt Transfer*** means any transfer of funds or other assets from the Cabrini Foundation to the Diocese or any Additional Debtor, whether directly, indirectly, through an intermediary or not, to the extent such transfer is unrelated to Abuse Claims or consists of (a) grants consistent with those previously made by the Cabrini Foundation in furtherance of its charitable mission; (b) assets transferred subject to a charitable restriction on use pursuant to applicable law; or (c) transfers made in exchange for fair consideration.

*1.1.36* ***Cabrini Qualifying Proceeds*** means the proceeds of any transaction or series of transactions resulting in a transfer of funds or other assets of the Cabrini Foundation to the Diocese or any Additional Debtor whether directly, indirectly, through an intermediary or not, other than a Cabrini Exempt Transfer.

*1.1.37* ***Cash*** means cash and cash equivalents including, without limitation, checks and wire transfers.

*1.1.38* ***Channeled Claim*** means (a) any Abuse Claim against the Diocese or any of the Additional Debtors, (b) any Inbound Contribution Claim, Medicare Claim, or Extra-Contractual Claim, or (c) any Claim against any Protected Party or any of the Settling Insurer Policies arising from or related in any way to an Abuse Claim, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy, *provided, however*, that "Channeled Claims" shall not include any Claim exempted from the injunctions set forth in Sections 12.2.2 and 12.3 of the Plan pursuant to Sections 12.2.3.a and 12.2.3.b of the Plan except as provided herein. For the avoidance of doubt, a Channeled Claim includes any Claim against a Protected Party based on allegations that it is an alter ego or liable as a successor of a Person that is not a Protected Party or that the Protected Party's corporate veil should be pierced on account of Claims against a Person that is not a Protected Party or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a Claim on either such Person. Notwithstanding the foregoing, a Claim is not a Channeled Claim to the extent such Claim is asserted against Excluded Parties or Non-Settling Insurers, provided that any Claims which assert liability against an Excluded Party or Non-Settling Insurer in conjunction with a Protected Party shall in all events be Channeled Claims as to the Protected Party. Solely for purposes of this definition of Channeled Claims, an "Excluded Party" is (1) any individual who personally committed an act of Abuse that resulted or would result in an Abuse Claim against any Protected Party, but solely in his or her capacity as an abuser; (2) the Holy See; and/or (3) any religious order or other entity that is an affiliate of, or associated with the Roman Catholic Church (other than any Diocese Settling Party) and their respective predecessors, successors, assigns, and present and former shareholders, members, affiliates, subsidiaries, employees, Agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants and consultants, each in their capacities solely as such; *provided, however*, that any Person who has actually or properly allegedly acquired or been assigned the right to make a claim for coverage under any of the Insurance Policies is not an "Excluded Party" for purposes of this definition of Channeled Claims; *provided further*, however, that upon entry of an order of a court of competent jurisdiction that such Person has not acquired or been assigned the right to make a claim for coverage under any of the Insurance Policies, such Person shall be deemed an Excluded Party for purposes of this definition of Channeled Claims.

*1.1.39* ***Channeling Injunction*** means the injunction contained in Section 12.3 of this Plan.

*1.1.40* ***Chapter 11*** means chapter 11 of the Bankruptcy Code.

*1.1.41* ***Chapter 11 Cases*** means, collectively, the chapter 11 case for the Diocese, styled *In re The Roman Catholic Diocese of Ogdensburg, New York, 23-60507* and

filed on the DOO Petition Date and the chapter 11 cases filed by the Additional Debtors on the Additional Debtors Petition Date.

*1.1.42* ***Child Abuse Claim*** means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was less than eighteen (18) years of age.

*1.1.43* ***Claim*** means a "claim", as that term is defined in section 101(5) of the Bankruptcy Code, and includes, without limitation, any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, Lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorney's fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present or (to the extent it arises prior to the Effective Date) future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

*1.1.44* ***Claimant*** means any Person who alleges or alleged any Claim.

*1.1.45* ***Claims Objection Deadline*** means, with respect to any Non-Abuse Claim, the date which is ninety (90) days after the latter of the Effective Date and the date such Claim is Filed.

*1.1.46* ***Class*** means a class or category of Claims as classified and described in Section 2 of this Plan.

*1.1.47* ***Class 1 Claim*** means the Secured Claim held by NBT, National Association.

*1.1.48* ***Class 2 Claim*** means a Pass-Through Claim against the Diocese.

*1.1.49* ***Class 3 Claim*** means a General Unsecured Claim against the Diocese that is not an Abuse Claim.

*1.1.50* ***Class 4 Claim*** means any and all Abuse Claims held by Class 4 Claimants.

*1.1.51* ***Class 4 Claimant*** means any holder of an Abuse Claim filed against the Diocese or any Additional Debtor.

*1.1.52* ***Class 5 Claim*** means an Inbound Contribution Claim.

*1.1.53* ***Class 6 Claim*** means a Ride Through Claim against the Additional Debtors.

*1.1.54* ***CMS*** means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850 and/or any other Agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims

*1.1.55* ***Committee*** means the Official Committee of Unsecured Creditors appointed in the Diocese's Chapter 11 Case by the United States Trustee pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

*1.1.56* ***Conditional Payment*** means any payment by CMS, before the Effective Date, in respect of any Abuse Claims, which is subject to potential recovery under the MSPA by CMS.

*1.1.57* ***Confirmation Date*** means the date the Confirmation Order is entered by the clerk of the Court on the docket of the Diocese's Chapter 11 Case.

*1.1.58* ***Confirmation Hearing*** means the hearing(s) held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Diocese seeks entry of the Confirmation Order.

*1.1.59* ***Confirmation Order*** means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

*1.1.60* ***Contributing Non-Debtor Entities*** means those Entities listed on Exhibit E to this Plan. ***Contributing Non-Debtor Entity*** means any one of such entities.

*1.1.61* ***Contributing Non-Debtor Entity Contribution*** means the contributions of the Contributing Non-Debtor Entities.

*1.1.62* ***Coverage Claims*** means all Claims under or relating to the Settling Insurer Policies or the rights and obligations thereunder, or the breach thereof, including Claims seeking insurance coverage.

*1.1.63* ***Covered Party*** means, collectively, the following Entities: (a) the Diocese; (b) the Additional Debtors; (c) the Contributing Non-Debtor Entities; (d) any other

Person that is a "Named Assured" or "named insured" under the Insurance Policies, or otherwise entitled to insurance coverage under the Insurance Policies; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Person's predecessors, successors, assigns, subsidiaries, affiliates, current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, advisory board members, advisory committee members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, including Schools, as applicable. The term "Covered Party" includes, but is not limited to, those Persons listed on Exhibit "__".

*1.1.64* ***Court*** means the Bankruptcy Court, the District Court, or any court with appellate jurisdiction over any order entered by the Bankruptcy Court and/or the District Court in the Chapter 11 Cases, as applicable.

*1.1.65* ***Creditor*** means a holder of a Claim.

*1.1.66* ***CVA*** means New York Child Victim's Act, which was codified in the New York Civil Practice Law & Rules 214-g. The CVA created a one-year window from August 14, 2019 to August 13, 2020 for the revival of previously time-barred civil claims related to childhood sexual abuse, which was subsequently extended to August 13, 2021.

*1.1.67* ***Diocese*** means The Roman Catholic Diocese of Ogdensburg, New York, the debtor and debtor in possession in the above-captioned Chapter 11 Case.

*1.1.68* ***Diocese Discharge*** means the complete extinguishment of the liability of the Diocese in respect to any Claim or debt, as and to the extent further described in Section 12 of the Plan.

*1.1.69* ***Diocese Settling Parties*** means (a) the Diocese, (b) the Additional Debtors and (c) the Contributing Non-Debtor Entities.

*1.1.70* ***Direct Action Claim*** means any Claim by any Person against a Settling Insurer identical or similar to an Abuse Claim, in that it seeks to recover from the Settling Insurer damages based on actual or alleged Abuse for which the Abuse Claimant asserts that the Diocese or an Additional Debtor are liable, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an Insurer.

*1.1.71* ***Disallowed*** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof: (a) has been disallowed by either a Final Order or pursuant to a settlement or stipulation between the Diocese and the holder of the Claim; or (b)(i) is valued on the Diocese's Schedules at zero dollars ($0) or denominated as contingent, disputed or unliquidated and (ii) as to which a Bar Date has been established but no proof of claim has been Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law. With respect to any Abuse Claim, the term "Disallowed" shall not apply.

*1.1.72* ***Disclosure Statement*** means the Disclosure Statement to accompany this Plan as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

*1.1.73* ***Disputed*** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, all Abuse Claims and Inbound Contribution Claims together with any Non-Abuse Claim that: (i) is not included on the Diocese's Schedules or is reflected on the Schedules as being valued at zero dollars, or as contingent, unliquidated or disputed; or (ii) is the subject of an objection Filed in the Bankruptcy Court that has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

*1.1.74* ***Distribution*** means any payment to the holder of a Claim as provided in this Plan.

*1.1.75* ***District Court*** means the United States District Court for the Northern District of New York.

*1.1.76* ***DOO Entities' Cash Payment*** means $44,000,000, to be paid by or on behalf of the Diocese, the Additional Debtors and the Contributing Non-Debtor Entities to the Trust, funded in part by the DOO Trust Note, and used to fund the payment of Abuse Claims (except Post-Statute Filed Abuse Claims and Unknown Abuse Claims) and Trust Expenses pursuant to the Plan and the Trust Agreement *provided, however*, that the DOO Entities' Cash Payment will be reduced by the amount of any payments made during these Chapter 11 Cases for professional fees incurred by the Committee after the Initial Plan Filing Date.

*1.1.77* ***DOO Entities' Cash Payment Remainder*** means any remainder of the DOO Entities' Cash Payment after the initial funding of the Trust Reserve in accordance with Section 8.2.1 of the Plan.

*1.1.78* ***DOO Entities' Post-Effective Date Costs*** means all fees and expenses reasonably incurred by the Diocese or the Additional Debtors in connection with performing any of their respective duties or obligations under the Plan with respect to any Abuse Claims or Insurance Claims, including in connection with: (a) any attempt by the Trust to enforce or recover Insurance Claims against Non-Settling Insurers; (b) responding to and defending against any legal action taken by any Litigation Claimants with respect to Litigation Claims; or (c) upon request by the Trustee or the Abuse Claims Reviewer, assisting with the administration of the Allocation Protocol. For the avoidance of doubt, such costs include any costs and expenses reasonably incurred by the Diocese or the Additional Debtors in connection with such efforts, or in connection with any depositions, discovery, or other litigation matters relating in any way to the Abuse Claims or Insurance Claims, including any attorney's fees, expert fees, and other costs and expenses.

*1.1.79* ***DOO Entities' Post-Effective Date Cost Reserve*** means a portion of the Trust Reserve held in a separate, segregated account established by the Trust exclusively for payment of DOO Entities' Post-Effective Date Costs, which shall be funded in the initial amount of not less than $2,000,000.

*1.1.80* ***DOO Entities' Post-Effective Date Costs Procedures*** means the procedures set forth in Section 8.11 of the Plan for the payment of DOO Entities' Post-Effective Date Costs.

*1.1.81* ***DOO Petition Date*** means July 17, 2023.

*1.1.82* ***DOO Trust Note*** means a promissory note in an original amount up to $7,000,000 included in the DOO Entities' Cash Payment, to be executed by the Diocese and made payable to the Trust over a period of eighteen (18) months from the date of entry of the Confirmation Order, in the form attached to the Plan Supplement as Exhibit 7 with interest paid as follows: (i) 2% simple interest per annum on the unpaid balance for the first six months following the Effective Date, (ii) 2% simple interest per annum on the unpaid balance for months 7 to 12 following the Effective Date, and (iii) 9% simple interest per annum on the unpaid balance for months 13 to 18 following the Effective Date.

*1.1.83* ***DOO Trust Note Documents*** means the documents evidencing the DOO Trust Note, if any.

*1.1.84* ***Donor Restrictions*** means, with respect to any charitable assets in the Diocese's possession or control, any donor-imposed restrictions upon the use of such assets.

*1.1.85* ***Effective Date*** means (a) the last Business Day of the month in which (i) all conditions to effectiveness of this Plan have been satisfied or waived in accordance with Section 11.1 and (ii) no stay of the Confirmation Order is in effect, *provided*, *however* that if the first date on which all conditions to effectiveness of the Plan have been satisfied or waived occurs on or after the twentieth (20th) day of such month, the Effective Date shall occur on the last Business Day of the immediately following month; or (b) such other date as may be mutually agreed by both Plan Proponents and all Settling Insurers.

*1.1.86* ***Enjoined Party*** means all Persons who have held, hold, or may hold Claims or causes of action that have been released or discharged or are subject to exculpation, the Channeling Injunction, or the Settling Insurer Injunction, pursuant to this Plan, the Confirmation Order or any Sale Order(s).

*1.1.87* ***Entity*** has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

*1.1.88* ***Equitas Entities*** means Equitas Limited, Equitas Reinsurance Limited, Equitas Holdings Limited, Equitas Policyholders Trustee Limited, and any other Person from time to time in the Equitas Group.

*1.1.89* ***Estates*** means the estates created under section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

*1.1.90* ***Estate Causes of Action*** means those claims or causes of action that the Diocese or the Additional Debtors, and any of their respective successors, assigns, or representatives, may have against each other or any of the Contributing Non-Debtor Entities, and any of their successors, assigns or representatives including, without limitation, any and all

claims or causes of action for contractual indemnification, contribution, equitable indemnification, reimbursement, subrogation, breach of contract and other similar rights, any and all claims or causes of action to avoid, invalidate, or recover any transfer of any kind made by the Diocese or any Additional Debtor, on one hand, to any Contributing Non-Debtor Entity, on the other, including under Chapter 5 of the Bankruptcy Code or other applicable non-bankruptcy law, including any state or foreign law governing fraudulent or otherwise avoidable obligations, transfers, or conveyances, any and all claims or causes of action under or based on a theory of veil piercing, alter-ego, vicarious liability, predecessor liability, successor liability, mere continuation, domination and control, mere instrumentality, inadequate capitalization, single business enterprise or common enterprise, equitable subordination or recharacterization.

*1.1.91* ***Evaluation Factors*** means the factors to be considered by the Abuse Claims Reviewer in scoring Abuse Claims pursuant to the Allocation Protocol, as described therein.

*1.1.92* ***Excluded Party*** means (a) any individual who personally committed an act of Abuse that resulted or would result in an Abuse Claim against the Diocese or a Protected Party, but solely in his or her capacity as an abuser; (b) the Holy See; and (c) any religious order or other Entity that is an affiliate of or associated with the Roman Catholic Church (other than the Diocese Settling Parties and their respective Related Persons); provided, however, that neither of the following is an "Excluded Party": (y) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurer Policies, and/or (z) any Person who has actually or allegedly acquired or been assigned the right to make a Claim for coverage under any of the Settling Insurer Policies; provided further, however, that upon entry of an order of a court of competent jurisdiction that such Person has not acquired or been assigned the right to make a claim for coverage under any of the Insurance Policies, such Person shall be deemed an Excluded Party.

*1.1.93* ***Exculpated Parties*** means (a) the Diocese; (b) the Additional Debtors; (c) the Contributing Non-Debtor Entities; (d) the Mediators; (e) the Committee and its members in their capacity as members of the Committee; and (f) with respect to the foregoing Entities in clauses (a) through (e), such Entities' current and former officers, directors, fiduciaries (including members and trustees) and professionals (including attorneys, financial advisors, accountants, investment bankers, and consultants) provided, however, that notwithstanding anything to the contrary herein, no Excluded Party may be an Exculpated Party.

*1.1.94* ***Expunged Abuse Claim*** means an Abuse Claim that has been disallowed and expunged by a Final Order of the Bankruptcy Court without leave to amend or refile.

*1.1.95* ***Extra-Contractual Claim*** means any Claim against any Settling Insurer Releasee, seeking any type of relief other than coverage or benefits under, or with respect to, the Insurance Policies. Extra-Contractual Claims include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging any of the following with respect to (i) any Insurance Policy; (ii) any Claim allegedly or actually covered under an Insurance Policy; or (iii) the conduct of a Settling Insurer Releasee with respect to (i) or (ii): (a) bad faith; (b) failure to provide insurance coverage under any Insurance Policy,

including any failure to investigate or to provide a defense or adequate defense; (c) failure or refusal to compromise and settle any Claim insured under any Insurance Policy; (d) failure to act in good faith; (e) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied or otherwise; (f) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (g) violation of any unfair claims practices act or similar statute, regulation or code, including any statute, regulation, or code relating to unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising; (h) any type of misconduct; or (i) any other act or omission of any type by a Settling Insurer Releasee for which the claimant seeks relief other than coverage or benefits under an Insurance Policy. Extra-Contractual Claims further include all Claims relating to any Settling Insurer Releasees' (x) handling of any Claims under the Insurance Policies, (y) conduct in negotiating the Insurance Settlement Agreements and/or the Plan, and (z) conduct in the settlement of any Claims and/or the payment of any Claims.

*1.1.96* ***Evanston*** means Evanston Insurance Company as successor-in-interest to Associated International Insurance Company.

*1.1.97* ***File*** or ***Filed*** means (i) properly filed with the clerk of the Court in the Chapter 11 Cases or any appeal therefrom, as reflected on the official docket of the clerk of the Court for the Chapter 11 Cases or such appeal, or the actual delivery of proofs of claim in paper or electronic form to Stretto in accordance with the terms of the Bankruptcy Court's Bar Date Order, or (ii) with respect to any Abuse Action, properly filed with the clerk of the court in which the Abuse Action is commenced, as reflected on the official docket of the clerk of that court.

*1.1.98* ***Filed Abuse Claim*** means either (a) an Abuse Claim Filed against the Diocese on or prior to January 18, 2024, or (b) an Abuse Action commenced against the Diocese and/or an Additional Debtor prior to January 18, 2024.

*1.1.99* ***Final Order*** means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, review, reargue, or rehear shall have been waived in writing in form and substance satisfactory to each applicable litigant waiving such right and their respective counsel or, in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, or Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, Filed with respect to such order shall not cause such order not to be a Final Order.

*1.1.100* ***General Unsecured Claim*** means a Claim of any kind or nature including, without limitation, on account of trade credit, contract, personal injury (other than personal injury arising from or related to Abuse), or arising from the rejection of an executory

contract or unexpired lease, that (i) is not secured by property of the Estate or otherwise entitled to treatment as a secured Claim under section 506 of the Bankruptcy Code; (ii) is not otherwise entitled to priority under sections 503 or 507 of the Bankruptcy Code; and (iii) is not otherwise an Abuse Claim, Administrative Claim, Professional Fee Claim, Claim for U.S. Trustee Fees, Priority Tax Claim, Non-Tax Priority Claim, Secured Claim, or Pass-Through Claim.

*1.1.101* ***GMVA Claims*** means any Claim against any Diocese Settling Party that arises from, is based upon, or was revived by the Gender-Motivated Violence Act, New York City, N.Y. Code §§ 10-1104-10-1104.1; Int. 2372-2021, Int. 1297-2025.

*1.1.102* ***Granite State*** means Granite State Insurance Company.

*1.1.103* ***Impaired*** means, with respect to any Class, that such Class is "impaired" under the Plan within the meaning of section 1124 of the Bankruptcy Code.

*1.1.104* ***Inbound Contribution Claim*** means any Claim against the Diocese or Additional Debtors asserting rights of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect, or derivative recovery, arising from or related to any Abuse Claim.

*1.1.105* ***Indemnified Claims*** has the meaning ascribed to such term in Section 8.13.3 of this Plan.

*1.1.106* ***Initial Plan Filing Date*** means August 31, 2026, the date that this Plan was initially filed on the docket in the Diocese's Chapter 11 Case.

*1.1.107* ***Insurance Claim Proceeds*** means any amount recovered by the Trust in respect of the Insurance Claims against Non-Settling Insurers assigned to the Trust pursuant to the Insurance Claims Assignment.

*1.1.108* ***Insurance Claims*** means all Claims, causes of action and enforceable rights against a Non-Settling Insurer whether sounding in contract, tort, or otherwise, including equity and bad faith, held by the Diocese, the Additional Debtors or any other Diocese Settling Party or an Abuse Claimant for any reason related to any Abuse Claim asserted or alleged against the Diocese, Additional Debtors or any other Diocese Settling Party, including those for (i) indemnity and payment of any such Abuse Claim; (ii) any Non-Settling Insurer's failure or refusal to provide insurance coverage for any such Abuse Claim under any Insurance Policy; (iii) any Non-Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely compromise and settle any such Abuse Claims against the Diocese pursuant to any Insurance Policy, (iv) to the extent not otherwise encompassed by section (iii) above, any Non-Settling Insurer's failure or refusal to reasonably settle such Abuse Claims, and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing. The term "Insurance Claim" also includes any Claims or causes of action for reimbursement of DOO Entities' Post-Effective Date Costs under any Insurance Policy, but only to the extent such DOO Entities' Post-Effective Date Costs are actually paid by the Trust. For avoidance of doubt, the term "Insurance Claim" does not include any Claims against Settling Insurers.

*1.1.109* ***Insurance Claims Assignment*** means the transfer or assignment to the Trust of Insurance Claims against Non-Settling Insurers as set forth in Section 8.2.3, herein. For the avoidance of doubt, Related Insurance Claims expressly are excluded from the Insurance Claims Assignment.

*1.1.110* ***Insurance Coverage Adversary Proceeding*** means the adversary proceeding commenced by the Diocese before the Bankruptcy Court on July 17, 2023, captioned as *The Roman Catholic Diocese of Ogdensburg, New York, et al. v. Certain Underwriters at Lloyd's, London, et al.*, Adv. Pro. No. 23-80013.

*1.1.111* ***Insurance Policy*** means any known or unknown contract, binder, certificate, or policy of insurance or certificate of liability coverage that any Insurer issued, subscribed any interest in, or has underwritten any risk in, in effect on or before the Effective Date, which actually, allegedly, or potentially provides liability coverage for the Diocese and/or any Additional Debtor, or any of their respective Related Persons.

*1.1.112* ***Insurance Settlement Agreement*** means a settlement agreement among the Diocese and/or applicable Additional Debtors, with the Committee's consent or, following the Effective Date, the consent of the Trust, and a Settling Insurer, consistent with the terms of the Plan, to be included in the Plan Supplement or Filed with the Bankruptcy Court if entered into by the Trust after the Effective Date. The Diocese may not enter into any Insurance Settlement Agreements without the Committee's consent. For the avoidance of doubt, the settlement agreements with Interstate, LMI, Wausau, Evanston, International, and Granite State are Insurance Settlement Agreements.

*1.1.113* ***Insurance Settlement Amount*** means the settlement amount to be paid by each Settling Insurer pursuant to each Insurance Settlement Agreement to which it is a party.

*1.1.114* ***Insurer*** means a Person (including all of its Affiliates, successors, and assigns, and all Agents of the foregoing) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in an Insurance Policy.

*1.1.115* ***Insurer Contribution Claim*** means any Claim, including any Inbound Contribution Claim, by an Insurer where such Insurer contends that it has paid more than its equitable or proportionate share of a Claim, whether expressed in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect, or derivative recovery.

*1.1.116* ***Interests*** means all Claims, "interests" as that term is used in 11 U.S.C. § 363, and other rights of any nature, whether at law or in equity, including all interests or other rights under New York or any other applicable law.

*1.1.117* ***International*** means International Insurance Company.

*1.1.118* ***Interstate*** means Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company and each of their Related Persons.

*1.1.119* ***Joint Tortfeasor*** means any Person, other than the Diocese or an Additional Debtor, who is alleged to be a joint tortfeasor with the Diocese and/or any Additional Debtor in connection with the Abuse or alleged Abuse giving rise to an Abuse Claim.

*1.1.120* ***Lien*** means any "lien" as defined in section 101(37) of the Bankruptcy Code.

*1.1.121* ***Litigation Award*** means a judgment or verdict determining that the Diocese and/or any Additional Debtor is/are liable to a Litigation Claimant on account of a Litigation Claim.

*1.1.122* ***Litigation Claim*** means an Abuse Claim held by a Litigation Claimant, to the extent it is authorized by the Trustee to be litigated against the Diocese and/or an Additional Debtor in accordance with the Plan Documents, including in the courts of the State of New York pursuant to the CVA or ASA.

*1.1.123* ***Litigation Claimant*** means any Abuse Claimant whose Abuse Claim the Trustee, after notice to the Diocese, believes in good faith to be covered, in whole or in part, by policies of insurance issued by one or more Non-Settling Insurers, and who is authorized by the Trustee to liquidate their Abuse Claim in accordance with the Plan, Allocation Protocol, and the Trust Agreement, *provided, however*, no holder of a Post-Statute Filed Abuse Claim shall be permitted to be a Litigation Claimant.

*1.1.124* ***Litigation Claimant Agreement*** means an agreement, in the form attached as Exhibit 6 to the Plan Supplement, pursuant to which each Litigation Claimant agrees and acknowledges, in exchange for the Trustee's authorization to pursue their Litigation Claim, that (i) they may pursue their Litigation Claim solely for the purposes of (a) determining any liability that the Diocese and/or any Additional Debtor may have with respect to their Litigation Claim, (b) determining the amount of that liability, and (c) pursuing Insurance Claims against Non-Settling Insurers; (ii) any Litigation Award obtained in respect of such Litigation Claim may not be enforced (a) against any Protected Party and/or any of the non-insurance assets of the Diocese or any Additional Debtor or (b) otherwise in any manner that violates the Settling Insurer Injunction; (iii) all Claims held by such Litigation Claimant against the Diocese or any Additional Debtor shall automatically and without further action be fully released and discharged upon the occurrence of the applicable Abuse Claims Discharge Date; (iv) if the Litigation Claimant obtains a judgment against the Diocese or any Additional Debtor, the Litigation Claimant shall take any action reasonably requested of them to enable the Diocese or any Additional Debtor (or any successor Person) to transfer, mortgage, or otherwise encumber any real or personal property free and clear of any judgment Lien, so long as such action does not have a material adverse effect on the Litigation Claimant's or Trustee's rights with respect to any Insurance Claim arising from the Litigation Claim; and (v) each of the Protected Parties is an intended third party beneficiary of such Litigation Claimant Agreement.

*1.1.125* ***Lloyd's Underwriters*** means: (i) all underwriters, members, or Names at Lloyds, London (including former underwriters, members, or Names) who through their participation in syndicates (including those identified on **Exhibit __** to the applicable Insurance Settlement Agreement) severally subscribed, each in his or her own proportionate share, one or

more of the Insurance Policies. "Lloyd's Underwriters" shall also include all Underwriters, members, or Names at Lloyd's, London (including former underwriters, members, and Names), whether or not they participated in the syndicates identified in **Exhibit __** to the applicable Insurance Settlement Agreement, who, through their participation in syndicates (including those identified on Exhibit __ to the applicable Insurance Settlement Agreement) severally subscribed any Insurance Policies in favor of any Diocese Settling Parties: (a) the existence of which has not presently been established; or (b) the existence of which has been established but as to which identities of Names, members, or syndicates are not presently known. Further, it is expressly understood that (i) Persons are Lloyd's Underwriters only in their capacity as subscribers of the Insurance Policies obtained through a London broker; (ii) all of the Related Persons of the Persons set forth in Section 1.1.122(i) and their respective predecessors and successors, if any, are Persons solely in such capacity; and (iii) all the respective heirs, executors, successors (including Equitas Insurance Limited ("**EIL**") to the extent EIL is a successor to any of the Persons identified in Section 1.1.122(i) with respect to the subject matter of this Agreement), assigns (including any administrator, receiver, trustee, personal representative, or equivalent appointee/s under relevant insolvency law), reinsurers, and retrocessionaires (as such) of any of the Persons identified in Section 1.1.122, if any, are Persons solely in their capacity as such. The Underwriter Third-Party Beneficiaries, who receive certain specified benefits under LMI's settlement agreement, are not Lloyd's Underwriters for the purpose of this definition.

*1.1.126* ***LMI*** means the Lloyd's Underwriters and the London Market Companies.

*1.1.127* ***LMI Entities*** means the London Market Insurers, and their Related Persons, and the LMI Related Persons. The LMI Entities are all Settling Insurers.

*1.1.128* ***LMI Related Persons*** means, with respect to any London Market Insurer, such Person's or Entity's heirs, executors, receivers, trustees, liquidators (provisional or otherwise) or equivalent appointee/s under relevant insolvency law, former shareholders, Affiliates and Agents, all solely in their capacities as such; *provided, however*, that no Excluded Party is an LMI Related Person. LMI Related Persons also include those Lloyd's Underwriters and London Market Companies that subscribed an LMI Insurance Policy either not presently known, or known, but to which the identity of the subscribers is not presently known, claims handling agents, service providers, trustees, reinsurers, retrocessionaires (with respect to the Equitas Entities, "retrocessionaires" includes National Indemnity Company and any other Person from time to time controlled (whether directly or indirectly) by Berkshire Hathaway, Inc., which provides retrocessional reinsurance to any one or more of the Equitas Entities), partners, financial advisors, accountants, and consultants, each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, administrators, and all Persons acting on behalf of, by, through, or in concert with them, each in their capacities as such, with respect to the Insurance Policies. LMI Related Persons include the Underwriter Third-Party Beneficiaries.

*1.1.129* ***London Market Companies*** means the companies doing business in the London insurance market, which severally subscribed, each in its own proportionate share, one or more of the Insurance Policies identified on **Exhibit __** to the applicable Insurance Settlement Agreement. "London Market Companies" also include those companies doing business in the

London insurance market who subscribed any Insurance Policies (i) the existence of which has not presently been established but which provided insurance to a Diocese Settling Party; or (ii) the existence of which has been established but the identity of such company as a subscribing Insurer is not presently known. As used herein, London Market Companies shall mean, in their capacity as such, the named corporate Person, pool companies, as such, and Related Persons. A Person is a London Market Company only in its capacity as a subscriber of the Insurance Policies identified on Exhibit __ to the applicable Insurance Settlement Agreement (as opposed to other insurance policies) in the London insurance markets (as opposed to insurance markets located elsewhere).

*1.1.130* ***Mediator*** means those Persons appointed to serve as mediators during the Diocese's Chapter 11 Case, including: the Honorable Christopher S. Sontchi and the Honorable Melanie Cyganowski.

*1.1.131* ***Medicaid*** means medical assistance provided under a state plan approved under title XIX of the Social Security Act.

*1.1.132* ***Medicare*** means the health insurance program for the aged and disabled under title XVIII of the Social Security Act.

*1.1.133* ***Medicare Beneficiary*** means an individual who is entitled to Medicare benefits and/or who has been determined to be eligible for Medicaid.

*1.1.134* ***Medicare Claim*** means all Claims by CMS, and/or any Agent or successor of CMS charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA or pursuing Claims under MSPA, relating to any payments in respect of any Abuse Claims, including Claims for reimbursement of payments made to Abuse Claimants who recover or receive any Distribution from the Trust, and Claims relating to reporting obligations.

*1.1.135* ***Medicare Eligible*** means an Abuse Claimant who is eligible to receive, is receiving, or has received Medicare benefits.

*1.1.136* ***MMSEA*** means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)" which imposes reporting obligations on those Persons with payment obligations under the MSPA.

*1.1.137* ***MSPA*** means 42 U.S.C. § 1395y *et seq.*, or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

*1.1.138* ***NBT*** means NBT Bank, National Association.

*1.1.139* ***NBT Lien*** means any and all security interests or Liens of NBT with respect to any property of the Diocese.

*1.1.140* ***NBT Secured Debt Documents*** means all loan and security agreements evidencing the secured obligations of the Diocese to NBT.

*1.1.141* ***Neutrality Parties*** means, collectively, (i) the Diocese; (ii) the Additional Debtors; (iii) the Committee; (iv) the Trustee; (v) the Abuse Claimants; (vi) the Abuse Claims Reviewer; and (vii) all Non-Settling Insurers.

*1.1.142* ***Non-Abuse Claim*** means any Claim that is not an Abuse Claim or Inbound Contribution Claim.

*1.1.143* ***Non-Settling Insurer*** means any Insurer that is not a Settling Insurer.

*1.1.144* ***Non-Settling Insurer Policy*** means any Insurance Policy where a Non-Settling Insurer has a duty or obligation to provide coverage to the Diocese and/or any Additional Debtors. For the avoidance of doubt, no Settling Insurer Policy is a Non-Settling Insurer Policy.

*1.1.145* ***Non-Tax Priority Claim*** means a Claim against the Diocese, other than an Administrative Claim, Priority Tax Claim, or Professional Fee Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

*1.1.146* ***Outbound Contribution Claim*** means any Claim or cause of action related to an Abuse Claim that may be asserted by the Diocese or any Additional Debtor against any Person that is not a Protected Party.

*1.1.147* ***Parish*** means any past or present Roman Catholic parish located within the geographical territory of the Diocese or subject to the canonical jurisdiction of the Bishop of Ogdensburg, together with any corporation or other Entity recognized under civil law that holds title to temporal property for, or on behalf of, any such parish.

*1.1.148* ***Pass-Through Claim*** means any Disputed Non-Abuse Claim which the Diocese elects to treat as a Pass-Through Claim pursuant to the terms of the Plan.

*1.1.149* ***Perpetrator(s)*** means the individual natural Person(s) who perpetrated the acts of Abuse or alleged Abuse giving rise to any Abuse Claims.

*1.1.150* ***Perpetrator of the Diocese*** means a Perpetrator: (1) who was an Agent of the Diocese or any Additional Debtor when such Person committed an act of Abuse; or (2) for whom or for whose actions the Diocese or any Additional Debtor was otherwise responsible.

*1.1.151* ***Person*** means an individual, any corporation, corporation sole, partnership, association, limited liability company, limited liability partnership, joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other Entity, and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of any Entity and

also has the meaning set forth in section 101(41) of the Bankruptcy Code. For the avoidance of doubt, an Entity is a "***Person***", as is each of the Protected Parties.

*1.1.152* ***Petition Date*** means the DOO Petition Date and, solely with respect to the Additional Debtors, the Additional Debtors Petition Date.

*1.1.153* ***Plan*** means this Joint Chapter 11 Plan of Reorganization of the Diocese and the Additional Debtors, as it may be altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

*1.1.154* ***Plan Documents*** means the Plan and the Disclosure Statement, all exhibits and schedules attached thereto, and all Plan Supplements, either in their present form or as each may be amended, supplemented or otherwise modified from time to time.

*1.1.155* ***Plan Proponents*** means, collectively, the Diocese, the Additional Debtors and the Committee.

*1.1.156* ***Plan Supplement*** means one or more supplements to the Plan to be Filed with the Bankruptcy Court in advance of the Confirmation Hearing, which shall contain (a) the Allocation Protocol, the form of Abuse Claim Release Agreement, the form of Trust Agreement, the Diocese's non-monetary commitments, and the form of Litigation Claimant Agreement, all in form and substance acceptable to each of the Plan Proponents in their respective sole discretion; (b) a list of all executory contracts and leases designated by the Diocese in its sole discretion to be assumed pursuant to the Plan; and (c) each Insurance Settlement Agreement entered into prior to the Confirmation Date.

*1.1.157* ***Post-Confirmation Claim*** means an Abuse Claim against one or more Additional Debtors that is evidenced by a Proof of Claim filed after entry of the Confirmation Order by the Bankruptcy Court and in accordance with the Additional Debtors Abuse Claim Bar Date and Section 12.7 of this Plan; provided, however, a Post-Confirmation Claim shall not include any Claim (a) for which the holder of such Claim is also the holder of a Previously Asserted Abuse Claim, (b) where the holder of such Claim has been provided with a Class 4 Ballot at least twenty-one (21) days prior to the Voting Deadline, or (c) where the holder of such Claim has cast a Ballot in Class 6, regardless of how or when such Ballot was received.

*1.1.158* ***Post-Effective Date Preconditions to Coverage*** means those preconditions and contractual requirements (if any): (a) which the Diocese and Additional Debtors must satisfy under Non-Settling Insurer Policies and applicable law as a predicate to pursuing an Insurance Claim, and (b) that the Non-Settling Insurer Policies and applicable law impose as a condition to providing coverage under such Non-Settling Insurer Policies, in each case to the extent required to be satisfied or performed following the Effective Date.

*1.1.159* ***Post-Statute Filed Abuse Claims*** means any Abuse Claim, including any Post-Confirmation Claim, filed before the Additional Debtors Abuse Claim Bar Date but after the Diocese Bar Date, or any Abuse Action Filed before the Additional Debtors Abuse Claim Bar Date, but after August 14, 2021; provided, however, that any Abuse Action that was Filed pursuant to the ASA on or before November 23, 2023 shall not be deemed a Post-Statute

Filed Abuse Claim. In the case of any amended Abuse Claim, the original date on which the Abuse Claim was Filed shall be deemed the filing date of the Claim.

*1.1.160* ***Previously Asserted Abuse Claim*** means any Abuse Claim for which the holder of such Abuse Claim has, on or before the entry of the Confirmation Order by the Bankruptcy Court (a) Filed a Proof of Claim in the Chapter 11 Cases, regardless of whether such Claim is an Expunged Abuse Claim, and regardless of whether such proof of claim was timely filed in accordance with the Bar Date, or (b) Filed an Abuse Action against the Debtor or the Additional Debtors, regardless of whether such Abuse Action has been dismissed or remains pending, and regardless of whether such Abuse Action was timely commenced under applicable state law.

*1.1.161* ***Priority Tax Claim*** means any Claim against the Diocese entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

*1.1.162* ***Professional Fee Claim*** means a Claim against the Diocese for compensation for legal or other professional services and related reimbursement of expenses under sections 327, 328, 330(a), 331 or 503(b) of the Bankruptcy Code.

*1.1.163* ***Professionals*** means all professionals employed in the Chapter 11 Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

*1.1.164* ***Protected Parties*** means the Diocese, the Additional Debtors, the Settling Insurers, and any Settling Insurer Covered Persons.

*1.1.165* ***Purchased Property*** means, pursuant to each such Settling Insurer's Insurance Settlement Agreement, any and all right, title and interest of the Diocese Settling Parties in and to the Settling Insurer Policies, Related Insurance Claims and Coverage Claims.

*1.1.166* ***Reduction Amount*** has the meaning ascribed to such term in section 12.6.2.b. of the Plan.

*1.1.167* ***Related Insurance Claims*** means:

a. all Claims, causes of action and enforceable rights against any Settling Insurer Releasee, any Settling Insurer's Related Persons or any LMI Related Persons, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by any Person for any reason related to any Abuse Claim or Insurance Policy, including those for (i) indemnity and payment of any such Abuse Claim; (ii) any Settling Insurer's failure or refusal to provide insurance coverage for any such Abuse Claim under any Insurance Policy; (iii) any Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Settling Insurer to timely compromise and settle any such Abuse Claims against the Diocese or any Additional Debtor; (iv) to the extent not otherwise encompassed by section (iii) above, any Settling Insurer's failure or refusal to

reasonably settle such Abuse Claims; and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing; and

b. all Extra-Contractual Claims, against any Settling Insurer Releasee or any Settling Insurer's Related Persons, or any LMI Related Persons; and

c. all other Claims and causes of action against any Settling Insurer Releasee, any Settling Insurer's Related Persons, or any LMI Related Persons that are under, arise out of, relate (directly or indirectly) to, or connect in any way with the Insurance Policies, including any Direct Action Claims.

*1.1.168* ***Related Person*** means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former shareholders, members, Affiliates (in connection with any Insurer), subsidiaries, employees, Agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such; *provided, however*, that no person or entity shall be a Related Person if such person or entity is an Excluded Party.

*1.1.169* ***Release*** means the release of the Protected Parties from all Class 4 Claims.

*1.1.170* ***Released Insurance Claims*** means all Claims purchased by the Settling Insurers and/or released by the Diocese and Additional Debtors pursuant to the Insurance Settlement Agreements.

*1.1.171* ***Released Parties*** means (a) the Diocese; (b) the Additional Debtors; (c) each Settling Insurer, but only to the extent that such Settling Insurer's liability is under, arises out, relates (directly or indirectly) to, or connects in any way with the Settling Insurer Policies or otherwise from liabilities covered by the Settling Insurer Policies (including for the avoidance of doubt, Related Insurance Claims), provided, however, that "Released Parties" shall not include: (x) any Perpetrator; (y) the Holy See; or (z) any religious order, diocese, or archdiocese (other than the Diocese), unless such Entity is identified as an Additional Debtor on Exhibit A hereto.

*1.1.172* ***Releasing Parties*** has the meaning ascribed to such term in Section 12.10 of the Plan.

*1.1.173* ***Residual Assets*** means, after the Diocese makes its contribution to the DOO Entities' Cash Payment, the Insurance Claims Assignment, and the transfer of Outbound Contribution Claims to the Trust, and except for (i) any Insurance Policies to be retained by the Diocese pursuant to Section 7.5 of this Plan and (ii) the Purchased Property and Released Insurance Claims, all residual property and assets of the Diocese and/or the Estate, including all charitable assets subject to Donor Restrictions, all property to which the Diocese holds legal title only, and all rights with respect to any Avoidance Actions or other causes of action belonging to the Diocese or its Estate.

*1.1.174* ***Sale Order*** or ***Sale Orders*** means the order or orders approving any Insurance Settlement Agreements.

*1.1.175* ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs Filed by the Diocese in its Chapter 11 Case on August 31, 2023 [Docket Nos. 107 and 108], as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Effective Date.

*1.1.176* ***School*** means a past or present Catholic school owned by the Diocese or any Additional Debtors, including those identified as such on Exhibit A attached hereto, but does not include schools owned by any Excluded Party.

*1.1.177* ***Secured*** means, with respect to any Claim against the Diocese, a Claim to the extent (i) secured by a Lien on property of the Estate (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Diocese, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (ii) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code but, with respect to both of the foregoing clauses (i) and (ii), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

*1.1.178* ***Settling Insurer*** means any Insurer that is party to an Insurance Settlement Agreement with the consent of the Committee and the Diocese. For the avoidance of doubt, Interstate, the LMI Entities, Granite State, Wausau, Evanston, and International are Settling Insurers. A Settling Insurer's Related Persons shall receive the benefits and protections afforded to a Settling Insurer under the Plan; provided, however, that if such Related Person is a Related Person by virtue of being a predecessor, successor, and assign of a Settling Insurer, such Related Person shall only receive the benefits and protections afforded to a Settling Insurer under the Plan to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

*1.1.179* ***Settling Insurer Covered Person*** means any Person that has or may have a Claim to insurance coverage under a Settling Insurer Policy. For the avoidance of doubt and notwithstanding anything to the contrary herein, no Excluded Party may be a Settling Insurer Covered Person.

*1.1.180* ***Settling Insurer Injunction*** means the injunction defined in Section 12.5 of this Plan.

*1.1.181* ***Settling Insurer Policy*** means each Insurance Policy (or the coverage part(s) of such policy) that is canceled, settled, or sold back to a Settling Insurer pursuant to the Insurance Settlement Agreement with such Settling Insurer, provided, however, that in no instance will a current Insurance Policy be cancelled, settled, or sold back to a Settling Insurer except to the extent that such Insurance Policy provides coverage for Abuse Claims that will be Channeled Claims or Barred Claims under the Plan.

*1.1.182* ***Settling Insurer Releasee*** means each Settling Insurer and each of its or their respective past, present, and future parents, subsidiaries, Affiliates, and divisions; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, Affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, solely in their respective capacities as such; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, solely in their respective capacities as such, and all Persons acting on behalf of, by, through, or in concert with them. "***Settling Insurer Releasees***" further includes the reinsurers and retrocessionaires of each Settling Insurer, solely in their capacities as such with respect to a Settling Insurer Policy.

*1.1.183* ***State Court Counsel*** is defined in the Introduction section above.

*1.1.184* ***Stretto*** means Stretto, Inc., in its capacity as the claims and noticing agent for the Diocese.

*1.1.185* ***Target Policy*** means any Insurance Policy issued by a Non-Settling Insurer that is alleged to afford coverage for any Litigation Claim.

*1.1.186* ***Timely Abuse Action*** means an Abuse Action which, at the time of its commencement, would not be subject to an affirmative defense by the Diocese and/or any Additional Debtor that such Abuse Action (i) is barred by the provisions of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, or (ii) is otherwise untimely pursuant to N.Y. C.P.L.R. § 214 or any other statutes of limitation or repose under applicable law. For avoidance of doubt, the failure of any Abuse Claimant to name the Diocese or Additional Debtor as a defendant in an Abuse Action because of the application of any stay arising pursuant to section 362 of the Bankruptcy Code shall not prevent any Abuse Action that would otherwise qualify under this definition from being a Timely Abuse Action.

*1.1.187* ***Trust*** means the trust to be established pursuant to the Plan and the Trust Agreement for the satisfaction of all Abuse Claims.

*1.1.188* ***Trust Advisory Committee*** shall have the same definition as in the Trust Agreement.

*1.1.189* ***Trust Agreement*** or ***Trust Documents*** shall mean the trust agreement establishing and governing the Trust, including the Allocation Protocol, as it may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

*1.1.190* ***Trust Assets*** means the Insurance Claims against Non-Settling Insurers assigned to the Trust pursuant to the Plan, Outbound Contribution Claims, and all other property transferred to the Trust pursuant to this Plan, or otherwise acquired by the Trust following the Effective Date, together with any proceeds thereof. For avoidance of doubt, the Trust Assets shall specifically exclude (i) all of the Residual Assets; and (ii) all Settling Insurer Policies, all Claims against Settling Insurers (including, for the avoidance of doubt, Extra-Contractual

Claims) settled, sold and/or released pursuant to the Insurance Settlement Agreements, and all other Purchased Property, and Related Insurance Claims.

*1.1.191* ***Trust Distribution*** means a Distribution by the Trust, in accordance with the provisions of the Plan, the Allocation Protocol, Trust Documents and the Confirmation Order. For the avoidance of doubt, the payment of Trust Expenses shall not be considered Trust Distributions.

*1.1.192* ***Trust Expenses*** means the costs of administering the Trust, including, without limitation, (i) payments to the Trustee and professionals retained to represent the Trust in accordance with the terms of the Trust Agreement; and (ii) the DOO Entities' Post-Effective Date Costs.

*1.1.193* ***Trust Insurance Settlement*** means any Insurance Settlement Agreement entered into between the Trustee, on behalf of the Trust, and any Non-Settling Insurer, following the occurrence of the Effective Date.

*1.1.194* ***Trust Reserve*** means a reserve to be established by the Trustee in accordance with the provisions of the Trust Agreement.

*1.1.195* ***Trustee*** means the trustee of the Trust, who initially will be a Person selected by the Committee, subject to approval by the Bankruptcy Court, at the time of a hearing to consider approval of a disclosure statement for the Plan on no less than fourteen (14) days' notice to all parties receiving ECF notice in this Bankruptcy Case, including the Diocese, and any successor trustee appointed pursuant to the terms of the Plan and/or Trust Agreement.

*1.1.196* ***Underwriter Third-Party Beneficiaries*** means: (i) Resolute and the Equitas Entities; (ii) Equitas Insurance Limited to the extent it is not a successor to the Persons identified in the foregoing section (i) with respect to the subject matter of this Agreement; (iii) Any Person from time to time retained by or on behalf of Lloyd's Underwriters to act as their claims handling agent and/or service provider, solely in such capacity; (iv) The past, present, and future reinsurers and retrocessionaires of the Equitas Entities or any of them, including National Indemnity Company and any other Person from time to time controlled (whether directly or indirectly), by Berkshire Hathaway, Inc., which provides retrocessional reinsurance to any one or more of the Equitas Entities, solely in such capacity; (v) All past, present, and future Agents of the Persons set forth in clauses (i) to (iv), if any, solely in such capacity; and, (vi) The respective heirs, executors, successors and assigns (including any administrator, receiver, trustee, personal representative, liquidator (provisional or otherwise), or equivalent appointee/s under relevant insolvency law), of any of the Persons identified in clauses (i) through (v) above, solely in their capacity as such.

*1.1.197* ***Unimpaired*** means, with respect to any Class, that such Class is not Impaired.

*1.1.198* ***United States Trustee*** means the Office of the United States Trustee for Region 2, which includes the Northern District of New York.

*1.1.199* ***Unknown Abuse Claim*** means any Abuse Claim asserted against the Diocese and/or an Additional Debtor, or otherwise presented to the Trust, that alleges Abuse that occurred prior to the applicable Petition Date, and which is not (i) Filed on or before the Additional Debtors Abuse Claim Bar Date or (ii) the subject of a Timely Abuse Action commenced on or before the Additional Debtors Abuse Claim Bar Date.

*1.1.200* ***Unknown Abuse Claimant*** means a holder of an Unknown Abuse Claim.

*1.1.201* ***U.S. Trustee Fees*** means all fees and charges assessed against the Estates of the Diocese and the Additional Debtors under 28 U.S.C. § 1930 together with interest, if any, under 31 U.S.C. § 3717.

*1.1.202* ***Voting Deadline*** means the deadline established by the Court for claimants entitled to vote on the Plan to submit ballots accepting or rejecting the Plan.

*1.1.203* ***Wausau*** means Employers Insurance Company of Wausau (f/k/a Employers Insurance of Wausau A Mutual Company f/k/a Employers Mutual Liability Insurance Company of Wisconsin), Wausau Underwriters Insurance Company, Nationwide Insurance Company of America, Nationwide Mutual Insurance Company (f/k/a Farm Bureau Mutual Automobile Insurance Company), and each of their past and present parents, subsidiaries, Affiliates, and divisions solely in their respective capacities as such.

**1.2 Interpretation: Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Disclosure Statement, and if not defined therein, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit, or schedule as it may have been amended, restated, revised, supplemented, or otherwise modified. If a time or date is specified for any payments or other Distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation" and "but not limited to," and the phrase "relating to," "relate to," or "related to" mean "in any way, directly or indirectly, with regard to, by reason of, based on, arising from, arising out of, relating to, or in any way connected with." (The words "include," "includes," and "including," and the phrases "relating to," "relate to," and "related to" are not capitalized herein.)

**1.3 Exhibits.**

All exhibits to the Plan and any other Plan Documents are hereby incorporated by reference and made part of the Plan as if set forth fully herein.

**1.4 Time Periods.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

## SECTION 2. TREATMENT OF CLAIMS

**2.1 Unclassified Claims.**

2.1.1 ***Administrative Claims.*** Administrative Claims are Claims for costs or expenses incurred in the administration of the Chapter 11 Cases of the Diocese and Additional Debtors, which are Allowed pursuant to section 503(b) of the Bankruptcy Code. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as described in this Section 2.1 of the Plan. Except as otherwise provided in the Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different and less favorable treatment than provided under the Plan, or by order of the Bankruptcy Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim as soon as practicable after the later of: (i) the Effective Date; or (ii) the date on which such Claim becomes an Allowed Administrative Claim. Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese.

With respect to any trade Claims arising after the applicable Petition Date representing obligations incurred by the Diocese or the Additional Debtors in the ordinary course of its business consistent with past practice, such trade Claims shall be paid in the ordinary course of business. As to other Allowed Administrative Claims, except as otherwise provided in the Plan, each holder of an Allowed Administrative Claim: (i) shall be paid by the Diocese or the Additional Debtors as soon as reasonably practicable after the Effective Date or on the date the Order allowing such Administrative Claim becomes a Final Order; and (ii) shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount thereof, unless the holder agrees to less favorable treatment of such Allowed Administrative Claim.

Administrative Claims representing obligations incurred by the Diocese or the Additional Debtors after the date and time of the entry of the Confirmation Order shall not be subject to application to the Bankruptcy Court and may be paid by the Diocese or the Additional Debtors in the ordinary course of business and without Bankruptcy Court approval.

2.1.2 ***Priority Tax Claims.*** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax

Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Diocese, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of: (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; provided, however, that the Diocese reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium. The holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising from, or in connection with any Priority Tax Claim and any demand for such penalty will be deemed Disallowed by the confirmation of the Plan.

2.1.3 ***Non-Tax Priority Claims.*** Unless the holder of an Allowed Non-Tax Priority Claim and the Diocese agree to a different treatment, on, or as soon as reasonably practicable after, the later of: (i) the Effective Date; or (ii) the date on which such Non-Tax Priority Claim becomes an Allowed Claim, each holder of such an Allowed Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, (a) Cash equal to the unpaid portion of such Allowed Claim or (b) such other less favorable treatment as to which the Diocese and the holder of such Allowed Claim shall have agreed upon in writing. The Trust shall not be responsible for payment of Non-Tax Priority Claims. Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Non-Tax Priority Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Non-Tax Priority Claim and the Diocese.

2.1.4 ***Professional Fee Claims.*** In accordance with section 1123(a)(1) of the Bankruptcy Code, Professional Fee Claims have not been classified and are treated as described herein. All Professionals or other Persons requesting an award by the Bankruptcy Court of Professional Fee Claims shall: (i) File their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 60 days after the Effective Date; and (ii) be paid in full, in Cash, by the Diocese or the Additional Debtors, as applicable (a) as soon as practicable after the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order, or (b) upon such terms as may exist pursuant to order of the Bankruptcy Court or as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Diocese or the Additional Debtors, as applicable. The Diocese and the Additional Debtors are authorized to pay their Professionals for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

Professional Fee Claims of Professionals employed by the Committee, which are incurred prior to the Effective Date of the Plan in connection with the implementation and consummation of the Plan, may be paid by the Diocese, after notice and a hearing, or by the Trust from contributions by the Diocese in addition to the amounts payable to Abuse Claimants under the Plan. Professional Fee Claims of Professionals employed by the Diocese for services rendered prior to the Effective Date shall not be paid by the Trust.

2.1.5 ***U.S. Trustee Fees***. U.S. Trustee Fees include all fees and charges assessed against the Diocese under 28 U.S.C. § 1930, together with interest, if any, under 31

U.S.C. § 3717. All U.S. Trustee Fees due and owing but not paid prior to the Effective Date shall be paid by the Diocese on the Effective Date. In no event shall the payments made to the Trust pursuant to Sections 2, 5, 7 or 8 of this Plan by any Person other than the Diocese be considered "disbursements" under 28 U.S.C. § 1930, nor shall any payment made by the Trust to any Person be considered a disbursement under 28 U.S.C. § 1930. The Additional Debtors must comply with requirements set forth in the *Case Management Order Establishing Procedures for the Filing and Administration of Prepackaged Chapter 11 Cases by Parishes and Affiliated Entities of the Diocese of Ogdensburg* [Docket No. ___].

### 2.2 Classification and Specification of Treatment of Claims.

All Claims, except those described in Section 2.1, are placed in the following Classes of Claims, pursuant to section 1123(a)(1) of the Bankruptcy Code, which section specifies the treatment of such Classes of Claims and of their Impaired or Unimpaired status, pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan. Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and Distribution.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the respective treatments set forth below. This Plan will not provide any Distribution on account of a Claim to the extent that such Claim has been Disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any Distribution on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Bankruptcy Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Bankruptcy Court shall not be Impaired by this Plan and the rights of the holders of such Claims as provided in such orders shall not be altered by this Plan. Any holder of any Claim in any Class may agree, pursuant to section 1123(a)(4) of the Bankruptcy Code, to a treatment of such Claim that is less favorable (but not more favorable) than any other Claim in such Class.

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation of the Plan, and Distributions pursuant to the Plan:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | U.S. Trustee Fee Claims | No | Does Not Vote |
| 1 | Secured Claim of NBT | No | Deemed to Accept |

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| 2 | Pass-Through Claims (against the Diocese) | No | Deemed to Accept |
| 3 | General Unsecured Claims (against the Diocese) | No | Deemed to Accept |
| 4 | Abuse Claims (against the Diocese and Additional Debtors) | Yes | Entitled to Vote |
| 5 | Inbound Contribution Claims | Yes | Deemed to Reject |
| 6 | Ride Through Claims (against the Additional Debtors) | No | Deemed to Accept |

**2.3 Classes of Claims.**

2.3.1 ***Class 1 – Secured Claim of NBT, National Association***

**Classification:** Class 1 is composed of the Secured Claim held by NBT National Association in connection with the NBT Secured Debt Documents.

**Treatment:** The Diocese is current with respect to all obligations due under the NBT Secured Debt Documents and will continue to pay those obligations in accordance with the terms of the NBT Secured Debt Documents. The Trust shall not be responsible for the payment of the Class 1 Claim. The NBT Lien shall attach to the Residual Assets held by the Diocese, to the same extent, validity, and priority as it attached to the assets of the Diocese prior to the DOO Petition Date, and the Diocese shall assume all obligations under the NBT Secured Debt Documents.

**Voting:** The Class 1 Claim is Unimpaired, and therefore, the holder of the Class 1 Claim is deemed to have accepted the Plan and is not entitled to vote.

2.3.2 ***Class 2 – Pass-Through Claims (against the Diocese).***

**Classification:** Class 2 includes all Pass-Through Claims.

**Treatment:** Upon the later to occur of the Effective Date and the date on which the Diocese designates a Claim as a Pass-Through Claim, the holder of such Pass-Through Claim shall be deemed to have granted relief from the automatic stay with respect to its Pass-Through Claim, such Pass-Through Claim shall not be subject to the Diocese Discharge, and the parties shall retain their respective rights, remedies, claims, and defenses as they existed on the applicable Petition Date. The Diocese shall designate all Pass-Through Claims no later than sixty (60) days after the Effective Date. The Trust shall not be responsible for the payment of any Pass-Through Claims.

**Voting:** Class 2 Pass-Through Claims are Unimpaired, and therefore, holders of Class 2 Claims are deemed to have accepted the Plan and are not entitled to vote.

2.3.3 ***Class 3 – General Unsecured Claims (against the Diocese).***

**Classification:** Class 3 Claims include all General Unsecured Claims that are Non-Abuse Claims against the Diocese.

**Treatment:** Except to the extent the holder of an Allowed General Unsecured Claim agrees in writing to accept less favorable treatment as proposed by the Diocese, the Diocese shall pay each holder of an Allowed General Unsecured Claim Cash in the Allowed amount of such General Unsecured Claim on the later of (a) the Effective Date, and (b) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim. The foregoing payment shall be in full satisfaction, settlement, and release of, and in exchange for, such Allowed General Unsecured Claim. Notwithstanding anything to the contrary set forth above, no payments shall be made to any Protected Party on account of any General Unsecured Claim and all Protected Parties shall be deemed to have withdrawn any General Unsecured Claim with prejudice as of the Effective Date in consideration of the Channeling Injunction and Release provisions provided in Section 12 of the Plan.

The Trust shall not be responsible for payment of General Unsecured Claims.

**Voting:** Class 3 General Unsecured Claims are Unimpaired, and therefore, holders of Class 3 Claims are deemed to have accepted the Plan and are not entitled to vote.

2.3.4 ***Class 4 – Abuse Claims.***

**Classification:** Class 4 Claims include all asserted and unasserted Abuse Claims.

**Treatment:**

a. On the Effective Date and subject to the Plan provisions, the Trust shall assume liability for all Abuse Claims against the Diocese and all Additional Debtors, including Adult Abuse Claims, Unknown Abuse Claims and Post-Statute Filed Abuse Claims, in accordance with and under the Plan and Trust Documents. Distributions shall be made to holders of Abuse Claims on a fair and equitable basis, pursuant to and in accordance with the terms of this Plan and the Trust Documents. The Trust will make an initial distribution to holders of Filed Abuse Claims and will reserve at least $3 million to fund (i) operational expenses, (ii) costs of litigation with Non-Settling Insurers, (iii) the DOO Entities' Post-Effective Date Cost Reserve, (iv) any other reserves required under the Plan or Trust Documents, and (v) any other reserves as determined necessary by the Trustee, but not to include any reserves established to provide indemnification to Settling Insurers. Thereafter, the Trust will make additional distributions in accordance with the Trust Documents.

b. Class 4 Claimants shall have their Claims treated in accordance with the Allocation Protocol.

c. Except with respect to Litigation Claims brought by authorized Litigation Claimants in accordance with the terms of this Plan, the right of any

Class 4 Claimant to a trial by jury or otherwise against the Diocese and/or any Protected Parties is waived and released upon the occurrence of the Effective Date, and any Class 4 Claim they may hold will be solely determined by the Abuse Claims Reviewer in accordance with the Allocation Protocol.

d. The Allocation Protocol was developed by the Committee, in consultation with State Court Counsel and was not developed by, or submitted for the approval of, any of the Protected Parties, nor are the Protected Parties deemed to have accepted or acquiesced in the adoption of the Allocation Protocol. For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the Settling Insurers' support for the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in the terms or use of the Allocation Protocol in any proceeding; the Settling Insurers take no position on the Allocation Protocol. If a Class 4 Claim is denied payment, in whole or in part, pursuant to the Allocation Protocol, the holder of such Class 4 Claim will have no rights against any of the Protected Parties relating to such Class 4 Claim.

e. None of the Trust, the Diocese or the Additional Debtors shall have any obligation to take any action to enforce an Insurance Policy of a Non-Settling Insurer, including any obligation to commence/prosecute any action against any Non-Settling Insurer or to defend an action commenced by a Non-Settling Insurer, though the Trust (or the Diocese, as applicable), may do so in their sole and absolute discretion.

f. The payment of the Class 4 Claims by the Trust will not, prior to the occurrence of the Abuse Claim Discharge Date, constitute a release, accord, or novation of the Diocese's or the Additional Debtors' liability with respect to the Class 4 Claims; *provided*, *however*, for the avoidance of doubt: (i) the entirety of the Diocese's liability with respect to the Class 4 Claims shall be discharged under Bankruptcy Code section 1141(d), in accordance with Section 12.2, and all of the Additional Debtors' liabilities with respect to any Class 4 Claims are subject to the Channeling Injunction and the releases under the Plan; (ii) all holders (including Class 4 Claimants) of Channeled Claims are subject to the Channeling Injunction; and (iii) all holders (including Class 4 Claimants) of Barred Claims against the Settling Insurers are subject to the Settling Insurer Injunction. Under no circumstances shall the Abuse Claims Reviewer's review of a Class 4 Claim affect the rights of a Non-Settling Insurer.

g. Nothing in this Plan affects, diminishes, or impairs any Class 4 Claimant's rights against any Joint Tortfeasor, including that Joint Tortfeasor's comparative fault or joint and several liability for Abuse, if any. In any litigation against a Joint Tortfeasor, nothing in this Plan or the Plan Documents shall be deemed an adjudication of a Class 4 Claim for any purpose or a limitation on the recovery against such Joint Tortfeasor; *provided, however*, that the Channeling Injunction and Settling Insurer Injunction respectively bar any recovery of a Channeled Claim or Barred Claim from any Settling Insurer Releasees, any

Settling Insurer's Related Persons, or the property or assets of either (including the Purchased Property).

h. The Diocese shall cooperate with the Abuse Claims Reviewer and/or the Trustee as reasonably requested by the Abuse Claims Reviewer and/or the Trustee in connection with the administration of the Allocation Protocol, provided that any DOO Entities' Post-Effective Date Costs incurred in connection therewith are paid in accordance with the DOO Entities' Post-Effective Date Costs Procedures.

i. The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the Trust Distributions Class 4 Claimants receive, or are entitled to receive, based on the Plan, Trust Agreement, or Allocation Protocol. For the avoidance of doubt, (i) determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Trust shall not constitute a determination of the Diocese's or any Additional Debtor's liability or damages for Class 4 Claims; and (ii) under no circumstances shall the Abuse Claims Reviewer's review of a Class 4 Claim affect, or be construed to affect, the rights of a Non-Settling Insurer. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Class 4 Claims. Any such recoveries by the Trust from Non-Settling Insurers will become Trust Assets to be distributed pursuant to Section 4.5 of this Plan and the Allocation Protocol.

j. As of the Effective Date of the Plan, and without any further order from the Bankruptcy Court or further action from any party, the Trustee shall fully assume (a) the liability of the Protected Parties for all Channeled Claims, in each case pursuant to the Channeling Injunction set forth in Section 12.3 of the Plan and (b) the liability (if any) of the Settling Insurers for any and all Barred Claims. All Class 4 Claims shall be satisfied solely from the Trust as set forth in the Plan, the Trust Agreement, and the Allocation Protocol; *provided, however*, such assumption of Class 4 Claims shall not prevent Litigation Claimants from asserting Litigation Claims to the extent provided for herein; *provided further*, that the Channeling Injunction and Settling Insurer Injunction respectively prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property).

k. No Person, other than the Committee or, following the Effective Date, the Trustee, may: (i) object to any Class 4 Claim; or (ii) challenge the merit, validity, or amount of any Class 4 Claim, except that nothing in the Plan shall prevent the Diocese, any Additional Debtor or any other Diocese Settling Party, or with respect to any Class 4 Claim implicating a Non-Settling Insurer Policy, a Non-Settling Insurer, from asserting any legal or factual defenses that the Diocese, an Additional Debtor, and/or Non-Settling Insurer may have in response to any Litigation Claim. Any objection or challenge to a Class 4 Claim pending

as of the Effective Date is deemed withdrawn and shall not be refiled. With the exception of the Trustee's objections or challenges to a Class 4 Claim, or the adjudication or settlement of a Litigation Claim, Class 4 Claims shall be treated in accordance with the Allocation Protocol and shall not be subject to any other review or judicial consideration. Nothing in this Plan or the Plan Documents shall constitute an admission by any Protected Party as to the validity or amount of any Class 4 Claim, nor shall anything herein or therein (i) restrict the Diocese or the Additional Debtors from satisfying any Post-Effective Date Preconditions to Coverage; or (ii) modify the terms of any Non-Settling Insurer Policy with respect to any failure of the Diocese or the Covered Party to satisfy any Post-Effective Date Preconditions to Coverage.

l. No Class 4 Claimant shall receive a Distribution from the Trust until such Class 4 Claimant has executed and delivered to the Trust an Abuse Claim Release Agreement attached to the Plan Supplement as Exhibit 2. Each Class 4 Claimant must release all Claims against the Protected Parties. The Trust must provide copies of all executed Abuse Claim Release Agreements (a) to the Protected Parties, and (b) upon request, to any Joint Tortfeasor that has executed a non-disclosure or confidentiality agreement.

m. To preserve coverage under any Non-Settling Insurer Policy, subject to the provisions of Section 12.2 of the Plan, each Class 4 Claimant specifically reserves any Abuse Claims they may have against the Diocese or any Covered Party that implicate coverage under any Non-Settling Insurer Policy, but recourse is limited to the proceeds of the Insurance Claims that may be recoverable by the Trust from any Non-Settling Insurers. Class 4 Claims will be released as against the Diocese, and the Additional Debtors only upon the occurrence of the applicable Abuse Claim Discharge Date as provided in Sections 12.2.4 and 12.10 below. Class 4 Claimants may not under any circumstance recover any Channeled Claims (including Abuse Claims) or Barred Claims from any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property); all such Claims are subject to the Channeling Injunction and Settling Insurer Injunction and are released as set forth herein.

n. Subject to and conditioned upon entry of the Confirmation Order as contemplated in Section 11.1.1 of the Plan, Class 4 Claimants shall automatically and without further action be deemed to irrevocably appoint the Committee as their attorney in fact and to grant to the Committee the authority to negotiate and agree to modifications of the treatment accorded to Class 4 Claims, and the Plan generally on their behalf, between the Confirmation Date and the Effective Date, to the extent such modifications are necessary to satisfy or obtain the waiver of any of the conditions precedent to the Plan's Effective Date set forth in Sections 11.1.2 through 11.1.10, subject to the Committee's fiduciary duties to act on behalf of all creditors.

o. The Allocation Protocol and the terms of this Plan concerning financial treatment of Abuse Claims (the "Abuse Claims Plan Provisions") were developed by the Committee; they were not developed by the Diocese, the Additional Debtors or any Settling Insurer, nor were they submitted for the approval of any Settling Insurer, and the Settling Insurers have not (and shall not be deemed to have) accepted or acquiesced in the adoption of the Allocation Protocol or the Abuse Claims Plan Provisions. For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the Settling Insurers' support for the Allocation Protocol or the Abuse Claims Plan Provisions, and no party shall argue that the Settling Insurers agreed to or acquiesced in the terms or use of the Allocation Protocol or the Abuse Claims Plan Provisions in any proceeding; the Settling Insurers take no position on the Allocation Protocol or the Abuse Claims Plan Provisions.

**Voting:** Class 4 Claims are Impaired, and each holder of a Class 4 Claim is entitled to vote to accept or reject the Plan. Only for purposes of voting, each Class 4 Claim is deemed to be Allowed in the amount of $1.00.

2.3.5 ***Class 5 – Inbound Contribution Claims.***

**Classification:** Class 5 Inbound Contribution Claims include any Claim asserted against the Diocese or any Additional Debtor for indemnity, contribution, or reimbursement arising out of, or related to, the Claimant's liability to pay or defend any Abuse Claim.

**Treatment:** Class 5 Claims shall be Disallowed and extinguished and there will be no Distributions to the holders of Class 5 Claims on account of such Class 5 Claims.

**Voting:** Class 5 Inbound Contribution Claimants will not receive or retain any property under the Plan and therefore are deemed to have rejected the Plan. Class 5 will not vote on the Plan.

2.3.6 ***Class 6 – Ride Through Claims (against the Additional Debtors).***

**Classification:** Class 6 Ride Through Claims (against the Additional Debtors) includes Claims filed against the Additional Debtors that are not Abuse Claims or Inbound Contribution Claims.

**Treatment:** The Additional Debtors will continue to meet their obligations on account of Claims that are not Abuse Claims, in the ordinary course of business and as they become due. All rights, claims, and defenses relating to Claims in Class 6 are fully preserved for each Additional Debtor and each Class 6 Claimant.

**Voting:** Class 6 Ride Through Claims (against the Additional Debtors) are unimpaired, and each holder of a Claim against an Additional Debtor that is not an Abuse Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 6 Claims against the Additional Debtors are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Claims, other than Abuse Claims, against the Additional Debtors.

## SECTION 3. ACCEPTANCE OR REJECTION OF THE PLAN

### 3.1 Impaired Classes Vote.

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 3.2 Presumed Acceptance of the Plan.

Classes 1, 2, 3, and 6 Claims are Unimpaired under the Plan, and the holders of such Claims are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 3.3 Presumed Rejection of the Plan.

Class 5 Claims will not receive or retain any property under this Plan. Holders of Class 5 Claims are therefore deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Notwithstanding such presumed rejection, holders of Class 5 Claims will be deemed to consent to the injunctions and releases set forth in the Plan unless they File a timely objection to confirmation of the Plan.

### 3.4 Voting Classes.

Class 4 Claims are Impaired, and the holders of Claims in this Class are entitled to vote to accept or reject this Plan.

### 3.5 Modification of Treatment of Claims.

The Diocese may modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the consent of the holder of the Claim whose Allowed Claim is being adversely affected, or as Allowed by Bankruptcy Court order prior to the Effective Date.

### 3.6 Elimination of Vacant Classes.

Any Class of Claims that does not have, as of the Confirmation Date, at least one Allowed Claim, or at least one Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the

Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**SECTION 4. ABUSE CLAIMS.**

**4.1 Assessment of Abuse Claims.**

Class 4 Abuse Claims will be assessed and paid in accordance with the Allocation Protocol, which is designed to provide an expeditious, efficient, and inexpensive method for determining whether an Abuse Claimant is entitled to a Distribution from the Trust. The Diocese and the Additional Debtors shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee in connection with any inquiries by either related to the administration of the Allocation Protocol, but shall not be required to act in any way that prevents the satisfaction of any Post-Effective Date Preconditions to Coverage under any Non-Settling Insurer Policy, if any (including, if applicable, by cooperating with a Non-Settling Insurer). Under no circumstance shall the Abuse Claims Reviewer's review of an Abuse Claim or a Distribution to an Abuse Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer.

**4.2 Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol.**

The Abuse Claims Reviewer's determinations are for estimation and Distribution purposes only and shall not constitute findings as to, or the fixing of, facts or liability concerning the Abuse Claims with any binding legal effect. The determination of Abuse Claimants' qualifications, the estimation of Abuse Claims, and the payment of Trust Distributions shall not be construed as an admission of liability by the Diocese, any Additional Debtor, any Defendant in an Abuse Action or alleged Joint Tortfeasor, or the Trust with respect to any Abuse Claim and shall have no *res judicata* or collateral estoppel effect on the Diocese, any Additional Debtor, the Trust, or any Non-Settling Insurer. Trust Distributions do not release the Diocese nor are Trust Distributions an accord or novation of the Diocese's or any Protected Party's liability on account of the Abuse Claims; *provided, however*, that the Channeling Injunction and Settling Insurer Injunction respectively prohibit any Person (including all Abuse Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Protected Party, any Settling Insurer Releasees, any Settling Insurer's Related Person, or the assets or property of either of the foregoing (including Purchased Property).

The Trust's act of making a Distribution to an Abuse Claimant is immaterial to, and shall not be construed as, a determination or admission of the Diocese's, any Additional Debtor's, or any Non-Settling Insurers' liability for, or damages with respect to, any Abuse Claim. The determination of qualification, estimation of Abuse Claims, and the payment of Distributions is not a settlement, release, accord, or novation of any Abuse Claim. The determination of qualification, estimation of claims, and payment of partial Distributions does not impair a Litigation Claimant's right to obtain a judgment, including a judgment based on joint and several liability, against the Diocese and/or an Additional Debtor or any Non-Settling Insurer, for purposes of establishing the Diocese's and/or an Additional Debtor's liability with respect to their Litigation Claim, *provided*, *however*, the Channeling Injunction and Settling Insurer Injunction respectively shall prohibit any Person (including all Litigation Claimants) from

asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Protected Party, any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property). Neither the Abuse Claims Reviewer's review of an Abuse Claim and determination of qualification, nor the Trust's estimation of an Abuse Claim or the payment of Distributions shall: (i) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation with the Diocese or the Additional Debtors, Non-Settling Insurers, or any other Person, or (ii) constitute, or be deemed, a determination of the reasonableness of the amount of any Litigation Claim, either individually or in the aggregate with other Litigation Claims, in any coverage litigation with any Non-Settling Insurers. The Trust's estimation of Abuse Claims and payment of Trust Distributions does not create an admission of the fact of liability, or the extent of damages, on behalf of the Diocese and/or any Additional Debtors.

**4.3 Insurance Settlements.**

The Trust shall use reasonable efforts, consistent with the terms of the Trust Agreement and its fiduciary duties to the Trust's beneficiaries, to enter into an Insurance Settlement Agreement with each Non-Settling Insurer.

**4.4 Release and Discharge of Abuse Claims.**

Notwithstanding anything to the contrary herein, each Abuse Claimant must, prior to receiving a Distribution from the Trust, execute and deliver to the Trustee an Abuse Claim Release Agreement in the form attached to the Plan Supplement as Exhibit 2, *provided, however,* to preserve coverage under Non-Settling Insurer Policies, Class 4 Claimants specifically reserve, and do not release, subject to the occurrence of the applicable Abuse Claim Discharge Date, any and all Abuse Claims that they may have against the Diocese and/or any Additional Debtor that implicate coverage under Non-Settling Insurer Policies, but recourse on such Abuse Claims prior to their release is limited to any Trust Distributions as set forth in the Plan, the Trust Agreement, and the Allocation Protocol, and the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable by the Trust from any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards will be handled in accordance with the Plan.

Class 4 Claims will be released and enjoined as against the Diocese and Additional Debtors for any Abuse that may be covered under Non-Settling Insurer Policies only upon the occurrence of the applicable Abuse Claim Discharge Date, as set forth in Sections 12.2.4 and 12.10. Class 4 Claimants will expressly reserve their rights against all Persons, including Joint Tortfeasors, which are not Protected Parties; Joint Tortfeasors will remain severally liable with respect to any Class 4 Claims. For the avoidance of doubt, neither the Channeling Injunction nor the Settling Insurer Injunction, nor any release of a Class 4 Claim, shall be subject to any delayed effectiveness with respect to the Settling Insurers; each shall be immediately effective as to a Settling Insurer upon (a) receipt by the Trust of that Settling Insurer's Insurance Settlement Amount, and (b) the occurrence of the Effective Date.

Any Person that is, or was alleged to be, a Joint Tortfeasor with any of the Diocese Settling Parties in connection with the Abuse that forms the basis of any Class 4 Claim, including a Post-Confirmation Claim, shall not be liable for any Protected Party's share of causal liability or fault and no Protected Party shall be liable for the share of causal liability or fault of any other Protected Party or Joint Tortfeasor.

For the avoidance of doubt, with respect to all Non-Abuse Claims, except as otherwise provided in the Plan, the Diocese's liability on account of such Claims shall be discharged pursuant to the provisions of 1141(d).

**4.5 Distributions to Abuse Claimants.**

4.5.1 ***Distributions Generally***. Abuse Claimants' recoveries under the Plan shall be limited to their Trust Distributions, if any, under the Allocation Protocol and Trust Documents. Abuse Claimants shall not be entitled to collect personally, or otherwise, any additional amounts whatsoever from the Diocese, any Additional Debtor or their respective assets, for any Abuse Claims that are Channeled Claims, even if Abuse Claimants are denied a Trust Distribution. Abuse Claimants shall not be entitled to collect any portion of a Channeled Claim or Barred Claim (including, for the avoidance of doubt, an Abuse Claim) from any Settling Insurer Releasee, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property) under any circumstance.

4.5.2 ***Distributions to Class 4 Claimants.*** A Class 4 Claimant whom the Abuse Claims Reviewer determines to be entitled to a Distribution, will receive a Distribution from the Trust in the amount(s) and at the time(s) provided for in the Allocation Protocol and Trust Documents; *provided, however*, no Class 4 Claimant shall receive a Distribution from the Trust until such Class 4 Claimant has executed and delivered to the Trust an Abuse Claim Release Agreement. Any payment on a Class 4 Claim constitutes a payment for damages on account of a personal physical injury or sickness arising from an occurrence, within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

**4.6 Litigation of Class 4 Claims Against Non-Settling Insurers.**

4.6.1 ***Litigation Claims.***

a. At any time prior to the earlier to occur of the first anniversary of the Effective Date or the applicable Abuse Claim Discharge Date, the Trustee, in accordance with the Allocation Protocol and Trust Agreement, may authorize one or more Class 4 Claimants, at such Claimants' expense, to proceed as a Litigation Claimant by commencing (or resuming prosecution of) an action in any court of competent jurisdiction solely for the purpose of determining any liability that the Diocese and/or any Additional Debtor may have with respect to their Litigation Claim, the amount of that liability, and to pursue Insurance Claims against Non-Settling Insurers. Only a Class 4 Claimant whose claim is covered, in whole or in part, by a Non-Settling Insurer may elect to be a Litigation Claimant.

b. Prior to authorizing a Class 4 Claimant to proceed as a Litigation Claimant, the Trustee shall (i) consult with counsel for the Litigation Claimant, the Diocese and/or any Additional Debtor against whom such Abuse Claimant's Claim is asserted and (ii) require the Abuse Claimant to execute a Litigation Claimant Agreement. The Trustee shall provide a copy of each Litigation Claimant Agreement to the Diocese upon execution thereof, and to any other Additional Debtors upon request.

c. All DOO Entities' Post-Effective Date Costs incurred in connection with Litigation Claims shall be paid in accordance with the provisions of Section 8.11.

d. Consistent with the injunctions and discharge provided for in Section 12 of this Plan, any Litigation Award obtained in respect of any Litigation Claim may not be enforced against (a) any of the Protected Parties, (b) any of the non-insurance property or assets of the Diocese, or any Additional Debtor; (c) the Residual Assets and any other property or assets that are vested in the Diocese pursuant to this Plan, and any property or assets otherwise acquired by the Diocese; or (d) any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property). Any Litigation Award arising from a Litigation Claim shall be paid under the Plan and the Trust Allocation Protocol and shall be fully enforceable solely against, and paid by, any Non-Settling Insurer under the terms of that Non-Settling Insurer's Insurance Policy. Any recovery (including payment of a judgment or an unpaid judgment) from the prosecution of a Litigation Claim is deemed assigned to the Trust to the extent provided in the Plan, including as provided in the Allocation Protocol and Trust Documents.

e. Any holder of an Abuse Claim that elects treatment as a Litigation Claimant will receive, in full and final satisfaction and discharge of their Abuse Claim: (i) rights, to the extent set forth in the Plan and Allocation Protocol, to Distributions from the Trust; and (ii) the right, prior to the occurrence of the applicable Abuse Claim Discharge Date, and subject to the Trustee granting authorization to pursue a Litigation Claim in accordance with the provisions of this Plan, to liquidate his or her Abuse Claim for its full amount according to proof in order to determine the liability of the Diocese or any Additional Debtor (as applicable) for purposes of the Trust seeking recovery from any Non-Settling Insurer that is or may be liable on the Abuse Claim or any Insurance Claim arising therefrom, pursuant to Section 8.8 of this Plan. The Trust shall be authorized to pursue recovery of an unpaid judgment from any Non-Settling Insurer for the benefit of the Trust and all beneficiaries of the Trust. For the avoidance of doubt, the Settling Insurers shall not have any duties or obligations to any Person in connection with a Litigation Claim (including, any duty to defend or indemnify any Person). Further, under no circumstances will a Litigation Claimant or any other Person be able to obtain any recovery whatsoever against (i) any Settling Insurer Releasee, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property), or (ii) any asset of the Diocese or any

Additional Debtor (except for collecting proceeds from any Non-Settling Insurer Policy or other amounts for which a Non-Settling Insurer is deemed to be liable), in connection with a Litigation Claim. For the further avoidance of doubt, the Trustee shall have the sole discretion to (a) authorize a Litigation Claimant to pursue their Litigation Claim; (b) make a final decision as to whether a Litigation Claim is pursued; and (c) make final decisions relating to the management and timing relating to Litigation Claims; provided, however, that the Trust Agreement shall direct that in making such determinations, the Trustee shall take into consideration, and shall use reasonable efforts to minimize the cumulative impact of post-Effective Date litigation on, the business operations and legal and personnel resources of the Diocese and Additional Debtors. For the further avoidance of doubt, nothing set forth in this Section 4.6.1(e)(ii)(c) regarding the Trustee's discretion to make final decisions relating to the management and timing of litigation relating to Litigation Claims shall have any impact on the authority of any court overseeing the Litigation of a Litigation Claim.

4.6.2 ***Claim Enhancement.*** A Litigation Claimant authorized by the Trustee to proceed with their Litigation Claim pursuant to Section 4.6 of the Plan shall be entitled to an enhancement to their point score assigned by the Abuse Claims Reviewer pursuant to the Allocation Protocol (the "Claim Enhancement") as set forth below. Any proceeds recovered by the Trust from a Non-Settling Insurer in connection with a Litigation Claimant's efforts will become Trust Assets pursuant to the Plan and, thus, this Section 4.6.2 is implemented to recognize such Litigation Claimant's efforts to secure a recovery from Non-Settling Insurers for the benefit of all Abuse Claimants that are entitled to Distributions pursuant to the Plan and Allocation Protocol. At such time as the Trustee may make a Distribution from available Trust Assets, the Trustee shall determine which Litigation Claimants have obtained a Claim Enhancement by determining the applicable multiplier (set forth below) each such litigation Claimant has obtained and multiplying that figure by the point score assigned by the Abuse Claims Reviewer to such Litigation Claimant's Abuse Claim. The resulting amount shall be the Litigation Claimant's point score for purposes of calculating the Litigation Claimant's pro rata share of any Trust Distribution. The Trustee shall apply the Claim Enhancements as follows:

a. A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 1.25x if the Trust negotiates a Trust Insurance Settlement or such Litigation Claimant negotiates a settlement agreement of their Litigation Claim after the Litigation Claimant has commenced their lawsuit but prior to such Litigation Claimant being deposed, examined, or interviewed by opposing counsel in such Litigation Claimant's case.

b. A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 1.4x if the Trust negotiates a Trust Insurance Settlement or such Litigation Claimant negotiates a settlement agreement of their Litigation Claim after the Litigation Claimant has been deposed, examined, or interviewed by opposing counsel in such Litigation Claimant's case but before the Litigation Claimant defeats summary judgment.

c. A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 3.0x if the Trust negotiates a Trust Insurance Settlement or such Litigation Claimant negotiates a settlement agreement of their Litigation Claim after the Litigation Claimant has defeated summary judgment but prior to thirty (30) days before trial of the Litigation Claimant's Litigation Claim is scheduled to start.

d. A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 3.5x if the Trust negotiates a Trust Insurance Settlement or such Litigation Claimant negotiates a settlement agreement of their Litigation Claim within thirty (30) days of the start of trial of the Litigation Claimant's Litigation Claim but prior to a jury verdict.

e. A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 4.0x if the Litigation Claimant obtains a jury verdict in their favor.

4.6.3 ***Withdrawal of Litigation Claim.*** A Litigation Claimant may withdraw his or her election to be a Litigation Claimant at any time by written notice to the Trustee and the Diocese. Upon providing such notice, the Litigation Claimant's determination not to proceed as a Litigation Claimant shall be irrevocable.

4.6.4 ***Turnover of Awards to the Trust.*** All recoveries by a Litigation Claimant in respect of such Litigation Claimant's Abuse Claim, whether arising from a verdict, settlement, or otherwise, will be turned over to the Trust.

**4.7 Dismissal of Pending Litigation.**

Upon the occurrence of the applicable Abuse Claim Discharge Date, the subject Abuse Claim asserted in any lawsuit against any Protected Party pending in state or federal court shall be dismissed, with prejudice, and without fees and costs being recoverable against any Protected Party, and the Diocese or any Protected Party is authorized to file a copy of this Plan and the Confirmation Order, or such other documentation as necessary to effectuate such dismissal.

**4.8 Claim Withdrawal.**

An Abuse Claimant may withdraw his or her Abuse Claim at any time on written notice to the Trustee. If withdrawn, the Abuse Claim will be withdrawn with prejudice and may not be reasserted, and such Abuse Claimant shall still be bound by the Diocese Discharge, the Additional Debtor Discharge, and all injunctive provisions of this Plan, including the Channeling Injunction, to the same extent that such provisions applied to such Abuse Claimant's Abuse Claim prior to its withdrawal.

**4.9 Medicare Procedures.**

None of the Protected Parties will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or

other Claim liquidations by the Trust, under the reporting provisions of MSPA or MMSEA. To that end, the following shall apply (and the Confirmation Order shall so provide):

a. The Trust shall register as a "Responsible Reporting Entity" under the reporting provisions of MMSEA.

b. With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims.

c. The Trust shall confirm whether the holder of any Abuse Claims that occurred after December 5, 1980, is enrolled in Medicare Parts A and B (fee-for-service), Part C (Medicare Advantage), or Medicare Part D (drug coverage). This includes implementing an appropriate process to gather the necessary information for querying the Centers for Medicare and Medicaid on such determination, including, but not limited to, the claimant's first and last name, date of birth, gender, address, and social security number or health insurance claim number.

d. The Trust shall timely submit all reports required under MMSEA because of any Abuse Claims that occurred after December 5, 1980, settled, resolved, paid, or otherwise liquidated by the Trust. The Trust, as a Responsible Reporting Entity, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for tracking, assessing, or receiving reports made under MMSEA to determine whether, and, if so, how, to report to such agency or agencies under MMSEA.

e. Upon request, the Trust shall provide to a Settling Insurer or the Diocese information sufficient to perform their own queries to CMS, to the extent they wish to do so, including a report setting forth (I) each Abuse Claimant whom the Trustee has determined to be a Medicare Beneficiary; (II) the amount of (a) all Conditional Payments to each such Medicare Beneficiary, (b) the amount of the reserve maintained by the Trust for each Medicare Claim based upon such Conditional Payments.

f. The Trust shall submit reimbursement to the Centers for Medicare and Medicaid for Medicare Claims.

g. With respect to Abuse Claims that occurred after December 5, 1980, before remitting funds to any Person on account of an Abuse Claim, the Trustee shall obtain (i) a certification that said Person (or such Person's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under the MSPA's provisions, or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim, and (ii) an agreement that such Person indemnify the Trust for any such obligations. The failure by one or more holders of Abuse

Claims to follow these provisions shall not delay or impair the payment by the Trust to any other holder of an Abuse Claim following these provisions.

h. With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any potential reimbursements to the Centers for Medicare and Medicaid in full and consider the potential future interests of the Centers for Medicare and Medicaid.

i. Nothing in the Plan shall imply, or constitute an admission, that the payments by the Diocese, the Protected Parties, or any Settling Insurer constitute "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

## SECTION 5. SETTLING INSURERS

### 5.1 Insurance Settlement Agreements.

Each Insurance Settlement Agreement is effective and binding upon all Persons who have notice (including constructive notice, to the extent applicable), and any of the foregoing Persons' successors and assigns (including, for the avoidance of doubt, the Trust and the Trustee), upon the entry of the Sale Order approving such Insurance Settlement Agreement and satisfaction of all conditions precedent, including, the Sale Order and the Confirmation Order becoming Final Orders. Payment to the Trust of a Settling Insurer's Insurance Settlement Amount, and the releases by the Diocese and the Additional Debtors shall occur and/or be effective according to the terms of the applicable Insurance Settlement Agreement. The Insurance Settlement Agreements shall survive the confirmation, effectiveness, and consummation of the Plan. The rights of the parties under any Insurance Settlement Agreement shall be determined exclusively under the applicable Insurance Settlement Agreement and those provisions of the Sale Order approving such Insurance Settlement Agreement, the Plan, and the Confirmation Order. In the event of a conflict between (a) any Insurance Settlement Agreement, on the one hand, and (b) the Plan, on the other, the terms of the applicable Insurance Settlement Agreement shall control; and/or in the event of a conflict between (y) the Sale Order(s), on the one hand, and (z) the Confirmation Order, on the other, the terms of the Sale Order(s) shall control. For the avoidance of doubt, but without limiting the generality of the foregoing, nothing in this Plan, any Plan Documents, or the Confirmation Order shall limit the parties' respective rights and obligations under the Insurance Settlement Agreements.

### 5.2 Sale of Settling Insurer Policies Free and Clear.

Each Settling Insurer shall purchase its Settling Insurer Policy(ies) and Claims related thereto free and clear of all Claims, Interests, and other rights of any nature, whether at law or in equity, pursuant to sections 105 and 363 of the Bankruptcy Code and the terms of such Settling Insurer's Insurance Settlement Agreement.

**5.3 Resolution of Claims Involving Settling Insurers.**

The Confirmation Order shall provide that the Diocese or the Trust, as the case may be, shall dismiss with prejudice its Claims in the Insurance Coverage Adversary Proceeding against each Settling Insurer, and each Settling Insurer shall dismiss with prejudice its respective Claims in the Insurance Coverage Adversary Proceeding against the Diocese, Additional Debtors (or, if applicable, the Trust), in accordance with the terms and timeline(s) set forth in the respective Insurance Settlement Agreement. Each side will bear its own fees and costs.

**5.4 The Settling Insurers' Payments.**

Each Settling Insurer will pay to the Trust the Insurance Settlement Amount set forth in such Settling Insurer's Insurance Settlement Agreement, on the terms and within the time detailed therein.

**5.5 Further Assurances; Non-Material Modifications.**

From and after the Effective Date, the Diocese, the Additional Debtors and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Insurance Settlement Agreements without further order of the Bankruptcy Court and to consummate the sale of the Purchased Property. The Diocese, Additional Debtors and a Settling Insurer may make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of such Settling Insurer's Insurance Settlement Agreement, subject to the requirements thereof, but only with the consent of the Committee, or the Trust, as applicable. The Diocese, the Additional Debtors and the Settling Insurers, with the consent of the Committee, may also make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of the Plan, subject to the requirements of the respective Insurance Settlement Agreements. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under Section 15.1 of the Plan, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such Class. An order of the Bankruptcy Court approving any amendment or modification made pursuant to Section 15.1 of the Plan shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

**5.6 Waiver/Consent.**

In consideration of the releases and Channeling Injunction and other covenants herein, subject to the occurrence of the Effective Date and the satisfaction of the other conditions precedent to the effectiveness of the Insurance Settlement Agreements, each of the Protected Parties: (a) ratifies the releases set forth in the Insurance Settlement Agreements; and (b) ratifies and further consents to the sale of the Purchased Property in accordance with the Insurance Settlement Agreements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan.

**5.7 <u>Timing.</u>**

The injunctions, releases, and discharges to which a Settling Insurer is entitled pursuant to its Insurance Settlement Agreement, the Plan, the Confirmation Order, the Sale Order, and the Bankruptcy Code shall become effective pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, which shall not occur prior to the Effective Date.

**SECTION 6. MATTERS RELATING TO NON-SETTLING INSURERS**

**6.1 <u>Preservation of Rights and Obligations.</u>**

If an Abuse Claim is liquidated through the Allocation Protocol or in any state or federal court as may be permitted by the Plan, the Allocation Protocol, or the Trust Agreement, then the Protected Parties, the Trust, and each Non-Settling Insurer shall retain the right to assert any and all rights and defenses of the Protected Parties with respect to such Abuse Claim and all coverage defenses. The rights, duties, and obligations of each Non-Settling Insurer under the Non-Settling Insurer Policies with respect to Abuse Claims are not affected in any way by the Diocese Discharge or the Additional Debtor Discharge.

The rights and obligations (if any) of the Protected Parties and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the Allocation Protocol and shall be treated as if the determination by the Abuse Claims Reviewer had never occurred. Each Non-Settling Insurer shall be entitled to all rights and defenses as are provided under the terms of its Non-Settling Insurer Policies as if the determination by the Abuse Claims Reviewer had never occurred.

Nothing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim. All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law.

**6.2 <u>Estimations/Assessments of Abuse Claims Are Not Binding.</u>**

Estimations of Abuse Claims for purposes of determination, qualification, assignment of points pursuant to the Allocation Protocol, and payment of Trust Distributions:

a. shall not (i) constitute an admission of liability by any Person with respect to such Abuse Claims; (ii) have any *res judicata* or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Abuse Claims; or (iv) otherwise prejudice any rights of the Trust, the Diocese, the Additional Debtors, the Settling Insurers, the Non-Settling Insurers, or Class 4 Claimants in any other contexts or forums;

b. shall be without prejudice to any and all rights of the Trust, the Non-Settling Insurers, and Class 4 Claimants in any other contexts and forums; and

c. shall not be deemed to be a determination of liability of the Diocese or any Additional Debtors or a determination of whether, or the extent to which, such Abuse Claim is covered under any Non-Settling Insurer Policy.

**6.3 Post-Effective Date Preconditions to Coverage.**

6.3.1 Notwithstanding the Insurance Claims Assignment, the Diocese Settling Parties shall use reasonable efforts to satisfy any Post-Effective Date Preconditions to Coverage, for purposes of preserving and maintaining as much insurance coverage as possible for the sole and exclusive benefit of the Trust, subject to the Trust's payment of any DOO Entities' Post-Effective Date Costs in accordance with Section 8.11.

6.3.2 If the Trust believes the Diocese or any other Diocese Settling Party has failed to satisfy any Post-Effective Date Preconditions to Coverage, the Trust shall give the Diocese or the other Diocese Settling Party (as applicable) written notice identifying with specificity the Post-Effective Date Preconditions to Coverage at issue and the action the Trust believes must be taken in order to satisfy the same. Subject to further order of the Court, the Diocese or other Diocese Settling Party, as applicable, shall have at least forty-five (45) days following receipt of any such notice from the Trust to either (i) undertake the actions requested by the Trust or (ii) seek a determination from the Court (which shall not be binding upon any Non-Settling Insurer) as to whether the action requested by the Trust is required to satisfy any Post-Effective Date Preconditions to Coverage; *provided, however*, that (a) any Non-Settling Insurer whose Non-Settling Insurer Policy may be implicated by such a request shall be provided notice of such request and shall be afforded the opportunity to participate in the adjudication of such dispute; and (b) that any such determination made by the Court shall not be binding upon any Non-Settling Insurer or the Trust in any coverage litigation related to the Non-Settling Insurer Policy at issue. The Court will retain jurisdiction to adjudicate such dispute or claim between the Trust, on one hand, and the Diocese and/or the other Diocese Settling Parties, on the other. Except in the case of willful misconduct by any Diocese Settling Party, the Trust's sole remedy for any failure to satisfy any Post-Effective Date Preconditions to Coverage shall be specific performance as ordered by the Court.

6.3.3 Nothing in this Plan shall impair, and each Non-Settling Insurer expressly retains, all contractual defenses to coverage, if any, available under any Non-Settling Insurer Policy arising from or relating to any actual or alleged failure by any Diocese Settling Party to satisfy their respective Post-Effective Date Preconditions to Coverage, if any.

**6.4 Trust Powers With Respect to Abuse Claims and Non-Settling Insurers.**

Solely as set forth in this Plan, the Allocation Protocol, or the Trust Agreement, any Abuse Claimant or the Trust with consent of an individual Abuse Claimant, may enter into a settlement of an individual Abuse Claim allowed by applicable non-bankruptcy law, and may enter into an arrangement with the Abuse Claimant's counsel, provided such counsel will receive

reasonable compensation from any recovery from a Non-Settling Insurer. The foregoing sentence shall not apply to the Trust's negotiation and entry into a Trust Insurance Settlement.

The Trustee may use the Trust Assets to prosecute litigation against the Non-Settling Insurers.

If the Trust successfully resolves a Covered Claim or otherwise receives a recovery of insurance proceeds relating to any Abuse Claim from a Non-Settling Insurer, such proceeds shall become Trust Assets available to pay, and shall increase the amount available to pay, Class 4 Claims, pursuant to the Allocation Protocol.

Upon the due execution and delivery of an Insurance Settlement Agreement, the entry of an order approving an Insurance Settlement Agreement, and the payment to the Trust of the settlement amount due thereunder, a Non-Settling Insurer shall become a Settling Insurer protected by the Channeling Injunction and the Settling Insurer Injunction and become entitled to benefit from all releases executed by Claimants and the other rights and protections of a Settling Insurer under the Plan, the Trust Documents, and the orders approving Insurance Settlement Agreements.

### 6.5 Insurance Coverage Adversary Proceeding.

As of the Effective Date, the Trust shall be substituted as the named plaintiff in the Insurance Coverage Adversary Proceeding and have all rights of the Diocese and the Additional Debtors to pursue recoveries against any Non-Settling Insurers. For the avoidance of doubt, the Trust shall have no right to pursue recoveries in the Insurance Coverage Adversary Proceeding against any Settling Insurer Releasee or any Settling Insurer's Related Persons.

## SECTION 7. MEANS FOR IMPLEMENTATION OF PLAN

### 7.1 Plan Implementation.

All Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Secured Claims, General Unsecured Claims, and Pass-Through Claims will be paid by the Diocese. All Distributions to be made under the Plan on account of Abuse Claims will be paid solely from the Trust to be established for the purpose of receiving, liquidating, and distributing Trust Assets in accordance with this Plan, the Allocation Protocol, and the Trust Agreement. All Class 6 Ride Through Claims against the Additional Debtors will be paid in the ordinary course of business. The Allocation Protocol is attached to the Plan Supplement as Exhibit 1 and is incorporated into the Trust Agreement. The proposed Trust Agreement is attached to the Plan Supplement as Exhibit 3.

### 7.2 Corporate Action.

All matters provided under this Plan involving the corporate structure of the Diocese and the Additional Debtors or corporate action to be taken by or required of the Diocese and the Additional Debtors shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further approval by

the Bankruptcy Court or any other governmental entity. For avoidance of doubt, to the extent any corporate action or other transaction contemplated under this Plan would otherwise require approval under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the entry of the Confirmation Order shall constitute such approval.

### 7.3 Payments Effective Upon Tender.

Whenever the Plan requires payment to be made to a Creditor, such payment will be deemed made and effective upon tender thereof by the Trustee, the Diocese or any Additional Debtors to the Creditor to whom payment is due. If any Creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Diocese or any Additional Debtor for the benefit of that Creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the Creditor receives the funds previously tendered and refused, the Creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the Creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the Creditor if the Trust, the Diocese, or any Additional Debtors failed to pay the tendered payment.

### 7.4 Agreements, Instruments, and Documents.

All organizational agreements, charter documents, instruments, and documents required under this Plan to be executed or implemented, together with such others as may be necessary, useful or appropriate in order to effectuate this Plan, shall be executed on or before the Effective Date or as soon thereafter as is practicable.

### 7.5 Continuation of Insurance Policies.

All Insurance Policies that are *not* Settling Insurer Policies shall, as applicable, either (i) be deemed to be assumed by the Diocese or the Additional Debtors, as applicable, pursuant to sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Insurance Policy is or was an executory contract of the Diocese or any Additional Debtor, or (ii) continued in accordance with its terms pursuant to section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Diocese or any Additional Debtor, such that each of the parties' contractual, legal, and equitable rights under each such Insurance Policy shall remain unaltered, except as amended by any applicable Insurance Settlement Agreement with a Settling Insurer. To the extent that any or all such Insurance Policies that are not Settling Insurer Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to sections 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Diocese, the Additional Debtors, their Estates, and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Diocese existing as of the Effective Date with respect to any Insurance Policy. Subject to the terms of the Insurance Settlement Agreements, the Diocese and the Additional Debtors

reserve the right to seek rejection of any Insurance Policy or other available relief prior to the Effective Date.

**7.6 <u>Bar Date for Professional Fee Claims.</u>**

Each Professional retained or requesting compensation in the Chapter 11 Cases, pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code, must File with the Bankruptcy Court a final application requesting the allowance of a Professional Fee Claim no later than sixty (60) days after the Effective Date. All applications for the allowance of Professional Fee Claims that are not timely Filed shall be forever barred. Objections to such applications may be Filed in accordance with the Bankruptcy Rules. The Bankruptcy Court shall determine all such Professional Fee Claims.

**7.7 <u>Bar Date for Other Administrative Claims.</u>**

Except as provided for herein or in an order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims must File and serve on the Diocese or the Additional Debtors, as applicable, requests for the payment of such Administrative Claims not previously Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Claims Bar Date, or such Administrative Claims shall be automatically considered Disallowed Claims, forever barred from assertion, and unenforceable against the Diocese, the Additional Debtors, their Estates, or their property without the need for any objection by the Diocese or the Additional Debtors, or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Administrative Claims shall be deemed fully satisfied, released, and discharged.

**7.8 <u>Exit Financing.</u>**

The Diocese may, at its discretion, obtain financing to assist the Diocese in making the Diocese portion of the DOO Entities' Cash Payment, which includes any loan or other financing arrangement entered into by the Diocese (i) prior to the Effective Date to fund any portion of the DOO Entities' Cash Payment through the DOO Trust Note (if any) or (ii) at any time after the Effective Date, without the need to seek Court approval, to fund any portion of the Diocese's payment obligations under the DOO Trust Note (if any). Any security interest or Lien in collateral granted to a lender in connection with such financing shall, on and after the Effective Date, be enforceable against any interest the Diocese may have in such collateral, to the same extent it may have been enforceable against the Diocese prior to the Effective Date.

## SECTION 8. THE TRUST

**8.1 <u>Establishment of Trust.</u>**

On the Confirmation Date, or as soon as practicable thereafter, the Trust shall be established in accordance with the Trust Documents for the exclusive benefit of the holders of Abuse Claims. The Trust will assume all liability for and rights concerning all Channeled Claims, including the rights to settle the Channeled Claims. The Trust will control the allocation and Distribution of the Abuse Claims Settlement Fund to Abuse Claimants pursuant to the terms

of the Allocation Protocol, the Trust Agreement, the Plan, and the Confirmation Order. The Trustee shall establish and maintain a reserve for Trust Expenses, which shall be paid pursuant to the terms of the Trust Agreement.

**8.2 Funding of the Trust.**

8.2.1 ***DOO Entities' Cash Payment.*** On or before the Effective Date, the DOO Entities' Cash Payment, including the Contributing Non-Debtor Entity Contributions, shall be paid to the Trust on behalf of the Diocese and Additional Debtors to establish the Trust Reserve, with any balance to be included in the Abuse Claims Settlement Fund. The Abuse Claims Settlement Fund may be supplemented from time to time from: (i) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement; (ii) any Insurance Claim Proceeds; (iii) proceeds of Litigation Awards; (iv) proceeds of Outbound Contribution Claims; and (v) any other proceeds which the Trust may obtain pursuant to the terms of the Plan.

8.2.2 ***Contributing Non-Debtor Entity Contributions.*** On or before the Effective Date, and in consideration for the releases set forth herein, including the release of the Estate Causes of Action, the Contributing Non-Debtor Entities shall cause the Contributing Non-Debtor Entity Contributions to be paid to the Trustee, as part of the DOO Entities' Cash Payment, for inclusion in the Abuse Claims Settlement Fund.

8.2.3 ***Insurance Claims Assignment.*** Insurance Claims against the Non-Settling Insurers shall be transferred to the Trust as follows:

a. On the Effective Date, and without further action by any party, the Diocese and the Class 4 Claimants will be deemed to have assigned to the Trust their respective rights, if any, to all Insurance Claims against the Non-Settling Insurers and recoveries on account of such Insurance Claims. Additionally, on the Effective Date, and without further action by any party, each of the Additional Debtors will assign to the Trust the Additional Debtors' rights, if any, to all Insurance Claims against the Non-Settling Insurers and recoveries on account of such Insurance Claims. The foregoing transfer shall be effective to the maximum extent permissible under applicable law and shall not be construed: (i) as an assignment of the Non-Settling Insurer Policies; or (ii) to entitle any Person to Insurance Coverage other than those Persons entitled to coverage under the terms of the Non-Settling Insurer Policies. For the avoidance of doubt, the Trust shall be solely responsible for satisfying, to the extent required under applicable law, any self-insured retention obligations on account of any Class 4 Claim or arising out of any Non-Settling Insurer Policy. To the extent that the Trust pays any self-insured retention in connection with any Class 4 Claim, such amount shall be paid by the Trust from the DOO Entities' Post-Effective Date Costs Reserve, and the Trust shall contemporaneously contribute funds to the DOO Entities' Post-Effective Date Costs Reserve in an amount equal to such self-insured retention paid. To the extent the Diocese or any of the Additional Debtors pay any self-insured retention, the Trust shall reimburse the Diocese or Additional Debtor from the DOO Entities' Post-Effective Date Costs Reserve for any amounts actually paid by the Diocese or the Additional Debtor prior to making

any Trust Distribution for the Abuse Claim for which the Diocese or Additional Debtor paid the self-insured retention, and the Trust shall contemporaneously contribute funds to the DOO Entities' Post-Effective Date Costs Reserve in an amount equal to such self-insured retention paid. Nothing herein shall obligate any Non-Settling Insurers to advance any self-insured retention, unless otherwise required by applicable law. Likewise, nothing herein shall obligate the Trust, the Diocese or any Additional Debtor to pay any self-insured retention that is not otherwise required by applicable law.

b. If the Bankruptcy Court determines that the Insurance Claims Assignment is inconsistent with the Bankruptcy Code with respect to the Diocese, the Class 4 Claimants and/or one or more Additional Debtors, the Diocese, the Class 4 Claimants, and each such Additional Debtor (as applicable) (i) will retain their respective Insurance Claims against the Non-Settling Insurers and (ii) to the extent reasonably requested by the Trust, the Diocese or an Additional Debtor will assert such retained Insurance Claims against the Non-Settling Insurer(s). The Diocese or Additional Debtor will retain counsel acceptable to the Trustee to prosecute any retained Insurance Claims against the Non-Settling Insurers (subject to any defenses the Non-Settling Insurers may have under applicable state law) and the Trust shall pay all attorney's fees, expert fees, and other costs and expenses incurred by the Diocese or the Additional Debtor in prosecuting such retained Insurance Claims against the Non-Settling Insurers. For avoidance of doubt, any efforts by the Diocese or an Additional Debtor to prosecute retained Insurance Claims against the Non-Settling Insurers shall be an accommodation to the Trust and any costs and expenses incurred in connection therewith shall be paid by the Trust in full and shall not be subject to the DOO Entities' Post-Effective Date Costs Procedures described below. The Trust shall have a common interest with the Diocese in prosecuting Insurance Claims against the Non-Settling Insurers and may appear and be heard in connection with the prosecution of such claims, at its own expense, unconditionally, subject only to any limitations of law and equity. The Diocese and the Additional Debtors shall not settle any retained Insurance Claims against Non-Settling Insurers without the prior written consent of the Trustee, which consent shall not be unreasonably delayed or denied. All recoveries on account of retained Insurance Claims against Non-Settling Insurers will be paid to the Trust, net of any unreimbursed attorney's fees, expert fees and other costs and expenses associated with prosecuting such retained Insurance Claims.

c. For the avoidance of doubt, except as specifically set forth in this Section 8.2.3 and in Section 6.3 with respect to satisfying Post-Effective Date Preconditions to Coverage, the Diocese and the Additional Debtors make no representations or warranties, and shall have no duty or obligations whatsoever, to the Trust with respect to the Insurance Claims against Non-Settling Insurers. The Trust shall assume all risks with respect to the litigation, liquidation, and collection of the Insurance Claims against Non-Settling Insurers. For the avoidance of doubt, and notwithstanding anything to the contrary herein, Related Insurance Claims shall not be transferred to the Trust or retained by the Diocese

and/or any Additional Debtors and instead shall be sold to the Settling Insurers and/or settled and released, in each case as set forth in the Insurance Settlement Agreements.

*8.2.4* ***Outbound Contribution Claims.*** Outbound Contribution Claims shall be automatically, and without further act or deed, assigned to the Trust on the Effective Date.

*8.2.5* ***Cabrini Foundation.***

a. If, prior to the termination of the Trust, the Cabrini Foundation enters into a settlement agreement or other arrangement whereby the Diocese and/or Additional Debtors receive any Cabrini Qualifying Proceeds, the Diocese and/or Additional Debtors shall transfer such Cabrini Qualifying Proceeds to the Trust as set forth in such settlement agreement or arrangement.

b. If prior to the termination of the Trust, the Diocese and/or Additional Debtors (as applicable) receive any Cabrini Qualifying Proceeds that are not transferred subject to a settlement agreement or other arrangement as contemplated by Section 8.2.5.a above, the recipient thereof shall hold such Cabrini Qualifying Proceeds in a separate segregated account (which may be an investment account) pending either (i) agreement among the Trustee, the Diocese, and, if applicable, any recipient Additional Debtors, as to the ultimate disposition of such Cabrini Qualifying Proceeds; or (ii) entry of an order by the Court directing such disposition, provided, however, that no party shall apply to the Court for judicial intervention until the parties have attempted to negotiate in good faith for at least six months, and provided further, that in the event judicial intervention is needed with respect to any issue related to the Cabrini Foundation, its assets, proceeds thereof, or the disposition thereof, all parties shall retain all rights and arguments (if any) they may have related to the Cabrini Foundation, its assets, proceeds thereof, or the disposition thereof.

c. Any Cabrini Qualifying Proceeds that are transferred to the Trust pursuant to this Section 8.2.5 shall be included in the Abuse Claims Settlement Fund.

d. For avoidance of doubt, nothing in the Plan shall limit or direct in any way the manner in which the Diocese or any Additional Debtors may receive and utilize any Cabrini Exempt Transfer.

*8.2.6* *DOO Trust Note Documents.* In the event the DOO Trust Note is needed to fund the DOO Entities' Cash Payment, on or before the Effective Date, the Diocese shall execute and deliver the DOO Trust Note Documents to the Trust. For the avoidance of doubt, if the DOO Entities' Cash Payment is fully funded, none of the DOO Trust Note Documents shall be executed or delivered to the Trust.

**8.3 Vesting of Trust Assets.**

On the Effective Date, all Trust Assets shall vest in the Trust, and the Protected Parties shall be deemed for all purposes to have transferred all of their respective right, title, and interest in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Protected Parties, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of the Trust Assets in accordance with this paragraph, and subject to the Insurance Settlement Agreements, the Protected Parties shall have no further interest in or with respect to the Trust Assets. Notwithstanding anything to the contrary contained herein, the Trustee is required to maintain the DOO Entities' Post-Effective Date Costs Reserve and the DOO Entities' Post-Effective Date Costs will be paid by the Trustee from the DOO Entities' Post-Effective Date Costs Reserve as provided in Section 8.11.

**8.4 Non-Monetary Commitments.**

In order to further promote healing and reconciliation, and in order to continue efforts to prevent Abuse from occurring in the future, the Diocese agrees that, beginning within thirty (30) days after the Effective Date (unless a different date is provided in the Confirmation Order), subject to agreement between the Committee and the Diocese on the terms of the non-monetary commitments, it will undertake and observe certain non-monetary commitments as agreed between the Committee and the Diocese and set forth as **Exhibit 4** to the Plan Supplement.

**8.5 Appointment of the Trustee.**

The initial Trustee will be identified no fewer than ten (10) Business Days before the Confirmation Hearing. The Trustee shall commence serving as the Trustee on the Effective Date; *provided*, *however*, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Bankruptcy Court, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

**8.6 Rights and Responsibilities of Trustee.**

The Trustee shall be deemed to be a fiduciary of the Trust under the terms of the Trust Agreement and shall have all rights, powers, authority, responsibilities, and benefits under New York law specified in this Plan and as reflected in the Trust Agreement, including commencing, prosecuting or settling causes of action, enforcing contracts, and asserting Claims, defenses, offsets and privileges. If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to the Trustee's authority to act, the provisions of the Trust Agreement shall control, but shall not take precedence over any contrary provision in any Insurance Settlement Agreement(s) or the Sale Order(s) approving the Insurance Settlement Agreement(s) (in which case, such Sale Order(s) and the applicable Insurance Settlement Agreement(s) shall control and govern in that order). Among other things, the Trustee: (1) shall liquidate and convert to Cash the Trust Assets, make timely Distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain

professionals, including legal counsel, accountants, financial advisors, auditors, and other Agents on behalf of the Trust, and at the Trust's sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

The Trust shall make Trust Distributions to the Abuse Claimants. The Trust shall pursue Insurance Claims against any Non-Settling Insurers. The Trust shall fund DOO Entities' Post-Effective Date Costs pursuant to the DOO Entities' Post-Effective Date Costs Procedures and may seek reimbursement from any Non-Settling Insurer. The Trust shall neither pursue Related Insurance Claims against Settling Insurer Releasees nor any Settling Insurer's Related Persons or take any other action contrary to, or in violation of, the Insurance Settlement Agreements.

The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no cause of action shall be commenced in any forum, other than the Bankruptcy Court, against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee; provided, however, that this limitation shall not apply with respect to any Claim or cause of action brought by a Settling Insurer for any actual or alleged breach by the Trustee of such Settling Insurer's Insurance Settlement Agreement or violation by the Trustee of any provision of the Sale Order(s).

## 8.7 Trust Advisory Committee.

If any Insurers remain Non-Settling Insurers as of the Effective Date, the Plan and Trust Agreement provide for the creation of a Trust Advisory Committee, which shall initially consist of those members of the Committee who agree to serve on the Trust Advisory Committee. The members of the Trust Advisory Committee shall have only such limited rights, duties and powers as set forth in the Plan and Trust Agreement. The process for appointing replacement members of the Trust Advisory Committee shall be provided in the Trust Agreement. Upon termination of the Trust, or as otherwise provided in the Trust Agreement, the Trust Advisory Committee shall be deemed dissolved and discharged of and from all further authority, duties, responsibilities, and obligations with respect to or in connection with the Trust and the Chapter 11 Cases.

Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Trust Advisory Committee, the members of the Trust Advisory Committee shall serve without compensation. Reasonable expenses incurred by members of the Trust Advisory Committee may be solely paid by the Trust without need for approval of the Bankruptcy Court. For the avoidance of doubt, none of the Protected Parties shall be responsible for any fees, costs, or expenses associated with the Trust Advisory Committee.

## 8.8 Trust Pursuit of Insurance Claims Against Non-Settling Insurers.

8.8.1 ***Trust's Rights to Pursue Insurance Claims Against Non-Settling Insurers.*** Effective as of the Effective Date, and in accordance with Section 8.2.3 hereof, the Insurance Claims against Non-Settling Insurers are assigned and transferred to the Trust.

a. The Trust shall be entitled to (i) all recoveries on account of Insurance Claims against Non-Settling Insurers that are assigned to the Trust as set forth in the

Plan, the Allocation Protocol, and the Confirmation Order, and (ii) to assert on behalf of any Class 4 Claimant or combination of Class 4 Claimants, to the extent permitted by the Non-Settling Insurer Policies and applicable law, any and all Insurance Claims that currently exist or may arise in the future.

b. The Trust shall also have the exclusive right to pursue Insurance Claims against Non-Settling Insurers related to the Diocese's and/or the Additional Debtors' liability for Channeled Claims or the Non-Settling Insurers' obligations in respect of such Channeled Claims. The foregoing transfer shall not be construed to entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers. For the avoidance of doubt, the Trust cannot present Non-Settling Insurers with a demand for Coverage or indemnification based upon Distributions made by the Trust to Abuse Claimants.

c. The Trust may act in its own name, or in the name of any Class 4 Claimant, the Diocese and/or an Additional Debtor to enforce any right, title, or interest of any such party in the Insurance Claims against Non-Settling Insurers assigned to the Trust.

d. No limitations on recovery from Non-Settling Insurers shall be imposed by virtue of the fact the Diocese or any Additional Debtor is in bankruptcy or by any Distribution from the Trust to an Abuse Claimant.

e. The Insurance Claims Assignment shall not affect any Non-Settling Insurer's duty to defend, but to the extent that the failure to defend or a separate agreement between the Diocese and/or an Additional Debtor and any Non-Settling Insurer gives rise to a monetary obligation to reimburse defense costs in lieu of a duty to defend, the Trust shall be entitled to the benefit of such monetary obligation or policy proceeds to the extent of any DOO Entities' Post-Effective Date Costs actually paid by the Trust.

f. Any recovery by the Trust on Insurance Claims against Non-Settling Insurers relating to the Diocese's and/or Additional Debtors' liability for Abuse Claims shall become a Trust Asset and shall be distributed as provided in the Plan, the Trust Agreement, and the Allocation Protocol.

g. The Trust's pursuit of the Covered Parties shall be limited to enforcing specific performance of the Insurance Claims Assignment and any other rights or interests expressly granted to the Trust under the Plan. Neither the Trust nor the Trustee may pursue any Settling Insurer for any Claim released, waived, sold, or relinquished under such Settling Insurer's Insurance Settlement Agreement (including, for the avoidance of doubt, Related Insurance Claims); *provided*, the Trust may enforce its rights (if any) and/or each Settling Insurer's obligations under the applicable Insurance Settlement Agreement(s).

h. The Trust shall have full access to coverage under the Non-Settling Insurer Policies as permitted by applicable non-bankruptcy law, and the Non-Settling Insurers shall retain any and all rights and defenses to coverage under the Non-Settling Insurer Policies and applicable non-bankruptcy law.

i. The Insurance Claims Assignment does not affect any right of the Diocese, any Additional Debtor or any Non-Settling Insurer to contest any liability or the amount of damages in respect of any Abuse Claims.

8.8.2 ***No Impact on Non-Settling Insurers.*** Nothing in the Plan, the Allocation Protocol, the Trust Documents, the Plan Documents, any Confirmation Order (including any provision in the Confirmation Order), or any judgment, order, finding of fact, conclusion of law, determination or statement (written or verbal, on or off the record) made by the Bankruptcy Court, the District Court, or entered by any other court exercising jurisdiction over the Bankruptcy Case, including in any judgment, order, writ or opinion entered on appeal from any of the foregoing, shall in any Action brought by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding:

a. constitute an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law establishing:

(i) the liquidated liability (in the aggregate or otherwise) of (a) the Diocese, the Additional Debtors, or the Trust, with respect to any Abuse Claims; or (b) any Non-Settling Insurer with respect to any Insurance Claim;

(ii) the liability or obligation of the Diocese, Additional Debtors, or Trust with respect to any Abuse Claim;

(iii) that the aggregate value of the Abuse Claims is equal to the amount to be paid by the Diocese and/or the Additional Debtors into the Trust;

(iv) that it is reasonable, in good faith, or consistent with the terms and conditions of any Non-Settling Insurer Policy for any of the Diocese, the Additional Debtors, or the Trust, to settle, allow, assign any value to, liquidate, and/or pay (or present to any Non-Settling Insurer for payment) any Abuse Claim on any terms or conditions contemplated by the Plan, the Allocation Protocol (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder), any other Plan Documents, or any other document or agreement;

(v) that the Plan, any other Plan Document, or any other document or agreement (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder) are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Abuse Claims against the Diocese and the Additional Debtors before the applicable Petition Date or under the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law;

(vi) that the conduct of the Diocese, the Additional Debtors, the Committee, or the Abuse Claimants, in connection with the negotiation, development, settlement and/or implementation of the Plan (including the aggregate value or amount of the DOO Entities' Cash Payment), the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law;

(vii) that any Non-Settling Insurer was invited to participate in or participated in, consulted on, negotiated, and/or consented to the Allocation Protocol, the Trust Documents, and other Plan Documents; and

b. have any *res judicata*, collateral estoppel or other preclusive effect with respect to any matter set forth in Section 8.8.2.a hereof, or otherwise prejudice, diminish, impair, or affect (under principles of waiver, estoppel, or otherwise) any defense, Claim or right any Non-Settling Insurer may have under any Non-Settling Insurer Policy or applicable non-bankruptcy law with respect thereto. Without limiting the foregoing, but subject to Section 8.8.4 below, it is expressly agreed by all Neutrality Parties that the Neutrality Parties are not litigating any issue set forth in Section 8.8.2.a hereof or any other Non-Settling Insurer coverage defenses, rights, obligations, or other coverage issue of any kind in these Chapter 11 Cases;

c. constitute a decision on any matter at issue or which may be raised as an issue in any Action by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding. Thus, any judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court in this Bankruptcy Case, or entered by any other court exercising jurisdiction over the bankruptcy case, including any Confirmation Order or the Allocation Protocol and/or other Plan Documents and any finding, conclusion or determination entered in connection therewith, is not intended – and shall not be construed – to constitute a finding, conclusion or determination regarding any matter set forth in Section 8.8.2.a hereof or any other issue for any insurance coverage purpose whatsoever, and the Neutrality Parties shall not contend otherwise in any Action by or against a Non-Settling Insurer;

d. subject to Section 8.8.4 below, impair any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims, or any policyholder's legal, equitable or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims. The Neutrality Parties shall retain, and be permitted to assert, in any Action against any Non-Settling Insurer, all Claims and/or defenses, including any coverage defenses related to the Abuse Claims, the Insurance Claims and/or the Non-Settling Insurer Policies, notwithstanding any provision of the Plan, Allocation Protocol, the Trust Documents, the other Plan Documents, the Confirmation Order, any findings of fact and/or conclusions of law with

respect to the confirmation of the Plan, or any Final Order or opinion entered on appeal from the Confirmation Order; or

e. subject to Section 8.8.4 below, impair any Non-Settling Insurer's Insurer Contribution Claims, which may be asserted as a defense or counterclaim against the Diocese, the Diocese Settling Parties or the Trust (as applicable) in any Action by or against any Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding. To the extent the Insurer Contribution Claims of a Non-Settling Insurer are determined to be valid, the liability (if any) of such Non-Settling Insurer to the Trust shall be reduced by the amount of such Insurer Contribution Claims. For avoidance of doubt, and notwithstanding anything to the contrary in this Section 8.8.2, all Insurer Contribution Claims shall be channeled to the Trust in accordance with Section 12.3 of the Plan and no Insurer Contribution Claim shall be the basis for any affirmative recovery against any Protected Party.

8.8.3 ***Non-Settling Insurers' Remedies.*** Notwithstanding anything to the contrary in Section 8.8.2, the Non-Settling Insurers' remedies are limited to those available under applicable law and nothing in these Chapter 11 Cases shall enhance any right(s) a Non-Settling Insurer may have under applicable law.

8.8.4 ***Preservation of Plan Provisions.*** For the avoidance of doubt, the provisions of Section 8.8.2 above are intended solely to ensure that the Plan leaves intact and does not alter or affect any rights or interests of the Non-Settling Insurers with respect to the Non-Settling Insurer Policies. Nothing set forth in Section 8.8.2 is intended to, nor shall it, impair the effectiveness of any provision of the Plan, including, without limitation, the Diocese Discharge, the Additional Debtor Discharge, the Channeling Injunction, the Settling Insurer Injunction, or any other release or injunctive provisions set forth in the Plan, as such Plan provisions relate to any rights, Claims, actions, defenses, interests, transactions or other dealings between or among (i) one or more Neutrality Parties who are not Non-Settling Insurers or (ii) any Neutrality Party who is not a Non-Settling Insurer and any Person who is not a Neutrality Party.

**8.9 Investment Powers; Permitted Cash Expenditures.**

All funds held by the Trust shall be held in Cash or invested in short-term highly-liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Trust Agreement. The Trustee may expend such Cash in a manner consistent with the terms of the Trust Agreement and the Allocation Protocol.

**8.10 Tax Matters.**

The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Diocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference. The Trust shall not be deemed to be

the same legal entity as the Diocese or any Additional Debtor but only the assignee of certain assets of the Diocese and the Additional Debtors and a representative of the Estate for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall File such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 *et seq.*, as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 *et seq.*, and New York law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any. The Trustee may, in its discretion, establish a disputed claims reserve for the Trust, which shall be administered in accordance with applicable law.

**8.11 <u>DOO Entities' Post-Effective Date Costs Procedures.</u>**

8.11.1 ***DOO Entities' Post-Effective Date Costs Reserve.*** The Trust shall establish the DOO Entities' Post-Effective Date Costs Reserve, which shall be funded in an initial amount of not less than $2,000,000 from the DOO Entities' Cash Payment. The Trustee shall provide the Diocese and all Additional Debtors with a written statement as to the balance of the DOO Entities' Post-Effective Date Costs Reserve no later than the fifteenth (15th) day of each month until such time as the DOO Entities' Post-Effective Date Costs Reserve is exhausted.

The Trustee may increase the amount of, or replenish, the DOO Entities' Post-Effective Date Costs Reserve, in his or her sole and exclusive discretion. If the Trustee does not replenish the DOO Entities' Post-Effective Date Costs Reserve such that the DOO Entities' Post-Effective Date Costs Reserve falls below $900,000, the Trustee shall immediately report the same to the Diocese and all Additional Debtors, and such parties shall meet and confer regarding (i) the Trustee's expectations with respect to the continued prosecution of Litigation Claims, (ii) the balance of any DOO Entities' Post-Effective Date Costs that are incurred but outstanding, and (iii) the parties' collective expectations as to any additional DOO Entities' Post-Effective Date Costs that are likely to be incurred in order to satisfy any remaining Post-Effective Date Preconditions to Coverage.

If the Trustee determines, in his or her sole discretion, not to replenish the DOO Entities' Post-Effective Date Costs Reserve such that the balance of the DOO Entities' Post-Effective Date Costs Reserve at any time falls below $750,000, the Trustee shall immediately report the same to the Diocese and all Additional Debtors and the Diocese and the Additional Debtors shall be irrevocably released from any further obligations they would otherwise have under this Plan with respect to any Insurance Claims and/or Abuse Claims, including, without limitation, any requirement that they satisfy or attempt to satisfy any Post-Effective Date Preconditions to Coverage or to assist in the administration of the Allocation Protocol. For the avoidance of doubt, the Trust shall remain responsible for the payment of all DOO Entities' Post-Effective Date Costs incurred within one-year following the date of such notice which are submitted in accordance with these procedures to the extent any funds remain in the DOO Entities' Post-Effective Date Costs Reserve. For further avoidance of doubt, all Non-Settling Insurers shall retain any defenses to coverage they may have as a result of any failure of the Diocese or any Additional Debtors to observe and perform any Post-Effective Date Preconditions to Coverage.

Nothing herein shall be construed to address the rights of any Non-Settling Insurer or the Trust, as assignee of Insurance Claims against Non-Settling Insurers, upon any withdrawal of cooperation in defense of Claims by the Diocese and/or any Additional Debtors.

8.11.2 ***DOO Entities' Post-Effective Date Costs.*** All invoices for DOO Entities' Post-Effective Date Costs shall be submitted to the Trustee via email within 60 days following the end of the month in which DOO Entities' Post-Effective Date Costs are incurred (such submission, a "Fee Notice"). All Fee Notices provided to the Trustee may be redacted to prevent the disclosure of privileged information or trial strategy. The Trustee shall keep all Fee Notices confidential and shall not share any information contained in them (other than the amount of the fees) with any Litigation Claimant, or their respective individual counsel, or any professional whose firm previously represented the Committee in these Chapter 11 Cases or represents the Trust in connection with any Insurance Claims. For the avoidance of doubt, the Trustee may share such Fee Notices with any professional advisors who are not counsel of record to the Trust or the Trustee with respect to the Insurance Claims.

The Trustee shall inform the Diocese, the Additional Debtors, and any professional submitting a Fee Notice of any disputes regarding the requested fees and expenses within twenty (20) days of submission of a Fee Notice or shall pay the requested fees within such time. If any such dispute cannot be resolved within fifteen (15) days or such other amount of time agreed upon by the parties, either may submit such dispute to the Bankruptcy Court, or, if the Chapter 11 Cases have been closed, to any other court of competent jurisdiction located in St. Lawrence County, New York for adjudication upon at least fifteen (15) days' notice. The reviewing court shall review the applicable fees and expenses as to reasonableness in light of the work performed.

Professionals shall charge rates and expenses that are no higher than their usual and customary rates for similar work performed by such professionals for clients generally at the time such services are provided, and such rates may be adjusted from time to time in accordance with the general practices of such professionals, but not more often than once in any twelve-month period.

To the extent consistent with the advice of counsel, the Diocese and any Additional Debtors will use reasonable efforts to retain joint professional representation in any case or cases brought by one Litigation Claimant pertaining to the same Abuse Claim.

**8.12 No Recourse Against Trustee.**

No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any Agent retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee in implementation of the Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall

under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, breach of the fiduciary duty of loyalty, or fraud, and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

None of the Protected Parties shall be liable for any acts or omissions by the Trust, the Trustee, or their respective Agents or Related Persons.

**8.13 <u>Indemnification by Trust.</u>**

8.13.1 The Trust shall defend, indemnify, and hold harmless the Trustee and its Agents to the fullest extent permitted under the laws of New York in the performance of their duties hereunder. For the avoidance of doubt, the Diocese, the Additional Debtors, and their respective Agents shall not be deemed to be Agents of the Trust unless specifically authorized as such in writing by the Trustee.

8.13.2 The Trust shall defend, indemnify, and hold harmless the Protected Parties from any Medicare Claims arising out of or related to an Abuse Claim, and any Claims related to the Trust's obligations under this Plan.

8.13.3 The Trust shall defend, indemnify, and hold harmless each Settling Insurer, as set forth in such Settling Insurer's Insurance Settlement Agreement, from each and every one of the following "***Indemnified Claims***": any and all Channeled Claims, Barred Claims, and Claims otherwise enjoined by or subject to the Settling Insurer Injunction and/or such Settling Insurer's Insurance Settlement Agreement, including all such Claims made by (i) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurer Policies; (ii) any Person who has made, will make, or can make (a) a Related Insurance Claim or (b) an Abuse Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Claim under any of the Settling Insurer Policies. For the avoidance of doubt, to the extent this Section 8.13.3. (including the subsections immediately below) conflicts or is inconsistent with the provisions of any Insurance Settlement Agreement that relate to Indemnified Claims, the provisions of the applicable Insurance Settlement Agreement(s) will control and govern.

a. Each Settling Insurer shall have the right (but not the obligation) to defend any Indemnified Claims brought or made against such Settling Insurer and shall do so in good faith. Each Settling Insurer (i) may, upon receipt of an Indemnified Claim brought or made against such Settling Insurer, undertake the defense of the Indemnified Claim but is not required to do so and (ii) agrees to notify the Trust as soon as practicable of such Indemnified Claim(s) and of the Settling Insurer's choice of counsel. If a Settling Insurer declines to defend an Indemnified Claim brought or made against it, the Trust shall undertake the defense thereof.

b. The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by each Settling Insurer defending an Indemnified Claim. Such Settling Insurer may settle or otherwise resolve the Indemnified Claim only with the prior consent of the Trust, which consent shall not be unreasonably withheld. The Trust may settle or otherwise resolve an Indemnified Claim only with the prior consent of the applicable Settling Insurer, which consent shall not be unreasonably withheld. A Settling Insurer's defense, settlement, or other resolution of any Indemnified Claim brought or made against such Settling Insurer shall not diminish the obligations of the Trust to indemnify the Settling Insurer for the Indemnified Claim, as set forth in this Section 8.13.3.

c. The indemnification and hold harmless undertaking set forth in this Section 8.13.3 also extends to and for the benefit of the other Settling Insurer Releasees, all of which are third-party beneficiaries of the terms hereof.

### 8.14 Trust Assumption of Liability.

Upon the occurrence of the Effective Date, the Trust shall automatically and without further act or deed assume all responsibility for preserving, managing, and distributing Trust Assets.

Subject to and upon the occurrence of each applicable Abuse Claim Discharge Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Diocese and Additional Debtors and Settling Insurers in respect of all Abuse Claims, which shall become Channeled Claims in accordance with the terms of the Plan. On the Effective Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Settling Insurers in respect of all Barred Claims and Channeled Claims.

### 8.15 Termination.

The Trust shall terminate after its liquidation, administration, and Distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth in the Trust Agreement.

## SECTION 9. GENERAL CLAIMS ADMINISTRATION

### 9.1 Objections to Non-Abuse Claims.

Prior to the Effective Date, the Diocese and the Additional Debtors shall have the authority to pursue any objection to the allowance of any Non-Abuse Claim. From and after the Effective Date, the Diocese and the Additional Debtors will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making any Distributions with respect to Non-Abuse Claims; *provided*, *however*, that nothing in this Section shall affect the right of any party in interest (including the Diocese, the Additional Debtors and the Trustee) to object to any Non-Abuse Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, objections to Non-Abuse Claims will be Filed and served not later than the Claims Objection Deadline. The Claims Objection

Deadline or any Bankruptcy Court-approved extension thereof, may be extended upon request by the Diocese by filing a motion without any requirement to provide notice to any Person, based upon a reasonable exercise of the Diocese's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

**9.2 Determination of Claims.**

From and after the Effective Date, any Non-Abuse Claim as to which a proof of claim or motion or request for payment was timely Filed in these Chapter 11 Cases, or deemed timely Filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending)), liquidated pursuant to: (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such Non-Abuse Claim, (b) an application to equitably subordinate such Non-Abuse Claim, and (c) an application to otherwise limit recovery with respect to such Non-Abuse Claim, Filed by the Diocese or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Non-Abuse Claim. Any such Non-Abuse Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, or causes of action that the Diocese may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157; *provided, however*, that any Claims against the Settling Insurers that the Diocese had, has, may have had, or may in the future have shall be waived and released in accordance with the terms of, and to the extent set forth in, the Settling Insurers' respective Insurance Settlement Agreement.

**9.3 No Distributions Pending Allowance.**

Except in the case of Abuse Claims paid pursuant to the Allocation Protocol, no Distribution will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

**9.4 Claim Estimation.**

To effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of these Chapter 11 Cases, with respect to Disputed Claims (except Class 4 Claims), the Diocese, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for Distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; *provided*, *however*, that the Bankruptcy Court or the District Court, as applicable, shall determine: (y) whether such

Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings.

**9.5 Treatment of Contingent Claims.**

Except with respect to Abuse Claims, until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan.

**9.6 Controversy Concerning Impairment.**

If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy prior to confirmation of this Plan.

**9.7 Treatment of Executory Contracts and Unexpired Leases.**

Subject to the requirements of section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Diocese and the Additional Debtors except (i) Insurance Policies that have not been assumed and retained by the Diocese or any Additional Debtors pursuant to Section 7.5, or (ii) executory contracts and unexpired leases that have been rejected by order of the Bankruptcy Court or are the subject of a motion to reject pending on the Confirmation Date, will be deemed to be assumed and assigned to the Diocese and the Additional Debtors, as applicable, on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed and assigned to the Diocese or Additional Debtors objects to such assumption and assignment, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under section 365(b)(1) of the Bankruptcy Code will be made by the Diocese and the Additional Debtors, except that the Trust shall pay any cure costs under any Insurance Policy assumed and retained by the Diocese or the Additional Debtors pursuant to Section 7.5. In the event of a dispute regarding the amount of any cure payments, or the ability of the Diocese or the Additional Debtors (as applicable) to provide adequate assurance of future performance with respect to any executory contracts to be assumed by the Diocese or the Additional Debtors, or assumed and assigned to the Diocese or the Additional Debtors, the Trust, the Diocese or the Additional Debtors (as applicable) will make any payments required by section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute. The contracts and leases which will be assumed and assigned to the Diocese and the Additional Debtors, and their respective cure costs, are identified in Exhibit 5 to the Plan Supplement. For the avoidance of doubt, none of the Settling Insurer Policies will be assumed or assigned to the Diocese or the Additional Debtors.

## SECTION 10. PROVISIONS GOVERNING DISTRIBUTIONS

**10.1 Disbursing Agents.**

The Diocese shall be the disbursing agent for all aspects of the Plan except for Distributions made from the Trust and Class 6 Ride Through Claims, for which the Additional

Debtors shall serve as disbursing agents. With respect to the Trust, the Trustee shall be the disbursing agent and be responsible for all Distributions made under the Trust.

**10.2 Manner of Payment.**

Unless otherwise agreed by the Diocese, Additional Debtors, or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, all Distributions of Cash under the Plan may be made either by check via first class mail, postage prepaid, or by wire transfer from a domestic bank, at the option of the respective disbursing agent.

**10.3 Distribution Only to Holders of Allowed Claims.**

Except as otherwise provided in the Plan for Abuse Claims which shall be neither Allowed nor Disallowed under the Plan, Distributions under the Plan and the Plan Documents will be made only to the holders of Allowed Claims. Until a Disputed Non-Abuse Claim becomes an Allowed Claim, the holder of that Disputed Non-Abuse Claim will not receive any Distribution otherwise provided to Non-Abuse Claimants under the Plan or the Plan Documents. If necessary in determining the amount of a *pro rata* Distribution due to the holders of Allowed Claims in any Class, the Diocese will make the *pro rata* calculation as if all Disputed Non-Abuse Claims were Allowed Claims in the full amount claimed or in the estimated amount. When a Disputed Non-Abuse Claim in any Class becomes an Allowed Claim, the Diocese will make a full or partial Distribution, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and any required withholding of applicable federal and state taxes.

**10.4 Disputed Claim Reserve.**

Except with respect to Trust Distributions made to Abuse Claimants pursuant to the Allocation Protocol, to the extent that a disbursing agent makes a Distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the respective disbursing agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

**10.5 Transmittal of Distributions.**

Except as otherwise provided in the Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to be made under the Plan, Confirmation Order, or Trust Documents to Class 4 Claimants will be made by the Trust, and Distributions to all other Claimants will be made by the Diocese or the Additional Debtors. Distributions to Class 4 Claimants will be made: (i) to the client trust account for the Claimant's attorney of record; or (ii) if the Class 4 Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Trustee by such Claimant in writing; or (iii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Diocese, Additional Debtors,

or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Diocese in its Chapter 11 Case. Distributions to Claimants holding Non-Abuse Claims will be made by wire transfer or by check via first class United States mail, postage prepaid, (i) to the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Diocese, as applicable, by such Claimant in writing, or (ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Diocese, to the mailing address set forth in the Schedules Filed by the Diocese in its Chapter 11 Case. If a Claimant's Distribution is not mailed or is returned to the Diocese or to the Trustee because of the absence of a proper mailing address, the Diocese or the Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address. The Trustee shall have no liability to a Class 4 Claimant on account of Distributions made to the client trust account of a Class 4 Claimant's attorney.

**10.6 Timing of Distributions.**

Unless otherwise agreed by the Diocese, Additional Debtors, or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day. Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty (30) days after a Distribution is returned to the Diocese, Additional Debtor, or to the Trustee, as applicable, as undeliverable or is deemed to be an undeliverable Distribution, provide the Diocese, Additional Debtor, or the Trustee, as applicable, with a written notice asserting its Claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any Claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Diocese, Additional Debtor, the Trust, the Trustee, or its property. Any undeliverable Distributions to be made by the Trust that are not claimed under this Section will become available for the Trust to distribute to other Abuse Claimants. Any other undeliverable Distributions shall be retained by the Diocese or Additional Debtor, as applicable, in accordance with the Plan. Nothing in the Plan requires the Diocese, Additional Debtor, the Trust, or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

**10.7 Time Bar to Check Payments.**

If an instrument delivered as a Distribution to a Claimant by the Diocese or the Trust is not negotiated within one hundred eighty (180) days after such instrument is sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and all Claims in respect of such voided check shall be discharged and forever barred. Any request for re-issuance of a check must be made on or before one hundred eighty (180) days after issuance of a non-negotiated check. Except as otherwise provided herein, any Distribution under the Plan which is not negotiated after one hundred eighty (180) days

following issuance shall be forfeited, and such Distribution, together with any interest earned thereon, shall return to and revest in the Diocese or to the Trust, as applicable.

**10.8 No Professional Fees or Expenses.**

No professional fees or expenses incurred by a Claimant will be paid by the Diocese, any Additional Debtor or the Trust with respect to any Claim except as specified in the Plan or the Trust Documents.

**10.9 No Interest on Claims.**

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between the Diocese or any Additional Debtor and the holder of a Claim approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the applicable Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, the Confirmation Order, or the Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**10.10 Saturday, Sunday, or Holiday.**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day, but shall be deemed to have been completed as of the required date.

**10.11 Withholding Taxes.**

The Diocese or any Additional Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any Distribution under the Plan, the Diocese or any Additional Debtor, as applicable, will require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

**10.12 Setoffs and Recoupment.**

Subject to the terms of this Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Diocese or any Additional Debtor may, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Diocese or any Additional Debtor, as applicable, may have against the holder of such Claim.

**10.13 No *De Minimis* Distributions.**

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash (rounded to the nearest whole cent when and as necessary) will be issued to Claimants entitled to receive Distributions of Cash. Any Distribution of less than $25.00 will be considered *de minimis*, and holders of Allowed Claims that are entitled to Distributions of less than $25.00 will not receive any Distribution. Such funds will remain with, and revest in, the Diocese or any Additional Debtor, as applicable. For avoidance of doubt, this Section 10.13 shall not apply to any Distributions to be made by the Trust, which shall be governed solely by the Trust Documents.

**10.14 Prepayment.**

Except as otherwise provided in the Plan or the Confirmation Order, the Diocese or any Additional Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## SECTION 11. EFFECTIVE DATE

**11.1 Conditions Precedent to Effective Date.**

The Effective Date shall not occur, and the Plan shall not be consummated, unless each of the following conditions are satisfied or waived as set forth in Section 11.2 below:

11.1.1 ***Confirmation Order.*** The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents and the Settling Insurers; *provided, however*, that the findings and determinations set forth in the following clauses a. and b. of this Section 11.1.1 (or in any corresponding section or paragraph of the Plan or Confirmation Order) shall not be binding on the Settling Insurers. Neither the Insurance Settlement Agreements nor any of the Settling Insurers' actions or inactions in these Chapter 11 Cases shall be deemed as support for such findings and determinations, the Insurance Claims Assignment and/or the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in such findings and determinations, the Insurance Claims Assignment and/or Allocation Protocol in any proceeding. Rather, the Settling Insurers are designated as Protected Parties under the Plan, and as a result, the Settling Insurers take no position on such findings and determinations, the Insurance Claims Assignment, or the Allocation Protocol. Without limiting the generality of the foregoing, the Confirmation Order shall, at a minimum, contain findings by the Bankruptcy Court that:

a. the assignment of Insurance Claims, or alternatively, the retention and prosecution of such Claims following confirmation by the Diocese and the Additional Debtors as contemplated in the Plan is authorized by, and does not conflict with, any provision of the Bankruptcy Code, and is therefore approved;

b. to the extent approval for any transfer contemplated in the Joint Plan may be required under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the Bankruptcy Court has jurisdiction to approve, and does hereby approve such transfers, and no further approval of, or



~~23853722.v12~~23853722.v13

authorization from, the New York State Attorney General or the Supreme Court of the State of New York is required; and

c. all of the requirements for confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code have been met and that the Plan should be confirmed.

11.1.2 ***Channeling and Insurer Injunctions.*** The Confirmation Order shall approve and implement the Channeling Injunction set forth in Section 12.3 of the Plan and shall ratify the Settling Insurer Injunction set forth in the Sale Order(s) approving the respective Insurance Settlement Agreements.

11.1.3 ***Plan Documents.*** The Plan Documents shall be in form and substance acceptable to the Plan Proponents. The Plan Documents, except for the Allocation Protocol and the Non-Monetary Commitments referenced in Section 8.4 of the Plan and Section 4.6.2 of the Plan, shall be in form and substance acceptable to each Settling Insurer.

11.1.4 ***Trust Formation.*** The Trust shall have been formed, the Bankruptcy Court shall have entered an order appointing the Trustee, and the Trustee, the Diocese and the Additional Debtors shall have executed the Trust Agreement.

11.1.5 ***The DOO Entities' Payment to the Trust.*** The DOO Entities' Cash Payment, including the executed DOO Trust Note, as applicable, shall have been paid or transferred to the Trust.

11.1.6 ***Insurance Settlement Agreements.*** Each Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been duly executed by all parties thereto and approved by the Bankruptcy Court, in each case in form and substance satisfactory to the Plan Proponents and applicable Settling Insurers.

11.1.7 ***The Settling Insurers' Contribution.*** Each Settling Insurer shall have paid to the Trust the Insurance Settlement Amount due under such Settling Insurer's Insurance Settlement Agreement, unless the terms of such Insurance Settlement Agreement expressly provide that the applicable Insurance Settlement Amount will be paid at a later date.

11.1.8 ***Final Orders.*** The Confirmation Order, the order appointing the Trustee, and the Sale Order(s) shall be Final Orders and no stay of any such orders shall then be in effect.

11.1.9 ***Additional Debtors Petition Date and Additional Debtors Bar Date.*** The Additional Debtors shall have filed their chapter 11 petitions prior to the Confirmation Hearing, and the Additional Debtors Abuse Claim Bar Date shall have occurred and no more than twenty-five (25) Post-Confirmation Claims shall have been filed.

11.1.10 ***No Material Amendments.*** The Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with consent of the Plan Proponents and any affected Settling Insurers, Additional Debtors and Abuse Claimants, *provided, however*, that

the Committee shall have authority to negotiate and agree to modifications to the treatment accorded to Class 4 Claims on behalf of all Class 4 Claimants in accordance with Section 2.3.4(n) of the Plan.

**11.2 Waiver of Conditions.**

Any condition to the occurrence of the Effective Date set forth in Section 11.1 of this Plan may be waived only by the mutual written consent of the Diocese and the Committee, provided, however, that each Settling Insurer must consent to a waiver of any condition affecting such Settling Insurer's rights or obligations, and each of the Additional Debtors must consent to a waiver of any condition affecting such Additional Debtor's obligations. For avoidance of doubt, none of the Diocese, the Committee, the Settling Insurers, or the Additional Debtors shall have any obligation to waive any of the conditions set forth in Section 11.1, and each may withhold such consent in their sole and absolute discretion.

**11.3 Occurrence of Effective Date.**

Provided that all conditions to the Effective Date, except that the Confirmation Order has not become a Final Order as a result of an appeal therefrom and no stay of the Confirmation Order has been entered, have been satisfied, those terms of the Plan that are necessary to allow Litigation Claims to proceed against the Diocese only may be implemented, provided, however, that Litigation Claims will not proceed against the Additional Debtors until after all conditions to the Effective Date have been met. Those terms of the Plan necessary to allow Litigation Claims to proceed are as follows: (a) the establishment of the Trust, (b) approval of the Trust Agreement, (c) appointment of the Trustee, and (d) the waiver of the automatic stay with respect to any Litigation Claims against the Diocese that the Trustee may authorize to proceed pursuant to Section 4.6 of the Plan; **provided, however**, that the Trustee shall not waive the automatic stay or authorize a Litigation Claimant to proceed under this Section 11.3 if such Litigation Claim alleges Abuse occurring (in whole or in part) within the policy period of a Settling Insurer Policy~~; provided, further, that the Trustee shall use reasonable efforts to prioritize future Litigation Claims that solely implicate Non-Settling Insurer Policies~~. For the avoidance of doubt, any Claims released from the automatic stay under this Section 11.3 will be Channeled Claims and Barred Claims in accordance with the Plan and the Insurance Settlement Agreements. Any expenses incurred by the Diocese in connection with the foregoing will act as a credit against the DOO Entities' Cash Payment to the extent such expenses are not reimbursed by insurance; and provided further, that in the event that the Confirmation Order is reversed or modified on appeal, all such Litigation Claims shall be automatically stayed; **provided, however,** that upon entry of an order reversing or modifying the Confirmation Order on appeal, (x) any Litigation Claimants, the Diocese and Committee shall meet and confer within five (5) business days of entry of such order to address lifting such stay; (y) the Diocese will not unreasonably withhold consent to continue litigation for any Litigation Claimant that asks for consent by the Diocese to continue litigation; and (z) if consent is withheld, the Diocese shall agree to a hearing on motion for stay relief on 14 days' notice, subject to availability of the Court; **provided further, however,** that any Litigation Claimant that thereafter obtains a judgment against the Diocese shall only be able to recover from any insurance proceeds applicable to such Litigation Claimant's Abuse Claim and pursuant to the terms of any confirmed plan. Litigation Claims against any Additional Debtor shall remain stayed and shall not be dismissed during such time that Litigation Claims

proceed against the Diocese pursuant to this Section 11.3; **provided, however,** that nothing in this Section 11.3 shall prohibit the Diocese and/or Additional Debtors from consenting to continue litigation against an Additional Debtor at any time, including after entry of a Confirmation Order that is not a Final Order. For avoidance of doubt, nothing in this Section 11.3 shall require payment of the DOO Entities' Cash Payment to the Trust unless and until the Confirmation Order has become a Final Order.

If the Effective Date has not occurred within ninety (90) days of the date on which the Confirmation Order becomes a Final Order, the Diocese or the Committee may elect to withdraw the Plan in their respective sole and absolute discretion.

For the further avoidance of doubt, and for purposes of this Section 11.3, the term "Litigation Claims" shall not include any Abuse Claims covered (or alleged to be covered) in whole or in part by a Settling Insurer Policy.

**11.4 Notice of Effective Date.**

The Diocese and the Additional Debtors shall jointly File a notice of Effective Date with the Bankruptcy Court and serve it on all Creditors and parties in interest within five (5) Business Days after the occurrence of the Effective Date. Such notice shall include all relevant deadlines put into effect by the occurrence of the Effective Date.

**11.5 Effect of Non-Occurrence of Condition.**

If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (i) constitute a waiver or release of any Claims by or against the Protected Parties; (ii) prejudice in any manner the rights of the Protected Parties or the Trust; (iii) constitute an admission, acknowledgment, offer, or undertaking by the Protected Parties in any respect, including but not limited to, in any proceeding or case against the Diocese or any Additional Debtor; or (iv) be admissible in any action, proceeding or case against the Protected Parties in any court or other forum. Notwithstanding the foregoing, in the event a Sale Order is a Final Order, each Insurance Settlement Agreement (including any release or waiver of Claims in accordance with the terms thereof) approved by such Sale Order shall continue and survive, in accordance with its terms and to the extent set forth therein.

## SECTION 12. EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE

**12.1 General Injunction and Discharge.**

12.1.1 ***General Injunction and Discharge of Diocese.*** **EXCEPT WITH RESPECT TO ABUSE CLAIMS AND INBOUND CONTRIBUTION CLAIMS ADDRESSED IN SECTION 12.2 BELOW, AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, OR AS OTHERWISE PROVIDED IN ANY INSURANCE SETTLEMENT AGREEMENT OR SALE ORDER, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OF ANY KIND OR NATURE AGAINST THE DIOCESE, WHETHER KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE**

**REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASES, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF NON-ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT (I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN, ARE PERMANENTLY ENJOINED, ON AND AFTER THE CONFIRMATION DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE CLAIMS ALLOWANCE PROCEDURE PROVIDED FOR IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DIOCESE OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM.**

12.1.2 ***Discharge of the Diocese for Non-Abuse Claims.*** Except as otherwise expressly provided in (i) the Plan, (ii) the Confirmation Order or (iii) any Insurance Settlement Agreement or Sale Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese and its Estate will be discharged from all liability for any and all Non-Abuse Claims. For the avoidance of doubt and notwithstanding anything to the contrary herein, neither the Diocese nor its Estate will be discharged from its or their respective responsibilities (and corresponding liabilities) under or with respect to any Insurance Settlement Agreement.

12.1.3 ***Treatment of Non-Abuse Claims against the Additional Debtors.*** The Additional Debtors will continue to be obligated to pay Non-Abuse Claims in the ordinary course of business, as set forth in Section 2.3.6. For the avoidance of doubt and notwithstanding anything to the contrary herein, neither the Additional Debtors, nor their Estates will be discharged from its or their respective responsibilities (and corresponding liabilities) under or with respect to any Insurance Settlement Agreement.

**12.2 Injunction and Discharge of Abuse Claims and Inbound Contribution Claims.**

12.2.1 ***Discharge of Abuse Claims Against the Additional Debtors.*** **ALL CONSIDERATION DISTRIBUTED UNDER THE PLAN, AND EACH ADDITIONAL DEBTOR'S PAYMENT TO THE TRUST, SHALL BE IN EXCHANGE FOR, AND IN COMPLETE SATISFACTION, SETTLEMENT, DISCHARGE, TERMINATION, AND RELEASE OF, ALL ABUSE CLAIMS OF ANY NATURE WHATSOEVER AGAINST OR IN THE ADDITIONAL DEBTORS OR ANY OF THEIR ASSETS OR PROPERTIES BASED UPON ANY ACT, OMISSION, TRANSACTION, OCCURRENCE, OR OTHER ACTIVITY OF ANY NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, AND, AS OF THE EFFECTIVE DATE, THE ADDITIONAL DEBTORS SHALL BE DEEMED DISCHARGED AND RELEASED, AND EACH HOLDER OF AN ABUSE CLAIM AND ANY SUCCESSOR, ASSIGN, AND AFFILIATE OF SUCH HOLDER SHALL BE DEEMED TO HAVE FOREVER WAIVED, DISCHARGED, AND RELEASED THE ADDITIONAL DEBTORS, TO THE FULLEST EXTENT PERMITTED BY SECTION 1141 OF THE BANKRUPTCY CODE, OF AND FROM ANY AND ALL ABUSE CLAIMS, RIGHTS AND LIABILITIES, BASED UPON ANY ACT, OMISSION, TRANSACTION, OCCURRENCE, OR OTHER ACTIVITY OF ANY NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, IN EACH CASE WHETHER OR NOT (A) A PROOF OF CLAIM BASED UPON SUCH ABUSE CLAIM IS FILED OR DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (B) AN ABUSE CLAIM IS ALLOWED UNDER SECTION 502 OF THE BANKRUPTCY CODE, (C) AN ABUSE CLAIM IS OR HAS BECOME AN EXPUNGED ABUSE CLAIM, OR (D) THE HOLDER OF AN ABUSE CLAIM IS DEEMED TO HAVE ACCEPTED THE PLAN.**

12.2.2 ***Injunction of Abuse Claims and Inbound Contribution Claims.*** **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE ALL PERSONS SHALL BE PERMANENTLY STAYED, ENJOINED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE AGAINST THE DIOCESE OR ANY ADDITIONAL DEBTOR, ANY ABUSE CLAIMS OR INBOUND CONTRIBUTION CLAIMS, KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE OR ANY ADDITIONAL DEBTOR OR ANY AGENTS OF THE DIOCESE OR ANY ADDITIONAL DEBTOR, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASES, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF**



~~23853722.v12~~23853722.v13

**THE BANKRUPTCY CODE, WHETHER OR NOT (I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE; (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN.**

**IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

**THE DISCHARGE AND INJUNCTIONS CONTAINED IN THE PLAN AND THE RELEASES PROVIDED UNDER THE PLAN DO NOT RELEASE OR IMPAIR AN ABUSE CLAIMANT'S RIGHT TO RECOVER ON ANY ABUSE CLAIM AGAINST ANY PERPETRATOR OF ABUSE FOR ACTS OF ABUSE THAT ARE INDEPENDENT OF THE LIABILITY OF THE DIOCESE OR ANY ADDITIONAL DEBTOR.**

12.2.3 ***Limited Exceptions to Injunctions.***

a. Preservation of Insurance Claims.

(i) To facilitate the pursuit of Insurance Claims against Non-Settling Insurers, the injunctions set forth in Section 12.2.2 above and 12.3 below shall not prevent the prosecution of Abuse Actions against the Diocese or any Additional Debtor (a) by one or more Litigation Claimants authorized by the Trustee to pursue their Litigation Claims, at such Litigation Claimants' expense, in any court of competent jurisdiction solely for the purpose of determining any liability that the Diocese and/or any Additional Debtor may have with respect to such Litigation Claimant's Litigation Claim, and the amount of that liability; (b) as the Trustee may deem necessary in order to prosecute the Insurance Claims against Non-Settling Insurers; or (c) as the Trustee may deem necessary in order to effectuate settlement of any Abuse Claims, *provided*, *however*, that all collection efforts against the Diocese and/or any Protected Party shall be enjoined and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party. For avoidance of doubt, the limited exception set forth in this Section 12.2.3.a permits (subject to the terms hereof) only the prosecution of Abuse Actions against the Diocese and/or an Additional Debtor; all collection efforts against any Protected Party are permanently barred and enjoined, and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party (or any of their respective assets except for any Non-Settling Insurer Policy).

(ii) To preserve coverage under any Non-Settling Insurer Policy, Abuse Claims will not be released or discharged as against the Diocese or any other Additional Debtor until the occurrence of the applicable Abuse Claim Discharge Date. For the avoidance of doubt, prior to the occurrence of the applicable Abuse Claim Discharge Date and subject to the limitations set forth in the Plan, a duly authorized Litigation Claimant or the Trust may name the Diocese or any Additional Debtor in a proceeding to adjudicate whether the Diocese or any Additional Debtor has liability for a Litigation Claim and the amount of any such liability, but recourse shall be limited to the proceeds of any Non-Settling Insurer Policies and all other damages that may be recoverable against any Non-Settling Insurers.

b. Notwithstanding anything to the contrary herein: (i) the Diocese and the Additional Debtors shall have no liability whatsoever for any Abuse Claims or Inbound Contribution Claims and any act by any Person to collect or enforce any Abuse Claim or Inbound Contribution Claim against the Additional Debtors shall be permanently enjoined; and (ii) subject to and upon payment of a Settling Insurer's Insurance Settlement Amount, such Settling Insurer shall have no liability whatsoever for any Channeled Claim or Barred Claim, and the Channeling Injunction and Settling Insurer Injunction prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any such Settling Insurer, its corresponding Settling Insurer Releasees, its Related Persons, or the assets or property of any of the foregoing (including the Purchased Property of such Settling Insurer).

12.2.4 ***Discharge of Abuse Claims and Inbound Contribution Claims.*** Except as otherwise expressly provided in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese, Additional Debtors and their Estates will be discharged from: (i) all liability for any and all Inbound Contribution Claims on the Confirmation Date; and (ii) all liability for any and all Abuse Claims upon the occurrence of the applicable Abuse Claim Discharge Date.

The Abuse Claim Discharge Date with respect to each Abuse Claim shall be determined as follows:

a. With respect to any Abuse Claim held by a Class 4 Claimant implicating only Settling Insurer Policies, the Abuse Claim Discharge Date shall be the Effective Date.

b. With respect to any Abuse Claim held by an Unknown Abuse Claimant, or a holder of a Post-Statute Filed Abuse Claim, the Abuse Claim Discharge Date shall be the Effective Date.

c. With respect to any Filed Abuse Claim held by a Class 4 Claimant in connection with a Non-Settling Insurer Policy who is authorized, on or before

the first anniversary of the Effective Date, to proceed as a Litigation Claimant, the Abuse Claim Discharge Date shall be the earlier of (a) the date on which all Litigation Claims asserted by such Litigation Claimant against the Diocese and/or any Additional Debtor have been fully adjudicated, settled or dismissed on a final and non-appealable basis, (b) the date on which the Abuse Claimant withdraws his or her election to be a Litigation Claimant in accordance with Section 4.6.3 of the Plan, or (c) the date on which the Trust enters into a settlement with respect to all Non-Settling Insurer Policies that are Target Policies of such Litigation Claim.

d. With respect to any Filed Abuse Claim held by Abuse Claimants in connection with a Non-Settling Insurer Policy who are not authorized by the Trustee to liquidate his or her Litigation Claim on or before the first anniversary of the Effective Date, the Abuse Claim Discharge Date shall be the earlier of (a) the first anniversary of the Effective Date or (b) the date on which the Abuse Claimant withdraws his or her election to be a Litigation Claimant in accordance with Section 4.6.3 of the Plan.

e. For the avoidance of doubt, (i) the Abuse Claim Discharge Date for any Abuse Claim shall be deemed to occur no later than the first day following the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against any Non-Settling Insurers who issued Non-Settling Insurer Policies that are Target Policies of any Litigation Claimants' potential Litigation Claims, and (ii) the Abuse Claim Discharge Date for all Abuse Claims shall be deemed to occur no later than the first day following the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against all Non-Settling Insurers.

12.2.5 ***Preservation of Insurance Claims.*** The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the fact that the Diocese and the Additional Debtors have filed, or will file, bankruptcy petitions, or by the amount of any Distributions Abuse Claimants receive, or may be entitled to receive, based on the Plan. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims as set forth in the Plan. Any such recoveries by the Trust from Non-Settling Insurers will be added to the Abuse Claims Settlement Fund to be distributed pursuant to the terms of the Plan, the Allocation Protocol, and the Trust Documents. Nothing in this Plan shall be deemed to modify or abridge any rights of the Non-Settling Insurers under their respective Non-Settling Insurer Policies.

**12.3 <u>Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties.</u>**

**IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES HEREIN, THEIR PAYMENTS TO THE TRUST, AND OTHER CONSIDERATION GIVEN, AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND THE ADDITIONAL DEBTORS, AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT**

**WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:**

**A. ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THIS PLAN, THE ALLOCATION PROTOCOL, AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.**

**B. ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:**

**(I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

**(II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

**(III) CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;**

**(IV) ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:**

**(A) ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;**

**(B) ANY OF THE PROTECTED PARTIES; OR**

**(C) THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

**(V) TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND**

**(VI) ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 12 OR OTHERWISE IN THE PLAN, LITIGATION CLAIMANTS AND THE TRUST SHALL BE PERMITTED TO NAME THE DIOCESE AND ANY ADDITIONAL DEBTOR IN ANY PROCEEDING TO RESOLVE WHETHER THE DIOCESE OR SUCH ADDITIONAL DEBTOR HAS LIABILITY FOR A LITIGATION CLAIM, AND THE AMOUNT OF ANY SUCH LIABILITY, FOR THE PURPOSE OF OBTAINING INSURANCE COVERAGE FROM NON-SETTLING INSURERS UNDER THE NON-SETTLING INSURER POLICIES, AND FOR THE PURPOSE OF PURSUING ANY AND ALL INSURANCE CLAIMS AGAINST THE NON-SETTLING INSURERS. ANY SUCH JUDGMENTS OR AWARDS WILL BE TURNED OVER TO THE TRUST FOR DISTRIBUTION IN ACCORDANCE WITH SECTION 4.6 OF THIS PLAN. FOR THE AVOIDANCE OF DOUBT, RECOURSE WITH RESPECT TO ANY AND ALL LITIGATION CLAIMS IS EXPRESSLY LIMITED TO THE PROCEEDS OF NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS, AS AND TO THE EXTENT PERMITTED BY THIS PLAN.**

**THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES. IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

**12.4 Additional Debtors Payment.**

Subject to the terms and conditions of this Section 12.4, in exchange for the settlement and release of Abuse Claims as set forth in this Plan, and the other provisions of this Plan, including, without limitation, the Trust's assumption of the Channeled Claims and Trust Expenses, the Additional Debtors have agreed, and are hereby directed, to pay their portion of the DOO Entities' Cash Payment to the Trust. The Diocese, or its designee, may serve as paying agent for the collection and payment of the Additional Debtors' Payments to the Trust.

**12.5 Settling Insurer Injunction.**

Pursuant to sections 105(a), 363, and 1123 of the Bankruptcy Code, and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including the payment of each Settling Insurer's Insurance Settlement Amount and the Settling Insurers' purchase of the Purchased Property free and clear of all Claims and Interests pursuant to section 363(f) of the Bankruptcy Code, this Plan hereby incorporates by reference, adopts, and ratifies (and the Confirmation Order shall adopt and ratify) the Settling Insurer Injunction set forth in the Sale Order(s) in all respects. For the avoidance of doubt, there can be no modification, dissolution, or termination of the Settling Insurer Injunction, which shall be a permanent injunction.

**12.6 Litigation/Settlement of Certain Claims.**

12.6.1 Except as expressly set forth in Section 12.2.3 of the Plan, the Channeling Injunction shall channel all Inbound Contribution Claims and all Insurer Contribution Claims to the Trust. For the avoidance of doubt, unless otherwise provided in the Plan, the Allocation Protocol, or Trust Documents, the channeling of an Inbound Contribution Claim or Insurer Contribution Claim does not entitle the holder of such Channeled Claim to a Trust Distribution.

12.6.2 If, for any reason any court does not recognize the channeling of the Insurer Contribution Claims of Non-Settling Insurers to the Trust, or such Insurer Contribution Claims are not channeled for any reason, then the following shall apply:

a. Settling Insurers shall retain their Insurer Contribution Claims; *provided*, *however*, that:

(i) Settling Insurers shall not pursue any Insurer Contribution Claim against any Non-Settling Insurer, (A) that asserts an Insurer Contribution Claim solely against the Trust; (B) whose Insurer Contribution Claim is satisfied and extinguished entirely by the application of this Section 12.6, or (C) that does not assert an Insurer Contribution Claim against them;

(ii) If a Non-Settling Insurer asserts its Insurer Contribution Claim only against the Trust, then Settling Insurers shall assign any Insurer Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such Insurer Contribution Claims against such Non-Settling Insurer;

(iii) If a Non-Settling Insurer releases its Insurer Contribution Claims, if any such exist, that it may have against Settling Insurers, then such released Settling Insurers shall release their Insurer Contribution Claims against such releasing Non-Settling Insurer.

b. In any Action, including the Insurance Coverage Adversary Proceeding, involving the Diocese, a Covered Party, or the Trust (collectively, the

"Alleged Insured") or an Abuse Claimant, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert an Insurer Contribution Claim against a Settling Insurer (that Settling Insurer, a "Contribution Target"), then any judgment or award obtained by such Alleged Insured or Abuse Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that the Contribution Target is liable to pay such Non-Settling Insurer as a result of the Non-Settling Insurer's Insurer Contribution Claim (the "Reduction Amount"), so that the Non-Settling Insurer's Insurer Contribution Claim is thereby satisfied and extinguished entirely. To accomplish this reduction, the Alleged Insured or Abuse Claimant shall obtain a finding from that court or arbitrator(s), as applicable, establishing the Reduction Amount before obtaining an entry of judgment against such Non-Settling Insurer. A Contribution Target shall upon request and at the sole expense of the Trust cooperate in good faith with the Alleged Insured to take reasonable steps to aid the Alleged Insured in defending against the Insurer Contribution Claim or otherwise establish the Reduction Amount contemplated in this paragraph.

c. For the avoidance of doubt, if a Non-Settling Insurer asserts it has an Insurer Contribution Claim directly or indirectly arising out of or in any way relating to such Non-Settling Insurer's payment of loss on behalf of the Diocese or a Covered Party or defense expenses incurred in any action that should have been paid by or are otherwise attributable to a Settling Insurer related to any Abuse Claim or (b) rights to recover any self-insured retentions/obligations and/or deductibles (collectively, "Payment Obligations") in connection with its payment of defense and/or indemnity related to an Abuse Claim, then (i) such Insurer Contribution Claims or Payment Obligations may be asserted as a setoff, defense, or counterclaim solely against any Abuse Claimant or the Trust, as applicable, in any insurance action or insurance recovery involving such Non-Settling Insurer (but in no event shall the Insurer Contribution Claim or Payment Obligation be asserted against any of the Protected Parties), and (ii) to the extent such Insurer Contribution Claims or Payment Obligations are determined to be valid, the liability (if any) of such Non-Settling Insurer to the holder of the Abuse Claim or the Trust, as applicable, shall be reduced by the amount of such Insurer Contribution Claims or Payment Obligations, provided that if any such Insurer Contribution Claim exceeds the liability of such Non-Settling Insurer to the Abuse Claimant or the Trust, as applicable, the Non-Settling Insurer does not waive any excess claim and may seek affirmative recovery solely from the Trust. To the extent payment of a self-insured retention is a condition to a Non-Settling Insurer's obligation to provide defense or indemnity under applicable law and the Non-Settling Insurer's applicable insurance policies, the failure of the Trust to pay such self-insured retention to the Non-Settling Insurer shall result in the Non-Settling Insurer having the right to argue that such failure of payment is a complete defense to any claim for coverage by the Non-Settling Insurer to, or related to, any claim for recovery of insurance from the Non-Settling Insurer.

d. If an Alleged Insured or Abuse Claimant and a Non-Settling Insurer enter into an agreement settling one or more Abuse Claims, such

agreement shall include a provision whereby such Non-Settling Insurer releases its Insurer Contribution Claims against Settling Insurers so long as Settling Insurers release their Insurer Contribution Claims against such Non-Settling Insurer.

e. Nothing contained in this Section 12.6.2 shall be interpreted to require the Trust to maintain or allocate a specific reserve for the costs set forth in this Section.

f. The above procedures shall bind, and inure to the benefit of, all Settling Insurers.

12.6.3 To ensure that the reduction contemplated in Section 12.6.2 is accomplished, the Settling Insurers shall be entitled to: (i) notice, within a reasonable time, of the initiation of any future Action against or future settlement negotiations with any Non-Settling Insurer in which an Insurer Contribution Claim could be asserted against any Settling Insurers, and periodic notices thereafter on at least an annual basis of the status of such Action or negotiations; (ii) the opportunity to participate in the Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in Section 12.6.2; (iii) the reasonable cooperation of the applicable Alleged Insured, at the sole cost and expense of the Trust, so that the Settling Insurers (or, as applicable, the Trust) can assert Section 12.6.2 as a defense in any Action for an Insurer Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect the Settling Insurers from any Insurer Contribution Claim. The notice required above shall be given by: (i) the Alleged Insured that is a party to such Action or settlement negotiations; or (ii) if no Alleged Insured is such a party, the Non-Settling Insurer that is a party to such Action or settlement negotiations; or (iii) if no Alleged Insured or Non-Settling Insurer is a party to such Action or settlement negotiations, the Abuse Claimant bound by this Plan.

12.6.4 The Trust shall use reasonable efforts to obtain, from all Settling Insurers, agreements with terms similar to those referenced in Section 12.5 hereof.

## 12.7 <u>Additional Debtors Abuse Claim Bar Date</u>

12.7.1 *Establishment of Additional Debtors Abuse Claim Bar Date*

Except for a Previously Asserted Abuse Claim (which, for the avoidance of doubt, will be classified and treated in accordance with Section 2.3.4), all Proofs of Claim for Abuse Claims against Additional Debtors, if any, must be filed by the Additional Debtors Abuse Claim Bar Date. Any Abuse Claim (other than a Previously Asserted Abuse Claim) against an Additional Debtor for which a timely Proof of Claim is not filed shall be automatically disallowed, forever barred from assertion, and unenforceable against the Diocese, the Additional Debtors, their Estates, or their property without the need for any objection by the Additional Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Abuse Claim against an Additional Debtor shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary. For the avoidance of doubt, if

and when Unknown Abuse Claims are filed, such Unknown Abuse Claimants shall receive distributions as and to the extent provided in the Trust Allocation Protocol in the Plan Supplement.

For the avoidance of doubt, the fact that an Abuse Claim is or may be time-barred or subject to a statute of limitations or other defense under applicable non-bankruptcy law does not excuse the holder of such Abuse Claim from compliance with the provisions of the Plan, including this Section 12.7, the Additional Debtors Abuse Claim Bar Date, and the Confirmation Order.

12.7.2 *Treatment of Post-Confirmation Claims*

All Previously Asserted Abuse Claims against the Additional Debtors shall be classified as Abuse Claims and treated in accordance with Section 2.3.4. All Abuse Claims (other than Previously Asserted Abuse Claims) against Additional Debtors that are timely filed in accordance with the Additional Debtors Abuse Claim Bar Date and this Section 12.7 shall be classified as Post-Confirmation Claims and treated in accordance with Section 2.3.4.

As set forth herein, all Abuse Claims (other than Previously Asserted Abuse Claims) against Additional Debtors that are not timely filed in accordance with the Additional Debtors Abuse Claim Bar Date and this Section 12.7 shall be discharged, disallowed, forever barred from assertion, and unenforceable against the Trust, the Trustee, Additional Debtors, the Estates or their property. To the extent any future court finds the foregoing provision to be unenforceable, such claims shall be treated as Unknown Abuse Claims.

12.7.3 *Additional Debtors Abuse Claim Bar Date Procedures*

The following procedures for the filing of proofs of claim shall apply:

a. Additional Debtors Abuse Proofs of Claim must conform substantially to the Additional Debtors Abuse Proof of Claim Form;

b. All confidentiality provisions of the Bar Date Order shall apply to the Additional Debtors Abuse Proofs of Claim, provided, however, that to the extent necessary, the Pastor or other trustees of the Additional Debtors may be designated as Authorized Parties (as defined in the Bar Date Order) upon written consent of the Committee or the Trustee.

c. Additional Debtors Abuse Proofs of Claim must be submitted (i) electronically through the Claims Agent website for the lead Chapter 11 Case at https://case.stretto.com/dioceseofogdensburg by following instructions for filing proofs of claim electronically; or (ii) by delivering the original proof of claim by U.S. Postal Service mail to The Roman Catholic Diocese of Ogdensburg, New York Claims Processing – Additional Debtors Claims, c/o Stretto, 410 Exchange, Ste. 100, Irvine, CA 92602;

d. Additional Debtors Abuse Proofs of Claim will be deemed filed only when received by the Claims Agent on or before the Additional Debtors Abuse Claim Bar Date;

e. Additional Debtors Abuse Proofs of Claim must (i) be signed, (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available; and (iii) be in the English language; and

f. Additional Debtors Abuse Proofs of Claim sent by facsimile, telecopy, or electronic mail transmission will not be accepted.

Pursuant to Bankruptcy Rule 3003(c)(2), all holders of Additional Debtors Abuse Claims that fail to comply with this Section 12.7 by timely filing a proof of claim in appropriate form shall not be treated as a Creditor with respect to such Claim for the purpose of distributions.

Parties asserting Abuse Claims against the Additional Debtors that arose before the Additional Debtors Petition Date must use the form substantially in the form of the Additional Debtors Abuse Proof of Claim Form.

Due to the sensitive nature of the information requested in the Additional Debtors Abuse Proof of Claim Form, the Confidentiality Protocol, as stated in the Bar Date Order, and as may be further amended from time to time, shall apply to all Additional Debtors Abuse Proof of Claim Forms submitted by holders of Abuse Claims against the Additional Debtors.

The Claims Agent shall assign to each claimant filing an Additional Debtors Abuse Proof of Claim Form against an Additional Debtor a unique identifier code and shall maintain a confidential list of the identities of such claimants, their corresponding identifier code, and their respective Additional Debtors Proof of Claim Forms.

The Diocese will cause the Additional Debtors Bar Date Notice and the Additional Debtors Abuse Proof of Claim Form to be posted on the website established by the Claims Agent for these Chapter 11 Cases.

Pursuant to Bankruptcy Rules 2002(l) and 9008, the Diocese and Additional Debtors may publish notice of the Additional Debtors Abuse Claim Bar Date substantially in the form of the Additional Debtors Bar Date Publication Notice.

The Additional Debtors may (a) post a link on its respective website to the Additional Debtors Bar Date Notice and the Additional Debtors Abuse Proof of Claim Form, (b) provide a notice (or a link to the notice) in any bulletins it sends to its parishioners, or (c) provide additional notice to the extent it considers appropriate.

The Diocese, Additional Debtors and the Claims Agent are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Section 12.7.

Nothing in this Section 12.7 shall (a) prejudice the right of the Trust, the Trustee, the Diocese, Additional Debtors, or any other Diocese Settling Party or Insurer to dispute or assert offsets or defenses to any Abuse Claim, (b) limit the releases, discharges and injunctions set forth elsewhere in this Plan or the Confirmation Order or (c) be construed to modify, amend or enlarge any Creditor's rights with respect to any Claim.

**12.8 Injunction Against Interference with Plan.**

Upon entry of the Confirmation Order, all holders of Claims and all Non-Settling Insurers shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

**12.9 Release by Holders of Channeled Claims.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, ALL HOLDERS OF CHANNELED CLAIMS, INCLUDING CLASS 4 CLAIMS (THE "RELEASING PARTIES"), SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DIOCESE, THE ADDITIONAL DEBTORS, THE ESTATE, THE CONDUCT OF THE DIOCESE'S AND THE ADDITIONAL DEBTORS' BUSINESSES, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THESE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE. THE FOREGOING RELEASE SHALL BE EFFECTIVE UPON THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT THAT, SOLELY WITH RESPECT TO ANY ABUSE CLAIM THEY MAY HOLD, EACH CLASS 4 CLAIMANT WILL RELEASE THE DIOCESE AND THE ADDITIONAL DEBTORS UPON THE OCCURRENCE OF THE ABUSE CLAIM DISCHARGE DATE APPLICABLE TO SUCH ABUSE CLAIM. FOR THE AVOIDANCE OF DOUBT, PRIOR TO THE OCCURRENCE OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE AND SUBJECT TO THE LIMITATIONS SET FORTH IN THE PLAN, A DULY AUTHORIZED LITIGATION CLAIMANT MAY NAME THE DIOCESE OR ANY ADDITIONAL DEBTOR IN A CASE OR PROCEEDING TO ADJUDICATE WHETHER THE DIOCESE OR ANY ADDITIONAL DEBTOR HAS LIABILITY FOR AN ABUSE CLAIM AND THE AMOUNT OF ANY SUCH LIABILITY, BUT RECOURSE IN SUCH CASE OR PROCEEDING SHALL BE LIMITED TO THE**

**PROCEEDS OF THE INSURANCE CLAIMS. UNDER NO CIRCUMSTANCE MAY A LITIGATION CLAIMANT OR THE TRUST NAME, OR OTHERWISE PURSUE, ANY SETTLING INSURER RELEASEES OR ANY SETTLING INSURER'S RELATED PERSONS (IN ANY ACTION OR OTHERWISE) FOR OR ON ACCOUNT OF A CHANNELED CLAIM FOLLOWING SUCH SETTLING INSURER'S PAYMENT OF THE APPLICABLE INSURANCE SETTLEMENT AMOUNT.**

**12.10 Mutual Releases.**

**EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE DIOCESE OR THE ADDITIONAL DEBTORS, OBLIGATIONS ARISING UNDER THE PLAN AND, SOLELY WITH RESPECT TO THE DIOCESE AND THE ADDITIONAL DEBTORS, ABUSE CLAIMS SUBJECT TO DELAYED RELEASE IN ACCORDANCE WITH SECTION 12.2.3 ABOVE, ON THE EFFECTIVE DATE, EACH OF THE DIOCESE, ADDITIONAL DEBTORS, THE COMMITTEE, THE TRUST, AND EACH CLASS 4 CLAIMANT, SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST EACH OTHER, EXCEPT THAT CLASS 4 CLAIMANTS SHALL NOT WAIVE THEIR RIGHTS TO DISTRIBUTIONS UNDER THE TRUST IN ACCORDANCE WITH THE TRUST AGREEMENT AND THE ALLOCATION PROTOCOL, AND SHALL BE DEEMED TO RELEASE THEIR ABUSE CLAIMS AGAINST THE DIOCESE AND THE ADDITIONAL DEBTORS AS OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE; PROVIDED, HOWEVER, THAT PRIOR TO THEIR RELEASE ANY SUCH ABUSE CLAIMS SHALL ONLY BE ENFORCEABLE AND COMPENSABLE PURSUANT TO THE TERMS OF THE PLAN AND PLAN DOCUMENTS. CLASS 4 CLAIMANTS SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST A SETTLING INSURER, SUCH SETTLING INSURER'S RELATED PERSONS, AND ALL OTHER OF SUCH SETTLING INSURER'S SETTLING INSURER RELEASEES ON THE DATE SUCH SETTLING INSURER REMITS ITS INSURANCE SETTLEMENT AMOUNT TO THE TRUST (BUT NO EARLIER THAN THE EFFECTIVE DATE).**

**12.11 Releases in Insurance Settlement Agreements.**

The releases in the Insurance Settlement Agreements are hereby fully incorporated in this Plan by reference and are adopted and ratified in all respects, and the Confirmation Order shall adopt and ratify all such releases. For the avoidance of doubt, but without limiting the generality of the foregoing, the Confirmation Order shall provide that all such releases are binding upon the Diocese and the Additional Debtors.

**12.12 Exculpation; Limitation of Liability.**

**NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR ANY CLAIM BY ANY OTHER EXCULPATED PARTY, BY ANY**

**HOLDER OF A CLAIM, OR BY ANY OTHER PARTY IN INTEREST, FROM AND AFTER THE EFFECTIVE DATE, FOR ANY ACT OR OMISSION (I) THAT OCCURRED FROM THE APPLICABLE PETITION DATE THROUGH THE EFFECTIVE DATE IN CONNECTION WITH THESE CHAPTER 11 CASES OR (II) IN CONNECTION WITH THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THIS PLAN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE COMMITTEE, THE DIOCESE, THE ADDITIONAL DEBTORS AND THEIR RESPECTIVE OFFICERS, TRUSTEES, BOARDS, COMMITTEE MEMBERS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, EXPERTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(e) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.**

**12.13 Gatekeeper Injunction.**

To the extent permitted by law, and subject in all respects to this Section 12, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Cases, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the businesses of the Diocese or any Additional Debtor, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party. The Bankruptcy Court will have jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally permissible and as provided for in Section 14, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.

For the avoidance of doubt, the Gatekeeper Injunction in this Section 12.13 does not apply to (i) Claims seeking recovery from Non-Settling Insurers, and (ii) the prosecution of Abuse claims with respect to Abuse that occurred, or is alleged to have occurred, on or after the Effective Date.

**12.14 Injunctions in Full Force and Effect.**

All injunctions and/or stays provided for in the Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer that has purchased Settling Insurer Policies, free and clear of all Claims pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, are permanent and will remain in full

force and effect following the Effective Date of the Plan and are not subject to being vacated or modified.

**12.15 Release of Estate Causes of Action**

**EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE DIOCESE OR THE ADDITIONAL DEBTORS AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, IN CONSIDERATION FOR THE CONTRIBUTING NON-DEBTOR ENTITY CONTRIBUTION TO THE TRUST, ON THE EFFECTIVE DATE THE DIOCESE AND THE ADDITIONAL DEBTORS EACH, AND COLLECTIVELY, SHALL BE DEEMED TO IRREVOCABLY AND UNCONDITIONALLY FULLY, FINALLY, AND FOREVER WAIVE, RELEASE, ACQUIT, AND DISCHARGE THE CONTRIBUTING NON-DEBTOR ENTITIES, THEIR RESPECTIVE AFFILIATES, AND EACH OF THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES FROM ANY AND ALL CLAIMS, COUNTERCLAIMS, CROSS-CLAIMS, CAUSES OF ACTION, DISPUTES, SUITS, COSTS, DEBTS, LIABILITIES, OBLIGATIONS, RIGHTS, REMEDIES, DEFENSES, DUES, SETOFFS, RECOUPMENTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, COVENANTS, CONTRACTS, CONTROVERSIES, AGREEMENTS, PROMISES, DAMAGES, JUDGMENTS, EXECUTIONS AND DEMANDS WHATSOEVER, OF WHATEVER KIND OR NATURE, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, ACCRUED OR UNACCRUED, CURRENTLY EXISTING OR ARISING IN THE FUTURE, BASED IN WHOLE OR IN ANY PART ON THE ESTATE CAUSES OF ACTION.**

**12.16 Injunctions and Releases Integral.**

The foregoing injunctive provisions and releases are an integral part of the Plan and are essential to its implementation. The currently pending Abuse Actions commenced by Class 4 Claimants, the continuation of which would violate Sections 12.1, 12.2, or 12.3 of this Plan, the releases provided for under the Plan, or the Insurance Settlement Agreements shall be dismissed with prejudice following the Trustee's receipt of an Abuse Claim Release Agreement executed by the applicable Abuse Claimant, except for Litigation Claims (or Abuse Claims that may become Litigation Claims), which will be released as against the Diocese and/or Additional Debtors (as applicable) upon the applicable Abuse Claim Discharge Date in accordance with Sections 12.2.4 and 12.10 of this Plan.

**12.17 Timing.**

The injunctions, releases, and discharges (including the Channeling Injunction and the Settling Insurer Injunction) to which a Settling Insurer is entitled pursuant to such Settling Insurer's Insurance Settlement Agreement, the Plan, the Confirmation Order, the Sale Order approving such Insurance Settlement Agreement, and the Bankruptcy Code shall become

effective when (i) the Trust receives payment in full of the Insurance Settlement Amount from the applicable Settling Insurer pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, and (ii) all other conditions to the effectiveness of such Settling Insurer's Insurance Settlement Agreement are satisfied or waived in accordance with the terms thereof.

**12.18 Excluded Parties and Non-Settling Insurers.**

Notwithstanding anything to the contrary herein, the following shall apply to Excluded Parties and Non-Settling Insurers: (a) no Claim by an Abuse Claimant against an Excluded Party or Non-Settling Insurer shall be a Channeled Claim, *provided*, *however*, that any Class 4 Claims which assert liability against an Excluded Party or a Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims as to such Protected Party; (b) no Claim by an Abuse Claimant against an Excluded Party or a Non-Settling Insurer shall be released by operation of this Plan; (c) the injunctions provided in Sections 12.1 and 12.2 of this Plan shall not apply to Claims by any Abuse Claimant against an Excluded Party or Non-Settling Insurer; and (d) all Claims by any Abuse Claimant against an Excluded Party or Non-Settling Insurer are preserved and are not affected by the terms of this Plan.

**12.19 Title to and Vesting of Assets.**

All property of the Diocese, the Additional Debtors and their Estates is dealt with by the Plan. Therefore, on the Effective Date, to the fullest extent allowed by sections 1123(a)(5), 1123(b)(2), 1123(b)(3), 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Diocese, the Additional Debtors and their Estates, and any property acquired by the Diocese or any Additional Debtor pursuant to this Plan shall revest in the Diocese and any Additional Debtor, as applicable, and such property shall be, except as otherwise expressly provided in this Plan or the Confirmation Order, free and clear of all Liens, Claims, charges or other encumbrances whatsoever, except (i) that any charitable assets subject to Donor Restrictions shall remain subject to such Donor Restrictions, and (ii) all Purchased Property shall be settled, sold, and/or released (as applicable) pursuant to the terms of the Insurance Settlement Agreements. On and after the Effective Date, except as otherwise provided in this Plan, the Diocese and the Additional Debtors may operate and manage their affairs and may use, acquire, or dispose of such property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by Donor Restrictions, the Plan or the Confirmation Order. The Diocese and the Additional Debtors may pay any charges incurred on or after the Effective Date for Professional Fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**12.20 Continued Corporate Existence.**

12.20.1 The Diocese and the Additional Debtors will continue to exist after the Effective Date as not-for-profit corporations, including pursuant to the special act under New York law and other formation, organizational and governance documents in effect immediately prior to the Effective Date, and have tax-exempt status under 26 U.S.C. § 501(c)(3) and applicable New York law, without prejudice to any right to alter or terminate such existence,

or to change any corporate name, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

**12.21 Identity of Trustees and Officers of the Diocese.**

In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the trustees of the Diocese on and after the Effective Date shall be: Bishop Terry R. LaValley, Deacon James Crowley and Rev. Joseph A. Morgan, all of whom have served in such capacities for the Diocese during these Chapter 11 Cases and each of whom is affiliated with the Universal Roman Catholic Church. The trustees of each of the Additional Debtors shall remain unchanged. For the avoidance of doubt, the foregoing individuals shall not be trustees of the Trust.

**12.22 Authority to Effectuate Plan.**

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court, the Diocese or the Additional Debtors. The Diocese and the Additional Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action they may deem necessary or beneficial to achieve consummation of and carry out the Plan and to effectuate the transactions provided for thereunder.

**12.23 Binding Effect.**

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all holders of Claims. Subject to the terms of the Plan, upon the Effective Date, every holder of a Claim shall be precluded and permanently enjoined from asserting against the Diocese or any Additional Debtor any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the applicable Petition Date.

**12.24 Dissolution of Committee.**

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and Agents shall be released from any further duties and responsibilities in these Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during these Chapter 11 Cases, including any orders regarding confidentiality issued by the Bankruptcy Court or Mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims.

**SECTION 13. [RESERVED]**

**SECTION 14. RETENTION OF JURISDICTION**

**14.1 By the Bankruptcy Court.**

Pursuant to sections 105, 1123(a)(5) and 1142(b) of the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334, on and after the Effective Date, the Bankruptcy Court shall retain: (i) original and exclusive jurisdiction over the Chapter 11 Cases; (ii) original, but not exclusive jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Cases; and (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Cases and the Plan, including matters concerning the interpretation, implementation, consummation, execution or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

a. over disputes concerning the ownership of Claims.

b. over disputes concerning the distribution or retention of assets under the Plan.

c. subject to the Plan Documents, over objections to Claims, motions to allow late-filed Claims and motions to estimate Claims.

d. over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Diocese, the Estate, or the Trust, or property abandoned or transferred by the Diocese, the Estate, or the Trust.

e. over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee.

f. over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets.

g. over matters related to the removal of the Trustee and the appointment of a successor Trustee.

h. over matters relating to the subordination of Claims.

i. to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

j. to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order.

k. to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to the Plan and any Insurance Settlement Agreement (including, without limitation, the Channeling Injunction, Settling Insurer Injunction, and Gatekeeper Injunction).

l. over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith.

m. over requests for allowance of payment of Claims entitled to priority under sections 507(a)(2) and 503(b) of the Bankruptcy Code and any objections thereto.

n. over all applications for compensation under sections 327, 328, 329, and 330 of the Bankruptcy Code.

o. over matters concerning state, local, or federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

p. over conflicts and disputes among the Trust, the Diocese, the Additional Debtors and holders of Claims.

q. over disputes concerning the existence, nature, or scope of the Diocese Discharge, or the Additional Debtors Discharge including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date.

r. to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Diocese or its property, the Estate or its property, any Additional Debtor or its property or any property of the Additional Debtor's Estates, the Trust or its property, the Trustee, the Professionals, or the Confirmation Order.

s. to enter a final decree closing the Chapter 11 Cases.

t. to enforce all orders previously entered by the Bankruptcy Court (including, without limitation, the Sale Order(s)).

u. over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or the Plan.

v. to hear and determine any matters related to the indemnification obligations of the Trust under Section 8.13 and/or any Insurance Settlement Agreements.

**14.2 By the District Court.**

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. § 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases.

**14.3 Actions to Enforce the Plan.**

The Diocese, the Additional Debtors and the Trust may, but are not required to, commence an Action to enforce the terms of the Plan or to collect amounts owed pursuant to the Plan and any settlements set forth in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with the terms of the Plan or such settlement. Any such Action may be commenced by filing a motion with the Bankruptcy Court. On and after the Effective Date, the Trust shall have the sole and exclusive right to enforce the terms of the Plan against the Diocese and/or any Additional Debtor (except that the Diocese or any Additional Debtor may enforce the terms of the plan as against each other and the Trust) and may seek any appropriate remedy in law or equity from the Bankruptcy Court which shall retain exclusive jurisdiction over any such Action. Nothing herein shall confer jurisdiction to the Bankruptcy Court to adjudicate a personal injury claim, including an Abuse Claim (including a Litigation Claim).

**14.4 Case Closure.**

The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing the Chapter 11 Cases upon a motion by the Diocese, the Additional Debtors or any other Person. The Trustee shall not take any actions to unreasonably keep the Chapter 11 Cases open. The Trustee, in his sole discretion, may seek to reopen the Chapter 11 Cases to administer assets of the Trust, including with respect to entering into settlement agreements with Non-Settling Insurers. If the Chapter 11 Cases are reopened upon request of the Trustee, the Trust, the Diocese and the Additional Debtors shall cooperate to assure that no disbursements are made from the Estates during the period when the Chapter 11 Cases are reopened, and the case shall be closed at the earliest possibility.

## SECTION 15. MISCELLANEOUS PROVISIONS

**15.1 Amendment or Modification of this Plan.**

The Plan Proponents may modify the Plan at any time prior to the Confirmation Hearing, in accordance with section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation, the Plan Proponents may modify the Plan, in accordance with

section 1127(b) of the Bankruptcy Code, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, those provisions of the Plan that implement, supplement or relate to the Insurance Settlement Agreements may not be severed, waived, amended, deleted or otherwise modified without the prior written approval of each Settling Insurer affected by such severance, waiver, amendment, deletion or modification.

**15.2 Revocation or Withdrawal of this Plan.**

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan Proponents revoke or withdraw this Plan before the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Diocese or the Committee or to prejudice in any manner the rights of the Diocese or the Committee in any further proceedings.

**15.3 Reports.**

Until a final decree closing the Diocese's Chapter 11 Case is entered, the Diocese shall File all post-confirmation quarterly reports as required by the United States Trustee Operating Guidelines (with a copy served on the Office of the United States Trustee). The first report shall be Filed within thirty (30) days after the end of the quarter in which the Effective Date occurs. The Additional Debtors shall not be required to file monthly operating reports or post-confirmation quarterly reports, pursuant to the *Case Management Order Establishing Procedures for the Filing and Administration of Prepackaged Chapter 11 Cases by Parishes and Affiliated Entities of the Diocese of Ogdensburg* [Docket No. _____].

**15.4 Notices.**

All notices or requests in connection with this Plan shall be in writing and given by mail or overnight mail (with a contemporaneous e-mail copy, which shall not constitute notice) addressed to:

To the Diocese:
Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Sara C. Temes, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com
temess@bsk.com

To the Committee:
James I. Stang, Esq.
Ilan D. Scharf, Esq.
Karen B. Dine, Esq.
Pachulski Stang Ziehl & Jones LLP
1700 Broadway, 36th Floor
New York, New York 10019
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
kdine@pszjlaw.com

To the Additional Debtors:
William C. Heuer, Esq.
Westerman Ball Ederer Miller Zucker & Sharfstein, LLP
1201 RXR Plaza
Uniondale, New York 11556
Email: wheuer@westermanllp.com

To the Trust or the Trustee:
At the address set forth in the Trust Agreement

All notices and requests to Persons holding any Claim in any Class shall be sent to them at (i) the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Diocese, Additional Debtors, or Trustee, as applicable, by such Claimant in writing; or (ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Diocese, Additional Debtors, or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Diocese in its Chapter 11 Case.

**15.5 Severability.**

If, prior to confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

**15.6 Validity and Enforceability.**

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the Confirmation Order, is valid and enforceable pursuant to its terms. Should any

provision in this Plan be determined by the Bankruptcy Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

**15.7 Controlling Documents.**

In the event and to the extent that any provision of the Plan or the Trust Documents is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or the Trust Documents, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Documents (other than provisions relating to the Trustee's authority to act) is inconsistent with any provision of the Plan, the Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Documents, the provisions of the Confirmation Order shall control and take precedence.

**15.8 Filing of Additional Documents.**

At any time before substantial consummation of the Plan, the Diocese, the Additional Debtors, and the Trust, as appropriate, may File with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

**15.9 Direction to a Party.**

On or after the Effective Date, the Trustee, the Diocese, or the Additional Debtors, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect the transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

**15.10 Certain Actions.**

By reason of entry of the Confirmation Order prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers or trustees of the Diocese or the Additional Debtors under the Plan, including: (i) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan; and (ii) the adoption, execution and implementation of other matters provided for under the Plan involving the Diocese or any Additional Debtor or the organizational structure of the Diocese or any Additional Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers or trustees of the Diocese.

**15.11 Waiver of Subordination.**

Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights they may have with respect to the Distributions made pursuant to the Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving Distributions under the Plan.

**15.12 Reservation of Rights.**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred.

**15.13 Plan as Settlement Communication.**

The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise Claims and/or causes of action that are disputed as to validity or amount (including Abuse Claims and the Insurance Coverage Adversary Proceeding), except as otherwise provided above. Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or the Disclosure Statement are subject in all respects to Rule 408 of the Federal Rules of Evidence and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity, or invalidity of, any Disputed Claim or cause of action. Except as expressly set forth in the Plan, nothing in the Plan is intended to constitute a compromise of Abuse Claims.

**15.14 Preservation of Tort Defendants' Rights.**

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall be deemed to prohibit any Tort Defendant from asserting any defenses, setoffs, and other limitations on liability or collection ("Litigation Rights") that such Tort Defendant may have under applicable state and federal law in connection with any Tort Action, provided, however, that to the extent the exercise of such Litigation Rights would otherwise result in any affirmative obligation of the Diocese and/or any Protected Party to contribute to or satisfy any judgment or claim, the enforcement of such judgment or claim or any right of contribution regarding same as against the Diocese and/or any Protected Party shall be treated as Inbound Contribution Claims and enjoined pursuant to Section 12 of the Plan, but the amount payable by a Tort Defendant to an Abuse Claimant may be reduced by the allocable share of fault (if any) attributable to any acts or omissions by the Diocese and/or Protected Party.

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall prevent any Tort Defendant from asserting in any Tort Action that any distribution to an Abuse Claimant made by the Trust, or otherwise made by or on behalf of the Diocese or a Protected Party by reason or because of or related to this Plan should be treated as a payment by a joint tortfeasor to settle the Abuse Claimant's Abuse Claim for purposes of New York law, including, but not limited to, the application of General

Obligations Law ("GOL") § 15-108 and Civil Practice Law and Rules ("CPLR") Articles 14 and 16. Tort Defendants shall retain all rights as against any Abuse Claimant with respect to CPLR Articles 14 and 16 and GOL § 15-108, provided, however, that, in addition to the protections and injunctions set forth in this Plan, the Diocese and other Protected Parties shall be entitled to the protections of GOL § 15-108 with respect to the releases given by Abuse Claimants under this Plan and provided, further, that to the extent of any conflict between state law and the injunctive provisions of this Plan with respect to the collection or enforcement of any claim against the Diocese or any Protected Party, the terms of this Plan shall control in all respects.

**15.15 Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan transactions consummated or to be consummated in connection therewith.

**15.16 Headings.**

Headings are used in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

**15.17 No Admissions.**

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed as an admission by the Diocese, the Committee, any Additional Debtor, or any Settling Insurer with respect to any matter set forth herein.

[*Signature pages follow*]

Dated: October 30, 2026
Ogdensburg, New York

Respectfully submitted,

The Roman Catholic Diocese of Ogdensburg, New York

By: /s/ Mark Mashaw
Mark Mashaw, Diocesan Fiscal Officer

BOND, SCHOENECK & KING, PLLC

By: */s/ Stephen A. Donato*

Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Sara C. Temes, Esq.
Office and Post Office Address:
110 West Fayette Street
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com
temess@bsk.com

*Counsel to The Roman Catholic Diocese of Ogdensburg, New York*

Dated: October 30, 2026
New York, New York

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: /s/ Charles M. Nadeau
Charles M. Nadeau
Committee Chair

PACHULSKI, STANG, ZIEHL & JONES, LLP

By: */s/ Ilan D. Scharf*
James I. Stang, Esq.
Ilan D. Scharf, Esq.
Iain A.W. Nasatir, Esq.
Karen B. Dine, Esq.

1700 Broadway, 36th Floor
New York, New York 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
inasatir@pszjlaw.com
kdine@pszjlaw.com

| **Summary report:<br>Litera Compare for Word 11.12.0.83 Document comparison done on 11/13/2026 4:20:00 PM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://cloudimanage.com/bond/23853722/12 - DOO Plan - Prepack.docx | |
| **Modified DMS:** iw://cloudimanage.com/bond/23853722/13 - DOO Plan - Prepack.docx | |
| **Changes:** | |
| Add | 18 |
| ~~Delete~~ | 15 |
| ~~Move From~~ | 0 |
| Move To | 0 |
| Table Insert | 0 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 33 |

# **EXHIBIT B**

Redline of Revised Disclosure Statement

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK,

Debtor.

Case No. 23-60507 (PGR)

Chapter 11 Case

**DISCLOSURE STATEMENT IN SUPPORT OF JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, N.Y. AND ADDITIONAL DEBTORS**

**DATED: ~~OCTOBER 30~~NOVEMBER 13, 2026**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF NEW YORK FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE JOINT CHAPTER 11 PLAN OF REORGANIZATION DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISTRIBUTION OF THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS A SOLICITATION OF ACCEPTANCES OF SUCH PLAN. THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THIS DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE.**

**BOND, SCHOENECK & KING, PLLC**
Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Sara C. Temes, Esq.
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com
temess@bsk.com

*Counsel to The Roman Catholic Diocese of Ogdensburg, New York*

## IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT[1]

THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK, THE DEBTOR AND DEBTOR IN POSSESSION IN THE ABOVE-CAPTIONED CHAPTER 11 CASE (THE "DIOCESE"), THE ADDITIONAL DEBTORS (AS DEFINED IN THE PLAN), AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (TOGETHER WITH THE DIOCESE AND THE ADDITIONAL DEBTORS, THE "PLAN PROPONENTS") JOINTLY SEEK CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK, AND THE ADDITIONAL DEBTORS (THE "PLAN"). A COPY OF THE PLAN IS ATTACHED AS **EXHIBIT A**.

THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT"), THE PLAN, THE PLAN SUPPLEMENT, THE ACCOMPANYING BALLOTS, AND RELATED MATERIALS ARE BEING FURNISHED BY THE PLAN PROPONENTS, PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE IN CONNECTION WITH THE SOLICITATION BY THE PLAN PROPONENTS OF VOTES TO ACCEPT THE PLAN AS DESCRIBED IN THIS DISCLOSURE STATEMENT.

THE PLAN PROVIDES FOR THE REORGANIZATION OF THE FINANCIAL AFFAIRS OF THE DIOCESE AND THE ADDITIONAL DEBTORS AND FOR DISTRIBUTIONS TO CREDITORS HOLDING ALLOWED CLAIMS FROM THE ASSETS OF THE DIOCESE AND ADDITIONAL DEBTORS, THE ASSETS OF CONTRIBUTING NON-DEBTOR ENTITIES, THE CONTRIBUTIONS OF SETTLING INSURERS, AND FOR THE CLAIMS AGAINST NON-SETTLING INSURERS TO BE ASSIGNED TO THE TRUST. THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO MATERIAL CONDITIONS PRECEDENT, SOME OF WHICH MAY NOT BE SATISFIED. THERE IS NO ASSURANCE THAT THESE CONDITIONS WILL BE SATISFIED OR WAIVED.

HOLDERS OF CLAIMS AGAINST THE DIOCESE ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT, INCLUDING UNDER "*RISK FACTORS TO BE CONSIDERED*" IN ARTICLE 19.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST THE DIOCESE AND THE ADDITIONAL DEBTORS (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS DESCRIBED IN THE PLAN.

[1] Capitalized terms not otherwise defined in this Disclosure Statement have the meanings and definitions assigned to such terms in the Plan.

NO PERSON MAY GIVE ANY INFORMATION ON BEHALF OF THE PLAN PROPONENTS REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN, OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, EXCEPT FOR THE COMMITTEE CONSISTENT WITH ITS OBLIGATIONS ARISING UNDER 11 U.S.C. § 1103(c)(3). ALL OTHER STATEMENTS REGARDING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREIN, WHETHER WRITTEN OR ORAL, ARE UNAUTHORIZED.

THIS DISCLOSURE STATEMENT IS DESIGNED TO PROVIDE ADEQUATE INFORMATION TO ENABLE HOLDERS OF IMPAIRED CLAIMS AGAINST THE DIOCESE AND THE ADDITIONAL DEBTORS TO MAKE AN INFORMED JUDGMENT ON WHETHER TO ACCEPT OR REJECT THE PLAN. ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN FILED CONTEMPORANEOUSLY HEREWITH, OTHER ANNEXED EXHIBITS, AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE BANKRUPTCY COURT PRIOR TO THE END OF THE SOLICITATION PERIOD FOR THE PLAN. NO MATERIALS OTHER THAN THE ACCOMPANYING MATERIALS ATTACHED TO THIS DISCLOSURE STATEMENT OR REFERENCED HEREIN HAVE BEEN APPROVED BY THE BANKRUPTCY COURT OR THE PLAN PROPONENTS FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT: (I) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN REMAIN MATERIALLY ACCURATE, OR (II) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR IN ANY EXHIBIT, EXCEPT AS EXPRESSLY INDICATED IN THIS DISCLOSURE STATEMENT OR IN ANY EXHIBIT. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE PLAN PROPONENTS FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE PLAN PROPONENTS' KNOWLEDGE, INFORMATION, AND BELIEFS. THE PLAN PROPONENTS' RESPECTIVE PROFESSIONALS HAVE NOT INDEPENDENTLY VERIFIED ANY OF THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND ARE NOT RESPONSIBLE FOR ANY INACCURACIES THAT MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT OR THE PLAN.

THE HISTORICAL FINANCIAL INFORMATION CONCERNING THE CENTRAL ADMINISTRATIVE OFFICES OF THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK, IS BASED PRINCIPALLY ON AUDITED FINANCIAL STATEMENTS AS OF AND FOR THE FISCAL YEAR ENDED [JUNE 30, 2025]. THE LIQUIDATION ANALYSIS ATTACHED AS **EXHIBIT B** AND THE FINANCIAL PROJECTIONS ATTACHED AS **EXHIBIT C** WERE PREPARED BY MANAGEMENT

BASED ON SUCH HISTORICAL FINANCIAL INFORMATION AND RELATED ASSUMPTIONS AND HAVE NOT BEEN INDEPENDENTLY AUDITED OR REVIEWED.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THE INFORMATION IS CORRECT AT ANY TIME SUBSEQUENT TO THIS DATE, AND THE PLAN PROPONENTS UNDERTAKE NO DUTY TO UPDATE THE INFORMATION.

PERSONS OR ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST THE DIOCESE AND THE ADDITIONAL DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED, AND SHOULD BE AWARE THAT ACTUAL DISTRIBUTIONS MAY VARY FROM THE ESTIMATES CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING OR REJECTING THE PLAN. NO REPRESENTATIONS ARE AUTHORIZED BY THE BANKRUPTCY COURT CONCERNING THE DIOCESE OR THE ADDITIONAL DEBTORS, THEIR BUSINESS OPERATIONS, THE VALUE OF THEIR ASSETS, OR THE VALUES OF ANY BENEFITS OFFERED PURSUANT TO THE PLAN, EXCEPT AS EXPLICITLY SET FORTH IN THIS DISCLOSURE STATEMENT OR ANY OTHER DISCLOSURE STATEMENT OR OTHER DOCUMENT APPROVED FOR DISTRIBUTION BY THE BANKRUPTCY COURT. HOLDERS OF CLAIMS SHOULD NOT RELY UPON ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN, OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN AND CERTAIN OF THE PLAN DOCUMENTS. IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN OR THE APPLICABLE PLAN DOCUMENTS AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN OR THE APPLICABLE PLAN DOCUMENTS ARE CONTROLLING. THE SUMMARIES OF THE PLAN AND THE PLAN DOCUMENTS IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE PLAN AND THE APPLICABLE PLAN DOCUMENTS, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN THE PLAN AND OTHER PLAN DOCUMENTS. ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND THE PLAN DOCUMENTS, AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSES OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED IN THIS DISCLOSURE STATEMENT SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PERSON OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DIOCESE, ANY ADDITIONAL DEBTOR OR ANY OTHER PERSON, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DIOCESE, THE ADDITIONAL DEBTORS, ANY OTHER PROTECTED PARTY, OR HOLDERS OF CLAIMS.

THIS DISCLOSURE STATEMENT IS FORWARD-LOOKING. FORWARD-LOOKING STATEMENTS ARE STATEMENTS OF EXPECTATIONS, BELIEFS, PLANS, OBJECTIVES, ASSUMPTIONS, PROJECTIONS, AND FUTURE EVENTS OF PERFORMANCE. AMONG OTHER THINGS, THIS DISCLOSURE STATEMENT CONTAINS FORWARD-LOOKING STATEMENTS WITH RESPECT TO ANTICIPATED FUTURE PERFORMANCE OF THE DIOCESE, THE ADDITIONAL DEBTORS, AND A TRUST TO BE CREATED FOR THE BENEFIT OF HOLDERS OF ABUSE CLAIMS, AS WELL AS ANTICIPATED FUTURE DETERMINATIONS OF CLAIMS AND DISTRIBUTIONS ON CLAIMS. THESE STATEMENTS, ESTIMATES, AND PROJECTIONS MAY OR MAY NOT PROVE TO BE CORRECT. ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE REFLECTED IN THESE FORWARD-LOOKING UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT BUSINESS, LEGAL, AND ECONOMIC RISKS, INCLUDING, AMONG OTHERS, THOSE DESCRIBED IN THIS DISCLOSURE STATEMENT. THE PLAN PROPONENTS UNDERTAKE NO OBLIGATION TO UPDATE ANY FORWARD-LOOKING STATEMENT. NEW FACTORS EMERGE FROM TIME TO TIME AND IT IS NOT POSSIBLE TO PREDICT ALL FACTORS, NOR CAN THE IMPACT OF ALL FACTORS BE ASSESSED.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH HOLDER SHOULD CONSULT WITH THEIR OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS WITH RESPECT TO ANY MATTERS CONCERNING THIS DISCLOSURE STATEMENT, THE SOLICITATION OF VOTES TO ACCEPT THE PLAN, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED BY THE PLAN.

**[THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY ORDER OF THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE HOLDERS OF CLAIMS TO MAKE AN INFORMED JUDGMENT WITH RESPECT TO VOTING TO ACCEPT OR REJECT THE PLAN.]** HOWEVER, THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A RECOMMENDATION OR DETERMINATION BY THE BANKRUPTCY COURT AS TO THE MERITS OF THE PLAN. EACH HOLDER OF A CLAIM ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN (INCLUDING ALL

EXHIBITS AND SCHEDULES TO THE PLAN AND DISCLOSURE STATEMENT) IN THEIR ENTIRETY BEFORE VOTING.

# TABLE OF CONTENTS

**ARTICLE 1 INTRODUCTION** ..... **1**

A. Summary of the Plan ..... 3
B. Summary of Voting Procedures ..... 5
C. Overview of Chapter 11 ..... 6
D. Summary of Classification of Claims ..... 8
E. Disclosure Statement Enclosures ..... 9

**ARTICLE 2 THE DIOCESE AND ITS OPERATIONS** ..... **10**

A. Prepetition Operations ..... 10
B. Need for Reorganization ..... 13
C. The Additional Debtors ..... 15

**ARTICLE 3 THE DIOCESE'S CHAPTER 11 CASE** ..... **15**

A. The Chapter 11 Filing ..... 15
B. Administration of the Case ..... 17
C. Appointment of the Committee ..... 18
D. Retention of Professionals ..... 18
E. Schedules and Statement of Financial Affairs ..... 20
F. Post-Petition Operations and Select Financial Information ..... 20
G. Bar Date, Abuse Claims, and Boy Scouts of America Claims ..... 21
H. Insurance Coverage Adversary Proceeding ..... 22
I. Appointment of Additional Mediators ..... 23

**ARTICLE 4 SUMMARY OF THE PLAN** ..... **24**

A. Classification of Claims Generally ..... 24
B. Creditor Recovery Under the Plan ..... 24
C. Classification of Claims and Treatments ..... 25

**ARTICLE 5 ABUSE CLAIMS** ..... **33**

A. Assessment of Abuse Claims ..... 33
B. Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol ..... 34
C. Insurance Settlements ..... 34
D. Release and Discharge of Abuse Claims. ..... 35
E. Dismissal of Pending Litigation ..... 38
F. Claim Withdrawal ..... 38
G. Medicare Procedures ..... 39

**ARTICLE 6 SETTLING INSURERS** ..... **40**

A. Insurance Settlement Agreements ..... 40

B. Sale of Settling Insurer Policies Free and Clear 40
C. Resolution of Claims Involving Settling Insurers 40
D. The Settling Insurer's Payments 40
E. Further Assurances; Non-Material Modifications 41
F. Waiver/Consent 41
G. Timing 41

**ARTICLE 7 MATTERS RELATING TO NON-SETTLING INSURERS 41**

A. Preservation of Rights and Obligations 41
B. Estimations/Assessments of Abuse Claims Are Not Binding 42
C. Post-Effective Date Preconditions to Coverage. 43
D. Trust Powers With Respect to Abuse Claims and Non-Settling Insurers 43
E. Insurance Coverage Adversary Proceeding. 44

**ARTICLE 8 MEANS FOR IMPLEMENTATION OF THE PLAN 44**

A. Plan Implementation 44
B. Corporate Action 44
C. Payments Effective Upon Tender 45
D. Agreements, Instruments, and Documents 45
E. Continuation of Insurance Policies 45
F. Bar Date for Professional Fee Claims 45
G. Bar Date for Other Administrative Claims 46
H. Exit Financing 46

**ARTICLE 9 THE TRUST 46**

A. Establishment of the Trust 46
B. Funding of the Trust 47
C. Vesting of Trust Assets 49
D. Non-Monetary Commitments 50
E. Appointment of the Trustee 50
F. Rights and Responsibilities of the Trustee 50
G. Trust Advisory Committee 51
H. Trust Pursuit of Insurance Claims Against Non-Settling Insurers. 51
I. Investment Powers; Permitted Cash Expenditures 55
J. Tax Matters 55
K. DOO Entities' Post-Effective Date Costs Procedures. 55
L. No Recourse Against Trustee 57
M. Indemnification by Trust 57
N. Trust Assumption of Liability 58
O. Termination 58

**ARTICLE 10 GENERAL CLAIMS ADMINISTRATION 59**

A. Objections to Non-Abuse Claims 59
B. Determination of Claims 59

C. No Distributions Pending Allowance 60
D. Claim Estimation 60
E. Treatment of Contingent Claims 60
F. Controversy Concerning Impairment 60
G. Treatment of Executory Contracts and Unexpired Leases 60

**ARTICLE 11 PROVISIONS GOVERNING DISTRIBUTIONS 61**

A. Disbursing Agents 61
B. Manner of Payment 61
C. Distribution Only to Holders of Allowed Claims 61
D. Disputed Claim Reserve 61
E. Transmittal of Distributions 62
F. Timing of Distributions 62
G. Time Bar to Check Payments 63
H. No Professional Fees or Expenses 63
I. No Interest on Claims 63
J. Saturday, Sunday, or Holiday 63
K. Withholding Taxes 63
L. Setoffs and Recoupment 64
M. No *De Minimis* Distributions 64
N. Prepayment 64

**ARTICLE 12 EFFECTIVE DATE 64**

A. Conditions Precedent to Effective Date 64
B. Waiver of Conditions 66
C. Occurrence of Effective Date 66
D. Notice of Effective Date 67
E. Effect of Non-Occurrence of Condition 67

**ARTICLE 13 EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE 67**

A. General Injunction and Discharge 67
B. Injunction and Discharge of Abuse Claims and Inbound Contribution Claims 68
C. Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties 72
D. Additional Debtors Payment 74
E. Settling Insurer Injunction 74
F. Litigation/Settlement of Certain Claims 74
G. Additional Debtors Abuse Claim Bar Date 76
H. Injunction Against Interference with Plan 79
I. Release by Holders of Channeled Claims 79
J. Mutual Releases 80
K. Releases in Insurance Settlement Agreements 80
L. Exculpation; Limitation of Liability 80

M. Gatekeeper Injunction 81
N. Injunctions in Full Force and Effect 81
O. Release of Estate Causes of Action 82
P. Injunctions and Releases Integral 82
Q. Timing 82
R. Excluded Parties and Non-Settling Insurers 83
S. Title to and Vesting of Assets 83
T. Continued Corporate Existence; No Successor Liability. 83
U. Identity of Trustees and Officers of the Diocese 84
V. Authority to Effectuate Plan 84
W. Binding Effect 84
X. Dissolution of Committee 84

**ARTICLE 14 RESERVED 85**

**ARTICLE 15 RETENTION OF JURISDICTION 85**

A. By the Bankruptcy Court 85
B. By the District Court 86
C. Actions to Enforce the Plan 87
D. Case Closure 87

**ARTICLE 16 TAX CONSEQUENCES OF THE PLAN 87**

A. Federal Income Tax Consequences to Holders of Unsecured Claims 88
B. Federal Income Tax Consequences to the Diocese 89
C. Tax Consequences to the Trust 89

**ARTICLE 17 ALTERNATIVES TO THE PLAN 89**

A. Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code 89
B. Dismissal of the Chapter 11 Case 90
C. Chapter 7 Liquidation is Not a Viable Alternative 90
D. Appointment of a Chapter 11 Trustee is Not a Viable Alternative 90

**ARTICLE 18 ACCEPTANCE AND CONFIRMATION OF THE PLAN 90**

A. General Confirmation Requirements 90
B. Confirmation Hearing 92
C. Confirmation 92
D. Acceptance of Plan 92
E. Confirmation Without Acceptance of All Impaired Classes 93
F. Best Interests Test 94
G. Feasibility 95
H. Compliance with the Applicable Provisions of the Bankruptcy Code 95

**ARTICLE 19 RISK FACTORS TO BE CONSIDERED 95**

A. Objection to Classifications of Claims 95
B. Failure to Satisfy Voting Requirements 96
C. The Plan May Not Be Accepted or Confirmed 96
D. The Plan Proponents' Assumptions and Estimates May Prove Incorrect 96
E. Non-Confirmation or Delay in Confirmation of the Plan 97
F. Non-Consensual Confirmation 97
G. Risk of Non-Occurrence of the Effective Date 97
H. Non-Settling Insurers May Raise Objections to Confirmation 97
I. Post-Confirmation Litigation May Not Result in Additional Recovery 97
J. United States Trustee fees may be imposed on certain payments under the Plan 98
K. State Court Counsel contingency fees 99

**ARTICLE 20 MISCELLANEOUS PROVISIONS 99**

A. Amendment or Modification of the Plan 99
B. Headings 100
C. Severability of Plan Provisions 100
D. Validity and Enforceability 100
E. Revocation or Withdrawal of the Plan 100
F. Controlling Documents 100
G. Filing of Additional Documents 101
H. Direction to a Party 101
I. Certain Actions 101
J. Plan as Settlement Communication 101
K. Preservation of Tort Defendants' Rights 102
L. Reports 102
M. Governing Law 102
N. No Admissions. 103

**ARTICLE 21 BANKRUPTCY RULE 9019 REQUEST 103**

**ARTICLE 22 RECOMMENDATION AND CONCLUSION 103**

**EXHIBITS**

Exhibit A Chapter 11 Plan of Reorganization
Exhibit B Liquidation Analysis
Exhibit C Financial Projections
Exhibit D Additional Debtor Financial Information

## ARTICLE 1

## INTRODUCTION

On July 17, 2023 (the "Petition Date"), the Diocese filed a voluntary Chapter 11 petition with the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court"). Since the Petition Date, the Diocese has remained in possession of its assets and has continued to own, operate, and manage its affairs pending the approval of a plan of reorganization in accordance with the provisions of title 11 of the United States Code (as amended, the "Bankruptcy Code").

On August 11, 2023, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in the Diocese's Chapter 11 Case. The Committee is comprised of six individuals who assert Abuse Claims against the Diocese. The Committee supports approval and confirmation of the Plan and is a Plan Proponent and a signatory to the Plan.[2]

The Plan's treatment of Abuse Claims represents the culmination of over three (3) years of negotiation among the Diocese, the Additional Debtors, and the Committee in its capacity as an advocate on behalf of all Abuse Claimants and has been approved by the Committee in consultation with attorneys ("State Court Counsel") who collectively represent an overwhelming majority of Abuse Claimants who have asserted Abuse Claims against the Diocese. During this time, the Diocese, the Additional Debtors, the Settling Insurers, the Committee and State Court Counsel in Abuse Actions have been active participants in mediation concerning Abuse Claims asserted against the Diocese and the Additional Debtors, and the available Insurance Policies that would cover such Abuse Claims.

The Additional Debtors include 86 parishes and other Catholic entities within the Diocese of Ogdensburg listed on **Exhibit A** to the Plan. As of the date of the filing of this Disclosure Statement, the Additional Debtors have not yet filed for bankruptcy but contemplate filing for bankruptcy shortly before the Confirmation Hearing. Immediately after filing, the Additional Debtors will request approval of this Disclosure Statement as containing "adequate information" with respect to the Additional Debtors. This Disclosure Statement is intended to apply to the Additional Debtors who have not yet filed their chapter 11 petitions.

The Plan sets forth, among other things, the proposed treatment of Claims and other interests in accordance with the Bankruptcy Code. This Disclosure Statement is intended to explain the Plan and provide such information to all Creditors as may be deemed material, important, and necessary so that they may make reasonably informed decisions in exercising their right to vote for acceptance of the Plan. A copy of the Plan is included with this Disclosure Statement. If the Plan and this Disclosure Statement are not consistent, the terms of the Plan

[2] The Committee is not a signatory to this Disclosure Statement and makes no representations or warranties with respect to information set forth herein regarding the Diocese's history and financial projections. The Committee has reviewed and approved the description of the Plan and the statements contained herein pertaining to the Committee, its activities in this Chapter 11 Case, and the Committee's evaluation and recommendations as a Plan Proponent with respect to the Plan and alternatives to the Plan.

control. Capitalized terms used in this Disclosure Statement but not otherwise defined shall have the meanings ascribed to them in the Plan.

The Plan provides for the financial restructuring of the Diocese and Additional Debtors and the settlement of all, or substantially all, Claims against the Diocese and the Additional Debtors, including, without limitation, the settlement of all Abuse Claims against the Diocese and the Additional Debtors. Claims against the Additional Debtors that are not Abuse Claims will not be treated under the Plan, and will be paid by the Additional Debtors as they come due.

As set forth in more detail below, the Plan provides for payment in full of all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Professional Fee Claims, and U.S. Trustee Fee Claims, leaves unimpaired any Allowed Secured Claims or Pass-Through Claims, provides that Non-Abuse Claims against the Additional Debtors ride through unaffected and are paid in the ordinary course of business, provides for deferred payments equal to the full Allowed amount of any General Unsecured Claims against the Diocese, and establishes the Abuse Claims Settlement Fund to be held by the Trust to compensate holders of Abuse Claims. Inbound Contribution Claims against the Diocese and Additional Debtors are disallowed and extinguished pursuant to the Plan.

The Plan provides that funding for the Trust and the Abuse Claims Settlement Fund in the total amount of $83,875,000 will be provided from, among other potential sources of recovery, (a) a monetary payment by the Diocese, Additional Debtors and the Contributing Non-Debtor Entities in the aggregate amount of $44,000,000, subject to adjustment as provided therein, and which may include up to $7,000,000 to be evidenced by the DOO Trust Note; and (b) payments from Settling Insurers made pursuant to the Insurance Settlement Agreements. As of the date of this Plan, the Diocese and the Committee have agreed to accept a total of $39,875,000 in settlement payments from the Settling Insurers in exchange for entering into Insurance Settlement Agreements with respect to their respective Insurance Policies and Related Insurance Claims. The Financial Projections attached hereto as **Exhibit C** assume an Effective Date cash payment to the Trust of $44,000,000 by or through the Diocese. The DOO Entities' Cash Payment described in the Plan reflects the aggregate contribution by the Diocese, the Additional Debtors, and the Contributing Non-Debtor Entities. The Plan also provides for other potential sources of funding for the Abuse Claims Settlement Fund. As of the date of the Plan, the Diocese, the Additional Debtors and the Committee have agreed to accept the following Settling Insurer payments: (i) $17,000,000 from Wausau; (ii) $9,000,000 from LMI, (iii) $12,000,000 from Interstate, (iv) $1,500,000 from Evanston and International, collectively, and (v) $375,000 from Granite State. If the conditions set forth in the Plan are met and the Plan Proponents reach an Insurance Settlement Agreement or other terms of settlement with respect to Insurance Claims against Non-Settling Insurers prior to commencement of the confirmation hearing for the Plan, the Plan provides that such Non-Settling Insurers may become Settling Insurers and for settlement proceeds resulting therefrom to be used to further supplement the Abuse Claims Settlement Fund. To the extent no additional settlements with any individual insurers are achieved before confirmation, the Plan provides for the assignment of Insurance Claims against any Non-Settling Insurer held by the Diocese Settling Parties to the Trust, and establishes a framework for post-confirmation litigation of Insurance Claims and other Litigation Claims seeking recovery from Non-Settling Insurers. For the avoidance of doubt, the Plan

Proponents intend to seek confirmation of this Plan even if some insurers are Non-Settling Insurers.

The Committee, in consultation with State Court Counsel representing an overwhelming majority of Abuse Claimants, has acknowledged and accepted the risk inherent in pursuing post-confirmation recovery from the Non-Settling Insurers in the absence of a settlement.

## A. Summary of the Plan

Survivors of Abuse are the focal point of the Plan. The tragedy of the Abuse that was inflicted in the past by individuals purporting to do the missionary work of the Roman Catholic Church is impossible to overstate. Instead of fulfilling this mission, such perpetrators inflicted harm and suffering. The Abuse is inexcusable. It not only deeply impacted the survivors, but it also affected the faithful and the community that the Diocese serves.

Prior to the enactment of the New York Child Victims Act (A.2683/S.2440) (the "CVA") and the Adult Survivors Act (A.648/S.66) (the "ASA"), the Diocese devoted substantial resources and effort to provide support and compensation to survivors of Abuse, including providing counselling, therapy, and other support to those survivors. The Diocese also provided monetary compensation to a number of known survivors, including the payment of amounts awarded through its Independent Reconciliation and Compensation Program.

Following the enactment of the CVA, individuals alleging Abuse Claims began to file lawsuits against the Diocese. The Diocese has limited insurance and other resources available to compensate Abuse Claimants. A filing for bankruptcy relief was the only viable means to preserve and fairly distribute the Diocese's limited resources among the numerous Abuse Claimants.

The DOO Entities' Cash Payment in the amount of $44,000,000 will be contributed on behalf of the Diocese, the Additional Debtors and the Contributing Non-Debtor Entities to the Trust, and may be funded in part by the DOO Trust Note. The DOO Entities' Cash Payment will be reduced by the amount of any payments made during these Chapter 11 Cases for professional fees incurred by the Committee after the Initial Plan Filing Date.

The Plan establishes a Trust funded by (i) the DOO Entities Cash Payment; (ii) payments under the Insurance Settlement Agreements; and (iii) the Contributing Non-Debtor Entity Contributions. The Plan Proponents believe that the Plan provides the best alternative to compensate Abuse Claimants for their Abuse Claims. The Trust will be initially funded by the DOO Entities' Cash Payment, subject to adjustment as provided in the Plan, and contributions by Settling Insurers in the amount of $39,875,000.

The Trustee will liquidate the Trust Assets and distribute the proceeds to the Abuse Claimants pursuant to the procedures contained in the Allocation Protocol. Distributions to Abuse Claimants may be subject to fee agreements between an Abuse Claimant and their legal counsel. Abuse Claimants' legal counsel are obligated to comply with Rule 1.5 of the New York Rules of Professional Conduct and 22 CRR-NY 1015.15 in connection with any fees charged to Abuse Claimants.

If settlements with the Non-Settling Insurers cannot be reached prior to the approval of the Plan, then under the Plan, the Trust would retain the right to pursue causes of action of the Diocese and the Additional Debtors against, or settle with, Non-Settling Insurers. The Plan Proponents believe that the tools provided by the Plan to Abuse Claimants and the Trust will allow the Trust to pursue a favorable settlement with the Non-Settling Insurers that fairly values each such Insurer's exposure for Abuse Claims asserted in this Chapter 11 Case.

The contribution by the Diocese and each of the Additional Debtors that would receive a release under the Plan was reached as the result of extensive negotiations regarding, among other things, the extent of liability faced by each entity, the ability of each entity to pay, and insurance coverage available for the types of Claims being satisfied by the Trust. In exchange for the contributions to the Trust, (a) the Diocese, (b) the Additional Debtors, and (c) the Settling Insurers (collectively, the "Protected Parties") shall receive certain releases, exculpation, and injunctions, all as more specifically set forth in this Disclosure Statement and the Plan.

***Exculpation.*** *The Plan provides certain exculpation provisions which are typical and customary in Chapter 11 plans. The provisions provide that the Diocese, the Diocese's Professionals, the Additional Debtors, the Additional Debtors' Professionals, the Committee, the Committee's Professionals, the Contributing Non-Debtor Entities, the Contributing Non-Debtor Entities' Professionals, the Mediators, and Related Persons of the foregoing Persons and entities will be released from certain of their acts and omissions that occurred from the Petition Date through the Effective Date. None of these parties will be exculpated from claims arising from gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty.*

***Releases.*** *The Plan Provides that the Protected Parties will be granted releases and a channeling injunction regarding all Abuse Claims. If the Plan is confirmed, Abuse Claimants will not be able to recover directly from or pursue further litigation against the Additional Debtors, and Abuse Claimants' recoveries on account of their Abuse Claims will be limited by the terms of the Plan.*

***Injunctions.*** *The Plan provides for certain injunctions, including a channeling injunction which will channel certain Claims, including all Abuse Claims against the Diocese or any of the Protected Parties, into the Trust. This means that any holder of a Claim that is channeled will no longer be permitted to pursue their Claim except as set forth in the Plan.*

*The exculpation, releases, and injunctions contained in the Plan are an integral part of the overall restructuring efforts of the Diocese and the Additional Debtors and were an essential element of the negotiations among the parties and in obtaining the*

*Protected Parties' support for the Plan.*

**Class 4 Claimants under the Plan are deemed to have released the Diocese and the Additional Debtors pursuant to Section 12.10 of the Plan, and Class 4 Claims are subject to a channeling injunction pursuant to Section 12.3 of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, all holders of claims and interests against the Diocese and the Additional Debtors, including all Abuse Claimants, will be bound by the terms of the Plan, including the release provisions.**

The Plan further provides that the holders of Allowed Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Professional Fee Claims, Secured Claims, Pass-Through Claims, and General Unsecured Claims will be paid in full as set forth therein that Non-Abuse Claims against Additional Debtors ride through unaffected by the Additional Debtors' Chapter 11 Cases, that all Abuse Claims against the Diocese and Additional Debtors will be channeled to the Trust, that the Diocese will be able to restructure its financial affairs, and continue the mission and ministry of the Church, which is critical to so many within the Ogdensburg area – especially the elderly, poor, incarcerated, and vulnerable – after confirmation of the Plan. The Diocese will also continue to address the spiritual needs of those who were harmed and the Catholic community as a whole.

In the opinion of the Plan Proponents, the treatment of Claims under the Plan provides an opportunity for greater recovery for Creditors than that which is likely to be achieved under other alternatives. **Accordingly, the Plan Proponents believe that confirmation of the Plan is in the best interests of, and provides the highest and most expeditious recoveries to, holders of all Claims against the Diocese and Abuse Claims against the Additional Debtors. All Creditors entitled to vote, therefore, are urged to vote to accept the Plan.**

## B. Summary of Voting Procedures

### 1. *Vote Solicitation and Deadline*.

To be counted, your Ballot must be received, pursuant to the following instructions, by Bankruptcy Management Solutions, Inc. d/b/a Stretto ("Stretto"), on or before **5:00 p.m. (Eastern Time) on _________, 2026** (the "Voting Deadline"):

**If by first class mail, overnight courier or hand delivery:**

The Diocese of Ogdensburg – Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, California 92602

**<u>If by electronic, online submission</u>:**

Please visit **<u>https://case.stretto.com/dioceseofogdensburg/docket</u>**. Click on the "***E-Ballot***" section of the Diocese's website and follow the directions on your Ballot to submit your E-Ballot. If you choose to submit your Ballot through Stretto's E-Ballot system, you should <u>not</u> also return a hard (paper) copy of your Ballot.

**IMPORTANT NOTE: You will need a unique E-Ballot ID Number that will be provided with your Ballot.**

**IF YOU HOLD A CLAIM ENTITLED TO VOTE:**

Please (i) complete the information requested on the Ballot; (ii) sign, date, and indicate your vote to accept or reject the Plan; and (iii) return the completed Ballot in the enclosed pre-addressed, postage-paid envelope, or by one of the other methods described above, so that it is actually received by Stretto on or before the Voting Deadline.

**DO NOT RETURN ANY INVOICES, DEBT INSTRUMENTS, NOTES, OR CERTIFICATES THAT YOU MAY HAVE WITH YOUR BALLOT.**

**ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED, NOR WILL ANY BALLOTS RECEIVED BY TELECOPY OR EMAIL BE ACCEPTED.**

**IF YOU HAVE QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, DID NOT RECEIVE AN ELECTRONIC COPY OF THE DISCLOSURE STATEMENT AND THE PLAN, OR NEED PHYSICAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE DIOCESE'S SOLICITATION AND CLAIMS AGENT, STRETTO, BY EMAIL AT TEAMOGDENSBURGDIOCESE@STRETTO.COM OR BY CALLING 855.347.3773 AND REQUESTING TO SPEAK WITH A MEMBER OF THE DIOCESE'S SOLICITATION TEAM.**

2. ***Importance of Your Vote***.

Your vote is important. The Bankruptcy Court defines acceptance by a Class of Claims as acceptance of at least two-thirds in amount and a majority in number of Allowed Claims in the Class that voted. Only the Ballots of those Creditors who actually vote are counted for purposes of determining whether a Class voted to accept the Plan. Your failure to vote will leave to others the decision to accept or reject the Plan.

## C. <u>Overview of Chapter 11</u>

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself and its creditors. In addition to permitting rehabilitation of a debtor, another goal of Chapter 11 is to

promote equality of treatment for similarly situated creditors and interest holders with respect to any distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of a debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession." Upon filing a petition for chapter 11 relief and during the pendency of a case, the Bankruptcy Code imposes an automatic stay against creditors' attempts to collect or enforce, through litigation or otherwise, claims against the debtor. The automatic stay provisions of section 362 of the Bankruptcy Code, unless modified by court order, will generally prohibit or restrict attempts by creditors to collect or enforce any claims that arose prior to the commencement of the chapter 11 case against the debtor.

The Bankruptcy Code provides for the formation of an official committee of unsecured creditors in a chapter 11 case to represent the interests of creditors in the case.

The principal objective of a chapter 11 reorganization is the confirmation of a plan of reorganization. The plan sets forth the means for satisfying the claims of creditors and other stakeholders. The plan and a disclosure statement that contains information necessary to allow creditors, shareholders, and members to evaluate the plan are sent to creditors, shareholders and members whose claims or interests are impaired, who then vote to accept or reject the plan.

A class of claims is entitled to vote to accept or reject a plan if the class is "impaired" by the plan. Section 1124 of the Bankruptcy Code provides generally that a claim is impaired if the legal, equitable, or contractual rights of the claim are altered.

A plan may be confirmed under section 1129(a) of the Bankruptcy Code if each class of claims or interests is not impaired by the plan or if each class has voted to accept the plan. Votes will be counted only with respect to claims: (a) that are listed on the debtor's schedules other than as disputed, contingent, or unliquidated; or (b) for which a proof of claim was filed on or before the claim filing deadline set by the Bankruptcy Court for the filing of proofs of claim. However, any vote by a holder of a claim will not be counted if the claim has been disallowed or is the subject of an unresolved objection, absent an order from the Bankruptcy Court allowing the claim for voting purposes. A class of claims has accepted a plan if creditors that hold at least two-thirds in amount and more than one-half in number of the allowed voting claims in the class have voted to accept the plan. Pursuant to Bankruptcy Rule 3018(a), Class 4 Abuse Claims shall be estimated at $1.00 for voting purposes only. The actual amount payable on account of Class 4 Abuse Claims will be determined pursuant to the Allocation Protocol.

A holder of a Disputed Claim is not entitled to vote on the Plan unless such Claim is temporarily Allowed by the Diocese, or by an order of the Bankruptcy Court, in an estimated amount that it deems proper for the purpose of voting to accept or reject the Plan. In other words, only holders of Allowed Claims that are in Class 4 (Abuse Claims) may vote to accept or reject the Plan. A Claim to which an objection has been Filed by the Diocese, the Additional Debtors, or any other party in interest that is pending at the time of the Confirmation Hearing or a Claim (i) that is listed on the Diocese's Schedules as disputed, unliquidated, or contingent, and (ii) with respect to which a superseding proof of claim has not been Filed, is not an Allowed

Claim for voting purposes, unless the Claim is settled by agreement or the Bankruptcy Court Allows the Claim (in whole or in part) by Final Order. Upon request of a party in interest, the Bankruptcy Court may temporarily Allow or estimate a Disputed Claim for the purpose of voting on the Plan. Ballots cast in respect of Claims other than Allowed Abuse Claims will not be counted. In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Claimant is not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

If an impaired class votes to reject the plan, the proponent of the plan may seek to "cram down" the plan by confirming it under section 1129(b) of the Bankruptcy Code. A plan proponent may cram down a plan upon a rejecting class only if at least one impaired class has voted to accept the plan, the plan does not discriminate unfairly, and the plan is fair and equitable with respect to each impaired class that has not voted to accept the plan. **The Plan Proponents believe that the Plan will satisfy the foregoing requirements as to any rejecting Class of Claims, and can therefore be confirmed despite any such rejection by any Class.**

Voting on the plan by each holder of a claim in an impaired class is important. After carefully reviewing the Plan and Disclosure Statement, each holder of a claim should vote on the enclosed ballot either to accept or reject the Plan. Any ballot that does not appropriately indicate acceptance or rejection of the Plan will not be counted. A ballot that is not received by the deadline will not be counted. If a ballot is lost, damaged, or missing, a replacement ballot may be obtained by contacting the Diocese's solicitation and claims agent, Stretto, by email at TeamOgdensburgDiocese@stretto.com or by calling 855.347.3773 and requesting to speak with a member of the solicitation team.

**Class 4 Abuse Claims are Impaired under the Plan and are entitled to vote on the Plan.**

**The Class 1 Secured Claim of NBT, Class 2 Pass-Through Claims (against the Diocese), Class 3 General Unsecured Claims (against the Diocese), and Class 6 Ride Through Claims (against the Additional Debtors) are Unimpaired under the Plan and are deemed to accept the Plan. Class 5 Inbound Contribution Claims are Impaired under the Plan and are deemed to reject the Plan.**

Section 1129(a) of the Bankruptcy Code establishes several conditions for the confirmation of a plan. These conditions are too numerous to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the chapter 11 process. Among the conditions for plan confirmation is that either each holder of a claim must accept the plan, or the plan must provide at least as much value as would be received upon liquidation of a debtor's estate under Chapter 7 of the Bankruptcy Code. **The Plan Proponents believe that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code.**

The Bankruptcy Court has scheduled a Confirmation Hearing to consider approving the Plan commencing on **_________ at ___ _a.m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the Northern District of New York in Utica, New York. The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement

in the Bankruptcy Court on the scheduled hearing date or upon the Diocese filing a notice of adjournment.

## D. Summary of Classification of Claims

Detailed elsewhere in this Disclosure Statement are descriptions of the technical aspects of the classification of Claims, the relative allocations of assets to holders of such Claims, the methodology as to how such assets are to be distributed, the risks inherent in the proposed Plan, and the applicable bankruptcy and tax consequences of the Plan. However, the Plan Proponents believe that a broad overview of what, in their opinion, the Creditors are likely to receive under the Plan, will be helpful for your consideration of whether you wish to accept or reject the Plan.

The following is a summary of the classification of all Claims under the Plan. This summary is qualified in its entirety by reference to the Plan:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | U.S. Trustee Fee Claims | No | Does Not Vote |
| 1 | Secured Claim of NBT | No | Deemed to Accept |
| 2 | Pass-Through Claims (against the Diocese) | No | Deemed to Accept |
| 3 | General Unsecured Claims (against the Diocese) | No | Deemed to Accept |
| 4 | Abuse Claims (against the Diocese and Additional Debtors) | Yes | Entitled to Vote |
| 5 | Inbound Contribution Claims | Yes | Deemed to Reject |
| 6 | Ride Through Claims (against the Additional Debtors) | No | Deemed to Accept |

As discussed in the Liquidation Analysis attached hereto as **Exhibit B**, the Plan Proponents estimate that recoveries for holders of Abuse Claims in Class 4 under the Plan will be greater than in liquidation under Chapter 7 of the Bankruptcy Code because the total amount of assets available for Distribution is greater under the Plan than in liquidation of the Diocese under Chapter 7. The assignment of Insurance Claims made by the Diocese and the Additional Debtors will not be available to the Estates under Chapter 7. The Plan Proponents also believe that theoretical Distributions under a Chapter 7 case would likely be delayed due to the time it will take a Chapter 7 trustee to assess the assets of the Diocese and Additional Debtors, review and analyze Claims, and evaluate and litigate claims against third parties. Holders of Allowed Claims entitled to vote to accept or reject the Plan should review the Liquidation Analysis (including all footnotes thereto and documents referenced therein) in assessing whether to vote to accept or reject the Plan.

## E. Disclosure Statement Enclosures

Accompanying this Disclosure Statement are the following enclosures:

1. ***Order Approving Disclosure Statement*.**

A copy of the Order of the Bankruptcy Court dated ______________, approving this Disclosure Statement and, among other things, establishing procedures for voting on the Plan, scheduling the Confirmation Hearing, and setting the deadline for objecting to confirmation of the Plan (the "Order Approving Disclosure Statement").

2. ***Notice of Confirmation Hearing*.**

A copy of the notice of the deadline for submitting ballots to accept or reject the Plan and, among other things, the date, time and place of the Confirmation Hearing, and the deadline for filing objections to confirmation of the Plan (the "Notice of Confirmation Hearing").

3. ***Ballot*.**

A Ballot (and return envelope) for voting to accept or reject the Plan. *See* Article 18.A.1 below for an explanation of which Creditors are entitled to vote.

## ARTICLE 2

## THE DIOCESE AND ITS OPERATIONS

### A. Prepetition Operations

The Catholic Church is a worldwide community with over 1.2 billion members who hold a common creed. The supreme authority of the Church is vested in the Pope, who, by virtue of his office, possesses supreme, full, immediate, and universal ordinary power in the Church. The Pope exercises such power in concert with the College of Bishops of which he is the head. The organizational structure is intended to serve the mission to teach, to sanctify, and to serve which is realized in a variety of instruments and organizations. A "diocese" is a portion of the Roman Catholic faithful which is entrusted to a bishop for him to shepherd with the cooperation of the ordained clergy. As a general rule, a diocese is territorial and encompasses all the Roman Catholic faithful within its geographical bounds. The bishop of a diocese is appointed by the Pope. The Bishop of the Diocese is the Most Reverend Terry R. LaValley (the "Bishop"). Bishop LaValley was installed as the Bishop of Ogdensburg on April 30, 2010. A diocese is divided into "parishes," which are communities of the Roman Catholic faithful stably constituted in a particular church, whose pastoral care is entrusted to a priest as its proper pastor under the authority of the diocesan bishop. As a general rule, each parish is territorial and encompasses all the Roman Catholic faithful within its geographical bounds.

Canon Law is a generic term applied to several sources of church law that together establish the internal organizational structure and procedures to be followed within the Catholic Church. Canon Law also identifies property rights and agency relationships among the variety of structures within the community of the Catholic Church. The Diocese is a Latin Catholic Diocese and subject to the *Code of Canon Law* promulgated by Pope John Paul II on January 25, 1983.[3] As used herein, "Church" means the universal Catholic Church. Under Canon Law,

[3] 1983 Code c.1-1752 (1983) (as amended, "1983 Code"). Within the Roman Catholic Church there are 24 *sui juris* churches. The Latin Church is the largest, it is subject to *Codex Iuris Canonici auctoritate Ionnisa Paulii PP. II*

dioceses and parishes are public juridic persons having separate and distinct canonical legal existence from each other and from the Church.

Under New York Law, the Diocese is an incorporated legal entity, separate from the Parishes and Other Catholic Organizations within its territory, with its own corporate structure and governance. The Other Catholic Entities (a) are not under the fiscal or operating control of the Diocese, (b) maintain their own books, records, bank accounts and employee payroll, and (c) are not debtors in this chapter 11 proceeding and have not otherwise sought bankruptcy relief. The Diocese was canonically established on February 11, 1872, subsequently incorporated in New York State on January 20, 1891, and later reincorporated on April 10, 1945 by a special act of the New York State Legislature. The Diocese is governed by a Board of Trustees made up of the Bishop, the Vicar General and the Chancellor of the Diocese, as required under Canon law.

The territory over which the Diocese exercises canonical jurisdiction is co-extensive/contiguous with the counties of Jefferson, Lewis, St. Lawrence, Franklin, Clinton, Essex and the Northern portions of Hamilton and Herkimer in New York State. Within the territory of a diocese are separately constituted parishes. Like a diocese, a parish is usually defined territorially. There are currently 81 separately incorporated Parishes and approximately 71,905 Catholic individuals in the territory of the Diocese. These individuals are served by 46 non-retired Diocesan priests, 8 Religious order priests who reside in the Diocese, and 91 non-retired permanent deacons. Permanent deacons are men ordained for the ministry of the Word (Catechetics and preaching), service to the poor, and liturgical assistance. The Diocese also currently employs approximately 47 individuals, both clergy and laity, in its central offices and direct ministries.

The secular legal embodiments of the parishes within the Diocese are non-member corporations ("Parish Corporations") formed under New York's Religious Corporation Law. Pursuant to Article 5 of the Religious Corporations Law, each of the Parish Corporations is governed by a Board of Trustees comprised of the Bishop, the Vicar General of the Diocese, the Pastor of the Parish, and two lay members of the Parish. The Bishop is the president of each Parish Corporation, the Vicar General is the vice president, and the Pastor is the secretary-treasurer (all serving *ex officio* in accordance with New York Law). Each Parish Corporation owns the real and personal property that is used in its ministry. Each Parish holds its own meetings, appoints its own councils and committees, and establishes its own annual budget. Within the Diocese, there are six (6) Parish Corporation owned and operated parochial schools collectively serving 900 students. Numerous Parish Corporations own, control, maintain, and operate cemeteries.

There are several separate not-for-profit corporations that assist the Diocese and Parishes in their ministries (the "Catholic Ministry Entities"). All of the Catholic Ministry Entities were incorporated under the New York Not-for-Profit Corporation law or other New York not-for-profit organizational statutes to carry out a variety of works of the apostolate. The primary Catholic Ministry Entities include the Catholic Charities of the Diocese of Ogdensburg

churches. The Latin Church is the largest, it is subject to *Codex Iuris Canonici auctoritate Ionnisa Paulii PP. II promulgatus* (Vatican City: Libreria Editrice Vaticana, 1983). Hereinafter, the 1983 Code. Throughout this Disclosure Statement, the English translation used will be *Code of Canon Law, Latin-English Edition,* CLSA 1998.

(the "Catholic Charities"), the Foundation of the Roman Catholic Diocese of Ogdensburg, New York, Inc. (the "Foundation"), and the Pontifical Mission Societies of the Diocese of Ogdensburg, New York, Inc. (the "Mission Societies"), among others.

The Parish corporations, schools and Catholic Ministry Entities located within the Diocese are not under the fiscal or operating control of the Diocese and did not seek bankruptcy relief on the Diocese's Petition Date. The list of Additional Debtors, which will be filing voluntary petitions under chapter 11 of the Bankruptcy Code, is attached to the Plan as **Exhibit A** and includes Parish corporations, schools and certain Catholic Ministry Entities.

The Diocese, through its administrative offices, (a) provides operational support to the Catholic Ministry Entities that operate within the territory of the Diocese in support of their shared charitable, humanitarian and religious missions; (b) provides parish schools with operational and educational support; and (c) provides comprehensive risk management services to the Catholic Ministry Entities through the Diocese's insurance program.

Reported net assets of the Diocese for the fiscal year ending on June 30, 2022 was approximately $26.3 million, approximately $16.9 million of which was subject to donor restrictions, and $9.2 million of which was unrestricted. There are seven (7) primary sources of income used by the Diocese to support its operations: (i) parish assessments; (ii) contributions; (iii) bequests; (iv) investment income; (v) grants; (vi) management fees; and (vii) fees and premiums charged for auxiliary services provided by the Diocese, the most significant of which being the Diocese's joint insurance program.

In or around December 1976, the Diocese established the Diocesan Trust Fund (the "DTF"). The DTF is a trust established for religious and charitable purposes, pursuant to which the Diocese, as Trustee, received, and has continued to receive, funds that are restricted in use and perpetual or permanent in nature (the "Trust Funds") from the settlors of the DTF (each a "Beneficiary," and collectively the "Beneficiaries"), all of which are Parishes and other Catholic institutions within the Diocese, pursuant to custody agreements. According to the terms of the DTF trust agreement (the "Trust Agreement"), the Diocese holds, manages, invests, and disposes of the Trust Funds for the benefit of the Beneficiaries.

The DTF is intended to act as an investment vehicle operated by the Diocese to maintain endowment funds and other long-term investments from Beneficiaries. Although the DTF accounts are held in the Diocese's name, all investments are held in trust for the benefit of the Beneficiaries. The DTF is designed to pay quarterly dividends and to provide long term capital appreciation. As of the Petition Date, the DTF has approximately $25 million in total assets under management. These funds are restricted for endowment and perpetual use and, in the event that a Beneficiary desires a distribution from the DTF, it must submit to the Diocese a request in writing and in a form acceptable to the Diocese (a "Distribution Request").

The Deposit and Loan Fund (the "Fund") is funded by the Diocese and non-debtor entities consisting of parishes and other Catholic institutions and entities that operate within the territory of the Diocese (collectively, the "Depositors", and each a "Depositor") that are qualified as federally tax-exempt entities pursuant to section 501(c)(3) of the Internal Revenue Code of 1986 (the "Tax Code"). The Fund was created to operate exclusively for the benefit of the

Depositors, each of which have invested significant funds into the Fund in an effort to maximize their return on such investments through the cumulative financial strength and investment strategy of the Fund. The funds are primarily utilized by any such Depositor in the operation of its business.

The Diocesan Investment and Loan Trust of the Roman Catholic Diocese of Ogdensburg, New York (the "DILT") is a charitable investment trust formed pursuant to a Declaration of Trust dated April 6, 2020 (as subsequently amended, the "DILT Documentation") operated and managed by its trustee, Rev. John M. Demo, as successor trustee to Rev. Joseph A. Morgan (the "DILT Trustee") for the benefit of certain qualified Catholic entities within the Diocese of Ogdensburg (the "DILT Beneficiaries"), which may include the Diocese and the Additional Debtors, and for the charitable purposes of supporting the religious, charitable and educational purposes of the DILT Beneficiaries.

Only entities listed in the Official Catholic Directory (the "Kenedy Directory") for the Diocese may invest in the Fund. However, the Fund may receive and accept funds from any corporations, associations or entities affiliated with the Diocese, approved by the Bishop and associated with the Diocese in the Kenedy Directory in accordance with and pursuant to provisions of the Fund. Monies received and accepted by the Fund are held by the Diocese for investment for the benefit of the Depositors. Deposits to the Fund are guaranteed as to both principal and interest by the Diocese. At the time a new account in the Fund is established, a Deposit Account Agreement is executed by the Diocese and the Depositor.

The Fund is overseen by an advisory committee consisting of the Moderator of the Curia (Father Kevin O'Brien), the Chancellor (Deacon James Crowley), and the Diocesan Fiscal Officer (Mark Mashaw) (the "Fund Committee"). The Fund Committee is responsible for the general oversight of the Fund, including: (a) review of quarterly financial statements; (b) review of loan applications and recommendation to the Diocese for approval/denial of loan requests; (c) recommendation to the Diocese for changes in the interest rate paid to Depositors and the interest rate charged to borrowers; (d) recommendations for amendments to the Deposit & Loan Fund Agreement; and (e) other duties as assigned by the Diocesan Bishop.

Investments in the Fund are managed by Manning & Napier Advisors, Inc. There are two portfolios, one used to attain a target asset allocation of 30% equities, 70% fixed income, with authority to invest 20% equities and 80% fixed income, and one to invest 100% in equities.

By investing in the Fund, Depositors have agreed that monies in the Fund will only be used in accordance with the specific purposes set forth in the Fund, which includes cash flow needs for operations, site/building repair or renovation, capital purchases and capital improvements. No part of the net earnings of the Fund is payable to or for the benefit of any private individual. The Fund does not conduct activities not permitted to be conducted by any organization which is tax exempt or by an organization to which donations are deductible from taxable income to the extent allowed by the Tax Code.

The Foundation was incorporated as a New York not-for-profit corporation on March 15, 2007. The purposes of the Foundation are to solicit and receive contributions and establish, maintain and operate an endowment fund for the charitable purpose of providing support to and

for the sole and exclusive benefit of the Diocese and its affiliates. The affairs, property, business and policies of the Foundation are under the direction of a Board of Directors, comprised of not less than three nor more than seven members, including the Diocesan Bishop or Administrator, Vicar General, and Diocesan Fiscal Officer who serve *ex officio*.

## B. Need for Reorganization

Over the last several decades, certain clergy members and employees of the Church have violated the sacred trust placed in them by children and their families and the Church by committing acts of Abuse. This conduct runs contrary to the teachings and traditions of the Church. The Diocese is committed to pursuing the truth. The Diocese has publicly disclosed proven or acknowledged perpetrators. The Diocese makes referrals to law enforcement for all allegations of Abuse. Bishop LaValley has apologized for the past misconduct of the personnel of the Diocese and meets with victims at every opportunity in an attempt to bring comfort to such individuals, as did his predecessor. The Diocese has established standards for the training and background assessment of all employees, clerics and volunteers who will likely interact with children and young people.

While the Diocese carried insurance during many periods in which Abuse is alleged to have occurred, and while the Diocese believes such insurance provides coverage for the Abuse Claims as they were asserted or likely would be asserted against the Diocese, prior to filing its Chapter 11 Case, the Diocese had been largely unsuccessful in obtaining any coverage for Abuse Claims asserted against the Diocese.

On January 28, 2019, the New York State Legislature passed the Child Victims Act (A.2683/S.2440) (the "CVA"). New York's Governor signed the legislation on February 14, 2019. This legislation modified the statute of limitations and created a limited "window" during which victims of child sex abuse whose claims were previously time barred could commence a timely civil action. In addition, the CVA extends the statute of limitations for claims that were not time barred on its date of passage, permitting such child victims to commence timely civil actions until they reach 55 years of age. On May 24, 2022, New York State's Governor signed into law the Adult Survivors Act (A.648/S.66) (the "ASA") which created a similar window for previously time barred claims of survivors of sexual offenses committed against them who were eighteen (18) years of age or older at the time they were abused. The ASA window to sue on an Adult Abuse Claim opened on November 24, 2022.

Since the Petition Date, survivors of alleged clergy Abuse have Filed 139 proofs of claims against the Diocese's Estate in the Chapter 11 Case. In addition, most such claims are the subject matter of separate Abuse Actions that have been commenced in other courts against an Additional Debtor that is alleged to be jointly and severally liable with the Diocese on account of such claims. As a result, the Diocese faced the prospect of addressing Abuse Claims asserted in amounts exceeding the Diocese's ability to pay, in which circumstance (a) survivors of Abuse could have been left with no compensation or other support, and (b) those within the Diocese (including non-Catholics) who depend on the services of the Church delivered through the Diocese could have been left without the material, monetary, and spiritual support the Diocese provides.

The Diocese is a not-for-profit religious corporation with limited resources, including limited insurance coverage which may be applicable to claims of persons seeking remedies for Abuse Claims. The Diocese acknowledges its moral obligation to compensate all victims of Abuse by Church personnel fairly and equitably. Consistent with this moral obligation, it cannot allow any single plaintiff to recover a disproportionate share of the limited funds available from the Diocese simply because that plaintiff's case goes to trial first. Similarly, the Diocese cannot ignore the valid claims of other Creditors who stand on equal footing with Abuse Claimants as general unsecured Creditors of the Diocese. Beyond the Diocese's obligation to all of its Creditors, the Diocese has a fundamental and moral obligation to the Catholic faithful it serves, and to the donors who have entrusted the Diocese with the material fruits of their life's labor, to continue the ministries of the Church through the Diocese. The Diocese's goals in seeking Chapter 11 relief were two-fold. First, to protect and preserve its assets that are properly available for Distribution to satisfy the claims of the Diocese's unsecured Creditors, along with whatever additional assets can be marshaled, so that those assets are distributed equitably to all Creditors. Second, to continue the work of the Church to the fullest extent possible, using the resources dedicated to that purpose.

## C. <u>The Additional Debtors</u>

The Additional Debtors include 79 Parishes and Catholic Ministry Entities within the Diocese of Ogdensburg, as listed on Exhibit A to the Plan. The Additional Debtors did not file bankruptcy petitions on the Diocese's Petition Date, but now contemplate filing Chapter 11 petitions shortly before the Confirmation Hearing. The Plan discussed in this Disclosure Statement is a "prepackaged" plan as it pertains to the Additional Debtors, meaning that the voting process for the Plan, as it relates to the Additional Debtors, was commenced and will conclude prior to, and in anticipation of, the Additional Debtors filing Chapter 11 petitions. Here, the "prepackaged" Plan is intended to implement the consensual resolution that was reached between the Diocese, the Additional Debtors, the Committee, and the Settling Insurers.

The Additional Debtors consist of parishes and other Catholic entities which are central to the lives of the Catholic community within the Diocese, and oversee central life events of Catholic individuals and families within the Diocese, including: baptism, religious education, communion, mass, confirmation, marriage, and bereavement, including last rites, funeral services and grief support. The Additional Debtors are crucial to continuing the mission of the Diocese and connecting the Diocese with its community.

The Additional Debtors are separate religious corporations, formed under Article 5 of New York's Religious Corporations Law. As such, the trustees of each parish corporation are the Bishop, the Vicar General, the pastor of the parish, and two laypersons. Parishes bring in revenue primarily through offertory collections, diocesan collections, and additional fundraising, programming and other sources of income. Parishes expenditures include programming expenses such as salaries, religious education, ministries, music and other ministry programming, and capital expenditures. The Additional Debtors are also additional insureds under the Insurance Policies.

Financial information for the Additional Debtors is attached hereto as **<u>Exhibit D</u>**.

# ARTICLE 3
# THE DIOCESE'S CHAPTER 11 CASE

## A. The Chapter 11 Filing

The Diocese commenced the Chapter 11 Case on the Petition Date by filing a voluntary petition for Chapter 11 relief under the Bankruptcy Code [Docket No. 1]. The Diocese's case was assigned to the Honorable Patrick G. Radel, United States Bankruptcy Judge for the Northern District of New York. The Diocese has continued in possession of its assets and the management of its business as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On July 17, 2023, the Bankruptcy Court held an initial hearing to consider certain "first day" matters and entered several orders in the Chapter 11 Case, each of which is available from the Clerk of the Bankruptcy Court or may be viewed, free of charge, at the case management website maintained by the Diocese's notice agent at https://case.stretto.com/dioceseofogdensburg. The Bankruptcy Court entered the following orders granting "first day" relief:

### 1. *Employee Wages and Benefits.*

The Diocese Filed a motion seeking approval to pay certain prepetition employee wage and benefit obligations (the "Wage Motion"). An Interim Order granting the relief requested in the Wage Motion was entered on July 19, 2023 [Docket No. 36], and a Final Order was entered on August 29, 2023 [Docket No. 91].

### 2. *Pre-petition Self-Insurance Program.*

The Diocese Filed a motion seeking authority to continue its prepetition self-insurance program (the "PSIP Motion"). Interim Orders granting the relief requested in the PSIP Motion were entered on July 19, 2023 [Docket No. 41] and August 29, 2023 [Docket No. 97]. A Final Order was entered on October 10, 2023 [Docket No. 179].

### 3. *Prepetition Taxes and Regulatory Fees.*

The Diocese Filed a motion seeking authority to pay prepetition taxes and regulatory fees in the ordinary course of business (the "Tax Motion"). An Interim Order granting the relief requested in the Tax Motion was entered on July 19, 2023 [Docket No. 37], and a Final Order was entered on August 29, 2023 [Docket No. 96].

### 4. *Utilities.*

The Diocese Filed a motion seeking to prohibit utility companies from altering, refusing, or discontinuing service and determining adequate assurance of future performance (the "Utilities Motion"). An Interim Order granting the relief requested in the Utilities Motion was entered on July 19, 2023 [Docket No. 37], and a Final Order was entered on August 29, 2023 [Docket No. 93].

5. ***File Chapter 11 Matrix and Schedules Under Seal.***

The Diocese Filed a motion seeking approval to File portions of schedule F, the statement of financial affairs, the master creditor mailing matrix, and certain other pleadings and documents under seal (the "Motion to File Under Seal") on the Petition Date, and an Interim Order approving the Motion to File Under Seal was entered on July 19, 2023 [Docket No. 33]. A Final Order was entered on August 29, 2023 [Docket No. 94].

6. ***Stay Confirmation.***

On July 17, 2023, the Diocese filed the *Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 362(a) Confirming the Applicability of the Automatic Stay* [Docket No. 18] (the "Stay Confirmation Motion") seeking, among other things, entry of an order confirming that section 362 of the Bankruptcy Code automatically stays all proceedings in any lawsuit or other action where the Diocese is named as a party defendant.

On August 29, 2023, the Bankruptcy Court entered an Interim Order confirming the application of the automatic stay to any judicial, administrative, or other action or proceeding in which the Diocese is named as a party defendant (each a "Stayed Action"), effective as of the Petition Date, through at least October 3, 2023 (the "Interim Stay Confirmation Order") [Docket No. 95]. On October 10, 2023, the Bankruptcy Court entered a Final Order confirming the application of the automatic stay to all Stayed Actions (the "Stay Confirmation Order") [Docket No. 178].

7. ***Reassigned Motions***

On July 17, 2023, the Court entered a Sua Sponte Order of Limited Recusal and Reassignment of Motions pursuant to 28 U.S.C. § 455(a) by which certain "first day" motions were to be reassigned to another Judge in the Northern District of New York pursuant to Local Bankruptcy Rule 1073-1(e). Accordingly, the Honorable Wendy A. Kinsella, United States Bankruptcy Judge for the Northern District of New York, entered the following orders granting "first day" relief:

a. Cash Collateral.

The Diocese Filed a motion seeking approval to use its cash collateral (the "Cash Collateral Motion"). Interim Orders approving the Cash Collateral Motion were entered on July 19, 2023 [Docket No. 35] and August 29, 2023 [Docket No. 98]. A Final Order was entered on October 20, 2023 [Docket No. 215].

b. Cash Management.

The Diocese Filed a motion seeking approval to maintain its existing investment and bank accounts and its existing business forms (the "Cash Management Motion"). Interim Orders approving the Cash Management Motion were entered on July 19, 2023 [Docket No. 39] and August 29, 2023 [Docket No. 100]. A Final Order was entered on October 20, 2023 [Docket No. 209].

c. Parish Liquidity Motion.

The Diocese Filed a motion seeking approval to continue to administer the Diocese of Ogdensburg Deposit & Loan Fund (the "Fund") and The Roman Catholic Diocese of Ogdensburg, New York Trust Fund (the "DTF") (the "Parish Liquidity Motion"). Interim Orders approving the Parish Liquidity Motion were entered on July 19, 2023 [Docket No. 40], August 29, 2023 [Docket No. 99], October 5, 2023 [Docket No. 171], and November 13, 2023 [Docket No. 253]. A Final Order was entered on January 16, 2024 [Docket No. 330].

## B. Administration of the Case

After the Petition Date, and in accordance with sections 1107(a) and 1108 of the Bankruptcy Code, the Diocese continued its operations and managed its assets as a debtor in possession. As of the date of this Disclosure Statement, no trustee or examiner has been appointed in the Chapter 11 Case, nor has any motion for a trustee or examiner been made.

## C. Appointment of the Committee

On August 11, 2023, the Office of the United States Trustee appointed the Committee pursuant to sections 1102(a) and 1102(b) of the Bankruptcy Code to serve in the Chapter 11 Case. The Committee is composed of six individuals who hold Abuse Claims against the Diocese.

The Committee retained the law firm of Pachulski, Stang, Ziehl & Jones, LLP ("PSZJ") to represent it in the Chapter 11 Case. Since its appointment, the Committee has taken an active role in the Chapter 11 Case and has been involved in virtually every major event that transpired during the Chapter 11 process, including participating in mediation and drafting the Plan.

The Committee also performed its investigatory function by reviewing financial and operating information supplied by the Diocese and third parties, and by conducting an investigation to determine whether any other assets could be made available to pay Abuse Claims.

## D. Retention of Professionals

During the Chapter 11 Case, the Bankruptcy Court approved the retention and employment of the following professionals to assist in the administration of the Chapter 11 Case:

1. ***Claims and Noticing Agent***.

On July 17, 2023, the Diocese filed an application to retain Stretto as its claims and noticing agent. Interim Orders approving the retention of Stretto were entered on July 19, 2023 [Docket No. 32] and August 30, 2023 [Docket No. 105], and a Final Order approving the retention of Stretto was entered on December 15, 2023 [Docket No. 301].

2. ***Administrative Advisor***

On July 17, 2023, the Diocese filed an application to retain Stretto as its administrative advisor. Interim Orders approving the retention of Stretto were entered on July 19, 2023 [Docket No. 31] and August 30, 2023 [Docket No. 104], and a Final Order approving the retention of Stretto was entered on December 15, 2023 [Docket No. 302].

3. ***Bankruptcy Counsel to Diocese***.

On August 15, 2023, the Diocese Filed an application to retain Bond, Schoeneck & King, PLLC ("Bond") as its bankruptcy counsel. An Order approving the retention of Bond was entered on September 5, 2023 [Docket No. 110].

4. ***Special Insurance Counsel to Diocese***.

On August 15, 2023, the Diocese Filed an application to retain Blank Rome LLP ("Blank Rome") as its special counsel with respect to the Diocese's various insurance policies and insurance coverage litigation. An Order approving the retention of Blank Rome was entered on September 5, 2023 [Docket No. 111].

5. ***Special Counsel to Diocese***.

On August 15, 2023, the Diocese Filed an application to retain Costello, Cooney & Fearon, PLLC ("Costello") as its special counsel with respect to (i) the Abuse Claims; (ii) a certain subpoena dated September 6, 2018 issued to the Diocese by the New York State Office of the Attorney General; and (iii) to continue to provide legal assistance to the Diocese with respect to potential litigation matters. An Order approving the retention of Costello was entered on September 5, 2023 [Docket No. 112].

6. ***Special Counsel to the Diocese***.

On August 15, 2023, the Diocese Filed an application to retain Schwerzmann & Wise, P.C. ("S&W") as its special counsel with respect to (i) the Abuse Claims; (ii) a certain subpoena dated September 6, 2018 issued to the Diocese by the New York State Office of the Attorney General; and (iii) to continue to provide legal assistance to the Diocese with respect to potential litigation matters. An Order approving the retention of S&W was entered on September 5, 2023 [Docket No. 113]

7. ***Accountants***.

On August 15, 2023, the Diocese Filed an application to retain Pinto Mucenski Hooper Vanhouse & Co., Certified Public Accountants, P.C. ("Pinto") as the accountants to the Diocese. An Order approving the retention of Pinto was entered on September 5, 2023 [Docket No. 114].

8. ***Special Appellate Counsel to the Diocese.***

On August 30, 2024, the Diocese Filed an application to retain Jones Day to act as unpaid special appellate counsel to the Diocese, pursuant to 11 U.S.C. § 327(e) with respect to the Diocese's proceedings in the United States Supreme Court in connection with a petition for certiorari from the New York Court of Appeals' May 21, 2024 decision in Case No. 45 concerning a challenge to a regulation promulgated by the State of New York, N.Y. Comp. Codes R. & Regs. Tit. 11 § 52.16(o), mandating that employer health insurance plans cover abortions. A Decision and Order approving the retention of Jones Day was entered on September 16, 2024 [Docket No. 708].

9. ***Special Appellate Counsel to the Diocese.***

On August 30, 2024, the Diocese Filed an application to retain the Becket Fund for Religious Liberty ("Becket") to act as unpaid special appellate counsel to the Diocese, pursuant to 11 U.S.C. § 327(e) with respect to the Diocese's proceedings in the United States Supreme Court in connection with a petition for certiorari from the New York Court of Appeals' May 21, 2024 decision in Case No. 45 concerning a challenge to a regulation promulgated by the State of New York, N.Y. Comp. Codes R. & Regs. Tit. 11 § 52.16(o), mandating that employer health insurance plans cover abortions. A Decision and Order approving the retention of Becket was entered on September 16, 2024 [Docket No. 709].

10. ***Counsel Retained by the Committee***.

On September 19, 2023, the Committee Filed an application to retain PSZJ as its legal advisor. An Order approving the retention of PSZJ was entered on October 16, 2023 [Docket No. 193].

11. ***Special Insurance Counsel Retained by the Committee***.

On October 30, 2023, the Committee Filed an application to retain Burns Bair LLP as special insurance counsel to the Committee. An Order approving the retention of Burns Bair LLP was entered on November 22, 2023 [Docket No. 270].

12. ***Financial Advisor to the Committee***.

On October 9, 2023, the Committee Filed an application to retain Berkeley Research Group, LLC ("Berkeley") as its financial advisor. An Order approving the retention of Berkeley was entered on November 2, 2023 [Docket No. 235].

## E. Schedules and Statement of Financial Affairs

The Diocese Filed its Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules") on August 31, 2023.

## F. Post-Petition Operations and Select Financial Information

Since the Petition Date, the Diocese has continued to operate its ecclesiastical business. During a typical month, the Diocese's expenses total approximately $670,000.

As of April 30, 2026, the Diocese reported total assets of approximately $14,824,413, including cash and cash equivalents of approximately $1,645,000, and other assets of approximately $8,280,000. As of the same date, the Diocese reported total liabilities of approximately $18,431,144, including a $6,200,000 provision for misconduct claims, an $181,101 provision for potential uninsured losses, and approximately $565,000 of accounts payable and accrued expenses.

1. ***Operating Cash***.

As of April 30, 2026, the Diocese had approximately $1,645,000 in cash and cash equivalents. The availability of cash and investments for Plan funding, operations, or liquidation is therefore subject to applicable restrictions, designations, reserves, and court-approved uses.

2. ***Real and Personal Property***.

The Diocese currently owns real and personal property (accounts receivable, prepaid expenses, furniture and fixtures, real property and improvements), with a scheduled book value of approximately $4,857,480 as of April 30, 2026.

3. ***Investment Accounts***.

a. *Diocesan Trust Fund.* As set forth above, the DTF is an investment vehicle operated by the Diocese to maintain endowment funds and other long-term investments from Beneficiaries. The majority of DTF investments are held in a custodial account at NBT

Bank and professionally managed by Manning and Napier Advisors. Additional investments are held and managed by Christian Brothers Investment Services, Dimensional Fund Advisors and TIFF Realty Opportunity Fund. The Diocesan Fiscal Office calculates dividends, monitors investment performance, and provides bookkeeping and accounting services for the DTF. According to the terms of the DTF trust agreement (the "Trust Agreement"), the Diocese holds, manages, invests, and disposes of the Trust Funds for the benefit of the Beneficiaries.

b. *The Deposit and Loan Fund.* As set forth above, the Fund is overseen by the Fund Committee, which is responsible for the general oversight of the Fund, including: (a) review of quarterly financial statements; (b) review of loan applications and recommendation to the Diocese for approval/denial of loan requests; (c) recommendation to the Diocese for changes in the interest rate paid to Depositors and the interest rate charged to borrowers; (d) recommendations for amendments to the Deposit & Loan Fund Agreement; and (e) other duties assigned by the Diocesan Bishop. Investments in the Fund are managed by Manning & Napier Advisors, Inc. pursuant to the guidelines established in the Diocese's investment policy.

c. *Diocesan Investment and Loan Trust.* As set forth above, the DILT is a charitable investment trust operated and managed by the DILT Trustee for the benefit of the DILT Beneficiaries, which may include the Diocese and the Additional Debtors, and for the charitable purposes of supporting the religious, charitable and educational purposes of the DILT Beneficiaries. Pursuant to the DILT Documentation, the Trustee is authorized to manage deposits, receive withdrawal requests, account for earnings, and make loans to the DILT Beneficiaries.

## G. Bar Date, Abuse Claims, and Boy Scouts of America Claims

### 1. *Diocese Bar Date.*

By an Order dated October 19, 2023 (the "Bar Date Order"), the Bankruptcy Court fixed January 18, 2024 (the "Bar Date") as the deadline for filing proofs of claim for all prepetition Claims, including Abuse Claims, against the Diocese, as well as the deadline for all governmental units (as defined in section 101(27) of the Bankruptcy Code) to File proofs of claim in the Chapter 11 Case. The Notice of Deadline for Filing Proofs of Claim (the "Bar Date Notice") approved by the Bankruptcy Court defines "Abuse Claim" as any claim against the Diocese resulting or arising from "any actual or alleged sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, or any other conduct constituting a sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the New York Penal Law), and seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Diocese or any other person or entity for whose acts or failures to act the Diocese is or was allegedly responsible."

The Bar Date Notice was sent to all known Creditors of the Diocese. In addition, the Bar Date Notice was published, as required in the Bar Date Order, through Diocese press releases, through parish bulletins, in national and regional newspapers, on the case management website maintained by Stretto, the Diocese's web page and social media accounts, and through postings at Parishes and at other Catholic agencies.

Under the Bar Date Order and the Plan, unless otherwise ordered by the Bankruptcy Court or as provided in the Allocation Protocol, any Person who was required to File a timely proof of claim and failed to do so on or before the Bar Date will not be entitled, with respect to such Claim, to receive any payment or Distribution of property from the Diocese, its successors or assigns, and will be forever barred from asserting such Claim against the Diocese or its Estate.

The Diocese, its Professionals, and the Committee's Professionals have reviewed all the Claims Filed by Creditors. More than 135 proofs of claim were Filed by Abuse Claimants in the Chapter 11 Case. The Diocese believes that 15 of these proofs of claim are either duplicate claims or do not allege a claim arising from or relating to Abuse. At least [__] Abuse Claims were filed after the Bar Date. Among the Abuse Claims Filed prior to the Bar Date, the Diocese believes at least 18 assert Claims based upon the actions or omissions of individuals or entities that are not affiliated with the Diocese or Additional Debtors and for which the Diocese believes neither it nor the Additional Debtors have any legal liability. Notwithstanding the Diocese's position on liability, or whether Abuse Claims may be duplicative or filed after the Bar Date, the Abuse Claim Reviewer and/or the Trustee may determine that holders of such Abuse Claims may be entitled to a Distribution in accordance with the Allocation Protocol. Nothing herein shall be deemed an admission regarding any Person's liability for Abuse Claims. In addition, various Parishes, Schools, and Other Catholic Organizations also Filed contingent claims for indemnification or contribution in the Chapter 11 Case, as they were sued in various Abuse Actions either as co-defendants along with the Diocese prior to the Petition Date or, following the Petition Date, in Abuse Actions relating to the same actions or occurrences of Abuse alleged in proofs of claim Filed in the Chapter 11 Case.

## H. Insurance Coverage Adversary Proceeding

The Diocese determined that Insurance Policies issued by seven of its Insurers may be implicated by the Abuse Claims. The Abuse Claims have also been Filed, in many cases, against Parishes, Schools, and Other Catholic Organizations, including Non-Debtor Catholic Entities.

On July 17, 2023, the Diocese commenced Adversary Proceeding No. 23-80013 (the "Insurance Adversary Proceeding") by filing a complaint against Markel Insurance Company as successor to Associated International Insurance Company ("Markel"), Certain Underwriters at Lloyd's, London, and Certain London Market Companies (the "London Market Insurers"), Employers Mutual Liability Insurance Company of Wisconsin, Wausau Underwriters Insurance Company, and Employers Insurance Company of Wausau ("Wausau"), Granite State Insurance Company ("Granite"), Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), International Insurance Company, and Illinois Union Insurance Company ("Illinois Union"), Interstate Fire & Casualty Company ("Interstate Fire"), and St. Paul Surplus Lines Insurance Company ("St. Paul") (collectively, the "Insurers") for breach of contract and declaratory judgment, seeking a

declaration of the rights, duties, and liabilities of the parties pursuant to the terms of their respective insurance policies and damages. By commencing the Insurance Adversary Proceeding, the Diocese sought to determine the rights of the Diocese in these insurance policies and the extent to which that interest may be property of the estate under 11 U.S.C. § 541.

On July 28, 2023, the Diocese moved for an order referring the issues raised in the Insurance Adversary Proceeding to mediation and for the appointment of a mediator to mediate all issues among the Diocese, the Committee, and the Insurers (the "Mediation Motion"). On January 26, 2024, the Bankruptcy Court entered a text order [Docket No. 340] granting the Mediation Motion per an order entered on January 17, 2024 in the Insurance Adversary Proceeding (the "Mediation Order") [Adv. Proc. Docket No. 69]. The Mediation Order (i) referred to mediation any and all issues relating to (a) the merits and valuation of Abuse Claims, including any legal and factual defenses to liability the Diocese or related parties may have, (b) the availability of insurance coverage for the Abuse Claims pursuant to the Policies, including any legal and factual defenses to coverage asserted by Insurers, and the amounts to be contributed by the Insurers to a global settlement of Abuse Claims, (c) the amount that the Diocese and the Related Parties will contribute to a global settlement of Abuse claims; and (d) all other controversies relating to the development, funding, and contents of a chapter 11 plan; (ii) appointed the Honorable Christopher S. Sontchi (retired) ("Judge Sontchi") as mediator; and (iii) directed the Diocese, the Insurers, the Committee, the Related Entities to participate in the mediation process.

Under the Plan, the Trust will succeed to the Diocese as plaintiff under the Insurance Adversary Proceeding.

## I. Appointment of Additional Mediators

On September 30, 2025, the Diocese moved for the appointment of an additional mediator to serve as co-mediator with Judge Sontchi. On November 3, 2025, the Court entered an order authorizing the appointment of the Honorable Melanie L. Cyganowski (retired) ("Judge Cyganowski") as an additional mediator [Docket No. 1115]. Judge Cyganowski's appointment has been limited to mediation among those parties who specifically consented to her involvement as mediator, which include the Diocese, the Additional Debtors, the Committee and Wausau.

Since entry of the original Mediation Order, the Diocese, the Committee, and the Insurers have engaged in more than three years of mediation with dozens of virtual and in-person mediation meetings, interspersed with ongoing negotiations and communications among the mediation parties. Additional mediation sessions with Insurers resulted in settlements with nearly all of the Insurers, now categorized as Settling Insurers. A few remaining Insurers remain Non-Settling Insurers and will be treated as such under the Plan.

# ARTICLE 4
# SUMMARY OF THE PLAN

The Plan Proponents submit that the treatment of Creditors under the Plan is more favorable than the treatment Creditors would receive if the Chapter 11 Cases were converted to cases under Chapter 7 of the Bankruptcy Code. Therefore, the Plan Proponents submit that the

Plan is in the best interests of all Creditors, and the Plan Proponents recommend acceptance of the Plan by holders of Class 4 Abuse Claims.

**The summary of significant elements of the Plan below is provided for the convenience of all parties. The summary does not describe every element of the Plan and is not intended as a substitute for a thorough and complete review of the Plan. This summary is subject to, and is qualified in its entirety by reference to, the full text of the Plan. All Creditors are encouraged to review the Plan and this Disclosure Statement, including Exhibits, in their entirety for a more complete understanding of the Plan's provisions and impact upon Creditors. To the extent any term or provision in this Disclosure Statement is inconsistent with a term or provision of the Plan, the term or provision of the Plan shall control.**

## A. Classification of Claims Generally

Section 101(5) of the Bankruptcy Code defines a claim as: (a) a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured"; or (b) a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."

Section 1123 of the Bankruptcy Code provides that a plan of reorganization shall designate classes of claims against a debtor. Section 1122 of the Bankruptcy Code further requires that each class of claims contain only claims that are "substantially similar" to each other. The Diocese believes that it has classified all Claims in compliance with the requirements of Section 1122 and 1123. However, it is possible that the holder of a Claim may challenge such classification and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In such event, the Diocese would, to the extent permitted by the Bankruptcy Court, modify the classifications in the Plan as required and use the acceptances received in this solicitation for the purpose of obtaining the approval of a Class or Classes of which the accepting holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class of which such holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan. Furthermore, a reclassification of Claims may necessitate a re-solicitation.

## B. Creditor Recovery Under the Plan

All classified Claims have been placed into one of eleven separate Classes. The Plan affirmatively states whether each Class of Claims is Impaired or Unimpaired and whether such Class is entitled to vote.

## C. Classification of Claims and Treatments

As required by the Bankruptcy Code, all Claims are classified into several separate categories. While the vast majority of Claims have been placed into one of the six separate

Classes, some Claims are left unclassified. The separate Classes are described in detail within this Disclosure Statement and in the Plan.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | U.S. Trustee Fee Claims | No | Does Not Vote |
| 1 | Secured Claim of NBT | No | Deemed to Accept |
| 2 | Pass-Through Claims (against the Diocese) | No | Deemed to Accept |
| 3 | General Unsecured Claims (against the Diocese) | No | Deemed to Accept |
| 4 | Abuse Claims (against the Diocese and Additional Debtors) | Yes | Entitled to Vote |
| 5 | Inbound Contribution Claims | Yes | Deemed to Reject |
| 6 | Ride Through Claims (against the Additional Debtors) | No | Deemed to Accept |

1. ***Unclassified Claims***.

a. *Administrative Claims***.** Administrative Claims are Claims for costs or expenses incurred in the administration of the Chapter 11 Cases of the Diocese and Additional Debtors, which are Allowed pursuant to section 503(b) of the Bankruptcy Code. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as described in this Section 2.1 of the Plan. Except as otherwise provided in the Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different and less favorable treatment than provided under the Plan, or by order of the Bankruptcy Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim as soon as practicable after the later of: (i) the Effective Date; or (ii) the date on which such Claim becomes an Allowed Administrative Claim. Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese.

With respect to any trade Claims arising after the applicable Petition Date representing obligations incurred by the Diocese or the Additional Debtors in the ordinary course of its business consistent with past practice, such trade Claims shall be paid in the ordinary course of business. As to other Allowed Administrative Claims, except as otherwise provided in the Plan, each holder of an Allowed Administrative Claim: (i) shall be paid by the Diocese or the Additional Debtors as soon as reasonably practicable after the Effective Date or on the date the Order allowing such Administrative Claim becomes a Final Order; and (ii) shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount thereof, unless the holder agrees to less favorable treatment of such Allowed Administrative Claim.

Administrative Claims representing obligations incurred by the Diocese or the Additional Debtors after the date and time of the entry of the Confirmation Order shall not be subject to application to the Bankruptcy Court and may be paid by the Diocese or the Additional Debtors in the ordinary course of business and without Bankruptcy Court approval.

b. *Priority Tax Claims*. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Diocese, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; *provided*, *however*, that the Diocese reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium. The holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising from, or in connection with any Priority Tax Claim and any demand for such penalty will be deemed Disallowed by the confirmation of the Plan.

The Diocese does not anticipate that any Priority Tax Claims will exist as of the Effective Date.

c. *Non-Tax Priority Claims*. Unless the holder of an Allowed Non-Tax Priority Claim and the Diocese agree to a different treatment, on, or as soon as reasonably practicable after, the later of: (i) the Effective Date; or (ii) the date on which such Non-Tax Priority Claim becomes an Allowed Claim, each holder of such an Allowed Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, (a) Cash equal to the unpaid portion of such Allowed Claim or (b) such other less favorable treatment as to which the Diocese and the holder of such Allowed Claim shall have agreed upon in writing. The Trust shall not be responsible for payment of Non-Tax Priority Claims. Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Non-Tax Priority Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese.

The Diocese does not anticipate that any unpaid Non-Tax Priority Claims will exist as of the Effective Date.

d. *Professional Fee Claims.* In accordance with section 1123(a)(1) of the Bankruptcy Code, Professional Fee Claims have not been classified and are treated as described herein. All Professionals or other Persons requesting an award by the Bankruptcy Court of Professional Fee Claims shall: (i) File their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 60 days after the Effective Date; and (ii) be paid in full, in Cash, by the Diocese or the Additional Debtors, as applicable (a) as soon as practicable after the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order, or (b) upon such terms as may exist pursuant to order of the Bankruptcy Court or as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Diocese or the Additional Debtors, as applicable. The Diocese and the Additional Debtors are authorized to pay their Professionals for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

Professional Fee Claims of Professionals employed by the Committee, which are incurred prior to the Effective Date of the Plan in connection with the implementation and consummation of the Plan, may be paid by the Diocese, after notice and a hearing, or by the Trust from contributions by the Diocese in addition to the amounts payable to Abuse Claimants under the Plan. Professional Fee Claims of Professionals employed by the Diocese for services rendered prior to the Effective Date shall not be paid by the Trust.

e. *U.S. Trustee Fees*. U.S. Trustee Fees include all fees and charges assessed against the Diocese under 28 U.S.C. § 1930, together with interest, if any, under 31 U.S.C. § 3717. All U.S. Trustee Fees due and owing but not paid prior to the Effective Date shall be paid by the Diocese on the Effective Date. In no event shall the payments made to the Trust pursuant to Sections 2, 5, 7 or 8 of the Plan by any Person other than the Diocese be considered “disbursements” under 28 U.S.C. § 1930, nor shall any payment made by the Trust to any Person be considered a disbursement under 28 U.S.C. § 1930. The Additional Debtors must comply with requirements set forth in the *Case Management Order Establishing Procedures for the Filing and Administration of Prepackaged Chapter 11 Cases by Parishes and Affiliated Entities of the Diocese of Ogdensburg* [Docket No. 1471].

As of June 2026, the Diocese has paid U.S. Trustee Fees totaling approximately $180,787 to the Office of the United States Trustee in connection with its Chapter 11 Case. The requirement to pay U.S. Trustee Fees is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed chapter 11 cases. The Diocese shall have the exclusive right to pursue any cause of action, right to reimbursement for overpayment, or similar interest of the Diocese in amounts paid pursuant to 28 U.S.C. § 1930.

2. ***Classified Claims***.

a. ***Class 1 – Secured Claim of NBT, National Association***

**Classification**: Class 1 is composed of the Secured Claim held by NBT Bank, National Association in connection with the NBT Secured Debt Documents.

**Treatment**: The Diocese is current with respect to all obligations due under the NBT Secured Debt Documents and will continue to pay those obligations in accordance with the terms of the NBT Secured Debt Documents. The Trust shall not be responsible for the payment of the Class 1 Claim. The NBT Lien shall attach to the Residual Assets held by the Diocese, to the same extent, validity, and priority as it attached to the assets of the Diocese prior to the DOO Petition Date, and the Diocese shall assume all obligations under the NBT Secured Debt Documents.

**Voting**: The Class 1 Claim is Unimpaired, and therefore, the holder of the Class 1 Claim is deemed to have accepted the Plan and is not entitled to vote.

b. ***Class 2 – Pass-Through Claims (against the Diocese).***

**Classification:** Class 2 includes all Pass-Through Claims.

**Treatment:** Upon the later to occur of the Effective Date and the date on which the Diocese designates a Claim as a Pass-Through Claim, the holder of such Pass-Through Claim shall be deemed to have granted relief from the automatic stay with respect to its Pass-Through Claim, such Pass-Through Claim shall not be subject to the Diocese Discharge, and the parties shall retain their respective rights, remedies, claims, and defenses as they existed on the applicable Petition Date. The Diocese shall designate all Pass-Through Claims no later than sixty (60) days after the Effective Date. The Trust shall not be responsible for the payment of any Pass-Through Claims.

**Voting:** Class 2 Pass-Through Claims are Unimpaired, and therefore, holders of Class 2 Claims are deemed to have accepted the Plan and are not entitled to vote.

c. ***Class 3 – General Unsecured Claims (against the Diocese).***

**Classification:** Class 3 Claims include all General Unsecured Claims that are Non-Abuse Claims against the Diocese.

**Treatment:** Except to the extent the holder of an Allowed General Unsecured Claim agrees in writing to accept less favorable treatment as proposed by the Diocese, the Diocese shall pay each holder of an Allowed General Unsecured Claim, Cash in the Allowed amount of such General Unsecured Claim on the later of (a) the Effective Date, and (b) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim. The foregoing payment shall be in full satisfaction, settlement, and release of, and in exchange for, such Allowed General Unsecured Claim. Notwithstanding anything to the contrary set forth above, no payments shall be made to any Protected Party on account of any General Unsecured Claim and all Protected Parties shall be deemed to have withdrawn any General Unsecured

Claim with prejudice as of the Effective Date in consideration of the Channeling Injunction and Release provisions provided in Section 12 of the Plan.

The Trust shall not be responsible for payment of General Unsecured Claims.

**Voting:** Class 3 General Unsecured Claims are Unimpaired, and therefore, holders of Class 3 Claims are deemed to have accepted the Plan and are not entitled to vote.

d. ***Class 4 – Abuse Claims.***

**Classification:** Class 4 Claims include all asserted and unasserted Abuse Claims.

**Treatment:**

a. On the Effective Date and subject to the Plan provisions, the Trust shall assume liability for all Abuse Claims against the Diocese and all Additional Debtors, including Adult Abuse Claims, Unknown Abuse Claims and Post-Statute Filed Abuse Claims, in accordance with and under the Plan and Trust Documents. Distributions shall be made to holders of Abuse Claims on a fair and equitable basis, pursuant to and in accordance with the terms of this Plan and the Trust Documents. The Trust will make an initial distribution to holders of Filed Abuse Claims and will reserve at least $3 million to fund (i) operational expenses, (ii) costs of litigation with Non-Settling Insurers, (iii) the DOO Entities' Post-Effective Date Cost Reserve, (iv) any other reserves required under the Plan or Trust Documents, and (v) any other reserves as determined necessary by the Trustee, but not to include any reserves established to provide indemnification to Settling Insurers. Thereafter, the Trust will make additional distributions in accordance with the Trust Documents.

b. Class 4 Claimants shall have their Claims treated in accordance with the Allocation Protocol.

c. Except with respect to Litigation Claims brought by authorized Litigation Claimants in accordance with the terms of this Plan, the right of any Class 4 Claimant to a trial by jury or otherwise against the Diocese and/or any Protected Parties is waived and released upon the occurrence of the Effective Date, and any Class 4 Claim they may hold will be solely determined by the Abuse Claims Reviewer in accordance with the Allocation Protocol.

d. The Allocation Protocol was developed by the Committee, in consultation with State Court Counsel and was not developed by, or submitted for the approval of, any of the Protected Parties, nor are the Protected Parties deemed to have accepted or acquiesced in the adoption of the Allocation Protocol. For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the Settling Insurers' support for the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in the terms or use of the Allocation Protocol in any proceeding; the Settling Insurers take no position on the Allocation Protocol. If a Class 4 Claim is denied payment, in whole or in part,

pursuant to the Allocation Protocol, the holder of such Class 4 Claim will have no rights against any of the Protected Parties relating to such Class 4 Claim.

e. None of the Trust, the Diocese or the Additional Debtors shall have any obligation to take any action to enforce an Insurance Policy of a Non-Settling Insurer, including any obligation to commence/prosecute any action against any Non-Settling Insurer or to defend an action commenced by a Non-Settling Insurer, though the Trust (or the Diocese, as applicable), may do so in their sole and absolute discretion.

f. The payment of the Class 4 Claims by the Trust will not, prior to the occurrence of the Abuse Claim Discharge Date, constitute a release, accord, or novation of the Diocese's or the Additional Debtors' liability with respect to the Class 4 Claims; *provided*, *however*, for the avoidance of doubt: (i) the entirety of the Diocese's liability with respect to the Class 4 Claims shall be discharged under Bankruptcy Code section 1141(d), in accordance with Section 12.2 of the Plan, and all of the Additional Debtors' liabilities with respect to any Class 4 Claims are subject to the Channeling Injunction and the releases under the Plan; (ii) all holders (including Class 4 Claimants) of Channeled Claims are subject to the Channeling Injunction; and (iii) all holders (including Class 4 Claimants) of Barred Claims against the Settling Insurers are subject to the Settling Insurer Injunction. Under no circumstances shall the Abuse Claims Reviewer's review of a Class 4 Claim affect the rights of a Non-Settling Insurer.

g. Nothing in this Plan affects, diminishes, or impairs any Class 4 Claimant's rights against any Joint Tortfeasor, including that Joint Tortfeasor's comparative fault or joint and several liability for Abuse, if any. In any litigation against a Joint Tortfeasor, nothing in this Plan or the Plan Documents shall be deemed an adjudication of a Class 4 Claim for any purpose or a limitation on the recovery against such Joint Tortfeasor; *provided, however*, that the Channeling Injunction and Settling Insurer Injunction respectively bar any recovery of a Channeled Claim or Barred Claim from any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either (including the Purchased Property).

h. The Diocese shall cooperate with the Abuse Claims Reviewer and/or the Trustee as reasonably requested by the Abuse Claims Reviewer and/or the Trustee in connection with the administration of the Allocation Protocol, provided that any DOO Entities' Post-Effective Date Costs incurred in connection therewith are paid in accordance with the DOO Entities' Post-Effective Date Costs Procedures.

i. The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the Trust Distributions Class 4 Claimants receive, or are entitled to receive, based on the Plan, Trust Agreement, or Allocation Protocol. For the avoidance of doubt, (i) determinations by the Abuse

Claims Reviewer and/or any distributions entitled to be received from the Trust shall not constitute a determination of the Diocese's or any Additional Debtor's liability or damages for Class 4 Claims; and (ii) under no circumstances shall the Abuse Claims Reviewer's review of a Class 4 Claim affect, or be construed to affect, the rights of a Non-Settling Insurer. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Class 4 Claims. Any such recoveries by the Trust from Non-Settling Insurers will become Trust Assets to be distributed pursuant to Section 4.5 of this Plan and the Allocation Protocol.

j. As of the Effective Date of the Plan, and without any further order from the Bankruptcy Court or further action from any party, the Trustee shall fully assume (a) the liability of the Protected Parties for all Channeled Claims, in each case pursuant to the Channeling Injunction set forth in Section 12.3 of the Plan and (b) the liability (if any) of the Settling Insurers for any and all Barred Claims. All Class 4 Claims shall be satisfied solely from the Trust as set forth in the Plan, the Trust Agreement, and the Allocation Protocol; *provided, however*, such assumption of Class 4 Claims shall not prevent Litigation Claimants from asserting Litigation Claims to the extent provided for herein; *provided further*, that the Channeling Injunction and Settling Insurer Injunction respectively prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property).

k. No Person, other than the Committee or, following the Effective Date, the Trustee, may: (i) object to any Class 4 Claim; or (ii) challenge the merit, validity, or amount of any Class 4 Claim, except that nothing in the Plan shall prevent the Diocese or any Additional Debtor, or with respect to any Class 4 Claim implicating a Non-Settling Insurer Policy, a Non-Settling Insurer, from asserting any legal or factual defenses that the Diocese, an Additional Debtor, and/or Non-Settling Insurer may have in response to any Litigation Claim. Any objection or challenge to a Class 4 Claim pending as of the Effective Date is deemed withdrawn and shall not be refiled. With the exception of the Trustee's objections or challenges to a Class 4 Claim, or the adjudication or settlement of a Litigation Claim, Class 4 Claims shall be treated in accordance with the Allocation Protocol and shall not be subject to any other review or judicial consideration. Nothing in this Plan or the Plan Documents shall constitute an admission by any Protected Party as to the validity or amount of any Class 4 Claim, nor shall anything herein or therein (i) restrict the Diocese or the Additional Debtors from satisfying any Post-Effective Date Preconditions to Coverage; or (ii) modify the terms of any Non-Settling Insurer Policy with respect to any failure of the Diocese or the Covered Party to satisfy any Post-Effective Date Preconditions to Coverage.

l. No Class 4 Claimant shall receive a Distribution from the Trust until such Class 4 Claimant has executed and delivered to the Trust an Abuse Claim Release Agreement attached to the Plan Supplement as Exhibit 2. Each

Class 4 Claimant must release all Claims against the Protected Parties. The Trust must provide copies of all executed Abuse Claim Release Agreements (a) to the Protected Parties, and (b) upon request, to any Joint Tortfeasor that has executed a non-disclosure or confidentiality agreement.

m. To preserve coverage under any Non-Settling Insurer Policy, subject to the provisions of Section 12.2 of the Plan, each Class 4 Claimant specifically reserves any Abuse Claims they may have against the Diocese or any Covered Party that implicate coverage under any Non-Settling Insurer Policy, but recourse is limited to the proceeds of the Insurance Claims that may be recoverable by the Trust from any Non-Settling Insurers. Class 4 Claims will be released as against the Diocese and the Additional Debtors only upon the occurrence of the applicable Abuse Claim Discharge Date as provided in Sections 12.2.4 and 12.10 of the Plan. Class 4 Claimants may not under any circumstance recover any Channeled Claims (including Abuse Claims) or Barred Claims from any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property); all such Claims are subject to the Channeling Injunction and Settling Insurer Injunction and are released as set forth herein.

n. Subject to and conditioned upon entry of the Confirmation Order as contemplated in Section 11.1.1 of the Plan, Class 4 Claimants shall automatically and without further action be deemed to irrevocably appoint the Committee as their attorney in fact and to grant to the Committee the authority to negotiate and agree to modifications of the treatment accorded to Class 4 Claims, and the Plan generally on their behalf, between the Confirmation Date and the Effective Date, to the extent such modifications are necessary to satisfy or obtain the waiver of any of the conditions precedent to the Plan's Effective Date set forth in Sections 11.1.2 through 11.1.10 of the Plan, subject to the Committee's fiduciary duties to act on behalf of all creditors.

o. The Allocation Protocol and the terms of the Plan concerning financial treatment of Abuse Claims (the "Abuse Claims Plan Provisions") were developed by the Committee; they were not developed by the Diocese, the Additional Debtors or any Settling Insurer, nor were they submitted for the approval of any Settling Insurer, and the Settling Insurers have not (and shall not be deemed to have) accepted or acquiesced in the adoption of the Allocation Protocol or the Abuse Claim Plan Provisions. For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the Settling Insurers' support for the Allocation Protocol or the Abuse Claim Plan Provisions, and no party shall argue that the Settling Insurers agreed to or acquiesced in the terms or use of the Allocation Protocol or the Abuse Claim Plan Provisions in any proceeding; the Settling Insurers take no position on the Allocation Protocol or the Abuse Claim Plan Provisions.

**Voting:** Class 4 Claims are Impaired, and each holder of a Class 4 Claim is entitled to vote to accept or reject the Plan. Only for purposes of voting, each Class 4 Claim is deemed to be Allowed in the amount of $1.00.

e. ***Class 5 – Inbound Contribution Claims.***

**Classification:** Class 5 Inbound Contribution Claims include any Claim asserted against the Diocese or any Additional Debtor for indemnity, contribution, or reimbursement arising out of, or related to, the Claimant's liability to pay or defend any Abuse Claim.

**Treatment:** Class 5 Claims shall be Disallowed and extinguished and there will be no Distributions to the holders of Class 5 Claims on account of such Class 5 Claims.

**Voting:** Class 5 Inbound Contribution Claimants will not receive or retain any property under the Plan and therefore are deemed to have rejected the Plan. Class 5 will not vote on the Plan.

f. ***Class 6 – Ride Through Claims (against the Additional Debtors).***

**Classification:** Class 6 Ride Through Claims (against the Additional Debtors) includes Claims filed against the Additional Debtors that are not Abuse Claims or Inbound Contribution Claims.

**Treatment:** The Additional Debtors will continue to meet their obligations on account of Claims that are not Abuse Claims in the ordinary course of business and as they become due. All rights, claims, and defenses relating to Claims in Class 6 are fully preserved for each Additional Debtor and each Class 6 Claimant.

> **Voting:** Class 6 Ride Through Claims (against the Additional Debtors) are unimpaired, and each holder of a Claim against an Additional Debtor that is not an Abuse Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 6 Claims against the Additional Debtors are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Claims, other than Abuse Claims, against the Additional Debtors.

## ARTICLE 5

## ABUSE CLAIMS

### A. Assessment of Abuse Claims

Class 4 Abuse Claims will be assessed and paid in accordance with the Allocation Protocol, which is designed to provide an expeditious, efficient, and inexpensive method for determining whether an Abuse Claimant is entitled to a Distribution from the Trust. The Diocese and the Additional Debtors shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee in connection with any inquiries by either related to the administration of the Allocation Protocol, but shall not be required to act in any way that prevents satisfaction of any

Post-Effective Date Preconditions to Coverage under any Non-Settling Insurer Policy, if any (including, if applicable, by cooperating with a Non-Settling Insurer). Under no circumstance shall the Abuse Claims Reviewer's review of an Abuse Claim or a Distribution to an Abuse Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer.

**B. Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol**

The Abuse Claims Reviewer's determinations are for estimation and Distribution purposes only and shall not constitute findings as to, or the fixing of, facts or liability concerning the Abuse Claims with any binding legal effect. The determination of Abuse Claimants' qualifications, the estimation of Abuse Claims, and the payment of Trust Distributions shall not be construed as an admission of liability by the Diocese, any Additional Debtor, any Defendant in an Abuse Action or alleged Joint Tortfeasor, or the Trust with respect to any Abuse Claim and shall have no *res judicata* or collateral estoppel effect on the Diocese, any Additional Debtor, the Trust, or any Non-Settling Insurer. Trust Distributions do not release the Diocese nor are Trust Distributions an accord or novation of the Diocese or any Protected Party's liability on account of Abuse Claims; *provided, however*, that the Channeling Injunction and Settling Insurer Injunction respectively prohibit any Person (including all Abuse Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Protected Party, any Settling Insurer Releasees, any Settling Insurer's Related Person, or the assets or property of either of the foregoing (including Purchased Property).

The Trust's act of making a Distribution to an Abuse Claimant is immaterial to, and shall not be construed as, a determination or admission of the Diocese's, any Additional Debtor's, or any Non-Settling Insurers' liability for, or damages with respect to, any Abuse Claim. The determination of qualification, estimation of Abuse Claims, and the payment of Distributions is not a settlement, release, accord, or novation of any Abuse Claim. The determination of qualification, estimation of claims, and payment of partial Distributions does not impair a Litigation Claimant's right to obtain a judgment, including a judgment based on joint and several liability, against the Diocese and/or an Additional Debtor or any Non-Settling Insurer, for purposes of establishing the Diocese's and/or an Additional Debtor's liability with respect to their Litigation Claim, *provided, however*, the Channeling Injunction and Settling Insurer Injunction respectively shall prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Protected Party, any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property). Neither the Abuse Claims Reviewer's review of an Abuse Claim and determination of qualification, nor the Trust's estimation of an Abuse Claim or the payment of Distributions shall: (i) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation with the Diocese or the Additional Debtors, Non-Settling Insurers, or any other Person, or (ii) constitute, or be deemed, a determination of the reasonableness of the amount of any Litigation Claim, either individually or in the aggregate with other Litigation Claims, in any coverage litigation with any Non-Settling Insurers. The Trust's estimation of Abuse Claims and payment of Trust Distributions does not create an admission of the fact of liability, or the extent of damages, on behalf of the Diocese and/or any Additional Debtors.

**C. Insurance Settlements**

The Trust shall use reasonable efforts, consistent with the terms of the Trust Agreement and its fiduciary duties to the Trust's beneficiaries, to enter into an Insurance Settlement Agreement with each Non-Settling Insurer.

**D. Release and Discharge of Abuse Claims.**

Notwithstanding anything to the contrary in the Plan, each Abuse Claimant must, prior to receiving a Distribution from the Trust, execute and deliver to the Trustee an Abuse Claim Release Agreement in the form attached to the Plan Supplement as **Exhibit 2**, *provided, however,* to preserve coverage under Non-Settling Insurer Policies, Class 4 Claimants specifically reserve, and do not release, subject to the occurrence of the applicable Abuse Claim Discharge Date, any and all Abuse Claims that they may have against the Diocese and/or any Additional Debtor that implicate coverage under Non-Settling Insurer Policies, but recourse on such Abuse Claims prior to their release is limited to any Trust Distributions as set forth in the Plan, the Trust Agreement, and the Allocation Protocol, and the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable by the Trust from any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards will be handled in accordance with the Plan.

Class 4 Claims will be released and enjoined as against the Diocese and Additional Debtors for any Abuse that may be covered under Non-Settling Insurer Policies only upon the occurrence of the applicable Abuse Claim Discharge Date, as set forth in Section 12.2.4 and 12.10 of the Plan. Class 4 Claimants will expressly reserve their rights against all Persons, including Joint Tortfeasors, which are not Protected Parties; Joint Tortfeasors will remain severally liable with respect to any Class 4 Claims. For the avoidance of doubt, neither the Channeling Injunction nor the Settling Insurer Injunction, nor any release of a Class 4 Claim, shall be subject to any delayed effectiveness with respect to the Settling Insurers; each shall be immediately effective as to a Settling Insurer upon (a) receipt by the Trust of that Settling Insurer's Insurance Settlement Amount, and (b) the occurrence of the Effective Date.

Any Person that is, or was alleged to be, a Joint Tortfeasor with any of the Diocese Settling Parties in connection with the Abuse that forms the basis of any Class 4 Claim, including a Post-Confirmation Claim, shall not be liable for any Protected Party's share of causal liability or fault and no Protected Party shall be liable for the share of causal liability or fault of any other Protected Party or Joint Tortfeasor.

For the avoidance of doubt, with respect to all Non-Abuse Claims, except as otherwise provided in the Plan, the Diocese's liability on account of such Claims shall be discharged pursuant to the provisions of 1141(d).

1. ***Distributions to Abuse Claimants***.

a. *Distributions Generally.* Abuse Claimants' recoveries under the Plan shall be limited to their Trust Distributions, if any, under the Allocation Protocol and Trust

Documents. Abuse Claimants shall not be entitled to collect personally, or otherwise, any additional amounts whatsoever from the Diocese, any Additional Debtor, or their respective assets, for any Abuse Claims that are Channeled Claims, even if Abuse Claimants are denied a Trust Distribution. Abuse Claimants shall not be entitled to collect any portion of a Channeled Claim or Barred Claim (including, for the avoidance of doubt, an Abuse Claim) from any Settling Insurer Releasee, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property) under any circumstance.

b. *Distributions to Class 4 Claimants.* A Class 4 Claimant whom the Abuse Claims Reviewer determines to be entitled to a Distribution, will receive a Distribution from the Trust in the amount(s) and at the time(s) provided for in the Allocation Protocol and Trust Documents; *provided, however*, no Class 4 Claimant shall receive a Distribution from the Trust until such Class 4 Claimant has executed and delivered to the Trust an Abuse Claim Release Agreement. Any payment on a Class 4 Claim constitutes a payment for damages on account of a personal physical injury or sickness arising from an occurrence, within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

2. ***Litigation of Class 4 Claims Against Non-Settling Insurers***.

a. Litigation Claims.

At any time prior to the earlier to occur of the first anniversary of the Effective Date or the applicable Abuse Claim Discharge Date, the Trustee, in accordance with the Allocation Protocol and Trust Agreement, may authorize one or more Class 4 Claimants, at such Claimants' expense, to proceed as a Litigation Claimant by commencing (or resuming prosecution of) an action in any court of competent jurisdiction solely for the purpose of determining any liability that the Diocese and/or any Additional Debtor may have with respect to their Litigation Claim, the amount of that liability, and to pursue Insurance Claims against Non-Settling Insurers. Only a Class 4 Claimant whose claim is covered, in whole or in part, by a Non-Settling Insurer may elect to be a Litigation Claimant.

Prior to authorizing a Class 4 Claimant to proceed as a Litigation Claimant, the Trustee shall (i) consult with counsel for the Litigation Claimant, the Diocese and/or any Additional Debtor against whom such Abuse Claimant's Claim is asserted and (ii) require the Abuse Claimant to execute a Litigation Claimant Agreement. The Trustee shall provide a copy of each Litigation Claimant Agreement to the Diocese upon execution thereof, and to any other Additional Debtors upon request.

All DOO Entities' Post-Effective Date Costs incurred in connection with Litigation Claims shall be paid in accordance with the provisions of Section 8.11 of the Plan.

Consistent with the injunctions and discharge provided for in Section 12 of the Plan, any Litigation Award obtained in respect of any Litigation Claim may not be enforced against (a) any of the Protected Parties, (b) any of the non-insurance property or assets of the Diocese, or any Additional Debtor; (c) the Residual Assets and any other

property or assets that are vested in the Diocese pursuant to this Plan, and any property or assets otherwise acquired by the Diocese; or (d) any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property). Any Litigation Award arising from a Litigation Claim shall be paid under the Plan and the Trust Allocation Protocol and shall be fully enforceable solely against, and paid by, any Non-Settling Insurer under the terms of that Non-Settling Insurer's Insurance Policy. Any recovery (including payment of a judgment or an unpaid judgment) from the prosecution of a Litigation Claim is deemed assigned to the Trust to the extent provided in the Plan, including as provided in the Allocation Protocol and Trust Documents.

Any holder of an Abuse Claim that elects treatment as a Litigation Claimant will receive, in full and final satisfaction and discharge of their Abuse Claim: (i) rights, to the extent set forth in the Plan and Allocation Protocol, to Distributions from the Trust; and (ii) the right, prior to the occurrence of the applicable Abuse Claim Discharge Date, and subject to the Trustee granting authorization to pursue a Litigation Claim in accordance with the provisions of this Plan, to liquidate his or her Abuse Claim for its full amount according to proof in order to determine the liability of the Diocese or any Additional Debtor (as applicable) for purposes of the Trust seeking recovery from any Non-Settling Insurer that is or may be liable on the Abuse Claim or any Insurance Claim arising therefrom, pursuant to Section 8.8 of the Plan. The Trust shall be authorized to pursue recovery of an unpaid judgment from any Non-Settling Insurer for the benefit of the Trust and all beneficiaries of the Trust. For the avoidance of doubt, the Settling Insurers shall not have any duties or obligations to any Person in connection with a Litigation Claim (including any duty to defend or indemnify any Person). Further, under no circumstances will a Litigation Claimant or any other Person be able to obtain any recovery whatsoever against (i) any Settling Insurer Releasee, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property), or (ii) any asset of the Diocese or any Additional Debtor (except for collecting proceeds from any Non-Settling Insurer Policy or other amounts for which a Non-Settling Insurer is deemed to be liable), in connection with a Litigation Claim. For the further avoidance of doubt, the Trustee shall have the sole discretion to (a) authorize a Litigation Claimant to pursue their Litigation Claim; (b) make a final decision as to whether a Litigation Claim is pursued; and (c) make final decisions relating to the management and timing relating to Litigation Claims; provided, however, that the Trust Agreement shall direct that in making such determinations, the Trustee shall take into consideration, and shall use reasonable efforts to minimize the cumulative impact of post-Effective Date litigation on, the business operations and legal and personnel resources of the Diocese and Additional Debtors. For the further avoidance of doubt, nothing set forth in Section 4.6.1(e)(ii)(c) of the Plan regarding the Trustee's discretion to make final decisions relating to the management and timing of litigation relating to Litigation Claims shall have any impact on the authority of any court overseeing the Litigation of a Litigation Claim.

b. ***Claim Enhancement.***

A Litigation Claimant authorized by the Trustee to proceed with their Litigation Claim pursuant to Section 4.6 of the Plan shall be entitled to an enhancement to their point score assigned by the Abuse Claims Reviewer pursuant to the Allocation Protocol (the "Claim Enhancement") as set forth below. Any proceeds recovered by the Trust from a Non-Settling Insurer in connection with a Litigation Claimant's efforts will become Trust Assets pursuant to the Plan and, thus, this Section 4.6.2 is implemented to recognize such Litigation Claimant's efforts to secure a recovery from Non-Settling Insurers for the benefit of all Abuse Claimants that are entitled to Distributions pursuant to the Plan and Allocation Protocol. At such time as the Trustee may make a Distribution from available Trust Assets, the Trustee shall determine which Litigation Claimants have obtained a Claim Enhancement by determining the applicable multiplier (set forth below) each such litigation Claimant has obtained and multiplying that figure by the point score assigned by the Abuse Claims Reviewer to such Litigation Claimant's Abuse Claim. The resulting amount shall be the Litigation Claimant's point score for purposes of calculating the Litigation Claimant's pro rata share of any Trust Distribution. The Trustee shall apply the Claim Enhancements as follows:

(i) A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 1.25x if the Trust negotiates a Trust Insurance Settlement or such Litigation Claimant negotiates a settlement agreement of their Litigation Claim after the Litigation Claimant has commenced their lawsuit but prior to such Litigation Claimant being deposed, examined, or interviewed by opposing counsel in such Litigation Claimant's case.

(ii) A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 1.4x if the Trust negotiates a Trust Insurance Settlement or such Litigation Claimant negotiates a settlement agreement of their Litigation Claim after the Litigation Claimant has been deposed, examined, or interviewed by opposing counsel in such Litigation Claimant's case but before the Litigation Claimant defeats summary judgment.

(iii) A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 3.0x if the Trust negotiates a Trust Insurance Settlement or such Litigation Claimant negotiates a settlement agreement of their Litigation Claim after the Litigation Claimant has defeated summary judgment but prior to thirty (30) days before trial of the Litigation Claimant's Litigation Claim is scheduled to start.

(iv) A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 3.5x if the Trust negotiates a Trust Insurance Settlement or such Litigation Claimant negotiates a settlement agreement of their Litigation Claim within thirty (30) days of the start of trial of the Litigation Claimant's Litigation Claim but prior to a jury verdict.

(v) A Litigation Claimant shall be entitled to a Claim Enhancement multiplier of 4.0x if the Litigation Claimant obtains a jury verdict in their favor.

c. ***Withdrawal of Litigation Claim.*** A Litigation Claimant may withdraw his or her election to be a Litigation Claimant at any time by written notice to the Trustee and the Diocese. Upon providing such notice, the Litigation Claimant's determination not to proceed as a Litigation Claimant shall be irrevocable.

d. ***Turnover of Awards to the Trust.*** All recoveries by a Litigation Claimant in respect of such Litigation Claimant's Abuse Claim, whether arising from a verdict, settlement, or otherwise, will be turned over to the Trust.

## E. Dismissal of Pending Litigation

Upon the occurrence of the applicable Abuse Claim Discharge Date, the subject Abuse Claim asserted in any lawsuit against any Protected Party pending in state or federal court shall be dismissed, with prejudice, and without fees and costs being recoverable against any Protected Party and the Diocese or any Protected Party is authorized to file a copy of the Plan and the Confirmation Order, or such other documentation as necessary to effectuate such dismissal.

## F. Claim Withdrawal

An Abuse Claimant may withdraw his or her Abuse Claim at any time on written notice to the Trustee. If withdrawn, the Abuse Claim will be withdrawn with prejudice and may not be reasserted, and such Abuse Claimant shall still be bound by the Diocese Discharge, the Additional Debtor Discharge and all injunctive provisions of the Plan, including the Channeling Injunction to the same extent that such provisions applied to such Abuse Claimant's Abuse Claim prior to its withdrawal.

## G. Medicare Procedures

None of the Protected Parties will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSPA or MMSEA. To that end, the following shall apply (and the Confirmation Order shall so provide):

a. The Trust shall register as a "Responsible Reporting Entity" under the reporting provisions of MMSEA.

b. With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims.

c. The Trust shall confirm whether the holder of any Abuse Claims that occurred after December 5, 1980 is enrolled in Medicare Parts A and B (fee-for-service), Part C (Medicare Advantage), or Medicare Part D (drug coverage). This includes implementing an appropriate process to gather the necessary information for querying the Centers for Medicare and Medicaid on such determination, including, but not limited to, the claimant's first and last name, date of birth, gender, address, and social security number or health insurance claim number.

d. The Trust shall timely submit all reports required under MMSEA because of any Abuse Claims that occurred after December 5, 1980 settled, resolved, paid, or otherwise liquidated by the Trust. The Trust, as a Responsible Reporting Entity, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for tracking, assessing, or receiving reports made under MMSEA to determine whether, and, if so, how, to report to such agency or agencies under MMSEA.

e. Upon written request, the Trust shall provide to a Settling Insurer or the Diocese information sufficient to perform their own queries to CMS, to the extent they wish to do so, including a report setting forth (I) each Abuse Claimant whom the Trustee has determined to be a Medicare Beneficiary; (II) the amount of (a) all Conditional Payments to each such Medicare Beneficiary, (b) the amount of the reserve maintained by the Trust for each Medicare Claim based upon such Conditional Payments.

f. The Trust shall submit reimbursement to the Centers for Medicare and Medicaid for Medicare Claims.

g. With respect to Abuse Claims that occurred after December 5, 1980, before remitting funds to any Person on account of an Abuse Claim, the Trustee shall obtain (i) a certification that said Person (or such Person's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under the MSPA's provisions, or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim, and (ii) an agreement that such Person indemnify the Trust for any such obligations. The failure by one or more holders of Abuse Claims to follow these provisions shall not delay or impair the payment by the Trust to any other holder of any Abuse Claim following these provisions.

h. With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any potential reimbursements to the Centers for Medicare and Medicaid in full and consider the potential future interests of the Centers for Medicare and Medicaid.

i. Nothing in the Plan shall imply, or constitute an admission, that the payments by the Diocese, the Protected Parties, or any Settling Insurer constitute "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

# ARTICLE 6

## SETTLING INSURERS

### A. Insurance Settlement Agreements

Each Insurance Settlement Agreement is effective and binding upon all Persons who have notice (including constructive notice, to the extent applicable), and any of the foregoing Persons' successors and assigns (including, for the avoidance of doubt, the Trust and the Trustee), upon the entry of the Sale Order approving such Insurance Settlement Agreement and satisfaction of

all conditions precedent, including, the Sale Order and the Confirmation Order becoming Final Orders. Payment to the Trust of a Settling Insurer's Insurance Settlement Amount, and the releases by the Diocese and Additional Debtors shall occur and/or be effective according to the terms of the applicable Insurance Settlement Agreement. The Insurance Settlement Agreements shall survive the confirmation, effectiveness, and consummation of the Plan. The rights of the parties under any Insurance Settlement Agreement shall be determined exclusively under the applicable Insurance Settlement Agreement and those provisions of the Sale Order approving such Insurance Settlement Agreement, the Plan, and the Confirmation Order. In the event of a conflict between (a) any Insurance Settlement Agreement, on the one hand, and (b) the Plan, on the other, the terms of the applicable Insurance Settlement Agreement shall control; and/or in the event of a conflict between (y) the Sale Order(s), on the one hand, and (z) the Confirmation Order, on the other, the terms of the Sale Order(s) shall control. For the avoidance of doubt, but without limiting the generality of the foregoing, nothing in the Plan, any Plan Documents, or the Confirmation Order shall limit the parties' respective rights and obligations under the Insurance Settlement Agreements.

**B. Sale of Settling Insurer Policies Free and Clear**

Each Settling Insurer shall purchase its Settling Insurer Policy(ies) and Claims related thereto free and clear of all Claims, Interests, and other rights of any nature, whether at law or in equity, pursuant to sections 105 and 363 of the Bankruptcy Code and the terms of such Settling Insurer's Insurance Settlement Agreement.

**C. Resolution of Claims Involving Settling Insurers**

The Confirmation Order shall provide that the Diocese or the Trust, as the case may be, shall dismiss with prejudice its Claims in the Insurance Coverage Adversary Proceeding against each Settling Insurer, and each Settling Insurer shall dismiss with prejudice its respective Claims in the Insurance Coverage Adversary Proceeding against the Diocese and Additional Debtors (or, if applicable, the Trust), in accordance with the terms and timeline(s) set forth in the respective Insurance Settlement Agreement. Each side will bear its own fees and costs.

**D. The Settling Insurer's Payments**

Each Settling Insurer will pay to the Trust the Insurance Settlement Amount set forth in such Settling Insurer's Insurance Settlement Agreement, on the terms and within the time detailed therein.

**E. Further Assurances; Non-Material Modifications**

From and after the Effective Date, the Diocese, the Additional Debtors, and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Insurance Settlement Agreements without further order of the Bankruptcy Court to consummate the sale of the Purchased Property. The Diocese, the Additional Debtors, and a Settling Insurer may make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of such Settling Insurer's Insurance Settlement Agreement, subject to the requirements thereof, but only with the consent

of the Committee, or the Trust, as applicable. The Diocese, the Additional Debtors, and the Settling Insurers, with the consent of the Committee, may also make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of the Plan, subject to the requirements of the respective Insurance Settlement Agreements. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under Section 15.1 of the Plan, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such Class. An order of the Bankruptcy Court approving any amendment or modification made pursuant to Section 15.1 of the Plan shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

**F. Waiver/Consent**

In consideration of the releases and Channeling Injunction and other covenants herein, subject to the occurrence of the Effective Date and the satisfaction of the other conditions precedent to the effectiveness of the Insurance Settlement Agreements, each of the Protected Parties: (a) ratifies the releases set forth in the Insurance Settlement Agreements and (b) ratifies and further consents to the sale of the Purchased Property in accordance with the Insurance Settlement Agreements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan.

**G. Timing**

The injunctions, releases, and discharges to which a Settling Insurer is entitled pursuant to its Insurance Settlement Agreement, the Plan, the Confirmation Order, the Sale Order, and the Bankruptcy Code shall become effective pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, which shall not occur prior to the Effective Date.

## ARTICLE 7

## MATTERS RELATING TO NON-SETTLING INSURERS

**A. Preservation of Rights and Obligations**

If an Abuse Claim is liquidated through the Allocation Protocol, or in any state or federal court as may be permitted by the Plan, the Allocation Protocol, or the Trust Agreement, then the Protected Parties, the Trust, and each Non-Settling Insurer shall retain the right to assert any and all rights and defenses of the Protected Parties with respect to such Abuse Claim and all coverage defenses. The rights, duties, and obligations of each Non-Settling Insurer under the Non-Settling Insurer Policies with respect to Abuse Claims are not affected in any way by the Diocese Discharge or the Additional Debtor Discharge.

The rights and obligations (if any) of the Protected Parties and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the Allocation Protocol and shall be treated as if the determination by the Abuse Claims Reviewer had never occurred. Each Non-Settling Insurer shall be entitled to all rights and defenses as are

provided under the terms of its Non-Settling Insurer Policies, as if the determination by the Abuse Claims Reviewer had never occurred.

Nothing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim. All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law.

**B. Estimations/Assessments of Abuse Claims Are Not Binding**

Estimations of Abuse Claims for purposes of determination, qualification, assignment of points pursuant to the Allocation Protocol, and payment of Trust Distributions:

a. shall not (i) constitute an admission of liability by any Person with respect to such Abuse Claims; (ii) have any *res judicata* or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Abuse Claims; or (iv) otherwise prejudice any rights of the Trust, the Diocese, the Additional Debtors, the Settling Insurers, the Non-Settling Insurers, or the Class 4 Claimants in any other contexts or forums;

b. shall be without prejudice to any and all rights of the Trust, the Non-Settling Insurers, and the Class 4 Claimants in any other contexts and forums; and

c. shall not be deemed to be a determination of liability of the Diocese or any Additional Debtor or a determination of whether, or the extent to which, such Abuse Claim is covered under any Non-Settling Insurer Policy.

## C. Post-Effective Date Preconditions to Coverage.

Notwithstanding the Insurance Claims Assignment, the Diocese Settling Parties shall use reasonable efforts to satisfy any Post-Effective Date Preconditions to Coverage, for purposes of preserving and maintaining as much insurance coverage as possible for the sole and exclusive benefit of the Trust, subject to the Trust's payment of any DOO Entities' Post-Effective Date Costs in accordance with Section 8.11 of the Plan.

If the Trust believes any Diocese Settling Party has failed to satisfy any Post-Effective Date Preconditions to Coverage, the Trust shall give the Diocese or the other Diocese Settling Party (as applicable) written notice identifying with specificity the Post-Effective Date Preconditions to Coverage at issue and the action the Trust believes must be taken in order to satisfy the same. Subject to further order of the Court, the Diocese and the Diocese Settling Party, as applicable, shall have at least forty-five (45) days following receipt of any such notice from the Trust to either (i) undertake the actions requested by the Trust or (ii) seek a determination from the Court (which shall not be binding upon any Non-Settling Insurer) as to whether the action requested by the Trust is required to satisfy any Post-Effective Date Preconditions to Coverage; provided, however, that (a) any Non-Settling Insurer whose Non-Settling Insurer Policy may be implicated by such a request shall be provided notice of such request and shall be afforded the opportunity to participate in the adjudication of such dispute; and (b) that any such determination made by the Court shall not be binding upon any Non-Settling Insurer or the Trust in any coverage litigation related to the Non-Settling Insurer Policy at issue. The Court will retain jurisdiction to adjudicate such dispute or claim between the Trust, on one hand, and the Diocese and/or the other Diocese Settling Parties, on the other. Except in the case of willful misconduct by any Diocese Settling Party, the Trust's sole remedy for any failure to satisfy any Post-Effective Date Preconditions to Coverage shall be specific performance as ordered by the Court.

Nothing in this Plan shall impair, and each Non-Settling Insurer expressly retains, all contractual defenses to coverage, if any, available under any Non-Settling Insurer Policy arising from or relating to any actual or alleged failure by any Diocese Settling Party to satisfy their respective Post-Effective Date Preconditions to Coverage, if any.

## D. Trust Powers With Respect to Abuse Claims and Non-Settling Insurers

Solely as set forth in the Plan, Allocation Protocol, or the Trust Agreement, any Abuse Claimant or the Trust with consent of an individual Abuse Claimant, may enter into a settlement of an individual Abuse Claimant allowed by applicable non-bankruptcy law, and may enter into an arrangement with the Abuse Claimant's counsel, provided such counsel will receive reasonable compensation from any recovery from a Non-Settling Insurer. The foregoing sentence shall not apply to the Trust's negotiation and entry into a Trust Insurance Settlement.

The Trustee may use the Trust Assets to prosecute litigation against the Non-Settling Insurers.

If the Trust successfully resolves a Covered Claim or otherwise receives a recovery of insurance proceeds relating to any Abuse Claim from a Non-Settling Insurer, such proceeds shall become Trust Assets available to pay, and shall increase the amount available to pay, Class 4 Claims, pursuant to the Allocation Protocol.

Upon the due execution and delivery of an Insurance Settlement Agreement, the entry of an order approving an Insurance Settlement Agreement, and the payment to the Trust of the settlement amount due thereunder, a Non-Settling Insurer shall become a Settling Insurer protected by the Channeling Injunction and the Settling Insurer Injunction and become entitled to benefit from all releases executed by Claimants and the other rights and protections of a Settling Insurer under the Plan, the Trust Documents, and the orders approving Insurance Settlement Agreements.

### E. Insurance Coverage Adversary Proceeding.

As of the Effective Date, the Trust shall be substituted as the named plaintiff in the Insurance Coverage Adversary Proceeding and have all rights of the Diocese and the Additional Debtors to pursue recoveries against any Non-Settling Insurers. For the avoidance of doubt, the Trust shall have no right to pursue recoveries in the Insurance Coverage Adversary Proceeding against any Settling Insurer Releasee or any Settling Insurer's Related Persons.

## ARTICLE 8

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Plan Implementation

All Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Secured Claims, General Unsecured Claims, and Pass-Through Claims will be paid by the Diocese. All Distributions to be made under the Plan on account of Abuse Claims will be paid solely from the Trust to be established for the purpose of receiving, liquidating, and distributing Trust Assets in accordance with the Plan, the Allocation Protocol, and the Trust Agreement. All Class 6 Ride Through Claims against the Additional Debtors will be paid in the ordinary course of business. The Allocation Protocol is attached to the Plan Supplement as **Exhibit 1** and is incorporated into the Trust Agreement. The proposed Trust Agreement is attached to the Plan Supplement as **Exhibit 3**.

### B. Corporate Action

All matters provided under the Plan involving the corporate structure of the Diocese or the Additional Debtors or corporate action to be taken by or required of the Diocese or any Additional Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further approval by the Bankruptcy Court or any other governmental entity. For avoidance of doubt, to the extent any corporate action or other transaction contemplated under the Plan would otherwise require approval under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the entry of the Confirmation Order shall constitute such approval.

## C. Payments Effective Upon Tender

Whenever the Plan requires payment to be made to a Creditor, such payment will be deemed made and effective upon tender thereof by the Trustee, the Diocese or any Additional Debtors to the Creditor to whom payment is due. If any Creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Diocese or any Additional Debtor for the benefit of that Creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the Creditor receives the funds previously tendered and refused, the Creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the Creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the Creditor if the Trust, the Diocese or any Additional Debtors failed to pay the tendered payment.

## D. Agreements, Instruments, and Documents

All organizational agreements, charter documents, instruments, and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan, shall be executed on or before the Effective Date or as soon thereafter as is practicable.

## E. Continuation of Insurance Policies

All Insurance Policies that are ***not*** Settling Insurer Policies shall, as applicable, either (i) be deemed to be assumed by the Diocese or the Additional Debtors, as applicable, pursuant to sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Insurance Policy is or was an executory contract of the Diocese or any Additional Debtor, or (ii) continued in accordance with its terms pursuant to section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Diocese or any Additional Debtor, such that each of the parties' contractual, legal, and equitable rights under each such Insurance Policy shall remain unaltered, except as amended by any applicable Insurance Settlement Agreement with a Settling Insurer. To the extent that any or all such Insurance Policies that are not Settling Insurer Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to sections 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Diocese, the Additional Debtors, their Estates, and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Diocese existing as of the Effective Date with respect to any Insurance Policy. Subject to the terms of the Insurance Settlement Agreements, the Diocese and the Additional Debtors reserve the right to seek rejection of any Insurance Policy or other available relief prior to the Effective Date.

**F. Bar Date for Professional Fee Claims**

Each Professional retained or requesting compensation in the Chapter 11 Cases, pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code, must File with the Bankruptcy Court a final application requesting the allowance of a Professional Fee Claim no later than sixty (60) days after the Effective Date. All applications for the allowance of Professional Fee Claims that are not timely Filed shall be forever barred. Objections to such applications may be Filed in accordance with the Bankruptcy Rules. The Bankruptcy Court shall determine all such Professional Fee Claims.

**G. Bar Date for Other Administrative Claims**

Except as provided for herein or in an order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims must File and serve on the Diocese or the Additional Debtors, as applicable, requests for the payment of such Administrative Claims not previously Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Claims Bar Date, or such Administrative Claims shall be automatically considered Disallowed Claims, forever barred from assertion, and unenforceable against the Diocese, the Additional Debtors, their Estates, or their property without the need for any objection by the Diocese or the Additional Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Administrative Claims shall be deemed fully satisfied, released, and discharged.

**H. Exit Financing**

The Diocese may, at its discretion, obtain financing to assist the Diocese in making the Diocese portion of the DOO Entities' Cash Payment, which includes any loan or other financing arrangement entered into by the Diocese (i) prior to the Effective Date to fund any portion of the DOO Entities' Cash Payment through the DOO Trust Note (if any) or (ii) at any time after the Effective Date, without the need to seek Court approval, to fund any portion of the Diocese's payment obligations under the DOO Trust Note (if any). Any security interest or Lien in collateral granted to a lender in connection with such financing shall, on and after the Effective Date, be enforceable against any interest the Diocese may have in such collateral, to the same extent it may have been enforceable against the Diocese prior to the Effective Date.

## ARTICLE 9

## THE TRUST

**A. Establishment of the Trust**

On the Confirmation Date, or as soon as practicable thereafter, the Trust shall be established in accordance with the Trust Documents for the exclusive benefit of the holders of Abuse Claims. The Trust will assume all liability for and rights concerning all Channeled Claims, including the rights to settle the Channeled Claims. The Trust will control the allocation and Distribution of the Abuse Claims Settlement Fund to Abuse Claimants pursuant to the terms of the Allocation Protocol, the Trust Agreement, the Plan, and the Confirmation Order. The

Trustee shall establish and maintain a reserve for Trust Expenses, which shall be paid pursuant to the terms of the Trust Agreement.

**B. Funding of the Trust**

1. ***DOO Entities' Cash Payment***.

On or before the Effective Date, the DOO Entities' Cash Payment, including the Contributing Non-Debtor Entity Contributions, shall be paid to the Trust on behalf of the Diocese and Additional Debtors to establish the Trust Reserve, with any balance to be included in the Abuse Claims Settlement Fund. The Abuse Claims Settlement Fund may be supplemented from time to time from: (i) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement; (ii) any Insurance Claim Proceeds; (iii) proceeds of Litigation Awards; (iv) proceeds of Outbound Contribution Claims; and (v) any other proceeds which the Trust may obtain pursuant to the terms of the Plan.

2. ***Contributing Non-Debtor Entity Contributions.***

On or before the Effective Date, and in consideration for the releases set forth herein, including the release of the Estate Causes of Action, the Contributing Non-Debtor Entities shall cause the Contributing Non-Debtor Entity Contributions to be paid to the Trustee, as part of the DOO Entities' Cash Payment, for inclusion in the Abuse Claims Settlement Fund.

3. ***Insurance Claims Assignment***.

Insurance Claims against the Non-Settling Insurers shall be transferred to the Trust as follows:

a. On the Effective Date, and without further action by any party, the Diocese and the Class 4 Claimants will be deemed to have assigned to the Trust their respective rights, if any, to all Insurance Claims against the Non-Settling Insurers and recoveries on account of such Insurance Claims. Additionally, on the Effective Date, and without further action by any party, each of the Additional Debtors will assign to the Trust the Additional Debtors' rights, if any, to all Insurance Claims against the Non-Settling Insurers and recoveries on account of such Insurance Claims. The foregoing transfer shall be effective to the maximum extent permissible under applicable law and shall not be construed: (i) as an assignment of the Non-Settling Insurer Policies; or (ii) to entitle any Person to Insurance Coverage other than those Persons entitled to coverage under the terms of the Non-Settling Insurer Policies. For the avoidance of doubt, the Trust shall be solely responsible for satisfying, to the extent required under applicable law, any self-insured retention obligations on account of any Class 4 Claim or arising out of any Non-Settling Insurer Policy. To the extent that the Trust pays any self-insured retention in connection with any Class 4 Claim, such amount shall be paid by the Trust from the DOO Entities' Post-Effective Date Costs Reserve, and the Trust shall contemporaneously contribute funds to the DOO Entities' Post-Effective Date Costs Reserve in an amount equal to such self-insured retention paid. To the extent the Diocese or any of the Additional Debtors pay any self-insured retention, the Trust shall reimburse the Diocese or Additional Debtor from the DOO Entities' Post-Effective Date Costs Reserve for any amounts actually paid by the Diocese or the Additional Debtor prior to making any Trust Distribution for the Abuse Claim for which the

Diocese or Additional Debtor paid the self-insured retention, and the Trust shall contemporaneously contribute funds to the DOO Entities' Post-Effective Date Costs Reserve in an amount equal to such self-insured retention paid. Nothing herein shall obligate any Non-Settling Insurers to advance any self-insured retention, unless otherwise required by applicable law. Likewise, nothing herein shall obligate the Trust, the Diocese or any Additional Debtor to pay any self-insured retention that is not otherwise required by applicable law.

b. If the Bankruptcy Court determines that the Insurance Claims Assignment is inconsistent with the Bankruptcy Code with respect to the Diocese, the Class 4 Claimants and/or one or more Additional Debtors, the Diocese, the Class 4 Claimants, and each such Additional Debtor (as applicable) (i) will retain their respective Insurance Claims against the Non-Settling Insurers and (ii) to the extent reasonably requested by the Trust, the Diocese or an Additional Debtor will assert such retained Insurance Claims against the Non-Settling Insurer(s). The Diocese or Additional Debtor will retain counsel acceptable to the Trustee to prosecute any retained Insurance Claims against the Non-Settling Insurers (subject to any defenses the Non-Settling Insurers may have under applicable state law) and the Trust shall pay all attorney's fees, expert fees, and other costs and expenses incurred by the Diocese or the Additional Debtor in prosecuting such retained Insurance Claims against the Non-Settling Insurers. For avoidance of doubt, any efforts by the Diocese or an Additional Debtor to prosecute retained Insurance Claims against the Non-Settling Insurers shall be an accommodation to the Trust and any costs and expenses incurred in connection therewith shall be paid by the Trust in full and shall not be subject to the DOO Entities' Post-Effective Date Costs Procedures described below. The Trust shall have a common interest with the Diocese in prosecuting Insurance Claims against the Non-Settling Insurers and may appear and be heard in connection with the prosecution of such claims, at its own expense, unconditionally, subject only to any limitations of law and equity. The Diocese and the Additional Debtors shall not settle any retained Insurance Claims against Non-Settling Insurers without the prior written consent of the Trustee, which consent shall not be unreasonably delayed or denied. All recoveries on account of retained Insurance Claims against Non-Settling Insurers will be paid to the Trust, net of any unreimbursed attorney's fees, expert fees and other costs and expenses associated with prosecuting such retained Insurance Claims.

c. For the avoidance of doubt, except as specifically set forth in Sections 8.2.3 and 6.3 of the Plan with respect to satisfying Post-Effective Date Preconditions to Coverage, the Diocese and the Additional Debtors make no representations or warranties, and shall have no duty or obligations whatsoever, to the Trust with respect to the Insurance Claims against Non-Settling Insurers. The Trust shall assume all risks with respect to the litigation, liquidation, and collection of the Insurance Claims against Non-Settling Insurers.

d. For the avoidance of doubt, and notwithstanding anything to the contrary herein, Related Insurance Claims shall not be transferred to the Trust or retained by the Diocese and/or any Additional Debtors, and instead shall be sold to the Settling Insurers and/or settled and released, in each case as set forth in the Insurance Settlement Agreements.

4. ***Outbound Contribution Claims***.

Outbound Contribution Claims shall be automatically, and without further act or deed, assigned to the Trust on the Effective Date.

5. ***Cabrini Foundation.***

a. If, prior to the termination of the Trust, the Cabrini Foundation enters into a settlement agreement or other arrangement whereby the Diocese and/or Additional Debtors receive any Cabrini Qualifying Proceeds, the Diocese and/or Additional Debtors shall transfer such Cabrini Qualifying Proceeds to the Trust as set forth in such settlement agreement or arrangement.

b. If prior to the termination of the Trust, the Diocese and/or Additional Debtors (as applicable) receive any Cabrini Qualifying Proceeds that are not transferred subject to a settlement agreement or other arrangement as contemplated by subsection (a) above, the recipient thereof shall hold such Cabrini Qualifying Proceeds in a separate segregated account (which may be an investment account) pending either (i) agreement among the Trustee, the Diocese, and, if applicable, any recipient Additional Debtors, as to the ultimate disposition of such Cabrini Qualifying Proceeds; or (ii) entry of an order by the Court directing such disposition, provided, however, that no party shall apply to the Court for judicial intervention until the parties have attempted to negotiate in good faith for at least six months, and provided further, that in the event of judicial intervention is needed with respect to any issue related to the Cabrini Foundation, its assets, proceeds thereof, or the disposition thereof, all parties shall retain all rights and arguments (if any) they may have related to the Cabrini Foundation, its assets, proceeds thereof, or the disposition thereof.

c. Any Cabrini Qualifying Proceeds that are transferred to the Trust pursuant to Section 8.2.5 of the Plan shall be included in the Abuse Claims Settlement Fund.

d. For avoidance of doubt, nothing in the Plan shall limit or direct in any way the manner in which the Diocese or any Additional Debtors may receive and utilize any Cabrini Exempt Transfer.

6. ***DOO Trust Note Documents***. In the event the DOO Trust Note is needed to fund the DOO Entities' Cash Payment, on or before the Effective Date, the Diocese shall execute and deliver the DOO Trust Note Documents to the Trust. For the avoidance of doubt, if the DOO Entities' Cash Payment is fully funded, none of the DOO Trust Note Documents shall be executed or delivered to the Trust.

## C. Vesting of Trust Assets

On the Effective Date, all Trust Assets shall vest in the Trust, and the Protected Parties shall be deemed for all purposes to have transferred all of their respective right, title, and interest in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Protected Parties, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of the Trust Assets in accordance with this paragraph, and subject to the Insurance Settlement Agreements, the Protected Parties shall have no further interest in or with respect to the Trust Assets. Notwithstanding anything to the contrary contained in the Plan, the Trustee is required to maintain the DOO Entities' Post-Effective Date Costs Reserve and the DOO Entities' Post-Effective Date Costs will be paid by the Trustee from the DOO Entities' Post-Effective Date Costs Reserve as provided in Section 8.11 of the Plan.

**D. Non-Monetary Commitments**

In order to further promote healing and reconciliation, and in order to continue efforts to prevent Abuse from occurring in the future, the Diocese agrees that, beginning within thirty (30) days after the Effective Date (unless a different date is provided in the Confirmation Order), subject to agreement between the Committee and the Diocese on the terms of the non-monetary commitments, it will undertake and observe certain non-monetary commitments as agreed between the Committee and the Diocese and set forth as **Exhibit 4** to the Plan Supplement.

**E. Appointment of the Trustee**

The initial Trustee will be identified no fewer than ten (10) Business Days before the Confirmation Hearing. The Trustee shall commence serving as the Trustee on the Effective Date; *provided, however*, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Bankruptcy Court, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

**F. Rights and Responsibilities of the Trustee**

The Trustee shall be deemed to be a fiduciary of the Trust under the terms of the Trust Agreement and shall have all rights, powers, authority, responsibilities, and benefits under New York law specified in the Plan and as reflected in the Trust Agreement, including commencing, prosecuting, or settling causes of action, enforcing contracts, and asserting Claims, defenses, offsets and privileges. If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to the Trustee′ s authority to act, the provisions of the Trust Agreement shall control, but shall not take precedence over any contrary provision in any Insurance Settlement Agreement(s) or the Sale Order(s) approving the Insurance Settlement Agreement(s) (in which case, such Sale Order(s) and the applicable Insurance Settlement Agreement(s) shall control and govern in that order). Among other things, the Trustee: (1) shall liquidate and convert to Cash the Trust Assets, make timely Distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other Agents on behalf of the Trust, and at the Trust′ s sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

The Trust shall make Trust Distributions to the Abuse Claimants. The Trust shall pursue Insurance Claims against any Non-Settling Insurers. The Trust shall fund the DOO Entities' Post-Effective Date Costs pursuant to the DOO Entities' Post-Effective Date Costs Procedures and may seek reimbursement from any Non-Settling Insurer. The Trust shall neither pursue Related Insurance Claims against Settling Insurer Releasees nor any Settling Insurer's Related Persons or take any other action contrary to, or in violation of, the Insurance Settlement Agreements.

The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no cause of action shall be commenced in any forum, other than the Bankruptcy Court, against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee, *provided, however*, that this limitation shall not apply with respect to any Claim or cause of action brought by a Settling Insurer for any actual or alleged breach by the Trustee of such Settling Insurer's Insurance Settlement Agreement or violation by the Trustee of any provision of the Sale Order(s).

**G. Trust Advisory Committee**

If any Insurers remain Non-Settling Insurers as of the Effective Date, the Plan and Trust Agreement provide for the creation of a Trust Advisory Committee, which shall initially consist of those members of the Committee who agree to serve on the Trust Advisory Committee. The members of the Trust Advisory Committee shall have only such limited rights, duties and powers as set forth in the Plan and Trust Agreement. The process for appointing replacement members of the Trust Advisory Committee shall be provided in the Trust Agreement. Upon termination of the Trust, or as otherwise provided in the Trust Agreement, the Trust Advisory Committee shall be deemed dissolved and discharged of and from all further authority, duties, responsibilities, and obligations with respect to or in connection with the Trust and the Chapter 11 Cases.

Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Trust Advisory Committee, the members of the Trust Advisory Committee shall serve without compensation. Reasonable expenses incurred by members of the Trust Advisory Committee may be solely paid by the Trust without need for approval of the Bankruptcy Court. For the avoidance of doubt, none of the Protected Parties shall be responsible for any fees, costs, or expenses associated with the Trust Advisory Committee.

**H. Trust Pursuit of Insurance Claims Against Non-Settling Insurers.**

1. ***Trust's Rights to Pursue Insurance Claims Against Non-Settling Insurers*.**

Effective as of the Effective Date, and in accordance with Section 8.2.3 of the Plan, the Insurance Claims against Non-Settling Insurers are assigned and transferred to the Trust.

a. The Trust shall be entitled to (i) all recoveries on account of Insurance Claims against Non-Settling Insurers that are assigned to the Trust as set forth in the Plan, the Allocation Protocol, and the Confirmation Order, and (ii) to assert on behalf of any Class 4 Claimant or combination of Class 4 Claimants, to the extent permitted by the Non-Settling Insurer Policies and applicable law, any and all Insurance Claims that currently exist or may arise in the future.

b. The Trust shall also have the exclusive right to pursue Insurance Claims against Non-Settling Insurers related to the Diocese's and/or the Additional Debtors' liability for Channeled Claims or the Non-Settling Insurers' obligations in respect of such Channeled

Claims. The foregoing transfer shall not be construed to entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers. For the avoidance of doubt, the Trust cannot present Non-Settling Insurers with a demand for Coverage or indemnification based upon Distributions made by the Trust to Abuse Claimants.

c. The Trust may act in its own name, or in the name of any Class 4 Claimant, the Diocese and/or an Additional Debtor to enforce any right, title, or interest of any such party in the Insurance Claims against Non-Settling Insurers assigned to the Trust.

d. No limitations on recovery from Non-Settling Insurers shall be imposed by virtue of the fact the Diocese or Additional Debtor is in bankruptcy or by any Distribution from the Trust to an Abuse Claimant.

e. The Insurance Claims Assignment shall not affect any Non-Settling Insurer's duty to defend, but to the extent that the failure to defend or a separate agreement between the Diocese and/or an Additional Debtor and any Non-Settling Insurer gives rise to a monetary obligation to reimburse defense costs in lieu of a duty to defend, the Trust shall be entitled to the benefit of such monetary obligation or policy proceeds to the extent of any DOO Entities' Post-Effective Date Costs actually paid by the Trust.

f. Any recovery by the Trust on Insurance Claims against Non-Settling Insurers relating to the Diocese's and/or Additional Debtors' liability for Abuse Claims shall become a Trust Asset and shall be distributed as provided in the Plan, the Trust Agreement, and the Allocation Protocol.

g. The Trust's pursuit of the Diocese Settling Parties shall be limited to enforcing specific performance of the Insurance Claims Assignment and any other rights or interests expressly granted to the Trust under the Plan. Neither the Trust nor the Trustee may pursue any Settling Insurer for any Claim released, waived, sold, or relinquished under such Settling Insurer's Insurance Settlement Agreement (including, for the avoidance of doubt, Related Insurance Claims); *provided*, the Trust may enforce its rights (if any) and/or each Settling Insurer's obligations under the applicable Insurance Settlement Agreement(s).

h. The Trust shall have full access to coverage under the Non-Settling Insurer Policies as permitted by applicable non-bankruptcy law, and the Non-Settling Insurers shall retain any and all rights and defenses to coverage under the Non-Settling Insurer Policies and applicable non-bankruptcy law.

i. The Insurance Claims Assignment does not affect any right of the Diocese, any Additional Debtor, or any Non-Settling Insurer to contest any liability or the amount of damages in respect of any Abuse Claims.

2. ***No Impact on Non-Settling Insurers***.

Nothing in the Plan, the Allocation Protocol, the Trust Documents, the Plan Documents, any Confirmation Order (including any provision in the Confirmation Order), or any judgment, order, finding of fact, conclusion of law, determination or statement (written or verbal, on or off the record) made by the Bankruptcy Court, the District Court, or entered by any other court

exercising jurisdiction over the Bankruptcy Case, including in any judgment, order, writ or opinion entered on appeal from any of the foregoing, shall in any Action brought by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding:

a. constitute an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law establishing:

(i) the liquidated liability (in the aggregate or otherwise) of (a) the Diocese, the Additional Debtors, or the Trust, with respect to any Abuse Claims; or (b) any Non-Settling Insurer with respect to any Insurance Claim;

(ii) the liability or obligation of the Diocese, Additional Debtors, or Trust with respect to any Abuse Claim;

(iii) that the aggregate value of the Abuse Claims is equal to the amount to be paid by the Diocese and/or the Additional Debtors into the Trust;

(iv) that it is reasonable, in good faith, or consistent with the terms and conditions of any Non-Settling Insurer Policy for any of the Diocese, the Additional Debtors, or the Trust, to settle, allow, assign any value to, liquidate, and/or pay (or present to any Non-Settling Insurer for payment) any Abuse Claim on any terms or conditions contemplated by the Plan, the Allocation Protocol (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder), any other Plan Documents, or any other document or agreement;

(v) that the Plan, any other Plan Document, or any other document or agreement (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder) are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Abuse Claims against the Diocese and the Additional Debtors before the applicable Petition Date or under the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law;

(vi) that the conduct of the Diocese, the Additional Debtors, the Committee, or the Abuse Claimants, in connection with the negotiation, development, settlement and/or implementation of the Plan (including the aggregate value or amount of the DOO Entities' Cash Payments), the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law;

(vii) that any Non-Settling Insurer was invited to participate in or participated in, consulted on, negotiated, and/or consented to the Allocation Protocol, the Trust Documents, and other Plan Documents; and

b. have any res judicata, collateral estoppel or other preclusive effect with respect to any matter set forth in Section 8.8.2(a) of the Plan, or otherwise prejudice, diminish, impair, or affect (under principles of waiver, estoppel, or otherwise) any defense, Claim or right any Non-Settling Insurer may have under any Non-Settling Insurer Policy or applicable non-bankruptcy law with respect thereto. Without limiting the foregoing, but subject to Section

8.8.4 of the Plan, it is expressly agreed by all Neutrality Parties that the Neutrality Parties are not litigating any issue set forth in Section 8.8.2(a) of the Plan or any other Non-Settling Insurer coverage defenses, rights, obligations, or other coverage issue of any kind in these Chapter 11 Cases;

c. constitute a decision on any matter at issue or which may be raised as an issue in any Action by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding. Thus, any judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court in these Chapter 11 Cases, or entered by any other court exercising jurisdiction over the bankruptcy case, including any Confirmation Order or the Allocation Protocol and/or other Plan Documents and any finding, conclusion or determination entered in connection therewith, is not intended – and shall not be construed – to constitute a finding, conclusion or determination regarding any matter set forth in Section 8.8.2(a) of the Plan or any other issue for any insurance coverage purpose whatsoever, and the Neutrality Parties shall not contend otherwise in any Action by or against a Non-Settling Insurer;

d. subject to Sections 8.8.4 of the Plan, impair any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims, or any policyholder's legal, equitable or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims. The Neutrality Parties shall retain, and be permitted to assert, in any Action against any Non-Settling Insurer, all Claims and/or defenses, including any coverage defenses related to the Abuse Claims, the Insurance Claims and/or the Non-Settling Insurer Policies, notwithstanding any provision of the Plan, Allocation Protocol, the Trust Documents, the other Plan Documents, the Confirmation Order, any findings of fact and/or conclusions of law with respect to the confirmation of the Plan, or any Final Order or opinion entered on appeal from the Confirmation Order; or

e. subject to Section 8.8.4 of the Plan, impair any Non-Settling Insurer's Insurer Contribution Claims, which may be asserted as a defense or counterclaim against the Diocese Settling Parties or the Trust (as applicable) in any Action by or against any Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding. To the extent the Insurer Contribution Claims of a Non-Settling Insurer are determined to be valid, the liability (if any) of such Non-Settling Insurer to the Trust shall be reduced by the amount of such Insurer Contribution Claims. For avoidance of doubt, and notwithstanding anything to the contrary in Section 8.8.2 of the Plan, all Insurer Contribution Claims shall be channeled to the Trust in accordance with Section 12.3 of the Plan and no Insurer Contribution Claim shall be the basis for any affirmative recovery against any Protected Party.

3. ***Non-Settling Insurers' Remedies.***

Notwithstanding anything to the contrary in Section 8.8.2 of the Plan, the Non-Settling Insurers' remedies are limited to those available under applicable law and nothing in these Chapter 11 Cases shall enhance any right(s) a Non-Settling Insurer may have under applicable law.

4. ***Preservation of Plan Provisions.***

For the avoidance of doubt, the provisions of Section 8.8.2 of the Plan are intended solely to ensure that the Plan leaves intact and does not alter or affect any rights or interests of the Non-Settling Insurers with respect to the Non-Settling Insurer Policies. Nothing set forth in Section 8.8.2 of the Plan is intended to, nor shall it, impair the effectiveness of any provision of the Plan, including, without limitation, the Diocese Discharge, the Additional Debtor Discharge, the Channeling Injunction, the Settling Insurer Injunction, or any other release or injunctive provisions set forth in the Plan, as such Plan provisions relate to any rights, Claims, actions, defenses, interests, transactions or other dealings between or among (i) one or more Neutrality Parties who are not Non-Settling Insurers or (ii) any Neutrality Party who is not a Non-Settling Insurer and any Person who is not a Neutrality Party.

## I. Investment Powers; Permitted Cash Expenditures

All funds held by the Trust shall be held in Cash or invested in short-term highly-liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Trust Agreement. The Trustee may expend such Cash in a manner consistent with the terms of the Trust Agreement and the Allocation Protocol.

## J. Tax Matters

The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Diocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference. The Trust shall not be deemed to be the same legal entity as the Diocese or the Additional Debtors, but only the assignee of certain assets of the Diocese and the Additional Debtors and a representative of the Estates for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall File such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 *et seq.*, as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 *et seq.*, and New York law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any. The Trustee, may in its discretion, establish a disputed claims reserve for the Trust, which shall be administered in accordance with applicable law.

**K. <u>DOO Entities' Post-Effective Date Costs Procedures.</u>**

1. *DOO Entities' Post-Effective Date Costs Reserve.* The Trust shall establish the DOO Entities' Post-Effective Date Costs Reserve, which shall be funded in an initial amount of not less than $2,000,000 from the DOO Entities' Cash Payment. The Trustee shall provide the Diocese and all Additional Debtors with a written statement as to the balance of the DOO Entities' Post-Effective Date Costs Reserve no later than the fifteenth (15th) day of each month until such time as the DOO Entities' Post-Effective Date Costs Reserve is exhausted.

The Trustee may increase the amount of, or replenish, the DOO Entities' Post-Effective Date Costs Reserve, in his or her sole and exclusive discretion. If the Trustee does not replenish the DOO Entities' Post-Effective Date Costs Reserve such that the DOO Entities' Post-Effective Date Costs Reserve falls below $900,000, the Trustee shall immediately report the same to the Diocese and all Additional Debtors, and such parties shall meet and confer regarding (i) the Trustee's expectations with respect to the continued prosecution of Litigation Claims, (ii) the balance of any DOO Entities' Post-Effective Date Costs that are incurred but outstanding, and (iii) the parties' collective expectations as to any additional DOO Entities' Post-Effective Date Costs that are likely to be incurred in order to satisfy any remaining Post-Effective Date Preconditions to Coverage.

If the Trustee determines, in his or her sole discretion, not to replenish the DOO Entities' Post-Effective Date Costs Reserve such that the balance of the DOO Entities' Post-Effective Date Costs Reserve at any time falls below $750,000, the Trustee shall immediately report the same to the Diocese and all Additional Debtors and the Diocese and the Additional Debtors shall be irrevocably released from any further obligations they would otherwise have under this Plan with respect to any Insurance Claims and/or Abuse Claims, including, without limitation, any requirement that they satisfy or attempt to satisfy any Post-Effective Date Preconditions to Coverage or to assist in the administration of the Allocation Protocol. For the avoidance of doubt, the Trust shall remain responsible for the payment of all DOO Entities' Post-Effective Date Costs incurred within one-year following the date of such notice which are submitted in accordance with these procedures to the extent any funds remain in the DOO Entities' Post-Effective Date Costs Reserve. For further avoidance of doubt, all Non-Settling Insurers shall retain any defenses to coverage they may have as a result of any failure of the Diocese or any Additional Debtors to observe and perform any Post-Effective Date Preconditions to Coverage.

Nothing herein shall be construed to address the rights of any Non-Settling Insurer or the Trust, as assignee of Insurance Claims against Non-Settling Insurers, upon any withdrawal of cooperation in defense of Claims by the Diocese and/or any Additional Debtors.

2. *DOO Entities' Post-Effective Date Costs*. All invoices for DOO Entities' Post-Effective Date Costs shall be submitted to the Trustee via email within 60 days following the end of the month in which DOO Entities' Post-Effective Date Costs are incurred (such submission, a "Fee Notice"). All Fee Notices provided to the Trustee may be redacted to prevent the disclosure of privileged information or trial strategy. The Trustee shall keep all Fee Notices confidential and shall not share any information contained in them (other than the amount of the fees) with any Litigation Claimant, or their respective individual counsel, or any professional whose firm previously represented the Committee in these Chapter 11 Cases or represents the Trust in connection with any Insurance Claims. For the avoidance of doubt, the Trustee may share such Fee Notices with any professional advisors who are not counsel of record to the Trust or the Trustee with respect to the Insurance Claims.

The Trustee shall inform the Diocese, the Additional Debtors, and any professional submitting a Fee Notice of any disputes regarding the requested fees and expenses within twenty (20) days of submission of a Fee Notice or shall pay the requested fees within such time. If any such dispute cannot be resolved within fifteen (15) days or such other amount of time agreed upon by the parties, either may submit such dispute to the Bankruptcy Court, or, if the Chapter 11 Cases have been closed, to any other court of competent jurisdiction located in St. Lawrence County, New York for adjudication upon at least fifteen (15) days' notice. The reviewing court shall review the applicable fees and expenses as to reasonableness in light of the work performed.

Professionals shall charge rates and expenses that are no higher than their usual and customary rates for similar work performed by such professionals for clients generally at the time such services are provided, and such rates may be adjusted from time to time in accordance with the general practices of such professionals, but not more often than once in any twelve-month period.

To the extent consistent with the advice of counsel, the Diocese and any Additional Debtors will use reasonable efforts to retain joint professional representation in any case or cases brought by one Litigation Claimant pertaining to the same Abuse Claim.

## L. No Recourse Against Trustee

No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any Agent retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee in implementation of the Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material

violation of law, breach of the fiduciary duty of loyalty, or fraud, and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

None of the Protected Parties shall be liable for any acts or omissions by the Trust, the Trustee, or their respective Agents or Related Persons.

**M. Indemnification by Trust**

The Trust shall defend, indemnify, and hold harmless the Trustee and its Agents to the fullest extent permitted under the laws of New York in the performance of their duties under the Plan and the Trust Agreement. For the avoidance of doubt, the Diocese, Additional Debtors, and their respective Agents shall not be deemed to be Agents of the Trust unless specifically authorized as such in writing by the Trustee.

The Trust shall defend, indemnify, and hold harmless the Protected Parties from any Medicare Claims arising out of or related to an Abuse Claim, and any Claims related to the Trust's obligations under the Plan.

The Trust shall defend, indemnify, and hold harmless each Settling Insurer, as set forth in such Settling Insurer's Insurance Settlement Agreement, from each and every one of the following "Indemnified Claims:", any and all Channeled Claims, Barred Claims, and Claims otherwise enjoined by or subject to the Settling Insurer Injunction and/or such Settling Insurer's Insurance Settlement Agreement, including all such Claims made by (i) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurer Policies; (ii) any Person who has made, will make, or can make (a) a Related Insurance Claim or (b) an Abuse Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Claim under any of the Settling Insurer Policies. For the avoidance of doubt, to the extent set forth in Section 8.13.3 of the Plan (including the subsections immediately below) conflicts or is inconsistent with the provisions of any Insurance Settlement Agreement that relate to Indemnified Claims, the provisions of the applicable Insurance Settlement Agreement(s) will control and govern.

i. Each Settling Insurer shall have the right (but not the obligation) to defend any Indemnified Claims brought or made against such Settling Insurer and shall do so in good faith. Each Settling Insurer (i) may, upon receipt of an Indemnified Claim brought or made against such Settling Insurer, undertake the defense of the Indemnified Claim but is not required to do so and (ii) agrees to notify the Trust as soon as practicable of such Indemnified Claim(s) and of the Settling Insurer's choice of counsel. If a Settling Insurer declines to defend an Indemnified Claim brought or made against it, the Trust shall undertake the defense thereof.

ii. The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by each Settling Insurer defending an Indemnified Claim. Such Settling Insurer may settle or otherwise resolve the Indemnified Claim only with the prior consent of the Trust, which consent shall not be unreasonably withheld. The Trust may settle or otherwise resolve an Indemnified Claim only with the prior consent of the applicable Settling Insurer, which consent shall not be unreasonably withheld. A Settling Insurer's defense,

settlement, or other resolution of any Indemnified Claim brought or made against such Settling Insurer shall not diminish the obligations of the Trust to indemnify the Settling Insurer for the Indemnified Claim, as set forth in Section 8.13.3 of the Plan.

iii. The indemnification and hold harmless undertaking set forth in Section 8.13.3 of the Plan also extends to and for the benefit of the other Settling Insurer Releasees, all of which are third-party beneficiaries of the terms hereof.

**N. Trust Assumption of Liability**

Upon the occurrence of the Effective Date, the Trust shall automatically and without further act or deed assume all responsibility for preserving, managing, and distributing Trust Assets.

Subject to and upon the occurrence of each applicable Abuse Claim Discharge Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Diocese, Additional Debtors and Settling Insurers in respect of all Abuse Claims, which shall become Channeled Claims in accordance with the terms of the Plan. On the Effective Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Settling Insurers in respect of all Barred Claims and Channeled Claims.

**O. Termination**

The Trust shall terminate after its liquidation, administration, and Distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth in the Trust Agreement.

## ARTICLE 10

## GENERAL CLAIMS ADMINISTRATION

**A. Objections to Non-Abuse Claims**

Prior to the Effective Date, the Diocese and the Additional Debtors shall have the authority to pursue any objection to the allowance of any Non-Abuse Claim. From and after the Effective Date, the Diocese and the Additional Debtors will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making any Distributions with respect to Non-Abuse Claims; *provided*, *however*, that nothing in this Section shall affect the right of any party in interest (including the Diocese, the Additional Debtors and the Trustee) to object to any Non-Abuse Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, objections to Non-Abuse Claims will be Filed and served not later than the Claims Objection Deadline. The Claims Objection Deadline or any Bankruptcy Court-approved extension thereof, may be extended upon request by the Diocese by filing a motion without any requirement to provide notice to any Person, based upon a reasonable exercise of the Diocese's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

**B. Determination of Claims**

From and after the Effective Date, any Non-Abuse Claim as to which a proof of claim or motion or request for payment was timely Filed in these Chapter 11 Cases, or deemed timely Filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending)), liquidated pursuant to: (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such Non-Abuse Claim, (b) an application to equitably subordinate such Non-Abuse Claim, and (c) an application to otherwise limit recovery with respect to such Non-Abuse Claim, Filed by the Diocese or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Non-Abuse Claim. Any such Non-Abuse Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, or causes of action that the Diocese may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157; *provided, however*, that any Claims against the Settling Insurers that the Diocese had, has, may have had, or may in the future have shall be waived and released in accordance with the terms of, and to the extent set forth in, the Settling Insurers' respective Insurance Settlement Agreement.

**C. No Distributions Pending Allowance**

Except in the case of Abuse Claims paid pursuant to the Allocation Protocol, no Distribution will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

**D. Claim Estimation**

To effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of these Chapter 11 Cases, with respect to Disputed Claims (except Class 4 Claims), the Diocese, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for Distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; *provided*, *however*, that the Bankruptcy Court or the District Court, as applicable, shall determine: (y) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings.

## E. Treatment of Contingent Claims

Except with respect to Abuse Claims, until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan.

## F. Controversy Concerning Impairment

If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy prior to confirmation of the Plan.

## G. Treatment of Executory Contracts and Unexpired Leases

Subject to the requirements of section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Diocese and the Additional Debtors except (i) Insurance Policies that have not been assumed and retained by the Diocese or any Additional Debtors pursuant to Section 7.5 of the Plan, or (ii) executory contracts and unexpired leases that have been rejected by order of the Bankruptcy Court or are the subject of a motion to reject pending on the Confirmation Date, will be deemed to be assumed and assigned to the Diocese and the Additional Debtors, as applicable, on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed and assigned to the Diocese or Additional Debtors objects to such assumption and assignment, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under section 365(b)(1) of the Bankruptcy Code will be made by the Diocese and the Additional Debtors, except that the Trust shall pay any cure costs under any Insurance Policy assumed and retained by the Diocese or the Additional Debtors pursuant to Section 7.5 of the Plan. In the event of a dispute regarding the amount of any cure payments, or the ability of the Diocese or the Additional Debtors (as applicable) to provide adequate assurance of future performance with respect to any executory contracts to be assumed by the Diocese or the Additional Debtors, or assumed and assigned to the Diocese or the Additional Debtors, the Trust, the Diocese or the Additional Debtors (as applicable) will make any payments required by section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute. The contracts and leases which will be assumed and assigned to the Diocese and the Additional Debtors, and their respective cure costs, are identified in **Exhibit 5** to the Plan Supplement. For the avoidance of doubt, none of the Settling Insurer Policies will be assumed or assigned to the Diocese or the Additional Debtors.

# ARTICLE 11

# PROVISIONS GOVERNING DISTRIBUTIONS

## A. Disbursing Agents

The Diocese shall be the disbursing agent for all aspects of the Plan except for Distributions made from the Trust and Class 6 Ride Through Claims, for which the Additional

Debtors shall serve as disbursing agents. With respect to the Trust, the Trustee shall be the disbursing agent and be responsible for all Distributions made under the Trust.

**B. Manner of Payment**

Unless otherwise agreed by the Diocese, Additional Debtors, or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, all Distributions of Cash under the Plan may be made either by check via first class mail, postage prepaid, or by wire transfer from a domestic bank, at the option of the respective disbursing agent.

**C. Distribution Only to Holders of Allowed Claims**

Except as otherwise provided in the Plan for Abuse Claims which shall be neither Allowed nor Disallowed under the Plan, Distributions under the Plan and the Plan Documents will be made only to the holders of Allowed Claims. Until a Disputed Non-Abuse Claim becomes an Allowed Claim, the holder of that Disputed Non-Abuse Claim will not receive any Distribution otherwise provided to Non-Abuse Claimants under the Plan or the Plan Documents. If necessary, in determining the amount of a *pro rata* Distribution due to the holders of Allowed Claims in any Class, the Diocese will make the *pro rata* calculation as if all Disputed Non-Abuse Claims were Allowed Claims in the full amount claimed or in the estimated amount. When a Disputed Non-Abuse Claim in any Class becomes an Allowed Claim, the Diocese will make a full or partial Distribution, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and any required withholding of applicable federal and state taxes.

**D. Disputed Claim Reserve**

Except with respect to Trust Distributions made to Abuse Claimants pursuant to the Allocation Protocol, to the extent that a disbursing agent makes a Distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the respective disbursing agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

**E. Transmittal of Distributions**

Except as otherwise provided in the Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to be made under the Plan, Confirmation Order, or Trust Documents to Class 4 Claimants will be made by the Trust, and Distributions to all other Claimants will be made by the Diocese or the Additional Debtors. Distributions to Class 4 Claimants will be made: (i) to the client trust account for the Claimant's attorney of record; or (ii) if the Class 4 Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Trustee by such Claimant in writing; or (iii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Diocese, Additional Debtors, or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Diocese in

its Chapter 11 Case. Distributions to Claimants holding Non-Abuse Claims will be made by wire transfer or by check via first class United States mail, postage prepaid, (i) to the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Diocese, as applicable, by such Claimant in writing, or (ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Diocese, to the mailing address set forth in the Schedules Filed by the Diocese in its Chapter 11 Case. If a Claimant's Distribution is not mailed or is returned to the Diocese or to the Trustee because of the absence of a proper mailing address, the Diocese or the Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address. The Trustee shall have no liability to a Class 4 Claimant on account of Distributions made to the client trust account of a Class 4 Claimant's attorney.

## F. Timing of Distributions

Unless otherwise agreed by the Diocese, Additional Debtors, or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day. Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty (30) days after a Distribution is returned to the Diocese, Additional Debtor, or to the Trustee, as applicable, as undeliverable or is deemed to be an undeliverable Distribution, provide the Diocese, Additional Debtor, or the Trustee, as applicable, with a written notice asserting its Claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any Claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Diocese, Additional Debtor, the Trust, the Trustee, or its property. Any undeliverable Distributions to be made by the Trust that are not claimed under this Section will become available for the Trust to distribute to other Abuse Claimants. Any other undeliverable Distributions shall be retained by the Diocese or Additional Debtor, as applicable, in accordance with the Plan. Nothing in the Plan requires the Diocese, Additional Debtor, the Trust, or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

## G. Time Bar to Check Payments

If an instrument delivered as a Distribution to a Claimant by the Diocese or the Trust is not negotiated within one hundred eighty (180) days after such instrument is sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and all Claims in respect of such voided check shall be discharged and forever barred. Any request for re-issuance of a check must be made on or before one hundred eighty (180) days after issuance of a non-negotiated check. Except as otherwise provided herein, any Distribution under the Plan which is not negotiated after one hundred eighty (180) days following issuance shall be forfeited, and such Distribution, together with any interest earned thereon, and shall return to and revest in the Diocese or to the Trust, as applicable.

## H. No Professional Fees or Expenses

No professional fees or expenses incurred by a Claimant will be paid by the Diocese, the Additional Debtors, or the Trust with respect to any Claim except as specified in the Plan or the Trust Documents.

## I. No Interest on Claims

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between the Diocese or any Additional Debtor and the holder of a Claim approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the applicable Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, the Confirmation Order, or the Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

## J. Saturday, Sunday, or Holiday

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day but shall be deemed to have been completed as of the required date.

## K. Withholding Taxes

The Diocese and Additional Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any Distribution under the Plan, the Diocese and the Additional Debtors will require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

## L. Setoffs and Recoupment

Subject to the terms of the Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Diocese and the Additional Debtors may but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Diocese may have against the holder of such Claim.

## M. No *De Minimis* Distributions

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash (rounded to the nearest whole cent when and as necessary) will be issued to Claimants entitled to receive Distributions of Cash. Any

Distribution of less than $25.00 will be considered *de minimis*, and holders of Allowed Claims that are entitled to Distributions of less than $25.00 will not receive any Distribution. Such funds will remain with, and revest in, the Diocese or the Additional Debtor, as applicable. For avoidance of doubt, this Section 11.M shall not apply to any Distributions to be made by the Trust, which shall be governed solely by the Trust Documents.

**N. <u>Prepayment</u>**

Except as otherwise provided in the Plan or the Confirmation Order, the Diocese and the Additional Debtors shall have the right to prepay, without penalty, all, or any portion of an Allowed Claim.

## ARTICLE 12

## <u>EFFECTIVE DATE</u>

**A. <u>Conditions Precedent to Effective Date</u>**

The Effective Date shall not occur, and the Plan shall not be consummated, unless each of the following conditions are satisfied or waived as set forth in Section 11.2 of the Plan:

1. ***Confirmation Order.*** The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents and the Settling Insurers; provided, however, that the findings and determinations set forth in the following clauses a. and b. of Section 11.1.1 of the Plan (or in any corresponding section or paragraph of the Plan or Confirmation Order) shall not be binding on the Settling Insurers. Neither the Insurance Settlement Agreements nor any of the Settling Insurers' actions or inactions in these Chapter 11 Cases shall be deemed as support for such findings and determinations, the Insurance Claims Assignment and/or the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in such findings and determinations, the Insurance Claims Assignment and/or Allocation Protocol in any proceeding. Rather, the Settling Insurers are designated as Protected Parties under the Plan, and as a result, the Settling Insurers take no position on such findings and determinations, the Insurance Claims Assignment, or the Allocation Protocol. Without limiting the generality of the foregoing, the Confirmation Order shall, at a minimum, contain findings by the Bankruptcy Court that:

a. the assignment of Insurance Claims, or alternatively, the retention and prosecution of such Claims following confirmation by the Diocese and the Additional Debtors as contemplated in the Plan is authorized by, and does not conflict with, any provision of the Bankruptcy Code, and is therefore approved;

b. to the extent approval for any transfer contemplated in the Joint Plan may be required under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the Bankruptcy Court has jurisdiction to approve, and does hereby approve such transfers, and no further approval of, or authorization from, the New York State Attorney General or the Supreme Court of the State of New York is required; and

c. all of the requirements for confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code have been met and that the Plan should be confirmed.

2. ***Channeling and Insurer Injunctions.*** The Confirmation Order shall approve and implement the Channeling Injunction set forth in Section 12 of the Plan and shall ratify the Settling Insurer Injunction set forth in the Sale Order(s) approving the respective Insurance Settlement Agreements.

3. ***Plan Documents.*** The Plan Documents shall be in form and substance acceptable to the Plan Proponents. The Plan Documents, except for the Allocation Protocol and the Non-Monetary Commitments referenced in Section 8.4 of the Plan and Section 4.6.2 of the Plan shall be in form and substance acceptable to each Settling Insurer.

4. ***Trust Formation.*** The Trust shall have been formed, the Bankruptcy Court shall have entered an order appointing the Trustee, and the Trustee, the Diocese and the Additional Debtors shall have executed the Trust Agreement.

5. ***The DOO Entities' Cash Payment to the Trust.*** The DOO Entities' Cash Payment, including the executed DOO Trust Note, as applicable, shall have been paid or transferred to the Trust.

6. ***Insurance Settlement Agreements.*** Each Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been duly executed by all parties thereto and approved by the Bankruptcy Court, in each case in form and substance satisfactory to the Plan Proponents and applicable Settling Insurers.

7. ***The Settling Insurers' Contribution.*** Each Settling Insurer shall have paid to the Trust the Insurance Settlement Amount due under such Settling Insurer's Insurance Settlement Agreement, unless the terms of such Insurance Settlement Agreement expressly provide that the applicable Insurance Settlement Amount will be paid at a later date.

8. ***Final Orders.*** The Confirmation Order, the order appointing the Trustee, and the Sale Order(s) shall be Final Orders and no stay of any such orders shall then be in effect.

9. ***Additional Debtors Petition Date and Additional Debtors Bar Date.*** The Additional Debtors shall have filed their chapter 11 petitions prior to the Confirmation Hearing, and the Additional Debtors Abuse Claim Bar Date shall have occurred and no more than twenty-five (25) Post-Confirmation Claims shall have been filed.

10. ***No Material Amendments.*** The Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with consent of the Plan Proponents, and any affected Settling Insurers, Additional Debtors and Abuse Claimants, *provided*, *however*, that the Committee shall have authority to negotiate and agree to modifications to the treatment accorded to Class 4 Claims on behalf of all Class 4 Claimants in accordance with Section 2.3.4(n) of the Plan.

## B. Waiver of Conditions

Any condition to the occurrence of the Effective Date set forth in Section 11.1 of the Plan may be waived only by the mutual written consent of the Diocese and the Committee; *provided, however*, that each Settling Insurer must consent to a waiver of any condition affecting such Settling Insurer's rights or obligations, and each of the Additional Debtors must consent to a waiver of any condition affecting such Additional Debtor's obligations. For avoidance of doubt, none of the Diocese, the Committee, the Settling Insurers, or the Additional Debtors shall have any obligation to waive any of the conditions set forth in Section 11.1, and each may withhold such consent in their sole and absolute discretion.

## C. Occurrence of Effective Date

Provided that all conditions to the Effective Date, except that the Confirmation Order has not become a Final Order as a result of an appeal therefrom and no stay of the Confirmation Order has been entered, have been satisfied, those terms of the Plan that are necessary to allow Litigation Claims to proceed against the Diocese only may be implemented, provided, however, that Litigation Claims will not proceed against the Additional Debtors until after all conditions to the Effective Date have been met. Those terms of the Plan necessary to allow Litigation Claims to proceed are as follows: (a) the establishment of the Trust, (b) approval of the Trust Agreement, (c) appointment of the Trustee, and (d) the waiver of the automatic stay with respect to any Litigation Claims against the Diocese that the Trustee may authorize to proceed pursuant to Section 4.6 of the Plan; **provided, however**, that the Trustee shall not waive the automatic stay or authorize a Litigation Claimant to proceed under Section 11.3 of the Plan if such Litigation Claim alleges Abuse occurring (in whole or in part) within the policy period of a Settling Insurer Policy~~, provided, further, that the Trustee shall use reasonable efforts to prioritize future Litigation Claims that solely implicate Non-Settling Insurer Policies~~. For the avoidance of doubt, any Claims released from the automatic stay under Section 11.3 of the Plan will be Channeled Claims and Barred Claims in accordance with the Plan and the Insurance Settlement Agreements. Any expenses incurred by the Diocese in connection with the foregoing will act as a credit against the DOO Entities' Cash Payment to the extent such expenses are not reimbursed by insurance; and provided further, that in the event that the Confirmation Order is reversed or modified on appeal, all such Litigation Claims shall be automatically stayed; **provided, however**, that upon entry of an order reversing or modifying the Confirmation Order on appeal, (x) any Litigation Claimants, the Diocese and Committee shall meet and confer within five (5) business days of entry of such order to address lifting such stay; (y) the Diocese will not unreasonably withhold consent to continue litigation for any Litigation Claimant that asks for consent by the Diocese to continue litigation; and (z) if consent is withheld, the Diocese shall agree to a hearing on motion for stay relief on 14 days' notice, subject to availability of the Court; **provided further, however,** that any Litigation Claimant that thereafter obtains a judgment against the Diocese shall only be able to recover from any insurance proceeds applicable to such Litigation Claim, and pursuant to the terms of any confirmed plan. Litigation Claims against any Additional Debtor shall remain stayed and shall not be dismissed during such time that Litigation Claims proceed against the Diocese pursuant to this Section 11.3; **provided, however,** that nothing in this Section 11.3 shall prohibit the Diocese and/or Additional Debtors from consenting to continue litigation against an Additional Debtor at any time, including after entry of a Confirmation Order that is not a Final Order. For avoidance of doubt, nothing in this

Section 11.3 shall require payment of the DOO Entities' Cash Payment to the Trust unless and until the Confirmation Order has become a Final Order.

If the Effective Date has not occurred within ninety (90) days of the date on which the Confirmation Order becomes a Final Order, the Diocese or the Committee may elect to withdraw the Plan in their respective sole and absolute discretion.

For the further avoidance of doubt, and for purposes of Section 11.3 of the Plan, the term "Litigation Claims" shall not include any Abuse Claims covered (or alleged to be covered) in whole or in part by a Settling Insurer Policy.

## D. Notice of Effective Date

The Diocese and Additional Debtors shall jointly File a notice of Effective Date with the Bankruptcy Court and serve it on all Creditors and parties in interest, within five (5) Business Days after the occurrence of the Effective Date. Such notice shall include all relevant deadlines put into effect by the occurrence of the Effective Date.

## E. Effect of Non-Occurrence of Condition

If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (i) constitute a waiver or release of any Claims by or against the Protected Parties; (ii) prejudice in any manner the rights of the Protected Parties, or the Trust; (iii) constitute an admission, acknowledgment, offer, or undertaking by the Protected Parties in any respect, including but not limited to, in any proceeding or case against the Diocese or any Additional Debtor; or (iv) be admissible in any action, proceeding or case against the Protected Parties in any court or other forum. Notwithstanding the foregoing, in the event a Sale Order is a Final Order, each Insurance Settlement Agreement (including any release or waiver of Claims in accordance with the terms thereof) approved by such Sale Order shall continue and survive, in accordance with its terms and to the extent set forth therein.

# ARTICLE 13

# EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE

## A. General Injunction and Discharge

1. ***General Injunction and Discharge of Diocese.*** **EXCEPT WITH RESPECT TO ABUSE CLAIMS AND INBOUND CONTRIBUTION CLAIMS ADDRESSED IN SECTION 12.2 OF THE PLAN, OR AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, OR AS OTHERWISE PROVIDED IN ANY INSURANCE SETTLEMENT AGREEMENT OR SALE ORDER, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OF ANY KIND OR NATURE AGAINST THE DIOCESE, WHETHER KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE,**

**AGREEMENT, OR OBLIGATION OF THE DIOCESE, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASES, AS APPLICABLE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF NON-ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT (I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN, ARE PERMANENTLY ENJOINED, ON AND AFTER THE CONFIRMATION DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE CLAIMS ALLOWANCE PROCEDURE PROVIDED FOR IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DIOCESE OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM.**

2. ***Discharge of the Diocese for Non-Abuse Claims.*** Except as otherwise expressly provided in (i) the Plan, (ii) the Confirmation Order, or (iii) any Insurance Settlement Agreement or Sale Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese and its Estate will be discharged from all liability for any and all Non-Abuse Claims. For the avoidance of doubt and notwithstanding anything to the contrary herein, neither the Diocese nor its Estate will be discharged from its or their respective responsibilities (and corresponding liabilities) under or with respect to any Insurance Settlement Agreement.

3. ***Treatment of Non-Abuse Claims against the Additional Debtors.*** The Additional Debtors will continue to be obligated to pay Non-Abuse Claims in the ordinary course of business, as set forth in Section 2.3.6 of the Plan. For the avoidance of doubt and notwithstanding anything to the contrary herein, neither the Additional Debtors, nor their Estates will be discharged from its or their respective responsibilities (and corresponding liabilities) under or with respect to any Insurance Settlement Agreement.

**B. <u>Injunction and Discharge of Abuse Claims and Inbound Contribution Claims</u>**

1. ***Discharge of Abuse Claims Against the Additional Debtors.*** **ALL CONSIDERATION DISTRIBUTED UNDER THE PLAN, AND EACH ADDITIONAL DEBTOR'S PAYMENT TO THE TRUST, SHALL BE IN EXCHANGE FOR, AND IN**



~~23859887.v8~~23859887.v9

**COMPLETE SATISFACTION, SETTLEMENT, DISCHARGE, TERMINATION, AND RELEASE OF, ALL ABUSE CLAIMS AGAINST OR IN THE ADDITIONAL DEBTORS OR ANY OF THEIR ASSETS OR PROPERTIES BASED UPON ANY ACT, OMISSION, TRANSACTION, OCCURRENCE, OR OTHER ACTIVITY OF ANY NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, AND, AS OF THE EFFECTIVE DATE, THE ADDITIONAL DEBTORS SHALL BE DEEMED DISCHARGED AND RELEASED, AND EACH HOLDER OF AN ABUSE CLAIM AND ANY SUCCESSOR, ASSIGN, AND AFFILIATE OF SUCH HOLDER SHALL BE DEEMED TO HAVE FOREVER WAIVED, DISCHARGED, AND RELEASED THE ADDITIONAL DEBTORS, TO THE FULLEST EXTENT PERMITTED BY SECTION 1141 OF THE BANKRUPTCY CODE, OF AND FROM ANY AND ALL ABUSE CLAIMS, RIGHTS AND LIABILITIES, BASED UPON ANY ACT, OMISSION, TRANSACTION, OCCURRENCE, OR OTHER ACTIVITY OF ANY NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, IN EACH CASE WHETHER OR NOT (A) A PROOF OF CLAIM BASED UPON SUCH ABUSE CLAIM IS FILED OR DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (B) AN ABUSE CLAIM IS ALLOWED UNDER SECTION 502 OF THE BANKRUPTCY CODE, (C) AN ABUSE CLAIM IS OR HAS BECOME AN EXPUNGED ABUSE CLAIM, OR (D) THE HOLDER OF AN ABUSE CLAIM IS DEEMED TO HAVE ACCEPTED THE PLAN.**

2. ***Injunction of Abuse Claims and Inbound Contribution Claims.*** **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE ALL PERSONS SHALL BE PERMANENTLY STAYED, ENJOINED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE AGAINST THE DIOCESE OR ANY ADDITIONAL DEBTOR, ANY ABUSE CLAIMS OR INBOUND CONTRIBUTION CLAIMS, KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE OR ANY ADDITIONAL DEBTOR, OR ANY AGENTS OF THE DIOCESE OR ANY ADDITIONAL DEBTOR, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASES, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT (I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN.**

**IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE**

**MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

**THE DISCHARGE AND INJUNCTIONS CONTAINED IN THE PLAN AND THE RELEASES PROVIDED UNDER THE PLAN DO NOT RELEASE OR IMPAIR AN ABUSE CLAIMANT'S RIGHT TO RECOVER ON ANY ABUSE CLAIM AGAINST ANY PERPETRATOR OF ABUSE FOR ACTS OF ABUSE THAT ARE INDEPENDENT OF THE LIABILITY OF THE DIOCESE OR ANY ADDITIONAL DEBTOR.**

3. ***Limited Exceptions to Injunctions.***

a. Preservation of Insurance Claims.

To facilitate the pursuit of Insurance Claims against Non-Settling Insurers, the injunctions set forth in Sections 12.2.2 and 12.3 of the Plan shall not prevent the prosecution of Abuse Actions against the Diocese or any Additional Debtor (a) by one or more Litigation Claimants authorized by the Trustee to pursue their Litigation Claims, at such Litigation Claimants' expense, in any court of competent jurisdiction solely for the purpose of determining any liability that the Diocese and/or any Additional Debtor may have with respect to such Litigation Claimant's Litigation Claim, and the amount of that liability; (b) as the Trustee may deem necessary in order to prosecute the Insurance Claims against Non-Settling Insurers; or (c) as the Trustee may deem necessary in order to effectuate settlement of any Abuse Claims, *provided*, *however*, that all collection efforts against the Diocese and/or any Protected Party shall be enjoined and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party. For avoidance of doubt, the limited exception set forth in this Section 12.2.3.a permits (subject to the terms hereof) only the prosecution of Abuse Actions against the Diocese and/or an Additional Debtor; all collection efforts against any Protected Party are permanently barred and enjoined, and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party (or any of their respective assets except for any Non-Settling Insurer Policy).

To preserve coverage under any Non-Settling Insurer Policy, Abuse Claims will not be released or discharged as against the Diocese or any other Additional Debtor until the occurrence of the applicable Abuse Claim Discharge Date. For the avoidance of doubt, prior to the occurrence of the applicable Abuse Claim Discharge Date and subject to the limitations set forth in the Plan, a duly authorized Litigation Claimant or the Trust may name the Diocese or any Additional Debtor in a proceeding to adjudicate whether the Diocese or any Additional Debtor has liability for a Litigation Claim and the amount of any such liability, but recourse shall be limited to the proceeds of any Non-Settling Insurer Policies and all other damages that may be recoverable against any Non-Settling Insurers.

b. Notwithstanding anything to the contrary herein: (i) the Diocese and the Additional Debtors shall have no liability whatsoever for any Abuse Claims or Inbound Contribution Claims and any act by any Person to collect or enforce any Abuse Claim or Inbound Contribution Claim against the Additional Debtors shall be permanently enjoined; and (ii) subject to and upon payment of a Settling Insurer's Insurance Settlement Amount, such Settling Insurer shall have no liability whatsoever for any Channeled Claim or Barred Claim, and the Channeling Injunction and Settling Insurer Injunction prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any such Settling Insurer, its corresponding Settling Insurer Releasees, its Related Persons, or the assets or property of any of the foregoing (including the Purchased Property of such Settling Insurer).

4. ***Discharge of Abuse Claims and Inbound Contribution Claims.*** Except as otherwise expressly provided in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese, the Additional Debtors and their Estates will be discharged from: (i) all liability for any and all Inbound Contribution Claims on the Confirmation Date; and (ii) all liability for any and all Abuse Claims upon the occurrence of the applicable Abuse Claim Discharge Date.

The Abuse Claim Discharge Date with respect to each Abuse Claim shall be determined as follows:

a. With respect to any Abuse Claim held by a Class 4 Claimant implicating only Settling Insurer Policies, the Abuse Claim Discharge Date shall be the Effective Date.

b. With respect to any Abuse Claim held by an Unknown Abuse Claimant, or a holder of a Post-Statute Filed Abuse Claim, the Abuse Claim Discharge Date shall be the Effective Date.

c. With respect to any Filed Abuse Claim held by a Class 4 Claimant in connection with a Non-Settling Insurer Policy who is authorized, on or before the first anniversary of the Effective Date, to proceed as a Litigation Claimant, the Abuse Claim Discharge Date shall be the earlier of (a) the date on which all Litigation Claims asserted by such Litigation Claimant against the Diocese and/or any Additional Debtor have been fully adjudicated, settled or dismissed on a final and non-appealable basis, (b) the date on which the Abuse Claimant withdraws his or her election to be a Litigation Claimant in accordance with Section 4.6.3 of the Plan, or (c) the date on which the Trust enters into a settlement with respect to all Non-Settling Insurer Policies that are Target Policies of such Litigation Claim.

d. With respect to any Filed Abuse Claim held by Abuse Claimants in connection with a Non-Settling Insurer Policy who are not authorized by the Trustee to liquidate his or her Litigation Claim on or before the first anniversary of the Effective Date, the Abuse Claim Discharge Date shall be the earlier of (a) the first anniversary of the Effective Date or (b) the date on which the Abuse

Claimant withdraws his or her election to be a Litigation Claimant in accordance with Section 4.6.3 of the Plan.

e. For the avoidance of doubt, (i) the Abuse Claim Discharge Date for any Abuse Claim shall be deemed to occur no later than the first day following the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against any Non-Settling Insurers who issued Non-Settling Insurer Policies that are Target Policies of any Litigation Claimants' potential Litigation Claims, and (ii) the Abuse Claim Discharge Date for all Abuse Claims shall be deemed to occur no later than the first day following the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against all Non-Settling Insurers.

5. ***Preservation of Insurance Claims.*** The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the fact that the Diocese and the Additional Debtors have filed, or will file, bankruptcy petitions, or by the amount of any Distributions Abuse Claimants receive, or may be entitled to receive, based on the Plan. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims as set forth in the Plan. Any such recoveries by the Trust from Non-Settling Insurers will be added to the Abuse Claims Settlement Fund to be distributed pursuant to the terms of the Plan, the Allocation Protocol, and the Trust Documents. Nothing in the Plan shall be deemed to modify or abridge any rights of the Non-Settling Insurers under their respective Non-Settling Insurer Policies.

## C. Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties

1. **IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES HEREIN, THEIR PAYMENTS TO THE TRUST, AND OTHER CONSIDERATION GIVEN, AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND ADDITIONAL DEBTORS AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:**

a. **ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THE PLAN, THE ALLOCATION PROTOCOL, AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.**

b. **ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND**

**RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:**

(i) **COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

(ii) **ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

(iii) **CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;**

(iv) **ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:**

**(a) ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;**

**(b) ANY OF THE PROTECTED PARTIES; OR**

**(c) THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

(v) **TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THE PLAN; AND**

(vi) **ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN SECTION 12 OF THE PLAN OR OTHERWISE IN THE PLAN, LITIGATION CLAIMANTS AND THE TRUST SHALL BE PERMITTED TO NAME THE DIOCESE AND ANY ADDITIONAL DEBTOR IN ANY PROCEEDING TO RESOLVE WHETHER THE DIOCESE OR SUCH ADDITIONAL DEBTOR HAS LIABILITY FOR A LITIGATION CLAIM, AND THE AMOUNT OF ANY SUCH LIABILITY, FOR**

**THE PURPOSE OF OBTAINING INSURANCE COVERAGE FROM NON-SETTLING INSURERS UNDER THE NON-SETTLING INSURER POLICIES, AND FOR THE PURPOSE OF PURSUING ANY AND ALL INSURANCE CLAIMS AGAINST THE NON-SETTLING INSURERS. ANY SUCH JUDGMENTS OR AWARDS WILL BE TURNED OVER TO THE TRUST FOR DISTRIBUTION IN ACCORDANCE WITH SECTION 4.6 OF THE PLAN. FOR THE AVOIDANCE OF DOUBT, RECOURSE WITH RESPECT TO ANY AND ALL LITIGATION CLAIMS IS EXPRESSLY LIMITED TO THE PROCEEDS OF NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS, AS AND TO THE EXTENT PERMITTED BY THIS PLAN.**

2. **THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES. IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING**.

**D. Additional Debtors Payment**

Subject to the terms and conditions of Section 12.4 of the Plan, in exchange for the settlement and release of Abuse Claims as set forth in the Plan, and other provisions of the Plan, including, without limitation, the Trust's assumption of the Channeled Claims and Trust Expenses, the Additional Debtors have agreed, and are directed, to pay their portion of the DOO Entities' Cash Payment to the Trust. The Diocese, or its designee, may serve as paying agent for the collection and payment of the Additional Debtors Payments to the Trust.

**E. Settling Insurer Injunction**

Pursuant to sections 105(a), 363, and 1123 of the Bankruptcy Code, and in consideration of the undertakings of the Settling Insurer's Insurance Settlement Amount and the Settling Insurers' pursuant to the Insurance Settlement Agreements, including the payment of each Settling Insurers' purchase of the Purchased Property free and clear of all Claims and Interests pursuant to section 363(f) of the Bankruptcy Code, the Plan will incorporate by reference, adopt, and ratify (and the Confirmation Order shall adopt and ratify) the Settling Insurer Injunction set forth in the Sale Order(s) in all respects. For the avoidance of doubt, there can be no modification, dissolution, or termination of the Settling Insurer Injunction, which shall be a permanent injunction

**F. Litigation/Settlement of Certain Claims**

Except as expressly set forth in Section 12.2.3 of the Plan, the Channeling Injunction shall channel all Inbound Contribution Claims and all Insurer Contribution Claims to the Trust. For the avoidance of doubt, unless otherwise provided in the Plan, the Allocation Protocol, or Trust Documents, the channeling of an Inbound Contribution Claim or Insurer Contribution Claim does not entitle the holder of such Channeled Claim to a Trust Distribution.

If, for any reason any court does not recognize the channeling of the Insurer Contribution Claims of Non-Settling Insurers to the Trust, or such Insurer Contribution Claims are not channeled for any reason, then the following shall apply:

1. Settling Insurers shall retain their Insurer Contribution Claims; *provided*, *however*, that:

a. Settling Insurers shall not pursue any Insurer Contribution Claim against any Non-Settling Insurer, (A) that asserts an Insurer Contribution Claim solely against the Trust; (B) whose Insurer Contribution Claim is satisfied and extinguished entirely by the application of Section 12.6 of the Plan, or (C) that does not assert an Insurer Contribution Claim against them;

b. If a Non-Settling Insurer asserts its Insurer Contribution Claim only against the Trust, then Settling Insurers shall assign any Insurer Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such Insurer Contribution Claims against such Non-Settling Insurer;

c. If a Non-Settling Insurer releases its Insurer Contribution Claims, if any such exist, that it may have against Settling Insurers, then such released Settling Insurers shall release their Insurer Contribution Claims against such releasing Non-Settling Insurer.

2. In any Action, including the Insurance Coverage Adversary Proceeding, involving the Diocese, a Covered Party or the Trust (collectively, the "Alleged Insured") or an Abuse Claimant, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert an Insurer Contribution Claim against a Settling Insurer (that Settling Insurer, a "Contribution Target"), then any judgment or award obtained by such Alleged Insured or Abuse Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that the Contribution Target is liable to pay such Non-Settling Insurer as a result of the Non-Settling Insurer's Insurer Contribution Claim(the "Reduction Amount"), so that the Non-Settling Insurer's Insurer Contribution Claim is thereby satisfied and extinguished entirely. To accomplish this reduction, the Alleged Insured or Abuse Claimant shall obtain a finding from that court or arbitrator(s), as applicable, establishing the Reduction Amount before obtaining an entry of judgment against such Non-Settling Insurer. A Contribution Target shall, upon request and at the sole expense of the Trust, cooperate in good faith with the Alleged Insured to take reasonable steps to aid the Alleged insured in defending against the Insurer Contribution Claim or otherwise establish the Reduction Amount contemplated in this paragraph.

3. For the avoidance of doubt, if a Non-Settling Insurer asserts it has (a) an Insurer Contribution Claim directly or indirectly arising out of or in any way relating to such Non-Settling Insurer's payment of loss on behalf of the Diocese or a Covered Party or defense expenses incurred in any action that should have been paid by or otherwise attributable to a Settling Insurer related to any Abuse Claim, or (b) rights to recover any self-insured retentions/obligations, and/or deductibles (collectively, "Payment Obligations") in connection with its payment, for defense and/or indemnity related to an Abuse Claim, then (i) such Insurer Contribution Claims or Payment Obligations may be asserted as a setoff, defense, or counterclaim solely against any Abuse Claimant or the Trustee, as applicable, in any insurance action or insurance recovery involving such Non-Settling Insurer (but in no event shall any Insurer Contribution Claim or Payment Obligation be asserted against any of the Protected Parties), and (ii) to the extent such Insurer Contribution Claims or Payment Obligations are determined to be valid, the liability (if any) of such Non-Settling Insurer to the holder of the Abuse Claim, or the Trust, as applicable, shall be reduced by the amount of such Insurer Contribution Claims or Payment obligations, provided that if any Insurer Contribution Claim exceeds the liability of such Non-Settling Insurer to the Abuse Claimant or the Trust, as applicable, the Non-Settling Insurer does not waive any excess claim and may seek affirmative recovery of same solely from the Trust. To the extent payment of a self-insured retention is a condition to a Non-Settling Insurer's obligation to provide defense or indemnity under applicable law and the Non-Settling Insurer's applicable Insurance Policies, the failure of the Trust to pay such self-insured retention to the Non-Settling Insurer having the right to argue that such failure of payment is a complete defense to any claim for coverage by the Non-Settling Insurer to, or related to, any claim for recovery of insurance from the Non-Settling Insurers.

4. If an Alleged Insured or Abuse Claimant and a Non-Settling Insurer enter into an agreement settling one or more Abuse Claims, such agreement shall include a provision whereby such Non-Settling Insurer releases Insurer Contribution Claims against Settling Insurers so long as Settling Insurers release their Insurer Contribution Claims against such Non-Settling Insurer.

5. Nothing contained in Section 12.6.2 of the Plan shall be interpreted to require the Trust to maintain or allocate a specific reserve for the costs set forth in this Section.

6. The above procedures shall bind and inure to the benefit of all Settling Insurers.

7. To ensure that the reduction contemplated in Section 12.6.2 of the Plan is accomplished, the Settling Insurers shall be entitled to: (i) notice, within a reasonable time, of the initiation of any future Action against or future settlement negotiations with any Non-Settling Insurer in which an Insurer Contribution Claim could be asserted against any Settling Insurers, and periodic notices thereafter on at least an annual basis of the status of such Action or negotiations; (ii) the opportunity to participate in the Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in Section 12.6.2 of the Plan; (iii) the reasonable cooperation of the applicable Alleged Insured, at the sole cost and expense of the Trust, so that the Settling Insurers (or, as applicable, the Trust) can assert Section 12.6.2 of the Plan as a defense in any Action for any Insurer Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect the Settling Insurers from any Insurer Contribution Claim. The notice required above shall be given by (i) the Alleged Insured that is a party to such

Action or settlement negotiations; or (ii) if no Alleged Insured is such a party, the Non-Settling Insurer that is a party to such Action or settlement negotiations; or (iii) if no Alleged Insured or Non-Settling Insurer is a party to such Action or settlement negotiations, the Abuse Claimant bound by the Plan.

8. The Trust shall use reasonable efforts to obtain, from all Settling Insurers, agreements with terms similar to those referenced in Section 12.5 of the Plan.

## G. Additional Debtors Abuse Claim Bar Date

### 1. *Establishment of Additional Debtors Abuse Claim Bar Date*

Except for a Previously Asserted Abuse Claim (which, for the avoidance of doubt, will be classified and treated in accordance with Section 2.3.4 of the Plan), all Proofs of Claim for Abuse Claims against Additional Debtors, if any, must be filed by the Additional Debtors Abuse Claim Bar Date. Any Abuse Claim (other than a Previously Asserted Abuse Claim) against an Additional Debtor for which a timely Proof of Claim is not filed shall be automatically disallowed, forever barred from assertion, and unenforceable against the Diocese, the Additional Debtors, their Estates, or their property without the need for any objection by the Additional Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Abuse Claim against an Additional Debtor shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary. For the avoidance of doubt, if and when Unknown Abuse Claims are filed, such Unknown Abuse Claimants shall receive distributions as and to the extent provided in the Trust Allocation Protocol in the Plan Supplement.

For the avoidance of doubt, the fact that an Abuse Claim is or may be time-barred or subject to a statute of limitations or other defense under applicable non-bankruptcy law does not excuse the holder of such Abuse Claim from compliance with the provisions of the Plan, including Section 12.7 of the Plan, the Additional Debtors Abuse Claim Bar Date, and the Confirmation Order.

### 2. *Treatment of Post-Confirmation Claims*

All Previously Asserted Abuse Claims against the Additional Debtors shall be classified as Abuse Claims and treated in accordance with Section 2.3.4 of the Plan. All Abuse Claims (other than Previously Asserted Abuse Claims) against Additional Debtors that are timely filed in accordance with the Additional Debtors Abuse Claim Bar Date and Section 12.7 of the Plan shall be classified as Post-Confirmation Claims and treated in accordance with Section 2.3.4 of the Plan.

As set forth herein, all Abuse Claims (other than Previously Asserted Abuse Claims) against Additional Debtors that are not timely filed in accordance with the Additional Debtors Abuse Claim Bar Date and Section 12.7 of the Plan shall be discharged, disallowed, forever barred from assertion, and unenforceable against the Trust, the Trustee, Additional Debtors, the Estates or their property. To the extent any future court finds the foregoing provision to be unenforceable, such claims shall be treated as Unknown Abuse Claims.

3. ***Additional Debtors Abuse Claim Bar Date Procedures***

The following procedures for the filing of proofs of claim shall apply:

a. Additional Debtors Abuse Proofs of Claim must conform substantially to the Additional Debtors Abuse Proof of Claim Form;

b. All confidentiality provisions of the Bar Date Order shall apply to the Additional Debtors Abuse Proofs of Claim, provided, however, that to the extent necessary, the Pastor or other trustees of the Additional Debtors may be designated as Authorized Parties (as defined in the Bar Date Order) upon written consent of the Committee or the Trustee.

c. Additional Debtors Abuse Proofs of Claim must be submitted (i) electronically through the Claims Agent website for the lead Chapter 11 Case at https://case.stretto.com/dioceseofogdensburg by following instructions for filing proofs of claim electronically; or (ii) by delivering the original proof of claim by U.S. Postal Service mail to: The Roman Catholic Diocese of Ogdensburg, New York Claims Processing – Additional Debtors Claims, c/o Stretto, 410 Exchange, Ste. 100, Irvine, CA 92602;

d. Additional Debtors Abuse Proofs of Claim will be deemed filed only when received by the Claims Agent on or before the Additional Debtors Abuse Claim Bar Date;

e. Additional Debtors Abuse Proofs of Claim must (i) be signed, (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available; and (iii) be in the English language; and

f. Additional Debtors Abuse Proofs of Claim sent by facsimile, telecopy, or electronic mail transmission will not be accepted.

Pursuant to Bankruptcy Rule 3003(c)(2), all holders of Additional Debtors Abuse Claims that fail to comply with Section 12.7 of the Plan by timely filing a proof of claim in appropriate form shall not be treated as a Creditor with respect to such Claim for the purpose of distributions.

Parties asserting Abuse Claims against the Additional Debtors that arose before the Additional Debtors Petition Date must use the form substantially in the form of the Additional Debtors Abuse Proof of Claim Form.

Due to the sensitive nature of the information requested in the Additional Debtors Abuse Proof of Claim Form, the Confidentiality Protocol, as stated in the Diocese Bar Date Order, and as may be further amended from time to time, shall apply to all Additional Debtors Abuse Proof of Claim Forms submitted by holders of Abuse Claims against the Additional Debtors.

The Claims Agent shall assign to each claimant filing an Additional Debtors Abuse Proof of Claim Form against an Additional Debtor a unique identifier code and shall maintain a confidential list of the identities of such claimants, their corresponding identifier code, and their respective Additional Debtors Proof of Claim Forms.

The Diocese will cause the Additional Debtors Bar Date Notice and the Additional

Debtors Abuse Proof of Claim Form to be posted on the website established by the Claims Agent for these Chapter 11 Cases.

Pursuant to Bankruptcy Rules 2002(l) and 9008, the Diocese and Additional Debtors may publish notice of the Additional Debtors Abuse Claim Bar Date substantially in the form of the Additional Debtors Bar Date Publication Notice.

The Additional Debtors may (a) post a link on its respective website to the Additional Debtors Bar Date Notice and the Additional Debtors Abuse Proof of Claim Form, (b) provide a notice (or a link to the notice) in any bulletins it sends to its parishioners, or (c) provide additional notice to the extent it considers appropriate.

The Diocese, Additional Debtors and the Claims Agent are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of Section 12.7 of the Plan.

Nothing in Section 12.7 of the Plan shall (a) prejudice the right of the Additional Debtors, the Trust, the Trustee, or any other Diocese Settling Party or Insurer to dispute or assert offsets or defenses to any Abuse Claim, (b) limit the releases, discharges and injunctions set forth elsewhere in this Plan or the Confirmation Order or (c) be construed to modify, amend or enlarge any Creditor's rights with respect to any Claim.

**H. <u>Injunction Against Interference with Plan</u>**

Upon entry of the Confirmation Order, all holders of Claims and all Non-Settling Insurers shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

**I. <u>Release by Holders of Channeled Claims</u>**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, ALL HOLDERS OF CHANNELED CLAIMS, INCLUDING CLASS 4 CLAIMS (THE "<u>RELEASING PARTIES</u>"), SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DIOCESE, THE ADDITIONAL DEBTORS, THE ESTATE, THE CONDUCT OF THE DIOCESE'S AND THE ADDITIONAL DEBTORS' BUSINESSES, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THE PLAN, THE FILING AND PROSECUTION OF THESE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED**



~~23859887.v8~~<u>23859887.v9</u>

**PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE.**

**THE FOREGOING RELEASE SHALL BE EFFECTIVE UPON THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT THAT, SOLELY WITH RESPECT TO ANY ABUSE CLAIM THEY MAY HOLD, EACH CLASS 4 CLAIMANT WILL RELEASE THE DIOCESE AND THE ADDITIONAL DEBTORS UPON THE OCCURRENCE OF THE ABUSE CLAIM DISCHARGE DATE APPLICABLE TO SUCH ABUSE CLAIM. FOR THE AVOIDANCE OF DOUBT, PRIOR TO THE OCCURRENCE OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE AND SUBJECT TO THE LIMITATIONS SET FORTH IN THE PLAN, A DULY AUTHORIZED LITIGATION CLAIMANT MAY NAME THE DIOCESE OR ANY ADDITIONAL DEBTOR IN A CASE OR PROCEEDING TO ADJUDICATE WHETHER THE DIOCESE OR ANY ADDITIONAL DEBTOR HAS LIABILITY FOR AN ABUSE CLAIM AND THE AMOUNT OF ANY SUCH LIABILITY, BUT RECOURSE IN SUCH CASE OR PROCEEDING SHALL BE LIMITED TO THE PROCEEDS OF THE INSURANCE CLAIMS. UNDER NO CIRCUMSTANCE MAY A LITIGATION CLAIMANT OR THE TRUST NAME, OR OTHERWISE PURSUE, ANY SETTLING INSURER RELEASEES OR ANY SETTLING INSURER'S RELATED PERSONS (IN ANY ACTION OR OTHERWISE) FOR OR ON ACCOUNT OF A CHANNELED CLAIM FOLLOWING SUCH SETTLING INSURER'S PAYMENT OF THE APPLICABLE INSURANCE SETTLEMENT AMOUNT.**

**J. Mutual Releases**

**EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE DIOCESE OR THE ADDITIONAL DEBTORS, OR OBLIGATIONS ARISING UNDER THE PLAN, AND, SOLELY WITH RESPECT TO THE DIOCESE AND THE ADDITIONAL DEBTORS, ABUSE CLAIMS SUBJECT TO THE DELAYED RELEASE IN ACCORDANCE WITH SECTION 12.2.3 OF THE PLAN, ON THE EFFECTIVE DATE, EACH OF THE DIOCESE, ADDITIONAL DEBTORS, THE COMMITTEE, THE TRUST, AND EACH CLASS 4 CLAIMANT, SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST EACH OTHER, EXCEPT THAT CLASS 4 CLAIMANTS SHALL NOT WAIVE THEIR RIGHTS TO DISTRIBUTIONS UNDER THE TRUST IN ACCORDANCE WITH THE TRUST AGREEMENT AND THE ALLOCATION PROTOCOL, AND SHALL BE DEEMED TO RELEASE THEIR ABUSE CLAIMS AGAINST THE DIOCESE AND THE ADDITIONAL DEBTORS AS OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE; PROVIDED, HOWEVER, THAT PRIOR TO THEIR RELEASE ANY SUCH ABUSE CLAIMS SHALL ONLY BE ENFORCEABLE AND COMPENSABLE PURSUANT TO THE TERMS OF THE PLAN AND PLAN DOCUMENTS. CLASS 4 CLAIMANTS SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST A SETTLING**

**INSURER, SUCH SETTLING INSURER'S RELATED PERSONS, AND ALL OTHER OF SUCH SETTLING INSURER'S SETTLING INSURER RELEASEES ON THE DATE SUCH SETTLING INSURER REMITS ITS INSURANCE SETTLEMENT AMOUNT TO THE TRUST (BUT NO EARLIER THAN THE EFFECTIVE DATE).**

**K. Releases in Insurance Settlement Agreements**

The releases in the Insurance Settlement Agreements are fully incorporated in the Plan by reference and are adopted and ratified in all respects, and the Confirmation Order shall adopt and ratify all such releases. For the avoidance of doubt, but without limiting the generality of the foregoing, the Confirmation Order shall provide that all such releases are binding upon the Diocese and the Additional Debtors.

**L. Exculpation; Limitation of Liability**

**NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR ANY CLAIM BY ANY OTHER EXCULPATED PARTY, BY ANY HOLDER OF A CLAIM, OR BY ANY OTHER PARTY IN INTEREST, FROM AND AFTER THE EFFECTIVE DATE, FOR ANY ACT OR OMISSION (I) THAT OCCURRED FROM THE APPLICABLE PETITION DATE THROUGH THE EFFECTIVE DATE IN CONNECTION WITH THESE CHAPTER 11 CASES OR (II) IN CONNECTION WITH THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THE PLAN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE COMMITTEE, THE DIOCESE, THE ADDITIONAL DEBTORS AND THEIR RESPECTIVE OFFICERS, TRUSTEES, BOARDS, COMMITTEE MEMBERS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, EXPERTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(e) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.**

**M. Gatekeeper Injunction**

To the extent permitted by law, and subject in all respects to Section 12 of the Plan, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the businesses of the Diocese or any Additional Debtor, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in

all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party. The Bankruptcy Court will have jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally permissible and as provided for in Section 14 of the Plan, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.

For the avoidance of doubt, the Gatekeeper Injunction set forth in Section 12.13 of the Plan does not apply to (i) Claims seeking recovery from Non-Settling Insurers, and (ii) the prosecution of Abuse claims with respect to Abuse that occurred, or is alleged to have occurred, on or after the Effective Date.

**N. Injunctions in Full Force and Effect**

All injunctions and/or stays provided for in the Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer that has purchased Settling Insurer Policies, free and clear of all Claims pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified.

**O. Release of Estate Causes of Action**

**EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE DIOCESE OR THE ADDITIONAL DEBTORS AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, IN CONSIDERATION FOR THE CONTRIBUTING NON-DEBTOR ENTITY CONTRIBUTION TO THE TRUST, ON THE EFFECTIVE DATE THE DIOCESE AND THE ADDITIONAL DEBTORS EACH, AND COLLECTIVELY, SHALL BE DEEMED TO IRREVOCABLY AND UNCONDITIONALLY FULLY, FINALLY, AND FOREVER WAIVE, RELEASE, ACQUIT, AND DISCHARGE THE CONTRIBUTING NON-DEBTOR ENTITIES, THEIR RESPECTIVE AFFILIATES, AND EACH OF THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES FROM ANY AND ALL CLAIMS, COUNTERCLAIMS, CROSS-CLAIMS, CAUSES OF ACTION, DISPUTES, SUITS, COSTS, DEBTS, LIABILITIES, OBLIGATIONS, RIGHTS, REMEDIES, DEFENSES, DUES, SETOFFS, RECOUPMENTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, COVENANTS, CONTRACTS, CONTROVERSIES, AGREEMENTS, PROMISES, DAMAGES, JUDGMENTS, EXECUTIONS AND DEMANDS WHATSOEVER, OF WHATEVER KIND OR NATURE, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, ACCRUED OR UNACCRUED, CURRENTLY EXISTING OR ARISING IN THE FUTURE, BASED IN WHOLE OR IN ANY PART ON THE ESTATE CAUSES OF ACTION.**

**P. Injunctions and Releases Integral**

The foregoing injunctive provisions and releases are an integral part of the Plan and are essential to its implementation. The currently pending Abuse Actions commenced by Class 4 Claimants, the continuation of which would violate Sections 12.1, 12.2, or 12.3 of the Plan, the releases provided for under the Plan, or the Insurance Settlement Agreements shall be dismissed with prejudice following the Trustee's receipt of an Abuse Claim Release Agreement executed by the applicable Abuse Claimant, except for Litigation Claims (or Abuse Claims that may become Litigation Claims), which will be released as against the Diocese and/or Additional Debtors (as applicable) upon the applicable Abuse Claim Discharge Date in accordance with Sections 12.2.4 and 12.10 of the Plan.

**Q. Timing**

The injunctions, releases, and discharges (including the Channeling Injunction and the Settling Insurer Injunction) to which a Settling Insurer is entitled pursuant to such Settling Insurer's Insurance Settlement Agreement, the Plan, the Confirmation Order, the Sale Order approving such Insurance Settlement Agreement, and the Bankruptcy Code shall become effective when (i) the Trust receives payment in full of the Insurance Settlement Amount from the applicable Settling Insurer pursuant to the terms of such Settling Insurer's Insurance

Settlement Agreement, and (ii) all other conditions to the effectiveness of such Settling Insurer's Insurance Settlement Agreement are satisfied or waived in accordance with the terms thereof.

**R. Excluded Parties and Non-Settling Insurers**

Notwithstanding anything to the contrary herein, the following shall apply to Excluded Parties and Non-Settling Insurers: (a) no Claim by an Abuse Claimant against an Excluded Party or Non-Settling Insurer shall be a Channeled Claim, *provided*, *however*, that any Class 4 Claims which assert liability against an Excluded Party or a Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims as to such Protected Party; (b) no Claim by an Abuse Claimant against an Excluded Party or a Non-Settling Insurer shall be released by operation of the Plan; (c) the injunctions provided in Sections 12.1 and 12.2 of the Plan shall not apply to Claims by any Abuse Claimant against an Excluded Party or Non-Settling Insurer; and (d) all Claims by any Abuse Claimant against an Excluded Party or Non-Settling Insurer are preserved and are not affected by the terms of the Plan.

**S. Title to and Vesting of Assets**

All property of the Diocese, the Additional Debtors, and their Estates are dealt with by the Plan. Therefore, on the Effective Date, to the fullest extent allowed by sections 1123(a)(5), 1123(b)(2), 1123(b)(3), 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Diocese, the Additional Debtors and their Estates, and any property acquired by the Diocese or any Additional Debtor pursuant to the Plan shall revest in the Diocese and any Additional Debtor, as applicable, and such property shall be, except as otherwise expressly provided in the Plan or the Confirmation Order, free and clear of all Liens, Claims, charges or other encumbrances whatsoever, except (i) that any charitable assets subject to Donor Restrictions shall remain subject to such Donor Restrictions and (ii) all Purchased Property shall be settled, sold, and/or released (as applicable) pursuant to the terms of the Insurance Settlement Agreements. On and after the Effective Date, except as otherwise provided in the Plan, the Diocese and the Additional Debtors may operate and manage their affairs and may use, acquire, or dispose of such property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by Donor Restrictions, the Plan or the Confirmation Order. The Diocese and the Additional Debtors may pay any charges incurred on or after the Effective Date for Professional Fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**T. Continued Corporate Existence.**

The Diocese and the Additional Debtors will continue to exist after the Effective Date as not-for-profit corporations, including pursuant to the special act under New York law, and other formation, organizational and governance documents in effect immediately prior to the Effective Date, and have tax-exempt status under 26 U.S.C. § 501(c)(3) and applicable New York law, without prejudice to any right to alter or terminate such existence, or to change any corporate name, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

**U. Identity of Trustees and Officers of the Diocese**

In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the trustees of the Diocese on and after the Effective Date shall be Bishop Terry R. LaValley, Deacon James Crowley and Rev. Joseph A. Morgan, all of whom have served in such capacities for the Diocese during these Chapter 11 Cases and each of whom is affiliated with the Universal Roman Catholic Church. The trustees of each of the Additional Debtors shall remain unchanged. For the avoidance of doubt, the foregoing individuals shall not be trustees of the Trust.

**V. Authority to Effectuate Plan**

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court, the Diocese or the Additional Debtors. The Diocese and the Additional Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action they may deem necessary or beneficial to achieve consummation of and carry out the Plan and to effectuate the transactions provided for thereunder.

**W. Binding Effect**

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all holders of Claims. Subject to the terms of the Plan, upon the Effective Date, every holder of a Claim shall be precluded and permanently enjoined from asserting against the Diocese or any Additional Debtor, any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the applicable Petition Date.

**X. Dissolution of Committee**

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and Agents shall be released from any further duties and responsibilities in these Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during these Chapter 11 Cases, including any orders regarding confidentiality issued by the Bankruptcy Court or Mediators, which shall remain in full force and effect according to their

terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims.

**ARTICLE 14**

**RESERVED**

**ARTICLE 15**

**RETENTION OF JURISDICTION**

**A. By the Bankruptcy Court**

Pursuant to sections 105, 1123(a)(5) and 1142(b) of the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334, on and after the Effective Date, the Bankruptcy Court shall retain (i) original and exclusive jurisdiction over the Chapter 11 Cases, (ii) original, but not exclusive jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Cases; and (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Cases and the Plan, including matters concerning the interpretation, implementation, consummation, execution or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

1. over disputes concerning the ownership of Claims.

2. over disputes concerning the distribution or retention of assets under the Plan.

3. subject to the Plan Documents, over objections to Claims, motions to allow late-filed Claims and motions to estimate Claims.

4. over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Diocese, the Estate, or the Trust, or property abandoned or transferred by the Diocese, the Estate, or the Trust.

5. over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee.

6. over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets.

7. over matters related to the removal of the Trustee and the appointment of a successor Trustee.

8. over matters relating to the subordination of Claims.

9. to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

10. to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order.

11. to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to the Plan and any Insurance Settlement Agreement (including, without limitation, the Channeling Injunction, Settling Insurer Injunction, and Gatekeeper Injunction).

12. over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith.

13. over requests for allowance of payment of Claims entitled to priority under sections 507(a)(2) and 503(b) of the Bankruptcy Code and any objections thereto.

14. over all applications for compensation under sections 327, 328, 329, and 330 of the Bankruptcy Code.

15. over matters concerning state, local, or federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

16. over conflicts and disputes among the Trust, the Diocese, the Additional Debtors and holders of Claims.

17. over disputes concerning the existence, nature, or scope of the Diocese Discharge, or the Additional Debtors Discharge including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date.

18. to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Diocese or its property, any Additional Debtor or its property, the Estates or their property, the Trust or its property, the Trustee, the Professionals, or the Confirmation Order.

19. to enter a final decree closing these Chapter 11 Cases.

20. to enforce all orders previously entered by the Bankruptcy Court (including without limitation the Sale Order(s)).

21. over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to these Chapter 11 Cases or the Plan.

22. to hear and determine any matters related to the indemnification obligations of the Trust under Section 8.13 of the Plan and/or any Insurance Settlement Agreements.

**B. By the District Court**

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. § 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases.

**C. Actions to Enforce the Plan**

The Diocese, the Additional Debtors, and the Trust may, but are not required to, commence an Action to enforce the terms of the Plan or to collect amounts owed pursuant to the Plan and any settlements set forth in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with the terms of the Plan or such settlement. Any such Action may be commenced by filing a motion with the Bankruptcy Court. On and after the Effective Date, the Trust shall have the sole and exclusive right to enforce the terms of the Plan against the Diocese and/or any Additional Debtor (except that the Diocese or any Additional Debtor may enforce the terms of the plan as against each other and the Trust) and may seek any appropriate remedy in law or equity from the Bankruptcy Court which shall retain exclusive jurisdiction over any such Action. Nothing herein shall confer jurisdiction to the Bankruptcy Court to adjudicate a personal injury claim, including an Abuse Claim (including a Litigation Claim).

**D. Case Closure**

The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing the Chapter 11 Cases upon a motion by the Diocese, Additional Debtors or any other Person. The Trustee shall not take any actions to unreasonably keep the Chapter 11 Cases open. The Trustee, in his sole discretion, may seek to reopen the Chapter 11 Cases to administer assets of the Trust, including with respect to entering into settlement agreements with Non-Settling Insurers. If the Chapter 11 Cases are reopened upon request of the Trustee, the Trust, Diocese and Additional Debtors shall cooperate to assure that no disbursements are made from the Estate during the period when the Chapter 11 Cases are reopened, and the cases shall be closed at the earliest possibility.

## ARTICLE 16

## TAX CONSEQUENCES OF THE PLAN

The following is a summary of certain U.S. federal income tax consequences of the Plan to certain holders of Claims. This summary is based on the Internal Revenue Code (the "Tax Code"), Treasury Regulations promulgated thereunder (the "Treasury Regulations"), and administrative and judicial interpretations and practice, all as in effect on the date of the Disclosure Statement and all of which are subject to change, with possible retroactive effect. Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below. No opinion of counsel has been obtained and the Diocese and Additional Debtors do not intend

to seek a ruling from the Internal Revenue Service as to any of the tax consequences of the Plan discussed below. There can be no assurance that the Internal Revenue Service will not challenge one or more of the tax consequences of the Plan described below.

This summary does not apply to holders of Claims that are not U.S. Persons (as such term is defined in the Tax Code) or that are otherwise subject to special treatment under U.S. federal income tax law (including, without limitation, banks, governmental authorities or agencies, financial institutions, insurance companies, pass-through entities, tax-exempt organizations, brokers and dealers in securities, mutual funds, small business investment companies, and regulated investment companies). The following discussion assumes that holders of Allowed Claims hold such Claims as "capital assets" within the meaning of section 1221 of the Tax Code. Moreover, this summary does not purport to cover all aspects of U.S. federal income taxation that may apply to holders of Allowed Claims based upon their circumstances. Additionally, this summary does not discuss any tax consequences that may arise under any laws other than U.S. federal income tax law, including under state, local or foreign tax law.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

## A. Federal Income Tax Consequences to Holders of Unsecured Claims

In accordance with the Plan, all holders of General Unsecured Claims and Abuse Claims will receive Distributions on their Allowed Claims. Holders of Abuse Claims will realize a loss, if any, in an amount equal to that Claim, minus any recovery, on an adjusted tax basis.

The tax consequences to holders of Abuse Claims will differ and will depend on factors specific to the holder, including but not limited to: (i) whether the Claim, or a portion of the Claim, constitutes a Claim for interest or principal, (ii) the origin of the Claim, (iii) the type of consideration received in exchange for the Claim, (iv) whether the holder is a United States person or a foreign person for tax purposes, (v) whether the holder reports income on the accrual or cash basis method, and (vi) whether the holder has taken a bad debt deduction or otherwise recognized a loss with respect to the Claim.

The Plan Proponents anticipate that Distributions to Abuse Claimants will, in all instances, constitute damages, other than punitive damages, on account of personal physical injuries and physical sickness, within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986, as amended. The Plan Proponents have not, however, fully analyzed such tax issues and cannot (and do not hereby) make any assurances or representations regarding the anticipated tax treatment of Abuse Claims.

THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCE TO EACH HOLDER OF A GENERAL UNSECURED CLAIM OR AN

ABUSE CLAIM. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH HOLDER OF A GENERAL UNSECURED CLAIM AND ABUSE CLAIM OBTAIN HIS, HER, OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO THE HOLDER OF A GENERAL UNSECURED CLAIM OR ABUSE CLAIM AS A RESULT OF THE PLAN.

## B. Federal Income Tax Consequences to the Diocese

The Diocese and the Additional Debtors are not-for-profit religious corporations having tax-exempt status under 26 U.S.C. § 501(c)(3). Due to the status of the Diocese and the Additional Debtors as not-for-profit corporations, the Plan Proponents anticipate that the confirmation of the Plan will have no material federal income tax consequences on a cash basis for the Diocese or the Additional Debtors.

## C. Tax Consequences to the Trust

The Trust may satisfy the requirements of a designated settlement fund under Section 468B of the Tax Code or a qualified settlement fund under Regulation 1.468B-1 of the Treasury Regulations. There are certain tax consequences associated with the characterization of the Trust as a designated settlement fund or a qualified settlement fund.

THE PLAN PROPONENTS EXPRESS NO OPINION REGARDING WHETHER THE TRUST IS A DESIGNATED SETTLEMENT FUND OR A QUALIFIED SETTLEMENT FUND. THE PLAN PROPONENTS HAVE NOT REQUESTED A RULING FROM THE INTERNAL REVENUE SERVICE OR AN OPINION OF COUNSEL REGARDING WHETHER THE TRUST IS A DESIGNATED SETTLEMENT FUND OR A QUALIFIED SETTLEMENT FUND. ACCORDINGLY, EACH CREDITOR IS URGED TO CONSULT THEIR OWN TAX ADVISOR REGARDING THE CHARACTERIZATION OF THE TRUST AND THE TAX CONSEQUENCES OF SUCH CHARACTERIZATION.

# ARTICLE 17

# ALTERNATIVES TO THE PLAN

The Plan Proponents believe the Plan is in the best interests of the Creditors and should accordingly be accepted and confirmed. If the Plan as proposed, however, is not confirmed, the following two alternatives may be available: (a) an alternative plan of reorganization may be proposed and confirmed, or (b) the Chapter 11 Cases may be dismissed. As discussed below, two other options, liquidation under Chapter 7 and the appointment of a Chapter 11 trustee, are not viable alternatives in these Chapter 11 Cases.

## A. Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code

If the Plan is not confirmed, the Diocese, Additional Debtors, or another party in interest may propose a different plan, which might involve an alternative means for reorganizing the Diocese and the Additional Debtors. The Plan Proponents believe that the terms of the Plan provide for the most favorable outcome for Creditors. The negotiation and drafting required for

additional plans would likely add substantially greater administrative expenses with no guarantee of a better result for Creditors. For these reasons, the Plan Proponents do not believe that an alternative plan of reorganization is a preferable alternative to the Plan.

**B. Dismissal of the Chapter 11 Case**

If the Plan is not confirmed, the Diocese, Additional Debtors, or another party in interest may seek to dismiss the Chapter 11 Cases. After appropriate notice and a hearing, the Bankruptcy Court may grant the request and dismiss the Chapter 11 Cases. Dismissal of the Chapter 11 Cases would have the effect of restoring, or attempting to restore, all parties to the position they were in immediately prior to the Petition Date.

Upon dismissal of the Chapter 11 Case of the Diocese or the Chapter 11 Case of the Additional Debtors, the protection of the Bankruptcy Code would be lost, resulting in the expensive and time-consuming process of negotiation and protracted litigation between the Diocese and individual Abuse Claimants and between the Diocese, Additional Debtors, and their Insurers. In addition to the expense and delay, the Plan Proponents believe that these actions would lead to an inequitable recovery for Abuse Claimants, with the first Abuse Claimants to obtain and enforce judgments against the Diocese depleting the Diocese's assets and resulting in insufficient assets to satisfy later judgments. Therefore, the Plan Proponents believe that dismissal of the Chapter 11 Cases of the Diocese and the Additional Debtors is not a preferable alternative to confirming the Plan.

**C. Chapter 7 Liquidation is Not a Viable Alternative**

Pursuant to 11 U.S.C. § 1112(c), if a debtor is "not a moneyed corporation," a debtor's Chapter 11 case cannot be converted to a Chapter 7 case without the debtor's consent. The Diocese, as a not-for-profit entity, is not a moneyed corporation, and may not be forced to convert its Chapter 11 Case to a Chapter 7 case. Similarly, the Additional Debtors are also not-for-profit entities and cannot be forced to convert their Chapter 11 Cases, once filed, to Chapter 7 cases. Thus, conversion to Chapter 7 is not a viable alternative to the Plan.

**D. Appointment of a Chapter 11 Trustee is Not a Viable Alternative**

As a result of limitations imposed by the First Amendment to the United States Constitution and the Religious Freedom and Restoration Act, a Chapter 11 trustee cannot be appointed to replace the Bishop's administration of the Diocese.

## ARTICLE 18

## ACCEPTANCE AND CONFIRMATION OF THE PLAN

**A. General Confirmation Requirements**

The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must make a series of findings concerning the Plan and the Plan Proponents, including that (i) the Plan classifies Claims in a permissible manner; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) the Plan Proponents have complied with applicable



~~23859887.v8~~23859887.v9

provisions of the Bankruptcy Code; (iv) the Plan Proponents propose the Plan in good faith and not by any means forbidden by law; (v) the disclosures required by section 1125 of the Bankruptcy Code have been made; (vi) the Plan has been accepted by the requisite votes of Creditors (except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code); (vii) the Plan is feasible and confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Diocese; (viii) the Plan is in the "best interests" of all holders of Claims in an Impaired Class by providing to such holders on account of their Claims property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a Chapter 7 liquidation, unless each holder of a Claim in such Class has accepted the Plan; and (ix) all U.S. Trustee Fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of such fees on the Effective Date.

1. **Parties in Interest Entitled to Vote**.

Pursuant to the Bankruptcy Code, only Classes of Claims that are "Impaired" (as defined in section 1124 of the Bankruptcy Code) under the Plan are entitled to vote to accept or reject the Plan. A Class is Impaired if the legal, equitable or contractual rights to which the Claims of that Class entitled the holders of such Claims are modified, other than by curing defaults and reinstating the debt. Classes of Claims that are not Impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan. In addition, Classes of Claims that receive no Distributions under the Plan are not entitled to vote on the Plan and are deemed to have rejected the Plan.

2. **Classes Impaired Under the Plan**.

Class 4 Abuse Claims are the only Claims that are Impaired and entitled to vote under the Plan.

Acceptances of the Plan are being solicited only from those holders of Claims in Impaired Classes that will or may receive a Distribution under the Plan. Accordingly, the Diocese is soliciting acceptances only from holders of Class 4 Abuse Claims.

3. **Voting Procedures and Requirements**.

**VOTING ON THE PLAN BY EACH HOLDER OF AN IMPAIRED CLAIM ENTITLED TO VOTE ON THE PLAN IS IMPORTANT. YOU SHOULD COMPLETE, SIGN, AND RETURN THE BALLOT YOU RECEIVE IN ACCORDANCE WITH THE PROVISIONS SET FORTH IN ARTICLE 1(B) ABOVE.**

4. **Ballots**.

In voting for or against the Plan, please use only the Ballot or Ballots sent to you with this Disclosure Statement. If you are a holder of a Class 4 Abuse Claim and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact the Diocese's counsel, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attention: Stephen A. Donato, or Stretto, the Diocese's Solicitation and Claims Agent, by email at TeamOgdensburgDiocese@stretto.com or by calling

855.347.3773 and requesting to speak with a member of the solicitation team. If you are a holder of an Abuse Claim against an Additional Debtor, please contact the Diocese's Solicitation and Claims Agent to request a provisional Ballot, by email at TeamOgdensburgDiocese@stretto.com or by calling 855.347.3773 and requesting to speak with a member of the solicitation team. If you later file a Class 4 Claim against an Additional Debtor prior to the Additional Debtors Abuse Claim Bar Date, such Claim will be linked with such provisional Ballot.

**PLEASE FOLLOW THE DIRECTIONS CONTAINED ON THE ENCLOSED BALLOT CAREFULLY, COMPLETE AND SIGN THE BALLOT AND RETURN IT TO STRETTO. TO BE COUNTED, SIGNED BALLOTS MUST BE RECEIVED ON OR BEFORE ________, AT ____ _.M., PREVAILING EASTERN TIME.**

## B. Confirmation Hearing

The Bankruptcy Code requires the Bankruptcy Court, after notice, to conduct a hearing regarding whether the Diocese and the Plan have fulfilled the confirmation requirements of section 1129 of the Bankruptcy Code. The Confirmation Hearing has been scheduled for **_________ at _____ __.m. (prevailing Eastern Time)**, before the Honorable Patrick G. Radel, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Northern District of New York, United States Courthouse, [_____]. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement in open court at the Confirmation Hearing of the date to which the Confirmation Hearing has been adjourned. Remote public access will not be provided by the Court. Judicial Conference policy prohibits audio access to proceedings that may involve testimony.

## C. Confirmation

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation are that the Plan (i) be accepted by the requisite holders of Claims or, if not so accepted, that it be "fair and equitable" and "not discriminate unfairly" as to each non-accepting Class of Claims, (ii) be in the "best interests" of each holder of a Claim that does not vote to accept the Plan in each Impaired Class under the Plan, (iii) be feasible, and (iv) comply with the applicable provisions of the Bankruptcy Code.

## D. Acceptance of Plan

As a condition to confirmation, the Bankruptcy Code requires that each class of impaired claims votes to accept the plan, except under certain circumstances. For a plan to be accepted by a voting class, those voting to accept in that class hold at least two-thirds in dollar amount and more than one-half in number of claims of that class that voted in that class. For example, if an impaired class has 200 claimants holding $200 worth of claims, if 100 claimants in that class vote, then at least 51 of those claimants holding at least $67 worth of claims must vote to accept the plan. Only those holders of claims who actually vote count in these tabulations. Holders of claims who fail to vote, or whose votes are designated pursuant to section 1126(e) of the Bankruptcy Code, are not counted as either accepting or rejecting a plan.

In addition to this voting requirement, section 1129 of the Bankruptcy Code requires that a plan be accepted by each holder of a claim or interest in an impaired class or that the plan otherwise be found by the bankruptcy court to be in the best interests of each holder of a claim or interest in such class. In addition, each impaired class must accept the plan for the plan to be confirmed without application of the "fair and equitable" and "unfair discrimination" tests in section 1129(b) of the Bankruptcy Code discussed below.

## E. Confirmation Without Acceptance of All Impaired Classes

The Bankruptcy Code contains provisions for confirming a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the plan. These so-called "cramdown" provisions are set forth in section 1129(b) of the Bankruptcy Code.

A plan may be confirmed under the cramdown provisions if, in addition to satisfying other requirements of section 1129(a) of the Bankruptcy Code, it (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each class of claims that is impaired under, and has not accepted, the Plan. As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have specific meanings unique to bankruptcy law.

In general, the "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its allowed claims before any junior class receives any distribution. More specifically, section 1129(b) of the Bankruptcy Code provides that a plan can be confirmed under that section if: (a) with respect to a secured class (i) the holders of such claims retain the liens securing such claims to the extent of the allowed amount of such claims and that each holder of a claim of such class receive deferred cash payments equaling the allowed amount of such claim as of the plan's effective date, or (ii) such holders realize the indubitable equivalent of such claims; (b) with respect to an unsecured claim, either (i) the impaired unsecured creditor must receive property of a value equal to the amount of its allowed claim, or (ii) the holders of claims and interests that are junior to the claims of the dissenting class may not receive any property under the plan on account of such junior claim or interest; and (c) with respect to a class of interests, either (i) each holder of an interest of such class must receive or retain on account of such interest property of a value, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest, or (ii) the holder of any interest that is junior to the interest of such class may not receive or retain any property on account of such junior interest.

The requirement that a plan not "discriminate unfairly" means, among other things, that a dissenting class must be treated substantially equally with respect to other classes of equal priority.

**IF A CLASS OF CLAIMS VOTING ON THE PLAN VOTES TO REJECT THE PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO SEEK**

**CONFIRMATION OF THE PLAN UNDER THE CRAMDOWN PROVISIONS OF THE BANKRUPTCY CODE WITH RESPECT TO SUCH CLASS.**

## F. Best Interests Test

In order to confirm a plan, the Bankruptcy Court must independently determine that the plan is in the best interests of each holder of a claim in any impaired class who has not voted to accept the plan. Accordingly, if an impaired class does not unanimously accept the plan, the best interests test requires the Bankruptcy Court to find that the plan provides to each member of such impaired class a recovery on account of the class member's claim that has a value, as of the effective date of the plan, at least equal to the value of the distribution that each such member would receive if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To calculate what holders of Claims would receive if the Diocese alone were liquidated under a hypothetical Chapter 7 case under the Bankruptcy Code, the Bankruptcy Court must first determine the dollar amount that would be realized from such liquidation (the "Liquidation Fund"). The Liquidation Fund would consist of the net proceeds from the disposition of the Diocese's assets (after satisfaction of all valid liens) and the recoveries on causes of action, if any, held by the Estate. The Liquidation Fund would not include (i) the portion of the DOO Entities' Cash Payment coming from Entities other than the Diocese, (ii) the assignment of Insurance Claims, (iii) any contributions by Settling Insurers, or (iv) restricted funds, which would be subject to a *cy pres* action involving the New York Attorney General. The Liquidation Fund would be reduced by the cost of the liquidation. The costs of a hypothetical liquidation under chapter 7 would include the fees and expenses of the Chapter 7 trustee, as well as those of counsel and other professionals that might be retained by the Chapter 7 trustee, selling expenses and wind-down costs, any unpaid expenses incurred by the Diocese during its Chapter 11 Case (such as fees for attorneys, financial advisors and accountants) which would be Allowed in the Chapter 7 proceedings, interest expense on secured debt and claims incurred by the Diocese during the pendency of the cases. These Claims would be paid in full out of the Liquidation Fund before the balance of the Liquidation Fund, if any, would be made available to holders of General Unsecured Claims and Abuse Claims. In addition, other Claims that would arise upon conversion to a Chapter 7 case would dilute the balance of the Liquidation Fund available to holders of Claims. Moreover, additional Claims against the Estate would arise as a result of the establishment of a new Bar Date for the filing of Claims in the Chapter 7 case. The present value of the Distributions from the Liquidation Fund (after deducting the amounts described above) must then be compared with the present value of the property offered to each of the Classes of Claims under the Plan, to determine if the Plan is in the best interests of Claim holders.

The inclusion of the Additional Debtors, allowing for the Additional Debtors Contribution and the Settling Insurer Contributions made possible by the inclusion of the Additional Debtors as settling parties is in the best interests of Creditors of both the Diocese and the Additional Debtors. The Diocese and Additional Debtors believe that a Chapter 7 liquidation of their remaining Assets would result in a diminution of the value realized by holders of Claims. That belief is based upon, among other factors: (a) the reduced value of Diocese's and the Additional Debtors' remaining Assets in a Chapter 7 case; (b) the additional administrative

expenses involved in the appointment of a Chapter 7 trustee, attorneys, accountants, and other Chapter 7 professionals; (c) the substantial time that would elapse before Creditors would receive any Distribution in respect of their Claims, due to a Chapter 7 trustee's need to become familiar with the books and records of the Diocese and the Additional Debtors and the Chapter 7 trustee's administration of the case; and (d) the additional Claims that may be asserted against the Diocese and the Additional Debtors.

## G. Feasibility

In connection with confirmation of the Plan, the Bankruptcy Court must determine that the Plan is feasible pursuant to section 1129(a)(11) of the Bankruptcy Code, which means that the confirmation of the Plan is not likely to be followed by the need for liquidation or further financial reorganization of the Diocese, except as proposed in the Plan.

In this case, the Diocese has prepared cash flow projections demonstrating that the Diocese, together with the Additional Debtors, will be able to fund the DOO Entities' Cash Payment, that the Diocese will be able to meet their other respective obligations under the Plan, and that the Diocese will have sufficient resources to support ongoing ministries and operations. A copy of the Diocese's financial projections is attached as **Exhibit C**. The cash flow projections demonstrate that the Diocese will be able to fund the Plan on the Effective Date and that the Diocese will be able to make all payments required pursuant to the Plan so that no further financial restructuring will be necessary. Accordingly, the Diocese believes that the Plan satisfies the feasibility test.

Aside from the Additional Debtors Contribution, which will fund a portion of the DOO Entities' Cash Payment, as set forth above, the Additional Debtors are impacted by the Plan solely in connection with Class 4 Abuse Claims, which will be channeled to the Trust. General Unsecured Claims against the Additional Debtors that are not Abuse Claims will be paid by the Additional Debtors in the ordinary course of business, and the Additional Debtors will continue to meet their obligations.

## H. Compliance with the Applicable Provisions of the Bankruptcy Code

Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of the Bankruptcy Code. The Plan Proponents have considered each of these provisions in the development of the Plan and believe that the Plan complies with all applicable provisions of the Bankruptcy Code.

# ARTICLE 19

# RISK FACTORS TO BE CONSIDERED

**HOLDERS OF CLAIMS AGAINST THE DIOCESE AND ADDITIONAL DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE INFORMATION SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THIS INFORMATION, HOWEVER, SHOULD NOT BE REGARDED AS**

**THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND/OR ITS IMPLEMENTATION.**

## A. Objection to Classifications of Claims

Section 1122 of the Bankruptcy Code provides that a plan may place a claim in a particular class, only if such claim is substantially similar to the other claims in such class. The Plan Proponents believe that the classification of Claims under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court will reach the same conclusion. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed and the reclassification adversely affects the treatment of the Claim of any Creditor, the Plan Proponents could be required to re-solicit votes for or against the Plan.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim of a particular Class unless the holder of a particular Claim agrees to a less favorable treatment of its Claim. The Plan Proponents believe that the Plan complies with the requirement of equal treatment. To the extent that the Court finds that the Plan does not satisfy the equal treatment requirement, the Court could deny confirmation of the Plan.

Issues or disputes relating to classification or treatment could result in a delay of the confirmation or consummation of the Plan and could increase the risk that the Plan will not be consummated.

## B. Failure to Satisfy Voting Requirements

If the Plan Proponents obtain the requisite votes to accept the Plan in accordance with the requirements of the Bankruptcy Code, the Plan Proponents intend, as promptly as practicable thereafter, to seek confirmation of the Plan. In the event that sufficient votes are not received, the Plan Proponents may be forced to pursue an alternative plan of reorganization, or the Diocese may dismiss the Chapter 11 Case prior to the Additional Debtors Petition Date.

## C. The Plan May Not Be Accepted or Confirmed

The Plan may not be confirmed without the affirmative acceptance of at least one Impaired Class. Even if all voting Classes accept the Plan, the Plan may not be confirmed if the Bankruptcy Court determines that the Plan does not meet the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. The Plan Proponents believe that the Plan satisfies all of the relevant section 1129 requirements. There can be no assurance, however, that the requisite Creditor consent will be obtained or that the Bankruptcy Court will also conclude that all such requirements have been satisfied.

## D. The Plan Proponents' Assumptions and Estimates May Prove Incorrect

The Plan Proponents have made certain assumptions regarding, and have attempted to estimate in good faith and to the best of their ability, the aggregate number and amount of Claims in each Class, the projected expenses incurred to date or to be incurred in connection with the confirmation and administration of the Plan, and the assets which may be available for

liquidation and Distribution under the Plan. There can be no guarantee, however, that the Plan Proponents' assumptions and estimates regarding these amounts will prove to be accurate. In the event the Plan Proponents' assumptions and estimates, including with respect to the funding of the DOO Entities' Cash Payment, prove incorrect, Creditor recoveries under the Plan may be materially less than projected.

**E. Non-Confirmation or Delay in Confirmation of the Plan**

In the event a party objects to the Plan, it is possible that the Bankruptcy Court may not approve confirmation of the Plan.

**F. Non-Consensual Confirmation**

In the event the Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Plan Proponents' request if the cramdown requirements described above are satisfied. The Plan Proponents believe that the Plan satisfies these requirements.

**G. Risk of Non-Occurrence of the Effective Date**

Although the Plan Proponents believe that the Effective Date will occur reasonably soon after the Confirmation Date, there can be no assurance as to the timing or as to whether the Effective Date will in fact occur.

**H. Non-Settling Insurers May Raise Objections to Confirmation**

The Plan Proponents anticipate that the Non-Settling Insurers may object to confirmation of the Plan by asserting that the Plan impermissibly alters contractual rights, duties, and obligations under its Insurance Policies, including antiassignment defenses to the Insurance Claims Assignment. The Non-Settling Insurers have also asserted coverage defenses, including that resolution of Abuse Claims through the Allocation Protocol breaches policy conditions. Such coverage litigation has the potential to delay or reduce distributions. The Plan Proponents do not believe there is any merit to such objections or assertions, and furthermore believe that the number of Insurers remaining as Non-Settling Insurers, which, as of the date of this Disclosure Statement, includes Century, are few. However, if a Non-Settling Insurer were to prevail on such contentions, the Bankruptcy Court might find that the Plan is not feasible or otherwise not confirmable.

**I. The Confirmation Order may be Appealed**

One or more parties may appeal the Confirmation Order. Because the Effective Date of the Plan is conditioned on the Confirmation Order and Sale Order(s) becoming Final Orders, any such appeal could delay the occurrence of the Effective Date and distributions to holders of Abuse Claims.

## J. Post-Confirmation Litigation May Not Result in Additional Recovery

The Plan provides for the assignment to the Trust of Insurance Claims against Non-Settling Insurers. The Non-Settling Insurers are likely to assert factual and legal defenses to both their coverage obligations and to the underlying liability of the Diocese and other Additional Debtors for Abuse Claims. Litigation of the Insurance Claims against the Non-Settling Insurers could take years and may require the Trust to expend several million dollars in litigation costs. Litigation Claimants who pursue Litigation Claims will also do so at their own expense. There is no guarantee that any Litigation Claimant will succeed in establishing liability of the Diocese or any Additional Debtor, or that the Trust will prevail in its prosecution of Insurance Claims against a Non-Settling Insurer.

Non-Settling Insurers have asserted defenses that could impair coverage and the Trust's ability to recover anything on account of the Insurance Claims, including the following allegations:

(a) The Diocese and/or Additional Debtor cannot establish that certain of the alleged insurance policies were in fact ever issued;

(b) The Diocese and/or Additional Debtor cannot establish the terms and conditions of certain of the insurance policies, where neither the Diocese nor the Non-Settling Insurer have been able to locate complete copies;

(c) Certain of the Additional Debtors may not be entitled to coverage under certain of the insurance policies issued to the Diocese;

(d) The Diocese and/or Additional Debtors failed to comply with conditions precedent to coverage under the insurance policies, including the requirement that it provide prompt notice of the claim and/or the occurrence, the requirement that the Diocese cooperate with a Non-Settling Insurer in the defense of any claims, and the requirement that the Diocese avoid agreeing to voluntary obligations;

(e) The Diocese knew that the perpetrator had a history of Abuse and, therefore, the injury was not caused by an accident, was not fortuitous, or was expected or intended from the standpoint of the Diocese and/or Additional Debtors;

(f) The injury either does not qualify as "bodily injury" within the meaning of the alleged insurance policies, or any "bodily injury" did not occur during the policy period of a Non-Settling Insurer's Insurance Policy;

(g) Any recovery is limited by the applicable limits of liability in any Non-Settling Insurer's Insurance Policy that are proven; and

(h) All acts of Abuse to which a particular Survivor was subjected constitute a single "occurrence" for purposes of applying policy limits of liability.

Non-Settling Insurers have also asserted the defense of late notice. The Non-Settling Insurers contend that their policies would require that notice of claims be given as soon as practicable. New York courts considering such language routinely hold that even short delays in giving notice are unreasonable, even as short as 40 days. Under New York's strict late-notice rule, the Non-Settling Insurers have alleged that the delays by the Diocese and Additional Debtors in giving notice, of either the claims themselves or lawsuits based on the claims, could bar coverage for many of the claims.

In the event the Non-Settling Insurers successfully defend against the Insurance Claims, the DOO Entities' Cash Payment and the settlement payments from Settling Insurers would be the sole source of recovery for Abuse Claims.

## K. United States Trustee fees may be imposed on certain payments under the Plan

Section 1930(a) of Title 28 of the United States Code prescribes filing fees that must be paid by "[t]he parties commencing a case under title 11." In cases administered under Chapter 11 of the Bankruptcy Code (other than under subchapter V thereof), section 1930(a)(6) also assesses additional fees, payable to the United States Trustee, which are calculated according to the dollar value of quarterly "disbursements."

In accordance with this statutory requirement, the Diocese paid more than $180,000 in U.S. Trustee Fees (as of June 2026) during this Chapter 11 Case in which the United States Trustee has not played a particularly active role.

Section 2.1.5 of the Plan makes provision for the payment of unpaid U.S. Trustee Fees in a manner which the Plan Proponents contend is consistent with the language and intent of 28 U.S.C. § 1930(a)(6). The Plan further clarifies that payments made to the Trust by Persons other than the Diocese (*i.e.* contributions by Settling Insurers or Contributing Non-Debtor Entities, made in exchange for the releases and channeling injunctions provided under the Plan, or payments by Settling Insurers to buy back their policies and settle any coverage liabilities they may have) are not "disbursements" to be included in the calculation of U.S. Trustee fees for purposes of 28 U.S.C. § 1930(a)(6).

The United States Trustee has indicated an intent to seek to impose U.S. Trustee Fees not just on distributions made by the Diocese, but also on any Trust contributions made by the Additional Debtors or other Protected Parties, as well as on post-confirmation distributions made by the Trust and the Diocese, even though the Trust is a separate legal entity that is not a debtor in bankruptcy. The Plan Proponents believe the United States Trustee's attempt to impose U.S. Trustee Fees on payments by independent, non-debtor Persons, and to potentially tax assets on their way into, as well as out of the Trust, has no basis in 28 U.S.C. § 1930(a)(6), and constitutes an impermissible overreach inconsistent with the well-reasoned recent decision of the Delaware bankruptcy court in *Paragon Offshore, PLC*, 629 B.R. 227 (Bankr. D. Del. 2021). Nevertheless, if it is determined at the Confirmation Hearing that the United States Trustee's overly expansive reading of the statute is correct, additional fees may be imposed on certain payments contemplated under the Plan.

## L. State Court Counsel contingency fees

Many Abuse Claimants have retained State Court Counsel to represent them in the prosecution of their Abuse Claims. In many instances, those State Court Counsel have agreed to be compensated on a contingency fee basis, meaning that State Court Counsel are paid only if they succeed in obtaining payment for their clients and, in such case, State Court Counsel's fee is calculated as a percentage of the amount recovered, net of certain expenses. Some State Court Counsel also represent multiple Abuse Claimants in these Chapter 11 Cases and, accordingly, may earn multiple contingency fees on Trust Distributions to their respective clients. Each State

Court Counsel is bound, however, to comply with the same Rules of Professional Conduct which regulate the practices of all attorneys in New York and which require attorneys to zealously represent the interests of each and every one of their clients, to disclose any conflicts of interest that may arise and, where appropriate, to obtain conflict waivers from any affected client.

## ARTICLE 20

## MISCELLANEOUS PROVISIONS

### A. Amendment or Modification of the Plan

The Plan Proponents may modify the Plan at any time prior to the Confirmation Hearing, in accordance with section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation, the Plan Proponents may modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, those provisions of the Plan that implement and supplement or relate to the Insurance Settlement Agreements may not be severed, waived, amended, deleted or otherwise modified without the prior written approval of each Settling Insurer affected by such severance, waiver, amendment, deletion or modification.

### B. Headings

The headings used in the Plan and in this Disclosure Statement are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

### C. Severability of Plan Provisions

If, prior to confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.

### D. Validity and Enforceability

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the Confirmation Order, is valid and enforceable pursuant to its terms. Should any provision in the Plan be determined by the Bankruptcy Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of the Plan.

### E. Revocation or Withdrawal of the Plan

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan Proponents revoke or withdraw the Plan before the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Diocese, Additional Debtors or the Committee or to prejudice in any manner the rights of the Diocese, Additional Debtors or the Committee in any further proceedings.

### F. Controlling Documents

In the event and to the extent that any provision of the Plan or the Trust Documents is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or the Trust Documents, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Documents (other than provisions relating to the Trustee's authority to act) is inconsistent with any provision of the Plan, the Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Documents, the provisions of the Confirmation Order shall control and take precedence.

### G. Filing of Additional Documents

At any time before substantial consummation of the Plan, the Diocese, the Additional Debtors, or the Trust, as appropriate, may File with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

### H. Direction to a Party

On or after the Effective Date, the Trustee, or the Diocese, or Additional Debtors, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect the transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

### I. Certain Actions

By reason of entry of the Confirmation Order prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers or trustees of the Diocese or the Additional Debtors under the Plan, including (i) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan; and (ii) the adoption, execution and implementation of other matters provided for under the Plan involving the Diocese or the Additional Debtors or the organizational structure of the Diocese or the Additional Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as

appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers or trustees of the Diocese or the Additional Debtors.

## J. Plan as Settlement Communication

The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise Claims and/or causes of action that are disputed as to validity or amount (including Abuse Claims and the Insurance Coverage Adversary Proceeding), except as otherwise provided above. Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or the Disclosure Statement are subject in all respects to Rule 408 of the Federal Rules of Evidence and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity, or invalidity of, any Disputed Claim or cause of action. Except as expressly set forth in the Plan, nothing in the Plan is intended to constitute a compromise of Abuse Claims.

**K. Preservation of Tort Defendants' Rights**

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall be deemed to prohibit any Tort Defendant from asserting any defenses, setoffs, and other limitations on liability or collection ("Litigation Rights") that such Tort Defendant may have under applicable state and federal law in connection with any Tort Action, provided, however, that to the extent the exercise of such Litigation Rights would otherwise result in any affirmative obligation of the Diocese and/or any Protected Party to contribute to or satisfy any judgment or claim, the enforcement of such judgment or claim or any right of contribution regarding same as against the Diocese and/or any Protected Party shall be treated as Inbound Contribution Claims and enjoined pursuant to Section 12 of the Plan, but the amount payable by a Tort Defendant to an Abuse Claimant may be reduced by the allocable share of fault (if any) attributable to any acts or omissions by the Diocese and/or Protected Party.

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall prevent any Tort Defendant from asserting in any Tort Action that any distribution to an Abuse Claimant made by the Trust, or otherwise made by or on behalf of the Diocese or a Protected Party by reason or because of or related to this Plan should be treated as a payment by a joint tortfeasor to settle the Abuse Claimant's Abuse Claim for purposes of New York law, including, but not limited to, the application of General Obligations Law ("GOL") § 15-108 and Civil Practice Law and Rules ("CPLR") Articles 14 and 16. Tort Defendants shall retain all rights as against any Abuse Claimant with respect to CPLR Articles 14 and 16 and GOL § 15-108, provided, however, that, in addition to the protections and injunctions set forth in this Plan, the Diocese and other Protected Parties shall be entitled to the protections of GOL § 15-108 with respect to the releases given by Abuse Claimants under this Plan and provided, further, that to the extent of any conflict between state law and the injunctive provisions of this Plan with respect to the collection or enforcement of any claim against the Diocese or any Protected Party, the terms of this Plan shall control in all respects.

**L. Reports**

Until a final decree closing the Chapter 11 Case is entered, the Diocese shall File all post-confirmation quarterly reports as required by the United States Trustee Operating Guidelines (with a copy served on the Office of the United States Trustee). The first report shall be Filed within thirty days after the end of the quarter in which the Effective Date occurs.

The Additional Debtors shall not be required to file monthly operating reports or post-confirmation quarterly reports, pursuant to the *Case Management Order Establishing Procedures for the Filing and Administration of Prepackaged Chapter 11 Cases by Parishes and Affiliated Entities of the Diocese of Ogdensburg* [Docket No. 1471].

## M. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan transactions consummated or to be consummated in connection therewith.

## N. No Admissions.

Notwithstanding anything herein or in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by the Diocese, any Additional Debtor, the Committee, or any Settling Insurer with respect to any matter set forth herein.

# ARTICLE 21

# BANKRUPTCY RULE 9019 REQUEST

~~Pursuant~~The Plan Proponents request approval of the Insurance Settlement Agreements pursuant to Bankruptcy Rule 9019 and through the Plan. Through the Plan, the Plan Proponents jointly request approval of all compromises and settlements included in the Plan or contemplated.

# ARTICLE 22

# RECOMMENDATION AND CONCLUSION

The Plan Proponents believe that the Plan is in the best interests of all Creditors. The Plan as structured allows Creditors to participate in Distributions believed to be in excess of those which would otherwise be available were these Chapter 11 Cases dismissed and provides an opportunity to maximize insurance recoveries through settlements with the Settling Insurers and post-confirmation litigation of Insurance Claims against Non-Settling Insurers.

FOR ALL OF THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN PROPONENTS BELIEVE THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES. THE PLAN PROPONENTS STRONGLY RECOMMEND THAT ALL CREDITORS ENTITLED TO VOTE ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY ARE RECEIVED BY STRETTO NO LATER THAN _________ __.M. PREVAILING EASTERN TIME ON _______________.

*[Signature Page Follows]*

Dated: ~~October 30~~November 13, 2026
Ogdensburg, New York

Respectfully submitted,

The Roman Catholic Diocese of Ogdensburg, New York

By: *\/s/ Mark Mashaw*
Mark Mashaw, Diocesan Fiscal Officer

**BOND, SCHOENECK & KING, PLLC**

By: /s/ Stephen A. Donato

Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Sara C. Temes, Esq.
Office and Post Office Address:
110 West Fayette Street
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com
temess@bsk.com

*Counsel to The Roman Catholic Diocese of Ogdensburg, New York*

| **Summary report:**<br>**Litera Compare for Word 11.12.0.83 Document comparison done on 11/13/2026 4:18:56 PM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://cloudimanage.com/bond/23859887/8 - DOO DS - Prepack.docx | |
| **Modified DMS:** iw://cloudimanage.com/bond/23859887/9 - DOO DS - Prepack.docx | |
| **Changes:** | |
| Add | 21 |
| ~~Delete~~ | 16 |
| ~~Move From~~ | 0 |
| Move To | 0 |
| Table Insert | 0 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 37 |

# EXHIBIT C

Redline of Revised Abuse Claim Release Agreement

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

The Roman Catholic Diocese of Ogdensburg, New York,

Debtor.

Case No. 23-60507

Chapter 11

# ABUSE CLAIM RELEASE AGREEMENT

This Abuse Claim Release Agreement (this "Release") is executed this ___ day of ________________, 20__, by __________________________________________ ("Claimant") in connection with the *Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Ogdensburg, New York and Additional Debtors*, dated August 31, 2026 (as it may be amended, modified or supplemented from time to time, the "Joint Plan"), filed by The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), the Additional Debtors (as defined in the Joint Plan) and Official Committee of Unsecured Creditors in the chapter 11 cases of the Diocese and the Additional Debtors pending before the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court"), which are docketed under main case number 23-60507 (the "Chapter 11 Cases"), and the receipt of Distributions from the Trust, as compensation for an Abuse Claim.[1]

**WHEREAS**, Claimant has asserted an Abuse Claim against the Diocese and/or one or more Additional Debtors; and

**WHEREAS**, on [______________________], the Court entered an Order confirming the Joint Plan;

and

**WHEREAS**, the Effective Date of the Joint Plan occurred on [_________________];

**NOW, THEREFORE**, in consideration of the treatment under the Joint Plan and the Trust Agreement, and for other valuable consideration, Claimant hereby irrevocably covenants and agrees as follows:

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Joint Plan and in any order confirming the Joint Plan (the "Confirmation Order"). In the event of any inconsistency between this Release and the Joint Plan and/or Confirmation Order, the Joint Plan and/or Confirmation Order shall control. In the event of any inconsistency between the Joint Plan and the Confirmation Order, the Confirmation Order shall control.

**PART I**
**ACKNOWLEDGEMENT AND CERTIFICATION**

1. Claimant accepts and acknowledges that, under the Joint Plan, Distributions from the Trust to holders of Abuse Claims will be determined solely by an individual proposed by the Committee and approved by the Bankruptcy Court (the "Abuse Claims Reviewer"). Claimant further accepts, acknowledges and understands that payments to Claimant from the Trust on account of Claimant's Abuse Claim (if any) will be determined by the Abuse Claims Reviewer in accordance with the Allocation Protocol attached to the Joint Plan and that the Trust shall constitute the sole source of recovery for Claimant's Abuse Claim. By signing below, Claimant certifies that Claimant has reviewed and understands the Allocation Protocol and further understands that the decision of the Abuse Claims Reviewer is final and not subject to appeal or further review by any court or other adjudicative authority. Claimant consents to the method set forth in the Joint Plan and Allocation Protocol for determining Trust Distributions on account of Claimant's Abuse Claim and understands and agrees that Claimant may be waiving any right to a trial by jury or otherwise against the Protected Parties, including the Diocese and the Additional Debtors.

2. Claimant accepts and acknowledges that, except as expressly provided in the Joint Plan, none of the Protected Parties will have or incur any liability to, or be subject to any right of action by, Claimant, any other party in interest, or any of their respective representatives, financial advisors, or affiliates, or any of their successors or assigns, for any act or omission in or relating to these Chapter 11 Cases, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the Joint Plan, or the administration of the Joint Plan or the Trust, and in all respects, such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Joint Plan or in the context of these Chapter 11 Cases. Without limiting the generality of the foregoing, the Diocese, the Additional Debtors, and their respective advisors and professionals shall be entitled to and granted the benefits of section 1125(e) of the Bankruptcy Code.

3. Claimant accepts and acknowledges that the Diocese, the Additional Debtors, the Trust, the Trustee, the Protected Parties, and professionals employed by the foregoing shall not have any liability to any entity, including any governmental entity or insurer, on account of payments made to Claimant, including any liability under the MSPA. Claimant agrees to provide the Trustee with any information necessary to comply with reporting obligations arising under the MMSEA and has provided or will provide for the payments/and or resolution of any obligations owing or potentially owing under the MSPA relating to Claimant's Abuse Claim and any Distribution from the Trust. Claimant acknowledges and agrees that if Claimant does have any obligations owing or potentially owing under the MSPA relating to any Abuse Claim or Distribution from the Trust, the Trustee may withhold from any payment directly or indirectly to Claimant funds sufficient to ~~assure~~ensure that any obligations owing or potentially owing under the MSPA relating to such Abuse Claim are paid to the applicable agency. If the Trustee does not withhold funds sufficient to ensure that such MSPA obligations are paid in full, Claimant shall immediately pay and resolve any obligations owing or potentially owing under the MSPA relating to Claimant's Abuse Claim and any Distribution from the Trust. Notwithstanding anything to the contrary in this paragraph 3, Claimant acknowledges and agrees that no Settling Insurer, Settling Insurer Releasee, or any of their Related Persons shall have any liability to any entity, including any governmental entity or insurer, arising from the MSPA on account of

payments made to Claimant under the Joint Plan (including, without limitation, Distributions from the Trust).

## PART II
## GENERAL RELEASE OF ABUSE CLAIMS AGAINST PROTECTED PARTIES

4. Claimant, individually and on behalf of Claimant's heirs, successors, assigns, agents and representatives, acknowledges that, Claimant has received and reviewed copies of the Joint Plan, the Disclosure Statement, and each of the exhibits thereto, and has had an opportunity to consult with counsel of Claimant's choice regarding those documents and the substance of this Release, including, without limitation the release provisions set forth herein. Accordingly, Claimant, individually and on behalf of Claimant's heirs, successors, assigns, agents and representatives does now hereby:

a. voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, fully, finally, and completely release, remise, acquit, and forever discharge the Protected Parties with respect to their portion or share of liability for, the Settling Insurers, the Settling Insurer Releasees and each of their Related Persons of and from Claimant's Abuse Claim, any and all Barred Claims, and any and all past, present, and future Claims that, directly or indirectly, arise out of, relate to, or are connected with the Settling Insurer Policies, with such release and discharge being effective as of the occurrence of the Effective Date of the Joint Plan.

b. voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, fully, finally, and completely release, remise, acquit, and forever discharge the Protected Parties, the Settling Insurers with respect to, the Settling Insurer PoliciesReleasees and each of their Related Persons, of and from any and all past, present and future Claims, including all Barred Claims (including Extra-Contractual Claims and, Direct Action Claims);, and Coverage Claims), and each such Person's portion or share of damages that, directly or indirectly, arise out of, relate to, or are connected with the: (i) Claimant's Abuse Claim; (ii) and any other Channeled Claims; (ii) Claims that directly or indirectly arise out of, relate to, or are in connection with the handling of Claimant's Abuse Claim and any other Channeled Claims, (iii) Inbound Contribution Claims; (iiiiv) any Settling Insurer Policies;Policy; (v) any Medicare Claim and (ivvi) all Claims that, directly or indirectly, arise from, relate to, or are connected with the Chapter 11 Cases, with such release and discharge being effective as of the occurrence of the Effective Date.

c. Withwith respect to any Claims that are released under paragraph 24(a) or paragraph 24(b) of this Release, Claimant hereby voluntarily and irrevocably agrees and covenants (i) not to sue or seek recovery or relief of any kind from the Protected Parties, the Settling Insurers, the Settling Insurer Releasees and each of their Related Persons in connection with any past, present, or future Claims that directly or indirectly arise out of, relate to or are in connection with Claimant's Abuse Claim or any other Channeled Claims, or the handling of Claimant's Abuse Claim, Channeled Claims, the Settling Insurer Policies, any Medicare Claim, or the Chapter 11 Cases; (ii) to forever and irrevocably discharge that fraction, portion, or percentage of damages Claimant claims to have suffered in connection with the Abuse which is by trial or other disposition determined to be the causal fault or responsibility, if any, of any Protected Party, Settling Insurer, Settling Insurer Releasee or any of their Related Persons with respect to the

released Abuse Claim; and (iii) Claimant understands thatthat the trial court in any future action that, directly or indirectly, arises out of, relates to, or is connected with the Claims released hereby will be bound by this Release, and that Claimant will not oppose any future defense counsel submitting this Release in such an action; (iv) that the releases set forth in this Release and in the Joint Plan extinguishesextinguish any potential liability of any Protected Party, any Settling Insurer, any Settling Insurer Releasee, and any of their Related Persons for contribution or indemnity to any Person who has been or may be held liable to Claimant for any released Abuse Claim or Channeled Claim; and (v) to be bound by the injunctions set forth in the orders approving the Insurance Settlement Agreements, along with the injunctions and releases set forth in the Joint Plan.

5. Claimant consents to, and agrees to be bound by, the injunctions set forth in the Joint Plan, including those injunctions contained in Section 12 for the benefit of the Protected Parties, the Settling Insurers, the Settling Insurer Releasees and each of their Related Persons. Claimant also approves of the Insurance Settlement Agreements referenced in and incorporated into the Joint Plan.

6. In further consideration of the opportunity to seek compensation from the Trust, as of the Effective Date, Claimant shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and attorneys' fees of, the Trust and the Trustee arising from any failure to comply with the terms of this Release.

**PART III**
**REPRESENTATIONS, THIRD PARTY BENEFICIARIES AND SUCCESSORS**

7. Claimant represents and warrants that Claimant is the sole holder of the Abuse Claim Claimant has asserted against the Diocese, the Additional Debtors and/or one or more Protected Parties and that Claimant has not assigned or otherwise, transferred or granted any interest in Claimant's Abuse Claim. to any other Person, nor has Claimant assigned or transferred to any Person any Claims Claimant may have against any Settling Insurer, any Settling Insurer Releasee, or other Protected Parties, Exculpated Parties, or any of their Related Persons.

8. Claimant hereby authorizes the Center for Medicare & Medicaid Services ("CMS") and its agents and/or contractors to release, upon request, information related to Claimant's injury/illness and/or settlement since Claimant's date of birth to the Trust and/or its agents. Claimant understands that Claimant may revoke this "consent to release information" at any time, in writing. Claimant consents to the release of information relating to Claimant's lifetime Medicare entitlement from the Social Security Administration and CMS to the Trustee and all other professionals retained by the Trust, and further authorizeauthorizes the Trustee and other Trust professionals to execute on Claimant's behalf any requests, including consents for release of information, for information relating to Claimant's Medicare entitlement and any obligations owing or potentially owing under the Medicare Secondary Payer Statute relating to Claimant's Survivor Claim(s), from the Social Security Administration and CMS. Claimant affirms that Claimant is the individual to whom the requested information or record applies or the authorized representative of the individual's estate. Claimant declares under penalty of perjury (28 CFR § 16.41(d)(2004)) that Claimant has examined all the information on this form, and it is true and correct to the best of Claimant's knowledge. Claimant understands that anyone

who knowingly or willfully seeks or obtains access to records about another person under false pretenses is punishable by a fine of up to $5,000.

9. Claimant has been provided with copies of the Disclosure Statement, the Joint Plan, and the exhibits thereto and has been given an opportunity to review such documents and to consult with counsel of Claimant's choice regarding those documents and this Release.

10. Claimant expressly reserves and retains Claimant's rights to recover from any Person other than the Protected Parties, the Settling Insurers, the Settling Insurer Releasees and their Related Persons for liability for any Abuse except as provided in this Release and does not intend that payment by the Trust constitutes full compensation for the damage alleged in Claimant's Abuse Claim.; provided that any such Person that is or was alleged to be a Joint Tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of Claimant's Abuse Claim shall not be liable for the Protected Party(ies)' share of causal liability or fault.

11. Claimant understands and agrees that any payment by the Trust to Claimant does not constitute an admission of liability of any kind or nature by the Trust or any Protected Party.

12. Claimant understands and agrees that any payment by the Trust to Claimant does not constitute a determination of the amounts of Claimant's Abuse Claim in any litigation with any Protected Parties or other Person, and that any such payment cannot be used as evidence of the liability of a Protected Party's liabilityParty, a Settling Insurer, a Settling Insurer Releasee, or any of their Related Persons for Claimant's Abuse Claim, or of the amount of Claimant's damages, in any litigation on Claimant's Abuse Claim.

13. Claimant understands that payment from the Trust constitutes damages on account of personal physical injuries or sickness arising from an occurrence within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

14. The releases, discharges, covenants and other undertakings made by Claimant pursuant to this Release shall be absolute and irrevocable. Each of the Protected Parties, including, without limitation, the Diocese, the Additional Debtors and, each Settling Insurer, each Settling Insurer Releasee, and each of their Related Persons shall be intended third party beneficiaries of this Release, and shall have the right to enforce the terms hereof in any court of competent jurisdiction.

15. This Release shall be binding upon Claimant, and upon Claimant's successors, heirs, assigns, agents, and representatives.

TO BE COMPLETED BY ABUSE CLAIMANT OR AUTHORIZED REPRESENTATIVE OF ABUSE CLAIMANT'S ESTATE:

Name of Abuse Claimant: ________________________________

By: ______________________________________________

Signature:
______________________________________________

Dated: ______________________________________________

Claim Number(s): ______________________________________

Social Security Number: ________________________________

Date of Birth:
______________________________________________

| Summary report: Litera Compare for Word 11.12.0.83 Document comparison done on 11/13/2026 4:22:34 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://cloudimanage.com/bond/24293262/1 - DOO - Abuse Claim Release Agreement (filing version).docx | |
| **Modified DMS:** iw://cloudimanage.com/bond/24293262/2 - DOO - Abuse Claim Release Agreement (filing version).docx | |
| **Changes:** | |
| Add | 47 |
| ~~Delete~~ | 26 |
| ~~Move From~~ | 0 |
| Move To | 0 |
| Table Insert | 0 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 73 |

# EXHIBIT D

Redline of Revised Litigation Claimant Agreement

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Ogdensburg, New York,<br><br>Debtor. | Case No. 23-60507<br><br>Chapter 11 |

**LITIGATION CLAIMANT AGREEMENT**

This Litigation Claimant Agreement (this "Agreement") is made and entered into by and between **[________________________________]** ("Claimant") and ___________ (the "Trustee") in its capacity as Trustee of the Ogdensburg Abuse Claim Trust (the "Trust") established pursuant to the *Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Ogdensburg, New York and Additional Debtors* dated August 31, 2026 (as it may be amended or supplemented, and in the form confirmed in the above-captioned Chapter 11 Case, the "Joint Plan") filed by The Roman Catholic Diocese of Ogdensburg, New York (the "Diocese"), the Additional Debtors (as defined in the Joint Plan and Official Committee of Unsecured Creditors in the chapter 11 cases of the Diocese and the Additional Debtors pending before the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court"), which are docketed under main case number 23-60507 (the "Chapter 11 Cases").[1]

WHEREAS, Claimant has asserted an Abuse Claim against the Diocese and/or one or more Additional Debtors; and

WHEREAS, on **[_____________]**, the Court entered an order confirming the Joint Plan; and

WHEREAS, the Effective Date of the Joint Plan occurred on **[_____________]**; and

WHEREAS, Claimant has previously executed and delivered to the Trustee an Abuse Claim Release Agreement in the form attached to the Plan Supplement as Exhibit ___, the terms of which are incorporated and made apart hereto as if fully set forth herein; and

WHEREAS, Claimant has requested that the Trustee authorize Claimant to proceed as a Litigation Claimant, and to treat Claimant's Abuse Claim as a Litigation Claim in accordance with the terms of the Joint Plan and as set forth in this Agreement;

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Joint Plan and in any order confirming the Joint Plan (the "Confirmation Order"). In the event of any inconsistency between this Agreement (including any schedule attached hereto) and the Joint Plan and/or Confirmation Order, the Joint Plan and/or Confirmation ~~order~~Order shall control. In the event of any inconsistency between the Joint Plan and the Confirmation Order, the Confirmation Order shall control.

WHEREAS, the Trustee, after consultation with the Diocese, believes in good faith that Claimant's Abuse Claim is covered, in whole or in part, by one or more policies of insurance issued by a Non-Settling Insurer; and

NOW, THEREFORE, in consideration of the agreements, covenants and obligations set forth herein, and the treatment to be provided to Claimant's Abuse Claim under the Joint Plan, Claimant and the Trustee hereby covenant and agree as follows:

1. Authorization to Proceed as Litigation Claimant. Subject to the limitations and conditions set forth in this Agreement and in the Joint Plan, the Trustee hereby authorizes Claimant to pursue his or her Abuse Claim as a Litigation Claim.

2. Conduct of Litigation. Subject in all respects to the orders approving the Insurance Settlement Agreements, the injunctions for the benefit of the Settling Insurers, the Joint Plan, and the Confirmation Order, Claimant may, at Claimant's sole cost and expense, commence or continue prosecution of an Abuse Action against the Diocese and/or any of the Additional Debtors, or any Non-Settling Insurer, as such Persons are identified on ***Schedule 1*** hereto, in any court of competent jurisdiction, solely for the purposes of (a) determining any liability that such Persons may have with respect to Claimant's Litigation Claim, (b) determining the amount of that liability, and (c) ~~to pursue~~pursuing Insurance Claims against any Non-Settling Insurers. In no event shall Claimant name, join, or otherwise assert any Claim against any Settling Insurer, any Settling Insurer Releasee, or any of their Related Persons in any such Abuse Action or other proceeding.

3. Limited Recourse. Any Litigation Award obtained by Claimant, including, without limitation, any judgment or verdict in respect of Claimant's Litigation Claim, shall not be enforced ~~against~~ (a) against the Diocese, any Protected Party, any Settling Insurer, any Settling Insurer Releasee, or any of their respective Related Persons, (b) in any manner that violates the injunctions for the benefit of the Settling Insurers, any Insurance Settlement Agreement, or any order approving an Insurance Settlement Agreement, (c) against any of the non-insurance property or assets of the Diocese or any Protected Party, (~~c~~d) against the Residual Assets and any other property or assets that are vested with the Diocese pursuant to the Joint Plan, or (~~d~~e) against any property or assets of any Settling Insurer, Settling Insurer Releasee, or any Settling Insurer Related Person, including the Settling Insurer Policies. In accordance with the above, any Litigation Award shall be enforceable solely against, and paid by, any Non-Settling Insurer under the terms of that Non-Settling Insurer's Insurance Policy and applicable law. Claimant voluntarily, intentionally, knowingly, absolutely, unconditionally, and irrevocably acknowledges, covenants, and agrees that (i) Claimant is subject to and bound by the Joint Plan, the Confirmation Order, the orders approving the Insurance Settlement Agreements, and the injunctions contained in the foregoing, (ii) Claimant shall have no right whatsoever at any time to assert a Barred Claim against any Settling Insurer, any Settling Insurer Releasee, or any of their Related Persons or any property or assets of a Settling Insurer, a Settling Insurer Releasee, or any of their Related Persons, and (iii) the releases set forth in this Agreement and in the Abuse Claim Release Agreement extinguish any potential liability of each Settling Insurer, Settling Insurer Releasee, and any of their Related Persons for contribution or indemnity to any Person who has been or may be held liable to Claimant on Claimant's Litigation Claim. Claimant covenants and agrees to take any action reasonably requested to enable the Diocese or any Additional Debtor (or any successor entity) to transfer, mortgage, or otherwise encumber any real or personal property free and clear of any judgment Lien.

4. Defenses Preserved; No Estoppel or Preclusion. Nothing in the Joint Plan shall prevent the Diocese or any Protected Party from asserting any legal or factual defenses they may have in response to Claimant's Litigation Claim. Any determination by the Abuse Claims Reviewer of Claimant's qualification to receive Distributions under the Joint Plan, estimation of Claimant's Claim, and, if applicable, payment of partial Distributions, shall not impair Claimant's right to obtain a judgment, including a judgment based on joint and several liability, against any of the parties listed on ***Schedule 1*** hereto, *provided*, *however*, that (i) recourse against the Diocese and any Protected Party shall be limited as set forth herein and in the Joint Plan, and (ii) for purposes of establishing the Diocese's and/or a Protected Party's liability on Claimant's Litigation Claim, any judgment awarded to Claimant shall be reduced by the amount of Trust Distributions (if any) already paid by the Trust to Claimant on his or her Litigation Claim. Neither the Abuse Claims Reviewer's review of an Abuse Claim and determination of qualification, nor the Trust's estimation of Claimant's Claim, nor the payment of any Distributions shall: (i) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation between the Claimant and the Diocese or the Protected Parties, Non-Settling Insurers, or any other Person, or (ii) constitute, or be deemed, a determination of the reasonableness of the amount of Claimant's Claim, either individually or in the aggregate with other Litigation Claims, in any coverage litigation with any Non-Settling Insurers. The Trust's estimation of Claimant's Claim and payment of Trust Distributions does not create an admission of the fact of liability, or the extent of damages, on behalf of the Diocese and/or any Protected Parties.

5. Withdrawal of Litigation Claim; Discharge and release.

a. Claimant may withdraw his or her election to be a Litigation Claimant at any time by written notice to the Trustee and the Diocese and, upon such notice, shall immediately discontinue prosecution of, and shall dismiss with prejudice, any Abuse Action with respect to Claimant's Litigation Claim. Upon providing such notice, Claimant's determination not to proceed as a Litigation Claimant shall be irrevocable.

b. Claimant hereby acknowledges and agrees that ~~any Claim~~all Claims Claimant may hold against the Diocese and~~/or any Protected Parties~~ any Additional Debtor or any of their Related Persons shall automatically ~~be deemed to be~~and without further action be fully waived, ~~discharged and~~ released, and discharged upon the occurrence of the Abuse ~~Claim~~Claims Discharge Date~~ applicable to Claimant's Claim pursuant to Section _____ of the Plan~~.

c. Claimant hereby acknowledges and agrees that all Claims Claimant may hold against any Settling Insurer, any Settling Insurer Releasee, or any of their Related Persons shall automatically and without further action be fully waived, released, and discharged upon the occurrence of the Effective Date; provided, however, that such release and discharge with respect to a Settling Insurer and the Settling Insurer Releasees of such Settling Insurer shall be effective upon the payment by such Settling Insurer of its settlement amount under its Insurance Settlement Agreement. Claimant's election to proceed as a Litigation Claimant shall not affect such release.

6. Expenses; Third Party Beneficiaries.

a. Each of the Protected Parties, including, without limitation, the Diocese, the Additional Debtors, ~~and~~ each Settling Insurer, each Settling Insurer

Releasee, and their Related Persons shall be intended third party beneficiaries of this Agreement, and shall have the right to enforce the terms hereof in any court of competent jurisdiction.

b. Any and all DOO Entities' Post-Effective Date Costs incurred by the Diocese or the Additional Debtors, or any Protected Party in connection with responding to, prosecuting or defending Claimant's Litigation Claim shall be paid by the Trust in accordance with the provisions of the Joint Plan.

c. The Trustee shall provide a copy of this Agreement to the Diocese and the Additional Debtors upon execution hereof, and to any other Protected Parties upon request.

[*signature page follows*]

IN WITNESS WHEREOF, this Agreement has been executed by Claimant (or, in the case of death or legal disability, Claimant's duly-authorized legal representative acting under power of attorney) and the Trustee as of the date set forth below.

Dated: ___________, 202_

______________________________
Signature

______________________________
Print or type name of Claimant

______________________________
Claim Number (if known)

______________________________
Address

Accepted and agreed by the Trustee: ____________________________

By: ___________________________________
Name:
Title

# **SCHEDULE 1**

Authorized Defendants

**[To be provided at time of execution]**

| **Summary report:<br>Litera Compare for Word 11.12.0.83 Document comparison done on 11/13/2026 4:23:28 PM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://cloudimanage.com/bond/24293263/1 - DOO - Litigation Claimant Agreement (Filing Version).docx | |
| **Modified DMS:** iw://cloudimanage.com/bond/24293263/2 - DOO - Litigation Claimant Agreement (Filing Version).docx | |
| **Changes:** | |
| Add | 43 |
| ~~Delete~~ | 18 |
| ~~Move From~~ | 0 |
| Move To | 0 |
| Table Insert | 0 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 61 |