**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of<br>Ogdensburg, New York,<br><br>Debtor. | Chapter 11<br><br>Case No. 23-60507 (PGR) |

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I) CENTURY'S OBJECTION TO PROPOSED CONFIRMATION SCHEDULE AND (II) CENTURY'S OBJECTION TO APPROVAL OF THE DISCLOSURE STATEMENT IN SUPPORT OF JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC DIOCESE OF OGDENSBURG, NEW YORK AND ADDITIONAL DEBTORS**

The Official Committee of Unsecured Creditors (the "**Committee**") of The Roman Catholic Diocese of Ogdensburg, New York (the "**Diocese**" or the "**Debtor**"), a co-proponent of the revised *Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Ogdensburg, New York and Additional Debtors* [Dkt. No. 1494] (as may be further revised amended, the "**Plan**"), submits this omnibus reply (this "**Reply**") in support of the Debtor's motion [Dkt. No. 1398] (the "**Motion**") for approval of the *Disclosure Statement in Support of Joint Chapter 11 Plan* [Dkt. No. 1395] (as may be amended, the "**Disclosure Statement**") and the proposed confirmatiuon Schedule. This Reply responds to: (a) *Century's Objection to Proposed Confirmation Schedule* [Dkt. No. 1492] (the "**Century Scheduling Objection**") and (b) *Century's Objection to Approval of The Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Ogdensburg, New York and Additional Debtors* [Dkt. No. 1491] (the "**Century Second DS Objection**" and, together with the Century Scheduling Objection, the "**Century Objections**").

**REPLY REGARDING SCHEULING MOTION**

1. Century seeks four months of discovery to prepare for a confirmation hearing that requires no discovery. The Committee objected (and continues) to object to Century's constitutional and prudential standing to object to every aspect of the Disclosure Statement and Plan. See Omnibus Reply of the Official Committee of Unsecured Creditors to Objections to (I) Approval of the Disclosure Statement and (II) the Proposed Solicitation Procedures and Case Management Order, and In Support of the Motion [Dkt. No. 1458], which is incorporated herein for all purposes.

2. Century asserts that it needs broad and lengthy fact discovery to prepare two arguments in its objection to confirmation: (a) good faith and compliance with sections 1129(a)(1)-(3) of the Bankruptcy Code; and (b) insurance neutrality. Neither of these categories requires extensive discovery. These matters are almost entirely depent on the terms of the Plan Documents, the record of this Case, statutory provisions, and the terms of Century's insurance policies.

3. Section 1129(a)(1) of the Bankruptcy Code provides that "the Court shall confirm a plan only if …. The Plan complies with applicable provisions of this title." No discovery is needed to assess this requirement. Only a copy of the Bankurptcy Code and the Plan Documents are necessary. The Court can assess the terms of the Plan and the Bankruptcy Code without extraneous material. Arguably, any outside evidence would be barred as parol evidence given the clear terms of the Plan Documents.

4. Section 1129(a)(2) of the Bankruptcy Code provides that "the Court shall confirm a plan only if …. The proponent of the Plan complies with the applicable provisions of this title." No discovery is needed to assess this requirement. Only a copy of the Bankruptcy Code, the pleadings on the Docket, and the Plan Documents are necessary. The question of whether the

Plan Proponents comply with the Bankruptcy Code is inextricably intertwined with the terms of the Plan Documents. Century has not and cannot credibly articulate a reason to conduct discovery on this issue.

5. “Good faith” is not defined in the Bankruptcy Code, but as explained in *In re Madison Hotel Assocs.,* 749 F.2d 410 (7th Cir.1984):

> Though the term “good faith,” as used in section 1129(a)(3), is not defined in the Bankruptcy Code, the term is generally interpreted to mean that there exists “a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.” ... Thus, for purposes of determining good faith under section 1129(a)(3) ... the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

*Id.* at 424-25 (internal citations omitted); *See also In re Quigley Co., Inc.*, 437 BR 102, 125 (Bankr. S.D.N.Y. 2010).

6. Good faith is viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan. *See Madison Hotel Assocs., id.*; *Quigley, id.* The good faith inquiy typically focuses on “the process of plan development than to the content of the plan.” *In re Bush Industries, Inc.,* 315 B.R. 292, 304 (Bankr. W.D.N.Y. 2004). Among other things, good faith provides “a check on the debtor’s intentional impairment of claims.” *Quigley, id.* (internal citations omitted). Here, there can be no credible argument that the Plan is not proposed in good faith. It was negotiated between the Diocese, the Committee and settling insurers in a mediation process presided over by two reputable, retired bankruptcy judges. All parties were represented by competent, experienced counsel. This Court has actively presided over this Case. There is no possibility that Century can advance a credible argument that the Plan Proponents did not engage in an arms’ length negotiation. The Plan does not include provisisons that indicate self-dealing

or terms favorable to any particular creditor or group of creditors. The terms of the Joint Plan speak for themselves and show a thoroughly negotiated settlement that treats all members of a class similarly. Century would first have to point to a plan provision that improperly favors a particular creditor, gerrymanders classes, or provides an insider deal. There are no such plan provision. As such, no discovery is necessary on this issue.

7. Finally, insurance neutrality of the Plan relies solely on the terms of Century's policies, the terms of the Plan and applicable statutes and legal precedent. Virtually no fact discovery is necessary to read the relevant documents or analyze applicable law. Arguably, an exchange of applicable policies is appropriate discovery. That will not take until the end of March 2027 to accomplish.

8. All the arguments that Century raises regarding confirmation of the Plan rely on the terms of the Plan Documents. However, in an abundance of caution and to avoid any question that Century did not have an appropriate opportunity to assess evidence necessary for confirmation, the Plan Proponents have proposed a fair and appropriate discovery schedule under the circumstances. The Court should adopt the Plan Prponents proposed schedule.

**REPLY REGARDING FURTHER OBJECTION**

9. Century improperly seeks to reargue or seek reconsiderartion of the Disclosure Statement order that has not yet been entered. In doing so, it makes arguments that are incorrect, improper and seek to include unnecessary information in the Disclosure Statement.

10. First, Century argues that the Plan does not exclude pursuing untimely claims as litigation claims. That is not correct. Section 1.1.123 of the Plan clearly excludes an untimely claim from being a litigation claim.

11. Century complains that insurance settlement agreements have not yet been filed. They will be filed well in advance of confirmation and Century will have a full and complete opportunity to review them and object to any terms it finds offensive.

12. Century also asserts that the recent decisions in *In re Diocese of Alexandria*, Case No. 25-31257, Dkt. No. 465 (Oct. 26, 2026, Bankr. W.D. La.) and *In re Catholic Archbishop of Baltimore*, Case Np. 23-16969 (Aug. 4, 2026, Bank. D. Md.) support denial of confirmation in this Case. Century's reliance on these cases is divorced from the reality of this Case. First, both the Baltimore and Alexandria plans were not supported by the committees in those cases. Second, both plan provided for an involuntary assignment of rights from a debtor to a trust without consent of the tort claimants. Simply put, solicitation of those plans would haver been futile because they would not garner sufficient votes to confirm. Nor would survivors agree to the treatment of their claims by an involuntary assignment of claims.

13. Century characterized the Alexandria plan as one that (1) conditioned litigation implicating insurance on trustee authorization; (2) deemed recoveries assigned to the trust; (3) assigned insurance interests that the debtor did not own; and (4) characterized the plan as a global compromise. Century Second DS Objection at p. 3. Those characteristics are not present in the Plan at issue.

14. The Plan in this Case, in contrast, (a) allows Abuse Claimants to either vote on whether the Trustee will have discretion to authorize litigation claims to proceed or object to this term; (b) does not deem recoveries assigned to the trust without consent of the litigation claimant (Plan, Section 4.6.1(e)); (c) only assigns insurance interests that the Diocese owns and/or may assign – and provides that if the interests are not assignable, they will remain with and be enforced by the Diocese (Plan, Section 8.2.3); and (d) does not characterize the Plan as a global compromise – even though the only non-settling party is Century. *Alexandria* is highly

distinguishable from this Plan and this Case. It does not provide any guidance on the terms of this Plan or its confirmability. Notably, this Plan has the support of the Committee and will be subject to a vote that the Committee expects will be overwhelmingly in favor of confirmation.

15. Century further wants additional disclosure about the risk of the Plan, including the risks of confirmability, insurance assignment or appeal. The Disclosure Statement provides extensive risk factors (*See* Disclosure Statement, Article 19). The risk factors include (a) risk that the plan may not be confirmed (Art. 19.C); (b) that non-settling insurers may raise objections, including the assignability of insurance rights (Art. 19.H); and (c) the risk of appeal (Art. 19.I). Further discussion is unnecessary.

## CONCLUSION

16. The Committee respectfully requests that the Court (i) overrule the Objections to the extent not resolved by the revisions described in this Reply; (ii) approve the Disclosure Statement, as revised; and (iii) grant such other and further relief as is just and proper.

Dated: November 16, 2026
New York, NY

PACHULSKI STANG ZIEHL & JONES LLP

By: *Ilan D. Scharf*

James I. Stang
Ilan D. Scharf
Karen B. Dine
1700 Broadway, 36th Floor
New York, NY 10017
Telephone: (212) 561-7700
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
kdine@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*